UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMANTHA SIVA KUMARAN, Other similarly situated Customers 1-100, Other similarly situated CTA's 1-100, NEFERTITI RISK CAPITAL MANAGEMENT, LLC,

                         Plaintiffs,

                -against-

NATIONAL FUTURES ASSOCIATION; JANE DOE 1, Compliance Officer NFA; JANE DOE 2, Compliance Officer NFA; TOM KADLEC, Board Member NFA,

                         Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/2020

1:20-CV-3668 (GHW)

ORDER OF DISMISSAL

GREGORY H. WOODS, United States District Judge:

      Plaintiff Samantha Siva Kumaran, who appears *pro se*, brings this action on her own behalf, and on behalf of "[o]ther similarly situated Customers 1-100," "[o]ther similarly situated CTA's 1-100," and Nefertiti Risk Capital Management, LLC.[1] She asserts claims under the Commodity Exchange Act, the Federal Arbitration Act, and other federal and state laws, and she seeks injunctive relief and damages.[2] For the reasons discussed below, the Court dismisses this action.

## STANDARD OF REVIEW

      The Court has the authority to dismiss a complaint, even when the plaintiff has paid the relevant fees, if it determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them

---

[1] These other entities are listed as additional plaintiffs in the caption of the complaint.

[2] Kumaran has paid the relevant fees to bring this action.

to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Kumaran makes the following allegations in her complaint: Kumaran is a citizen of New York, New York, and her business, Nefertiti Risk Capital Management, LLC ("NRCM"), is "a minority women owned small business, sole proprietor[ship]," and "CTA" (commodity trade advisor), located in New York, New York.[3] (ECF 1 at 4.) She is NRCM's "legal successor and assign[ee]," as NRCM is "un-operational." (*Id.*) One of the defendants, the National Futures Association ("NFA"), is a "not-for profit organization" that is incorporated in Delaware and has its principal place of business in Chicago, Illinois. (*Id.* at 2.) The NFA "is the only self-regulatory association organized under the authority of the Commodit[y] Exchange Act" ("CEA"). (*Id.* at 2-3.) The other defendants are unidentified "Jane Doe" NFA Compliance Officers and Tom Kadlec, a citizen of Illinois who serves on the NFA's Board of Directors and is the Chief Executive Officer of ADM Investor Services ("ADMIS").

**A.      The ADMIS account**

On or about January 31, 2017, Kumaran opened a commodities futures trading account with ADMIS, and immediately thereafter, ADMIS "turned [the account] over to Vision [Financial Markets, LLC ("Vision")] to unlawfully scrutinize [Kumaran's] trading strategies." (*Id.* at 13.) ADMIS, in exchange for millions of dollars, has "secretively distribute[d] its customer[s'] and CTA[s'] confidential and proprietary financial accounts, behind the scenes, (without the customers['] and CTA[s'] knowledge, consent or authorization) to Vision and its owners, employees and affiliates,

---

[3] Kumaran treats NRCM's actions as her own. She also states that she is asserting claims on behalf of "citizens of the United States of America[] [who] are similarly situated to [her], who are victims of [this] scheme." (ECF 1 at 3.)

to access their trading strategies." (*Id.* at 8.) [4] It has also "pass[ed] through unauthorized fees [charged to] victims[] to fund Vision's owners, employees and affiliates [that it] would materially fraudulently conceal in [an] account opening." (*Id.*) It has further "disseminated all its CTA[s'] competitive algorithms to Howard Rothman and [John] Fel[i]g." (*Id.*) Vision's affiliate, Vision Investment Advisors, Inc. ("VIA"), "directly trade[s] in competition with all the CTA[s] who[se] financial accounts it had unlawfully gained access to – while ADMIS, in direct unfair market competition, continue[s] to give Vision[] preferential rates, discounted commissions, and sell-out its competitors['] trade secrets." (*Id.*)

Though she was still "unaware of Vision affiliates['] access to [her ADMIS] account," Kumaran closed that account because of "gross negligence in [ADMIS's] risk department." (*Id.* at 14.)[5] On or about September 20, 2017, Kumaran became aware of Vision's unauthorized access to her ADMIS account, and between that date and September 29, 2017, she sought explanations from her ADMIS broker. She also "reached out to the NFA hotline[] to inquire[] [about] what approvals

---

[4] On or about June 20, 2014, after it had incurred multiple disciplinary fines from the NFA, Vision was "barred" from NFA "membership." (ECF 1 at 6-7.) "[D]espite public sentiments that Vision would exit the business[,] it did not. By piercing the corporate veil, its owners, Howard Rothman and Robert Boshnack, . . . tailored a deal, in or around September 2014, by which they would simply change the name of Vision, [and] form numerous other affiliates . . . ." (*Id.* at 7.) "[I]n what appeared to be a straight 'transfer of business' to ADMIS, . . . Boshnack and Rothman . . . agreed to essentially buy their way back into the business, and provide substantial personal financial incentives and undisclosed personal guarantees on its network of Vision . . . Introducing Brokers." (*Id.* at 8.)

Beginning in September 2014, and continuing to the present, the defendants "have and are partaking in a fraudulent scheme with [ADMIS], the owners of the disbarred Vision" (Robert Boshnack, Howard Rothman, and John Felig), Vision's "affiliates and a network of Vision Introducing Brokers . . . to disseminate ADMIS['s] confidential customers['] and CTA[s'] confidential futures accounts and trading strategies to the owners, employees and affiliates of the disbarred Vision, . . . in violation of the CEA and Federal laws." (*Id.* at 1.)

[5] The complaint states that Kumaran closed her ADMIS account on June 25, 2019. But she may have mistakenly typed that date instead of June 25, 2017.

[were issued by the] NFA[] for ADMIS to distribute customer accounts to Vision affiliates." (*Id.* at 15-16.) She further communicated with the NFA's Compliance Department.

By that time, Kadlec, ADMIS's Chief Executive Officer and an NFA board member, as well as "other [NFA] compliance staff, already knew of the marketplace fraud." (*Id.* at 16.)[6] But despite the NFA's previous removal of Vision from its membership, the NFA "omitted a reference or link to [ADMIS's] arrangement [with Vision] on [its] Basic Website, so any Customer, CTA or Member, inquiring about ADMIS or Vision['s] [Introducing Brokers could not gain any] knowledge or history of th[at] relationship [or of the] transfer of customer accounts to Vision affiliates, owners and employees." (*Id.*) NFA officials also failed to respond to Kumaran's questions, or enforce its own rules.[7] Kumaran continued to seek the assistance of NFA officials to investigate, but they "never followed up with [her about] how [her] CTA strategies had ended up in the hands of [her] competitors." (*Id.* at 18.)

**B.     Arbitration**

Kumaran sought NFA arbitration to resolve her dispute with ADMIS. But beginning on September 21, 2018, "ADMIS and [the] NFA began a process of flagrant disregard for the NFA

---

[6] Kadlec's duties as an NFA board member have included "approving the registration of [VIA], as [a] CTA"; VIA is a Vision affiliate and a "direct competitor of the CTA[s] who[se] accounts Kadlec breached . . . ." (ECF 1 at 3.) Kadlec "gave [the CTAs'] competitive trading records to Vision affiliates." (*Id.*)

[7] Kumaran asserts that the NFA has

knowingly and actively participated with ADMIS and Vision[] to fraudulently conceal the[ir] arrangement from customers, [and has been] willing to sell out small customers, small businesses and CTA[s], to protect its own reputation and as [a] result thwarted fair market competition, damaged small businesses, [and] condoned illegal activity, in order to generate operating fees and unauthorized revenue.

(ECF 1 at 21.) It has also "failed to abide by multiple Federal laws[] that protect the integrity of customers['] personal financial data, confidential information as well as their proprietary trading records and transaction history." (*Id.* at 24.) Thus, the "NFA, ADMIS, Vision and [its Introducing Brokers] conspired and acted together to keep the illegal activity and violations . . . fraudulently concealed." (*Id.* at 34.)

4

Arbitration rules, a process that lasted months, to deny [Kumaran's] due process rights and to obstruct fair and equitable justice in an NFA controlled Arbitration Forum." (*Id.* at 27.) NFA officials involved with the arbitration

> failed to respond to procedural emails, failed to provide a transparent record of service-of-process, maintained repeated ex-parte telephonic communications with ADMIS and its counsel, and went so far as to leak information to ADMIS (advance of any announcements) of NFA Arbitration locations and venue, in advance of Kumaran being notified.

(*Id.* at 27-28.) On or about November 18, 2019, the NFA granted a motion to stay the arbitration. (*Id.* at 47-48.)

## DISCUSSION

**A.     Kumaran's claims on behalf of other individuals and NRCM**

Kumaran seeks to bring this action as a class action and asserts claims on behalf of other individuals and NRCM. But this action cannot proceed as a class action, and Kumaran cannot assert claims on behalf of any other individual or other entity. This includes NRCM, which appears to be a sole-member or solely owned limited liability company (LLC), though Kumaran alleges that it is a sole proprietorship. (*See* ECF 1 at 4.)

The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). Because a nonlawyer cannot bring suit on behalf of other individuals, a nonlawyer plaintiff appearing *pro se* cannot act as a class representative. *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (summary order) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Phillips v. Tobin*, 548 F.2d 408, 412-15 (2d Cir. 1976). And while "some courts allow sole proprietorships to proceed *pro se* [because] a sole proprietorship has no legal existence apart from its owner[,] [u]nlike a sole

5

proprietorship, a sole member limited liability company is a distinct legal entity that is separate from its owner." *Lattanzio*, 926 F.2d at 140. Thus, a limited liability company, including a sole-member or solely owned limited liability company, cannot appear in federal court without an attorney. *See id.* ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms, a limited liability company also may appear in federal court only through a licensed attorney.") (internal citation omitted); *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202-03 (1993) (noting that courts do not allow corporations, partnerships, associations, and other "artificial entities" to appear in court without an attorney). And a *pro se* litigant who is not an attorney cannot assert claims in federal court that an artificial entity, such as a corporation or a limited liability company, has assigned to her. *See, e.g.*, *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008).

Kumaran does not allege that she is an attorney. Accordingly, because Kumaran may only represent herself, the Court denies her request to proceed with this action as a class action, and the Court dismisses without prejudice any claims she asserts on behalf of any individual other than herself. In addition, the Court dismisses without prejudice any claims Kumaran asserts on behalf of NRCM – a limited liability company – and any that NRCM has assigned to her.

**B.     Kumaran's claims for damages**

The Court must dismiss Kumaran's claims for damages against the NFA, and against Kadlec (in his capacity as an NFA board member) and the "Jane Doe" NFA Compliance Officers, because they are immune from suit for such claims. "The NFA is a[] [self-regulatory organization (SRO)] that is registered under the [CEA]." *Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 888 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020); *McCrudden v. Nat'l Futures Ass'n*, No. 13-CV-6930, 2014 WL 4412470, *1 (S.D.N.Y. Sept. 8, 2014) (the NFA is "a congressionally authorized self-regulatory

6

organization for the futures industry"). "[A]n SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities. This immunity extends both to affirmative acts as well as to an SRO's omissions or failure to act." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 637 F. 3d 112, 115 (2d Cir. 2011) (citations omitted); *DL Capital Grp, LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) ("There is no question that an SRO and its officers are entitled to absolute immunity when they are, in effect, 'acting under the aegis' of their regulatory duties.") (citation omitted). "Thus, so long as the 'alleged misconduct falls within the scope of the quasi-governmental powers delegated to the [NFA,]' absolute immunity attaches." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007); *McCrudden*, 2014 WL 4412470, at *3.

Under the doctrine of arbitral immunity, arbitrators are also immune from suit for damages "for all acts performed in their arbitral capacity." *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). Courts have extended arbitral immunity to an SRO when it is acting "within the scope of its duty as an arbitrator." *Gill v. Fin. Indus. Regulatory Auth.*, No. 11-CV-2713, 2013 WL 1203746, at *5-6 (S.D.N.Y. Mar. 6, 2013) (recommending that arbitral immunity be extended to the Financial Industry Regulatory Authority), *report & recommendation adopted*, 2013 WL 1201499 (S.D.N.Y. Mar. 25, 2013); *Funcia v. NYSE Grp.*, No. 07-CV-1745, 2007 WL 4276897, at *3 (S.D.N.Y. Dec. 3, 2007) (in the context of the New York Stock Exchange (NYSE), "'the doctrine of arbitral immunity extends to boards, exchanges and other entities that sponsor and administer arbitrations'") (citation omitted); *Yadav v. N.Y. Stock Exch., Inc.*, No. 91-CV-2256, 1992 WL 197409, *3 (S.D.N.Y. Aug. 4, 1992) (extending arbitral immunity to the NYSE), *aff'd*, 2 F.3d 403 (2d Cir. 1993) (unpublished opinion).

Kumaran's federal claims for damages against the NFA, Kadlec (in his capacity as an NFA board member), and the "Jane Doe" NFA Compliance Officers arise from the NFA's regulatory

7

authority or the NFA's role as an arbitrator. These defendants are therefore immune from suit for damages under the doctrines of absolute immunity that are extended to an SRO, its officers and employees, and to an arbitrator. The Court therefore dismisses these claims as frivolous. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

C.    **Kumaran's claims for injunctive relief**

Kumaran asks this Court to enjoin the NFA "from administering any arbitrations related to the conduct described in this Complaint, for claims under which it is jointly and severally liable as a Defendant, with material conflicts of interests." (ECF 1 at 58.) The Court understands this as a request for this Court to enjoin the pending NFA arbitration involving NRCM and ADMIS, which the NFA has stayed. But the Court must dismiss these claims.[8]

Under the Federal Arbitration Act ("FAA"),[9] "most disputes between parties to a binding arbitration agreement are 'arbitrable,' meaning that they are to be decided by the arbitrators, not the courts." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015). The FAA "explicitly authorize[s] a district court to stay litigation pending arbitration, and to compel arbitration, [but]

---

[8] Kumaran has attached to her complaint a copy of an order issued by the NFA on November 18, 2019, in which the NFA granted NRCM's request to stay the pending arbitration involving NRCM as claimant and ADMIS and other parties as respondents. (ECF 1-13 at 2.) The order states that the stay will become permanent if not lifted by November 13, 2020. (*Id.*) Kumaran cannot assert any claims, including these claims for injunctive relief, on NRCM's behalf because NRCM is a limited liability company and because Kumaran is not an attorney. But because Kumaran appears *pro se* and asserts that NRCM is both a limited liability company and a sole proprietorship, the Court will discuss these claims for injunctive relief as if Kumaran herself is a party to the pending NFA arbitration.

[9] The FAA is not itself a basis for this Court's federal-question jurisdiction; it requires "an independent jurisdictional basis." *See, e.g.*, *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). But because Kumaran asserts other claims under the Court's federal-question jurisdiction, the Court has subject-matter jurisdiction to consider Kumaran's FAA claims.

nowhere does it explicitly confer on the judiciary the authority to . . . . enjoin a private arbitration." *In re Am. Express Fin. Advisors Secs. Litig* ("*Am. Express*"), 672 F.3d 113, 140 (2d Cir. 2011) (citing 9 U.S.C. §§ 3, 4). The United States Court of Appeals for the Second Circuit has, however, allowed courts to enjoin arbitration when "the parties have not entered into a valid and binding arbitration agreement," and has suggested that "a federal court may enjoin an arbitration that the court determines is not otherwise valid," such as when the parties have waived arbitration or when the claims being arbitrated are not within the scope of an arbitration agreement. *Id.* But "[a]ll other 'questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.'" *Citigroup, Inc.*, 776 F.3d at 129 (quoting *Howsam v. Dean Witter Reynolds, Ind.*, 537 U.S. 79, 84 (2002)) (emphasis in original).

Kumaran has alleged nothing to suggest that the parties to the NFA arbitration did not agree to arbitrate, that they waived arbitration, or that the claims being arbitrated are not within the scope of the applicable arbitration agreement. The Court therefore dismisses Kumaran's claims in which she asks this Court to enjoin the pending NFA arbitration for failure to state a claim on which relief may be granted.

**D.    Kumaran's claims under state-law**

A district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the claims under federal law over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any claims under state law Kumaran may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the

9

discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).[10]

**E.     Leave to amend denied**

Courts normally dismiss complaints, or portions thereof, for failure to state a claim on which relief may be granted after giving the plaintiff notice and an opportunity to be heard. *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). But courts are not required to do so if leave to amend would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Because the defects in the complaint cannot be cured with further amendment, the Court declines to grant Kumaran leave to amend.

## CONCLUSION

The Court grants Kumaran's motion for permission for electronic case filing. (ECF 3.) The Court dismisses this action.

The Court denies Kumaran's request for this action to proceed as class action. The Court dismisses Kumaran's claims that she asserts on behalf of the other plaintiffs, as well as any NRCM has assigned to her, without prejudice. The Court dismisses Kumaran's own claims under federal law for damages as frivolous under doctrines of absolute immunity. The Court alternatively dismisses her remaining claims under federal law for injunctive relief without prejudice and for failure to state

---

[10] Kumaran also asserts claims under state law under the Court's diversity jurisdiction. But because she does not specify the state citizenships of all the defendants to show that the parties are diverse, *see* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."), and because she does not specify why her claims satisfy the jurisdictional amount, an amount in excess of the sum or value in excess of $75,000, *see* § 1332(a), the Court understands Kumaran's claims under state law as brought only under the Court's supplemental jurisdiction.

a claim on which relief may be granted. The Court declines to consider Kumaran's claims under state law under the Court's supplemental jurisdiction.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: July 2, 2020

_____<br>
GREGORY H. WOODS<br>
United States District Judge