USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/2020

July 9, 2020

**MEMORANDUM ENDORSED**

<u>**VIA ECF/EMAIL**</u>

Honorable Judge Gregory Woods
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Kumaran et al vs. National Futures Association et al 1:20-Cv-03668*-GHW-SDA

Dear Hon. Judge Gregory H. Woods:

### LETTER MOTION FOR EXTENSION OF TIME

Pursuant to Federal Rules Civil of Procedure 59 (e) and Local Rule 6.3 and 6.4, and Hon. Judge Gregory Wood's Individual Rules of Practice for *Pro-Se* Litigants Rule 3, Plaintiffs seeks an extension of time and notifies the Court that it will file a Motion for Reconsideration and amend or modify or reverse judgement entered on Saturday July 4 2020 (*ECF 13*). Plaintiff respectfully requests, because of the reasons set forth in this letter, it is granted an extension of no less than 28 days in accordance with the time frame set for the in Rule 59 (e.) to file is Motion, or in the alternative is permitted an extension of thirty (35) days until **August 24, 2020.** The current date for filing is Monday, July 20, 2020. There would be no hardship or impact to the proceedings by this extension.

**Plaintiffs' Right to File the Motions:** Plaintiffs right to file a Motion for Reconsideration is governed by FRCP 59. A Rule 59(e) motion may be granted if the moving party demonstrates any of the following: (1) the judgment was based upon a manifest error of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) there is an intervening change in controlling law. *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995).

**Material Significance**: Order ECF 13 was a dispositive motion which has significant consequence to Plaintiffs rights to relief in this action. Plaintiff will raise complex issues of law, which need to be briefed carefully. Finally, Plaintiff is *Pro Se* so additional time is needed to set forth the law carefully so as to ensure a fair adjudication of the substantive issues.

**Computation of Time:** The Court entered judgement on the docket on Saturday July 4, 2020 – a national holiday. Plaintiff only received the completed order, via electronic access on Monday July 6, 2020 as no same-day notification was given from the Court. Under Local Rule 6.3 and 6.4 the computation of time states that a Motion for Reconsideration is fourteen (14) days from entry of the order, bringing the date to Saturday July 18, 2020. Under Local Rule 6.4, since the date falls on the weekend, Plaintiffs current date to file is Monday July 20, 2020. Rule 59(e) however, grants a 28 day time frame to file a motion to amend or modify an order, which would have a return date of Monday August 3, 2020. Plaintiff therefore seeks a short extension until

**August 24, 2020** so that the complex issues of law can be properly placed before the Court and so as to avoid any prejudice in the short-time frame to respond.

Plaintiff has provided herein a brief summary of the key issues to be raised, so that the Court can appreciate that the Motion is substantive and contains critical and complex areas of regulatory laws, and requires an extension of time, so that it will not be prejudiced, for Plaintiffs to adequately brief the subject matter jurisdiction. So the Court can appreciate the complexities of law to be raised, Plaintiff has provided herein (attached as Exhibit A) a non-exhaustive summary of the key issues it will include.

Plaintiff thanks the Court in advance for its relief for a short extension to **August 24, 2020** or in the alternative to the 28 days governed under Rule 59(e) to August 3, 2020 or some other date in August that the Court shall reasonably determine.

Respectfully submitted,

//SSK///

Samantha Siva Kumaran

Nefertiti Risk Capital Management, LLC

Application to extend deadlines denied.

SO ORDERED.

Dated: July 9, 2020

GREGORY H. WOODS
United States District Judge

# **EXHIBIT A**

## EXHIBIT A - BRIEF SUMMARY OF ISSUES TO BE RAISED IN THE MOTION

### *Court manifestly erred in law to apply the doctrine of absolute immunity*

The Court manifestly erred in law to not apply the correct statutory upon which subject matter jurisdiction exists. (7 USC § 25(b)). The NFA, a ***registered futures association*** and its officers are therefore not protected under absolute immunity. The Commodities Exchange Act ("CEA" or "Act") grants private rights of actions to persons (defined under 7 USC § 25(b)(2)), who have been harmed by the actions or inactions of the contract market, and specifically, registered futures associations under 7 USC § 25(b). This private right of action, grants subject matter jurisdiction to this District Court (See 7 USC § 25(c)) including without limitation for traders, and other market participants in the futures markets. Kumaran is a trader, and registered market participant as a Commodities Trading Advisor. NRCM was also a registered market participant as a CTA. Potential other Plaintiffs CTA's are also registered traders.

7 USC § 25 provides that it is the exclusive remedy for violations of the Act, and the Court erred in law, to not apply the doctrines as relates specifically to ***registered futures associations*** in their Order (ECF13), and therefore manifestly erred in law in both (i) its analysis of subject matter jurisdiction under 7 USC § 25(b)(2) and (ii) its analysis of liability and damages, expressly provided for under statute for ***registered futures associations*** and (iii) its failure to analyze the doctrine of "bad faith" which is express. Further, as more fully outlined herein, the fundamental analysis was also unsupported by case law relevant to the CEA.

### *Court manifestly erred in law that damages against the NFA is prohibited under 7 USC 25*

Plaintiffs will also argue that the Court made a manifest error of law to state that damages were frivolous. The case law the Court applied in ECF13 was therefore an error, as it was not related to ***registered futures associations***, and therefore improper subject matter jurisdiction was not correctly applied to the facts and law underlying this Complaint.

7 USC 25 § (b) (2) Liability

> *A **registered futures association** that fails to enforce any bylaw or rule that is **required under section 21 of this title** or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for **<u>actual damages</u>** sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule.*

Supporting this argument, Plaintiff will demonstrate with case law, that the applicable statutory provisions under 7 USC§25(b) do not grant immunity to the NFA as a registered futures association.

Materially, the Court also erred in law to cite case law irrelevant to the jurisdiction in this action (citing cases related to Securities fraud under 10(b) which do not apply) and instead wholly ignoring substantial directly related case law precedent where the NFA, a registered futures association, did have subject matter jurisdiction under 7 USC § 25 (b)(1). (*See* Troyer vs. National Futures Association 16-cv-00146, Order denying Motion to Dismiss dated February 14, 2018).

More similar to this Complaint before S.D.N.Y. Troyer alleged that the NFA ignored its own rules so that it could continue to generate sales activity to support the NFA's funding. Similarly, plaintiff Troyer did have subject matter jurisdiction, as it properly alleged that the NFA failed to enforce its own bylaw or rule, and that it did so for "an improper motivation," *Bosco*, 836 F.2d at 278, or "self interest." *Holladay v. CME Group*, No. 11-cv-8226, 2012 WL 3096698, at *4 (N.D. Ill. July 30, 2012). *See also Vitanza v. Bd. of Trade of City of New York*, No. 00 CV 7393(RCC), 2002 WL 424699, at *6 (S.D.N.Y. Mar. 18, 2002)) "The express private right to sue an exchange for failing to enforce rules that it is required to enforce is limited to situations where the exchange's failure is in 'bad faith.'" *Bosco v. Serhant*, 836 F.2d 271, 276 (7th Cir. 1987); 7 U.S.C. § 25(b)(4). "Bad faith" does not mean "actual participation in fraud (or other misconduct)," but does require a showing of something more than mere negligence. *Bosco*, 836 F.2d at 276. Plaintiffs must prove "that the [defendants] knew that a rule [they were] required to enforce was being violated, or—what is in fact a form of knowledge—deliberately closed [their] eyes so that [they] would not discover what [they] strongly suspected was going on"; *W. Capital Design, LLC*, 180 F. Supp. 2d at 441-42. Similar rulings of Courts enforcing the Act, have supported the private rights of action of traders and market participants for **bad faith.**

Further Courts have noted the distinction between those that are registered futures associations (liable under 7 USC § 25(b)) and those that are under 7 USC § 25(a) as relates to the Commodities Exchange Act. (*See* Ikuno vs. Yip 9th Circuit, 1990). The Court failed to brief the distinct jurisdictional issues, and the distinctions in case law under 7 USC § 25(a) and 7 USC § 25(b). For example in Ikuno Vs. Yip, the Court distinctly noted that the rights of action against **registered futures associations,** were a different standard than those of FCM's. Therefore the registered futures associations do not have gold standard auto-immunity. Their immunity, is subject to the pleading requirements of 7 USC § 25(b)(4) and the pleading *of bad faith*.

*Court manifestly erred in law to not apply the standard of bad faith*

Plaintiff will also argue, without limitation, that the Court manifestly erred in law not to apply the standards that apply under 7 USC § 25(b)(4) of bad faith that apply to registered futures associations. Section 7 USC § 25(b)(4)[1] provides that any liability must be predicated on a showing of "bad faith". Gugliaro v. New Yok Coffee, Sugar & Cocoa Exch., Inc [1996-1998]. The "bad faith" requirement was established more than fifty years ago in the context of an implied right of action. (See e.g. Daniel v. Board of Trade,164 F.2d 815 (7th Circuit 1947), Bishop v. Commodities Ech. 564 F. Supp. 1557 (S.D.N.Y. 1983)) and has been carried over to the *express* right of action (e.g. Sam Wong &Son v. New York Mercantile Exch., 735 F.2d 653 (2d Cir 1984)). The bad faith requirement has been equated with a showing of ulterior motive. (See e.g. Michelson V. Merrill Lynch, Pierce, Fenner and Smith, 619 F/ Supp 727 (S.D.N.Y. 1985); Stroble v. New York Mercantile Exch., 561 F. Supp. 379, 384 (S.D.N.Y 1984). In Western Capital Design, LLC v. New York Mercantile Exchange, 180 F. Supp. 2d 438 (S.D.N.Y.2001), a district court described bad faith requirement as follows: "

*Bad faith requires wrongful knowledge and failure to act on that knowledge with a motive ascribable to malfeasance. Self-interest or other ulterior motive unrelated to proper regulatory*

---

[1] See 7. U.S.C. S(25(b)(4), (CCH Rep ¶1476)

*concerns must constitute the sole or dominant reason unrelated to proper regulatory concerns must constitute the sole or dominant reason for the exchange action or inaction. To succeed on a claim of bad faith, Plaintiffs must establish first that the exchange acted or failed to act with knowledge and second, that the exchanges' action or inaction was the result of an ulterior motive*

The most important standard of analysis for subject matter jurisdiction in this Court is the review of "bad faith" which the Court erred to not do. (*See* also Troyer Id). The Complaint met the standards of pleading of **bad faith** and the Court erred to make no review of the applicable standards under 7 USC § 25(b) of **bad faith** as is relevant. Plaintiffs pleading of bad faith was extensive and met the pleading standards set forward in statute.[2] This Circuit has determined that the bad faith requirement would be satisfied if the Plaintiff could demonstrate that financial seek-interest or personal animosity was a "substantial motivating factor" behind the exchange's failure to take action. (735 F. 2d at 677). The 2nd Circuit has pointed out that the private remedy was designed to reflect "a balance that does not insulate [exchange'] officials from answering serious questions posed by injured traders." (735 F.2d at 677) The Court commented that "[t]o do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework adopted by Congress." Id. Therefore the private right of action by Plaintiffs in this action are meritorious and correctly brought under statue 7 USC § 25(b) which does not insulate the registered futures associations from acts of bad faith. The Court announced the following definition of bad faith as Self interest or other ulterior motive unrelated to proper regulatory concerns is alleged to constitute the sole or dominant reasons for the exchange action [or inaction], a complaint is sufficient.

> *7 USC (b) (4) A person seeking to enforce liability under this section must establish that the registered entity [3] **registered futures association**, officer, director, governor, committee member, or employee acted in **bad faith** in failing to take action or in taking such action as was taken, and that such failure or action caused the loss.*

Therefore Plaintiffs complaint both have subject matter jurisdiction under 7 USC § 25(b)(4) and the pleading met the requisite standards of law.

*Court manifestly erred in law that liability and damages of the NFA Compliance Officers Jane Doe 1, Jane Doe 2 and Tom Kadlec is permissible under 7 USC 25*

Plaintiffs, without limitation, will also present substantial argument that the Court erred in law to apply the incorrect subject matter jurisdiction under 7 USC § 25(b)(3) as applies directly to employees Jane Doe 1 and Jane Doe 2 and committee members Tom Kadlec, of the registered futures association. This error was fatal as Plaintiffs claims are supported by statute.

> *7 USC 25 § (b) (3) Any individual who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the*

---

[2] *See e.g.* ECF 1 ¶1, ¶4, ¶44, ¶88, ¶93, ¶103-108, ¶119, ¶¶123-124, ¶170 ¶,227, ¶232, ¶¶243-244, ¶250, ¶¶264-267, ¶¶281-283, ¶¶296-297).

> *chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.*

### Plaintiffs have Standing against the Registered Futures Association

Section 7 USC § 25(b) provides that an action may be brought by any person engaged in a transaction "on or subject to" the rules of a contract market or licensed board of trade who suffers damage as a result of the rule enforcement failures[3]. In the case at hand Plaintiff(s) Kumaran and NRCM are traders and are other customers and CTA's (Commodities Trading Advisors') are traders. Circuits have only restricted that only non-traders may not invoke the remedy.[4] Therefore as a trader, Plaintiff(s) as traders, have standing to invoke private rights of actions.

Further Courts have pointed out, that the private remedy was designed to reflect " a balance that does not insulate exchange officials from answering serious questions posed by injured traders".[5] Therefore, as clearly set forth, the doctrine of absolute immunity of the registered futures association is not permitted, and the Court manifestly erred in law.

### Court manifestly erred in law to not apply controlling law in the standards of immunity

Further, without limitation, Plaintiffs will argue in detail how the standards of auto-immunity are not automatic, even in the cases of SRO's that are **not registered futures associations.** The Court erred in law, not to properly apply more recent case law in the 2nd circuit also doesn't support "blanket" auto-immunity to SRO's even in securities laws. In ***City of Providence, et al. v. BATS Global Markets, Inc., et al.*** (2nd Cir, 2015), the appeals court overturned the US District Court's dismissal of the 2014 class action lawsuit brought by institutional investors against the exchanges for alleged manipulative and deceptive conduct that created a two-tier market, which favors high-frequency traders. The institutional investor lead plaintiffs alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 was filed against an SRO – in this case the SEC and other exchanges.

That case is again distinct because Plaintiffs' causes are under the Commodities Exchange Act, and specifically 7 USC § 25(b) (and *not* Section 10(B) of the 34 Act), whereas the cases in City of Providence, first and foremost the claims were against the SEC under 10(b), where unlike 7 USC § 25(b), no specific carve out of the private rights of action of traders exists. The SRO in City of Providence was the SEC and not a ***registered futures association***. Further laws of commodities regulations, and the CEA are therefore distinct and comparable and the liabilities and

---

[3] 7 U.S.C. §25(b)(4) CCH ¶ Rep 1476
[4] American Agric. Movement V. Board of Trade of the City of Chicago 977 F. 2d 1147 (7th Cir 1992( (national farmers' organization lacked standing to complain of alleged injury in connection with market manipulation)
[5] 735 F. 2d 677. The Court commented that "[t]o do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework adopted by Congress." *Id*

damages for registered futures associations, cannot be compared to case precedent outside of the Commodities Exchange Act. The Court erred in law here also to apply securities laws instead of the Commodities Exchange Act.

Nonetheless the 2nd circuit – then reversed the automatic presumption of immunity – for further analysis of which specific activities were or were not protected – again with the footnote that this was not a *registered futures association*. In City of Providence, initially the District Court incorrectly determined that the exchanges were immune from private lawsuits as self-regulatory organizations. However, in the opinion authored by Judge John M. Walker, a panel of the Second Circuit vacated the district court's dismissal of the claims, finding that the plaintiffs adequately pleaded their fraud claims against the exchanges and that the exchanges ***were not immune*** from suit as SROs – and that absolute immunity was not automatic. Ignoring for an instance the material distinction that NFA, ***is a registered futures association***, which is specifically exempt from immunity under 7 USC 25(b)(c)(d), its liability and damages is under the Commodities Exchange Act, and not the Securities law 10(b). The 2nd Circuit also found other reasons why the SRO's had no immunity.

First, the Second Circuit determined that the defendant exchanges were acting in their commercial interests and not in a regulatory capacity and thus, they were not entitled to the same protections of immunity as the SEC. In short, the exchanges were "acting as a regulated entity – not a regulator." Second, the panel determined that the plaintiffs adequately pleaded that "the exchanges were co-participants with firms in the manipulative scheme and profited by that scheme," Similar allegations are pled in the Plaintiff's complaint - that in this instance – the NFA were co-participants with ADMIS and Vision in the scheme – and also profited from the activity (*See* e.g. ECF 1, ¶102, ¶108, ¶286-289). Moreover, the City of Providence case law is still not completely applicable because the SEC is not a ***<u>registered futures association</u>*** that falls under the exemptions of liability of 7 USC § 25(b).

Therefore for both of the reasons above, the NFA, ***a registered futures association***, and its select employees, are not exempt from liability. As a matter of simplicity, if all registered futures associations under 7 U.S.C. § 25(b) were blanket "immune" – then this piece of statutory legislation would be completely meaningless or a legal fallacy. Then no-one could ever bring legal action against a ***registered futures association***. The key distinction in Plaintiff's case, is that under 7 USC25 (b)(c)(d), the specific exception to absolute immunity is for ***<u>registered futures associations</u>*** which does allow for a private right of action – for traders and market participants - and therefore renders Plaintiff's claims valid to have subject matter jurisdiction in this district.

*Court also erred in law in comingling of liabilities and damages of Defendants, Defendant Tom Kadlec as NFA Member is different from Defendant NFA.*

Additionally the Court erred by *commingling* Defendants and failed to distinguish that Defendant Tom Kadlec, Board Member and on the Membership Committee of the NFA, has a dual function serving simultaneously as the Chief Executive Officer of ADM Investor Services ("ADMIS"). Further the Court erred to note that *committee members* have direct liability under 7 USC §25(b)(3) for bad faith acts, and therefore Kadlec is directly liable.

> *7 USC § 25(b)(3)  Any individual who, in the capacity as an officer, director, governor,  **committee member**, or employee of … **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction.*

The Complaint is clear that Kadlec was not acting in a regulatory capacity – but squarely misusing his role on the NFA Board – duplicitously with his commercial interest role as CEO of ADMIS - with a purely profit motivation - directing a fraudulent scheme, enlisted various NFA employees as operatives, that funneled millions of dollars of unauthorized and ill-gotten gains – impacting his own personal profits and to also benefit his company ADMIS. The Complaint met the pleading standards of **bad faith** requisite to subject matter jurisdiction on Kadlec. Therefore the Court erred in law to commingle liabilities that Defendant Kadlec was not a performing any regulatory function whatsoever – and is not immune – for his role in the scheme. Therefore similar to City of Providence, Kadlec, as NFA Board Member and Committee Member,  was not acting as a regulator – but as a regulated entity. Further the Complaint alleges Kadlec caused and committed acts of fraud. (*See* e.g. ECF1 ¶288). Likewise in City of Providence, – even under Securities laws 10(b), there is no absolute immunity. In summary, Kadlec, instigated a scheme to secure millions of dollars of financial benefit, (directly for his own profit), to steal and disenfranchise small traders, CTA's, and customers, including Plaintiff  by both disseminating their confidential trading account to competitors and overcharging unauthorized fees. Acting purely with self-interest and profit motive, after defrauding dozens of hist customers, CTA and Plaintiff, he then abused his role on the NFA Membership Committee, to engage in direct competition with Vision Investment Advisors (*See* e.g. ECF1, ¶4, ¶296) Tellingly Plaintiff Kumaran has learned that Defendant Kadlec has retained distinct and separate counsel for this action, whereas the Defendants NFA, Jane Doe 1, and Jane Doe 2  have combined counsel that is on record in prior actions for the NFA. (*See* Attachments 1 and 2) Therefore NFA and Defendant Tom Kadlec cannot be assumed to have similar standards of immunity - further supporting that commingling Defendants in the Order ECF 13, was also a manifest error of law.

The doctrines apply differently to each of the four (4) defendants, and the roles they played in the fraud, and knowledge and actions and inactions. Such commingling is premature in dismissing liability without preliminary discovery. Further the Court failed to distinguish and discuss the private rights of action and damages that accrue for NFA officers and employees Jane Doe 1 and Jane Doe 2which were properly plead under 7 USC § 25 (b)(3) which also directs liability to those select employees who participated in the fraudulent scheme. The Court erred to address the standard of immunity is applied by the pleading of "bad faith"- See Supra. 7 USC § 25(b)(4).

*Court erred in law for substantiality*

Plaintiffs motion will address that the Court erred to dismiss the Complaint on grounds of substantiality because it failed to apply the correct statute granting jurisdiction under 7 USC § 25(b) and provided no opportunity to brief the plausibility or foundations of the claims.  "The test for dismissal is a **rigorous** one and if there is any foundation or plausibility to the claim, federal jurisdiction exists." 13D Wright & Miller § 3564, pp. 244–45. As stated supra, The Court erred to

apply the appropriate standard, - which requires detailed and rigorous analysis of the pleading of "bad faith" as the sole exemption of a futures association, which the Complaint pled with substantiality (See e.g. ECF1 ¶1, ¶4 ).[6] Bad faith under 7 USC § 25(b)(4) sustains subject matter jurisdiction in Federal Court against a registered futures association. Therefore the Court failed to supply the requisite analysis to support a ruling that the Complaint is "so attenuated and unsubstantial as to be absolutely devoid of merit", wholly ignoring the CEA, 7 USC § 21, 7 USC § 25(b)(4), and the distinctions explained herein. Plaintiffs motion will show beyond a preponderance of evidence that each and every one of the causes of action is plausible and has merit.

### Court erred in law for centrality

Plaintiffs' motion will address that Court erred in law to dismiss the Complaint without discussion of centrality. The Supreme Court has also recognized that a case will arise under federal law in "certain . . . state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

### Court manifestly erred in law to dismiss Federal law and State Law Claims

Because the Courts' analysis of subject matter jurisdiction was inherently flawed (as discussed above), Plaintiff will further argue, that the Court's dismissal of validly pled Federal Law and State Law is moot, and the claims were therefore incorrectly dismissed, and were incorrectly assessed in advance of a 12(b)(6) motion. Plaintiff will also argue and demonstrate explicitly how it met the cause of action requirement in each of the causes pled and subject matter exists for all of them.

### Court erred in law and fact to address "reasons" why the Arbitration was stayed

Plaintiff, will also argue the Court erred in law and in fact, on the <u>reasons</u> the Arbitration was stayed which also gives subject matter jurisdiction ask to the Court and failed to acknowledge the issues of fraud, evident partiality, bias, corruption and also its subject matter jurisdiction under 7 USC § 25(b). Therefore under 7 USC § 25(b) the claims have to be brought here in S.D.N.Y. A **registered futures association** that fails to enforce any bylaw or rule that is ***required under section 21 of this title*** or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for <u>**actual damages. Therefore before the Court is the commitments required under section 21 of this title, and also the bylaws and rules of the Commission.**</u> Without limitation those rules include those under 7 USC 21(10). It is also an error of law to confused the restrictions under 7 USC § 25(a) with those specifically permitted for registered futures associations. Further the Court manifestly erred in its legal conclusion that Plaintiff is not bringing any claims against the "Arbitrators". The Court also erred in fact and law as the case law cited does not apply, as Plaintiffs' claims are <u>***not***</u> against the "Arbitrators" themselves.

Further while the Order acknowledges the "stay" of the arbitration, because of the inherent earlier jurisdictional error, that the NFA is subject to liability under 7 USC 25 § (b)(2)-(4), and those rules includes those related to its administering or arbitration. (See 7 USC § 21(b)(10)). The pleading standard as applied to registered futures associations is one of bad faith and the bad faith

---

[6] *See also e.g..* ECF 1 ¶1, ¶4, ¶44, ¶88, ¶93, ¶103-108, ¶119, ¶¶123-124, ¶170 ¶,227, ¶232, ¶¶243-244, ¶250, ¶¶261-264, ¶¶281-283, ¶¶296-297).

Page 11

application of its rules. The Complaint pleads correctly the standard of bad faith in its failure to administer a fair, equitable, and expeditious Arbitration, and a direct financial and pecuniary interest in the outcome. (*See* ECF1, ¶156, ¶¶102,107). This Court therefore not only has jurisdiction under 7 USC 25 § (b)(2)-(4), 7 USC § 25 (c) but also under the look through provisions of 9 U.S.C. §9-11.

The Court erred in law as the issues before the Court, in this proceeding, go beyond arbitrability, and is not related to a dispute between the parties (in this case Plaintiff and ADMIS) to an Arbitration agreement.[7] The Court also failed to analyze that the Arbitrators have already concurred they have no jurisdiction on the claims against the NFA which were rightfully brought in this district under 7 USC § 25(c).

> **7 USC § 25 (c) Jurisdiction; statute of limitations; venue; process** *The United States district courts shall have exclusive jurisdiction of actions brought under this section. Any such action shall be brought not later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.*

Further Plaintiffs' claims go far beyond the issues of the Arbitration, but to underlying issues of Defendants' co-conspirator in the underlying fraud similar to City of Providence vs. Bats and their liability for actual damages under 7 USC § 25 (b)(3) – *unrelated* to the Arbitration itself. The Court erred in law and fact not to address the other meritorious claims for instance of aiding and abetting in fraud and violations of the Commodities Exchange Act for which Plaintiffs do have a private right of action.

*Court erred in law and fact to address Evident Partiality, Fraud and Corruption under FAA*

Further this Court erred in fact and law, as it failed to review the facts of "evident partiality." (*See* e.g. ECF1 ¶131, ¶145, *See also* ECF1 Exhibit 10, Pg.10-11 ). Courts have agreed that "evident partiality" means "an appearance of bias" standard as requiring an objective assessment of whether a reasonable person would believe an arbitrator was partial to a party to the arbitration.  In the Second Circuit, "evident partiality within the meaning of 9 U.S.C. §10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *JCI Communs, Inc. v. IBEW, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003); *Nationwide Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir. 2002); *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500-501 (4th Cir. 1999).  "Among the circumstances under which the evident partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties." *Id.* 4 4 *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004) In this instance, Plaintiffs

---

[7] Noting also that Vision parties, Lazzara (the brokers) and Plaintiffs were never parties to an Arbitration agreement. Further Plaintiffs and NFA are also not parties to an Arbitration agreement, those rights are governed by statute 7 USC 25(b) and (c) to be subject to jurisdiction in this Court.

have pled clearly the role of Defendants and their pecuniary interest in the Arbitration were materially conflicts.  Further, "an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial to one side.5  5 *Applied Indus. Materials Corp. v. Ovalar Making Ticaret Ve Sanayi, A.S*., 492 F.3d 132 (2nd Cir. 2007).  The American Arbitration American Code of Ethics and in particular, the ARIAS Code of Conduct, arbitrators have an affirmative obligation to disclose "any interest or relationship likely to affect their judgment. Any doubt should be resolved in favor of disclosure." Otherwise, an arbitration award may be vacated under the Federal Arbitration Act due to the "evident partiality" of the arbitrator. Along with the case law, arbitrators have duties to disclose pursuant to the American Arbitration Association Code of Ethics including, any known direct or indirect financial or personal interest in the outcome of the arbitration.

*Court manifestly erred in law in failure to state a claim under a 12(b)(6) ruling Injunctive Relief*

The standard of law in a Rule 12(h)(3) ruling on subject matter jurisdiction is expressly not to include an analysis of the merits of a claim. Plaintiff did not intend to file for Injunctive Relief, but for Declaratory Relief. To the extent the Court viewed that as a pleading error or deficiency, Plaintiffs should have been granted leave to amend. Plaintiff intended to file for Declaratory Relief, Further under a 12(h)(3) dismissal, the Court erred to state "failure to state a claim" for Declaratory Relief. 28 U.S.C. § 1331 confers onto federal courts subject matter jurisdiction over all "federal questions," which the statute defines as "all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs have pled both diversity and also relevant US statutory code 7 USC § 25(b) granting this District subject matter jurisdiction for registered futures association. Plaintiff's motion will also argue that the Court however went further erred in law to rule outside of the four corners of a 12(h)(3) motion, and then erred to dismiss the Complaint for "failure to state a claim".  In the absence of a motion to dismiss is a 12 (b)(6) motion, the Court is did not follow the requisite analysis under a 12(b)(6) motion and erred in law to make a dismissal for failure to state a claim. Plaintiff will argue, that not only did Plaintiff's complaint properly met all the pre-requisite pleading standards for each of the causes of action to survive a 12(b)(6) motion. Plaintiff made a typo in using the word "enjoin". Its clear intention was to file a Motion for Declaratory Relief under FRCP 57, and it was not its intention to file for Injunctive Relief. To the extent this was a typo, Plaintiffs should be entitled to leave to amend, as it intended to do as a matter of right under Rule 15(a)(1).

*Court erred in law in ruling without a Declaratory Judgment Motion under FRCP 57*

Because the Complaint was dismissed prematurely, Plaintiffs were not afforded fair opportunity to file a motion for Declaratory Relief  under FRCP 57. Such motion would have properly at that time, articulated the grounds for seeking Declaratory Relief. Further because Plaintiff had not yet served its Complaint in accordance with the ninety (90) day rule (FRCP Rule 4(m), Plaintiff fully intended to file that additional motion and add the necessary supporting memoranda.

Plaintiff's Motion for Declaratory Relief is permitted under FRCP57.  FRCP 57, provides the standard of procedures for obtaining a declaratory judgment under 28 U.S.C. §2201 The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action. Plaintiff may have used

the wrong terminology of "enjoin". The Court erred in law and fact, as it failed to understand that Plaintiff sought a request for Declaratory Relief related to the material conflicts of interest, fraud, corruption and bias, and evident partiality under the Federal Arbitration Act, §9-§11 for which as stated supra, falls under the subject matter jurisdiction of this Court. Moreover,

Plaintiffs had fully intended to file a Motion under FRCP 57 for Declaratory Relief together with supporting law. This motion was premature to the filing of the Complaint and therefore was not addressed in the Complaint. The federal Declaratory Judgment Act provides the mechanism for granting declaratory relief in federal diversity cases.[8] That Act provides that in "a case of actual controversy ... any court of the United States may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201. An "actual controversy" is defined as "one that is real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[9]  When making a determination as to whether declaratory relief is proper, "the Second Circuit has long instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."[10] For these reasons also, Plaintiffs will assert the dismissal was premature and outside of a 12(h)(3) motion and/or manifestly unjust in its inability to amend of file its motion under Rule 57. Further the ruling was unjust that it did not toll the statute of limitations to the original date of filing so as not to prejudice Plaintiff.

*Court erred in law to not grant leave to amend as a matter of right*

Plaintiffs will also argue that, because the Court erred to determine Plaintiffs' private right of action as discussed above, Court erred in law or was manifestly unjust in not permitted Plaintiffs to amend the Complaint as a matter of right under FRCP 15(a)(1), and to not serve within ninety (90) days,  To the extent there are deficiencies, Plaintiffs have a right to amend and certainly not with prejudice to tolling the statute of limitations to the date of filing of May 8, 2020.

*Court erred to not assign NRCM claims as a Sole Proprietor or grant leave to appoint counsel*

Further Plaintiffs will argue that NRCM is pled as a sole proprietor and opened its account and was registered with the NFA as a sole proprietor (ECF1 ¶114). Therefore NRCM may be permitted to appear Pro-Se. In the event it is determined NRCM is instead deemed a sole-proprietor LLC, even though its futures registrations and accounts at ADMIS were as sole proprietors, the Court erred in law, not to grant either leave to amend, or afford NRCM the chance to retain counsel to represent, and abrupt dismissal was manifestly unjust. As the Court assessed a sole proprietor may be permitted to proceed Pro-Se. Nonetheless, any further analysis should not prejudice NRCM from retaining counsel if it is deemed necessary that it cannot proceed Pro-Se or the claims are not rightfully assigned to Kumaran. Further the Court failed to analyze the rights as a successor and assignee, if NRCM is no longer active and is rightfully being dissolved that Plaintiff. NRCM was significantly harmed by the co-conspirator actions of ADMIS, NFA and Vision, in their scheme to thwart fair market competition and intentionally harm small businesses and CTA's .That entity

---

[8] *See American Standard, Inc. v. Oakfabco, Inc.,* 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007).
[9] *See Coggins v. County of Nassau,* 615 F. Supp. 2d 11, 19 (E.D.N.Y. 2009) (internal quotation and citation omitted).
[10] *See Id.* at 20 (*citing Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir. 1969)).

is dead and un-operational due to the direct harm caused by the actions in this Complaint. New York permits the legal dissolution of sole-proprietors and single member LLC's (pass through). NRCM is no longer registered at the NFA (the entity is dead). All rights and liabilities and these claims are properly assigned individually to Kumaran who in its individual capacity remains a member at the NFA. Therefore Kumaran is the rightful successor and assign of the claims. In any event, the Court erred to either permit leave to amend, or to permit NRCM to retain counsel, or properly apply the rules of assignment which are permitted. Further under 18 USC 1831 el seq, the Court erred to discuss that Plaintiff Kumaran in its individual capacity is the sole owner of the trade secrets and trading strategies in question and therefore Kumaran individually has it own rights of action under the Defend Trade Secrets Act and its own rights as a trader. That analysis was also omitted in a subject matter jurisdiction motion under 12(h)(3).

*Court erred in law to not granting leave to amend or applying liberal standards to Pro Se*

Plaintiff will argue without limitation that the Court erred in law, to not apply a more liberal standing of pleading for Pro-Se litigants, and not permit a right to amend. Plaintiff also had a right amend as a matter of right, within 90 days, under FRCP Rule 4(m).  It is also well established, though, that "the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases); see also Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) ("Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [a court] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency.").  Van Hoven v. City of N.Y., 16cv2080 (GBD) (DF), 10-11 (S.D.N.Y. Aug. 21, 2018). Therefore the Court erred in law to jump-the-gun and not apply the standards of pleading, for failure to state a claim and unilaterally dismiss claims without analysis.

*Conclusions*

In summary, this Court manifestly erred in law in its determination of subject matter jurisdiction under Federal Rules of Civil Procedure 12.(h)(3). Plaintiffs motion is crucial and seeks to be reasonably granted sufficient time to brief this complex and important jurisdictional issues as Plaintiffs' case was wrongly dismissed. Plaintiff is *Pro Se*, Plaintiff asserts that a reasonable extension from July 20, 2020 until **August 24, 2020** is reasonable to brief the substantive issues that are material to a fair and expansive case law supporting why it has unequivocal subject matter jurisdiction. In addition ongoing disruptions due to Covid 19 impacting New York City small businesses and residents and remote working also give good case for a short and reasonable extension.

Plaintiff respectfully demonstrates in this letter, that its upcoming motion contains substantive issues and laws, that Plaintiff(s) are entitled to challenge, and these arguments are not frivolous or in bad faith, but amount to substantive statutory rights of Plaintiffs' subject matter jurisdiction and its private rights to action, which were specifically mandated under 7 USC 25(b).

It is firmly established that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case. See generally 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, p. 196, n. 8 and cases cited (2d ed.1990). As stated in *Bell v. Hood,* 327

U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Rather, the district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.,* at 685, 66 S.Ct.,

In the alternative, Plaintiffs will respectfully request this Court reverse Order 13, and respectfully permit Plaintiff to serve Defendants in accordance with the attached waivers of services from the respective counsel (See Attachments 1 and 2) under FRCP Rule 4(d)) and these issues are deferred under a Rule 12(b)(6) motion, as Plaintiff's subject matter jurisdiction is founded in the Constitution and Plaintiffs claims were pled to the required standard of law. Plaintiff in this case seeks leave to amend the Complaint to correct the class action deficiencies, and to submit alongside the Motion of Declaratory Relief, with supporting memorandum of law.

Plaintiff ends this letter with a note that it is a long standing minority woman business-owner, entrepreneur and resident in New York City for over twenty five years. Under no circumstance, would Plaintiff file a frivolous Complaint or act in bad faith. Plaintiff carefully researched and a pled a detailed Complaint that was properly brough in subject matter jurisdiction in this District (as explained herein under 7 USC § 25), and each cause of action was properly pled. Plaintiff thanks the Court in advance for its consideration and prays for relief in the extension of time so that its rights are not prejudiced.

Respectfully submitted

//SSK//

Samantha Siva Kumaran


Dated:  July 9, 2020