# IN THE UNITED STATES DISTRICT COURT
## SOUTHTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Et al | ) Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | ) Judge: Hon Gregory H. Woods |
| | ) Magistrate Judge: Stewart D. Aaron |
| -against- | ) |
| | ) **ORAL ARGUMENT** |
| NATIONAL FUTURES ASSOCIATION, LLC | ) **REQUESTED** |
| Et al., | ) MOTION FOR RECONSIDERATION |
| *Defendants,* | ) |

## PLAINTIFFS MEMORANDUM IN LAW FOR MOTION FOR RECONSIDERATION

## LEGAL ARGUMENT

*A.* *Court Manifestly Erred in Law in No Absolute Immunity for Registered Futures Associations*
   *(i)* *Court manifestly erred in law to apply the doctrine of absolute immunity*

The Court manifestly erred in law to not apply the correct statutory laws upon which subject matter jurisdiction exists. (7 USC § 25(b)). The NFA, a ***registered futures association*** and its officers are therefore not protected under absolute immunity.  The Commodities Exchange Act ("CEA" or "Act") grants private rights of action to persons (defined under 7 USC § 25(b)(2)) who have been harmed by the actions or inactions of the futures market, and specifically ***registered futures associations***. This private right of action grants subject matter jurisdiction to this District Court (7USC§25(c)) including without limitation for traders and other market participants in the futures markets. Kumaran is a trader and registered market participant as a Commodities Trading Advisor ("CTA"). NRCM was also a registered market participant as a CTA. Potential other Plaintiffs customers and CTA's are also registered traders or market participants.

7 USC § 25 provides that it is the exclusive remedy for violations of the CEA, and the Court erred in law, to not apply the doctrines as relates specifically to ***registered futures associations*** in their Order (ECF13), and therefore manifestly erred in law in both (i) its analysis of subject matter jurisdiction under 7 USC § 25(b)(2) and (ii) its analysis of liability and damages, expressly provided for under statute for ***registered futures associations*** and (iii) its failure to analyze the doctrine of "bad faith" which is express. Further, as more fully outlined herein, the fundamental analysis was also unsupported by case law relevant to the CEA.

### (ii)    *Court manifestly erred in law that damages against the NFA is prohibited under 7 USC 25*

Plaintiffs also argues that the Court made a manifest error of law to state that damages were frivolous. The case law the Court applied in ECF13 was therefore an error as it was not related to **registered futures associations** and therefore improper subject matter jurisdiction was not correctly applied to the facts and law underlying this Complaint.

Under 7 USC 25 § (b) (2) Liability is as follows:-

> *A **registered futures association** that fails to enforce any bylaw or rule that is **required under section 21 of this title** or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for **actual damages** sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule.*

Supporting this argument the Court ignored material case law, that shows the applicable statutory provisions under 7 USC§25(b) does ***not grant immunity*** to the NFA as a registered futures association.  Materially, the Court also erred in law to cite case law irrelevant to the jurisdiction in this action (citing cases related to Securities fraud under 10(b) which do not apply) and instead wholly ignoring substantial directly related case law precedent where the NFA, a registered futures association, did have subject matter jurisdiction under 7 USC § 25 (b)(1). (*See Troyer vs. National Futures Association 16-cv-00146*, Order denying Motion to Dismiss dated February 14, 2018). More similar to this Complaint before S.D.N.Y. Troyer alleged that the NFA ignored its own rules so that it could continue to generate sales activity to support the NFA's funding. Similarly, plaintiff Troyer did have subject matter jurisdiction, as it properly alleged that the NFA failed to enforce its own bylaw or rule, and that it did so for "an improper motivation," *Bosco*, 836 F.2d at 278, or "self interest." [1] "The express private right to sue an exchange for failing to enforce rules that it is required to enforce is limited to situations where the exchange's failure is in '***bad faith***.'" [2] 7 U.S.C. § 25(b)(4). "***Bad faith***" does not mean "actual participation in fraud (or other misconduct)," but does require a showing of something more than mere negligence. *Bosco*, 836 F.2d at 276.

The Court in its manifest errors in law and fact failed to provide one discussion of ***bad faith***. In Bosco and Troyer, subject matter jurisdiction was granted, when Plaintiffs must prove "that the [defendants] knew that a rule [they were] required to enforce was being violated, or—what is in fact

---

[1] See also *Holladay v. CME Group*, No. 11-cv-8226, 2012 WL 3096698, at *4 (N.D. Ill. July 30, 2012). *See also Vitanza v. Bd. of Trade of City of New York*, No. 00 CV 7393(RCC), 2002 WL 424699, at *6 (S.D.N.Y. Mar. 18, 2002))
[2] *Bosco v. Serhant*, 836 F.2d 271, 276 (7th Cir. 1987);

a form of knowledge—deliberately closed [their] eyes so that [they] would not discover what [they] strongly suspected was going on"; [3]. Similar rulings of Courts enforcing the Act, have supported the private rights of action of traders and market participants for **bad faith.**

Further Courts have noted the distinction between those that are **registered futures associations** (liable under 7 USC § 25(b)) and those that are under 7 USC § 25(a) as relates to the Commodities Exchange Act.[4] The Court  failed to brief the distinct jurisdictional issues, and the distinctions in case law under 7 USC § 25(a) and 7 USC § 25(b). For example in *Ikuno Vs. Yip*, the Court distinctly noted that the rights of action against  **registered futures associations,** were a different standard than those of FCM's. Therefore the registered futures associations do not have gold standard auto-immunity. Their immunity, is subject to the pleading requirements of 7 USC § 25(b)(4) and the pleading *of bad faith*.

### (iii)   *Court manifestly erred in law to not apply the standard of bad faith*

Plaintiff also argues without limitation that the Court manifestly erred in law not to apply the standards that apply under 7 USC § 25(b)(4) of bad faith that apply to registered futures associations. Section 7 USC § 25(b)(4)[5] provides that any liability must be predicated on a showing of "bad faith". *Gugliaro v. New Yok Coffee, Sugar & Cocoa Exch., Inc* [1996-1998]. The "**bad faith**" requirement was established more than fifty years ago in the context of an implied right of action[6] (and has been carried over to the **express** right of action [7]The bad faith requirement has been equated with a showing of ulterior motive.[8] A district court described bad faith requirement as follows:

> **Bad faith** *requires wrongful knowledge and failure to act on that knowledge with a motive ascribable to malfeasance. Self-interest or other ulterior motive unrelated to proper regulatory concerns must constitute the sole or dominant reason unrelated to proper regulatory concerns must constitute the sole or dominant reason for the exchange action or inaction. To succeed on a claim of **bad faith**, Plaintiffs must establish first that the exchange acted or failed to act with knowledge and second, that the exchanges' action or inaction was the result of an ulterior motive*

The most important standard of analysis for subject matter jurisdiction in this Court is the review of "bad faith" which the Court erred to not do. (*See* also Troyer Id). The Complaint met the standards

---

[3] *W. Capital Design, LLC*, 180 F. Supp. 2d at 441-42

[4] *See Ikuno vs. Yip* 9th Circuit, 1990.

[5] See 7. U.S.C. S(25(b)(4), (CCH Rep ¶1476)

[6] See e.g. *Daniel v. Board of Trade,164 F.2d 815 (7th Crct 1947)*, *Bishop v. Commodities Ech. 564F Supp.1557 (S.D.N.Y. 1983))*

[7] (e.g. *Sam Wong &Son v. New York Mercantile Exch., 735 F.2d 653 (2d Cir 1984)*).

[8] See e.g. *Michelson V. Merrill Lynch, Pierce, Fenner and Smith, 619 F/ Supp 727 (S.D.N.Y. 1985)*; *Stroble v. New York Mercantile Exch., 561 F. Supp. 379, 384 (S.D.N.Y 1984)*. In *Western Capital Design, LLC v. New York Mercantile Exchange, 180 F. Supp. 2d 438 (S.D.N.Y.2001),*

of pleading of **bad faith** and the Court erred to make no review of the applicable standards under 7 USC § 25(b) of **bad faith** as is relevant. Plaintiffs' pleading of **bad faith** was extensive and met the pleading standards set forward in statute.[9] This Circuit has determined that the **bad faith** requirement would be satisfied if the Plaintiff could demonstrate that financial seek-interest or personal animosity was a "substantial motivating factor" behind the exchange's failure to take action.[10] The 2nd Circuit has pointed out that the private remedy was designed to reflect "a balance that does not insulate [exchange'] officials from answering serious questions posed by injured traders." (735 F.2d at 677)

The Court commented  that "[t]o do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework adopted by Congress." Id. Therefore the private right of action by Plaintiffs in this action are meritorious and correctly brought under statue 7 USC § 25(b) which does not insulate the registered futures associations from acts of bad faith. The Court announced the following definition of **bad faith** as self- interest or other ulterior motive unrelated to proper regulatory concerns is alleged to constitute the sole or dominant reasons for the exchange action [or inaction], a complaint is sufficient.

> *7 USC (b) (4)  A person seeking to enforce liability under this section must establish that the registered entity [3] registered futures association, officer, director, governor, committee member, or employee acted in **bad faith** in failing to take action or in taking such action as was taken, and that such failure or action caused the loss.*

Therefore Plaintiffs complaint both have subject matter jurisdiction under 7 USC § 25(b)(4) and the pleading met the requisite standards of law.

> *(iv)    Court manifestly erred in law that liability and damages of the NFA Compliance Officers Jane Doe 1, Jane Doe 2 and Tom Kadlec is permissible under 7 USC 25*

Plaintiffs, without limitation, also present substantial argument that the Court manifestly erred in law to apply the incorrect subject matter jurisdiction under 7 USC § 25(b)(3) as applies directly to employees Jane Doe 1 and Jane Doe 2 and committee members Tom Kadlec, of the registered futures association. This error was fatal as Plaintiffs claims are supported by statute.

> *7 USC 25 §  (b) (3)  Any individual who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered*

---

[9] *See e.g.* ECF 1 ¶1, ¶4, ¶44, ¶88, ¶93, ¶103-108, ¶119, ¶¶123-124, ¶170 ¶,227, ¶232, ¶¶243-244, ¶250, ¶¶264-267, ¶¶281-283, ¶¶296-297).
[10] 735 F. 2d at 677.

*futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.*

**(v)      Plaintiffs have Standing against the Registered Futures Association**

Section 7 USC § 25(b) provides that an action may be brought by any person engaged in a transaction "on or subject to" the rules of a contract market or licensed board of trade who suffers damage as a result of the rule enforcement failures[11]. In the case at hand Plaintiffs Kumaran and NRCM are traders and are other customers and CTA's (Commodities Trading Advisors') are traders. Circuits have only restricted that only non-traders may not invoke the remedy.[12] Therefore as a trader, Plaintiff(s) as traders, have standing to invoke private rights of actions

Further Courts have pointed out, that the private remedy was designed to reflect " a balance that does not insulate exchange officials from answering serious questions posed by injured traders".[13] Therefore, as clearly set forth, the doctrine of absolute immunity of the registered futures association is not permitted and the Court manifestly erred in law.

**(vi)      Court manifestly erred in law to not apply controlling law in the standards of immunity**

Further, without limitation, the standards of auto-immunity are not automatic, even in the cases of SRO's that are ***not registered futures associations.*** The Court erred in law, not to properly apply more recent case law in the 2nd circuit also doesn't support "blanket" auto-immunity to SRO's even in securities laws. In ***City of Providence, et al. v. BATS Global Markets, Inc., et al.*** (2nd Cir, 2015), the appeals court overturned the US District Court's dismissal of the 2014 class action lawsuit brought by institutional investors against the exchanges for alleged manipulative and deceptive conduct that created a two-tier market, which favors high-frequency traders. The institutional investor lead plaintiffs alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 was filed against an SRO - in this case the SEC and other exchanges.

That case is again distinct because Plaintiffs' causes are under the Commodities Exchange Act and specifically 7 USC § 25(b) (and *not* Section 10(B) of the 34 Act), whereas the cases in City of Providence, first and foremost the claims were against the SEC under 10(b), where unlike 7 USC § 25(b), no specific carve out of the private rights of action of traders exists. The SRO in City of

---

[11] 7 U.S.C. §25(b)(4) CCH ¶ Rep 1476
[12] American Agric. Movement V. Board of Trade of the City of Chicago 977 F. 2d 1147 (7th Cir 1992( (national farmers' organization lacked standing to complain of alleged injury in connection with market manipulation)
[13] 735 F. 2d 677. The Court commented that "[t]o do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework adopted by Congress." *Id*

Providence was the SEC and not a *registered futures association*. Further laws of commodities regulations and the CEA are therefore distinct and comparable -  and the liabilities and damages for registered futures associations, cannot be compared to case precedent outside of the CEA. The Court erred in law here also to apply securities laws instead of the Commodities Exchange Act.

Nonetheless the 2nd circuit – then reversed the automatic presumption of immunity – for further analysis of which specific activities were or were not protected – again with the footnote that this was not a *registered futures association*.  In *City of Providence*, initially the District Court incorrectly determined that the exchanges were immune from private lawsuits as self-regulatory organizations. However, in the opinion authored by Judge John M. Walker, a panel of the Second Circuit vacated the district court's dismissal of the claims, finding that the plaintiffs adequately pleaded their fraud claims against the exchanges and that the exchanges *were not immune* **from** suit as SROs – and that absolute immunity was not automatic. Ignoring for an instance the material distinction that NFA, *is a registered futures association*, which is specifically exempt from immunity under 7 USC 25(b)(c)(d), its liability and damages is under the Commodities Exchange Act, and not the Securities law 10(b). The 2nd Circuit also found other reasons why the SRO's had no immunity.

First, the Second Circuit determined that the defendant exchanges were acting in their commercial interests and not in a regulatory capacity and thus, they were not entitled to the same protections of immunity as the SEC.  In short, the exchanges were "acting as a regulated entity – not a regulator." Second, the panel determined that the plaintiffs adequately pleaded that "the exchanges were co-participants with firms in the manipulative scheme and profited by that scheme." This case is substantially similar to allegations pled in the Plaintiff's complaint  - that in this instance – the NFA were co-participants with ADMIS and Vision in the scheme – and also profited from the activity.[14] Moreover, the City of Providence case law is still not completely applicable because the SEC is not *a registered futures association* that falls under the exemptions of liability of 7 USC § 25(b).

Therefore for both of the reasons above, the NFA, *a registered futures association*, and its select employees, are not exempt from liability. As a matter of simplicity, if all registered futures associations under 7 U.S.C. § 25(b) were blanket "immune" – then this piece of statutory legislation would be completely meaningless or a legal fallacy. Then no-one could ever bring legal action against

---

[14] (*See* e.g. ECF 1, ¶102, ¶108, ¶286-289).

a ***registered futures association***. The key distinction in Plaintiff's case, is that under 7 USC25 (b)(c)(d), the specific exception to absolute immunity is for ***registered futures associations*** which does allow for a private right of action – for traders and market participants - and therefore renders Plaintiff's claims valid to have subject matter jurisdiction in this district.

*(vii)* *Court also erred in law in comingling of liabilities and damages of Defendants, Defendant Tom Kadlec as NFA Member is different from Defendant NFA.*

Additionally the Court erred by *commingling* Defendants and failed to distinguish that Defendant Tom Kadlec, Board Member and on the Membership Committee of the NFA, has a dual function serving simultaneously as the Chief Executive Officer of ADM Investor Services ("ADMIS"). Further the Court erred to note that *committee members* have direct liability under 7 USC §25(b)(3) for bad faith acts, and therefore Kadlec is directly liable.

*7 USC § 25(b)(3)  Any individual who, in the capacity as an officer, director, governor, **committee member,** or employee of … **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall **be liable for actual damages** sustained by a person who engaged in any transaction.*

The Complaint is clear that Kadlec was not acting in a regulatory capacity – but squarely misusing his role on the NFA Board – duplicitously with his commercial interest role as CEO of ADMIS - with a purely profit motivation - directing a fraudulent scheme, enlisted various NFA employees as operatives, that funneled millions of dollars of unauthorized and ill-gotten gains – impacting his own personal profits and to also benefit his company ADMIS. The Complaint met the pleading standards of ***bad faith*** requisite to subject matter jurisdiction on Kadlec. Therefore the Court erred in law to commingle liabilities that Defendant Kadlec was not a performing any regulatory function whatsoever – and is not immune – for his role in the scheme. Therefore similar to City of Providence, Kadlec, as NFA Board Member and Committee Member,  was not acting as a regulator – but as a regulated entity. Further the Complaint alleges Kadlec caused and committed acts of fraud. (*See* e.g. ECF1 ¶288). Likewise in City of Providence, – even under Securities laws 10(b), there is no absolute immunity. In summary, Kadlec, ADMIS, Vision and NFA instigated a scheme to secure millions of dollars of financial benefit, (directly for their own profit), to steal and disenfranchise small traders, CTA's, and customers, including Plaintiff  by both disseminating their confidential trading account to competitors and overcharging unauthorized fees. Acting purely with self-interest and profit motive, after defrauding dozens of hist customers, CTA and Plaintiff, he then abused his role on the

NFA Membership Committee, to engage in direct competition with Vision Investment Advisors (*See* e.g. ECF1, ¶4, ¶296) Tellingly Plaintiff Kumaran has learned that Defendant Kadlec has retained distinct and separate counsel for this action, whereas the Defendants NFA, Jane Doe 1, and Jane Doe 2 have combined counsel that is on record in prior actions for the NFA. (*See* ECF15.1, 15.2) Therefore NFA and Defendant Tom Kadlec cannot be assumed to have similar standards of immunity - further supporting that commingling Defendants in *ECF* 13, was also a manifest error of law.

The doctrines apply differently to each of the four (4) Defendants, and the roles they played in the fraud, and knowledge and actions and inactions. Such commingling is premature in dismissing liability without preliminary discovery. Further the Court failed to distinguish and discuss the private rights of action and damages that accrue for NFA officers and employees Jane Doe 1 and Jane Doe 2which were properly plead under 7 USC § 25 (b)(3) which also directs liability to those select employees who participated in the fraudulent scheme. The Court erred to address the standard of immunity applied by the pleading of "bad faith"- Supra 7USC § 25(b)(4).

### (viii)   *Court erred in law and fact to address "reasons" why the Arbitration was stayed*

Plaintiff also argues that the Court erred in law and in fact, on the *reasons* the Arbitration was stayed which also gives subject matter jurisdiction ask to the Court and failed to acknowledge the issues of fraud, evident partiality, bias, corruption and also its subject matter jurisdiction under 7 USC § 25(b). Therefore under 7 USC § 25(b) the claims have to be brought here in S.D.N.Y. A **registered futures association** that fails to enforce any bylaw or rule that is ***required under section 21 of this title*** or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for ***actual damages. Therefore before the Court is the commitments required under section 21 of this title, and also the bylaws and rules of the Commission.*** Without limitation those rules include those under 7 USC 21(10). It is also an error of law to confused the restrictions under 7 USC § 25(a) with those specifically permitted for registered futures associations. Further the Court manifestly erred in its legal conclusion that Plaintiff is not bringing any claims against the "Arbitrators". The Court also erred in fact and law as the case law cited does not apply, as Plaintiffs' claims are ***not*** against the "Arbitrators" themselves.

Further the Order acknowledges the "stay" of the arbitration, because of the inherent earlier jurisdictional error, that the NFA is subject to liability under 7 USC 25§(b)(2)-(4), and are not immune, and those rules includes those related to its administering or arbitration. (See 7 USC §

21(b)(10)). The pleading standard as applied to registered futures associations is one of bad faith and the bad faith application of its rules. The Complaint pleads correctly the standard of bad faith in its failure to administer a fair, equitable, and expeditious Arbitration, and a direct financial and pecuniary interest in the outcome. (*See* ECF1, ¶156, ¶¶102,107). This Court therefore not only has jurisdiction under 7 USC 25 §(b)(2)-(4), 7USC§25(c) but also under the look through provisions of 9 USC§9-11.

The Court erred in law as the issues before the Court, in this proceeding, go beyond arbitrability, and is not related to a dispute between the parties (in this case Plaintiff and ADMIS) to an Arbitration agreement.[15] The Court also failed to analyze that the Arbitrators have already concurred they have no jurisdiction on the claims against the NFA which were rightfully brought in this district under 7 USC § 25(c).

> **7 USC § 25 (c) Jurisdiction; statute of limitations; venue; process**   *The United States district courts shall have <u>exclusive jurisdiction of actions</u> brought under this section. Any such action shall be brought not later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.*

Further Plaintiffs' claims go far beyond the issues of the Arbitration, but to underlying issues of Defendants' co-conspirator in the underlying fraud similar to *City of Providence vs. Bats* and their liability for actual damages under 7 USC § 25 (b)(3) – *unrelated* to the Arbitration itself. The Court erred in law and fact not to address the other meritorious claims for instance of aiding and abetting in fraud and violations of the CEA for which Plaintiffs do have a private right of action.

## B.  *FAA - COURT ERRED IN SUBJECT MATTER JURISDICTION UNDER THE FAA*

### *(i) Court errs on statutory authority to remand the arbitration to a new forum*

The Court again failed to distinguish Plaintiffs' case against those relevant to those that a party asserts material conflicts of interest and related to the appearance of bias. (ECF1 ¶24, ¶131¶145,¶149, ¶158, ¶177-186, ¶219)  The Court erred in law to not apply the FAA, where the statute does permit courts to reform an arbitration agreement on legal or equitable grounds (9 U.S.C. § 2; ) *see also Aviall,*

---

[15] Noting also that Vision parties, Lazzara (the brokers) and Plaintiffs were never parties to an Arbitration agreement. Further Plaintiffs and NFA are also not parties to an Arbitration agreement, those rights are governed by statute 7 USC 25(b) and (c) to be subject to jurisdiction in this Court.

*Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 896 [2d Cir.1997] [16] Moreover, such a result has been approved under New York law. [17] In *Rabinowitz,* the Second Department, applying state law, affirmed the trial court's removal of an arbitration from the forum that the parties had selected, because "the appearance of bias ... permeate[d] the entire [arbitral forum] including the board of arbitrators from which the arbitrators for th[e] dispute were selected" [18]. Because "the FAA was modeled after New York's arbitration law" as codified in the CPLR, and "no significant distinction can be drawn between the policies supporting the FAA and the arbitration provisions of the CPLR" [19]. Courts have found it is appropriate to apply the reasoning of *Rabinowitz* here.

A case far more instructive to the Court in the issues at hand is the recent decision of <u>*TCR Sports Broad. Holding, LLP v. WN Partner, LLC*</u> [20] Here the 2nd Circuit ruled that while the parties' contractual choice to select a particular arbitral forum is entitled to great deference, courts nevertheless retain their inherent judicial power and their statutory power under 9 U.S.C.§2, to override that choice in the event that the forum is shown to be so corrupt or biased as to undermine the reasonable expectations of the parties to have a fundamentally fair hearing. The Court fails to mention one fact related to the overarching theme, that Plaintiffs complaint is replete with facts related to fundamental fairness, bias, evident partiality and corruption. [21] In failing to address the reasons the Arbitration was stayed, the Court also failed to apply the proper jurisdictional standard.

***(ii) Court has the power to remand to a New Arbitration or Administering orf Arbitration***

The Court also erred in law to not apply the correct subject matter jurisdiction in the FAA which permits the Court to remand the arbitration away from the NFA. In *TCR Sports*, the 2nd Circuit ruled that the FAA does provide for pre-award removal of an arbitrator. [22] In that Court's opinion, the 2nd circuit explained that "an agreement to arbitrate before a particular arbitrator may not be disturbed, *unless the agreement is subject to attack under general contract principle* 'as exist at law or in equity' " (*id.,* quoting 9 U.S.C. § 2 [emphasis added] ). Indeed, the Court in *Aviall* noted the plaintiff's citation to "cases in which an arbitrator was removed prior to arbitration on account of a relationship with one

---

[16] discussing reformation of contract in *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 716 [E.D.N.Y.1972], *affd.* 468 F.2d 1064 [2d Cir.1972], *supra, see TCR Sports* ).
[17] *see Rabinowitz v. Olewski,* 100 A.D.2d 539, 473 N.Y.S.2d 232 [2d Dept.1984].
[18] *id.* at 540, 473 N.Y.S.2d 232.
[19] *Matter of Smith Barney, Harris Upham & Co. v. Luckie,* 85 N.Y.2d 193, 205–206, 623 N.Y.S.2d 800, 647 N.E.2d 1308 [1995]
[20] <u>TCR Sports Broad. Holding, LLP v. WN Partner, LLC,</u> 59 N.Y.S.3d 672, (Mem)–700 (2017).
[21] ECF1 ¶24, ¶131¶145,¶149, ¶158, ¶177-186, ¶219
[22] quoting *Aviall,* 110 F.3d at 895.

party to the dispute," cases that "manifest the FAA's directive that an agreement to arbitrate shall not be enforced when it would be invalid under general contract principles". In one of those cases, *Erving,* the Second Circuit affirmed the district court's reformation of an arbitration agreement where the parties' chosen arbitrator had become a partner at the law firm representing one of the parties [23]. This shows contrary to the Courts analysis,  Courts applying the FAA do have the power .. to remove an arbitrator or reform an arbitration agreement, even pre-award, where an arbitration clause is invalid under general contract principles (*cf. Matter of Astoria*[24] ..[holding under state law that, "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered"]). This is one of those cases.

As applies to the current action, Plaintiff's request for Declaratory Relief, was to disqualify the *administration* of the arbitration by the NFA (not the Arbitrators themselves) because of manifest conflicts of interest, fundamental fairness, evidential partiality, bias and corruption. The Court's failure to brief this issue is a manifest error and instead mistook the Complaint to be a "suit against Arbitrators". It is not. Plaintiffs have no claims against the Arbitrators themselves. Plaintiff relief sought under the FAA was about the NFA's failure to disclose its material conflicts of interest, and the evident partiality and inequity to conduct a fundamentally fair hearing – especially when its own employees were implicated in the conduct and to serve as *defense witnesses.*

### *(iii) Court erred in law and fact to address Evident Partiality, Fraud and Corruption under FAA*

Further this Court erred in fact and law, as it failed to review the facts of "evident partiality." [25] Courts have agreed that "evident partiality" means "an appearance of bias" standard as requiring an objective assessment of whether a reasonable person would believe an arbitrator was partial to a party to the arbitration.  In the Second Circuit, evident partiality within the meaning of 9 U.S.C. §10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. [26] Among the circumstances under which the evident partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties. [27] In this instance, Plaintiffs have pled clearly

---

[23] (*see Erving,* 468 F.2d at 1064).
[24] *Matter of Astoria*[24] *174 Med. Group Health Ins. Plan of Greater N.Y.],* 11 N.Y.2d 227 N.Y.S.2d 401, 182 N.E.2d 85
[25] *See* e.g. ECF1 ¶131, ¶145, *See also* ECF1 Exhibit 10, Pg.10-11.
[26] *JCI Communs, Inc. v. IBEW, Local 103,* 324 F.3d 42, 51 (1st Cir. 2003); *Nationwide Ins. Co. v. Home Ins. Co*., 278 F.3d 621, 626 (6th Cir. 2002); *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.,* 173 F.3d 493, 500-501 (4th Cir. 1999).
[27] *Id.* 4 4 *Lucent Techs. Inc. v. Tatung Co.,* 379 F.3d 24, 31 (2d Cir. 2004)

the role of Defendants and their pecuniary interest in the Arbitration were materially conflicts. Further an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial to one side.[28] The American Arbitration American Code of Ethics and in particular, the ARIAS Code of Conduct, arbitrators have an affirmative obligation to disclose "any interest or relationship likely to affect their judgment. Any doubt should be resolved in favor of disclosure." Otherwise, an arbitration award may be vacated and/or the District Court does have subject matter jurisdiction under the Federal Arbitration Act due to the "evident partiality" of the arbitrator to remand a case to a new and impartial forum (See *TCR Sports*).

 *(iv) Courts errs in Law and Fact to Address the Evident Partiality of the NFA Forum*

Under the FAA (9 U.S.C. § 10 [a][2] ), the movant bears the burden of  showing that a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial to one party to the arbitration – and adopted a reasonable person standard. [29] Although this requires "something more than the mere appearance of bias" [30] "[p]roof of actual bias is not required". [31] Rather, a finding of partiality can be inferred "from objective facts inconsistent with impartiality."[32] Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties. [33] Along with the case law, arbitrators have duties to disclose pursuant to the American Arbitration Association Code of Ethics including, any known direct or indirect financial or personal interest in the outcome of the arbitration.

*(v) Courts erred in fact to not address the adjudication of bias and financial interest*

The Court has stated in ECF13 that it *does* have subject matter jurisdiction over Plaintiffs' claims under the FAA (*See* Pg. 8 Ftn 9)[34]. However the Court then erred in law to completely overlook and disregard the arguments actually raised by Plaintiff related to evident partiality, material conflicts

---

[28] *Applied Indus. Materials Corp. v. Ovalar Making Ticaret Ve Sanayi, A.S.*, 492 F.3d 132 (2nd Cir. 2007).

[29] *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 [2d Cir.2013]; *U.S. Elecs., Inc. v. Sirius Satellite Radio, Inc.*, 17 N.Y.3d 912, 934 N.Y.S.2d 763, 958 N.E.2d 891 [2011] [adopting the Second Circuit's " reasonable person standard"] ).

[30] *See Morelite Constr. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83 [2d Cir.1984]

[31] *Scandinavian Reins. Co. Ltd. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 [2d Cir.2012] ).

[32] *Kolel Beth Yechiel Mechil*, 729 F.3d at 104 [internal quotation marks omitted].

[33] *Scandinavian Reinsurance Co. Ltd.*, 668 F.3d at 72.

[34] The FAA is not itself a basis for this Court's federal-question jurisdiction; it requires "an independent jurisdictional basis." *See, e.g.*, *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). But because Kumaran asserts other claims under the Court's federal-question jurisdiction, **the Court has subject-matter jurisdiction to consider Kumaran's FAA claims.**

of interest and bias related to the aforementioned arbitration, The Court also materially erred in fact to not apply the subject matter jurisdiction argument related to its [cursory] mention of NFA's conflict of interest. The Court acknowledges a conflict of interest, then wholly errs in fact and does not apply the applicable jurisdictional standards of law failing to address the material issues raised in the Complaint related to the conflicts of interest and NFA's financial interest in the outcome of the arbitration. (ECF1 ¶174 ¶200) Court fails to adopt standards used in the second circuit, related to conflicts of interest, and the subject matter jurisdiction for example as stated in *TCR Sports Broad.,* which enjoined a removal of an arbitration to another forum for material conflicts of interest.

     *(vi)*    *Court erred in law as it does have jurisdiction to remand the same arbitration panel or a new one – with a new "administrator"*

      The Court also erred in law that it cannot enjoin the arbitration and remand it to a new "administer". As was stated in *TCR Sports,* courts do in fact have discretion to remand a matter to the same arbitration panel or a new one. [35]Moreover, while the FAA generally upholds arbitration agreements as "valid, irrevocable, and enforceable," such agreements may be vitiated "upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2). Although not made explicit in the statute, courts have discretion to remand a matter to the same arbitration panel or a new one. This is a logical extension of courts "broad discretion in fashioning appropriate relief"[36] The inherent discretion of the courts to fashion the appropriate remedy is necessary to ensure, among other things, that arbitrations are conducted in a ***fundamentally fair manner***. Plaintiff has specifically cited that the arbitration was not being conducted in a fundamentally fair manner (*See* e.g. ECF1¶158). The Court manifestly erred in fact and law to not address this discussion.

*(vii) Court erred in fact to not address financial incentives in the Arbitration*

      As in *TCR Sports,* the 2nd Circuit, specifically noted the District Court's failure to appreciate the conflict of interest and the inherent financial interest. Here, the Court stated that "the incentives provided to [MLB] to do whatever it can to steer a second arbitration in its and the National's favor". Similarly, and more instructive than the cases cited by this Court in ECF13, is the clearly pled allegations that NFA were intentionally steering the arbitration in favor of ADMIS (See e.g. ECF1

---

[35] *Sawtelle v. Waddell & Reed, Inc.,* 304 A.D.2d 103, 117, 754 N.Y.S.2d 264 [1st Dept.2003]

[36] (*Aircraft Braking Sys. Corp. v. Local 856, UAW,* 97 F.3d 155, 162 [6th Cir.1996] [discussing powers of federal district courts], *cert. denied* 520 U.S. 1143, 117 S.Ct. 1311, 137 L.Ed.2d 475 [1997]; *see also* New York Const., art. VI, § 7 [New York "supreme court shall have general original jurisdiction in law and equity and the appellate jurisdiction herein provided"]; *Correa,* \*\**693* 15 N.Y.3d at 227–228, 907 N.Y.S.2d 106, 933 N.E.2d 705).

¶158, ¶177-185) *and* had a vested financial outcome of interest in the case and to procure an outcome in favor of ADMIS and Tom Kadlec (ECF1¶201, ¶174) Directly parallel to the case at hand to TCI Sports, the 2nd Circuit went on to argue, as is similar to the NFA's role in the arbitration, that notwithstanding that [MLB's]  role in the arbitration went far beyond the role of a law clerk, the 2nd circuit ruled;

> "[t]his case may thus be viewed as presenting the question: When is it acceptable for the arbitral counterpart of a judge's law clerk to have a significant financial stake in the outcome of an arbitration? We respectfully submit that the answer should be 'Never.' " I agree.

The Court then issued remand, under jurisdiction under the FAA to an alternative forum. The Court enjoined the Arbitration to a new Arbitration form, for significant conflicts of interest, ruling that the financial conflict of interest was "*anathema to the nature of arbitration as an adjudicative process and to the ability of courts to do justice by the parties*" Similarly in Plaintiff's case vs. NFA, the District Court erred once to consider the impartiality arguments of bias and plethora of facts showing inequity and financial vested interest in the outcome, In this arbitration, if dozens of customers find out that their accounts have been turned over, without their consent, to the owners and employees of a disbarred Vision by ADMIS, and they were being overcharged and overpaying fees to the former Vision, then NFA and its conspirators would standard to lose significant financial amounts of revenue, as well as face potential exodus from the futures industry. Further the conspiracy – generated substantial revenue for all those involved in the scheme, including ADMIS, NFA and VISION. (*See* Com XXX). Therefore they had a vested outcome in ensuring a win for ADMIS, that would shield itself from liability – and continue to the money machine. (Hardly a regulatory role). The Complaint makes specific allegations of the NFA of bias, including concealing information from the Panel, withholding subpoenas, and overruling decisions where its own interests, and significant financial consequences are being preserved. (*See* e.g. ECF1 ¶174, ¶201, ¶87)

Plaintiff's motion was misconstrued by this Court, The Court erred to understand the relief os remand the arbitration to a new forum, where fundamental fairness can occur, and the administrative aspects, cannot be tainted by a clear and documented trail of events plead in the Complaint, that this Court failed to address once. Further, this Court does have subject matter jurisdiction, as it already agreed it does over the FAA, and the inherent role of the NFA under 7 USC 25(b) and 7 USC 25(c). Unlike the cases cited by this Court, none of those cases (*Yadav, Gill,  Austen, Funcia*) involved well-pled facts, documenting evident partiality, bias, and any allegations whatsoever of a financial interest

in the outcome by the proceeding. Also the Court failed to note that Plaintiff has not made any claims against the existing Arbitrators. It is altogether a possible outcome that the existing Arbitrators remain, but *administration of the forum,* be moved to a neutral forum such as CPR Institute of Dispute Resolution where the CPR, provides the administration function, and the Arbitrators remain the same. Also the Arbitration could be administered by any one of the alternative for a  such as  CPR Institute, AAA, JAMS or even the CFTC Reparations program (for claims between NRCM and ADMIS). Therefore in this case, there is no claim against the Arbitrators, or any allegation of impartiality, or bias against the Arbitrators. The Court misconstrued the entire complaint as Plaintiff has not alleged bias against the Panel. It has alleged, similar to the *TCR Sports*, that the forum itself is unable to provide a neutral and biased forum in which not just Plaintiff but multiple other Plaintiffs would not be entitled to fair and neutral hearing – and one that is tainted with evident partiality. This does have jurisdiction under the FAA.

### C -  Court Erred  in fact to not to review disclosures related to a neutrality
####    (i)    Court erred in fact to not examine that Plaintiff did not waive evident partiality.

The Courts also erred in law and fact not to address the willful and material failure to disclose the conflict of interest, and the well-plead facts that NFA *knew* they were conflicted but still intentionally induced Plaintiffs to submit to an Arbitration that they *knew* would be fundamentally unfair. (ECF1, ¶85 ¶135-136 ). The Complaint in fact pleads that they NFA knew they had documents signed by their own Compliance Officers, that if discovered – would implicate their role in the scheme and their own liability under 7 USC 25(b)  Therefore the NFA materially failed to disclose their conflicts  - rendering their role in the administration of the arbitration void due to evident partiality and failure in disclosure. The District Court does have subject matter jurisdiction under the FAA when arbitrators have failed to make the requisite disclosures. To find waiver in this circumstance would "'put a premium on concealment' in a context where the Supreme Court has long required full disclosure." [37] Thus, the Court manifestly erred to not include the material facts that Plaintiffs did not have constructive notice of the Arbitrator's (or administrators of the Arbitrations) potential non-neutrality. *See* Olympic Eagle ("Arbitration overturned due to Arbitration's failure to provide notice of evident partiality")

---

[37] *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W. 3d 518, 528 (Tex. 2014) (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1204 (11th Cir. 1982)).

Not only that the Complaint alleges that despite repeated requested over a seven month period. the NFA failed to address or respond to the conflict of interest and went out of their way to shield information from the Arbitration Panel (ECF1¶181-184, ¶223, ¶232 ) took affirmative action to interfere in requests that would address the conflicts of interest – and materially failed to do investigate their own conflicts. (ECF1¶153-154) Once the NFA were notified of the material conflicts of interest, as the administrators of the arbitration they had a duty to, but intentionally did not, investigate or disclose their relationships with ADMIS and Vision. This also leads a reasonable person to a perception of bias.

The Court also erred to not include the well-plead facts that the Complaint specifically notes that Plaintiffs notified "promptly" in March 2019, and again in April 2019, as soon as it became aware of the material conflict and notified the NFA – seeking disclosures and advising of the requirement to investigate material conflicts of interest and evident partiality, even contacting the legal department for a non-public information request  (ECF1¶153-154). The issues were timely raised and therefore Plaintiff did not waive its evident partiality claim. Instead, NFA intentionally failed to exercise what power it had to ensure confidence in the fairness of the proceedings in light of Plaintiffs stated concerns (*See* e.g. ECF1 ¶153-154, ¶177-178)  These circumstances are wholly similar to the *TCR Sports* and the MLB where the parties failed to address and investigate the conflict once alerted. *see also Applied Indus. Materials Corp.,* 492 F.3d at 137 [where "[a]n arbitrator ... knows of a material relationship with a party" but fails to disclose it, "[a] reasonable person would have to conclude that [the] arbitrator who failed to disclose under such circumstances was partial to one side," even where the award itself was not clearly favorable to the other party]; *Morelite,* 748 F.2d at 84 ["vacating award based on relationship between an arbitrator and the President of union"].

The Court also erred in fact to offer no discussion on the inequitable conduct in the forum, where ADMIS were calling the NFA as "*defense witnesses'*. That would be akin to conducting a hearing in Federal Court, where the Judge's law clerks were simultaneously serving as "*witnesses for the defense*" and then had the ability to have ex-parte communication with the Judge, influence legal analysis and conceal documents and evidence from the Judge – that would show that the law clerks had signed documents participating with the conduct with the Defendants. The Complaint clearly states – there was no docket and no transparent in the proceeding. (ECF1¶182-185). The

administrators in this case had full ability to even conceal the motions being filed. (e.g. ECF1¶184) The Complaint made clear that the NFA weren't just serving as an "administrator" but also as "arbitrators" in their own right – ruling on motions, scheduling, withholding documents, arbitrarily denying rights to one party over another – yet simultaneously were being subpoenaed as "parties"- and were being called as "defense witnesses". These facts are significant in the discussion of evident partiality and were not disclosed to Plaintiff prior to selecting the NFA as the arbitration forum. (ECF1¶136) Because the proceeding itself was non-transparent, the administrators had the unique ability to obstruct even subpoenas.(ECF1¶223,227). The Court also erred to not weight ***ADMIS's own admission*** that the NFA were parties to the scheme. (ECF1¶151, ¶155, ¶224-225) – which is itself a basic admission of bias and evident partiality. In any Arbitration, if one party after the facts admits and discloses that the there is a commercial and conflict in relationship between the party and the administrator of the arbitration, that Arbitrator or the administrator must be disqualified.

The Court also erred in fact, to not examine the facts pled, resulting in the "stay of the Arbitration, that that when it found out that ADMIS were imputing blame on the fraudulent scheme as being directly caused by the NFA ((ECF1¶151, ¶155, ¶224-225)) and ADMIS' reliance on "defense testimony" of the administrators of the Arbitration. This is therefore not the hallmark of fundamental fairness. The Complaint also pleads allegations of concealing testimony of witnesses that could expose corruption (ECF1 ¶187-207). The Court erred to not consider these facts of evident partiality.

*(ii)* *Court erred to examine NFA's obligation to and then failure to investigate evident partiality and bias*

Similar to the case *TCR Sports*, the record establishes conclusively that Plaintiff reiterated their objections in  written submissions to the NFA *before* the merits hearing was held. Yet at all times the NFA failed in its duty to investigate the conflict. The Court also erred in law, in not referring to the preponderance of facts in the complaint related to the NFA's failure to address the conflict of interest in the Arbitration. The Complaint not only alleges Plaintiff made immediate attempts to address the conflicts not only with the Arbitrators but also with the NFA themselves, and therefore did not waive its evident partiality challenge. The Complaint also alleges also that the NFA were concealing information, including Plaintiffs correspondence from the Arbitrators.The facts show that NFA not just concealed, but took affirmative actions to evade, conceal and even obstruct, their requirement to disclose their material conflicts of interest. Therefore NFA (as administrators) undisputedly failed to

provide full disclosure or seek to conduct the proceeding in a manner that could alleviate any potential bias. In fact to the contrary, they repeatedly overstepped their arbitral administrative authorities, acted as Arbitrators themselves (ruling without the Panel), in overt attempts to procure an outcome favorable to ADMIS and Tom Kadlec, that would conceal their own liability. Notably, not only did they make no attempt to make the necessary disclosures (once identified) of their own impartiality, they obstructed subpoenas to produce the documents that would have put forward their signatures on the same contracts (ECF1¶151, ¶155, ¶224-225). Further the Arbitrators themselves, ruled they had no jurisdiction over the investigation into the NFA's evident partiality – resulting in a stay – bringing the jurisdiction back into this Court. (ECF ¶213-214, ¶255)

The facts pled are substantially similar to *TCR Sports*, where the record in the Complaint establishes conclusively that Plaintiffs reiterated their objections in their written submissions to the NFA, before the merits hearing could be held, in fact repeatedly requesting oral preliminary conference with the Panel, The Court makes no mention of these facts in wrongfully denying subject matter jurisdiction under the FAA.

The arbitrators had a duty to, but did not, investigate or disclose their relationships with ADMIS, Tom Kadlec and Jane Doe 1 and Jane Doe 2 and instead failed to exercise what power it had to ensure confidence in the fairness of the proceedings in light of Plaintiff's stated concerns (*see Applied Indus. Materials Corp.,* 492 F.3d at 137 [where "[a]n arbitrator ... knows of a material relationship with a party" but fails to disclose it, "[a] reasonable person would have to conclude that [the] arbitrator who failed to disclose under such circumstances was partial to one side," even where the award itself was not clearly favorable to the other party]; *Morelite,* 748 F.2d at 84 [vacating award based on undisclosed relationships between an arbitrator and the President"] ).

The fact that the NFA *knew* there were signed documents showing their involvement in the scheme with ADMIS and *knew* that ADMIS would be calling them as "defense witnesses" and aided obstruction to timely discovery to conceal their liability at the same time as they had employees and Committee Members implicated in the arbitration is an objective fact inconsistent with impartiality. Essentially documents exist showing that the NFA and ADMIS were working in hand-in-glove to conceal the scheme, and the NFA were not acting in a neutral capacity. Further outside of their regulator capacities, the Complaint pleads under 7 USC 25.(b) that the NFA were acting in bad faith,

with a financial motivations. The scheme was  generating millions of dollars a year – and their intent was to cover it up – even if it meant a fundamentally unfair process. Those were the facts leading to the stay. Further Court ignored manifest facts, that the Arbitration Panel itself, collaterally ruled and was estopped that it had no subject matter jurisdiction to investigate the NFA and the District Court.

Specifically, the Court manifestly overlooked and failed to examine the following facts as evidence of partiality: (1) the NFA's refusal and obstruction to investigate material conflicts of interest and disclose the documents that existed showing NFA Jane Doe 1 and NFA Jane Doe 2 signatures on ADMIS, participating in the fraud, concealing and obstructing evidence in the arbitration; (2) NFA's financial and pecuniary interest in an unfavorable outcome to Plaintiff and illicit revenue it created for the NFA itself; (3) NFA's significant role in the arbitration process; (usurping Panel orders, concealing exhibits and subpoenas and acting as a quasi arbitrator without neutrality) and (4) the inadequacy of disclosures made by the arbitrators and/or NFA as to possible conflicts (5) and the rulings by the Arbitration Panel remanding the adjudication of material conflicts of interest back to this District Court. Therefore these facts were substantial in asserting subject matter jurisdiction in this Court.

     **(iii)** *Court erred to review that NFA failed to provide disclosures related to its evident partiality, rendering the Arbitration void under FAA and asserting subject matter jurisdiction*

Courts have repeatedly emphasized an arbitrator's duty to investigate and disclose potential conflicts.[38] *See e.g.*, *New Regency*. In *New Regency* the Court vacated due to evident partiality as the Arbitrator undoubtedly knew of his conflict of interest prior to arbitration yet failed to disclose it. Therefore this Court also erred in fact by making no mention of the clearly pled allegations that NFA failed to make the proper disclosures, required of its own involvement and approvals, and documentary evidence that would demonstrate bias and partiality in its direct and substantial role with ADMIS, and Tom Kadlec in the scheme.

Similar to *TCR Sport*, the case here is related to evident partiality of the administrators, NFA *knew* of its direct and pecuniary interest in the outcome, and knowingly, and behind the scenes knew of its active ability to steer the Arbitration, and failed to make the necessary disclosures, as "administrators of the Arbitration" of its own direct conflicts of interest in its endorsement of ADMIS's conduct.  When the conflict was identified in March 2019 (See ECF1. XX) Plaintiff promptly notified the NFA. Instead the

---

[38] *See e.g.*, *New Regency*, 501 F.3d at 1110–11 (holding arbitrator's duty to investigate possible conflicts).

Complaint pleads that the NFA failed to investigate and also concealed documents from the Panel. Therefore, when the administrators of the Arbitration, have material knowledge that (a) they would be called as witnesses (b) that documents exist with their signatures on it that could implicate their liability for the conduct and (c) they have a direct vested financial interest in the outcome, and when Plaintiffs requested investigation of these facts and documents this conduct is indicative of evident partiality and invokes subject matter jurisdiction under the Federal Arbitration Act. The NFA failed to abide by the Arbitration Act and obstructed investigation.

### (iv)  Court erred in Reasonable Bias standard

The Supreme Court addressed the meaning of "evident partiality" under § 10(a)(2) in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), and concluded that it existed when one of the parties failed to disclose facts about his relationship with the Defendants. *Id* In this instance the Complaint pleads that the NFA failed to disclose that it *knew* documents existed that showed it was involved in the scheme to generate profits (acting with commercial interest). With respect to the "evident partiality" ground for disqualification of an arbitrator in the Federal Arbitration Act (FAA) ..  the FAA will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. 9 U.S.C.A. § 10(a). An arbitrator who knows of a material relationship with a party and fails to disclose it meets *Morelite*'s "evident partiality" standard: A reasonable person would have to conclude that an arbitrator who failed to disclose under such circumstances was partial to one side. The Complaint in this case goes further – stating that the NFA had a vested interest in protecting ADMIS in the outcome. The Complaint alleges that information was leaked to ADMIS (ECF1 ¶273), evidence was concealed to support ADMIS and NFA injected themselves into the proceeding to procure favoritism.

Moreover, as soon as Plaintiffs became aware of the conflict they disclosed it to the NFA and the Arbitrators. The Complaint alleges that it is not even sure if the NFA were concealing these documents from the Arbitration Panel. Mr. Brockway's response on October 10, 2019, Plaintiffs letter on October 14, 2019  and the facts the NFA intentionally failed to respond to the Arbitrators ***ordered*** directives on October 16, 2019 to explain the material conflicts of interest are instructive. (ECF1 ¶236-244). The Court erred in fact to consider these. The NFA at all times failed to investigate the facts and worse, materially obstructed any investigation into the facts related to its involvement and

business dealings with Tom Kadlec and ADMIS. This District had made clear, that if an arbitrator fails to investigate facts indicating a conflict of interest that come to light after the award, and those facts are not trivial, the aggrieved party may use this information to demonstrate evident partiality, warranting vacation of the award under the Federal Arbitration Act. 9 U.S.C.A. § 10(a). This is precisely the type of conduct alleged in this Complaint. Under the Federal Arbitration Act when an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality. 9 U.S.C.A. § 10(a)(2). [39]

Here the Complaint alleges that the NFA, not only disclosed an intention not to investigate, but actively and willfully obstructed any such investigation. When Plaintiff requested documents, that would have been reasonable under that obligation to disclose, the NFA obstructed investigation When Plaintiffs requested the matter be addressed directly to the Panel in preliminary investigation the NFA obstructed. When Plaintiff set forward exhibits and documents in a motion, the NFA took action to delay or oppose disclosure from the Panel. And when Plaintiffs finally asserted the manifest conflicts of interest via subpoenas to the NFA to the Panel. The Complaint demonstrates the NFA not only obstructed compliance with the investigation, when ordered to respond by the Arbitrators to set forth a defense for the conflicts of interest (ECF1¶234-244) the refused to cooperate. Therefore, the NFA willfully obstructed any investigation and conducted on themselves. It was as a result of the NFA's failure to cooperate in an investigation of evident partiality, that the Arbitrators themselves ruled that jurisdiction of this matter fell under the FAA under the jurisdiction of this Court. The Court overlooked all these facts in an inaccurate summary of the Complaint – without any reference to the overwhelming pattern of evident partiality pled - paragraph by paragraph.

*(v)*     ***The Court Erred that this Disclosure, must be investigated now***

Disclosure serves the twin goals of "encourag[ing] conflicts over arbitrators to be dealt with ***early*** in the arbitration process and help[ing] limit the availability of collateral attacks on arbitration awards by a disgruntled party." *Lucent Techs. Inc. v. Tatung Co.,* 379 F.3d 24, 29 (2d Cir.2004). As Justice White noted in *Commonwealth Coatings*, "it is far better that the relationship [i.e., a potential conflict between an arbitrator and a party] be disclosed at the outset, ... than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award." 393 U.S. at 151, 89 S.Ct. 337 (White, *J.,* concurring).

---

[39] *See* Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 134–39 (2d Cir. 2007)

Therefore Plaintiff complaint was anything but like the other cases cited. Plaintiff followed the exact procedures that the FAA intends – promptly when it knew or learned of the conflict – which it found out about at the end of February 2019 (ECF1 ¶150-158), it promptly sought disclosures from the NFA on the documents related to the conflict. It repeatedly and for seven months requested the information from the NFA, which the NFA failed to provide. This resulted in a stay of the Arbitration, granting this Court subject matter jurisdiction under the FAA. As stated supra, Courts have ruled.. "it is better to have the relationship disclosed now…than to wait until after the Arbitration" which would then serve as a pretext for invalidating the award. (*See* Lucent ID)

Therefore Plaintiffs' claims and requests for Declaratory Relief are within the scope of jurisdiction of the FAA – rending the Courts manifest error in law and fact. It is long standard in the FAA that the arbitrator is under an ongoing obligation to disclose conflicts (See *Applied Material*) . Once the arbitrator is aware that a nontrivial conflict of interest might exist, the calculus changes. A reasonable observer attempting to assess whether evident partiality existed should be given pause by a number of significant facts in the Complaint: the arbitrator had a continuing duty to ensure that neither he nor his corporation had "a direct or indirect interest in the outcome of the arbitration." The Complaint also alleges – wholly missed by the Court the NFA has a vested direct and indirect outcome in the Arbitration. The sparring facts show NFA had no intention to disclose.

*(vi)* *Court further erred in law to apply standards of law related to the FAA*

As the United States Supreme Court has held, the "provisions of [Section 10 of the FAA] show a desire of Congress to provide not merely for any arbitration but for an impartial one"[40]. In *Commonwealth Coatings Corp.,* the Court also rejected the argument that Congress intended "to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another" [41] In *TCR Sports*, the Court did have jurisdiction to remand an arbitration, when, as directly similar to the circumstances here, it would be farcical to permit an arbitration to proceed in an arbitral forum whose administrator has signaled an intent to do everything in his or her power to compel a particular result.

Therefore this District Court erred in law to apply the relevant facts in the Complaint that clearly pled that the forum (similar to *TCR Sports*) was fundamentally unfair, and that Plaintiff was

[40] (*Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 147, 89 S.Ct. 337, 21 L.Ed.2d 301 [1968] ).
[41] (393 U.S. at 150, 89 S.Ct. 337).

not going to obtain a fair hearing. Also this Court failed to apply the FAA to the facts at hand and the bias and conflict of interest pled in the Complaint - which is subject to remand. The Court also made the fatal error that it is making claims against the "Arbitrators".

*(vi) Court erred in law to no consider once, the "impartiality of the process" that was raised.*

As in *TCR Sports*, the Second Circuit also affirmed that a material conflicts of interest and evident partiality occurs when one identifies the actual role the "administrators" actually play in the role in the Arbitration, therefore requiring further analysis by the Court. Here Plaintiff has asserted that NFA frequently stepped into the shoes of the Arbitrators, ruling and usurping decision making. (e.g. *ECF1* ¶ 230). In relevant case law TCR Sports, the Court eloquently described the support role of the [MLB's] commissioner in the first arbitration as "generally akin to the support that a law clerk provides to a judge." The Complaint also alleges a similar role – whereby the NFA and its legal counsel had ongoing ex-parte communications with the Panel, routinely adopted decision making authority, had significant influence over the Panel in sharing its opinions similar to a law clerk. However, even worse, NFA's role was so pervasive that the Complaint alleges it deliberately concealed subpoenas, exhibits and other correspondence from the Arbitrators. (*See e.g.* ECF1¶227), Once evident partiality is identified this renders any possible award in the foregoing Arbitration as biased and subject to vacatur under FAA 9-11, FAA 2. Therefore the Court manifestly erred that it does have subject matter jurisdiction on this case.

*(vii)    Court errs to include facts related to disclosure – what Plaintiffs knew at the time it entered arbitration*

Further the Court erred to identify that Complaint alleges that at the time of entering into the arbitration, it had no knowledge that NFA would have significant influence over the arbitration process. NFA, also failed to make transparent its standard practices in NFA proceedings. It only became evident after-the-fact that NFA almost unilaterally dictates and interferes on a daily basis in the proceeding,  providing much more than administrative support, but dispositive duties, legal analysis, scheduling, rules on procedural issues without input from the Panel, determines what to forward to the Panel and what not, has the ability to unilaterally withhold motions, exhibits, documents. It was only over the course of the proceedings, and after ***ADMIS admitted that NFA were the liable parties*** (ECF1¶151, ¶155, ¶224-225) and given NFA"s direct involvement with ADMIS that it became clear that  choice of the NFA was a fundamentally fair forum. The Court's omission of this fact was material.

Plaintiffs did not know at the outset that the NFA would have significant influence over the arbitration process and neither did Plaintiffs know about the existence of documents involving NFA Jane Doe 1 and NFA Jane Doe 2, or that ADMIS intended to call the NFA' employees concurrently as "defense witnesses". Further Plaintiffs did not know at the time of filing the Arbitration how far NFA would go to obtain the outcome it wanted. For example, NFA failed to protect the parties' confidence in the fairness of the proceeding when it refused to adequately address the objections and voluntarily provide the disclosures required to address the conflicts in March 2019 when Plaintiff first learned of the conflict. Once one party admits that the administrator in the proceeding engaged concurrently with a Defendant in the scheme and are *defense witnesses* and that the Defendants admit that the administrator is the liable party, that in itself renders the evident partiality and the arbitration null and void and would be vacated under the FAA.

### (viii)   *Court fails to address facts pled of impartiality*

The failure to disclose was also material. Not only did Plaintiff chose the NFA forum without knowledge that NFA was involved in the scheme, it also did so without knowledge that there were signatures on documents evidencing its NFA's own culpability for participating with ADMIS. Plaintiffs did not agree to a proceeding where one side admits NFA are involved, and the NFA would have significant influence over the arbitration process, with the ability to set up procedures that could dictate a result. One such example is delaying discovery on incriminating documents for over 340 days. The salient point is that NFA still controls nearly every facet of the arbitration proceeding and has shown itself—through its past conduct in the Complaint—to be incapable of protecting fundamental fairness in administering an arbitration of the instant dispute. As in *Rabinowitz,* the arbitral forum initially selected by the parties is tainted by "the appearance of bias," which "permeates the entire [arbitral forum]" [42]

In *TCR Sports,* when similar circumstances arose, the Second Circuit ruled that the matter could not be returned to the old forum and should be referred to a neutral arbitral body, namely the American Arbitration Association (AAA). As discussed above, Courts are empowered to order a rehearing in a different arbitral forum or remand to a new arbitral forum, from the one originally selected by the parties through their inherent discretion and the reformation power embodied in section 2 of the FAA.  Therefore the Court does have subject matter jurisdiction over Section 2.

---

[42] 100 A.D.2d at 540, 473 N.Y.S.2d 232.

Plaintiff has made the extraordinary showing of grounds needed to disqualify the NFA from oversight and further interfering in the hearing – and Plaintiffs are entitled to fundamental fairness in an unbiased jurisdiction of the hearing.

In addition as discussed below, a manifest error of fact, the Court also erred to overlook that the Arbitrators themselves ruled that for claims between Kumaran and ADMIS, they no subject matter jurisdiction appropriate forum for this particular dispute. Also since multiple of the parties including all the Vision defendants and Lazzara defendants have no binding arbitration agreement with Plaintiffs, this matter should be remanded to the District Court. Arbitrability itself is at issue.

Moreover, although "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen" (*id.* at 548), an arbitral award may still be set aside even "where the parties have expressly agreed to select partial party arbitrators" and "the objecting party proves that the arbitrator's partiality prejudicially affected the award" (*Winfrey v. Simmons Foods, Inc.,* 495 F.3d 549, 551 [8th Cir.2007] [internal quotation marks omitted], cited by *National Football League Mgt. Council,* at 548). The unfair conduct has infected the NFA proceeding so as to frustrate the parties' intent to submit their dispute to a fundamentally fair arbitration. The Courts should assume that Plaintiffs intended to arbitrate in a forum that offered at least a reasonable level of fairness and impartiality. Because that intent has been frustrated, reformation of the agreement to require a rehearing not administered by NFA is warranted. Therefore the Court does have subject matter jurisdiction. Further to the extent none of the other parties have binding arbitration agreements, those cases should remain in the District Court. Arbitration is a creature of contract.[43]

*(ix)   Failure to Disclosure Issues were not raised in the Courts' cases*

Unlike all the cases cited by this Court, (*Yadav, Funcia, Gill, Austen*) the instant case had no hearing on the merits. There was no hearing. There was no award. The circumstances were completely inapposite to the foregoing. Exactly following procedure under the FAA once the Arbitrators and Plaintiffs alerted to the material conflicts of interest they had an ongoing duty to investigate. Here the Complaint alleges timely notification of conflicts of interest. Instead of abiding by their duty to disclose -they repeatedly and insistently obstructed disclosure – arguing against subpoenas. Here,

---

[43] In *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court stated that arbitration is a creature of contract and held that the parties can agree to the procedures they want to govern their arbitration. The Court held that this includes the right to delegate to the arbitrator the authority to decide the validity of their arbitration agreement and what issues it covers. The Complaint notes the Arbitrators already decided that they had no subject matter jurisdiction over Kumaran and ADMIS or the NFA's disclosure.

inapposite to *Funcia*, *Gill, Austen and Yadav* the Arbitrators themselves, ordered the administrators (the NFA) to respond and submit a explanation of how they were not conflicted – and to reply to Plaintiff's documentation of financial interest on October 21, 2019 and the Complaint is explicitly, rather than comply in good faith with the documents that showed their involvement – they failed to respond. They failed to comply with the Arbitrators directives to respond to the conflicts of interest and/or to disclose their participation. That is material evident partiality. The Court manifestly erred to consider those facts.

Instead, the Arbitrators, agreed to stay the proceedings citing no jurisdiction over the NFA and no ability to investigate the conflict of interest. The Arbitrators themselves do not have jurisdiction under the FAA to remand the Arbitration to a new forum and terminate the NFA''s involvement. So the proceeding was brought in here. These are material facts overlooked by the Court. It is with near certainty that any ongoing arbitration at the NFA would be overturned after the fact due to the evident partiality. Therefore this proceeding was correctly brought in this jurisdiction.

*(x) Court failed to address fundamental fairness*

Also overlooked by this Court (ECF 13), is they failed to address whether the Arbitration agreement permits multiple forum choices and whether all parties themselves were in fact subject to any Arbitration agreement.[44] It also erred in law, that subject matter jurisdiction under the FAA gives the Court inherent discretion to provide proper remedy and would undermine the role of courts in protecting at least an elemental degree of fairness in the adjudicative process of arbitration. In *TCR Sports*, the 2nd Circuit ruled that it must be within the inherent equitable power of the courts to protect fundamental fairness in any arbitration that is submitted for their review. The Court asked itself, "What, then, may a court do when presented with an arbitration that was (or a subsequent arbitration that would almost certainly be) devoid of fundamental fairness?" (quotation added)

Th Courts are clear there is no real dispute that courts are empowered to substitute a contractually chosen arbitrator where there is evidence of a conflict or bias (*see* 4 Commercial Arbitration § 131:17; *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 n. 2 [2d Cir.1972] [affirming district court's substitution of a neutral arbitrator for parties' chosen arbitrator

---

[44] The Court also failed to review that the only agreement to arbitrate was between ADMIS only and NRCM. The Court also erred in fact to assume that other participants are not parties to any arbitration agreement and this issue was not discussed. All Vision defendants are not parties to an arbitration agreement with Kumaran or NRCM, Neither are the Lazzara parties. Further it erred to review Collaterally Estopped rulings that certain claims related to Kumaran individually are not subject to their jurisdiction. (See ECF1, XXX). Therefore the Court does have power

"to insure a fair and impartial hearing," where the chosen arbitrator had become a partner of the law firm representing one of the parties]). As was decided in TCR Sports, Courts do have the discretion to direct a rehearing before an entirely different arbitral forum, where it is shown that a fundamentally fair hearing cannot be had in the parties' chosen forum. The Court also erred in law and fact to not apply the law to the issues raised of a "fair and impartial hearing".

*(xi)-Court fails to cite relevant facts of material conflicts to its decision*

Similar to the *TCR Sport* case, Plaintiffs complaint seeks relief from the Court an equitable remedy to remand the Arbitration to a new forum – not necessarily with "new Arbitrators" – but with new *administrators*. There are some forums, such as CPR Institute that permit non-administered Arbitrations and have rules accordingly, that would permit the same existing Arbitration Panel to continue the proceeding, but in similar fashion to the relief sought in *TCR Sports,* would remove the pervasive conduct as alleged to interfere in a fundamentally fair hearing from the NFA. The Court in *TCR Sports* ruled that the circumstances called for an equitable remedy providing that the second arbitration take place in a forum unaffiliated with [the current administrators] because Plaintiffs would be unable to obtain a fundamentally fair arbitration if [the same administrator] were to administer the matter. This case has substantially similar facts and circumstances surrounding the well-plead allegations of evident partiality.  This argument is supported by the extensive pleadings in the Complaint - overlooked by the Court that included the following facts: (i) NFA's apparent lack of concern for fairness at the first proceeding; (ii) NFA's refusal to address the Plaintiff's complaints of the unfairness created by its participation with ADMIS, and material admissions by ADMIS that NFA were direct participants in the scheme and liable parties; (iii) NFA's direct and pecuniary stake in the outcome of the dispute – including the facts – that it actively wants to conceal from dozens other customers and CTA's that their businesses have been disenfranchised by selling their accounts to the disbarred Vision – which in turn provides substantial revenue and operating income for the NFA who rely solely on fees; (iv) evidence that NFA, in bias, concealed evidence from the Panel, withheld subpoenas, and interfered in an substantial and active manner of impartiality towards ADMIS to conceal the fraudulent scheme; (v) direct evidence of over-charges and obstructing witnesses demanding excessive fees for NFA Board members who could expose NFA corruption – so that it would be cost prohibitive to testify; and (vi) evidence that ADMIS intends to call the "administrators" of the Arbitration, NFA employees and NFA compliance officers as defense

witnesses, and has actively supported ADMIS' attempts to withhold documents with NFA's signature on it, and conceal material incriminating evidence related to Jane Doe 1 and Jane Doe 2. Moreover NFA failed to defend or recuse itself from the allegations of evident partiality when it had the opportunity to do so – resulting in a stay..

(xii)    *Court manifestly erred in law to address fundamental fairness*

The Court's ruling to not consider the relevant facts pled and the standards of subject matter jurisdiction related to the Arbitration, is a manifest error and not consistent with the standards in the 2nd Circuit. Courts have consistently ruled that fundamental fairness is indeed a foundational precept of any arbitration (*see e.g. Bowles Fin. Group., Inc. v. Stifel, Nicolaus & Co.,* 22 F.3d 1010, 1012 [10th Cir.1994] ["Courts have created a basic requirement that an arbitrator must grant the parties a fundamentally fair hearing"]; [45] The Court cursory review, did not dissect any of the well-pled facts of fundamental fairness. What is meant by fundamental fairness is that the parties can reasonably expect that the arbitrators will approach the dispute without bias, that the arbitrators will view evidence without prejudgment as to the merits, and that the dispute is not predetermined as it enters arbitration. (*see Bowles Fin. Group,* 22 F.3d at 1013 ["Courts seem to agree that a fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias"]. [46] The Complaint pled serious concerns of fundamental fairness, where (a) evidence and exhibits were being concealed from the Panel (b) dockets were being withheld (c) motions and subpoenas diverted; and (d) arguments and transcripts denied. Notably the Court failed to take note that the Arbitrators themselves, ruled a stay, potentially signaling their own ruling of a material conflict of interest, an irreparable one, that could not be determined within their jurisdiction. Completely missed by the Court, unlike any of the cases cited, *Yadav, Gill, Austen and Funcia*, those cases possessed no ruling by the Arbitrators, decrying subject matter jurisdiction to the Court on issues of evident partiality. This also reaches the heart of the issue in this case.

---

[45] *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, UAW,* 500 F.2d 921, 923 [2d Cir.1974] ["(A)n arbitrator need not follow all the niceties observed by the federal courts. He (or she) need only grant the parties a fundamentally fair hearing"]).
[46] *see also Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.],* 11 N.Y.2d 128, 137, 227 N.Y.S.2d 401, 182 N.E.2d 85 [1962] [applying state law and noting that even "partisan" arbitrators in tripartite arbitration, where two party-selected arbitrators select a "neutral" third, may not "be deaf to the testimony or blind to the evidence presented. Partisan [they] may be, but not dishonest"]).

Motion for Reconsideration, Page 29

## D – COURT ERRED IN COLLATERALLY ESTOPPED ISSUES

### (i)      The Court failed to address Collaterally Estopped issues

Plaintiff identified through discovery material conflicts of interest and evident partiality in the proceeding. The Court also erred to discuss the existing rulings by the Arbitrators that they have no subject matter jurisdiction, including over the NFA, or over the claims with Kumaran individually are collaterally estopped. The public faith in a judicial system rests on the predictability and effectiveness of that system. [47] A party seeking resolution of a dispute must be afforded a degree of certainty in the outcome and knowledge that the resolution will be final. *See* Southern Pacific R.R. v. United States, 168 U.S. 1, 49 (1897) (stating "the very object for which civil courts have been established . . . is to secure the peace and repose of society by the settlement of matters capable of judicial determination"). [48] Courts developed the doctrine of collateral estoppel as one measure for ensuring that these policies are fulfilled. [49] *See also Brown,* 442 U.S. at 131 (preclusion ensures judicial finality); [50] 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416 (1981) [51]

The Panel ruled that it has no jurisdiction to determine bias, the Panel ruled that it has no jurisdiction over claims between Kumaran and ADMIS Therefore, if the Arbitrators themselves, have ruled no subject matter jurisdiction under the FAA, itself the issue is collaterally estopped from being sent back to the Arbitration. The doctrine of collateral estoppel precludes a party or its privy from relitigating any factual issue which has been "actually litigated" in a prior action and which was necessary to the resolution of that action. Collateral estoppel is used when the subsequent suit's basis is a different cause of action and in certain circumstances, may involve those who were not parties to

---

[47] *See* Brown v. Felsen, 442 U.S. 127, 131 (1979); Montana v. United States, 440 U.S. 147, 153- 54 (1979); Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies,* 54 GEO. L.J. 857, 858 (1966).
[48] *See also Montana,* 440 U.S. at 153 (a major goal of the judicial process is finality).
[49] *See Southern Pacific R.R.,* 168 U.S. at 48-49 (enforcing rules preventing repetitious litigation is necessary to maintain social order); *Montana,* 440 U.S. at 153 ("Application of both doctrines [res judicata and collateral estoppel] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction.").
[50] Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917) (The Court states that preclusion "is a rule of fundamental and substantial justice, 'of public policy and of private peace' **....**" (citing Kessler v. Eldred, 206 U.S. 285 (1907)));
[51] *See* 1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE 0.405[11] (1988) (where collateral estoppel is viewed as a part of res judicata) [hereinafter MOORE]. The terms "claim preclusion" and "issue preclusion" are the modem terms for res judicata and collateral estoppel, respectively. *See also* Holland, *Modernizing Res Judicata: Reflections on the Parklane Doctrine,* 55 IND. L.J. 615, 615-16 (1980). Broadly, res judicata encompasses the effect of a final judgment both as a bar to further action upon the same claim, and as an estoppel as to matters necessarily litigated, although the claim in the subsequent action is different. MOORE, 0.405[1]. Recent cases tend to limit the term res judicata to the former usage and limit the term collateral estoppel to the latter. *See* Allen v. McCurry, 449 U.S. 90, 94 (1980) (noting the limited interpretation of res judicata); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)

the original action.[52] As is the case here, the issue of subject matter jurisdiction was determined by the Arbitrators. Since the Arbitrators already ruled they do not have subject matter jurisdiction on various aspects or Kumaran's individual claims with ADMIS,  nor the NFA, the jurisdiction falls back into this Court. Thus collateral estoppel prevents needless litigation, on previously determined issues which promotes judicial economy while being tempered by notions of fairness to the litigants. [53]

The Court therefore erred in law to apply the relevant subject matter jurisdiction that on the preliminary matters of jurisdiction and standing, the Supreme Court held that an order that both compels arbitration and dismisses the underlying claims qualifies as a "final decision with respect to an arbitration" within the meaning of 9 U.S.C. §16(a)(3). Since the Arbitrators in this action, dismissed jurisdiction of Kumaran's individual claims, dismissed jurisdiction of the class claims, and dismissed jurisdiction of the NFA's roles, for material conflicts of interest, this case does involve subject matter under the FAA as some issues are collaterally estopped. (ECF ¶213-214, ¶255)

    *(ii)*   *Judicial Efficiencies Prevents Reverting back to the NFA Arbitration*

Therefore the Court further erred in law to attempt to send Plaintiffs back to an Arbitration, to re-litigate an issues that has already been determined were out of jurisdiction. That jurisdiction related to the questions of Federal law being raised, lies in the heart of this filing. Policies favoring judicial economy and prevention of inconsistent results prompted the judiciary to formulate the doctrine of collateral estoppel as well as the doctrine of res judicata. [54],[55],[56] These policies may outweigh other important judicial policies creating limited exceptions to the application of issue preclusion. Plaintiff argues that the issues of jurisdiction was already determined by the Arbitrators to have subject matter jurisdiction in this District Court. The Court also failed to investigate when the application of collateral estoppel infringes on a party's federally protected rights. An arbitration decision should not be afforded a preclusive effect; federal treatment of an issue should not be barred

---

[52] See *Kremer v. Chemical Construction Corp., 456 U.S. 461, 466-67 (1982).*, *Parklane Hosiery Co.,* 439 U.S. at 331.

[53] The Evergreens v. Nunan, 141 F.2d 927,929 (2d Cir. 1944), *cert. denied,* 323 U.S. 720(1944) (only the determination of "ultimate" facts will be binding in subsequent litigation).

[54] "To preclude parties from contesting matters that they collateral estoppel conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana,* 440 U.S.at153-54 (1979).

[55] Preclusion is a judicially created doctrine that restricts parties from relitigating claims or issues previously determined. *See generally* WRIGHT, *supra* note 5, §§ 4401-4426 (discussing rules of preclusion).

[56] There are three characteristic differences between the two doctrines. Res Judicata prevents relitigation of claims; collateral estoppel ends controversy over issues. Res judicata applies regardless of whether there has been an adversary contest on a particular matter; collateral estoppel operates only when an issue has been litigated fully. Res judicata precludes only subsequent suits on the same cause of action; collateral estoppel may preclude relitigation of issues in later suits on any cause of action. J. FRIEDANTHAL, M. **KANE** & A. MILLER, CIVIL PROCEDURE 613 (1988).

when Congress intended resolution of the statutory claim to be obtained in a judicial forum, and arbitration cannot adequately protect that claim. [57], [58], [59] Therefore the Court erred in law not to consider the collaterally estopped issues in its subject matter jurisdiction.

    (iii)    *The Court also failed to do a case-by-case analysis on the issues estopped*

        The Court also failed to provide a case-by-case analysis which was required to examine if the subject matter jurisdiction was already decided through arbitration considered to be actually litigated for purposes of collateral estoppel in a subsequent federal court proceeding.[60] Courts have frequently determined this on a case-by-case basis and the Restatement of Judgments (Second) § 84 also requires a case-by-case analysis prior to dismissal.[61] [62] The Court therefore erred and failed to provide any analysis on the lack of subject matter jurisdiction of the Arbitrators. For instance Courts typically analyze the procedural and fundamental aspects of the arbitration and to compare them to the procedures employed in litigation.[63] The Court erred in law and fact to properly and wholesomely consider whether the issue in controversy, fell within the scope of either a valid agreement to arbitrate or a statute requiring arbitration - wholly ignoring that Kumaran individually claims were collaterally estopped from adjudication in the Arbitration forum, and that the issues of the NFA's involvement was also not subject to the Arbitrator's jurisdiction. [64] Other substantial issues of lack of arbitrability that were overlooked are discussed herein – including the fact that Kumaran and none of the other defendants even had an arbitration agreement. Other issues of preclusion are the class arbitrability

---

[57] *See* McDonald v. City of W. Branch, 466 U.S. 284, 289 (1984); Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 745 (1981); Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60 (1974).

[58] *See McDonald,* 466 U.S. at 285 (arbitration cannot provide an adequate substitute for judicial proceedings of rights under 42 U.S.C. §1983); *Barrentine,*450 U.S. a 743-46 (arbitration procedures are less protective of statutory rights than judicial procedures); *Alexander,* 415 U.S. at 44-45 (inadequate procedures can make arbitration a less appropriate forum for determining claims on statutory rights).

[59] *See McDonald,* 466 U.S. at 285; *Barrentine,* 450 U.S. at 743-46; *Alexander,* 415 U.S. at 44- 45.

[60] Arbitration, like judicial litigation, is a process of dispute resolution whereby an impartial 'judge' evaluates evidence and renders an opinion through reference to general principles of law. Unlike judicial litigation, arbitration typically permits the parties to select their own arbitrator, to stipulate to rules of evidence and procedure, to impose limitations on the arbitrator's power, and to determine the substantive legal rules governing the decisional process. As a non-judicial alternative, arbitration has the potential to alleviate overburdened court dockets, minimize the preparation of cases, reduce the expense and delay of litigation and relitigation, and improve compliance with awards. In addition, arbitrators who possess greater expertise in the subject matter of the dispute are likely to render more equitable decisions.

[61] Note, *The Preclusive Effect of Arbitral Determinations in Subsequent Federal Securities Litigation,* 55 FORDHAM L. REV. 655, 665 (1987) ("Any rule of preclusion for arbitral determinations, therefore, is judicially fashioned."). *See McDonald,* 466 U.S. at 288.

[62] RESTATEMENT (SECOND) OF JUDGMENTS § 84 comment (1982) ("When the arbitration procedure leading to an award is very informal, the findings in the arbitration should not be carried over through issue preclusion to another action where the issue would otherwise be subjected to much more intensive consideration.").

[63] Motomura, *Arbitration and Collateral Estoppel: Using Preclusion to Shape Procedural Choices, 63 TULANE L. REV. 29, 32* ("Under the dominant approach, courts accord collateral estoppel to arbitral findings on a case-by-case basis, depending on the magnitude of the differences between the litigation and a given arbitration.").

[64] *See Wilko,* 346 U.S. at 430; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 214 (1985).

issues. This argument does not even begin to touch on the scope of the evident partiality and bias of FAA jurisdiction discussed in Section B and C above.

The rulings of lack of subject matter jurisdiction by the Arbitrators themselves are material and a manifest oversight.. ((ECF ¶213-214, ¶255)The Court also erred to see if the parties to the former adjudication are the same as in the present dispute or if there are any other reasons bearing upon the applicability of collateral estoppel.[65] The Court erred to not determine the issues were already ruled on or determined by the Arbitrators – to assert that they do not have subject matter jurisdiction to determine evident partiality and material conflicts of the NFA's role in the Arbitration Further, the Court erred not to apply the Collateral Estoppel doctrine, that the Arbitrators also have no jurisdiction on Counts 1 and Counts 3-8, which are unrelated to the NFA's role in the arbitration but related to their commercial participation and failure to abide by the CEA. (*See* Supra A)

## *E –COURT ERRS IN ITS SUBJECT MATTER JURISDICTION OVER CLASS ACTION ARBITABILITY*

### *(i) Court errs in resolving issues related to class action arbitrability*

The Court also erred in law not to address material jurisdictional issues of law and fact as relates to the arbitrability of a class action. The FAA does not permit class actions unless contractually agreed to. Courts have determined that class action arbitration is a departure from ordinary, bilateral arbitration of individual disputes and therefore that courts may compel class action arbitration *only* where the parties expressly declare their intention to be bound by such actions in their arbitration agreement, the U.S. Supreme Court has ruled *Lamps Plus, Inc. v. Varela*, No. 17-988 (Apr. 24, 2019). (Emphasis added). The Supreme Court said, "Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a class-wide basis." This Court in ECF 13 also erred in law, as it made no analysis, of the underlying arbitration agreements that do not permit a class arbitration. The Supreme Court has ruled that arbitration agreements must clearly and unmistakably state that the parties agree to resolve class and collective actions through arbitration. Without such a clear agreement, a party cannot be compelled to class arbitration. "Under the Federal Arbitration Act [FAA], an ambiguous agreement cannot provide the necessary contractual basis for concluding that the parties agreed to submit to a class arbitration," the Court held. "Like silence, ambiguity does not

---

[65] *Parklane Hosiery Co.*, 439 U.S. at 331-33 (1979).

provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice the principal advantage of arbitration.' This conclusion aligns with the court's refusal to infer consent when it comes to other fundamental arbitration questions."

Plaintiffs' case is broad reaching and impacts dozens of customers. The Court also in its summary of the case, and facts considered in its Order ECF13, inaccurately dismissed Plaintiff's claims as an "isolated" event. This was a manifest error in its analysis that states clearly in ***Paragraph 1*** of its complaint, Page 1, that Plaintiff was arguing against Arbitration, and the arbitrability, specifically asserting the in-arbitrability also under the basis of class action Arbitration. The Court summarily ignores material facts throughout the Complaint of the class itself (ECF1, ¶2-5, ¶37, ¶99) and the very clear focus that an issue is the impact to dozens of customers. Further the Court manifestly errs to ignore Plaintiff has named over twenty brokers involved in the scheme (Exhibit 2) each with another multiple customers and CTA's who have been disenfranchised. Not only does the Court ignore these facts, it also wholly ignores the reasons leading up to the Arbitrators own decision to stay the proceeding due to in-arbitrability and conflicts of interest. (Exhibit 10). Whereby issues, among those raised, specifically included "dozens of customers have been franchised" – and in the aggregate there was significant financial benefit in the fraud.

This demonstrates the significant evident partiality and why the Commodities Exchange Act statute is invoked with Federal Court jurisdiction. Further Plaintiff and this Court concede Plaintiff filed the case as a class action. While Plaintiff may have improperly plead the class under FRCP Rule 23(d), that error should not be so fatal as to disregard the entire claim that Plaintiff's claim is not isolated. Further, while Plaintiff (individually) may not be able to lead the class herself, it is certainly not out of the question that other counsel could step in, to lead the class. This arbitration therefore has no comparison to *Yadav, Gill, Austen and Funcia.,* who did not involve class action predicate.

Therefore this Court does have subject matter jurisdiction over class action cases that cannot be arbitrated. NFA Arbitrations do not permit class actions. Whether or not Plaintiff Kumaran is the correct lead class Plaintiff is not relevant to the issue or arbitrability. The Court erred in law to assess whether or not the subject matter falls under a potential class arbitration, and in this case, arbitrability is indeed in question. Under Rule 23 and since the class exists, the Court should at least permit

discovery into the range or scope of the class, and impact the pleading of commercial and direct pecuniary interest of ADMIS, NFA and Vision – the conspirators of the scheme.

*(ii) Court erred to in fact and law on its jurisdiction on class arbitrability*

Since none of the parries agreed by contract permit class action arbitration, and this particular action involves as correctly pled, an entire class of customers and CTA's, as well as Plaintiff, the Court erred in law and fact that it does not have subject matter jurisdiction.  The facts persist, that this case, as manifestly distinct from all the other cases set forth in the Order, impact a class certification of customers and CTA's who's rights have been aggrieved by the Defendants and ADMIS, and, also falls under the subject matter jurisdiction not just under the FAA, but also under private rights of action under 7 USC 25 (b) and (c). As stated prior the Court also manifestly erred in law also confusing the laws of private rights of action against a registered futures association 7 USC 25(b) with those under securities laws – under 34 Act 10(b)). The Court also overlooked that the matter was already settled by the Arbitrators, it has no jurisdiction over a class. Therefore the Court manifestly erred in law to not address this.

*(iii) Plaintiff intended to appoint counsel under Rule (23) and seek early discovery*

Further the Court erred procedurally to not allow Plaintiff to appoint counsel which is governed under Plaintiff under Rule 23 in its initial Complaint to conform to meet the standards required to plead a class action, and was denied its procedural rights under Rule 15 which it gave it ninety (90) days to amend the Complaint  – and was in the process of doing so – had the right to retain counsel for the class, prior to service. Further Plaintiffs had a procedural right, to file a motion to seek the necessary discovery – and to appoint counsel to certify the class. Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure (Rule 23): "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." The Complaint alleges numerous oversights in due process to Plaintiff to address these rights and was wrongfully terminated on a based on completely inaccurate Federal statutes.

**F. THE COURT IMPROPERLY ASSESSED THE ARBITRABILITY OF THE AGREEMENT**

The Court also manifestly erred in its assessment of Arbitrability.

*(i)     Court erred to not misstate facts related to ADMIS' procurement of the arrgreement by fraud*

The Court also erred in fact in its assessment of arbitrability in failing to reference facts pled that both (i) the ADMIS agreement was procured by fraud and (ii) NFA inducement into the NFA

Forum itself was also induced or procured by fraud and corruption. Arbitration is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.*), and the substantial body of case law under the FAA holding that the terms of negotiated arbitration agreements must be judicially enforced according to their terms [66] in the absence of an established ground for setting such agreement aside, such as fraud, duress, coercion or unconscionability.[67]

### *(ii)    Court Erred in Applying Incorrect Facts to Arbitrability*

The duty of courts in promoting the goal of the FAA is to " 'rigorously enforce' arbitration agreements according to their terms" even when they appear to be unwise. [68] Further Court erred to even apply the analysis to the actual terms. Furthermore, the Court in fact, as the Complaint *is* challenging the Arbitrability of the agreements – not just with regard to the evident partiality, fraud and bias, but the agreement itself, which falls squarely under the jurisdiction of the District Court. The Court also erred to examine the facts that the single-party Arbitration agreement allowed for multiple ***fora –*** not one single forum. Therefore the fraudulently induced Arbitration agreement, allows for NRCM to arbitration against ADMIS under other arbitration forums like the CFTC reparations – and to remove the NFA from administering the case. Therefore subject matter does exist in the NFA's administration as an impartial forum. Plaintiffs have no arbitration agreements with other Defendants. In any event, the evident partiality issues raised supra render jurisdiction herein.

Moreover the challenge to Arbitration falls under judicial estoppel and collateral estoppel regarding ADMIS and Kumaran (individually). ADMIS already argued to the Arbitration Panel, that the Arbitrators had no jurisdiction over the dispute between ADMIS and Kumaran. The Arbitrators also ruled that this dispute does not even lie within their jurisdiction. (See above). See Com XXX.

Further Kumaran is the sole owner of the trading strategies and under the Defend Trade Secrets Act. Kumaran (individually) and ADMIS and other parties claims under the Defend Trade Secrets Act, was not subject to any Arbitration Agreement and certainly not one riddled with evident partiality, fraud and bias. Therefore the Complaint is disputing any Arbitrability.  Since ADMIS and Kumaran's individual claims are judicially estopped and collaterally estopped then the District Court does have jurisdiction.

---

[66] *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 [1989]),

[67]*Matter of Cullman Ventures [Conk],* 252 A.D.2d 222, 228, 682 N.Y.S.2d 391 [1st Dept.1998], citing *Matter of Salvano v. Merrill Lynch, Pierce, Fenner & Smith,* 85 N.Y.2d 173, 181–182, 623 N.Y.S.2d 790, 647 N.E.2d 1298 [1995] ).

[68] *Salvano* at 181, 623 N.Y.S.2d 790, 647 N.E.2d 1298

Notwithstanding the foregoing, the Court misstated facts, because Kumaran and ADMIS, and all NRCM and all Defendants are not bound by any arbitrability clause. ADMIS is also judicially estopped from arguing otherwise as it has already argued to the Panel that its seeks jurisdiction of the Courts. To the extent this was a pleading deficiency or not adequately included in the Complaint the District Court should have granted Plaintiffs leave to amend to correct a minor deficiency  - arguing that sufficient facts were pled to provide a colorable claim that the Arbitration agreement was riddled with evident partiality and procured by fraud, and that the Arbitrators had already -  in collateral estoppel – ruled they did not have subject matter jurisdiction. The fundamental issue before this Court was invoking jurisdiction under the FAA due to material conflicts of interest, evident partiality and failures to disclose, the lack of neutrality in the forum which it has done.

### (iii)    *The Court's assessment of Arbitrability was also Incorrect*

In summary, the Court materially erred in law and fact, to not note that (a) the only parties to a fraudulently induced arbitration agreement were NRCM and ADMIS (b) none of the other parties such as Vision defendants, and Lazzara defendants, and Kumaran and NRCM had even an arbitration agreement, which does fall under the jurisdiction requirements to compel or remand Arbitration under FAA (4); (c) as discussed more fully herein, the claims between Kumaran and ADMIS also were already ruled (and determined) by the Panel (Com XX) to not be under the subject matter jurisdiction leading to a situation of judicial estoppel and collateral estoppel and (d) the Arbitrators also ruled it has no subject matter jurisdiction over the impartiality, evident partiality or bias of the NFA itself (Com XX) which also is collaterally estopped.

### (iv)     *The Court's Erred in Fact to address Class Action Arbitrability*

Finally as stated supra, the Court also materially erred in fact that the issue of class arbitrability is also prohibited under the FAA as the parties expressly did not agree to those provisions.

### G. *COURT ERRED IN OTHER SUBJECT MATTER JURISDICTION*
### (i)    *Court erred in law for substantiality*

Plaintiffs motion also addresses that the Court erred to dismiss the Complaint on grounds of substantiality because it failed to apply the correct statute granting jurisdiction under 7 USC § 25(b) and provided no opportunity to brief the plausibility or foundations of the claims. "The test for dismissal is a **rigorous** one and if there is any foundation or plausibility to the claim, federal jurisdiction exists." 13D Wright & Miller § 3564, pp. 244–45. As stated supra, the Court erred to apply the appropriate

standard - which requires detailed and rigorous analysis of the pleading of "bad faith" as the sole exemption of a futures association, which the Complaint pled with substantiality (See e.g. ECF1 ¶1, ¶4).[69] Bad faith under 7 USC § 25(b)(4) sustains subject matter jurisdiction in Federal Court against a registered futures association. Therefore the Court failed to supply the requisite analysis to support a ruling that the Complaint is "so attenuated and unsubstantial as to be absolutely devoid of merit", wholly ignoring the CEA 7 USC § 21, 7 USC § 25(b)(4), and the distinctions explained herein. Plaintiffs has shown beyond a preponderance of evidence that each and every one of the causes of action is plausible and has merit.

### (ii)    *Court erred in law for centrality*

Plaintiffs' motion addresses that Court erred in law to dismiss the Complaint without discussion of centrality. The Supreme Court has also recognized that a case will arise under federal law in "certain . . . state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

### (iii)    *Court manifestly erred in law to dismiss Federal law and State Law Claims*

Because the Courts' analysis of subject matter jurisdiction was inherently flawed (as discussed above), Plaintiff further argues that the Court's dismissal of validly pled Federal Law and State Law is moot, and the claims were therefore incorrectly dismissed, and were incorrectly assessed in advance of a 12(b)(6) motion. Plaintiff has demonstrate explicitly how it met the cause of action requirement in each of the causes pled and subject matter exists for all of them.

## H - The Court's Case Law in ECF10 Fails to Apply the Correct Law and Facts

### A.   The Court does have subject matter jurisdiction under the FAA due to evident partiality

The Courts erred in law and fact to rule that it did not have subject matter jurisdiction over the Federal Arbitration Act ("FAA") as it failed to apply the incorrect facts and evident partiality or the correct analysis of arbitrability.

### (i)    *Court's Use of In re Am. Exp Fin Advisors Sec Litig is Inapplicable to the Facts of This Case*

The Court manifestly erred in law and fact in applying the FAA standards of *In re Am. Exp. Fin. Advisors Sec. Litig* to this case. In *In Re Amex*, the case was related to remand of an arbitration, due to in-arbitrability of the underlying contract of the parties. This wholly does not address the facts

---

[69] *See also e.g.*. ECF 1 ¶1, ¶4, ¶44, ¶88, ¶93, ¶103-108, ¶119, ¶¶123-124, ¶170 ¶,227, ¶232, ¶¶243-244, ¶250, ¶¶261-264, ¶¶281-283, ¶¶296-297).

in *this* Complaint, which is pled with specificity on fraud, bias and evident partiality. The FAA does have jurisdiction to remand a case to a new Arbitration forum or to this Court (*See TCR Sports*). Further inapposite to *In Re. Amex*, the current case has pled with peculiarity a preponderance of evidence of pecuniary direct and indirect interest in the outcome of the case. These facts wholly contradict the facts in *In Re Amex*. More applicable case law would be *TCR Sports*. Finally this case law *In Re Amex* fails further on fact, because as stated supra, in the case at hand, Kumaran and NRCM (majority of the parties) did not have a binding arbitration agreement. There was an arbitrability issue between Kumaran, NRCM and Vision defendants and Lazzara defendants. And further the Court erred in fact, that ADMIS themselves had voided the Arbitrability and determined the claims fell outside the arbitrability in the personal claims – and the Arbitrators had already ruled that Arbitrability related to the Kumaran vs. Admis claims. Nonetheless, what is completely distinct in this case is comprehensive pleading of the evident partiality. (see Section B, supra).The case at hand is brought due to manifest and fundamental fairness, where the NFA failed to disclose impartiality and this investigation falls into the District Court (*See* In TCR Sport)

### (ii)    *Court's Use of  Citigroup is Inapplicable to the Facts of This Case in the FAA*

The Court also manifestly erred in law and fact to apply *Citigroup* to this case. The circumstances of this case are also manifestly different and were related to a "second arbitration" which had res judicata to overturn a "first arbitration", where the case was already tried on the merits. Plaintiffs case is against wholly inapplicable. Here, in the case at hand, there was no first arbitration, let alone a ruling by a Panel constituting res judicata. Here instead the facts state the Arbitration Panel, denied subject matter jurisdiction over the NFA, and the investigation of evident partiality. Therefore this is a case of collateral estoppel and not res judicata. The *Citigroup* case has no facts related to evident partiality, bias, fraud and a conflict of interest in the Arbitrators – or their failure to disclose conflicts of interest. The facts here differ because they show that the NFA failed to investigate or disclose the facts of its bias and fundamental fairness. Therefore there was no parallel in the *Citigroup* case, which actually went to hearing and had no allegations of fraud, evident partiality. For the reasons stated supra in *In. Re. Amex*, the FAA does provide jurisdiction on the remand. This case particular fails as it applies the Writs Act to a hearing and judgment that was already rendered. Here, there was no hearing – there was no judgement. This case was collaterally estopped as the Arbitrators recognized

the evident partiality in the NFA's role and their failure to cooperate with the disclosures <u>Citigroup, Inc. v. Abu Dhabi Inv. Auth.</u>, 776 F.3d 126 (2d Cir. 2015)

### (iii)    *Court's Use of Howsam vs. Dean Wiiter is Inapplicable to the Facts of This Case*

For the reasons similarly stated in *In Re Amex*, The Court erred in law and fact to apply Howsam v. Dean Witter Reynolds, Inc to this case. This case is again related to a dispute of arbitrability of the agreement and not in any way related to fraud, bias and evident partiality. This case law fails as relates to evident partiality, as District Courts do have subject matter jurisdiction to remand to a neutral forum.

### (iv)    *Court's Use of Hall St. Assocs v. Mattel is Inapplicable to the Facts of This Case*

The Court erred to use *Hall St.* as this case fails in entirety to consider the facts relevant to evident partiality, bias, procurement by fraud, where Plaintiff produced a preponderance of evidence of a direct interest in the outcome of the proceeding. Instead,  this case wrongfully compares this to assume there was an award, where a party tried to overturn an award after the fact. Wholly different from *Hall St*,  the matter before the Court is not to overturn an award, but related to material disclosures of evident partiality,  which were not made prior to entering into an Arbitration, and the jurisdiction of the Court to review evident partiality, fraud and bias – prior to any hearing on the merits – where the NFA participated with ADMIS in the scheme, and therefore should not be able to partake in administration of the Arbitration due to the FAA's rules on evident partiality. Therefore the case in Hall is inapplicable. *Hall St. Assocs., L.L.C. v. Mattel, Inc*  A case more relevant to the matter at hand, is TCR Sports which makes clear there is subject matter jurisdiction in this District to remand an Arbitration to a new forum, in the evidence of evident partiality. Further the facts are distinguishable as none of these cases have a claim where Defendants, call the administrators of the Arbitration as defense witnesses, or make admissions that the administrators are liable parties. (See Com XX)

### B.  The Court misconstrues the Case that this is about a suit against an Arbitrator

Because the Court manifestly erred to misconstrue that Plaintiff is bringing suit against the Arbitrators, neither is it bringing suite against the administrator of the Arbitrator, Heather Cook, but instead seeking remand under FAA for evident partiality, it applied wholly irrelevant case, that has nothing to do with the persistent fact of disclosure of material conflicts of interest. The Court manifestly failed to distinguish the independent claims against the NFA Counts 1, and Counts 3-8 as discussed above, which are wholly unrelated to the Arbitration, for which there is subject matter

jurisdiction under 7 USC 25. Therefore the Court erred in fact, to summarize this complaint as a claims against the administrator of the Arbitrator.

**(v)**     ***Court's Use of Funcia vs Nyse Group  is Inapplicable to the Facts of This Case***

Again the Court confuses cases that are subject to res judicata (already heard before a Panel) and claims after-an-award. In direct contradiction, Plaintiffs in this instant, make no mention of an award but instead assert jurisdiction under FAA 2,  FAA 9-11 of the allegations of evident partiality and fraud. Specifically, unlike *Funcia,* Plaintiff is enforcing its rights under two completely different statutory doctrines (a) private rights of actions unrelated to an arbitration, that are specifically against a futures registered association (which falls under 7 USC 25(b) – noting the NYSE is not a registered futures registered association and (b) under the Federal Arbitration Act; where, an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality. 9 U.S.C.A. § 10(a)(2). [70]

**(vi)**    ***Court's Use of Austern v. Chicago Board Options Exchange, Inc  is Inapplicable to the Facts of This Case***

The Court's analysis of *Austern* also fails to command the specific facts in this case that relate to the jurisdiction under the FAA to remand to a new arbitration forum due to evident partiality.  Courts have repeatedly emphasized an arbitrator's duty to investigate and disclose potential conflicts. *See, e.g.*, *New Regency*, 501 F.3d at 1110–11 (holding arbitrator's duty to investigate possible conflicts). For the reasons supra, this case is also distinguishable as Plaintiffs are not overturning an existing award. The case, is instead, related to a long pattern and well documented evidence of failure to disclose and participation in the scheme with ADMIS. More applicable case law is TCR Sports, where the 2nd Circuit ruled that there is no real dispute that courts are empowered to substitute a contractually chosen arbitrator where there is evidence of a conflict or bias.[71]

**(vii)**   ***Court's Use of McCradden Vs NFA is Inapplicable to the Facts of This Case***

The case of McCradden is also not instructive as it relates to single person dissatisfaction with a "disciplinary" proceeding. Unrelated to the facts of this case, neither Kumaran not NRCM were subject to a "disciplinary" proceeding – and there was no case of adjudication – not trying to overturn

---

[70] *See* Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 134–39 (2d Cir. 2007).

[71] (*see* 4 Commercial Arbitration § 131:17; *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 n. 2 [2d Cir.1972] [affirming district court's substitution of a neutral arbitrator for parties' chosen arbitrator "to insure a fair and impartial hearing," where the chosen arbitrator had become a partner of the law firm representing one of the parties] ).

any actions of a judicial nature. Further the McCradden case is not pled under the specific section as relates to liability of a registered futures association to its market participants 7 USC 25(b)(2) and therefore is unrelated statute. More instructive case law, which is filed under the private rights of action for traders for "bad faith" actions of a registered futures association is Troyer vs. NFA (ruling the NFA does have subject matter jurisdiction in District Court, for violations of the Commodities Exchange Act 7 USC 25(b).

*(viiii) Court's Use of Yadav v. NYSE to the Facts of This Case*

The Court's use of this case law is also wholly not instructive to the case at hand. In that case *Yadav* missed a statute of limitations in serving his motion to vacate an award or appeal. Unlike this case, no statute of limitations is cited as an issue in this case, and this case has no motion to "vacate" or "overturn" an award citing no parallel to the facts. Here there was no hearing. There was no award. There is no three month limitation. Further the case fails due to symptomatic errors in not failing to address the distinguishable facts on *evident partiality*, and as expressly pled the failure of disclosures or bias on the NFA and its role and participation (as well as documentary evidence) that creates an inherent conflict of interest (See Section H supra). Therefore Plaintiff's motion is related to evident partiality – pled timely – before any hearing took place and is therefore incomparable to the *Yadav* case.

*(ix)        Court's Use of Gill v. Fin Re  is Inapplicable to the Facts of This Case*

The Court's use of *Gill v. Fin Re* for the reasons stated supra is also unrelated to the case. For one, the case fails to bear any relevance to the consistent and well-document evident partiality and the failure to disclose material conflicts of interest. Further there is no timely pleading in this case of evident partiality and the collateral estoppel herein where the Arbitrators have no subject matter jurisdiction on this issue. More importantly, the Court manifestly errs to not distinguish that facts pled here show that Counts 1, and Counts 3-8 which are distinct claims that have no bearing on any arbitration. Therefore since these count were unrelated to any arbitration and also fall under a completely separate jurisdiction statute 7 USC 25(b) this case law fails and has no bearing on the matter. More relevant case law is *TCR Sports* and *City of Providence*. The FAA grants jurisdiction to the district court to remand an Arbitration to a new forum.

### (X)    *Court's Use of Montero Vs Travis is Inapplicable to the Facts of This Case*

The Court's reliance on *Montero* is also wholly misplaced. This case is related to a prisoner who was incarcerated and whether his parole was revoked. This is completed unrelated to the private causes of action, that Federal Statute sets forth for traders against the registered futures association for bad faith violations of the Commodities Exchange Act under 7 USC 25(b)-(d). It applies to a completely different statute.

### (xi)  *Court's Use of Netzeike v. Mattel is Inapplicable to the Facts of This Case*

This case is again wholly unrelated and again applies a prisoner who was moved from his cell-house because of a previous medical condition. This case has absolutely nothing to do with the Commodities Exchange Act and the private rights of action, given to traders against a registered futures association under 7 USC 25(b)-(d).

### (xii) *Other material differences in the Case law cited*

The Court also failed to note several other material differences and distinctions that do not apply to the cases it cited. Unlike *Yadav, Gill, Austen and Funcia*. Plaintiff in this instance, pled with peculiarity facts, that Plaintiff was not the **only** customer or CTA involved and damaged by the scheme which distinctly differentiates that Plaintiffs case, as not an isolated arbitratee -who did not like an award – but one which demonstrated an entire class of customers involved. This case therefore invokes issues of class arbitration when dozens of other customers and CTA's would be able to bring similar claims. Other distinguishing facts were they were garden variety arbitrations where a ruling was heard on the merits – not where a proceeding was stayed mid-way. They were not related to a situation where clear and well-plead documented patterns of bias and evident partiality, where subpoenas were issued against the administrators of the Arbitrations, and they failed to disclose material facts of their documentary evidence of participation in the scheme for profit. And none of those cases had allegations where a Defendants had admitted midway through the proceeding that an arbitrator (or its administrator) were "defense witnesses" to the conduct rendering their oversight impartial or admitted to be parties.

### C.  The Court does have subject matter jurisdiction under the Private Rights of Action under 7 USC 25 (b)-(d) as it is a Registered Futures Association

The Court manifestly erred in law and fact to apply cases unrelated to the Commodities Exchange Act and failed to recognize the specific exemptions of absolute immunity granted to **registered**

*futures association* under 7 USC 25(b)-(d). *See* Section A supra. Further the Court manifestly erred in law to not apply the standards of "bad faith" which is the requisite pleading for liability and actual damages to occur as clearly stated for *registered futures association.* Therefore the Court inaccurately used case law that stems from Securities laws and 10(b) of the 1934 Act, which wholly doesn't apply to the private rights of traders that govern under the Commodities Exchange Act.

(xiii)   *Court's Use of In re NYSE  is Inapplicable to the Facts of This Case*

This case was again inapplicable as it was founded in claims against a securities exchange under their claim under Securities Law of Rule 10b-5, 17 C.F.R. § 240.10b-5. However this statute is under the Securities Exchange Act of 1934 and does not apply to the Commodities Exchange Act under 7 USC §  21 and the applicable private rights of action against registered futures association by traders, carved out, which gives an exemption to auto-immunity under 7 USC §  25(b) as described in Section A above. Therefore this case law in inapplicable to the facts and law at hand for *registered futures association*, that do not operated under the Securities Laws.

(xiv)   *Court's Use of DL Capital Group vs. Nasdaq  is Inapplicable to the Facts of This Case*

The case law cited by the Court in *DL Capital Group* is also wholly inapplicable as again it relates to a completely distinguishable SRO. The manifest error in law made by the Court is not to distinguish the different *types* of SRO's and not to recognize that not all SRO's are subject to the same immunity exemptions and same statutory requirements.  Concomitant this this problem, is the unique considerations under the Commodities Exchange Act, and the specific liability and actual damages that are granted to traders, against *registered futures associations.* This Court errs to compare this case  as related to the National Association of Securities Dealers, Inc. ("NASD"), a totally distinct self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the 1938 Maloney Act amendments to the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78o-3 *et seq.* By commingling SRO's the Court failed to apply the Commodities Exchange Act. Under Federal law and applying the correct statutory precedent, Plaintiff's case in this instant case is the governing regulatory statute of 7 USC § 25(b)-(c). Therefore this Court's citation is improper precedent governing *registered futures association*. Therefore are wholly different causes for different types of SRO's and this was  a fatal error. (*See Troyer vs. National Futures Association 16-cv-00146*)

### (xv)     *Court's Use of Standard Invt  v. NASD  is Inapplicable to the Facts of This Case*

For the same reasons above, the case law cited the Court in *Standard Invt. V. NASD.* improperly compared the Securities law statutes governing the laws of an SRO  under Securities laws and not the specific exemptions and private rights of actions for Registered Futures Associations. (See Section A). In Standard Invt, the Court rules that " *SROs registered with the Securities and Exchange Commission ("SEC") as national securities associations pursuant to the Securities Exchange Act of 1934 ("Exchange Act").*  However it is a manifest error in law, to commingle Securities Exchange Act laws, with those of the Commodities Exchange Act. Therefore the Court failed to apply 7 USC § 25(b)-(d) and did not distinguish the statutes and subject matter jurisdiction (as well as the liability and damages) specifically granted as private rights of actions to traders against the registered futures associations. (See Supra, Section A). The NFA is not subject to the laws of the Securities Exchange Act, but instead it is subject to the laws of the 7 USC §  21 and 7 USC §  25. Therefore this case law is inapplicable to the facts and regulatory statute at hand. (See *Troyer vs. National Futures Association 16-cv-00146,* granting the District Court subject matter jurisdiction against the registered futures association for violations under the 7 USC 25 §  (b) and surviving motion to dismiss)

### (xvi)     *Court's Mis-applied Jurisdiction of the Individual Employees and Members*

The Court manifestly erred in fact to not take note of the distinct roles of the employees and individuals. The Court also failed to take note that the causes of action against NFA Jane Doe 1, NFA Jane Doe 2 and Tom Kadlec have no relevance to the Arbitration. Therefore, the case law cited misapplies to the facts at hand (*See* Supra). None of these individual employees are in their individual capacity mentioned in the Complaint as related to having anything to do with "arbitral duties". The NFA employee who administered the arbitration is Heather Cook. There is no allegation or complaint naming Heather Cook. (See Exhibit 9, 10, 11). Therefore the Court erred in fact, to not distinguish the non-arbitral roles and the commercial roles of bad faith, separate and distinct from the administration of the arbitration. Complaint pleads no involvement of NFA Jane Doe 1, and NFA Jane Doe 2 and Tom Kadlec in their bad faith commercial conduct which is governed under 7 USC 25(c). There is no overlap in their role in the said Arbitration, and mistaking the facts. Plaintiffs did not bring any claims against Heather Cook (the sole administrator of the arbitration).

### I – Counts 1-3 - Court Erred in its Subject Matter Jurisdiction of the Claims Count 1- Count 3-8
#### (i) The Court does have subject matter jurisdiction over the NFA, for its bad faith violations of the CEA (unrelated to the Arbitration) under 7 USC 25(b) and Plaintiff did state a claim that would survive a Motion to Dismiss for Counts 1, and Counts 3-8

The fundamental error in law made by the Court is to wrongfully deny the private rights of action imbued to traders, under the Commodities Exchange Act, for "bad faith" and specifically, as applied to *registered futures associations*. 7 USC 25(b). (See Section A). While much of the discussion supra has been related to the Arbitration, Plaintiffs <u>additionally</u> bring separate and distinct claims (completely <u>unrelated to the Arbitration</u>) in accordance with their exclusive rights, for private rights of actions against the registered futures association under the CEA. Therefore another fundamental error of law and fact was the Court failed to distinguish between the commercial bad faith claims (*Counts 1*, *Counts 3-8*) under 7 USC 25(b) which could have been brought without any regard to the Arbitration. Explained simply, if the Arbitration did not exist or had never happened, then ***Counts 1*** and ***Counts 3-8*** would still have been brought, as those rights for private causes of action under 7USC§25 (c), have subject matter jurisdiction in this District Court. Further, it is expressly clear in the CEA and statute (noting that the Court used the incorrect Federal law of the Securities laws) expressly does not apply.   The ***Court erred in law that exception*** to absolute immunity  for *registered futures associations*, is the pleading of bad faith (see Section A above). The Court erred in fact to fail to address the pleading standard of ***bad faith. (See 7 USC 25(b)(4))*** which Plaintiff did make. (The Court therefore also failed to make the distinctions in SRO's that are registered futures associations, governed under the CEA).

The Court also wholly confused securities laws with the Commodities Exchange Act.

The Court further manifestly erred in law and fact to *commingle* the jurisdiction of claims related to the arbitration (only 1 possible claim), and those wholly unrelated to do with the Arbitration (**<u>Counts 1,  Counts 3-8</u>**). Those claims were separate and distinct from, have <u>nothing to do</u> with the Arbitration and would have been brought independent of the foregoing Arbitration. Therefore ***Counts 1, Counts 3-8,*** stand on their own merit (outside of the NFA's purported role in the Arbitration) and fall under the purview of the private causes of action, liability and actual damages for the registered futures association. The law applied here as stated supra is 7 USC § 25(b).  The Court erred in fact and in law, to determine Counts 1, and Counts 3-8 were related to NFA's role as an arbitrator. These facts are not true. The Complaint (as stated supra) met the private cause of action of "bad faith" that

the registered futures association was acting as a market player, for profit and with pecuniary interest with ADMIS, under 7 USC 25§(b)(4). This Court has subject matter jurisdiction for ***Counts 1, Counts 3-8*** which are wholly unrelated to the arbitration and wholly unrelated to any role in administering an arbitration under 7 USC § 25(c) and (b). For the earlier manifest errors of law and fact, there is no absolute immunity for registered futures associations, as they are governed by a specific statute under 7 USC 25 § (b) and (c) and the Court applied incorrect law from the securities laws (1934 act).

*(ii) Court has subject matter jurisdiction of NFA Jane Doe 1 for Counts 1, Counts 3-8*

The Court also erred that the employees, compliance officers and committee members have absolute immunity. This is incorrect. The CEA specifically permits a cause of action, by a trader (Plaintiffs Kumaran, NRCM) for the bad faith wrongdoing of Compliance Officers under

*7 USC 25 § (b) (3)  Any individual who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.*

Therefore the Court has subject matter jurisdiction over NFA Jane Doe 1 and NFA Jane Doe 2 for ***Counts 1, Counts 3-8*** which are wholly unrelated to the arbitration, and whole unrelated to any role in administering an arbitration under 7 USC § 25(b)(2) – notably the facts pled, do not even alleged that NFA Jane Doe 1, or NFA Jane Doe 2 had any participation in administering that arbitration, but instead were engaged in civil conspiracy with Tom Kadlec, ADMIS to transfer their trading strategies, and disgorge unauthorized fees for financial profit. Therefore it was an error in fact and law, to group NFA Jane Doe 1, or NFA Jane Doe 2 into any "arbitral" duties. None were pled. The Court also wholly ignored the facts in the Complaint.

The Court manifestly erred in law, that under this statute, these officers are ***not*** granted absolute immunity as "individuals" … "for failure to enforce or violate any rule, regulation or resolution".. or aids and abets in this conduct. 7 USC (b)(3) is explicit that no such immunity exists. Further the Court erred in law, to not apply the "bad faith" pleading standard as required for registered futures associations employees under 7 USC 25 (b)(4). The Complaint alleged bad faith of NFA Jane Doe 1 and NFA Jane Doe 2 as required to be pled (See Com XXXX) as liability and damages, are

specifically permitted by statute under 7 USC 25 (b)(2)(3)(4). The Court therefore manifestly erred to afford no discussion of the pre-requisite bad faith.

### (iii) Court has subject matter jurisdiction of Tom Kadlec for Counts 1, Counts 3-8

The Court also erred in law in ECF13, to not only commingle Defendants, but failed to distinguish the distinct roles of NFA employees and NFA committee members in the conduct alleged. Specifically 7 USC § 25 (b)(2) gives a private right of action to traders, against NFA employees.. and **_committee members_** . The Court in ECF13, wrongly states (Tom Kadlec) has "absolute immunity" for his role as an arbitrator or regulator. There is no pleading whatsoever that Kadlec acted in anything other than a private market player – and as an entity and individual with clear commercial interests.. for profit. The Complaint does not plead any role of Tom Kadlec as an arbitrator. Further the Complaint does not plead any role of Tom Kadlec as a regulator, but instead driving profits to ADMIS and himself from the scheme and invokes direct liability and damages, that are permitted under Federal Statute under 7USC§25(b). Therefore Tom Kadlec, expressly does not have immunity. Further the "bad faith" conduct alleged in the Complaint of Tom Kadlec, under **Counts 1,** and **Counts 3-8,** directly meet the pleading standards of bad faith, including but not limited to a direct financial and vested interest in the conduct and substantial profits to be generated by the scheme As in *City of Providence*, there is no immunity under the pleadings of bad faith. Further, the Court manifestly erred, to not apply the distinctions of liability and actual damages which are distinct and separate for registered futures associations under 7 USC § 25(b)(2) for… **committee members**. Therefore the Court does have subject matter jurisdiction over the bad faith commercial claims, **Counts 1**, and **Counts 3-8** over Tom Kadlec.

### J - COURT MANIFESTLY ERRED IN LAW FOR PLAINTIFF's FAILURE TO STATE CLAIM

The Court wrongfully dismissed the claims for "failure to state a claim." A dismissal for failure to state a claim under a 12(b)(6) ruling is also not permitted under a 12(h)(3) ruling. The Court culminating from its previous error on its failure to apply the proper Federal Statute for registered futures associations under 7 USC § 25 (which expressly does not give them absolute immunity) erred in law and fact to apply the correct and Federal law statutory liability and damages provided therein. Plaintiff's Federal law claims were wrongfully dismissed them, and with manifest injustice in failing to grant Plaintiff leave to amend.

The Court also failed to apply the correct facts to **Counts 1** and **Counts 3-8** which have no relation to the arbitration, and therefore the Court erred in both law and fact to dismiss these claims which are specifically related to the liabilities permitted under the CEA, for failure of a registered futures association to enforce its own rules. (*See* 7 USC § 25(b) which allow for privates rights of actions by traders as specifically permitted under Federal statute). Discussed in detail supra Section A. Therefore these claims were in fact properly pled under the relevant standard of 7 USC § 25(b) under the Commodities Exchange Act.

    *(i)*    *Court manifestly erred in law and in fact in its decision that Plaintiff did not state a claim under 7 USC 25*

The Complaint plausibly states a claim for **Count 1** for all Defendants, which grants under statutory private rights of action against the **registered futures association** for violation of the Commodities Exchange Act. The Court manifestly erred in fact, to not note that **Count 1** is <u>completely unrelated</u> to the claims for Defendants' role in the Arbitration, and in citing the rules violated, makes no mention of the Arbitration. Therefore this independent cause of action is not related to NFA's administerial role as an arbitrator and is brought independent of and regardless of whether an Arbitration ever occurred.

The Court erred to dismiss this claim for failure to state a claim. under Count 1, this Complaint has properly pled subject matter jurisdiction under 7 USC § 25(b) granting liability and actual damages for **registered futures associations** and the Court erred in law. Specifically as stated supra, the Complaint properly pled subject matter jurisdiction in **ECF1, ¶263** which clearly laid out the Federal statute of 7 USC 25.

The Court manifestly erred in law to not apply 7 USC § 25(c)
*7 USC 25(c) Jurisdiction; statute of limitations; venue; process: <u>The United States district courts shall have exclusive jurisdiction of actions brought under this section.</u> Any such action shall be brought not later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.*

The Court also erred in law to not apply the "**bad faith**" standard that is the required standard under this statute. The Court also manifestly erred in law, as it incorrectly applied the wrong Federal statutory code, as there is **expressly no absolute immunity for registered futures associations** under

the bad faith statute 7 USC § 25(b)-(d). Plaintiff pled the necessary bad faith requirement throughout

the Complaint to meet the requirements under this Federal law statue ECF1, ¶264

> *7 USC 25(b) (4)   A person seeking to enforce liability under this section must establish that the registered entity [3] **registered futures association, officer,** director, governor, **committee member,** or employee acted in **bad faith** in failing to take action or in taking such action as was taken, and that such failure or action caused the loss.*

As stated above, the bad faith standard was pled consistently throughout the Complaint. The

Court also failed to address the specific statutory liability and damages permitted under a

private right cause of action under 7 USC § 25(b)(2)….

> *7 USC 25(b)(2) specifically A registered futures association that fails to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule.*

Further the Complaint plausibly pled a cause of action, for the NFA's failure under 7 USC

25(b)(2) and7 USC 21 for its failure in …. ***enforcing any such bylaw or rule violates this***

***chapter or any Commission rule, regulation, or order.***

    The Complaint specifically pleads the rules and regulations that the NFA failed to

enforce as governed by 7 USC 25(b)(2)  ECF1, ¶264-265. The Court manifestly erred in law,

that a ***registered futures association*** under this statute has absolute immunity. For the reasons

stated above this does not apply to registered futures associations under the Commodities

Exchange Act, and the case law applied by the Court was for SRO's who are under securities

laws such as 10(b) and not the relevant to the specific exemptions from immunity granting

private rights of actions to traders, (see supra) under this Federal statute.

    Plaintiffs well-plead Complaint had actual damages, collectively between itself and

other customers and CTA's. in ECF1, ¶266. Further liability of co-Defendants, Tom Kadlec,

Jane Doe 1, and Jane Doe 2, is specifically permitted, (without any auto-exemption of

immunity) under the following statute 7 USC § 25(b)(3)

> <u>*7 USC 25(b)(3)*</u> *Any **individual** who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity or a **registered futures association willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution** referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.*

Therefore the Court manifestly erred in law to state the Plaintiff did not state a claim under 7 USC §
25, or to state Plaintiff did not have jurisdiction, which is expressly granted under 7 USC§ 25(c.) The
Claim is well-pled and satisfied all the elements of the Claim.

    *(ii)*    *Court manifestly erred in law and fact in its decision that Plaintiff did not state a claim for*
        *Count 3  - Aiding and Abetting Fraud*

      The subject matter jurisdiction is established over the registered futures association under 7
USC § 25(c) granting the District Court jurisdiction over these claims. The NFA, a registered futures
association and its employees, officers and committee members have no absolute immunity under 7
USC §  25 (b) and (c). Plaintiffs have properly met the standards of pleading for aiding and abetting
and fraud. To establish liability for aiding and abetting fraud, a plaintiff must show "(1) the existence
of a fraud; (2)[the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial
assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292 (2d
Cir.2006) (*quoting JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005)).

      Plaintiff has pled all the requirements to state a claim for aiding and abetting. The Plaintiff
meets the requirement. *First* the Complaint established the existence of the fraud; *Second,* the
Complaint establishes the Defendants' knowledge of the fraud; *Third,* the Complaint accurately
pleads that the NFA provided substantial assistance to advance the fraud's commission;Therefore
Plaintiff has properly pled all elements to survive a claim. Generally, "substantial assistance" exists
where: (1) a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when
required to do so enables the fraud to proceed," and (2) "the actions of the aider/abettor proximately
caused the harm on which the primary liability is predicated." [72]

      Plaintiff has specifically alleged that Defendants NFA, Jane Doe 1 and NFA Jane Doe 2, had
active and constructive knowledge of the fraud and both affirmatively helped to conceal and  failed
to act when required to do so in failing to enforce the rules under the CEA that they have a duty to
enforce. Additionally, Plaintiff has demonstrated that the aider/abettor proximately cased on which
the primary liability is predicated. Further under 7 USC§25(b)(3) liability is proper for compliance
officers and employees of NFA. Defendants both have liability and damages for actual damages
Therefore Plaintiff's claim for aiding and abetting for fraud was stated adequately under Federal law

---

[72] *Cromer v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.2001) (*citing Diduck v. Kaszycki & Sons Contractors, Inc.,* 974
F.2d 270, 284 (2d Cir.1992)); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.,* No. 98 Civ. 4960, 1999 WL 558141, at
*8 (S.D.N.Y. July 30, 1999); *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 249 (S.D.N.Y.1996).

and should not be dismissed. Further under 7 USC§ 25, NFA and its officers, are liable for "aiding and abetting" and in violations of law and rule.

Therefore the Court manifestly erred in law to state the Plaintiff did not state a claim. The Claim is well-pled and satisfied all the elements of the Claim. In the alternative, Plaintiff should be entitled, as a matter of right under FRCP 15, to amend its Complaint, which it has as a matter of right under FRCP to be done within 90 days, and/or in the alternative, to be able amend without prejudice to the tolling of statute of limitations to the date of filing. Further the Court erred in fact, to commingle the claims such as **_Count 3_**, which are wholly unrelated to any arbitration and do not mention any arbitration.

(iii)   *Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim under Federal Law for Misappropriation of Trade Secrets*

Plaintiff has also demonstrated a strong likelihood of success on their claim for misappropriation of trade secrets. The Court also erred that this **_Count 3_** - is completely unrelated to its claims related to any arbitration and stands alone and specifically relates to commercial activities in bad faith of Kadlec, Jane Doe 1 and Jane Doe 2. There is express liability to the employees who participated in this scheme in bad faith. To establish a claim for misappropriation of trade secrets, plaintiff must show (1) that it possesses a trade secret and (2) that defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.[73] Plaintiff has demonstrated that it owns its trade secrets has used them in interstate commerce (*See* that the trade secrets derive independent economic value from not being generally known  that reasonable measures were employed to safeguard the trade secrets, and the Defendants misappropriated Plaintiffs' trade secrets for use in interstate commerce,  in unfair competition  which leads to Plaintiff's substantial likelihood of success on the merits for this claim.

The Defend Trade Secrets Act ("DTSA") affords the owner a Federal civil remedy if its trade secrets are used in interstate or foreign commerce.[74] That Act creates a private cause of action in favor of the owner of a trade secret that is misappropriated...if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C.§ 1836(b)(1). [75] Kumaran is the sole owner of the trade secrets and is the sole author, inventor and property rights

---

[73] *DoubleClick, Inc. v. Henderson,* 1997 WL 731413, *3 (Sup. Ct., N.Y. County 1997).
[74] *See Agilsys, Inc. v. Hall,* 2017 U.S. Dist. LEXIS 111824, at (N.D. Ga. May 25, 2017) (*cit* 18 U.S.C. § 1836(b)(1)).
[75] *See* also Adams Arms, LLC v. Unified Weapon Systems, Inc., 2016 WL 5391394, at *5 (M.D.Fla., 2016)

owner. Defendants have a duty to enforce protection of Plaintiff's trades and trading strategies and defined as trade secrets under 18 U.S.C. 1839 (3) The Complaint properly alleges liability under the DTSA, a plaintiff must establish ownership of: (a) a trade secret, (b) used in interstate or foreign commerce, that was (c) misappropriated. [76] To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret. 18 U.S.C. § 1836(b)(1).   The Complaint also asserts subject matter jurisdiction in this District Court under the DTSA which the Court overlooked. This claims also has no bearing on the Arbitration and relates to commercial interests. Plaintiff has plausibly stated all facts related to its misappropriation claim.

*(iv)   Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim for under Federal Law for Aiding and Abetting Misappropriation of Trade Secrets – Count 5*

For the reasons stated above in Count 3 for aiding and abetting, and also for Count 4 for misappropriation of Trade Secrets under the DTSA, Plaintiff has properly stated a claim for aiding and abetting in Count 4. The Court erred in fact as Count 4 also  Further the Court erred in fact, to commingle the claims such as Count 5, which are wholly unrelated to any arbitration and do not mention any arbitration. The Claim is well-pled and satisfied all the elements of the Claim.

*(v)   Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim Under Federal Law for Civil Conspiracy- Count 6*

Plaintiff has also demonstrated a strong likelihood of success on their claim for civil conspiracy. Supporting the claim that Defendants, were co-conspirators in a scheme with ADMIS and Vision to illicit profits and to deplete fair market competition, and acting in a bad faith conspiracy, Plaintiff adequately pled its claims for Civil Conspiracy. The Court also erred that this Count 5 - is completely unrelated to the Arbitration – and further supports the commercial interest of the NFA in the activities. Plaintiff has therefore pled a valid claim for Civil Conspiracy. "New York recognizes civil conspiracy to commit a tort as an *independent* cause of action" (*Matter of Hoge* [*Select Fabricators, Inc.*], 96 A.D.3d 1398, 1400, 946 N.Y.S.2d 350 [4th Dept. 2012] [emphasis added and internal quotation marks omitted]; *see Transit Mgt., LLC v. Watson Indus., Inc.*, 23 A.D.3d 1152, 1155–1156, 803 N.Y.S.2d 860 [4th Dept 2005] ), such a "claim" or "cause of action" may  be asserted where, as here, there are allegations of a " 'primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the

---

[76] *See RealPage, Inc. v. Enter. Risk Control, LLC*, 2017 U.S. Dist. LEXIS 122004, at * 24 (E.D. Tx. Aug. 3, 2017).

parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury' " [77] Here, plaintiff alleged a primary tort of misappropriation and fraud [78](*see generally NBT Bancorp v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 664 N.E.2d 492 [1996]; and the allegations supporting that tort as well as the cause of action for civil conspiracy are not "palpably insufficient or patently devoid of merit" [79] Therefore Plaintiff's claim for civil conspiracy is properly pled.

(vi) *Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim under Federal Law for RICO – Count 7*

For the reasons stated above, Plaintiff pled adequately its RICO claim. Supporting the claim that Defendants, were co-conspirators in a scheme with ADMIS and Vision to illicit profits and to deplete fair market competition, and acting in a bad faith conspiracy, Plaintiff adequately pled its claims for Civil Conspiracy. The Court also erred that this Count 5 - is completely unrelated to the Arbitration – and further supports the commercial interest of the NFA in the activities. To state a RICO claim, a plaintiff must ultimately show "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996)) (internal quotation marks omitted).Section 1962(c) provides in relevant part that it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." Plaintiff specifically alleged the activities of Tom Kadlec as part of the scheme. Section 1962(d) makes it unlawful to conspire to violate any of Sections 1962(a)-(c). Therefore Plaintiff claims are properly pled.

(vii) *Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim under Federal Law for Interference of Economic Advantage- Count 8*

Plaintiff has adequately and plausibly pled its claim for Tortious Interference of Economic Advantage. Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely

---

[77] *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474, 905 N.Y.S.2d 585 [1st Dept. 2010]; *see Perez v. Lopez*, 97 A.D.3d 558, 560, 948 N.Y.S.2d 312 [2d Dept. 2012]

[78] *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 [1993] ),

[79] *Holst*, 105 A.D.3d at 1374, 964 N.Y.S.2d 333). Great Lakes Motor Corp. v Johnson, No. 1244, CV 17-00764, 68 N.Y.S.3d 614, 617, 2017 N.Y. Slip Op. 08970, 2017 WL 6546226 (N.Y.A.D. 4 Dept., Dec. 22, 2017)

out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003). Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006). The Complaint alleges that it had a business relationship as a CTA, the Defendants knew of that relationship, and interfered with it, by the dissemination of its competitive advantage to Vision Investment Advisors, and Defendants used dishonest, unfair or improper means and the Defendants interference caused injury to the business The Court erred to commingle this independent cause of action. The Court also erred that this Count 8 - is completely unrelated to its claims related to the Arbitration and stands alone. Therefore the Court manifestly erred in law to state the Plaintiff did not state a claim. The Claim is well-pled and satisfied all the elements of the Claim.

In all the above cases, in the alternative, Plaintiff should be entitled, as a matter of right under FRCP 15, to amend its Complaint, which it has as a matter of right and/or in the alternative, to be able amend without prejudice to the tolling of statute of limitations to the date of filing.

(viii)  *Court manifestly erred in law and fact in its decision that Plaintiff failed to state a claim under Federal Law for Count 2- Failure to Enforce Section 7 USC 21(10)*

Plaintiff argues that the language under 7 USC 25(b) – Count 2 – is the only claim related to the Federal Arbitration Act. Plaintiffs argue that this Count is brought under 7 USC 25 (b) which invokes that the NFA has to apply the rules under Section 21 and other related bylaws, including its obligations to provide a fair, equitable, and expeditious hearing. Therefore Plaintiff argues this claims does fall under the purview of 7 USC 25(b) for failure of the NFA to enforce its rules under 7 USC 21(10) and other bylaws and rules. In this instance, a registered futures association is liable for failure to enforce its rules and enforcement of Section 21 is specifically contemplated under 7 USC 25. Therefore the Court erred to not apply the specific obligation to abide by rules that have to be enforced as pertained to registered futures associations (7 USC 21). Therefore for failure to abide by 7 USC 21 (10) and other related bylaws, NFA's liability for a private cause of actions, Under 7 USC 25 for failure to enforce its bylaws, rules, regulations also provides Plaintiffs private rights of action for NFA's failure to implement a fair, equitable and expedition Arbitration Forum. Plaintiffs adequately pled this cause of action. Plaintiff also claims under 7 USC 25, to state a due process claim under the Fifth Amendment, a plaintiff must show that: "(1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015). To

the extent this was a pleading deficiency to not mention 7 USC 21(10) Plaintiff should be afforded leave to amend as 7 USC 25(b) does invoke the NFA's rights to enforce a fair, efficient and expedition hearing under the rules of Section 21.

    *(ix)*    *Court's decision to not allow Plaintiff to amend was manifestly unjust.*

    A Court can only dismiss a claim for "failure to state a claim" if it has absolutely no colorable claim, and after affording Plaintiffs at a minimum one chance to replead. For the reasons stated supra, each and every one of Plaintiff's claims not only was supported by law, but also met the pleading standards under New York law and Federal law the Courts' decision was unjust In all cases, the Court manifestly failed to apply the necessary facts, the Court manifestly erred to apply the correct private rights of action.  The 2nd Circuit has routinely vacated and remanded when a *Pro-Se* Plaintiff was afforded no chance to amend. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795–96 (2d Cir.1999). (because Cruz was afforded no opportunity to amend, we instead vacate and remand). Further as indicated above, each and every claim had a foundation in law and fact.

    The Court also erred that on evaluating Plaintiff's complaint that it failed to state a claim. The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in Cruz's favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [80] "This rule applies with particular force ..where the complaint is submitted *pro se.*" [81] Therefore Plaintiffs have met those pleading standards and are entitled to either amend or serve and amend within 21 days of service. Further the Court erred to apply a "failure to state a claim" under a Rule 12(b)(6).

## K - COURT ERRED TO DISMISS STATE LAW CLAIMS
    *(i)*    *Court manifestly erred in law in its application of Diversity Jurisdiction*

    The Court also erred in law to not apply Diversity Jurisdiction to the Defendants.  The Court notes that Plaintiff's inclusion of the  "John Doe" Defendants is not a bar to establishing subject matter jurisdiction pursuant to § 1332. 'Although the Second Circuit has not ruled on this question, district courts in the Circuit have held that the mere inclusion of John Doe defendants does not destroy complete diversity until it is later found that one or more of the unknown defendants is domiciled

---

[80] *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
[81] *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). <u>Cruz v. Gomez</u>, 202 F.3d 593, 596–97 (2d Cir. 2000).

such that there is not complete diversity.' [82] Accordingly, until it is determined that any of the unidentified defendants would destroy complete diversity, their inclusion in the caption does not warrant a finding that diversity does not exist. [83] Therefore because Plaintiff did not identify the state residence (which is assumed to Illinois) for Jane Doe 1, and  Jane Doe 2, and has established the state residence of the NFA, and Tom Kadlec is Illinois, Diversity Jurisdiction was adequately pled.   The parties all have diversity and therefore jurisdiction was properly pled, and the Courts do not regard Jane Does' for establishing diversity.

The Court alternatively erred in law to not grant leave amend – especially in light of the Court closures during May 2020  - and was manifestly unjust. The Court is respectfully reminded that the Courts' were closed at the time of filing and NYC Pro-Se Intake Office had its servers down and not working on. As the Court was closed due to Covid-19, this was filled out online, to the extent there was an  accidental omission in not checking each and every box, this could have easily been corrected. Neither of these typos are material deficiencies and could easily have been amended if it was determined that this was an inadvertent form of glitch.  The Court had routinely agreed that citizenship of defendants sued under fictitious names shall be disregarded." Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1016(a), 102 Stat. 4654, 4669 (1988). Thus, under the amended statute, the citizenship of a fictitious defendant, such as one named as a John Doe, may be ignored in determining whether the requisite diversity exists. So as long as there is complete diversity between each plaintiff and each of the known and named defendants subject matter jurisdiction exists. [84]

(ii)     *Court errs that Plaintiff did not plead damages greater than $75,000*

The Court also erred in fact, to find fault with a deficiency that Plaintiff pled the aggregate damages at $50million as total amount of funds and profits involved in the scheme but somehow did not separate out other damages ats greater than $75,000. The calculation of the damages was explained in Exhibit 10. Therefore as a technical matter, the Complaint did assert damages greater than the Diversity amount under § 1332, $50 million which includes the authorized fees and over-charges of transactions and fees obtained by the Defendants and ADMIS and Vision by all Customers

---

[82] *Zaccaro v. Shah,* No. 08–CV–3138, 2010 WL 3959622, at *4 (S.D.N.Y. Sept 29, 2010) (quoting *Doe v. Ciolli,* 611 F.Supp.2d 216, 220 (D.Conn.2009)).

[83] Marcelo v. EMC Mortg. Corp., No. 10-CV-5964 JS ETB, 2011 WL 1792671, at *2 (E.D.N.Y. May 6, 2011)

[84] See also Changes in Federal Jurisdiction and Practice Under the New Judicial Improvements and Access to Justice Act, 123 F.R.D. 399, 403 (1989).

1-100 and CTA's 1-100. The damages pled therefore clearly met the Diversity Jurisdiction . To the extent that the Complaint needed to be amended to specify the actual $75,000 for Plaintiff's individual claims that was considered a deficiency it was inaccurately determined because in the aggregate the diversity standards were pled. There are brokers claiming they were overcharged over $100,000 a year. Given the Complaint provides evidence (Exhibit 2) of over dozens of brokers, each with customers who incurred overcharges. Plaintiffs losses also exceeded $75,000. At a minimum, because the Complaint combined damages, Plaintiff should have been granted leave to amend if the Court somehow did not interpret the pleading to be clear that the amount was not over $75,000. Therefore the Court erred to claim that Diversity Jurisdiction under  § 1332 was not met.

### (iii) *Court manifestly erred in law and fact in its decision to decline to here State law Claims under Supplemental Jurisdiction*

Because the case involves substantial questions of Federal law, including but not limited to the Commodities Exchange Act (see 7 USC §  25(c.) – granting jurisdiction to this Court), and the Federal Arbitration Act (9 U.S.C. §§ 1-16;) – and the Defend Trade Secrets Act (18 USC § 1831 el seq) and the other Federal questions, and because the diversity pleading standards under § 1331 and § 1332 were met, the Court erred in law to decline to extend jurisdiction under State law, or in the alternative incorrectly reviewed supplement jurisdiction, without affording Plaintiff leave to amend. For the foregoing reasons the Court did not apply the correct jurisdiction.

### L - COURT ERRED IN SUBJECT MATTER JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT

### (i) *Court manifestly erred in law in failure to state a claim under a 12(b)(6) ruling Injunctive Relief*

The standard of law in a Rule 12(h)(3) ruling on subject matter jurisdiction is expressly not to include "*failure to state a claim*" or an analysis of the merits of a claim. Plaintiff did not intend to file for Injunctive Relief, but for Declaratory Relief. (*See* ECF1 ¶324). To the extent the Court viewed that as a pleading error or deficiency, Plaintiffs should have been granted leave to amend. Plaintiffs were not afforded fair opportunity to file a motion for Declaratory Relief under FRCP 57. Such motion would have properly at that time, articulated the grounds for seeking Declaratory Relief. The Court also erred in law and process because under FRCP Rule 4(m), Plaintiff was within the ninety(90) days to amend and serve its claim, and Plaintiff fully intended to file that additional motion by August 8

2020 and add the necessary supporting memoranda. The Court erred in subject matter jurisdiction not to apply the Federal statue of relief that was properly pled in the Complaint for Declaratory Relief.

    *(ii)*     *Court failed to apply subject matter jurisdiction under the Declaratory Relief Act*

    Plaintiff's Motion for Declaratory Relief is permitted under FRCP57.  FRCP 57, provides the standard of procedures for obtaining a declaratory judgment under 28 U.S.C. §2201 The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action. The Federal Declaratory Judgment Act provides the mechanism for granting declaratory relief in federal diversity cases.[85] That Act provides that in "a case of actual controversy ... any court of the United States may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201. An "actual controversy" is defined as "one that is real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[86] When making a determination as to whether declaratory relief is proper, the Second Circuit has long instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.[87] For these reasons also, Plaintiffs assert the dismissal was premature and outside of a 12(h)(3) motion and/or manifestly unjust in its inability to amend of file its motion under Rule 57. Further the ruling was unjust that it did not toll the statute of limitations to the original date of filing so as not to prejudice Plaintiff. The Court erred to not permit Plaintiff to file its motion for Declaratory Relief which was as written in the Complaint and was intended to be filed under a separate motion. Therefore the Court erred in fact in overlooking that Plaintiff intended to file for Declaratory Relief.

*(iii) Court erred in failure to state a claim for Declaratory Relief*

    Further under a 12(h)(3) dismissal the Court erred to state "*failure to state a claim*" for Declaratory Relief. 28 U.S.C. § 1331 confers onto federal courts subject matter jurisdiction over all "federal questions," which the statute defines as "all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs have pled both diversity and also relevant US statutory code 7 USC § 25(b) granting this District subject matter jurisdiction for **registered futures**

---

[85] *See American Standard, Inc. v. Oakfabco, Inc.,* 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007).
[86] *See Coggins v. County of Nassau,* 615 F. Supp. 2d 11, 19 (E.D.N.Y. 2009) (internal citation omitted).
[87] *See Id.* at 20 (*citing Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir. 1969)).

*association.* Plaintiffs also argue that the Court however went further and erred in law to rule outside of the four corners of a 12(h)(3) motion, and then erred to dismiss the Complaint for *failure to state a claim*.  In the absence of a motion to dismiss is a 12(b)(6) motion, the Court is did not follow the requisite analysis under a 12(b)(6) motion and erred in law to make a dismissal for failure to state a claim. Plaintiff argues that not only did Plaintiffs' complaint properly meet all the pre-requisite pleading standards for each of the causes of action to survive a 12(b)(6) motion, its clear intention was to file a Motion for Declaratory Relief under FRCP 57, and it was not its intention to file for Injunctive Relief. To the extent this was a typo, or pleading deficiency, Plaintiff  should be entitled to leave to amend, as it intended to do as a matter of right under Rule 15(a)(1).

### Court erred in law in ruling without a Declaratory Judgment Motion under FRCP 57

Because the Complaint was dismissed prematurely, Plaintiff was in process of amending the Complaint to include its motion for Declaratory Relief. Plaintiff may have used the wrong terminology of "enjoin". The Court erred in law and fact, as it failed to understand that Plaintiff sought a request for Declaratory Relief related to the material conflicts of interest, fraud, corruption and bias, and evident partiality under the Federal Arbitration Act, §1 el seq for which as stated supra, falls under the subject matter jurisdiction of this Court. Moreover, Plaintiffs had fully intended to file a Motion under FRCP 57 for Declaratory Relief  together with supporting law. This motion due within ninety (90) days of the filing of the Complaint under Rule 4(m)  and therefore was not addressed in the Complaint, and a ruling on this was premature.

### M – Courts Erred in its Application Procedural Rules

Court erred in law and fact or was manifestly unjust in an procedurally incorrect dismissal when nearly all the case law cited was wholly irrelevant to the case at hand (*See* Section H) and the incorrect Federal statue were applied to the subject matter jurisdiction (*See* Section A-D).

### (i)        Erred in law to not apply doctrines of equitable rights to be heard for Pro-Se

In civil litigations litigants have a statutory right first embodied in the Judiciary Act of 1789, to represent themselves. Stat. 73, 92 (1789). Similar language is codified at 28 U.S.C. § 1654 (1982**).** Plaintiffs' fundamental rights to be heard were not deployed by the procedures employed. A *Pro-Se* litigant in civil proceedings is entitled to a fair hearing imbued with the protections of due process. *See* A.B. v. Y.Z., 184 N.J. 599, 604 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003).  The due process guarantee expressed is in the United States Constitution requires assurance of fundamental

fairness during legal proceedings. U.S. Const. amend. XIV, § 1. This includes the opportunity to be heard and requires "procedural safeguards." Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005). Plaintiff asserts that the hasty ruling prior to service did not adequately imbue the rights to a *Pro-Se* litigant, that has in fact filed a carefully well-pled and legally sound Complaint, grounded in multiple Federal Statutes. (See Section A-D).

Plaintiff also has been made aware of a general bias, as reported, against Pro-Se litigants and that Judges may try to summarily dismiss complaints, for subject matter jurisdiction in a mass culling of *Pro-Se* Complaints. (See Articles below[88]). Plaintiff is aware that the New York Courts opened for the first time on July 6, 2020. Plaintiff notes its Complaint was summarily dismissed on Federal holiday of July 4, 2020 when it would have been impractical to be notified, so as to fall within the Court's reopening. Plaintiff argues the ruling which jumped the gun of Plaintiff rights to amend as a matter of right under Rule 15, contained fatal and manifest errors of law and fact, applying substantially erroneous Federal statutes, and citing no less than a dozen inappropriate cases that are wholly inapplicable to the subject matter of the case. (*See* Section H).

To the extent Plaintiff's case fell into the general "culling" and reported "Pro-Se bias" against *Pro-Se* litigants, without proper procedures, Plaintiff files this motion under Rule 59(e) as the ruling was manifestly unjust. Plaintiff has made explicit in this motion, the Federal statutes under both the Commodities Exchange Act and the Federal Arbitration Act, and the Defend Trade Secrets Act and the Declaratory Relief Act and other diversity jurisdiction which the Court erred in making its ruling on subject matter jurisdiction. Plaintiff also asserts that the ruling to not grant a reasonable extension of time was also manifestly unjust given the inaccurate applicate of statute, given the dispository nature of the ruling and the manifest errors pointed out in the Exhibit A listing (see ECF 15) contained in the request for extension. For this reason Plaintiff filed a lengthy brief so that all issues will be preserved in Appeal, in expectation that this motion will again be summarily denied. Plaintiff notes that under the Individual Rules of Practice of Hon. Gregory Woods, there is expressly no page limit for motions for *Pro-Se* litigants. Should Plaintiff had been granted a reasonable 30 day extension it

---

[88] https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind_of_trash_nor_worth _the_t  Court records indicate that of the roughly 1,500 Pro-Se cases filed in the twelve months preceding 644 of those filings were summarily dismissed. https://get.courtroom5.com/takes-unbiased-judge-call-out-judicial-bias/

would have undoubtedly had time to condense this pleading, but it was unable to, given the unreasonably short turn around, and the entry of a inaccurate and unfair ruling on a July 4 holiday.

*(ii)      Plaintiff erred to sua sponte dismiss the Complaint without leave to amend or service of the Defendants to brief their issues*

For the reasons stated above Plaintiff did state a claim. Plaintiff asserts that Courts' ruling – in advance of service and the 90 day period to amend or serve was also manifestly unjust, and also infringed Plaintiffs rights to serve under Rule 4(m) and amend as a matter of right under Rule 15. It further denied Plaintiff the right to brief the issues – as it has now done – and was out of sequence to the procedural authorities and guidelines in Federal Court. Further as outlined in Section M all causes of actions were pled plausible. The Court erred procedurally in other facets. In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants. *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam). The court must therefore use caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of the plaintiff's allegations. *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983).In general, however, a *pro se* litigant's complaint should not be dismissed, *sua sponte,* without giving the plaintiff notice and an opportunity to remedy the complaint's defects. [89] Thereby the Courts have consistent determined that manifest fairness allows a Plaintiff to file an amended complaint, setting forth the factual and legal bases for her claims, as set forth in the Conclusion of this Decision and Order.[90] A district court may not dismiss a case *sua sponte* for improper venue absent extraordinary circumstances. [91]

*(iii.)      Court erred in law to not granting leave to amend or applying liberal standards to Pro Se*

Plaintiff will argue without limitation that the Court erred in law, to not apply a more liberal standing of pleading for Pro-Se litigants, and not permit a right to amend. Plaintiff also had a right amend as a matter of right, within 90 days, under FRCP Rule 4(m). The Court erred in law and its ruling was manifestly unjust in not construing a *Pro-Se* Plaintiff's pleading with the liberal standard required, and failed to raise the strongest arguments they suggest. It is also well established, though, that "the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the

---

[89] *See, e.g., Palkovic v. Johnson,* 150 Fed.Appx. 35, 37 (2d Cir.2005); *Taype–Miranda v. Cruz,* No. 10 CIV. 07770, 2013 WL 3114783, at *1 (S.D.N.Y. May 8, 2013), *Report and Recommendation adopted,* 2013 WL 3716896 (S.D.N.Y. July 16, 2013).
[90] Carmel v. CSH & C, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014)
[91] *See Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369, 371 (2d Cir.1966); *see also Stich v. Rehnquist,* 982 F.2d 88, 88–89 (2d Cir.1992) (per curiam). Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999)

strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases); see also Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (noting that a pro se party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after Twombly, . . . we remain obligated to construe a pro se complaint liberally."); [92] Therefore the Court erred in law, to jump-the-gun and not apply the standards of pleading, for failure to state a claim and unilaterally dismiss claims without analysis.

### (iv).The Court erred in law to adopt a proper standard of a Motion to Dismiss under Rule 12(b)(6) and used "failure to state a claim"

The Court also erred in law and dismissed the Complaint for "*failure to state a claim*". FRCP 12(h)(3) does not permit arbitrary dismissals for failure to state claims. A complaint may **only** be dismissed - fails to state a claim upon which relief can be granted - pursuant to a motion brough by Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it. Fed. R. Civ. P. (12)(b)(6). Therefore a manifest error in law was applied in applying a 12 (b)(6) motion. This is compounded by the errors above, whereby the Court failed to apply the correct Federal statutes to the complaint (*See* Section A-D). Nonetheless the Court manifestly erred that Plaintiff failed to state a claim. Plaintiff has also explained in Sections L-M how each of the claims were properly pled and also met Federal standards. To the extent this Court used a Motion to Dismiss standard, in failure to state a claim, in deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." [93] The issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence.[94]. Plaintiffs argue that its complaint was well-pled and would survive a Motion to Dismiss in nearly all eight claims. Further under the Motion to Dismiss standard of Rule 12(b)(6) this Court must accept as true all allegations as pled. As indicated supra The Court's function on a motion  to dismiss is thus "'not to weigh the evidence that might be

---

[92] Lerman v. Bd. Of Educ., 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [a court] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency.").  Van Hoven v. City of N.Y., 16cv2080 (GBD) (DF), 10-11 (S.D.N.Y. Aug. 21, 2018).
[93] McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); accord Jaghory v. New York State Dep't of Ed., 131 F.3d 326, 329 (2d Cir. 1997)
[94] See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)

presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" [95] To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [96] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[97]

The Court failed to address the plausibility of Plaintiff's detailed factual allegations, failed to provide any analysis of law, and made its decision based on an inaccurate legal analysis that does not apply to registered futures associations, and the private rights of actions of market participants, specifically, carved out from immunity. (*See Troyer Vs. NFA supra*, denying exemption from immunity, and upholding liability and damages under 7 U.S.C. 25(b)). In essence the District Court "jumped the gun" and failed to conduct a proper analysis of the facts and evidence supporting the claims. Therefore the Court failed to examine each of the cause under Section M (i)-(viii) (See Supra) by which Plaintiffs had clearly and unequivocally plausibly stated claims on their face met the pleading. In the *Pro-Se-Bias* culling of Jul 4, 2020 this ruling was manifestly unjust. All of Plaintiffs claims in Section M were pled carefully and adequately.

> *(iv)*     *Erred in law to rule that Plaintiff's right to appeal was not good faith – and respectfully seeks recission its rights to appeal in good faith*

The Court was manifestly unjust and erred in law to consider an appeal not in good faith. Given the clear statutory provisions, exempting *registered futures associations* from liability and damages under 7 USC 25(b), as well as the clear pleading of evident partiality under the Federal Arbitration Act granting jurisdiction, the ruling of the Court was manifestly unjust in equitable analysis of the claims and applicable law. The Court therefore erred in law, that any filing of an appeal would not be in good faith. The detailed facts and law analysis of the Complaint and detailed allegations under 7 USC 25(b). are not "copy and paste" litigation that this District has dismissed (See *Dominguez v. Banana Republic*, LLC, 1:19-cv-10171 (S.D.N.Y. April 23, 2020). Under the Federal Rules a filing made in "bad faith" is one that has no case law or statutory precedent. Plaintiff has demonstrated

---

[95] Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)); Kopec v. Coughlin, 922 F.2d 152, 155 (2d Cir. 1991).

[96] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).

[97] Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 666), cert. denied, 131 S. Ct. 901 (2011).

enumerate statutory and case law precedent supporting Plaintiff's complaint and validity of claims. Plaintiffs' detailed individual facts are carefully pled, with supporting exhibits and cannot be construed in the context of bad faith. Plaintiff has a ***clear and unequivocal statutory express private right of action against a registered futures association under 7 USC 25(b)(2)-(4)*** and therefore Plaintiff seeks amendment of the ruling of bad faith – such an analysis was an manifest error of law and manifestly unjust.

    *(v)*    *The Court erred in law - or in the alternative - was manifestly unjust to ascertain the filing was "frivolous"*

For the reasons carefully explained supra, grounding the subject matter jurisdiction in Federal law and demonstrating that a ***registered futures association*** do not have absolute immunity under 7 USC 25(b)-(d), the Court manifestly erred in law to deem the claim as frivolous. Further the Declaratory Relief sought for evident partiality in the Arbitration, brought under FAA are also not frivolous and grounded in statute. Further the Court's made manifest error in not distinguishing the claims wholly unrelated to the arbitration, and those founded on commercial activities pled properly for "bad faith" under the required law. The Court also erred to mix up statute of the Securities laws with those of the Commodities Exchange Act. Further the Court's manifest error in law and fact, was to not apply the necessary standards governing it subject matter jurisdiction.

A claim is only deemed frivolous is an action has no likelihood to succeed. As stated supra, traders have a private right of actions specifically against contract markets, exchanges and ***registered futures associations under the Commodities Exchange Act***. NFA is the only registered futures association. Therefore, since Plaintiffs, as traders, have adequately pled their claims, under their private rights of action under the Commodities Exchange Act – such claims are not frivolous. Further claim can only be considered frivolous if (a) the Plaintiff does not have standing (addressed supra in Section A); or (b) Plaintiff(s) were not directly harmed by the wrongdoing. Plaintiff has pled direct, proximate and actual damages by the wrongdoing Further 7 USC 25(b)-(d) provides that a registered futures association is liable for "actual damages" arising from their wrongdoing. Therefore the claims for damages as provided under that Act are not frivolous and have merit under Federal law.  Under a Motion to Dismiss Standard 12(b)(6) those facts must be alleged as true. Second unlike the gift card braille case, Plaintiff has alleged direct harm from the actions and inactions. Therefore this Court manifestly erred in law, to dismiss claims as frivolous, without applying any standards of law to

Motion to Dismiss – and any standards of damages, being permissible to traders expressly as authorized by the Act.

Further, "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint shows a claim" *Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991).* The actions to dismiss prematurely, are inconsistent with Second Circuit rulings,  that a *pro se* plaintiff should be afforded the same opportunity to amend his complaint prior to its dismissal for failure to state a claim.  See *Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795–96 (2d Cir. 1999).* The  court also erred in law, and provided an un-rigorous analysis of the CEA and therefore erred in law to rule out any possibility that an amended complaint would succeed in stating a claim. In Gomez, because the district court did not give this *pro se* litigant an opportunity to amend his complaint, and because they could not rule out the possibility that such an amendment will result in a claim being successfully pleaded, the Court vacated the judgment and instruct the District Court to permit the Plaintiffs to amend the complaint and then determine whether he has successfully pled a cause of action.

(vi)   *The Court erred in law – or in the alternative was manifestly unjust – not permit under FRCP 4(m) to allow 90 days from filing to amend the complaint, as it fully intended to do.*

The Court as stated herein was also manifestly unjust to not permit Plaintiffs rights to serve the Defendants within ninety (90) days under Rule 4(m) as well as its statutory right to amend as a matter of right under FRCP 15. A *pro se* complaint is to be read liberally. *Id.* Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *See* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–65 (2d ed. 1990); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (generally, permission to amend should be freely granted). Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)

(vii)    *The Court erred in law – or in the alternative was manifestly unjust - to not permit filing for Declaratory Relief*

This error was manifested by its confusion in its pleading for Declaratory Relief under the Federal Arbitration Act, to be filed under a motion permitted under FRCP57, and the Courts analysis that it failed to state a claim for Injunctive Relief. To the extend this was a pleading error or deficiency Plaintiffs should have been granted leave to amend. The manifest errors may have been compounded

by the fundamental error not to distinguish the liabilities and actual damages under the correct Federal Statute of 7 USC 25(b) and (c), whereby ***registered futures associations*** are not granted absolute immunity, and the Courts manifest failure to examine the correct pleading standards of "bad faith" under 7 USC 25(B)(4) which are a separate category of SRO's. The Court also erred in law to rule sua sponte - that Plaintiff failed to state a claim, without one single analysis of any claim, one single analysis of 7 USC 25, and one single analysis of evident partiality. .

    *(viii)*   *Court erred to not apply a Pro-Se Standard if it intended to Rule under Summary Judge 56*

In the alternative, if the Court's dismissal was under FRCP 56, the District Court erred in law  to not permit early discovery. In several cases, for instance, the federal courts have ruled that pro se litigants must receive notice of the requirements of a summary judgment motion under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

    *(ix)*   *Court erred in law to not grant leave to amend as a matter of right*

Plaintiffs will also argue that, because the Court erred to determine Plaintiffs' private right of action as discussed above, Court erred in law or was manifestly unjust in not permitted Plaintiffs to amend the Complaint as a matter of right under FRCP 15(a)(1), and to not serve within ninety (90) days,  To the extent there are deficiencies, Plaintiffs have a right to amend and certainly not with prejudice to tolling the statute of limitations to the date of filing of May 8, 2020.

    *(x)*   *Court erred to not assign NRCM claims as a Sole Proprietor or to address the rights of successor and assignment or in the alternative grant leave to appoint counsel*

The Complaint pleads that NRCM is pled as a sole proprietor and opened its account and was registered with the NFA as a sole proprietor (ECF1 ¶114). Therefore NRCM may be permitted to appear Pro-Se. In the event it is determined NRCM is instead deemed a sole-proprietor LLC, even though its futures registrations and accounts at ADMIS were as sole proprietors, the Court erred in law, not to grant either (a) allow the genuine successor and assignments that are permitted, including in the contracts with ADMIS or (b) leave to amend, or in the alternative (c) afford NRCM the chance to retain counsel to represent, and abrupt dismissal was manifestly unjust.

As the Court assessed a sole proprietor may be permitted to proceed Pro-Se. Further Plaintiff argues that because the entity is unviable, Kumaran, is the correct successor and assignee. Further all the IP claims were only owned by Kumaran. Nonetheless, any further analysis should not prejudice NRCM from retaining counsel if it is deemed necessary that it cannot proceed Pro-Se or the claims are not rightfully assigned to Kumaran. Further the Court failed to analyze the rights as a successor

and assignee, if NRCM is no longer active and is rightfully being dissolved that Plaintiff. NRCM was significantly harmed by the co-conspirator actions of ADMIS, NFA and Vision, in their scheme to thwart fair market competition and intentionally harm small businesses and CTA's .That entity is dead and un-operational due to the direct harm caused by the actions in this Complaint. New York permits the legal dissolution of sole-proprietors and single member LLC's (pass through). Further NRCM is no longer registered at the NFA  as the entity is dead.

All rights and liabilities and these claims are properly assigned individually to Kumaran who in its individual capacity remains a member at the NFA. Therefore Kumaran is the rightful successor and assign of the claims. In any event, the Court erred to either permit leave to amend, or properly apply the rules of assignment which are permitted. Further under 18 USC 1831 el seq, the Court erred to discuss that Plaintiff Kumaran in its individual capacity is the sole owner of the trade secrets and trading strategies in question and therefore Kumaran individually has it own rights of action under the Defend Trade Secrets Act and its own rights as a trader. That analysis was also omitted in a subject matter jurisdiction motion under 12(h)(3).

    *(xi)*    *Court erred in law to address the rights of successor and assignment*

The Court erred in law and fact to address the rightful successor and assignment to Plaintiff individually. Under the sole agreement with ADMIS, the contract permitted the contract inure to all successors and assignees. Also assignment is without restriction – meaning Plaintiff has the sole right to assign without restriction – or contractual permission. Therefore, given Plaintiff has rightfully been assigned or is the successor to the claims. This matter was also not briefed in fact in the Order. Plaintiff therefore is permitted to continue Pro-Se for all claims (including those assigned and that it is the successor thereof).

    *(xii)*    *Court's ruling was manifestly unjust - not to toll the statute of limitation from the date of filing*

In the alternative if the Court is to continue its dismissal without prejudice, Plaintiffs request the dismissal should make note that the statute of limitations is tolled from the date of original filing of May 8, 2020. Therefore no manifest injustice is achieved when Plaintiffs re-file their Complaint. As explained in detail herein, the Complaint did have subject matter jurisdiction under the numerous Federal statutes. Given the substantive issues of Federal law, the Court's dismissal without prejudice was manifestly unjust should be tolled. If a first action is subsequently dismissed without prejudice,

pursuant to Rule 41(a)(2), Fed.R.Civ.P., by an order of this Court dated July 4, 2020, the Court is well aware that when an action is dismissed under Rule 41(a)(2), the situation is left as if the action had never been filed.[98] Thus, courts have usually held that the statute of limitations is not tolled by bringing an action that is later voluntarily dismissed. [99] While the Court agrees that this should be the general rule, it is persuaded that a different result is called for here on the basis of factors unique to the present case. The Court's decision under 12(h)(3) is without prejudice and therefore should not create any harm or injustice in the statute of limitations. Plaintiff as argued above, has stated it has a right to amend as a a matter of right under Rule 15. In the alternative,  Plaintiffs ability to this Complaint or refile, should create prejudice or problem  in any statute of limitations.  The interests of justice therefore require for Plaintiffs to incur no prejudice, is an order that the statute of limitations is tolled in the dismissal, so that Plaintiffs can refile without prejudice.  (see also Gutierrez v. Vergari, 499 F. Supp. 1040, 1049–50 (S.D.N.Y. 1980)

A ruling to dismissed without prejudice is required to show the absence of any apparent unfairness to the Plaintiffs. In the cases where courts have refused to hold that the statute of limitations was tolled by filing a timely complaint which was subsequently dismissed pursuant to Rule 41(a)(2), the second action was always brought after dismissal of the first action. Thus, in these cases there was always an interval, after the expiration of the period of limitations, during which no action was pending and the defendants may have justifiably relied on the repose provided by the statute of limitations. Plaintiff argues the ruling was manifestly unjust because the traditional concern that the court avoid exercising its discretion to grant a Rule 41(a)(2) dismissal in a manner prejudicial or unfair. See LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976). Any unfairness that does exist pales in relation to the alternative of denying a pro se plaintiff his day in court on the basis of a mechanical invocation of a rule of procedure. Further since the dismissal was made in manifest errors of law and fact by the Court, and for all the foregoing reasons above, Plaintiffs respectfully requests that at a minimum the statute should be tolled.

---

[98] A. B. Dick Co. v. Marr, 197 F.2d 498, 502 (2d Cir.), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); Wallace Clark & Co. v. Acheson Industries, Inc., 394 F.Supp. 393, 401 (S.D.N.Y.1975), aff'd, 532 F.2d 846 (2d Cir.), cert. denied, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976).

[99] Moore's Federal Practice P 41.05(2), at 41-76-41-77 (2d ed. 1980); 9 C. Wright & A. Miller, Federal Practice and Procedure s 2367, at 186-87 (1971); see, e. g., Bunger v. United States Blind Stitch Machinery Corp., 8 F.R.D. 362 (S.D.N.Y.1948).

### N. Court Failed to Review Significant Issues under Federal Law

In addition to the Federal questions and statutes listed above, such as 7 USC25, the Federal Arbiration Act, the Declaratory Judgement Act, and the Judiciary Act, the Complaint also raise other statutes requiring Federal subject matter jurisdiction;

### (i)    Court erred in law to afford subject matter jurisdiction over the Defend Trade Secrets

The Court erred in law to establish subject matter jurisdiction in federal court for trade-secret misappropriation, a plaintiff must show it has met the requirements for diversity or state a Defend Trade Secrets Act, 18 USC 1831 el seq. The Defend Trade Secrets Act (DTSA) creates a federal civil claim for trade-secret misappropriation. 18 U.S.C. § 1836(b)(1). To state a DTSA claim, a plaintiff must allege trade-secret misappropriation in that: (i) It has information subject to "reasonable measures" of secrecy, 18 U.S.C. § 1839(3)(A); (ii) That information has or had competitive, economic value from not being readily ascertainable through proper means, 18 U.S.C. § 1839(3)(B); and that the defendant acquired, used or disclosed that information through improper means" 18 U.S.C. § 1839(5). Plaintiff adequately pled all facets of this claim in Count 3, and 4, which are claims wholly unrelated to any Arbitration. They also alleged the bad faith conduct requisite to the commercial activities of Tom Kadlec. Therefore the Court erred in law, not to analyze or apply the proper subject matter jurisdiction of the DTSA.

### (ii)    Court Failed to Investigate Issues of Unfair Market Competition under the Commodities Exchange Act

The Court also failed to make mention of allegation of unfair market competition and violations under Federal Law of the fair market competition under the CEA. 7 U.S.C. § 6b (2)  The case also has public policy implications as well as issues related to unfair market competition.

### (iii)    Court erred to apply  Subject Matter Jurisdiction under the Whistleblower Protection Act

Further the Complaint also raised Federal questions under the Whistleblower Protection Act, 17 CFR 166 and the evident partiality as applied.  Section 23 of the Commodity Exchange Act (7 U.S.C. § 26) is the statutory section that created the CFTC Whistleblower Program. The Whistleblower Rules (17 C.F.R. pt. 165) are the rules implementing Section 23 of the Commodity Exchange Act. This action arises from material areas of Federal law, which rightfully fall under the subject matter jurisdiction of this Federal Court. It touches on issues related to the Whistleblower Protection Act,

and raises the Federal question under that Act, whether two NFA whistleblowers, exposing fraud and corruption against the NFA itself, should be permitted to conduct evidentiary depositions, sponsored and in front of the NFA itself, in an NFA Arbitration and whether procedural bias and evident partiality is present when the NFA administers an arbitration seeking testimony against the NFA itself and prohibits such testimony with the extortion of additional funds.  Such matters also fall under the evident partiality of the Federal Arbitration Act.

### *Conclusions*

In summary, this Court manifestly erred in law in its determination of subject matter jurisdiction under Federal Rules of Civil Procedure 12.(h)(3).  Plaintiff has respectfully demonstrated that its  memoranda contains substantive issues and laws, that Plaintiff(s) are entitled to challenge, and these arguments are not frivolous or in bad faith, but amount to substantive statutory rights of Plaintiffs' subject matter jurisdiction and its private rights to action, which were specifically mandated under 7 USC 25(b). It is firmly established that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case. See generally 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, p. 196, n. 8 and cases cited (2d ed.1990). As stated in *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Rather, the district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.,* at 685, 66 S.Ct.,

Plaintiff respectfully requests this Court reverse Order 13 because for the reasons herein subject matter jurisdiction is correct. In the alternative, Plaintiffs respectfully request it can amend its Complaint and can serve Defendants in accordance with the attached waivers of services from the respective counsel under FRCP Rule 4(d)) as Plaintiff's subject matter jurisdiction is founded in the correct state and Plaintiffs claims were pled to the required standard of law.

Plaintiff in this case seeks leave to amend the Complaint to correct the class action deficiencies, and to submit alongside the Motion of Declaratory Relief, with supporting memorandum of law. Plaintiff carefully researched and a pled a detailed Complaint that was properly brough in

Motion for Reconsideration, Page 71

subject matter jurisdiction in this District (as explained herein under 7 USC § 25), and each cause of action was properly pled.

Plaintiff as a *Pro-Se* litigant therefore was not granted any lenience from this Court, with an extension of time, under any circumstance or at any time, despite the manifest errors of law or fact herein. Therefore this motion is filed under Court rules, without opposition, and without page restriction.

Respectfully submitted

//SSK//

Samantha Siva Kumaran