# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

SAMANTHA SIVA KUMARAN, *et al.,*       )
      Plaintiffs/Petitioners,       )
                                    )
v.                                    )     Case No. 1:20-cv-03668-GHW
                                    )
NATIONAL FUTURES ASSOCIATION, *et al.,* )
      Defendants.                   )

## RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Gregory M. Boyle
*Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Admitted pro hac vice*

*Counsel for National Futures Association*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     This Court Correctly Held That Kumaran Cannot Assert Claims On Behalf Of Other Individuals Or Entities, Which Requires Dismissal In Full ........................................ 1

II.    As This Court Correctly Held, Absolute Immunity Bars Virtually All Of The Claims Asserted In The Complaint. ...................................................................................... 3

III.   The Court Properly Dismissed The Claim Under Section 22 Of The Commodity Exchange Act. ............................................................................................................................ 5

      A.    The Complaint Does Not Plead Section 22 Damages. ............................................. 5

      B.    The Complaint Does Not Plead Bad Faith Or Causation. ........................................ 6

IV.   The Court Correctly Rejected The Claims For Injunctive Relief. ................................... 9

V.    The Court Correctly Declined Supplemental Jurisdiction Over The State-Law Claims ........................................................................................................................................ 9

VI.   The Court Correctly Denied Leave To Amend ................................................................ 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) .................................................................... 6-7

*Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986) ................................................... 7

*In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, 435 F.Supp.3d 845 (N.D. Ill. 2020) ............................................................ 9

*Citigroup, Inc. v. Abu Dhabi Investment Authority*, 776 F.3d 126 (2d Cir. 2015) ......................... 9

*City of Providence v. Bats Global Markets, Inc.*, 878 F.3d 36 (2d Cir. 2017) ............................... 4

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ......................................................................... 10

*D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001) ................................. 3, 4

*DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 265 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................................................................ 7

*DL Capital Group, LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93 (2d Cir. 2005) ...................... 4

*Effex Capital, LLC v. National Futures Ass'n*, 933 F.3d 882 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020) .................................................................................... 3

*Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443 (S.D.N.Y. 2014) ..................... 10

*Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215 (7th Cir. 1997) .......................... 10

*Imbruce v. American Arbitration Ass'n*, No. 15 CIV. 7508, 2016 WL 5339551 (S.D.N.Y. Sept. 23, 2016) ................................................................................................ 4, 5

*Jaffe v. Capital One Bank*, No. 09 CIV. 4106, 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ........................................................................................................................... 2

*Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014) ............................................................... 7

*King v. National Futures Ass'n*, 189 F.3d 473, 1999 WL 510945 (9th Cir. 1999) (unpublished table decision) .................................................................................... 3

*Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255 (2d Cir. 2006) ......................................................................................................................... 5-6

*Koulkina v. City of New York*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008) ........................................... 9

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ................................................ 9

*McCrudden v. National Futures Ass'n*, No. 13-CV-6930, 2014 WL 4412470 (S.D.N.Y. Sept. 8, 2014) ...................................................................................4

*MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456 (W.D.N.Y. 2014), *aff'd*, 826 F.3d 653 (2d Cir. 2016) ..........................................................................................2

*In re Natural Gas*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ...............................................................6

*Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470 (2d Cir. 2004) ................................................2

*Song v. Yao Brothers Group LP*, No. 10 CIV. 04157, 2013 WL 12109109 (S.D.N.Y. July 30, 2013), *aff'd*, 570 F. App'x 59 (2d Cir. 2014) ......................... 8-9

*Technology in Partnership, Inc. v. Rudin*, No. 10 CIV. 8076, 2011 WL 4575237 (S.D.N.Y. Oct. 4, 2011) ..................................................................................8

*United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89 (2d Cir. 2008) ............................2

*Western Capital Design, LLC v. New York Mercantile Exchange*, 180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) .................................................6, 8

*Western Capital Design, LLC v. New York Mercantile Exchange*, 25 F. App'x 63 (2d Cir. 2002) ..........................................................................................................6, 7

*Xu v. Financial Industry Regulatory Authority Inc.*, 503 F. App'x 7 (2d Cir. 2012) ......................3

*Zaccaro v. Shah*, 746 F. Supp. 2d 508 (S.D.N.Y. 2010) ...............................................................10

**STATUTES**

7 U.S.C. § 25(b)(2) ..........................................................................................................................5

7 U.S.C. § 25(b)(4) ..........................................................................................................................5

**OTHER AUTHORITIES**

Minute Order, *Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345 (S.D.N.Y. Dec. 20, 2019), ECF No. 23 ................................................................................3

New York Department of State, *Search Our Corporation and Business Entity Database*, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY ..................................................................................................2

13F Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3642, Westlaw (3d ed. database updated Apr. 2020) ...........................................................10

Pursuant to Local Civil Rule 6.1, Defendant National Futures Association ("NFA") files this Response to Plaintiffs' Motion for Reconsideration filed by Samantha Siva Kumaran, ECF No. 17. Kumaran raises many arguments in her 71-page Memorandum of Law, and continues to engage in fact-free mudslinging, but none of her arguments warrants reconsideration of this Court's judgment of dismissal. Rather than attempt to address each of the arguments raised in Kumaran's Memorandum, NFA focuses here on a few dispositive points that confirm that this Court reached the correct result.[1]

### I. This Court Correctly Held That Kumaran Cannot Assert Claims On Behalf Of Other Individuals Or Entities, Which Requires Dismissal In Full.

This Court correctly held that Kumaran, as a nonlawyer, "cannot assert claims on behalf of any other individual or other entity." Order at 5, ECF No. 13. That black-letter law requires dismissal in *full*. The Complaint shows that all the claims in this case are claims of Nefertiti Risk Capital Management, LLC ("NRCM"). Per the Complaint, it was *NRCM* that had the account with ADM Investor Services ("ADMIS"), and that suffered the losses that the Complaint alleges resulted from the events surrounding ADMIS. Compl. ¶¶ 57, 76 & Ex. 3, ECF No. 1-3. Confirming as much, it was *NRCM* that filed an arbitration against ADMIS. *E.g.*, Compl. Ex. 6, ECF No. 1-6.

Kumaran now asserts that NRCM is a "sole proprietor," that NRCM has been "dissolved," and that she is the "assign" of NRCM's "rights and liabilities." Mem. at 66-67, ECF No. 17-1. But Kumaran's first two arguments are contradicted by the complaint, which identifies NRCM as an LLC and purports to bring claims on behalf of NRCM—which the complaint could not do if the entity had been dissolved. *E.g.*, Compl. ¶¶ 12, 267. Indeed, Kumaran's new assertions also are contradicted by New York state records, which show that NRCM is a "Domestic Limited Liability

---

[1] On June 26, 2020, undersigned counsel emailed Kumaran offering to waive service. Kumaran stated that she would wait to see what was in the Court's information package before responding. Counsel has received no further communications from Kumaran regarding waiver of service.

Company" whose registration is "active," with no registered agent.[2] Meanwhile, Kumaran's third argument is irrelevant: As this Court previously recognized, "a litigant may not appear *pro se* to pursue a claim that a corporation has assigned to him." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008); *see* Order at 6. Kumaran also avers that she was at least the "owner of the trade secrets and trading strategies in question." Mem. at 67. But again, the complaint says otherwise and pleads that Kumaran "invested" her intellectual property in NRCM "as a capital contribution." Compl. ¶ 57. Hence, the trade secret claim also is NRCM's.

Finally, Kumaran asserts that the Court at least should have given her time to appoint class counsel. Mem. at 34. But before class counsel can be appointed, Kumaran first must plead a viable claim on behalf of a named plaintiff, *see Jaffe v. Capital One Bank*, No. 09 CIV. 4106, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) ("[A] *pro se* plaintiff may not bring an action in which he will serve as both class representative and class counsel.")—and here, she cannot represent NRCM, which is the only entity that even arguably has injuries. Nor can Kumaran or NRCM serve as a "class representative" unless a lawyer represents *Kumaran and NRCM*: "[A] *pro se* class representative cannot adequately represent the interests of other class members." *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (citation omitted).

Kumaran cannot in good faith claim surprise that these principles required dismissal. Just last year, a magistrate judge in this District admonished her "that a corporation may not proceed in this Court without an attorney and, thus, if" Kumaran wished to proceed with claims on behalf of an entity, she "will need to obtain representation by counsel." *See* Minute Order, *Kumaran v.*

---

[2] N.Y. Dep't of State, *Search Our Corporation and Business Entity Database*, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (enter "Nefertiti Risk Capital Management, LLC"); *see MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 461 & n.10 (W.D.N.Y. 2014) (taking judicial notice of New York Corporate records), *aff'd*, 826 F.3d 653 (2d Cir. 2016).

2

*Northland Energy Trading, LLC*, No. 19-cv-8345 (S.D.N.Y. Dec. 20, 2019), ECF No. 23. Disregarding this warning, she pressed ahead in this Court anyway.

## II. As This Court Correctly Held, Absolute Immunity Bars Virtually All Of The Claims Asserted In The Complaint.

Independently, this Court also correctly held that absolute immunity bars all of the claims for damages that Kumaran asserts (save only the Section 22 claim discussed below). A self-regulatory organization ("SRO") like NFA and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities. This immunity extends to "affirmative acts as well as to an SRO's omissions or failure to act." Order at 7 (quoting *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011) (citations omitted)). This immunity applies even where a plaintiff alleges bad faith—there "is no 'bad faith' exception to absolute immunity for SROs." *Xu v. Fin. Indus. Regulatory Auth. Inc.*, 503 F. App'x 7, 8-9 (2d Cir. 2012). And this immunity applies to *all* causes of action a plaintiff might bring—whether due process, tortious interference, trade secret, or conspiracy—so long as the claims arise out of discharge of the SRO's regulatory responsibility. *See D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105-06 (2d Cir. 2001).

Kumaran claims that absolute immunity applies only to securities SROs organized under the Securities Exchange Act, not futures SROs organized under the Commodity Exchange Act ("CEA"). Mem. at 5-6. But nothing supports this argument. The Securities Exchange Act's SRO provisions are "very similar" to the CEA's—which, indeed, "were modeled closely after" the Securities Exchange Act. *Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 895 n.28 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020). So, the same immunity principles apply. *King v. Nat'l Futures Ass'n*, 189 F.3d 473, 1999 WL 510945, at *1 (9th Cir. 1999) (unpublished table

decision); *McCrudden v. Nat'l Futures Ass'n*, No. 13-CV-6930, 2014 WL 4412470, at *3 (S.D.N.Y. Sept. 8, 2014).

Kumaran also asserts that absolute immunity does not apply when an SRO acts in a "commercial" capacity. Mem. at 6. But that exception cannot help Kumaran because the complaint's allegations here target NFA's core regulatory functions. Their gravamen is that NFA "inadequately responded to, monitored, or policed [its] members' actions," which the Second Circuit has held falls within the heartland of what absolute immunity bars. *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017); *see D'Alessio*, 258 F.3d at 106 (absolute immunity as to claims "predicated on the NYSE's improper performance of its interpretive, enforcement and referral functions"); Compl. ¶¶ 1, 281, 288, 295, 297, 300-01, 310. To the extent Kumaran avers that NFA was acting out of commercial *motives*, *see* Mem. at 7, 20, 62 (pointing to NFA's supposed "commercial interests"), those allegations cannot save her claims: "[M]otive is irrelevant" to absolute immunity. *DL Capital Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 98 (2d Cir. 2005) (internal quotation marks omitted).

This Court also correctly held that NFA has absolute immunity as to the damages claims regarding NFA's actions during arbitration. "A commercial organization sponsoring an arbitration is 'entitled to immunity for all functions that are integrally related to the arbitral process.'" *Imbruce v. Am. Arbitration Ass'n, Inc.*, No. 15 CIV. 7508, 2016 WL 5339551, at *3 (S.D.N.Y. Sept. 23, 2016) (quoting *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)). When facilitating an arbitration like NCRM's, NFA's role is equivalent to that of other sponsoring organizations, like the Financial Industry Regulatory Authority or the American Arbitration Association. Moreover, NFA is responsible for administering the arbitration; it does not arbitrate the dispute itself. This fact would defeat the claims as against NFA on the merits, but it also entitles

NFA to absolute immunity. *Id.* ("A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration." (quoting *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999))).

### III. The Court Properly Dismissed The Claim Under Section 22 Of The Commodity Exchange Act.

That leaves only the claim under Section 22(b) of the CEA, 7 U.S.C. § 25(b). That section provides in relevant part: "A registered futures association that fails to enforce any bylaw or rule that is required under section 21 of [the CEA] … shall be liable for actual damages … [that] were caused by such failure to enforce or enforcement of such bylaw or rule." *Id.* § 25(b)(2). It further provides: "A person seeking to enforce liability under this section must establish that the … registered futures association … acted in bad faith in failing to take action or in taking such action as was taken, and that such failure or action caused the loss." *Id.* § 25(b)(4). Broadly, Kumaran asserts that ADMIS engaged in a "fraudulent scheme" to misappropriate trade secrets and to charge excess fees, and she faults NFA for allegedly not preventing this purported fraud and then for failing to redress it. Order 3-4 & n.4; *see* Compl. ¶¶ 2-3. The complaint fails to state a Section 22 claim for at least three reasons.

#### A. The Complaint Does Not Plead Section 22 Damages.

First, Section 22's remedy does not permit recovery of the types of damages the complaint seeks. Section 22 allows recovery only of "actual damages sustained by a person *that engaged in any transaction* specified in subsection (a) of this section to the extent of such person's actual losses *that resulted from such transaction* and were caused by such failure to enforce or enforcement of such bylaw or rule." 7 U.S.C. § 25(b)(2) (emphases added). The Second Circuit has held that Section 22 only covers trading losses that are "the result of [the plaintiff's] purchases or sales in the commodities market." *Klein & Co. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255,

5

260, 262 (2d Cir. 2006). Here, to begin, the only "person" who arguably "engaged in any transaction" subject to NFA's rules was NCRM—which Kumaran cannot represent. *Supra* at 1-3. Moreover, the complaint principally asserts that ADMIS misappropriated "confidential and trade secrets." Compl. ¶ 267; *see* Order at 2-3. But that is not a trading loss resulting from any specific purchase or sale in the commodities market. Compl. ¶¶ 59-79, 288.

The complaint also asserts the loss of arbitration and other fees and "overcharges." Compl. ¶ 267. But again, Section 22 does not cover these damages. The Second Circuit has held that Section 22 applies only to "trading loss[es]." *Klein & Co.*, 464 F.3d at 262 (distinguishing a "credit loss," even though that loss arose out of trading activity).

### B. The Complaint Does Not Plead Bad Faith Or Causation.

Second, the complaint does not sufficiently allege bad faith, or that NFA's supposed bad faith caused Kumaran (or NRCM) any losses. *See W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 441 (S.D.N.Y. 2001) (bad faith "is a necessary element" of a Section 22 claim that "is strictly applied" (citation omitted)), *aff'd*, 25 F. App'x 63 (2d Cir. 2002). A bad faith claim "requires two allegations: 'first, that the exchange acted or failed to act with knowledge; and second, that the exchange's action or inaction was the result of an ulterior motive.'" *W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 25 F. App'x 63, 64 (2d Cir. 2002) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 780 (2d Cir. 1984)). A Section 22 claim that "sounds in fraud … must comply with the requirements of Rule 9(b)." *In re Nat. Gas*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005). And while allegations of scienter may be alleged generally under Rule 8, *Iqbal* "instruct[s] that, where a particular state of mind is an element of a claim, Rule 8 requires that it be plausibly pleaded and supported by factual allegations." *Biro v.*

6

*Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *see Kerik v. Tacopina*, 64 F. Supp. 3d 542, 571 & n.9 (S.D.N.Y. 2014).

The complaint here fails to satisfy these requirements, first, because it utterly fails to plead that NFA acted with an ulterior motive. "[S]elf-interest or other ulterior motive unrelated to proper regulatory concerns must constitute the sole or dominant reason for the exchange action or inaction." *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 265 F. Supp. 2d 254, 259 (S.D.N.Y. 2003) (citation omitted). Here, Kumaran's allegations of ulterior motive consist of claims that NFA receives its "operating revenues" from member firms, and thus benefits from "every trade and every futures customer[]" its members acquire (including ADMIS). Compl. ¶ 103. But that purported conflict is inherent in the self-regulatory model, and the Second Circuit has routinely held that similar allegations fail to plead bad faith. *See, e.g.*, *Brawer v. Options Clearing Corp.*, 807 F.2d 297, 303 (2d Cir. 1986) (allegation that SRO decided not to act because challenged practice "generate[d] increased trading volumes and revenue" could not make "out a sufficient claim of bad faith" because if such "self-interest were allowed to demonstrate bad faith, then [SRO] members … would inevitably be subject to bad-faith charges, and the concept of exchange self-regulation would be undermined" (citation omitted)).

Nor does the complaint plead the threshold requirements that NFA had "knowledge" of a violation of NFA's rules, and that NFA's supposed failure to act caused a loss to Kumaran or NRCM. *W. Capital Design*, 25 F. App'x at 64. This can be seen by focusing on the core allegations in Kumaran's complaint. By August and September 2017, Kumaran claims to have discovered that ADMIS had charged NRCM "unauthorized fees," and that "unauthorized access had been given to [NRCM's] account to third parties, Vision's owners and affiliates." Compl. ¶¶ 74-76; *see* Order at 3-4. Kumaran asserts that she contacted NFA on September 27 and September 29, 2017, and

that thereafter, NFA "had actual, direct and constructive knowledge that [NRCM's] account was being shared with the employees owners of the disbarred Vision." Compl. ¶ 81. Kumaran then asserts that NFA failed to properly respond to her complaints, *id.* ¶¶ 91-95, and that in June 2019, she finally "closed the account at ADMIS," *id.* ¶ 73. This theory, however, fails to plead that NFA knew of a violation that plausibly caused any loss to Kumaran or NRCM.

*Before* September 2017, when Kumaran reported her alleged losses to NFA, Kumaran has no well-pleaded allegation that NFA knew of ADMIS's alleged violation of an NFA rule. As the Court has noted, Kumaran *asserts* that NFA "already knew of the market place fraud" when she sent her September 2017 emails. Compl. ¶ 82; *see* Order at 4. But this is precisely the sort of "conclusory allegation[] … [that] do[es] not meet the plausibility standard in *Iqbal*." *Tech. in P'ship, Inc. v. Rudin*, No. 10 CIV. 8076, 2011 WL 4575237, at *6 (S.D.N.Y. Oct. 4, 2011); *see W. Capital Design*, 180 F. Supp. 2d at 442. While (as the Court also noted) Kumaran asserts that NFA had "omitted a reference or link to [ADMIS's] arrangement [with Vision] on [its] Basic Website," Order at 4 (citing Compl. ¶ 83), Kumaran does not cite any provision of the CEA or NFA's bylaws that this supposed omission violated.

*After* September 2017, Kumaran says NFA knew of violations, and she faults NFA's response. But even leaving aside that this claim amounts to the type of mere second-guessing of NFA's response that cannot plead bad faith, neither Kumaran nor NRCM could have suffered a loss caused by these events. At this point, Kumaran admittedly *knew* about ADMIS's unauthorized fees and the unauthorized access ADMIS had granted to third parties. So, even if NRCM incurred additional fees, or lost additional trade secrets—which is unclear from the complaint—it did so with eyes wide open. Hence, NFA's supposed failure to enforce did not "cause[]" any loss that Kumaran or NRCM incurred. *See Song v. Yao Bros. Grp. LP*, No. 10 CIV. 04157, 2013 WL

8

12109109, at *13 (S.D.N.Y. July 30, 2013), *aff'd*, 570 F. App'x 59 (2d Cir. 2014); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 873 (N.D. Ill. 2020) (holding that Section 22 claims require proximate causation).[3]

## IV. The Court Correctly Rejected The Claims For Injunctive Relief.

The Court properly applied the law in rejecting the claims for injunctive relief concerning the pending arbitration that NFA is administering. Order at 8-9. Kumaran's memorandum then elaborates on her assertions that the arbitration is biased or is being conducted improperly. Mem. 8-34. But as this Court correctly held, those assertions are at most a basis for challenging the arbitration's result after it concludes; they do not permit this Court to enjoin a pending arbitration. *Id.*; *see Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015). Kumaran also says that she challenges whether there was a valid agreement to arbitrate, and that this Court can address this threshold issue of arbitrability. Mem. at 35. But Kumaran does not point to a single well-pled fact showing that the arbitration agreement itself was procured through fraud.

## V. The Court Correctly Declined Supplemental Jurisdiction Over The State-Law Claims

The Court also correctly declined to exercise supplemental jurisdiction over the state-law claims (which, in any event, are barred by absolute immunity, *see supra* 3-5). Order at 9-10. Kumaran asserts that the Court has diversity jurisdiction. *See* Mem. at 55-57. But the presence of

---

[3] Kumaran asserts at one point in the complaint that, as of June 2019, she remained "materially unaware of Vision affiliates access to [NRCM's] account." Compl. ¶ 73. But the documents attached to her complaint contradict this assertion. *See* Compl. Ex. 4, ECF No. 1-4 (September 27, 2017 email from Kumaran on behalf of NRCM asserting that she "found … in the last week or so … that all my proprietary trading records and position and risk data were being secretly sent over to [High Ridge Futures] for daily scrutiny and analysis without my knowledge, permission and consent," and that the recipient was "High Ridge were [sic] formerly Vision Financial"); *see also* Compl. Ex. 3, ECF No. 1-3 (similar assertions in email to Trey Lazzara). This Court, of course, is not required to accept as true allegations contradicted by documents attached to the complaint. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008).

Doe defendants destroys such jurisdiction. While the Second Circuit has not decided that question and district courts in this circuit have reached different results,[4] the better reasoned view is that because "the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." *Howell by Goerdt v. Tribune Ent. Co.*, 106 F.3d 215, 218 (7th Cir. 1997); *see* 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3642, Westlaw (3d ed. database updated Apr. 2020) (stating that, "on challenge, the diverse citizenship of the fictitious defendants must be established by the plaintiff in order to continue a federal court action").

## VI.     The Court Correctly Denied Leave To Amend.

Finally, Kumaran repeatedly faults the Court for denying leave to amend, making much of the liberal treatment accorded to *pro se* litigants. Mem. at 55. But this liberality is not without limit. Even now, Kumaran's lengthy memorandum does not identify how she would amend her complaint to cure the myriad, independent deficiencies in her causes of action. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiffs'] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.").

## CONCLUSION

For the foregoing reasons, the Motion for Reconsideration should be denied.[5]

---

[4] *Compare, e.g.*, *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 449 (S.D.N.Y. 2014), *with Zaccaro v. Shah*, 746 F. Supp. 2d 508, 516 (S.D.N.Y. 2010).

[5] The Doe defendants are alleged to be NFA employees; Kumaran's claims against them therefore fail for the same reasons they fail against NFA.

Dated: July 24, 2020

Respectfully submitted,

/s/ *Gregory M. Boyle*
Gregory M. Boyle
 *Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Counsel for National Futures Association*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2020, I electronically filed the foregoing RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to Plaintiff.


DATED: July 24, 2020

                                */s/ Gregory M. Boyle*
                                Gregory M. Boyle