# IN ARBITRATION BEFORE THE

# NATIONAL FUTURES ASSOCIATION

| | | |
|---|---|---|
| Nefertiti Risk Capital Management ("NRCM") | ) | |
| Claimant, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | NFA Case No. 18-ARB-5 |
| | ) | |
| ADM Investor Services, Inc, Greg Hostetler, | ) | |
| Lazzara Consulting, Inc, Trey Lazzara, | ) | |
| High Ridge Futures, LLC, John Felag, Josh Herritt, | ) | |
| Howard Rothman, Robert Boshnack | ) | |
| Collectively, Respondents, | ) | |

## OCTOBER 28th 2019

## CLAIMANTS OPPOSITION TO  MOTION OF CONFIDENTIALITY

Claimant objects in full to Respondent's ill-timed motion for confidentiality dated October 18th 2019. This overly-broad and overreaching proposed order seeks to interfere with timeliness and the important production of documents, and fails to show even one attempt of good cause and fails outright to meet the burden of proof as required by law. The motion should be denied at the outset.

1. Motion is Ill-Timed and Seeks to Delay Justice

Respondents have been aware of now, since August 6th 2018 of mandatory items to be produced, in the NFA Rule 7(a)(2) auto-exchange, yet intentionally waited to the last minute to raise an objection. Further the Panel is respectfully reminded that there have been three (3) Motions to Compel, spanning over a year, during which each time, Respondents were afforded the opportunity

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 2

within ten (10) days to respond. Just as Claimant raised concerns on the joint representation of counsel early and in timely fashion, each time Respondents failed to raise and waived their objects to the Motion to Compel.

Further the Panel issued an Order on or around August 28th 2019 resetting the schedule, which once again granted the Respondents, what amounted to further lenience in timing in their ability to produce. Well aware of the Panel's now ordered requirements – Respondents again failed to raise any objections or front these issues. Therefore, now waiting till after multiple productions are due, at the last minute – Respondents produce overreaching motions to obstruct routine production -  again defying the Panel's orders, Respondents seek further latitude in their ability to comply with deadlines. Respondents have further failed to seek leave from the Panel to waive NFA Rules 7(a)(4) requiring 10 days to file now inject this ill-time Motion.

This scant legally-deficient motion not only fails to show good cause, but also includes an overburdensome multi-page draft order, which if not refuted, seeks to impose significant burden and restrict Claimants rights, violates public policy, contravenes regulatory compliance laws and which required line-by-line review. This has been extremely time consuming, costly and burdensome at this stage in the proceeding, and attempts to throw yet another procedural wrench in Claimants procedural rights to timely production intended under Auto-Exchange 7(a)(2) with mandatory items of to be produced to interfere with them producing documents timely. The timing of this Motion is ill-timed and bad faith. Further the Panel should note the Respondents defied NFA Orders dating back to August 6th 2018 to produce the High Ridge, Robert Boshnack and Howard Rothman guarantee agreements, and knew they were required under 7(a)(2) for more than *445 days* which has again gone unsanctioned and unpenalized. Notable Respondents failed to raise objections of confidentiality when

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 3

they were obligated to do.  These guarantee agreements in plain English were required by NFA Rules to be produced on *October 15th **2018***.

There has been no consequence to Respondents for the delays, and failure to produce, and only increased financial hardship to Claimant, each time Respondents obstruct and delay. Conversely there is financial benefit and gain to Respondent in obstructing and delaying which inequity has not been addressed. This benefit to delaying is procedurally unfair. Claimant objects to the failure to enforce the rules and uphold remand of any kind by the NFA on Respondents on the deliberate ongoing withholding of complete documents.

The recent production of Robert Boshnack's and Howard Rothman's unprecedented concealed *personal guarantees* on Claimant's competing CTA trading account (uncovered now on October 25th 2019 in redacted form) are direct evidence for summary judgment of fraudulently concealed and fraudulently omitted to induce business, when opening the account at ADMIS, have empirically delayed justice to Claimant in this forum. The Panel is again respectfully requested to apply the rule of law, and apply the necessary penalties and sanctions to now documented willful and intentional conduct and obstructions by Howard Rothman and Robert Boshnack, to obstruct timely production of their fraudulently concealed *Guarantee Agreements* and unauthorized fee compensations, and failure to comply with timely production. Claimant has suffered financial damanges and interference for almost three (3) years since the accounts in December 2016 were fraudulently induced, due to becoming part of these illegal,  dishonest and fraudulent activities with unscrupulous owners of the disbarred Vision Financial Markets, LLC, (who have 172 CFTC reparations cases against them), Howard Rothman and Robert Boshnack, and their unlawful access

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 4

to competitors CTA's trading account, that violate the conditions of the Commodities Exchange Act. Claimant should not have to continued to pay the price for these violations.

## 2. Respondents deliberately waited till October 18th, 2019

Respondents knowing that their production was due October 25th, 2019 acted in bad faith and to cause intentional delays to wait until October 18th, 2019, when for the first time to raise or even mention any objections. Knowing that Claimant was honing in on its procedural rights to finally receive the documents, Respondents attempt to throw yet another wrench and ill-time procedural spoke to the wheels.  Claimant has found this motion overly burdensome and  also comply with other deadlines, also has increased burden, time and cost to this procedure, and were obligated under the rules to raise their objections and these issues on or before October 15th 2018. These are the rules, and yet again Respondents, seek lenience and attempt to violate them, and have failed to seek leave from the Panel to raise objections after the ten (10) days.

## 3. Respondents waived their rights under 7(a)(2) to file an objections

Respondents motion is another attempt to side-step rules and in the NFA Arbitration Forum, (where Tom Kadlec is on the NFA Board) where the express rules of 7(a)(2) have been violated. Not only did the Respondents fail to raise objections on October 15th, 2018, they have waived them three (3) times over.  Therefore, the Respondents should not be permitted another delay

Claimant is again documenting its objection to the late filing of this motion, and without limitation to its other arguments, Respondents have in fact expressly waived their object to respond under NFA Rule 7(a). Any objections to the motion were due on October 15th, **2018 (note Year 2018).** Not only that, Claimant issued a Motion to Compel again on June 18th 2019 which

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 5

Respondents were very generously again given **until June 28th 2019** to respond. No objections were **raised and therefore have been waived.** After another lenient extension to re-comply with the request in September NRCM issued a Notice of Default and Motion to Compel again on September 16th 2019. Respondents expressly were given until and had until **September 26th 2019** to raise their objections and respond which they did. However, their response raised no objections. Therefore have expressly waived their objections which were due within 10 days. NFA Rules are clear, that if a party does not raise any objections within the 10 days, their objections are waived. Further, the schedule for this production was supplied to Respondents on August 6th 2018 (Note Year **2018**) giving them more than fair opportunity to properly raise concerns within the timeframes of the rules set. Constantly bending the rules, should not be permitted. Claimant has complied with the schedules.

This last minute Hail Mary pass to raise objections that was issued in schedule in 2018 is filed outside of NFA Rules. and the time-frames to raise objections.

Claimant also vociferously objects to this late-filed motion being (timed for October 18th 2019), being used as a technique to slow procedural justice down and stall production. Respondents have not once, but three (3) times, waived their objections under Rule. 7(a)(4) which states "Written requests to compel production of documents and written information must be served on NFA and all parties no later than 10 days *after the written objections are due*." Therefore NFA Rules are clear, that Respondents objections were due, first on October 15th 2018, second on June 18th 2019 and again by *September 26th 2019*. **On September 16th 2019 the Respondents, Robert Boshnack and Howard Rothman yet again boldly defied NFA rules and this time a Panel Order to produce the guarantee agreements and financials without raising objections**.

Therefore, under the rules, Respondents objections have expressly been waived. Failure to timely assert objections to discovery requests results in a waiver of all objections that could have been seasonably asserted. Poulos v. Naas Foods, Inc., 959 F.2d 69, 74 (7th Cir.1992); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir.1991); Fonville v. District of Columbia, 230 F.R.D. 38, 42 (D.D.C.2005); Hobley v. Burge, No. 03-3678, 2004 WL 1687005, *2 (N.D.Ill. July 26, 2004); Melendez v. Greiner, No. 01-7888, 2003 WL 22434101, *2 (S.D.N.Y. Oct.23, 2003. Autotech Technologies Ltd. Partnership v. Automationdirect.Com, Inc., 236 F.R.D. 396, 398 (N.D.Ill.,2006) See Code Civ. Proc. §§ 2030.290(a) and 2031.300(a); see also Leach v. Superior Court (1980) 111 Cal.App.3d 902, 905-906; Scottsdale Ins. Co. v. Superior Court (Spyglass Homeowners Association).

## 4. Late Response - Respondents seek to sow procedural chaos and obstructions

By waiting until October 18th,2019 more than *370 days* since the Respondents failed to comply with Rule 7(a)(2), and failing to raise timely objections, Respondents new requests, are a final attempt to inject procedural chaos into not producing the complete financial agreements and hiding the necessary financials governing Claimants accounting. Financial accounting on Claimant's account is in fact Claimant's business information and rightfully due to the Claimant. This blindsight, is intended to further delay and obstruct Claimant's right to fairness and justice to reveal the material terms, financial arrangements and commercial dealings, that were concealed from it, related to its fraudulently concealed activities with disbarred Vision Financial Markets, LLC owners, Howard Rothman and Robert Boshnack.

Responding to this long, ill-timed and legally-deficient Confidentiality Motion, has also significantly increased additional time, cost and burden. This response includes detained rebuttals of erroneously convoluted proposals of Respondents, incur legal costs on protective non-disclosure

agreements, detailed wordsmithing on proposed Protective Orders. This drives up costs, and fails to bring justice to Claimant, who has waited now over *507 days since the filing of its Complaint* to receive fundamental financial agreements on its accounts. Respondents intentionally waited to the last minute to raise this issues, which, as the Panel will note, is part of the deliberate attempts to withhold documents for as long as possible. (at increased cost and burden to  Claimant).

Claimant insists the NFA Rules are actually enforced against Respondents. Since Respondents' waived their right to objections on both October 15th, 2018, again in their opposition to the Motion to Compel filed June 18th, 2019 and in their written response on June 28th, 2018) and for the third time. In the old proverb, three strikes you are out. Having materially failed to comply with NFA Rules 7(a)(2) in the first place to produce the documents. and then materially failing to comply with NFA Rule 7(a)(4) to raise objections, Respondents, by law have waived their rights.  Adding new weeks of debate defies the rule of justice. The time has come for the Respondents to produce. Not embroil all parties in another self-serving set of obstacles to conceal the facts relevant to this case. The Panel should reject the Order in full.

## 5. Respondent's Case Law Fails

In the alternative, if however the Panel does in fact accept yet another late-filed Motion, that violates the express timing requirements of the NFA Rules to raise objections,  Respondents motion fails as a matter of law, and is not supported by the case law they provide, and should be denied in its entirety. In their sparse and legally deficient October 18th 2019 Motion, Respondents not only fail to make a semblance of articulation of their so-called description of "highly sensitive" or "commercial confidential information' but, rest their entire Motion on the citation of ONE single, outdated 1993 case-law (26 years old). *See Culinary Foods, Inc. v. Raychem Corp*, 151 F.R.D. 297 (N.D. Ill. 1993).

Upon review of the case, this supposed guiding authority from two decades ago, does not even support Respondent's insufficient motion for a Protective Order and Respondent's arguments fail as a matter of law.  Their motion should be denied.

The 1993 Culinary case cited, in fact boldly contradicts Respondents motion, and states that protective orders are *only* granted when the Respondents meet the express articulated showing of *good cause.* In that case, the Motion was in fact denied. Respondents attempt to use this case that umbrella orders are routinely granted, when the Culinary case was denied as also unpersuasive. Quoting directly, from the Respondents *Culinary Foods, Inc. v. Raychem Corp*, 1993 single case-law, cited by Respondents… "The law applicable to protective orders is found in Federal Rule of Civil Procedure 26(c)(7) which provides: "**for good cause shown** ... the court may make any order ... that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." In order to establish that information should be subject to a protective order, **the party seeking protection bears the burden of establishing**: (1) that the information is in fact a trade secret or confidential commercial information and (2) **that there is good cause to protect the information**. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986). The requirement of **good cause** is based upon a fundamental premise that "pre-trial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Wilk v. American Medical Association,* 635 F.2d 1295, 1299 (7th Cir.1980) citing *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). **Thus, purported trade secrets and other confidential commercial information are not automatically protected from disclosure, good cause must also be established**. *United States v. International Business Machines Corp.,* 67 F.R.D.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 9

40, 42, n. 1 (S.D.N.Y.1975**). Courts have imposed a variety of language as to what satisfies the requirements of good cause**. Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 300 (N.D.Ill.,1993) See e.g. whether disclosure "will work a clearly defined and very serious injury." *United States v. International Business Machines Corp., 67 F.R.D. at 46;* "**broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test**." *Cipollone v. Liggett Group, Inc., 785 F.2d at 1121;* (*Emphasis added*).

Therefore the Respondent's own citation shows the Order should not be granted, as the Respondent's motion failed to meet the burden of proof require, to place a blanket order without showing of good cause, and specifically fails to meet any standards to show any demonstration of fact as to what information is trade secret. Therefore even under the case Respondent's choose to cite, Respondents have failed to meet the burden of proof to establish good cause, and have simply made *broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.*

### 6. 1993 Case Law Is Overreaching

As stated above, the failed 1993 single Culinary case, the only law Respondents rely upon, in fact supports Claimant's motion to dismiss. Because of their express failure to show good cause, and the fundamental premise that justifies that public access, Respondents hey have by their own filing, failed to meet of the requirements to show good cause, by lumping together each and all documents, testimony, and correspondence. As quoted above **broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test**." *Cipollone v. Liggett Group, Inc.,* 785 F.2d at 1121. (Emphasis added)

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 10

Respondent's insufficient motion also directly violates public policy, is in fact illegal under case law for being over-reaching, overly broad and unsubstantiated and is not even supported by their own single recitation of supporting law. Respondent's motion is in fact so excessive and also exceeds the powers of this Arbitration, attempts to go beyond the NFA Arbitration to enforce their *no good-cause requirement*.  Further they produced a problematic, erroneous and legally inconsistent draft, which also seeks to restrict Claimant's fundamental rights and freedoms in equity and law, including its rights to retain or consult with counsel. (Yes that dead horse is beaten again)

The legally deficient motion is not even supported by law, and the purpose of the motion appears instead to be motivated by a desire to cover up Robert Boshnack, Howard Rothman and High Ridge Futures' illegal or fraudulent activities to gain unauthorized numerous customer and CTA's (their competitors) confidential trading accounts and financial data, deduct millions of dollars of unauthorized and unapproved fees and commissions, and violate Federal privacy laws and other Federal rules, regulations and laws. The concealing of illegal and fraudulent activity does not count as "good cause". The fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order. *see also Salomon Smith Barney, Inc. v. HBO & Co.,* 98 Civ. 8721, 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (denying motion to remove documents from the public court file where "[the movant]'s real concern is the possibility of public embarrassment.").

The Second Circuit has made clear that [a] plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that **good cause** exists for issuance of that order.... [I]f **good cause** is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection. Courts

have noted that access is particularly appropriate when the subject matter of the litigation is of especial public interest. *In re "Agent Orange",* 821 F.2d 139, 145–46 (2d Cir.), *cert. denied,* 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). Gelb v. American Tel. & Tel. Co., 813 F.Supp. 1022, 1034 (S.D.N.Y.,1993) (Emphasis Added)

As explained in *John Does I–VI v. Yogi,* 110 F.R.D. 629 (D.D.C.1986), "[t]o establish good cause under Rule 26(c) the courts have generally required a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.' ... With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a 'clearly defined and very serious injury to its business.' " *Id.* at 632 (quoting *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981) (citing *United States v. IBM Corp.,* 67 F.R.D. 40, 46 (S.D.N.Y.1975)).

A trade secret has been defined with reference to § 757 of the Restatement (First) of Torts. "[A] trade secret is any 'formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it....' " *I.B.M.* 67 F.R.D. at 46 n. 9. Gelb v. American Tel. & Tel. Co., 813 F.Supp. 1022, 1034–35 (S.D.N.Y.,1993)

Claimant does not object to a narrowly focused Stipulated Protective Order, that protects well-defined trade secrets, that can be shown with good cause, have competitive value in the market place, such as each Party's trading strategies and trading statements. However over-reaching blanket orders for no good cause are illegal and should be denied.

### 7.  No Umbrella Orders

Respondents proposal is also invalid under law. Courts have deemed invalid, protective orders that are much too broad is "all materials" not further specified, and all "information," which category absurdly overbroad.  The proposed order is so loose that it amounts, as Courts to not accept as suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret. **Such an order is invalid.** E.g., *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996); *Pepsico, Inc. v. Redmond, supra*, 46 F.3d at 31; *City of Hartford v. Chase*, 942 F.2d 130, 135–36 (2d Cir.1991). ("Emphasis added").

While, decades old, previous schools of thought were that blanket protective orders ("umbrella orders"), entered by stipulation of the parties without judicial review and allowing each litigant to seal *all* documents that it produces in pretrial discovery, are unproblematic aids to the expeditious processing of complex commercial litigation because there is no tradition of public access to discovery materials. E.g., *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355–57 (11th Cir.1987) (per curiam); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1118–23 (3d Cir.1986); *Manual for Complex Litigation* § 21.432 (3d ed.1995); Richard L. Marcus, "The Discovery Confidentiality Controversy," 1991 *U. Ill. L.Rev.* 457; Marcus, "Myth *946 and Reality in Protective Order Litigation," 69 *Cornell L.Rev.* 1 (1983).

**The weight of authority, however, is to the contrary.**  Furthermore, most cases endorse a presumption of public access to discovery materials, e.g., *Grove Fresh Distributors, Inc. v. Everfresh Juice Co., supra*, 24 F.3d at 897; *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir.1992); *Public Citizen v. Liggett Group, Inc., supra*, 858 F.2d at 788–90; *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162–64 (6th Cir.1987); *In re "Agent Orange"*

*Product Liability Litigation, supra*, 821 F.2d at 145–46, and **therefore require the district court to make a determination of good cause before he may enter the order**. (emphasis added) E.g., *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406, 1411 (D.C.Cir.1996); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484–85 (3d Cir.1995); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165–67 (3d Cir.1993); *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir.1991); *City of Hartford v. Chase, supra*, 942 F.2d at 135–37; *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985). Rule 26(c) would appear to require no less. And it is noted that both the First and Third Circuits, which used to endorse broad umbrella orders (e.g., *Cryovac, Cipollone*), have moved away from that position (*Public Citizen, Glenmede, Pansy, Leucadia*). Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945–46 (C.A.7 (Ill.),1999) (Emphasis added))

Respondent's proposed order in this case is further invalid for the additional reason that it is not limited to pretrial discovery; it seals the documents covered by it even after they are introduced at trial. *Seattle Times Co. v. Rhinehart, supra*, 467 U.S. at 36–37, 104 S.Ct. 2199; *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir.1993); *Littlejohn v. BIC Corp., supra*, 851 F.2d at 677–78, 680–81. Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (C.A.7 (Ill.),1999)

Respondent's motion, is a far-cry from governing law, and is an unreasonable attempt to exceed the Arbitration rules, and reach outside of the jurisdiction. Their motion does not restrict legitimate concerns of Trade Secrets, and fails to include language from standard protective orders of good cause. Enveloping all and sundry into "highly sensitive", and failing to make one specific showing of how they could be harmed – and how a competitor could gain an economic advantage – the motion is legally deficient. Instead Respondents produce overly broad, unsupported, arguments

for inspection and suggest a standard-less,  permanent, frozen, overbroad blanket order that is invalid and unsupported in laws, that is overly burdensome to spend time on.

Claimant does not object to an narrowly focused – for showing of good cause only - Stipulated Protective Order that allows the parties to keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the Panel (1) satisfies himself that the parties know what a Trade Secret is and are acting in good faith in deciding which parts of the record are Trade Secrets and (2) makes explicit that either party and any interested member of the public can challenge the secreting of particular documents and (3) there is a showing of Good Cause that complies with the legal standards, and shows specific and direct harm – noting that conclusory allegations are not specific.

## 8. Arbitrators Required to Use Rigorous Justification

As concealment from the public is disfavored, any "step that withdraws an element of the judicial process ... requires rigorous justification." *In re Krynicki,* 983 F.2d 74, 75 (7th Cir.1992). The party seeking confidentiality has the burden of showing good cause for the protective order. Fed.R.Civ.P. 26(c); *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *In re Matter of Cont'l Ill. Secs. Litig.,* 732 F.2d 1302, 1310 (7th Cir.1984). In this case Respondents have failed to meet the standards and proof of burden for showing good cause, and the Panel is required to provide rigorous justification.  Establishing good cause requires a party to present "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). In re Bank One Securities Litigation, 222 F.R.D. 582, 586 (N.D.Ill.,2004) Respondent's motion fails even

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 15

to show the slightest demonstration of fact, and cannot be supported by their attempts to make broad and conclusory statements that fail, outright as a matter of law.

Respondent's request and proposed October 18th 2019 order is so ludicrously broad as to "seal whatever you want," and it fails to demarcate a set of documents clearly entitled without further inquiry or showing of Good Cause to confidential status. The order is not limited to trade secrets, or even to documents that are marked as proposed as confidential. Instead of proposing a reasonable order, Respondents fail to even recognize that all that would be required to protect a party's interest in trade secrecy would be redaction of portions of the document.  The more commonly used Stipulated Protective Order for trade secrets, Claimant has no objections to, attached as Exhibit 1 to this Motion, which allows for minimal redactions, upon showing of good cause for trade secrets.

## 9. Respondents fail to show "Good-Cause"

Respondent's motion does not meet the sufficiency test to be granted for confidentiality orders. is not supported by law. The proposed overreaching order by the Respondents, doesn't just seek to protect legitimate trade secrets, but attempts to place a blanket umbrella order on every trivial statement made, in manner that exceeds public policy, is overreaching and fails to meet the legal standards of the Courts, that good cause has been shown, and no attempt for justification has been made.

Even if the Respondent's had shown good cause (which they have not). the Panel then must still provide rigorous justification and balance the public's interest in access to the record against the interest of the party seeking confidentiality to determine whether to seal the record; if there is any doubt as to whether the material should be sealed, it is resolved in favor of disclosure. Fed.Rules

Civ.Proc.Rule 26(c), 28 U.S.C.A. In re Bank One Securities Litigation, 222 F.R.D. 582 (N.D.Ill.,2004) There is a strong presumption toward public disclosure of court files and documents, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), as the "public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding," *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994). Public disclosure is justified further by the First Amendment. *Globe Newspaper Co.,* 457 U.S. at 603, 102 S.Ct. 2613.

Respondents have not identified with any specificity one piece of confidential information, why it is confidential, how their competitive advantage could be harmed, and not identified any form of injury or competitive disadvantage.

## 10. LEGAL PRINCIPLES

### I. Burden of Proof on Respondent

Respondents have failed to meet the burden of proof to show good cause to grant their proposed confidentiality Order. The party seeking a protective order to prevent his opponent from disclosing documents obtained in any litigation  has the burden to show good cause for the order's entry. *Hitz Entm't Corp. v. Mosley*, No. 16 C 1199, 2017 WL 444073, at *3 (N.D. Ill. Feb. 2, 2017); *Global*, 133 F.Supp.3d at 1084. **That burden is a heavy one.** *In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, No. 14 C 5696, 2016 WL 6599947, at *2 (N.D. Ill. Nov. 8, 2016). (*Emphasis added*)

To demonstrate good cause, the movant must show that disclosure would result in a "clearly defined and serious injury." *Hitz*, 2017 WL 444073, at *3; *Global*, 133 F.Supp.3d at 1084 (internal

quotation omitted); *The Boyd Grp. (U.S.), Inc. v. D'Orazio*, No. 14 C 7751, 2015 WL 5445751, at *1 (N.D. Ill. Sept. 15, 2015); *Handy Andy*, 199 B.R. at 380. The injury must be "**significant, not a mere trifle**." *Global*, 133 F.Supp.3d at 1084 (internal quotation omitted). In re Caesars Entertainment Operating Co., Inc., 584 B.R. 847, 851 (Bkrtcy.N.D.Ill., 2018). In their barebones motion, Respondents do not even make one cursory attempt to identify what the specific harm, how it could be significant,  and they have not explained or as mandated identified how they could suffer any "clearly defined and serious injury". (not a mere trifle). Their motion is therefore prohibited under fundamental principles of law.

## II. Touchstone of Requirement showing of Good Cause

Further, completely vacuous in the motion, is that the Respondent's fail to proffer any supporting evidence or showing of "good cause" or attempt to identify the degree of protection required on distinct pieces of information. This is further grounds for denial on its face. "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and **what degree of protection is required**." *In re Zyprexa Injunction,* 474 F.Supp.2d 385, 415 (E.D.N.Y.2007), *quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.' " *In re Zyprexa Injunction, supra,* 474 F.Supp.2d at 415.  Claimant  objects to the overreaching  and overly broad, confidential treatment of all and sundry of un-marked documents without showing of good cause, in an order that is so overreaching it also seeks to circumvent regulatory compliance laws for disclosure under the Commodities Exchange Act, and compliance for example with Hedge Fund disclosures for due diligence. The Respondents 2 page motion, fails in its entirety in failing to meet the burden of proof of establishing Good Cause.

The burden of establishing good cause lies with the party seeking to prevent the disclosure of documents. *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir.2004); *In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* ("Wright, Miller & Marcus") § 2035 (2d ed.2008). In re Parmalat Securities Litigation, 258 F.R.D. 236, 242–43 (S.D.N.Y.,2009)

The Respondent's tellingly short motion cannot articulate any justification, and their proposed Order does not even include the need for showing of good cause, and attempts to give them carte-blanche access to allow them to "seal whatever they want" without justification. Courts are to not accept as suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret. **Such an order is invalid.** E.g., *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996); *Pepsico, Inc. v. Redmond, supra,* 46 F.3d at 31; *City of Hartford v. Chase,* 942 F.2d 130, 135–36 (2d Cir.1991). ("Emphasis added"). This causes their motion to fail at the outset.

### III Respondent's fail to show specific demonstration of fact

Respondents motion further fails, as they completely neglect to - and do not even remotely attempt to - make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A. In re Parmalat Securities Litigation, 258 F.R.D. 236 (S.D.N.Y.,2009). The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; **broad allegations of harm**

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 19

**unsubstantiated by specific examples or articulated reasoning fail to satisfy the te**st. *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986); *Schiller v. City of New York,* 04 Civ. 7922(KMK)(JCF), 04 Civ. 7921(KMK) (JCF), 2007 WL 136149 at \*5 (S.D.N.Y. Jan. 19, 2007), *quoting In re Terrorist Attacks on Sept. 11, 2001,* 454 F.Supp.2d 220, 222 (S.D.N.Y.2006); *Blum v. Schlegel,* 150 F.R.D. 38, 41 (W.D.N.Y.1993) ("The party seeking protection from disclosure has the burden of making a particular and specific demonstration of fact, as distinguished from **general, conclusory statements revealing some injustice, prejudice, or consequential harm that will result if protection is denied**."); *see also Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944–45 (2d Cir.1983) (Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes."). Respondent's don't even make a superficial attempt to achieve this goal and their motion should be denied as a matter or law.

## IV. Respondents Fail to Make a Showing of Harm.

Further, following *Lugosch v. Pyramid Co. of Onondaga,* the district courts that have addressed the issue have required that parties seeking to maintain documents submitted in connection with summary judgment motions under seal make **a specific showing of harm**. *See Std. Inv. IV,* 621 F.Supp.2d at 73 (requiring showing that disclosure will result in a clearly defined, specific and serious injury); *Prescient Acquisition Group, Inc. v. MJ Pub. Trust,* 487 F.Supp.2d 374, 375 (S.D.N.Y.2007) (requiring party seeking to maintain documents under seal to "identif[y] with particularity (*i.e.* page and line) the precise information ... which the party maintains should be kept under seal" and "demonstrat[e] the particular need for sealing the information"). Courts have routinely failed to grant

protective orders, unless Respondents make a specific showing of harm that is necessary to overcome the presumption of access here. Here in Respondent's October 18th 2019 motion, only broad, unsupported, conclusory allegations are presented in one sentence that are "stereotyped conclusory statements" and "broad allegations of potential harm" without any supporting facts, and are speculative, non-specific, should be flatly denied.

Furthermore, because the Respondents have failed to make a specific factual showing of the harm that would result from the disclosure of certain information in each document, and their failure to provide even one citation to a case that involved sufficient showings of potential harm, their scantily filed, motion is legally deficient, cannot fill the gap, and must be denied.

## V. Conclusory allegations are denied

The movant's showing must consist of "a particular and specific demonstration of fact," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *see also Global*, 133 F.Supp.3d at 1084, supported, if possible, by "affidavits and concrete examples," *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009). "[S]tereotyped and conclusory statements," *Gulf Oil*, 452 U.S. at 102 n.16, 101 S.Ct. 2193, *852 such as "broad allegations of potential harm or competitive injury," *Global*, 133 F.Supp.3d at 1084 (internal quotation omitted), are not enough. Neither are allegations of injury that are "speculative." *Boyd Grp.*, 2015 WL 5445751, at *1. All doubts about whether material should be kept confidential must be resolved in favor of disclosure. *Hitz*, 2017 WL 444073, at *3; *Global*, 133 F.Supp.3d at 1084. In re Caesars Entertainment Operating Co., Inc., 584 B.R. 847, 851–52 (Bkrtcy.N.D.Ill., 2018) Respondents have not made the necessary showing.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 21

## 11. Respondents Itemized Failures.

*First*, Respondents have not done enough to specify the documents in question. Their sparse motion describes the information simply as "confidential treatment of documents"  Respondents do not supply more detail about which documents they want to protect, neither do they attempt to divide them into categories, and the classification is so overly broad as to be wholly uninformative and unsupported in law. Respondent vague, and conclusory language seeks to overreach and protect every form of "material in this matter."  Any information concerning "material in this matter," is too broad to be meaningful or informative.

*Second*, Respondents have failed to demonstrate how these documents are confidential. The motion asserts they constitute "competitive confidential information". That is no more than a conclusion; the motion offers no facts from which the conclusion might be drawn. Respondents, (again commingling responses, when each Party has unique competitive concerns are not one commercial conglomerate) likewise assert in its reply that the documents contain "Respondents' competitive confidential information.". The Respondents do not even attempt to further elaborate how or if the documents reflect Respondent's information is highly sensitive, or how each and every single piece of information is confidential, or warrants a competitive advantage.  Failing to elaborate, and describing the information this way does not compel the conclusion that it is also confidential. It would have helped had Respondents, (on a per commercial Party basis) at least identify the business it is in and why and how a specific piece of information provides a competitive advantage and how it has treated it as confidential. But it has done neither, making it impossible to evaluate whether the information is the kind such a business would ordinarily keep confidential.

Nor have Respondents (either collectively or individually) asserted that they take any particular measures to keep the information confidential. *Cf. Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (accepting claim of confidentiality where movant furnished an affidavit describing in detail efforts to keep information secret). Respondents in their deficient October 18th 2019 motion, failed to provide one affidavit, and one piece of supporting evidence that the information provide competitive advantage (broadly reaching to every single piece of evidence and materials), and have further failed to identify on a per party basis, any particular measures they take to keep the information confidential. For example ADMIS fails to identify how another FCM could gain a competitive advantage, in knowing the phone bills between ADMIS and Claimant. Entire Customer Agreements are not confidential, neither are routine IB agreements or service provider agreements, and neither are the pricing terms therein, especially if they are three (3) years old. Respondents even seek to protect information publicly available on ADMIS' website.

*Third*, Respondents have expressly failed to show that disclosure of the information would cause each or any of their entities harm. Respondents only provide conclusory allegations in the motion that disclosure would cause damage to its competitors. Their concerns about third parties do not rise to the level of "competitive advantage", Respondents are required to show the harm done to its competitors, in their requests for confidentiality. Respondents fail to identify specific injury from their competitors, and do not specify how they can be harmed.

This, too, is unsupported and no more than a conclusion—a "broad allegation[ ] of potential harm or competitive injury," *Global*, 133 F.Supp.3d at 1084 (internal quotation omitted), not the "particular and specific demonstration of fact" necessary to obtain a protective order, *Gulf Oil*, 452 U.S. at 102 n. 16, 101 S.Ct. 2193. Respondents have not explained *why* disclosure of the information

(assuming the documents actually contain it, something Respondent's vague descriptions do not establish) would cause any one of the Respondents, ADMIS, High Ridge or LCI the requisite "clearly defined and serious injury." *Hitz*, 2017 WL 444073, at *3.

Respondents have furnished no "affidavits" or "concrete examples" supporting their superficial and nebulous allegations of harm. *Arvco*, 2009 WL 311125, at *5. Because Respondents, and neither separately commingling the businesses of ADMIS, High Ridge and LCI, who presumably have distinct competitors, neither of the Respondents have not seen fit to identify its which aspects of each of their individual business's operations would be harmed by a competitor, and it is further unclear and certainly omitted Respondents claims to why or whether any aspect of the business might conceivably require secrecy. It is not even evident that Respondents *have competitors* who might profit from the information. *See Andrew Corp.*, 180 F.R.D. at 342 (denying motion for protective order in part because movant failed to provide the court with more than "a limited understanding of the background facts").

In short, Respondents' bald conclusions about the confidentiality of the information and the threat of harm from its disclosure simply do not demonstrate the "good cause" necessary for entry of a protective order—especially in light of the over-reaching broad categories of documents it wants to protect. Courts have routinely refused to enter "umbrella" protective order that would keep confidential "extremely broad categories" of material where movant offered no more than "conclusory assertions" of "competitive harm". Far more is necessary. *See* In re Caesars Entertainment Operating Co., Inc., 584 B.R. 847, 852–53 (Bkrtcy.N.D.Ill., 2018) In conclusion, the combined motion of all Respondents for a protective order should be denied.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 24

### 12. Respondents Cannot argue "Illegal and Fraudulent Activity"

Finally Respondent's apparent desire to seal all information, because it would expose illegal and fraudulent activity, or expose ADMIS for fraudulent and deceptive business practices as Claimant has alleged in its twenty four claims, is not sufficient  good cause. In fact, this is precisely the reason that Courts do not permit such overly broad sealing orders. "The fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order." *Id.; see also Salomon Smith Barney, Inc. v. HBO & Co.,* 98 Civ. 8721, 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (denying motion to remove documents from the public court file where "[the movant]'s real concern is the possibility of public embarrassment.").

In the Court of Appeals' discussion in *In re "Agent Orange"* about the need for public access was in that case due to the unique public health risk posed by defendant's product. While no such health risk is involved here, the presumption in favor of a public proceeding which exists in all cases is heightened by the public's interest in the behavior of a large FCM impacting the finances and confidentiality of data of a huge number of people, market participants and CTA's. Moreover, large numbers of people may have been and may still be unknowingly paying significant fees and commissions they never authorized or approved to Howard Rothman and Robert Boshnack, owners of the disbarred entity Vision Financial Markets they believe were expelled. Further these fees are being charged in violation  of the Commodities Exchange Act, and other interstate wire fraud. Potentially large sums of money are involved in the aggregate cases of customers, the sum does not alter the principle that everyone has a right to know *what* they are paying for, *who* they are paying. In fact that was mandated by the NFA in the June 20th 2014, that customers had a right to know that High Ridge Futures, was previously the Vision Financial Markets, LLC.

Not only does the public have the right to know about financial fees being used to pay Robert Boshnack, Howard Rothman and High Ridge, most outrageous and diabolical of all, is that public has the legal right to know that all their confidential and private customer and trading data has been disclosed and continues to be disclosed to Vision Financial Markets, LLC, Howard Rothmand and Robert Boshnack, and a competing CTA Vision Investment Advisors. In the case of competitive CTA's who's entire commercial livelihoods depend on the independent economic and commercial advantage of their trading strategies, it is a public matter of antitrust laws and unfair competition, that the CTA's have a right to know that Robert Boshnack Howard Rothman, and High Ridge Futures have been granted full disclosure to their trading strategies in violation of not just NFA Rule2-4 Int Notice 9061 but the Federal laws of the Defend Trade Secrets Act – the ultimate betrayal of a CTA's significantly valuable trade secret data by ADMIS. These CTA's have a right to know.

The interest in disclosure is very high in this case. If publicizing the information—even if incomplete and taken out of context—could reveal to many innocent and trusting customers and CTA's, who are not now cognizant that they pay an additional $3-$10 a trade to Robert Boshnack, Howard Rothman and High Ridge, or 0.50 cents a side to Vision's owners for CTA's, and true nature of ADMIS's the fraudulently concealed, dissemination of their confidential and private customer data and financial trading records without their knowledge and consent to High Ridge Futures and their owners who run competing CTA's, then such publicity could only be positive. Gelb v. American Tel. & Tel. Co., 813 F.Supp. 1022, 1035–36 (S.D.N.Y.,1993)

Further, Claimant argues that any impacts to seal or unseal documents for actions that lies outside of the jurisdiction of the Panel in this NFA Arbitration Forum (such as class actions where the jurisdiction of sealing lies in Federal Court), and the Panel is not authorized to, and it would vastly

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 26

exceed the Panel's authorities to expand its reach to outside the four corners of this NFA Arbitration Forum.

Claimant also expresses vast concerns of the NFA's role in this case itself, and any attempts of fraud and aiding and abetting internally at the NFA, as well as approvals granted by the NFA to partake in the alleged conduct, and the NFA's own vested interest in the outcome of this proceeding to shield their own liability, would raise other grounds for appeal, by implementing over-reaching, legal unsupported orders that violate public policy. Claimants business has been seriously damaged by Respondent's misconduct. For these reasons, Claimant's proposed Exhibit 1, adequately addresses any short term legitimate need to protect Trade Secrets with a showing of good cause only from competitive disclosure, but does not attempt to exceed the NFA Arbitration Forum, or limit either party's natural rights, remedies in equity or law, or interfere with compliance with any rule, regulation or law.

## 13. Respondents fail to identify Trade Secrets

Respondent's motion also fails to distinguish the trade secrets, which genuinely ought to be protected from public disclosure. Although a business's information need not be a "true" trade secret in order to warrant protection from disclosure under Rule 26(c), *e.g., Gelb v. Am. Tel. & Tel. Co., supra,* 813 F.Supp. at 1035, trade secret law is instructive in gauging whether information constitutes sensitive business information that courts should shield from public scrutiny. *See SEC v. TheStreet.com,* 273 F.3d 222, 231 n. 10 (2d Cir.2001) (identifying trade secrets as example of type of information entitled to protection). Under applicable law, the definition of the term "trade secret" in a federal action is based solely on federal law claims, both state and federal courts have routinely applied the six factors set forth in the Restatement (First) of Torts § 757, comment b, when

determining the existence of a trade secret: (1) the extent to which the information is known outside

of [the] business; (2) the extent to which it is known by employees and others involved in [the]

business; (3) the extent of measures taken by [the business] to guard the secrecy of the information;

(4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or

money expended by [the business] in developing the information; (6) the ease or difficulty with which

the information could be properly acquired or duplicated by others. *United States v. Int'l Bus. Machs.*

*Corp.,* 67 F.R.D. 40, 46 n. 9 (S.D.N.Y.1975), *citing inter alia Speedry Chem. Prods., Inc. v. Carter's*

*Ink Co.,* 306 F.2d 328 (2d Cir.1962); [1]

The six factors assist the courts in determining whether information is "sufficiently valuable

and secret to afford an actual or potential economic advantage over others." *Wiener v. Lazard Freres*

*& Co.,* 241 A.D.2d 114, 123–24, 672 N.Y.S.2d 8, 15 (1st Dep't 1998), *quoting* Restatement (Third)

of Unfair Competition § 39 (1995); *accord Trump's Castle Assocs. v. Tallone,* 275 N.J.Super. 159,

645 A.2d 1207, 1208 (N.J.Super.Ct.App.Div.1994); *see* Restatement (First) of Torts § 757, cmt. b

("A trade secret may consist of any formula, pattern, device or compilation of information which is

used in one's business, and which gives him an opportunity to obtain an advantage over competitors

who do not know or use it.").

In order to be sufficiently valuable and secret, the information must not be "commonly known

to the trade in which the putative trade secret owner is engaged." 1–1 Milgrim on Trade Secrets §

---

[1] *see also Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,* 154 F.Supp.2d 586, 606 (S.D.N.Y.2001); *Andrew Corp. v. Rossi,* 180 F.R.D. 338, 341 (N.D.Ill.1998); *Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 556 (E.D.N.Y.1995); *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md.1987); *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 28–29 (E.D.Mich.1981); *Monaco v. Miracle Adhesives Corp.,* Civ.A. 76–2373, 1979 WL 200011 at *1 (E.D.Pa. Aug.21, 1979); *Ashland Mgmt. Inc. v. Janien,* 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1013, 604 N.Y.S.2d 912, 918 (1993); 1–1 Milgrim on Trade Secrets § 1.01 n. 3 (Lexis 2009) (collecting cases for nearly every state).

1.07; *accord Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475, 94 S.Ct. 1879, 40 L.Ed.2d 315

(1974) (The information in question "must be secret, and must not be of public knowledge or of a

general knowledge in the trade or business."); *Speedry Chem. Prods., Inc. v. Carter's Ink Co., supra,*

306 F.2d at 331 (The information must not be "of general knowledge in an industry."); *quoting*

Restatement (First) of Torts § 757, cmt. b;

Respondent's overly broad motion fails to address the necessary and requisite protections for

Trade Secrets, - which need to be duly identified and marked with a  necessary showing of good

cause, and for the reasons above should be flatly denied. Claimant does not object to the Stipulated

Protective Order that narrowly protects the disclosure of well defined Trade Secrets, being disclosed

to competitors, that could create a well defined competitive loss of economic advantage. In the failure

of Respondents to meet the six-factor test to identify trade secrets, Claimant opposes that any of the

information rises to the level of Trade Secret and that all items should be unsealed.

A party wishing to seal materials has the burden to show good cause as to why the material

should be concealed from the public. *See Parmalat,* 258 F.R.D. at 241. Courts can seal "business

information that might harm a litigant's competitive standing" in the market. *See id.* at 244. Claimant

has identified legitimate Trade Secrets, namely the trading statements of the parties.

### 13. Failed to Protect Claimant's Trade Secrets or Distinguish Trade Secrets

Further Respondent's prior actions to produce Claimants trading statements on October 8th

2018, without any demarcation of trade secrets or confidentiality, further constitutes a waiver in their

actions to disrespect the confidential and trade secrets of others. Since they have wantonly disregarded

the confidential and trade secret nature of Claimant's trading statements and trade secrets, Claimant

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 29

asserts that this action constitutes a waiver, for them assert protections on their own supposed trade secret information without any showing of good cause.

Simply put, Respondents were more than willing to banter around Claimants and other CTA's and other people's highly sensitive and genuinely valuable commercial confidential and trade secret data, so Claimant objects to a hypocritical motion being granted, when such lack of sensitivity was not reciprocated when others legitimately needed it. Further in their disregard of other parties commercially sensitive information, Respondents, failed to designate and clearly identify Claimants Trade Secrets, failed to treat Claimant's trading statements as highly sensitive and commercially sensitive information. By their own contradictory actions,  Respondents have been more than willing until this Order 9, to freely distribute and disseminate Claimant's trade secrets to its competitors, in wanton disregard for Claimant's rights.

Further Claimant is genuinely concerned and believes that Respondent's ongoing disregard for Claimants and other CTA's and customers, private, confidential and trade secret data, including its trading strategies is inadequately addressed in their proposed draft. Respondents have already violated their own proposed order, by sharing Claimant's trade secrets with unnamed witnesses and experts, (testifying and non-testifying) without any governance and controls, in further violation of the law. Therefore this must be addressed by the Panel, in the express disclosure of Trade Secrets to non-parties, and expert witnesses who could use a party's trade secrets, specifically trading strategies in a competitive environment, and Respondents have materially failed to address the competition. Claimant's proposed Stipulated Protective Order, therefore directly addresses the disclosure to Expert Witnesses.

Therefore Claimant has specifically, given the substantial economic harm of trading strategies being disclose to competitors, the higher level of protection for Attorney's Eyes Only, for trading strategies and trading statements. Respondents, are believed to have disregarded this aspect, and may have already freely disseminated Claimant's trading strategies to competitors and multiple unknown Experts, which Claimant requires to be properly vetted. The Respondent's proposed order is materially deficient as it fails to address this legitimate concern.

## 14. Claimant is Not a Competitor

Respondents also fail to distinguish any specific harm a competitor good gain from the information. Claimant is not a competitor of ADMIS a registered FCM, not is Claimant ever expecting or desiring to become an FCM or IB, as are High Ridge and LCI. Therefore Claimant is not a competitor of the IB.  Further, Respondent's fail to show how the information, which is routine IB agreement, would cause a competitor of ADMIS, and FCM any commercial harm. Routine IB's agreements are not themselves trade secret. In support of this, ADMIS and LCI already supplied an unsigned version of the IB Agreements. Likewise, guarantee agreements and risk management agreements, or any other service provider agreements, themselves are not "trade secret". Respondents do not identify how a competitor of ADMIS or High Ridge of LCI could gain a competitive advantage by viewing a routine service provider agreement. They fail to even explain how the service provider agreements to an FCM would cause "significant injury" and quantifiable harm.

Therefore the Panel's limited order to produce routine services and IB agreements are not standard to be considered "Trade Secret" or highly sensitive. Respondents have made absolutely no showing or cursory explanation of how this would significant injury or harm in the market place.

Their failure to show good cause, and any specific and direct showing of harm, and resting their claims to withhold information on broad and conclusory allegations is grounds for denial. (As explained supra)

### 15. Orders Related to Expert Witnesses are at this stage Premature

Further Claimant argues that the binding of disclosures to experts and third party witnesses at this stage is premature. Respondents proposed motion is deficient in addressing proper disclosures of trade secrets to Experts and competitors. Claimants initial suggestion  is that a  Stipulated Protective Order, for legitimate Trade Secrets, be properly drafted only AFTER initial discovery is completed.

Instead, Respondents are now attempting to embroil the Parties, prior to discovery in lengthy debate on disclosure of Trade Secrets to experts, and what is disclosed is premature and seeks to add undue burden at an early stage of discovery. Respondents new tactic, is to subject all parties to a long and protracted debate requires a proper discussion and negotiation on experts disclosure rights after they waived their objections under Rule 7(a)(4))

Claimant argues this attempt as premature and is an obstacle to NFA Rules 7(a)(2) which does not permit such conduct for initial discovery. Respondents were and are obligated to turn over this material timely, and not embroil the parties in endless motion practice on all possible permutations of experts and witnesses, without showing even one good causes of what rises to the level of a trade secrets. This stall tactic should be decried.

### 16.  Rule 7(a)(2) is designed to be prior to Discovery

Claimant respectfully reminds the Panels of some of the uniqueness and specific provisions in NFA Arbitration Rule 7(a)(2) that sets forward an auto-exchange (prior to the appointment of a

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 32

Panel) so that the parties can exchange mandatory information set by the Panel. There is no procedure therein, for either side to withhold documents based on any notion of confidentiality, since the documents being shared, the NFA Board has already determined are pre-requisite to be shared prior to discovery.

Further, all the pricing information and fees charged to Claimant's account are mandatory to be disclosed under the NFA Compliance Rules. There is no provision under the Commodities Exchange Act for Respondents, under NFA Rule 7(a)(2) to obstruct and deny Claimant's access to full transparency to all the fees, pricing and billing, down to the dollar and cents that were deducted and charged to its account. The disclosure of that information is mandated under the CEA, CFTA Rules and NFA Mandatory disclosure rules of CTA's, as well as other Federal and Securities laws. Therefore that information is not trade secret of Respondents, and in fact is mandatory as belongs to information of Claimant's account. That information should have rightfully been disclosed prior to account opening (*See* NFA Compliance Rule 2-26 / CFTC Regulation 33.7 (b) (2)). 33.7 (c)/CFTC 1.55(k)(l) and also NFA Compliant Rule 2-4  Interpretive Notice 9005**)**

Therefore the Commodities Exchange Act, itself, does not permit any of the redaction in the agreements disclosing pricing and fees charged to Claimant on its account. Any proposed redactions of these should be denied for violations of the CEA.

The Respondents proposed draft and redactions also, sees to circumvent the mandatory disclosure requirements of fees, pricing, and rules applying to CTA's and CPO's for maintaining full transparency of disclosures on their account and should be denied as void under law.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 33

## 17. Proposed Order Fails to Address Regulatory Compliance

The proposed language by Respondents, also attempts to circumvent numerous disclosure requirements and compliance of CTA's and CPO's with NFA, CFTC and Commodity Exchange Act regulations, as well as restrict parties rights to their natural rights and remedies under the law.

For example NFA Rule 2-4 Interpretive Notice 9014 has already identified it opposes restrictive language, proposed by Respondents.  NFA Rules also state that "*An agreement containing language restricting the release of information to regulatory or law enforcement agencies may also be found to be void as against public policy by state courts. The public policy concern is implicated because the scope of this language goes beyond the private rights of the individuals involved by discouraging the release of information and potential evidence and interfering with the process of justice.* " The proposed language also fails to address subpoenas, regulatory compliance, compliance with AIMA and CPO and Hedge Fund disclosures, investor and securities laws for disclosure, investor due diligence requirements, operational due diligence requirements and also a CTA's and CPO's own requirements to comply with rules, regulations and laws. Any Order that violates public policy, rules, regulations and laws would be invalid and exceed or overreach that Arbitrators jurisdiction, and greatly exceeds the jurisdiction and reach of this Arbitration, and other than the need for a limited need for a Protective Order to seal Trade Secrets for good cause.

Claimant does not oppose a narrowly focused Stipulated Protective Order, protecting only legitimate well-defined Trade Secrets, (as provided for in Exhibit 1) Claimant opposes any proposed order that should restrict or limit the rights and remedies or compliance with the rules, regulations and remedies, or its rights under law.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 34

### 18. Current Draft Is Unacceptable and Contains Drafting Errors

Even if the Panel, were to grant further lenience to Respondents to comply with late filed objections, and mandatory time schedules, the proposed document as drafted is overly broad and overreaching. The Respondents proposed Exhibit A is inaccurately drafted, contains multiple legal inconsistences, has multiple drafting errors, does not comply with legal standard for good cause, and violates public policy, rules, regulations and compliance laws. Further the proposed draft, has the sole purpose of trying to limit Claimant's rights to its fundamental rights to freedoms and natural justice. It also expressly violates rules, regulations and laws in the Commodities Exchange Act, and even proposed language under the NFA Rules such as NFA Rule 2-4 Interpretive Notice 9014 where broad overreaching orders, that do not allow compliance with the regulators are prohibited. The proposed draft Order in its current form, would be foreseeably overturned and rejected on remand or appeal. The law denies parties to have carte blanche discretion to seal whatever they want and without any showing of good cause– that order is invalid (*See* Proctor and Gamble).  Claimant objects in its entirety to the proposed draft. Most importantly, the unacceptable draft fails to comply with widely and broadly accepted law standards, (even by the Respondents 1993 case) that provides for a narrowly tailored confidential proceeding that requires a showing of supported good cause. Model Protective Orders, all have a requirement of *good cause*, which Respondents' intentionally fail to include, because there is *no good cause*, which would be an overreaching step in this Arbitration.

Further, Claimant objects to the facts that there are enumerate drafting errors, and legal inconsistencies as described herein which have added unnecessary cost, burden and time to this proceeding in production. Entering the parties into a protracted debate, in order to hold up production, is burdensome, time consuming and unnecessary and seeks to delay Claimant's right. Further, as

stated above, Respondents, were obligated to raise objections to the Auto-Exchange three (3) times, first on October 15th, 2018, again on June 28th 2019 and had a final third attempt on September 26th 2019. Each time they failed to raise objections, and therefore these rights have been waived.  The NFA Rules are clear there are no late filed objections and this motion should in the alternative be denied.

### A. Umbrella Orders Not Allowed

Firstly the Proposed Language in Bullet 2, is overly broad, and is inconsistent with the rest of the document as is legally insufficient and inaccurately drafted as Bullet 2, intentionally does not include Confidential Information, but seeks to place a blanket "Umbrella Order" or blanket order on every single statement, item, or document even made. Courts are to not accept as suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret. **Such an order is invalid.** E.g., *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996); *Pepsico, Inc. v. Redmond, supra*, 46 F.3d at 31; *City of Hartford v. Chase*, 942 F.2d 130, 135–36 (2d Cir.1991). ("Emphasis added").

Respondent's overly broad and legally over-reaching drafted, seeks to protect "*All materials produced or adduced in the course of discovery, including disclosures, responses to discovery requests, exhibits, electronic information, testimony, and information based on, derived or summarized therefrom, shall be subject to this Order.*" The foregoing does not have any demarcation of confidentiality, or any  legal standard of  what constitutes protectable information or any need for the requirement to show good cause.  This does not even begin to rise to the level of Confidential Information. The Respondents draft fails to include any definition of Confidential Information.

Further there are legal inconsistencies in drafting between Bullet 2, which attempts seeks to protect a blanket umbrella order of non-confidential information (without the showing of good cause) and then is legal not drafted to be consistent to differentiate any conditions under the also overly broad and overreaching definition of Bullet 3 of supposed "Confidential Information". Therefore the proposed document itself is inadequately drafted,  unusable and should be disregarded.  Failing to even identify good cause, or provide one piece of supporting fact, document of evidence of specific harm, also fails under law.

B.  Good Cause Language Is Missing from the Draft

Most importantly, the Respondents draft is fatally flawed in that it fails to require a showing of good cause and attempts to circumvent the Panel's need for rigorous justification and review of the need for good cause. "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.' " *In re Zyprexa Injunction, supra,* 474 F.Supp.2d at 415. This renders the proposed draft invalid.   The burden of establishing good cause lies with the party seeking to prevent the disclosure of documents. *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir.2004);

Even if good cause is shown for a protective order sealing the record, a court then must balance the public's interest in access to the record against the interest of the party seeking confidentiality to determine whether to seal the record; if there is any doubt as to whether the material should be sealed, it is resolved in favor of disclosure. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A. In re Bank One Securities Litigation, 222 F.R.D. 582 (N.D.Ill.,2004)

Respondents motion further fails, as there proposed draft also completely neglects to and does not required to make a particular and specific demonstration of fact showing that disclosure would result

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 37

in an injury sufficiently serious to warrant protection. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A. In re Parmalat Securities Litigation, 258 F.R.D. 236 (S.D.N.Y.,2009)

## C.  Legal Inconsistencies, Arbitration and Appeal –

Equally important, is that the proposed draft contain numerous drafting errors and legal inconsistencies rendering the document unusable. For example, in Bullet 2, which defines purpose as "Arbitration", the drafting directly conflicts with the drafting in Bullet 10, which clearly contemplates the Respondent's intention and likelihood to file for Appeal under the Federal Arbitration Act in Court, and states "conclusion of Arbitration and any **appeal** thereof". Legally incorrect drafting would render the document as inconsistent.

Claimant requires a modification to both Bullets 2 and Bullets 10, which includes language that states "Nothing herein shall restrict either party's rights available in equity and law, for prosecution, defense or settlements of its claims, in all legally permitted forums, including but not limited all appeals, alternative legal proceedings, re-hearings, regulatory hearings, enforcement actions, remands, trials, or reviews of this action, **or as otherwise permitted under rules, regulation or law,** including the time limits for filing any motions or applications for extension of time pursuant to applicable rules, regulations or law."

## D.  CEA Disclosures - Violation of Commodities Exchange Act

Respondent's overreaching and inadequate draft, also violates the natural rights of Claimant for its own compliance with the Commodities Exchange Act, and CFTC Rules,  and its obligations to

disclose to potential investors in the Nefertiti STORM Fund, LP, which has suffered a brutal attack by Respondents.

This language, therefore violates the disclosure requirements of a CTA and CPO, which makes it illegal to materially omit from disclosures any legal proceedings, arbitrations, and makes it illegal to materially omit any information, sought by an investor, related to the STORM program Therefore the proposed language, is a violation of the Commodities Exchange Act, the CFTC Rules and is void (illegal) under law. Any ruling that violates CFTC Rules and the CEA would be a board exceedance of the Arbitrators powers, and subject to Appeal.

Respondents' overly broad and unacceptable draft, also seeks the destruction of materials obligated to be preserved for a minimum of five (5) years, which is the requirement under the CFTC Rules for protecting documents.  Claimant therefore opposes the language in Bullet 10 which attempts to circumvents the CEA and CFTC Rules, for preservation of documents, and requires the following alternative language. Further under industry standard AIMA due diligence for hedge funds, Claimant is routinely requested to disclose proceedings as far back as ten(10) years, and failure to comply with Operational Due Diligence would cause significant harm and deterrent to investors. Respondent's overreaching and overly broad, unsupported order, would cause financial damage and harm to Claimant in restricting its ability to comply with the rules and laws and disclosures and raise capital.

Further in accordance with the Commodities Exchange Act, and rules for Hedge Funds, Claimant is entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports,

attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in.

As stated supra, the proposed language also attempts to circumvent NFA Rule 2-4 Interpretive Notice 9014 which prohibits orders which don't have adequate language for  enforcement and compliance.

E.  Burdensome, Time consuming and Unnecessary.

Further this proposed draft seeks to increase time for discovery. The need to respond to this invalid, and unsupported motion is also burdensome, time-consuming and unnecessary to hold up early stage discovery, on items Respondent's were well aware for over a year that needed to be produced. The timing of this was deliberately intended to wrench timely production and disrespects and violates NFA Orders of schedules dating back to August 6th 2018.

If Respondents had legitimate concerns with Stipulated Protective Orders, those concerns should have been addressed timely prior to discovery due on October 15th 2018, and certainly not later than the Panels rest of the schedules. The proposed draft is also burdensome, and has created unnecessary work for Claimant, in the midst of genuine discovery since the draft was inadequately and drafted in an manner that totally unacceptable, and sort to circumvent case law, and Claimant's natural rights. Such conduct should be noted as obstructive to timely production.

Respondent's showed bad faith in not narrowly tailoring an order to good cause, and protected Trade Secrets, attempting to "slip past" an umbrella order, which is invalid under law, and that Claimant objects to, and that contravenes numerous fundamental rights in accordance with the

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 40

Commodities Exchange Act, rules, regulations and laws.  Even if the Panel were to accept that there was a legitimate need for some order of Trade Secret protection, the proposed draft is so poorly drafted, it needs to be rejected in its current formed and opposed outrights as denied. The following iterated multiple oversights, omissions, legal inconsistencies and drafting errors that are objected to. Not only is this language, insufficient and inadequate, Claimant opposes the language that exceeds the Arbitrators authority, and seeks to limits either parties natural rights, remedies, and oversights under the law. Also the period of disposition should be after any final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

### E. Proposed Order Violates Rule 6(a)

NFA Rule 6(a) is clear that a party can retain or appoint counsel at any time. Respondents overreaching order that attempts to seal each and every piece of information in existence, in a non-discriminate fashion and then attempts to prevent Claimant from speaking to counsel (as it is Pro-Se) unless they appear on the record, violates NFA Rule 6 and once again attempts to restrict and interfere with Claimant's legal rights to appear Pro -Se, to be assisted by counsel, to be free in its statutory rights to consult with and be assisted by Counsel, and to appoint Counsel at any time. Respondents poorly draft, overreaching, overly broad, indiscriminate order, seeks to prevent any and all information, regardless of legitimate trade secret status, or (including a copy of Claimant's own drafted complaint) being shared with counsel, which violates NFA Rule 6.

### F. Meet and Confer Provision is Burdensome - Resolution between Parties

Claimant also wholly objects to the meet and confer provisions in the Respondent's proposed draft. It is extremely unlikely, given the current embattled proceeding, the parties will ever reach

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 41

agreement on issues without the Panel or Judicial intervention. Therefore including a futile provision like this which will just add additional time, cost and burden to the Parties and to this proceeding is required to be adjudicated and subject to oversight by a neutral judicial process. Claimant objects to any "meet and confer" provisions, or self-regulating provisions that the Respondents again seek to control "carte-blanche" rulings. Such an order is invalid and wholly opposed. Further the proposed version, appears to given ruling decisions solely to the Chairperson and not to the Panel, and this wording also violates NFA Rules. (see For example, Respondents Bullet 7, Page 7, Paragraph 1 – seeking to deny the rights of the entire Panel to rule on Motions). This language is also unacceptable and violates NFA Rules.

## G - Choice of Law and Forum

Respondents have also attempted to overrule existing decision in the NFA Forum and attempt to usurp the venue selection and forum already selected under the NFA Arbitration Rules. This Arbitration has been selected to have a jurisdiction and venue, already determined by the NFA to be conducted in New York. Claimant's Trade Secrets are subject to New York Law. The Arbitration Panel is in New York.

Respondent's proposed draft attempts to overrule existing rulings by the NFA, as they now attempt to force the parties into a venue of Illinois. Claimant objects to any draft that overturns (without cause or fair ruling)  previous decisions of the NFA in this NFA Arbitration which has selected the forum and venue of New York, NY. (*See* NFA Letter dated March 12th 2019). Respondents unacceptably drafted proposed documents, universally seeks to override the decisions of the NFA and change the forum to Illinois. Claimant vehemently objects.

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 42

The matter has been settled that the venue and forum of this Arbitration is New York, NY. Arbitrarily and subjecting all parties to a venue and forum in New York, with a motion of applicability of law standards is also over-reaching, burdensome and the Panel has not conducted an applicability of law analysis of each parties Trade Secrets. Further Respondents, have not "defined" any Trade Secrets, and since the only identification of Trade Secrets has been by Claimant Claimant's choice of law, of Trade Secrets has been determined as New York.

Claimant opposes the venue and jurisdiction for enforcement of its Trade Secrets which is in New York. By virtue of  a hastily and improperly and legal insufficient draft, Respondents seeks to limit Claimant's procedural rights, and boldly assert Illinois Courts over New York Courts, for Claimant's Trade Secrets.

Further, in the alternative, if the Panel (located in New York) were to somehow overturn the NFA's existing decisions to apply a New York forum to this arbitration, the Panel would be obligated to conduct a full choice of forum analysis, which specifically includes an analysis of harm done, for the choice of law and jurisdiction. Since the Arbitration was selected to be conducted in New York and New York is the selected venue, Claimant requires the selection of Venue as New York

Therefore Claimant requires Exhibit A to revert to the forum already selected by the NFA "By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court."

NRCM Opposition to Confidentiality Motion
October 28th 2019
Page 43

Any ruling by the Panel to manifestly change the NFA's already selected choice of forum without the parties full briefing on the choice of forum analysis would a manifest disregard of the law. Respondents have failed to show good cause or also failed to show support for a change of Venue and Forum from New York to Illinois.

.Claimant's Trade Secrets are governed by and protected by New York law. The Venue and Jurisdiction of this Arbitration is New York. The Panel is located in New York. Therefore Claimant requires as the default the venue and jurisdiction of New York Courts applies, as already decided in this NFA Arbitration.  Therefore Claimant opposes wholly the Respondent's draft motion. Claimant has therefore submitted its own version of Exhibit 1, which honors the selection the venue, jurisdiction and forum already selected under the NFA Forum of New York.

## H. Proposed New Draft

Claimant therefore opposes the inadequate proposed draft, and has submitted its own Stipulated Protective Order suitable Trade Secret, for showing of good cause, which is attached hereto in Exhibit A, which is more consistent with the case law herein and legally accepted principles of good cause.

Respectfully submitted,

Samantha Siva Kumaran

Nefertiti Risk Capital Management