**IN THE UNITED STATES DISTRICT COURT**
**SOUTHTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, ) | |
| Et al ) | Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* ) | Judge: Hon Gregory H. Woods |
| ) | Magistrate Judge: Stewart D. Aaron |
| -against- ) | |
| ) | **PLAINTIFFS OPPOSITION TO** |
| NATIONAL FUTURES ASSOCIATION, LLC ) | **MOTION  TO DISMISS** |
| Et al., ) | **DEFENDANT KADLEC IN HIS** |
| Defendants, ) | **INDIVIDUAL CAPACITY AS CEO** |
| ) | **OF ADMIS** |

## PLAINTIFFS JOINT OPPOSITION AND MEMORANDUM OF LAW TO THE MOTION TO DISMISS AGAINST DEFENDANT KADLEC

FOR CLAIMS BROUGHT AGAINST KADLEC IN HIS INDIVIDUAL AND COMMERCIAL

CAPACITY AS CEO OF ADMIS

Respectfully submitted,

//SSK//

Samantha Siva Kumaran

Pro-Se Plaintiff

//BMA//

Brian M. August

AugustLaw NY

100 Willoughby Street #9E

Brooklyn, NY 11201

Counsel for NRCM

## TABLE OF CONTENTS

Preliminary Statement……………………………………………………………… Pg.X

Count 3 - FRAUD……………………………………………………………………Pg. 1

Count 4 – AIDING AND ABETTING FRAUD………………… ………..………………Pg. 12

Count 11 – RICO CLAIM 1962 (c)…………………………………………...……………Pg. 18

Count 12  - RICO CLAIM 1962 (d) ………………………………………...……………Pg. 23

Count 10  - CONSPIRACY………………………………………………...……Pg. 24

Count 9 – TORTIOUS INTERFERENCE…………………………………………Pg. 26

Count 7 – CONVERSION ………………………………… …………………………Pg. 29

Count 8 – AIDING AND ABETTING CONVERSION …………………………………Pg. 31

Count 5 and 6 – MISAPPROPRIATION OF TRADE SECRETS …………………………Pg. 33

OTHER ARGUMENTS…………………………………………………………..Pg.

Statute of Limitations …………………………………………………..……………Pg.38

Section 22 Claims  ,… …………………………………………………………..……Pg.38

Rule 8 .. ………….. ,… ……………………………………………………..……Pg.38

Federal Claims Not Barred  ………….. ,………………………………………..……Pg.40

Request to Replead  ………….. ,… ……………………………………….…..……Pg.41

Page iii

## TABLE OF AUTHORITIE

1 F. Harper F. James, Law of Torts § 7.14 (1956)

Aaron Ferer Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)

ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1330 (S.D.N.Y. 1997)

Accord In re Veeco Instruments, Inc. Sec. Litig., 235 F.R.D. 220, 232 (S.D.N.Y.2006)

Accord United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991)

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972)

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972);

AIM Int'l Trading, LLC v. Valcucine S.p.A., No. 02 Civ. 1363, 2003 WL 21203503, at *8 (S.D.N.Y. May 22, 2003)

Alken v. Lerner, 485 F. Supp. 871, 879 (D.N.J. 1980)

also In re Complete Mgmt., 153 F.Supp.2d at 334; In re Health Mgmt., 970 F.Supp. 192, 203 (E.D.N.Y.1997)

alsoMeyer v. Jinkosolar Holdings Co. , 761 F.3d 245, 250 (2d Cir. 2014)

Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir.1983); IIT v. Cornfeld, 619 F.2d 909, 922 (2d Cir.1980)

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007)

ATSI, 493 F.3d at 101, 105 ; Salvani, 50 F.Supp.3d at 476–77 ; Malenfant, 784 F.Supp. at 144

AUA Private Equity Partners, LLC v. Soto, No. 17 Civ. 8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)

Aviles v. S&P Glob., Inc., 380 F. Supp. 3d 221, 283-84 (S.D.N.Y. 2019)

Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)

Banque Arabe et Internationale D'Invesissement v. Md. Nat'l Bank, 57 F.3d at 153

Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)

Basic, 485 U.S. at 231–32, 108 S.Ct. 978 (1988)

Basic, 485 U.S. at 231–32, 108 S.Ct. 978 (1988)

Basic, 485 U.S. at 231–32, 108 S.Ct. 978 (1988); Kronfeld v. Trans World Airlines, Inc., 832 F.2d 726, 732 (2d Cir.1987)

Beauford v. Helmsley, 865 F.2d 1386

Page iv

Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987)

Black v. Finantra Capital, Inc. , 418 F.3d 203, 209 (2d Cir. 2005)

Brass v. American Film Technologies, Inc., 987 F.2d 142, 150-52 (2d Cir. 1993)

Brawer v. Options Clearing Corp. 807 F.2d 297, 298 (2d Cir. 1986)

Breard v. Sachnoff & Weaver, Ltd., 941 F.2d 142, 143 (2d Cir.1991)

Bruce v. Martin, 1990 WL 52180

Calvin Klein Trademark Trust v. Wachner, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000)).

Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004)

Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008)

Center v Hampton Affiliates, 66 NY2d 782, 784

Cf. MDC Corp., Inc. v. John H. Harland Co., 228 F. Supp.2d 387, 397-98 (S.D.N.Y. 2002)

cf. TSC Indus., 426 U.S. at 450, 96 S.Ct. 2126

Cf., e.g., Houbigant, Inc. v. Deloitte & Touche, LLP, 303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499 (1st Dep't 2003)

CFTC v. Sidoti, 178 F.3d 1132 (11th Cir.1999).

CFTC v. Trinity Finan. Group, Inc., Comm Fut. L. Rep. 27,179, 1997 WL 820970 (S.D.Fla. Sept. 29, 1997),

Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007)

Chiarella v. United States, 445 U.S. 222, 247 (1980)

Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994)

Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990);[1]

Commercial Data Servers, Inc. v. IBM, 166 F. Supp.2d 891, 898 (S.D.N.Y. 2001)

Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)

Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)

Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987)

Cosmas v. Hassett, 886 F.2d 8, 12-13 (2d Cir. 1989)

Cosmas, 886 F.2d at 13.

Cragie v Hadley, 99 NY 131

Page v

Curiale v. Peat, Marwick, Mitchell & Co. , 214 A.D.2d 16, 630 N.Y.S.2d 996, 1002 (1st Dep't 1995)

Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017)

Deangelis v. Corzine, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014)

DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001)

DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)

Dodona I, LLC v. Goldman, Sachs & Co., 847 F. Supp. 2d 624, 637 (S.D.N.Y. 2012)

Doubleline Capital LP v. Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018)

E.g., Filler v. Hanvit Bank, 339 F.Supp.2d 553, 557 (S.D.N.Y.2004)

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir.2009)

Elbit Sys., Ltd. v. Credit Suisse Grp., 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013)

Elbit Sys., Ltd. v. Credit Suisse Grp., 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013)

Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir.2015)

ExpertConnect, L.L.C. v. Fowler, 18 Civ. 4828 (LGS), at *9 (S.D.N.Y. July 10, 2019)

Fertitta v. Knoedler Gallery, LLC, No. 14–CV–2259, 2015 WL 374968, 5 (S.D.N.Y. Jan. 29, 2015)

Finkelstein v. Wachtel, 00 Civ. 2672 (JSM), at *1 (S.D.N.Y. Apr. 21, 2003)

Flickinger v. Harold C. Brown Co., 947 F.2d 595, 599 (2d Cir. 1991)

Fogarazzo v. Lehman Bros., Inc., 341 F.Supp.2d 274, 294 (S.D.N.Y.2004)

Fraternity Fund Ltd., 479 F.Supp.2d at 368; see also Oster v. Kirschner, 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dep't 2010)

Free Country Ltd. v. Drennen, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016)

Frigitemp Corp. v. Financial Dynamics Fund, Inc., 524 F.2d 275, 283 (2d Cir. 1975)

Gaines Serv. Leasing Corp. v. Carmel Plastic Corp., 105 Misc.2d 694, 697, 432 N.Y.S.2d 760 (N.Y.Civ.Ct. 1980)

Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)

Ge Dandong v. Pinnacle Performance Ltd. , No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013)

Gen. Sec., Inc. v. Com, Fire & Sec., Inc., No. 17 Civ. 1194, 2018 WL 3118274, at *2 (E.D.N.Y. June 25, 2018)

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466, (2d Cir. 1995)), cert. denied, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996)

Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)

Gomez-Jimenez v. New York Law School, 956 N.Y.S.2d at 59

H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2901

Hammond v. Smith Barney Harris Upham & Co., [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990)

Handeen v. Lemaire, 112 F.3d 1339, 1349 n. 2 (8th Cir.1997)

Henry v Allen, 151 NY 1, 9 [1896]

Honeyman v. Hoyt, 220 F.3d 36, 39 (2d Cir. 2000)

IIT v. Cornfeld, 619 F.2d 909, 922 (2d Cir.1980).

In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008)

In re AstraZeneca Sec. Litig., 559 F.Supp.2d 453, 468 (S.D.N.Y.2008)

In re Beacon Assoc. Litig., 745 F.Supp.2d 386, 410 (S.D.N.Y.2010)

In re Cannavest Corp. Sec. Litig., 307 F. Supp. 3d 222, 236–37 (S.D.N.Y. 2018)

In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 428, 465–66 (S.D.N.Y. 2013)

In re Gas Reclamation, Inc. Sec. Litig., 659 F.Supp. 493, 504 (S.D.N.Y.1987)

In re J.P. Jeanneret Assoc., Inc., 769 F.Supp.2d 340, 375 (S.D.N.Y.2011)

In re Leslie Fay Companies Sec. Litig., 871 F.Supp. 686, 699 (S.D.N.Y.1995)

In re Leslie Fay Cos. Sec. Litig., 835 F.Supp. 167, 175 (S.D.N.Y.1993)

In re Leslie Fay, 835 F.Supp. at 174

In re Marsh & Mclennan Cos. Sec. Litig. , 501 F.Supp.2d 452, 469 (S.D.N.Y. 2006)

In re Philip Servs. Corp. Sec. Litig., 383 F. Supp. 2d 463, 474–76 (S.D.N.Y. 2004)

In re Sanofi-Aventis Sec. Litig. , 774 F.Supp.2d 549, 561 (S.D.N.Y. 2011)

In re Scottish Re Grp. Sec. Litig. 524 F.Supp.2d 370, 384 (S.D.N.Y. 2007)

In re Time Warner, Inc. Secs. Litig., 9 F.3d 259, 265 (2d Cir.1993)

Inc. v. One Groupe Intern., Inc., 354 F. Supp. 2d 357 (S.D.N.Y. 2005)

Page vii

Int'l Fund Mgmt. S.A. v. Citigroup Inc. , 822 F.Supp.2d 368, 387 (S.D.N.Y. 2011)

Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013)

IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir.1993)

Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir. 1989)

Jenkins v. McCormick, 184 Kan. 842, 844-845, 339 P.2d 8, 11 (1959)

Jones v. Arnold, 359 Mo. 161, 169-170, 221 S.W.2d 187, 193-194 (1949)

JP Morgan Chase Bank v. Winnick, 406 F.Supp.2d 247, 252 (S.D.N.Y.2005)

Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672 (1931)

Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001)

Kaufman v. Cohen,307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003)

Kaufman, 307 A.D.2d at 119–20, 760 N.Y.S.2d at 165

Kirschner v. KPMG LLP, 15 N.Y.3d 446, 479-80 (N.Y. 2010)

Kronfeld v. Trans World Airlines, Inc., 832 F.2d 726, 732 (2d Cir.1987)

Krys v. Pigott, 749 F.3d 117, 130-31 (2d Cir. 2014)

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)

Land v. Forgione, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019).

Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005)

Lerner v. Fleet Bank, N.A.,459 F.3d 273, 283 (2d Cir.2006)

Lesavoy v. Lane, 304 F.Supp.2d 520, 526 (S.D.N.Y.2004)

Liberty Ridge LLC v. RealTech Sys. Corp., 173 F.Supp.2d 129, 137 (S.D.N.Y.2001)

Lingsch v. Savage, 213 Cal.App.2d 729, 735-737, 29 Cal.Rptr. 201, 204-206 (1963)

Litwin v. Blackstone Grp. L.P., 634 F.3d 706, 716–17 (2d Cir.2011)

Long Island Lighting v. Transamerica, 646 F. Supp. 1442, 1452 n.13 (S.D.N.Y. 1986).

LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir.1997)

Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Services, 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005)

Lumbermens Mut. Cas. Co., 388 F. Supp. 2d at 305

Manavazian v. Atec Group, Inc., 160 F.Supp.2d 468, 479–80 (E.D.N.Y.2001)

Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (1st Dep't 1987)

Mayfield v. Asta Funding, Inc., 95 F.Supp.3d 685, 697 (S.D.N.Y.2015)

McMahan & Co. v. Wherehouse Entertainment, Inc., 900 F.2d 576, 579 (2d Cir.1990)

Medidata Sols. v. Veeva Sys., No. 17 Civ. 589, 2018 WL 6173349, at * 4 (S.D.N.Y. Nov. 26, 2018)

Merrill Lynch, Pierce, Fenner Smith v. Curran, 456 U.S. 353, 395 (1982)

Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997)

Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.1993)

Minpeco, S.A. v. Conticommodity Servs., Inc., 552 F. Supp. 332, 337 (S.D.N.Y. 1982)

Modern Settings v. Prudential-Bache Sec., 602 F. Supp. 511, 513 (S.D.N.Y. 1984)

Monsen v. Consolidated Dressed Beef Co., 579 F.2d 793, 800–04 (3d Cir.1978)

Morrow v. Black, 742 F. Supp. 1199, 1207 (E.D.N.Y.1990)

Moss v. Morgan Stanley Inc.,719 F.2d 5, 17 (2d Cir.1983); see also Aronov, 2015

Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 25 (S.D.N.Y.2009)

Nathel v. Siegal, 592 F.Supp.2d 452, 464 (S.D.N.Y. 2008)

New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),266 F.3d 112, 122 (2d Cir.2001)

Nomura Sec., 280 F. Supp. 2d at 205

NovaGold Res. Inc. Sec. Litig., 629 F.Supp.2d 272, 301 (S.D.N.Y.2009)

Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)

Novak, 216 F.3d at 308. In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 530–31 (S.D.N.Y. 2008)

Noved Realty Corp. v. A.A.P. Co., 250 A.D. 1, 5, 293 N.Y.S. 336 (1st Dep't 1937)

Oran v. Stafford, 226 F.3d 275, 286 (3d Cir.2000)

Oran v. Stafford, 226 F.3d 275, 286 (3d Cir.2000)

Oran v. Stafford, 226 F.3d 275, 286 (3d Cir.2000)

OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 377–79 (S.D.N.Y. 2005)

Ouaknine v. MacFarlane, 897 F.2d 75, 81 (2d Cir.1991)

Ouaknine, 897 F.2d at 80

Overton v. Todman & Co., 478 F.3d 479, 487 (2d Cir.2007)

Pa. Pub. Sch, Emps.' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341, 357 (S.D.N.Y. 2012)

Penato v. George, 383 N.Y.S.2d 900, 904 (2d Dep't 1976)

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F.Supp.2d 163, 181 (S.D.N.Y.2006)

Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir.1993)

Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir.2009)

R&W Technical Servs., Ltd. v. CFTC, 205 F.3d 165, 169 (5th Cir.2000)

Restatement (Second) of Agency §§ 272-282 (1958)

Restatement, supra, § 551 cmt. 1; accord

Roeder v. Alpha Indus., Inc. , 814 F.2d 22, 26 (1st Cir. 1987)

Rolf v. Blyth, Eastman Dillon Co., Inc., 570 F.2d 38, 45 n. 12, 46 (2d Cir. 1978)

Ross v. FSG PrivatAir, Inc., No. 03 Civ. 7292, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004)

S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109–10 (2d Cir.2009)

Saks Inc. v. Attachmate Corp. , No. 14 CIV. 4902 CM, 2015 WL 1841136, at *18 (S.D.N.Y. Apr. 17, 2015)

Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)

Schlaifer Nance Co., 119 F.3d at 97

SEC v. Solucorp Inds., Ltd., 274 F.Supp.2d 379, 418-19 (S.D.N.Y. 2003)

Securities Exchange Comm. v. Aragon Capital Mgmt 672 F. Supp. 2d 421 (S.D.N.Y. 2009)

Sharette v. Credit Suisse Int'l, 127 F. Supp. 3d 60, 79-80 (S.D.N.Y. 2015)

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir.1994)

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)

Shields, 25 F.3d at 1128

Shields, 25 F.3d at 1128

Simmons v. Evans, 185 Tenn. 282, 285-287, 206 S.W.2d 295, 296-297 (1947)

Sit-Up Ltd. v. IAC/InterActive Corp., No. 05 Civ 9292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008)

Page x

Somerville v. Major Exploration, Inc.,576 F. Supp. 902, 909 (S.D.N.Y. 1983)

States v. Reyes 302 F.3d 48, 54 (2d Cir.2002)

Strong v. Repide, 213 U.S. 419, 431-433 (1909)

Tellabs, 551 U.S, 127 S.Ct. 2499

Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17-CV-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017)

Time Warner, 9 F.3d at 268

TSC Indus., Inc. v. Northway, Inc., 426 U.S, 438, 448, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)

Tymoshenko v. Firtash, 57 F.Supp.3d 311, 321 (S.D.N.Y.2014)

Tymoshenko, 57 F.Supp.3d at 321; see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996)

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 218 (S.D.N.Y. 2002)

United Feature Syndicate, Inc., 216 F. Supp. 2d at 218

United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989)

United States v. Locascio,6 F.3d 924, 943 (2d Cir. 1993)

United States v. Long,917 F.2d 691, 697 (2d Cir. 1990).

United States v. Nektalov, 461 F.3d 309, 315 (2d Cir.2006)

United States v. Pierce, 224 F.3d 158, 165 (2d Cir.2000)

Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 483-84 (E.D.N.Y. 1998)

W. Prosser, Handbook of the Law of Torts § 106, at 697 (4th ed. 1971)

Wiener v. Lazard Freres Co., 672 N.Y.S.2d 8, 14 (1st Dep't 1998)

Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir.1985)

Young v. Keith, 112 A.D.2d 625, 627 (3d Dep't 1985).

Zaretsky v. E.F. Hutton Co., Inc., 509 F. Supp. 68, 75 (S.D.N.Y. 1981) (Lowe, J.)

PRELIMINARY STATEMENT

Mem 2 Opp Kadlec, Page 1

## MEMORANDUM OF LAW Count 3 – Fraud Claims

In Count 3, Plaintiffs bring claims against Defendant Kadlec <u>in his individual capacity as CEO of ADMIS</u> for fraud under New York common law fraud and also under 7 U.S.C. 6(b) under the Commodities Exchange Act.

**I - Common Law:** To plead a claim for fraud under New York law are: '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.' " *Premium Mortgage Corp. v. Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir.2009) "[T]he plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff."). *Cf., e.g., Houbigant, Inc. v. D & Touche, LLP,* 303 A.D.2d  N.Y.S.2d  (1st Dep't 2003)

**(II) Commodities Exchange Act – Section 22:** Plaintiffs have also brought a claim for fraud under the Section 22. The CEA and its accompanying regulations directly proscribe attempts to deceive and defraud in connection with futures and options trading. 7 U.S.C. § 6b(a)(2)(a) (c) conduct in connection with a futures contract provides: It shall be unlawful for any person directly or indirectly: (a) To cheat or defraud or attempt to cheat or defraud any other person; (c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.  Courts holding that there is a private remedy under the Commodity Exchange Act, as amended, for actions in fraud brought under § 4b, 7 U.S.C. § 6b. *Alken v. Lerner*, 485 F. Supp. 871, 879 (D.N.J. 1980) See also *Merrill Lynch, Pierce, Fenner Smith v. Curran*, 456 U.S. 353, 395 (1982) )holding exchanges held liable for fraud under private cause of action)

In order to establish liability for fraud, Plaintiffs have met all three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality. *See Hammond v. Smith Barney Harris Upham & Co.,* [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990) Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990);[1]

---

[1] *CFTC v. Trinity Finan. Group, Inc.,* Comm Fut. L. Rep. 27,179, 1997 WL 820970 (S.D.Fla. Sept. 29, 1997), *aff'd in relevant part, CFTC v. Sidoti,* 178 F.3d 1132 (11th Cir.1999). *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.,* 310 F.3d 1321, 1328–29 (11th Cir. 2002)

**III - Materiality and Reliance:** There is no dispute by either Kadlec that the misrepresentations and/or omissions in this case – namely to conceal the unauthorized involvement of Boshnack, Rothman, Felag and HRF in the Plaintiffs CTA and trading accounts were material. A representation or omission is "material" if a reasonable investor would consider it important in deciding  whether to make an investment. *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); [2] At the pleading stage, a plaintiff satisfies the material requirement of [Rule 10b–5] by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utils. Co., 228 F.3d (2d Cir. 2000) (citing Basic, 485 U.S. S.Ct. 978). The FAC alleges that without Plaintiffs knowledge, consent and approval the fraudulent scheme involved (i) the concealment of G&F Agreement; (ii) an unlawful oral risk services agreement ("ORSA"); (iii) unlawful dissemination of trading data and electronic data across interstate lines to its competitors; (iv) unauthorized and excessive ongoing fee arrangements; (v) illegal and excessive margin arrangements. calculations which were non-compliant with CME SPAN;  (i) HRF, Boshnack and Rothman's individual guarantees on its trading account who are persons with a litany of disciplinary actions and who are former owners of a disbarred and tarnished FCM Vision Financial Markets, LLC;

Courts have ruled that misstatements or omissions are material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) Thus, Plaintiffs must plausibly allege that Defendants "misrepresentation[s] or omission[s] [were] a 'substantial factor in inducing [them] to act the way that [they] did.'" *Ge Dandong v. Pinnacle Performance Ltd.* , No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013) *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d (S.D.N.Y. 2019) Whether a misstatement or omission is material is "an inherently fact-specific finding ... that is satisfied when a plaintiff alleges a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Litwin v. Blackstone Grp. L.P.,* 634 F.3d 706, 716–17 (2d Cir.2011). Since materiality is a mixed question of law and fact "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) ... on the ground that the alleged misstatements or omissions are not

---

[2] *R&W Technical Servs., Ltd. v. CFTC,* 205 F.3d 165, 169 (5th Cir.2000).

material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman v. Belden, 754 F.2d  (2d Cir. 1985). *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* F.3d (2d Cir.2009) <u>Dodona I, LLC v. Goldman, Sachs & Co.</u>, 847 F. Supp. 2d 624, 637 (S.D.N.Y. 2012). Since Kadlec does not dispute (with any substance or reference) the materiality or reliance on the misstatements and reliance they are not further elaborated.

**[B] Pleading Standards**  Plaintiffs incorporate By reference the pleading standards Section 3.B in the NFA opposition.

**(ii) Relaxed Pleading Standards for Insiders** Under the relaxed pleading standards applicable to insiders, Plaintiffs' claims against the Kadlec also satisfies Rule 9(b). When the defendant is a "[c]orporate official, general partners offering limited partnerships, and principals in general" are clearly insiders for the purposes of Rule 9(b). *Morin v. Trupin,* 823 F.Supp. 201, 206 (S.D.N.Y.1993) (citing *DiVittorio,* 822 F.2d at 1247). The FAC alleges that ADMIS and Kadlec made statements—in its corporate advertising and risk disclosure documents as well as sales and solicitations—and that the ADMIS Corporate Brochures and Websites and NFA Basic, contained material misrepresentations and omissions which "defendants knew or had reason to know were false," upon which plaintiffs relied to their detriment. (¶XX,¶XX) The particularity requirement is somewhat relaxed when the defendants are "insiders." *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

(iii)  Insiders Knowledge and Group Pleading Doctrine

Kadlec defenses that claims against him do not sufficiently distinguish between him and ADMIS, in the mis-representations and fraudulent statements and omissions is not consistent with the Second Circuit law for the 'group-pleading doctrine" and the relaxed pleading standards of insiders. Plaintiff may invoke the group pleading doctrine against Kadlec as the FAC has alleged facts indicating that the defendant was a corporate insider with direct involvement  and CEO managing the daily affairs of the company. See *In re Bisys Securities Litigation*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005). The group pleading doctrine, asserts that "[i]t is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's filings, press releases and other publications . . . are the collective actions of [all of the Individual Defendants]." Courts developed the doctrine to permit plaintiffs, for pleading purposes only, to  "rely on a presumption that statements in prospectuses, registration statements, annual reports, press

releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company. This allows plaintiffs, to a limited extent, to circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent." *In re Bisys ID*  Therefore in the allegations related to ADMIS and Kadlec, Plaintiffs have adequately attributed the conduct to Kadlec, who's  name and signature on the agreements of the G&F agreements (ECF58.1) and the signatory on the IB Agreements. (Exhibit 12).

[C] Actual Knowledge

There is no dispute that Kadlec and ADMIS had knowledge of the actual fraud both prior to September 2017 and post. The FAC alleges that Kadlec and ADMIS knowingly concealed the G&F Agreements on all public disclosures, and was aware of the unlawful withdrawals of fees from Plaintiffs account. Kadlec and ADMIS also had direct and actual knowledge that they had engaged in the ORSA which began in ORSA. Further during the life of the account ADMIS and Kadlec had actual knowledge of the unlawful margin activities in Plaintiffs account, and the disclosures and dissemination of Plaintiffs trade secrets and electronic trading records to its competitors. The FAC also alleges that Kadlec had direct knowledge that HRHC ran a directly competing CTA referral business and traded directly competing options. Post September 2017, when Plaintiffs complained to the NFA and documented the fraud in writing Lazzara and ADMIS, there is also no dispute that ADMIS and Kadlec then had actual knowledge. NFA in their MTD also admit "ADMIS and High Ridge" perpetrated the fraud. (NFA at X) The FAC also alleged Kadlec was a key facilitator of the fraud. (¶XX).  Further statement included in the MTD inferring participation of the fraud by ADMIS, are statements "fraudsters", and "ADMIS and High Ridge converted funds" etc. NFA's admissions that ADMIS knew of and directly participated in the underlying fraud, therefore supports plausible facts that Kadlec also knew of the fraud.  Other facts to plausibly alleged Actual Knowledge at the pleading stage is Vision's MTD that also admits knowledge of the conduct "XX"). NFA's admissions (that Kadlec joins in his motion to dismiss in C.2) that an underlying fraud was committed by ADMIS should be noted.

[D] Misrepresentations and Concealments

Plaintiffs have pled fraud in both circumstances of misrepresentations and fraudulent concealments. See also Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002) ("Fraudulent omissions accepted as a matter of law" The FAC alleges multiple

Mem 2 Opp Kadlec, Page 5

misrepresentation and material concealments and omissions by Kadlec. Without limitation those undisclosed and material concealments include

    (a) Undisclosed *fees* that were mandatory to be disclosed prior to account opening,

    (b) Undisclosed *margin allowances* inconsistent with CME Span also mandatory to be disclosed prior to account opening

    (c) Undisclosed *risk services*, not in compliance with the CFTC Reg 1.11 and mandatory to be disclosed under CFTC 1.55

    (d) Undisclosed *discretionary authority* granted on margining and liquidation, expressly prohibited under the CEA without Plaintiffs' knowledge and consent, and mandatory to be disclosed

    (e) Undisclosed guarantees by NFA members placed on its account, mandatory to be disclosed under CFTC 1.55

    (f) Undisclosed sharing and dissemination of electronic trading records, material, non-public trading records to competitors and persons with conflicts of interest. Mandatory to be disclosed under CFTC 1.59

In addition Plaintiffs have pled fraudulent omissions and material concealments when they spoke directly to Kadlec in April 2018. (¶656-¶665). Plaintiffs assert with specific dates, times, location and speakers they spoke and/or communication with Kadlec on April 19, 2018 and April 20, 2018, inquiring specifically about information their accounts. In each occasion Kadlec, continued to conceal and omit information about High Ridge, Boshnack, and Rothman, despite his direct and actual knowledge

As the CEO of ADMIS, he had duty to disclose the information, and a continuing duty as an NFA Board Member, to disclose the information requested to Plaintiffs. Also it is well accepted that an FCM has a fiduciary relationship to its customers. Further since Kadlec was also in a position of superior knowledge and influence as an NFA Board Member, and Plaintiffs were also registered NFA Members, Kadlec had a heightened duty to disclose, in compliance with his statutory obligations.

At the times of inquiry, in April 2018 since all parties were bound by the express rules of the CEA, Kadlec was obligated as an NFA Member not to engaged in any type of fraud or deceit, and to comply with all other statutory duties (including to uphold the compliance laws) -which prohibit the sharing of CTA trade data to other members. Therefore under the NFA rules and express laws of the CEA, and insider trading laws Kadlec also had a duty to speak.  Finally because Kadlec had disclose material non-public information of Plaintiffs to its competitors at VIA, and that he was bound by the Insider Trading rules CFTC Reg 1.59 (d) from misusing or disclosing material non-public information and are bound by duties to disclose any unlawful access to material non-public information.

The FAC alleges that Kadlec was in commercial arrangements with VIA, and had unlawufully disclosed Plaintiffs material non-public information to Boshanck, Rothman, Felag and VIA, for use in

direct unfair market competition to trade and clear through ADMIS. ¶XX. Therefore pursuant to CFC 1.59(d) Kadlec had duties to plaintiffs to disclose the dissemination of its material non-public information. Kadlecs duties to speak also include his relationship from a "Special Facts" Doctrine. Likewise, the "special facts " doctrine in a broader array of contexts where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. See James Gray, Misrepresentation — Part II, 37 Md. L. Rev. 488, 526-527 (1978); 3 Restatement (Second) of Torts § 551(e), Comment *l* (1977); *id.*, at 166-167 (Tent. Draft No. 10, 1964). [3])

Further Plaintiffs have alleged that information about ADMIS in BASIC and its public literatures was incomplete, misleading and inaccurate. (¶XX, ¶XX) Specifically the FAC also sates¶583 that it relied on the public disclosures incorporated by reference from ADMIS FAC Exhibit 5. This included several Corporate Brochures and Sales literature pieces of ADMIS. (2014 Disclosure Documents, 2016 Disclosure Documents, Corporate Brochures). The FAC also alleges that ADMIS entry in BASIC concealed information about its financial guarantees and was incomplete and inaccurate, as it concealed the material G&F Agreements.

None of those sales and solicitations documents sent to Plaintiffs by Kadlec disclosed the material arrangements with HRF, Boshnack and Rothman. Therefore these public documents were not updated to reflect the current information of its material financial arrangements with Vision affiliates. These inaccurate, incomplete and half-truth disclosed also give rise to a cause of action of fraud, as Plaintiffs relied on the false information (and incomplete information) in agreeing to do business, and the withholding of the extra information was material in Plaintiffs "mix" of information.

A duty to disclose arises whenever secret information renders prior public statements materially misleading, not merely when that information completely negates the public statements. *See In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d Cir.1993), *see also In re Beacon Assoc. Litig.,* 745 F.Supp.2d 386, 410 (S.D.N.Y.2010) (defendant had a "continuing duty to update or correct past statements when they became known to be misleading"); *In re NovaGold Res. Inc. Sec. Litig.,* 629 F.Supp.2d 272, 301 (S.D.N.Y.2009) ("duty to update applies to 'a statement made misleading by intervening events, even if the statement was true when made.'") (citing *Overton v. Todman & Co.,* 478 F.3d 479, 487 (2d Cir.2007)); Misstatements or omissions are material if there is a "substantial likelihood that the

---

[3] See also *Lingsch* v. *Savage*, 213 Cal.App.2d 729, 735-737, 29 Cal.Rptr. 201, 204-206 (1963); *Jenkins* v. *McCormick*, 184 Kan. 842, 844-845, 339 P.2d 8, 11 (1959); *Jones* v. *Arnold*, 359 Mo. 161, 169-170, 221 S.W.2d 187, 193-194 (1949

disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S, 438, 448, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). "At the pleading stage, a plaintiff satisfies the material requirement of Rule 10b–5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000) (citing Basic, 485 U.S. at 231, 108 S.Ct. 978). "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985),

Therefore Kadlec had a duty to disclose the information with HRF, Boshnack and Rothman rendering his past disclosures incomplete.

**[D] Duty to Disclose**   "[I]nstead of an affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman,* 307 A.D.2d at 119–20, 760 N.Y.S.2d at 165. The FAC alleges that Kadlec in his individual capacity as CEO of ADMIS engaged in numerous acts of fraudulent concealment and omissions.  New York recognizes a duty to speak in three situations: first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth, *see Junius Constr. Corp. v. Cohen,* 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.); second, when the parties stand in a fiduciary or confidential relationship with each other, *see Allen,* 945 F.2d at 45; and third, "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Aaron Ferer Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir. 1984);

Kadlec clearly was in a position of superior knowledge to plaintiffs, and had access to facts that he knew were material, namely the G&F Agreements, the unauthorized fee withdrawals, the dissemination of his customer accounts to Vision and the illegal ORSA – which harmed Plaintiffs.

As stated supra, that information was material, and Plaintiffs would not have done business with ADMIS if these disclosures were made. (¶XX). Further Kadlec continued omitting information in 2018 and concealed information about his direct involvement in clearing arrangements with competitors Vision Investment Advisors, and ongoing competition and harm to Plaintiffs. (¶XX). The fraud did not

just stop when Plaintiffs close the account, the fraudulent scheme and unfair competition continued in 2018 when Kadlec, both on his role as Board Members, and also personally and direcrly profiting from the clearing arrangements with VIA, entered into  Plaintiffs also have alleged that Kadlec, intentionally withheld the G&F Agreements for over 523 days and took over actions to prevent Plaintiffs have material (and mandatory information about their account) to induce them into an NFA forum. Kadlec also withheld and defied Panel orders to never once, produce evidence of the so-called risk services arrangements (¶XX) Therefore as a result of Kadlec's superior knowledge, he knew that Plaintiffs were acting on mistaken belief, and have been and continued to be harmed as a result. Kadlec also had a duty to disclose under the "Special Facts" Doctrine. Plaintiffs also incorporate and include the arguments made in Count 3 for Duties as applies to Kadlec.

**[E] Scienter:**  Kadlec also falsely states that Plaintiffs did not plead scienter. This is incorrect. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).  A similar standard applies to securities law. To establish scienter, the [securities laws] require that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(2)(A)

The Court of Appeals has held that "allegations of scienter ... are not subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991) . All that is required under Rule 9(b) is that there exist a "minimal factual basis for ... conclusory allegations of scienter." *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994).  "In fact, conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.' " *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (*quoting Ouaknine,* 897 F.2d at 80). Courts have held that "a complaint need only aver intent generally" and that "[t]o satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff . . . adequately identifies circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett,* <u>886 F.2d 8, 12-13</u> (2d Cir. 1989). *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 152-53 (2d Cir. 1993)

Mem 2 Opp Kadlec, Page 9

Plaintiffs may allege scienter by either (1) showing the defendants' motive and opportunity to perpetrate fraud, or (2) alleging 'strong circumstantial evidence of conscious misbehavior or recklessness.' " Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP, 919 F. Supp. 2d (S.D.N.Y. 2013)

At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) **'engaged in deliberately illegal behavior'**; (3) **'knew facts or had access to information, suggesting that their public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor**.' " ECA, 553 F.3d at 199 (quoting Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)). (emphases added). Concealment can also invoke scienter (*See* Brass  Id – holding that Defendant concealed material information regarding the restriction on his account as it would lessen Plaintiffs interest, were sufficient to show scienter). Here similarly Plaitniffs have alleged NFA and Kadlec, concealed material information about the G&GF Agreements and ORSA, as it would lessen their interest to open an account, and the concealments (as well as ongoing concealments) provide sufficient circumstances to satisfy scienter.

**(I)** <u>Motive</u> Courts have held that while ordinary economic motives (such as legal fees and ordinary fees) are not sufficient to plead scienter – the same <u>does not hold</u> true for "extraordinary" monetary gain or "excessive" fees. (¶XX) (*See also* ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1331 (S.D.N.Y. 1997 – sufficient to meet motives – and distinguishing between abnormal market share and "extraordinary" fees – that could only have been generated by one  buyer – of a billion dollar scheme – as different from ordinary economic motives –also holding reliance on one purchaser as evidence of motive to perpetuate a fraud).  Here the FAC alleges that the scheme generated over a billion dollars of revenue ¶XX, and that they would have lost a sizable market share, if they did not secure these atypical guarantees (¶XX, ¶XX). Kadlec does not dispute, that excessive revenue is over $10 million a year, which results from the sale of these "toxic" and "fraudulent dark pool" accounts. The FAC also alleges that ADMIS could not obtain the guarantees from its parent company. (¶XX) He needed to make these deals with Boshnack and Rothman, as they were one of the few (if not the only) participants that were willing to back these "risky subprime brokers" (¶XX, ¶XX). The FAC alleges that Defendant needed the terms of the deal and the illegal terms of the ORSA to perpetuate the *unsecured subprime* Vision brokers' billion-dollar market.  The FAC also alleges that Defendant would not have been able to continue generating the revenue (as Vision brokers would have no other clearing home (¶XX), or customers would

have elected to opt-out (¶XX), if the truth about the about the ORSA and/or the perpetual trailing fees and commission being paid to the disbarred Vision (¶XX) had been told to Plaintiffs. Therefore Defendants had a motive to assist in perpetuation of the fraud, as the market share was "extraordinary" and they were reliant on only one backer.

**(II) – Opportunity** The FAC also states that it is clear that Kadlec had the opportunity to propagate the fraudulent conduct alleged. He was in the sole and exclusive position as CEO to direct and manage the affairs of ADMIS. His signature was on the broker accounts, and he was the key participant and signatore on the G&F Agreements. (¶XX)  As CEO he also approve the illegal terms of the "ORSA". (¶XX) Further as CEO has approved fraudulent disclosures to the CFTC on the RMP Reports (¶XX).  The opportunity to commit fraud is generally assumed where the defendant is a corporation or corporate officer. *See, e.g., In re AstraZeneca Sec. Litig.,* 559 F.Supp.2d 453, 468 (S.D.N.Y.2008) ; *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F.Supp.2d 163, 181 (S.D.N.Y.2006) ( "Regarding the 'opportunity' prong, courts often assume that corporations, corporate officers, and corporate directors would have the opportunity to commit fraud if they so desired.").

**(III) - Conscious Misbehavior** To meet the  strong circumstantial evidence prong, a strong inference of scienter may arise when a plaintiff pleads that a defendant: "..**(2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.**" *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford,* 794 F.3d 297, 306 (2d Cir.2015) (*quoting ECA,* 553 F.3d at 199 (*quoting Novak,* 216 F.3d at 311 )). *See also S. Cherry St., LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 109–10 (2d Cir.2009). Plaintiffs can raise a strong inference of scienter by showing the 'strong circumstantial evidence' prong" (quoting Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) ). " 'The inquiry ... is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.' " Pa. Pub. Sch, Emps.' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341, 357 (S.D.N.Y. 2012) (quoting Tellabs, 551 U.S, 127 S.Ct. 2499).  In assessing whether a plaintiff has pleaded scienter, courts consider whether all of the facts, taken together, give rise to an inference of scienter that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S. at 314, 127 S.Ct. 2499. *Sharette v. Credit Suisse Int'l,* 127 F. Supp. 3d 60, 79-80 (S.D.N.Y. 2015)

*(IV) - **Engaged in Deliberately Illegal Behavior -** The Complaint has properly alleged that Kadlec's conduct and arrangements with Conspirators included deliberate illegal behavior. The FAC states ADMIS and Kadlec intentionally attempted to circumvent the rules, regulations and to "contract around" the CEA. Specifically Plaintiffs alleged  deliberately unlawful conduct in violation of the following statutes . 7 U.S.C. § 13 (a) (1)-(5); 7 U.S.C. §13 (b); 7 U.S.C §6, 7 U.S. Code § 6k (1), (5)). (¶359-¶403) and authorize conduct that does not comply with the CFTC Rules and CEA.  NFA in their MTD, concede that there was illegal conduct at ADMIS - at a minimum withdrawing more and more fees, and sharing of customer trade secrets.  Kadlec does not offer one defense of the extensive unlawful conduct alluded in this Complaint (e.g. ¶158,¶232,¶364,¶368,¶371,¶375,¶377,¶391,¶394-¶404,¶413,¶570).  Therefore Plaintiffs have pled the requisite scienter at the pleading stage to survive a MTD, for "deliberately engaging in illegal conduct" which satisfies the prong under conscious misbehavior.

*V – **Recklessness** * Allegations of Defendants' knowledge of or access to contradictory information usually are sufficient to state a claim based on recklessness. *In re Scholastic,* 252 F.3d at 76." *In re Bisys Securities Litigation*, 397 F. Supp. 2d 430, 442 n.56 (S.D.N.Y. 2005)  Here the FAC is clear that Kadlec has knowledge of or access to contradictory information from his disclosures to plaintiffs and customers. The FAC states that all ADMIS public literature and marketing documents did not disclose the G&F Agreements or fee withdrawal arrangements. Further the public statements made did not disclose the material terms of the ORSA. Further the FAC states that ADMIS and Kadlec had a duty to disclose that information to customers, as it is black letter law to disclose to customers the fees and the risk management program ¶XX,¶XX, See also NFA 2-4 9005, CFTC 33.7 , CFTC 1.55 etc). Therefore the FAC has adequately pled that Kadlec had access to information which were knowingly contradictory to his public statements.

### [F] Damages and Injury

The FAC has adequately pled damages by both Plaintiffs ¶761-¶772, Those damages do not just include losses in their trading accounts and depletion of funds, but also damages due to  ¶762 - irreparable and significant harm in loss of their confidential and trade secrets, STORM (including its transaction history and trade data) to its competitors ¶763 losses in CTA's performance records estimated to be not less than 18% a year, damages to their good will and other impacts to the her CTA ¶ 765 substantial "consequential damages" in it valuation and license to the CTA and CPO, has suffered net present value

loss.. , and its performance record and abilities to raise capital, interruptions and interference in their business operations, delays to their commercial livelihoods and investments in the futures industry.

Plaintiff have also suffered ongoing loss due to the unfair competition and torts that Kadlec engaged in to disseminate its proprietary information and trade secrets to HRHC and VIA. The FAC also alleges that Kadlec compounded the harm by facilitating business clearing arrangements with VIA, in direct misappropriation upon misappropriated trading strategies from Plaintiffs, from which he individually profits from today Further NRCM has suffered harm in that it had to shutter. Therefore Plaintiffs have adequately pled damages.

For the foregoing reasons Plaintiffs have stated a valid cause of action for Count 3 – Fraud against Kadlec and the motion should be dismissed. If the Court deems some allegations cold be pled more clearly, Plaintiffs respectfully seek leave to amend.

### Count 4 Aiding and Abetting Fraud

In Count 4, Plaintiffs bring a cause of action against Kadlec for aiding and abetting fraud..

**I – Common Law** Plaintiffs bring this claims against Kadlec in his individual capacity as CEO of ADMIS under New York law. To state a claim for aiding and abetting fraud, a plaintiff must show: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." *E.g., Filler v. Hanvit Bank,* 339 F.Supp.2d 553, 557 (S.D.N.Y.2004)  Standards for aiding and abetting liability under federal securities law are similar and involve three elements: (1) the existence of a securities law violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted in the primary violation. *See Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

**II – Aiding and Abetting under CEA** Plaintiffs also bring this claim against Kadlec in his capacity as Board Member of the NFA for "aiding and abetting: Section 22(b) (1) of the CEA creates liability for "[a]ny person ... who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter...." "Generally stated, to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008), aff'd, 730 F.3d 170

(2d Cir. 2013), and aff'd, 730 F.3d 170 (2d Cir. 2013) Specifically and without limitation 7 U.S.C. 25(b) also provides a private right of action to traders (Plaintiffs) for aiding and abetting.

**[A] – Existence Underlying Fraud or Violation.** Plaintiffs have adequately pled the existence of an underlying fraud. (See also Count 3). Since Kadlec elects to join Defendant NFA's MTD, they do not dispute that the Plaintiffs have alleged a violation by the primary wrongdoers. NFA at X states "the Complaint alleges ADMIS and High Ridge committed fraud". (See NFA at X). Therefore since Kadlec is the CEO of ADMIS, and the fraud is admitted, Plaintiffs have pled both the existence of the fraud and knowledge of the fraud. Further the FAC alleges multiple securities violations including those under 7 U.S.C. 6(b) and fraud and deceit.

**[B] – Actual Knowledge:** As incorporated from Count 3, Plaintiffs have adequately pled Kadlec's actual knowledge of the fraud.

**[C] -  Conscious Avoidance:** In the alternative to Actual Knowledge, plaintiffs also plead Kadlec's Conscious Avoidance of the Fraud. The Court will not "spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers." *Fraternity Fund Ltd.,* 479 F.Supp.2d at 368; *see also Oster v. Kirschner,* 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dep't 2010) (under New York state law pleading standards for aiding and abetting fraud claims, "actual knowledge need only be pleaded generally ... [and may] be divined from surrounding circumstances.") . Conscious avoidance "occurs when 'it can almost be said that the defendant knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Refco,* 759 F.Supp.2d at 334 (quoting *Fraternity Fund,* 479 F.Supp.2d at 368 (citations omitted)).. *United States v. Nektalov,* 461 F.3d 309, 315 (2d Cir.2006) (quoting *United States v. Reyes* 302 F.3d 48, 54 (2d Cir.2002) (quoting Glanville Williams, Criminal Law: The General Part § 57, at 159 (2d ed.1961))).

While it is clear that Kadlec (as his name was on the documents) of the G&F Agreements and also he approved the ORSA and other material terms did in fact have actual knowledge of the fraud, (namely misrepresentations in all disclosures to customers) Plaintiffs also pled the alternative that Kadlec consciously avoided confirming facts to plausibly deny knowledge of the fraud. As both CEO of ADMIS, bound by securities laws to ensure his public statements are complete and not misleading, Kadlec therefore had a duty to ensure the facts of his sales and solicitations to customers (Plaintiffs) disclosed all information about the G&F Agreements and ORSA. It is black-letter law that all fees and

withdrawal from an account are disclosed prior to account opening (¶XX) Further it is black-letter law that all risk services are disclosed before account opening (¶XX, CFTC Reg 1.550). Kadlec was also signature on the G&F Agreements and required the provisions therein related to disclosures.

Since he had a duty to check his company was not in material breach of the G&F Agreements and had a statutory duty to ensure the sales and solicitations under NFA 2-26 and NFA 2-29 complied with the solicitations to customers. (ECF58.1 e.g. G&F 2.3.(g)). A simple check (assuming the conscious avoidance theory) would have shown, that customers and Plaintiffs were <u>not being provided</u> information that by law disclosed the fees being withdrawn the sharing of their customer and trade secret data and the ORSA (oral risk services) that is prohibited. Therefore Plaintiffs can meet the aiding and abetting standard in the alternative theory of conscious avoidance. (See also ¶148-¶181) G&F 2.3(d) and (g) signed by Kadlec mandate that his promotions comply with 2-29 and also seeking "Consents" from customers). Moreover Plaintiffs have alleged that Kadlec, intentionally did not comply with the disclosures requirements to be made to customers, and had actual knowledge Plaintiffs had not consented to the arrangements.

**[D] – Scienter** Plaintiffs incorporate by Reference Count 3. Plaintiffs have also met the pleading standards that may also plead actual knowledge by alleging facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See* OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 377–79 (S.D.N.Y. 2005)/

**[E] – Substantial Assistance -** Under New York law, substantial assistance occurs "when a defendant affirmatively assists, **or** helps conceal, **or** fails to act when required to do so, thereby enabling the fraud ... to occur." *Fraternity Fund Ltd.,* 479 F.Supp.2d at 370 (citation omitted). For Defendant Kadlec, Plaintiffs have met the substantial assistance prong by alleging Defendant helped conceal the fraud, and also affirmatively assisted

**(i) Kadlec helped conceal the fraud** The FAC alleges that Kadlec's role in the fraud, relates to both (a) the existence of the ORSA which violates the CFTC and CEA and was unlawful (b) the concealment of the ORSA from the CFTC and on reports that were mandatory to be disclosed (c) the concealment of the ORSA and G&F Agreements from customers and (d) the material concealment of the sharing and dissemination of customers material non-public information and transaction records with its competitors at HRF, Boshnack and Rothman. See e.g. "Acts undertaken by [agent or CEO], helped to conceal the

fraud and therefore constitute "substantial assistance." *Kaufman v. Cohen,*307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003). *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 2 (S.D.N.Y. 2013)

Further Kadlec played an active role in the concealment in all public literature, documentations and sales and solicitation to customers (¶XX). Further Kadlec's concealment also included not disclosing the excessive and substantial fees arrangements to customers (¶XX). Since the G&F agreements and ORSA (risk services) were black letter law disclosures under the CEA, Plaintiffs have pled that Kadlec knowingly and intentionally engaged in concealment and therefore provided substantial assistance in the aiding and abetting. (¶¶XX))The scheme of concealment also included omitting the existing of the ORSA from the CFTC on mandatory reports that required its disclosure to the CFTC Reg 1.11-1.14. (¶XX, ¶XX) Kadlec also engaged in concealment after the scheme started to unravel and he was directly questioned on the fraud. (¶XX)

**(ii) Kadlec Affirmatively Assisted the Fraud:** Kadlec also affirmatively assisted the fraud in securing and engaging in unlawful arrangements with Boshnack, Rothman, HRF and Felag in the ORSA, to secure "atypical" funding and financing for ADMIS. Courts have held that when unusual financing schemes are generated for a company, parties that facilitate these "arrangements" to secure funding are held to have provided substantial assistance in the aiding and abetting prong.

Courts have held that the approval of terms, contract, or special financing that is not typical of the standard contracts in the markets. (¶XX, holding the ORSA contained material illegal terms). Plaintiffs have also alleged that the G&F Agreements that provided hundreds of Vision brokers atpyical financing (¶XX) was also not standard for the FCM. Participation in the financing of a fraudulent scheme, particularly where, as here, it is alleged that the financing was not routine, constitutes substantial assistance. *See, e.g., Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 800–04 (3d Cir.1978) (bank's atypical financing transactions constituted substantial assistance); *Bruce v. Martin,* 1990 WL 52180, at *5 (upholding substantial assistance allegation that amounted to a "suggestion ... that the Sureties were not operating from only the ordinary economic motivation of collecting the premium"); *In re Gas Reclamation, Inc. Sec. Litig.,* 659 F.Supp. 493, 504 (S.D.N.Y.1987) (participation in "atypical financing transactions" supports aider and abetter liability). Finally, NFA, Wahls and Kiela are alleged to have helped perpetuate ADMIS and Lazzara's fraud by providing to the CFTC (and also to customers) false and incomplete risk reports and RMP's to conceal that monies and property were being disseminated to Boshnack, Rothman, Felag and the new reincarnated Vision/  These Broker practices

encouraged and facilitated the ongoing fraudulent scheme, and thus constitute substantial assistance. *See Bruce v. Martin,* 1990 WL 52180 at *5. <u>ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.</u>, 957 F. Supp. 1308, 1330 (S.D.N.Y. 1997) The FAC alleges specific documents signed by Wahls, NFA, Kiela and Kadlec approving the unlawful material terms on dates between November 1, 2014 – January 2017. (¶XX,¶XX) *See JP* Morgan Chase Bank v. Winnick, 406 F.Supp.2d at 253–55 (aiding and abetting claim survives motion to dismiss based, in part, on email exchanges by, among and to the defendants detailing the transactions at the core of the fraudulent scheme and defendants' understanding of their wrongful nature).

Kadlec also affirmatively assisted the fraud by registering VIA, after the misappropriation of Plaintiffs trade secret and material non-public information, and continued the scheme of direct unfair market competition. With full knowledge that VIA were directly competing, and had improperly acquire and were using Plaintiffs trade secrets, Kadlec, took actions to exuecute clearing arrangements to profit from VIA. (¶XX, ¶XX).

**(iii) Kadlec also failed to act when required to do so:** Since Kadlec, as an NFA Member, and an NFA Board Member was bound by the statutory duties of the CEA and membership of the NFA, and required by statute to comply with the rules and regulations thereunder (7 USC 21(p)). He was also required (had a non-discretionary duty) to act to enforce compliance, and to not engaged in fraudulent and deceptive practices, and to protect investors. Since he knew his customers were not receiving the black-letter disclosures, and his customers accounts were being infringed in property and mones, Kadlec had a statutory to duty to act, and enforce the compliance laws. Kadlec also in his capacity as CEO of ADMIS, also had duties to act, under Federal Securities laws, to not make public statements misleading. He also had duties under his Superior Knowledge and Special Facts (See Count 3 duties) and also had duties to act under Insider trading laws CFTC 1.59(d). Incorporated by reference in Count 3 other duties of Kadlec. Further under Securities laws, Kadlec had a duty to update past statements to ensure they were not misleading to customers and Plaintiffs (See XX ID)

**F – Inaction was Designed to Aid the Primary Fraud:** Since Kadlec joins NFA's defense, they wrongly assert that only "inaction" is substantial assistance if there is a fiduciary duty. As a first matter, Plaintiffs did not pled "inaction" against Kadlec. Instead they pled Substantial Assistance by away of helping conceal or affirmative assistance (See 4.E supra) In the alternative to the extent the Court deems inaction by Kadlec was <u>also</u> substantial assistance under New York law, Inaction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance, **except when it was**

**designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act.**' "); *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,* 261 F.R.D. 13, 25 (S.D.N.Y.2009)

(i)     **Kadlec Intentionally Aided the Fraud**   The FAC clearly alleges in a number of places that Kadlecs actions were designed to intentionally enable the fraud. (¶XX). He facilitated "arrangements" that he knew were unlawful under the CEA< and kept them oral so that they would not go detected by the CFTC (¶XX, ¶XX). He set up unorthodiz financing ,that relied on the illegal and unanthporized withdrawal fo fees and commission without the customers consent. (¶XX).  He maintained the ORSA without complywinth the disclosures to customres (and Plaintiffs), even when they requested specific information about the risk management and margin handling on their account (¶XX,). And when questioned in engaged in concealment and stalling to try to cover-up the fraud. (¶XX)

Therefore all his actions were intentionally designed to aid the primary fraud

(ii)     **Kadlec's Inaction was in Conscious and reckless Violation of the Duty to Act** Further Kadlec's inaction was also in a conscious and reckless violation of the Duty to Act. (As stated supra  - Count 3 Kadlec was bound not just by Securities Laws, but also a Statutory Duty to Act.  Plaintiffs incorporate by reference Scienter, in Count 3 demonstrating that Kadlec acted with conscious and reckless violation of his duties to act.

**[G] Injury** Plaintiffs have adequately pled injury and incorporate by Reference Count 3

**[H] Cases cited by Kadlec are Inaopposite:** By joining NFA's motion, Kadlec cites to only two cases.

*(a) Chemtex, LLC v. St. Anthony Enters., Inc.,* **(S.D.N.Y. 2007)** *Chemtex* is inapposite and applies incorrect standards as it relates to fraudulent conveyance of property and asserts in a bankruptcy case. This action is not a fraudulent conveyance case the standards for actual fraud in a bankruptcy case under the Uniform Fraudulent Transfer Act ("UFTA") and federal Bankruptcy Code do not apply.

*(b) Land v. Forgione,* **177 A.D.3d 862, 864 (N.Y. App. Div. 2019).** Kadlec cites to *Land vs. Forgiorne* in their defense that unless they owed a "fiduciary" duty they had no obligation to act. But the case is inapplicable, because in the first instead Forgorne was a "restaurant owner" that cannot be compared to statutory duties under the CEA, or to the securities laws. Therefore a restaurant owner case is inapposite. Further, Second Circuit does not just invoke a fiduciary duty, it regards inaction in the case of any duty to act, as well as when the inaction was designed to intentionally aid the fraud, or was in conscious and reckless violation of the duty to act.  *See Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). Id

Therefore none of Kadlec's cases are relevant and the motion to dismiss should be denied.

For the foregoing reasons Plaintiffs have stated a valid cause of action for Count 4 – Aiding and Abetting Fraud against Kadlec and the motion should be dismissed. If the Court deems some allegations cold be pled more clearly, Plaintiffs respectfully seek leave to amend.

### B – RICO CLAIMS Counts 11 and 12

In Counts 11 and 12 Plaintiffs bring causes of action against Kadlec in his individual capacity as CEO of ADMIS for RICO claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d)

### I – Count 11 - RICO Claim Under § 1962(c)

In Count 11,  Plaintiffs allege that Defendant violated 18 U.S.C. § 1962(c). This provision provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "A private cause of action under RICO requires that the plaintiff allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.' " *Fertitta v. Knoedler Gallery, LLC,* No. 14–CV–2259, 2015 WL 374968, 5 (S.D.N.Y. Jan. 29, 2015) (quoting *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 283 (2d Cir.2006)).

***The Court should note Defendant Kadlec does not dispute (2) injury to the Plaintiffs business or property or (3) causation of the injury to defendants' violation. Those arguments are deemed waived.***

Therefore Plaintiffs only address the first requirement. To establish a violation of 18 U.S.C. § 1962, a plaintiff must allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern ' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983); *see also Aronov,* 2015 WL 1780164, at *3 (same)

***Defendant Kadlec's MTD does not raise any defenses or opposition on the pleading requirements of (1), (4), (5) (6) and (7). Therefore Plaintiffs do not address this in their opposition and these arguments are considered waived.***

**(i) Plaintiffs Pled Two or More acts and Pattern** Kadlec's only defense of the RICO claims on Pg. 14 are that Plaintiffs did not plead two or more predicate events that constitute a pattern. This is false. By attachment in Exhibit 9, (¶540) _Each and every withdrawal and predicate act in ¶540 - Exhibit 9 stating

specifically instigated by Kadlec as well as hundreds of lines items of dissemination of trade secrets across interstate lines, each counting as a predicate act under RICO while Plaintiffs accounts were opened in January 2017 – June 2017. Plaintiff incorporated by reference a detailed attachment itemizing over **136 predicate events of mail fraud, wire fraud and misappropriation of trade secrets**. It also indicated false statements issued across interstate wires misrepresenting funds withdrawn from its accounts. As the Complaint pleads Kadlec as the CEO of ADMIS authorized these withdrawals and Kadlec does not dispute his role in the Operations and Management of the Enterprise, and neither does he dispute the existence of the Enterprise, Plaintiffs have more than adequately included (by Exhibit 9) a pattern of predicate acts. (*See also* ¶530-¶555)  **136 predicate acts** attached and incorporated in Exhibit 9 of unauthorized withdrawals of monies, and theft of trade secrets each constituting mail fraud, wire fraud and theft of trade secrets, which more than satisfies the requisite predicate acts

Similarly, *Azrielli v. Cohen Law Offices,* 21 F.3d 512 (2d Cir.1994), held that "a series of fraudulent sales of securities over at least one year, coupled with the fact that the defendants 'apparently ha[d] been trying to continue to sell' securities, permitted a jury to find a RICO pattern." *GICC Capital Corp.,* 67 F.3d at 466 (quoting *Azrielli,* 21 F.3d at 521).  See also DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001) None of the events supra were isolated events and clearly formed a consistent pattern of two or more predicate acts. [4]

**(i)       Kadlec does not dispute his role in the Operations and Management** Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."18 U.S.C. § 1962(c). Courts have held "[t]he `operation or management' test expresses this requirement in a formulation that is easy to apply." *Id.* Thus, "one is liable under RICO ~~only~~ if he `participated in the operation or management of the enterprise itself.'"[ *First Capital Asset Mgmt.,* 385 F.3d at 176 (quoting *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir. 1994)). The Second Circuit, in *First Capital Asset Management,* recently observed that "the `operation or management' test typically has proven to be a

---

[4]  For example, in *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.) (en banc), *vacated and remanded,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to on remand,* 893 F.2d 1433, *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), this Court held that "allegations that defendants had engaged in a one-time mailing of 8,000 copies of fraudulent documents in connection with a condominium conversion plan was sufficient to plead a pattern of racketeering activity, where there was a basis to infer that similar mailings would occur in the future."

relatively low hurdle for plaintiffs to clear, especially at the pleading stage."[140] *Id.* at 178 (quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1349 n. 2 (8th Cir.1997)). The court further stated that "it is no great leap to find that one who assists in the fraud also conducts or participates in the conduct of the affairs of the enterprise."[142] *Id.* In addition, where, as here, a defendant's "liability is also premised on a RICO conspiracy theory ..., the standard ... applied] to [the defendant] is even more relaxed." *Id.*

Therefore since Kadlec does not dispute either the Enterprise or his role in managing or directing the affairs of the enterprise this Cause should be dismissed.

Further Plaintiffs have pled additional predicate acts by Kadlec that he participated and directed the fraud. Here the FAC alleges Kadlec participated in additional predicate acts in the operation of the Enterprise. For example, Kadlec directed and oversaw the issuance of numerous false reports (on an annual and quarterly basis – each a predicate act) using wire fraud and mail fraud to the CFTC and on public disclosures to the public.(¶504)Further he oversaw the ORSA, such as facilitating access to computer systems, passwords to provide dissemination of customers accounts to Boshnack and Vision He also set up the accounting from which the wire transfers of wire fraud and moneys withdrawals occurred. The FAC also pleads direct awareness of the scheme, including willful acts to omit the arrangements to customer and Plaintiffs. Kadlec's conduct even when the scheme was exposed, and Plaintiffs were part of the conduct to conceal and cover-up the fraud . Kadlec also oversaw the  bulk payments of fees to Boshnack under the banking arrangements. (see also OSRecovery, Inc. v. One Groupe Intern., Inc., 354 F. Supp. 2d 357 (S.D.N.Y. 2005) Holding that allegation of participation in the operation of the scheme, including the payments, was sufficient to awareness of fraud, and plead  a violation of Section 1962(c).)

(i)  Kadlec does not Dispute Predicate Acts of Wire Fraud or Mail Fraud or Misappropriation

60    With regard to the racketeering activity requirement, the statute provides a list of criminal acts that can constitute predicate acts of racketeering . *See*18 U.S.C. § 1961(a) (defining "racketeering activity"). mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are predicate acts of racketeering activity. Further violations of the trade secrets acts also constitute predicate acts for RICO. Since the trade secrets, trading strategies, and other proprietary information were disseminated to and utilized in Stamford, Connecticut, and other branch offices across the U.S., their actions violated the Defend Trade Secrets Act which provides for a federal, private, civil cause of action for trade-secret misappropriation in which "[a]n owner of a trade secret that is misappropriated may bring a civil action,

if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §§ 1831 *et seq*.  It also constitutes a predicate act for a RICO violation.

***Since Kadlec does not dispute the nature of the predicate acts pr raise the issues of Wire fraud, Mail fraud and misappropriation of trade secrets his defenses are waived.***

Plaintiffs predicate acts include both wire fraud, mail fraud and violations of the Defend Trade Secrets Act.  "The elements of wire fraud under 18 U.S.C. § 1343 are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires." *Tymoshenko v. Firtash,* 57 F.Supp.3d 311, 321 (S.D.N.Y.2014) (internal quotation marks omitted) (quoting *United States v. Pierce,* 224 F.3d 158, 165 (2d Cir.2000)); "The elements of mail fraud under 18 U.S.C. § 1341 are identical, except that mail fraud must be furthered by use of the mails." *Tymoshenko,* 57 F.Supp.3d at 321; *see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) ("A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme."); *Mayfield v. Asta Funding, Inc.,* 95 F.Supp.3d 685, 697 (S.D.N.Y.2015) (same). For both wire and mail fraud, the object of the scheme to defraud must be *money or property. See Pierce,* 224 F.3d at 165 ("In the context of mail fraud and wire fraud, the words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching. A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with." (citations and some internal quotation marks omitted)); *Tymoshenko,* 57 F.Supp.3d at 321  Further Plaintiffs have pled predicate acts of misappropriation of trade secrets (¶XX, ¶XX)

Plaintiffs have adequately pled both wire fraud and mail fraud as predicate acts. (ECF57 Exhibit 9),

**(ii)      The Predicate Acts satisfied the Relatedness Test**

Further each predicate satisfies the related test. Kadlec does not dispute the relatedness, so this argument is waived. He appears to only defend on whether there were two (2) more acts. Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Schlaifer Nance Co.,* 119 F.3d at 97 (quoting *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901). The Second Circuit has noted that  [a]n interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity,

or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions. *Azrielli,*21 F.3d at 520 (quoting *Indelicato,*865 F.2d at 1382). Further, for the relatedness element to be satisfied, the predicate acts must be related, directly or indirectly, to each other as well as to the enterprise. *See United States v. Locascio,*6 F.3d 924, 943 (2d Cir. 1993), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994) (proclaiming that relatedness requirement is satisfied even if the predicate acts are not directly related to each other so long as both are related to the RICO enterprise in such a way that they become indirectly connected to each other); *United States v. Long,*917 F.2d 691, 697 (2d Cir. 1990).

¶540 - Incorporated herein by reference in **Exhibit 9**, Plaintiffs documented hundreds of line items of unauthorized withdrawals of monies across interstate lines, instigated by Kadlec as well as hundreds of lines items of dissemination of trade secrets across interstate lines, each counting as a predicate act under RICO while Plaintiffs accounts were opened in January 2017 – June 2017.

Each and every withdrawal and predicate act in ¶540 - Exhibit 9 stating specifically instigated by Kadlec, was related and clearly a pattern of conduct that meets the relatedness test. Further the FAC alleges in detail that the pattern of illegal withdrawals is done using undisclosed "trade processing fees" and "transaction fees" which are not reported on the computer portals. Nonetheless Kadlec does not raise in his MTD any dispute on relatedness.

**(iii)**    **Open Ended Continuity** Plaintiffs have also satisfied the Open-Ended Continuity Requirement. The second element that must be shown for a pattern of racketeering activity to be established requires allegations of "either an `open-ended' pattern of racketeering activity, (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a `closed-ended' pattern of racketeering activity (i.e., past criminal conduct `extending over a substantial period of time')." *Schlaifer Nance Co.,* 119 F.3d at 97 (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 466, (2d Cir. 1995)), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). The Second Circuit went on to describe how to determine whether a threat of "open-ended" continuity exists. *Id*. "[A] court must examine the nature of either: (1) the predicate acts alleged, or (2) the enterprise at whose behest the predicate acts were performed." *Id*.  (citing *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir. 1989)). *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 483-84 (E.D.N.Y. 1998)

Here Plaintiffs have alleged open-ended continuity and the pattern of activity is continuing into the futures. Other confirmation in filings that the pattern is continuing into the futures is admission that "the

activities continue to date".  First Plaintiffs have pled extensively the history y of the scheme dates back to November 2014 (¶XX). And the FAC also pleads that the activities are ongoing and continue to date (¶XX). This is corroborated by Visions MTD which states the arrangements was (and is) still continuing to date. The FAC also alleges that even when Plaintiffs closed their accounts Defendants have continued the activities. (¶XX, ¶XX). This includes signed documents by Wahls and Kiela, approving the ongoing conduct that is illegal. Further even after Plaintiffs closed their accounts, the scheme perpetuated to registered VIA, and the Conspirators took action to – deter or prevent Plaintiffs from taking action in Court – and misrepresenting and further concealing the authorizations (that are alleged to be illegal)(¶XX) This also supports open-ended activity (¶XX, ¶XX, add complaint ¶XX) (See OSRA holding that actions taken to conceal a scheme after the accounts are close also sufficient to show open-ended continuing and continuation of the Enterprise)

In addition, Courts measure the Open Ended activity from whether the predicate acts at their time of occurrence. So starting in January 2017 the predicate acts related to Plaintiffs began, through the scheme began in November 2014. Instead, courts take into account whether the predicate acts posed a threat at the time of their occurrence. *E.g., A. Terzi Prods.,* 2 F.Supp.2d at 508 (measuring threat of continuity <u>at the time defendants' alleged predicate acts occurred</u>); *Morrow v. Black,* 742 F. Supp. 1199, 1207 (E.D.N.Y.1990) (same).        Based on the start date of November 1, 2014 and also January 2017, Plaintiffs have adequately alleged the conduct continues in the market place to day (¶541) .

## II – Count 12  - RICO Claim under § 1962(c)

Section 1962(d) makes it unlawful for any person to conspire to violate Sections 1962(a), 1962(b), and 1962(c).18 U.S.C. § 1962(d). To be guilty under Section 1962(d), the "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."[145] *Baisch,* 346 F.3d at 376 (quoting *Salinas v. United States,* 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)). "In the civil context, a plaintiff must allege that the defendant `knew about and agreed to facilitate the scheme.'"[146] [146] *Id.* (citing *Salinas,* 522 U.S. at 66, 118 S. Ct. 469).

As discussed above, the FAC adequately alleges that Kadlec knew about and agreed to facilitate the scheme. Kadlec signatures on the G&F Agreements, and IB Agreements, as well as his authorization of the ORSA, that he knew was illegal and contravened the express laws of the CEA. (¶XX, ¶XX). At his direction ADMIS concealed and operated the Enterprise to withdraw funds and moneys from customers accounts (and Plaintiffs) to pay HRF, Boshnack and Rothman, without their knowledge and

consent (¶XX, ¶XX). He directed and managed, the dissemination of customers CTA trading records across interstate lines for their unfair competitive advantage (¶XX¶XX). The FAC also alleges he conspired with HRF, HRHC, Boshnack, Rothman to create an unlevlized playing field in the futures markets and (¶XX,24XX was instrumental in all acts of concealment thereafter. The actions give rise to an interference of a conspiracy. Furthermore Plaintiffs have alleged that Kadlec committed various acts in furtherance of the scheme. (Supra, See also Count 3 and 4- Exhibit 9, (¶XX,¶XX,¶XX). Accordingly, the FAC adequately has stated a claim under Section 1962(d) against Kadlec in his individual capacity as CEO of ADMIS.

Therefore Plaintiffs have adequately plead a cause of action for RICO violations in Count 11 and 12 against Kadlec. Plaintiffs also respectfully seek leave to amend the Complaint for RICO should any of the allegations not be sufficiently clear.

### C – OTHER STATE LAW CLAIMS

### Count 10 – Civil Conspiracy

In Count 10 Plaintiffs adequately plead a count of Civil Conspiracy under New York Law against Kadlec in his individual capacity as CEO of ADMIS.  To state a claim for civil conspiracy a plaintiff, in addition to alleging an **underlying tort**, must plead facts sufficient to support an inference of the following elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d N.Y.S.2d 585, 588 (2010) (**emphasis added**) . Courts do not hold the Plaintiffs to the stricter Rule 9(b) standards on the conspiracy claim, but rather the normal Rule 8(a) standards. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy.)

Kadlec again voluntarily chooses to join Defendants NFA's motion to dismiss (NFA at 23). **However this decision is fatal,** as NFA admits to the conspiracy and underlying torts  and wrongdoing by ADMIS and High Ridge.  Since Kadlec is the CEO of ADMIS, and this conduct includes perpetrating a fraud, Kadlec had joined and admitted in his MTD his participation in the underlying fraud with High Ridge.  Further NFA's motion to dismiss is incorrect that no independent cause of action exists. **Under New York law, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions**

**were part of a common scheme"** See *Litras v Litras*, 254 AD2d 395, 396; *see Alexander Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969; *Gouldsbury v Dan's Supreme Supermarket*, 154 AD2d 509, 510; *Burns Jackson v Lindner*, 88AD2d 50, 72, *affd*59 NY2d 314).

Plaintiffs have pled four underlying torts. [1]The tort of fraud, [2] the tort of unfair competition, [3] the tort of misappropriation including trade secrets, and [4] the tort of conversion. NFA and Kadlec (in joining NFA's brief) have admitted to all the underlying tort of fraud of ADMIS and High Ridge. ( In all cases Defendants do not dispute the underlying torts. NFA MTD at X stated ""Admis and High Ridge committed the fraud", and "ADMIS and High Ridge misappropriated trade secrets" or "ADMIS and High Ridge converted monies and property" Similarly Kadlec does not dispute anywhere in the motion the well-pled facts of unfair competitions.

Once fraud or [underlying tort] is established, the conspiracy must be proven, requiring "(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy ." *Richardson v. Artrageous, Inc.,* No. 93 Civ. 5221(RPP), 1994 WL 97222 at *3 (S.D.N.Y., March 18, 1994). The FAC alleges that Kadlec and other conspirators participated in the scheme to defraud, convert and misappropriate, by engaging in a series of unlawful conduct, (¶XX, ¶XX) including facilitating a contract that was oral and concealed from both the CFTC and customers. ("ORSA). Kadlec instigated the ORSA in an unlawful agreement with HRF, Boshnack and Rothman and knew its material terms did not comply with the CEA (¶XX, ¶XX). (See also Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009) – holding a party facilitating a contract  to partake in unlawful conduct sufficient to plead civil conspiracy)

Agreements Were Unlawful

The Court should note, that Kadlec does not once at no time deny or oppose any of the unlawful conduct. This is fatal to his motion for which it should be denied. Courts have determined that illegal conspiracies, of course, can rarely be proved through evidence of explicit agreement , but must generally be proved through inferences from the conduct of the alleged conspirators. *See Michelman v. Clark-Schwebel Fiber Glass Corp.,*534 F.2d 1036, 1043 (2d Cir.), *cert. denied,*429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976). Here not only does Kadlec not disputed or defend once, the existence of the ORSA, or the well-pled allegations that the material terms of the ORSA was illegal, he joins NFA's motion to dismiss, that admits "illegal terms of the ORSA included more and more withdrawal of fees and sharing of customers trade secrets").

The FAC pled the following detailed statutes of illegal conduct (7 U.S.C. 13(a) (2), 7 U.S.C. 6(a) et).

Civil conspiracy claims also survive when a Plaintiff shows that "the circumstances [must be] such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). *Venture Technology, Inc. v. National Fuel Gas*, 685 F.2d 41, 45 (2d Cir. 1982). Here the unity of purpose was to allow a set of market participation by way for Conspirators to continue to generate revenue (unlawfully) without the consent and authorization of customers and to transfer properties and asserts by way of an illegal oral risk services arrangement ("ORSA") that they knew contravened the registration requirements and would have led to disqualification. To continue the unlawful participation of Kadlec concealed their activities in material and mandatory disclosures to the CFTC and also to customers and traders (plaintiffs) who had a statutory right to know this information CFTC 1.55 ¶XX. ¶XX,  The conspirators facilitate the scheme that they could continue their guarantees on thousands of customers accounts (without disclosures) which relied on Boshnack's funding (¶XX). These arrangements they knew were unlawful, and  their purpose was to keep them concealed to allow the unlawful revenue to continue. Other aspects of the conspiracy include the participation in unfair competition and transfer of competitive advantage to HRHC and VIA, both of which whom clear through ADMIS and Kadlec (¶XX,¶XX). Courts have held a tort of unfair competition also sufficient to plead civil conspiracy.

"Moreover, great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." 777388 Ontario Ltd. v. Lencore Acoustics Corp., 142 F. Supp.2d 309, 319 n. 4 (E.D.N.Y. 2001) (Glasser, J.)." *Banks v. Consumer Home Mortgage, Inc.*, 01-CV-8508 (ILG), at *1 (E.D.N.Y. Mar. 27, 2003)

For these reasons Plaintiffs have adequately pled Civil Conspiracy in Count 10 against Defendant Kadlec. To the extent the Court deems the allegations not sufficiently clear Plaintiffs respectfully seek leave to amend the civil conspiracy complaint.

### Count 9 - Tortious Interference

Plaintiffs bring a claim for tortious interference with prospective economic advantage against Kadlec in his individual capacity as CEO of ADMIS. To state a claim for tortious interference plaintiffs must prove that-"(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair,

or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Kadlec concede there was improper underlying tort of interference, by first admitting that "ADMIS and High Ridge" were the ones that interfered in their business relations. (NFA at 24)

Kadlec again chooses to join NFA's Motion to Dismiss for Count 9. However this argument fails, as NFA MTD admits that it was not [NFA] that interfered with Plaintiffs business relations, but that it was ADMIS and High Ridge that interfered in those relations. The admission and conceding by Kadlec to join NFA's motion is an admission that ADMIS did interfere in Plaintiffs business relations. Therefore this argument by Kadlec fails, as his motion contains an admission of interference by ADMIS in business relations. (see D.IV infra) For this reason the MTD by Kadlec, by his own admission, should be denied.

Courts have held that allegations of fraud and illegal means satisfy the prong of "wrongful means" . The independent torts are conversion (see Count 7), fraud, misrepresentation, and misappropriation. Courts have also held that allegations of fraud and illegalities satisfy the prong of wrongful means . Cf. MDC Corp., Inc. v. John H. Harland Co., 228 F. Supp.2d 387, 397-98 (S.D.N.Y. 2002) (finding allegation that defendant "acted maliciously and used fraudulent or illegal means" is sufficient pleading of wrongful means). The FAC states numerous allegations of dishonest and fraudulent concealment. (Count 3 – e.g. that NFA knew of the G&F Agreements and the ORSA and made false and incomplete statements to conceal that customers accounts opened at ADMIS would be subject to illegal risk services by disbarred owners ¶XX-¶XX - (2) Kadlec took overt actions to fraudulently concealed the ORSA and G&F even when (3) the material terms of the ORSA were unlawful (¶XX – noting Kadlec does not dispute once that 7 U.S.C.13 and 7 U.S.C6)  Plaintiff has also pled specific conduct in detail of the illegal conduct of Kadlec (See FAC ¶XX-¶XX, ¶XX-¶XX)/

Plaintiffs have also alleged Kadlec used dishonest, unfair and improper means to dilute Plaintiffs competitive advantage as a CTA, and withdraw funds, suppress profits, and transfer it CTA records to its competitors to undercut and her performance and complete the wrongful means including undercutting Plaintiffs to give its property and competitive advantage to HRHC and Vision Investments which substantially interfered in its business relations and economic advantage. (¶XX, ¶XX),  Because these allegations must be considered true at this stage of the proceedings, they are sufficient to plead wrongful means.  See also PKG Grp., LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251–52 (S.D.N.Y. 2006) (holding that the allegations of such misconduct, taken, as they must be, most favorably

to plaintiff, assert that defendants made false statements and covertly took actions to undercut Plaintiffs, are sufficient to provide fair notice to Defendants of the wrongful means conduct upon which to base its claims)

**(ii) Wrongful Means** In joining NFA's motion Kadlec claims that Plaintiffs did not plead wrongful means. This is false. New York Courts have held that "dishonest, unfair, or improper means" must amount to misconduct that constitutes either a crime or an independent tort. *See Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004). *See, e.g., AIM Int'l Trading, LLC v. Valcucine S.p.A.,* No. 02 Civ. 1363, 2003 WL 21203503, at *8 (S.D.N.Y. May 22, 2003). The Court should note NFA at 24, leave out the words "unfair" in the well accepted standards of "dishonest, ***unfair*** or improper means". At the very least, Kadlec does not dispute that the conduct was "unfair" which meets the pleading standards of wrongful means. And the motion to dismiss denied. For this purpose their motion should be denied. NFA's defense therefore rests on the words "dishonest" and "improper".

**(iii) Specific Business Relations** In addition, to satisfy this cause, Plaintiffs did plead specific business relations with an identified third party. Plaintiffs have sufficiently pled (and at least consistently inferred) the existence of specific business relations that were harmed. See e.g. ¶574 – Alleging business relationship with friends and family "investing substantial monies" in formation capital and the formation of hedge funds and ¶576 Plaintiffs raised capital from "friends and family to sizable investment of capital" and "ten year proforma over tens of millions" and "business model to raise substantial assets." Plaintiffs also alleged they planned to "start with small capital (less than $100,000) and overtime scale it up to a significantly large number". This was consistent with other facts that they had prospective relations to raise over $1 million. Further the Complaint shows NRCM was dissolved and the company harmed (See ¶746) losing that access to capital.  Courts have held  Plaintiff must at least show that "particular prospective business relations were lost due to the defendant's improper interference ." *D'Andrea v. Rafla-Demetrious, 3 F. Supp.2d 239, 250 (E.D.N.Y. 1996), aff'd, 146 F.3d 64 (1998).* In  *D'Andrea* the Court stated,  "A cause of action for interference with prospective economic advantage contemplates a defendant who has interfered with specific precontractual relations or a prospective relationship between the plaintiff and a third party that would have proceeded to some sort of binding, if not contractual, relationship but for the defendant's interference ." 3 F. Supp.2d at 251 (emphasis added).  The Second Circuit may have imposed a less stringent standard with respect to the type of business relationship that must be shown, it has not altered the "but for" requirement set forth in

the New York cases. See, e.g., Commercial Data Servers, Inc. v. IBM, 166 F. Supp.2d 891, 898 (S.D.N.Y. 2001) ("Plaintiff must specify `some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior.'"). *Finkelstein v. Wachtel*, 00 Civ. 2672 (JSM), at *1 (S.D.N.Y. Apr. 21, 2003)

If the Court determines that more specificity is required at the pleading stage to further identify business parties and relations, consistent with ¶574, ¶576 Plaintiffs respectfully seek leave to replead. Other specific business relations that were alleged to have been harmed included– which  include Plaintiffs have met the specific standards of an prospective and/or existing relationship through which Plaintiffs would have done business but for the allegedly tortious behavior". (*See* Commercial Data Servers, Inc. id)  However Kadlec's admission and joining of NFA's motion to dismiss, that clearly alleges the Complaint pleads that ADMIS interfered in the business relations should be sufficient to withstand a motion to dismiss.

<u>Count 8 -  Aiding and Abetting Conversion</u>

In Count 8 , Plaintiffs bring a cause of action against Kadlec for aiding and abetting conversion.

**I – Common Law** Plaintiffs bring this claims against Kadlec in his individual capacity as CEO of ADMIS Under New York law the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar. The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance. *See, e.g., Design Strategy, Inc. v. Davis,* 469 F.3d 284, 303 (2d Cir.2006) *Lesavoy v. Lane,* 304 F.Supp.2d 520, 526 (S.D.N.Y.2004), 170 Fed.Appx. 721 (2d Cir.2006) (aiding and abetting conversion); *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005) (aiding and abetting fraud). " A corporate officer can be liable for conversion even when acting on behalf of his or her employer. *See LoPresti v. Terwilliger,* 126 F.3d 34, 42 (2d Cir.1997). " *Deangelis v. Corzine*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014)  Standards for aiding and abetting liability under federal securities law are similar and involve three elements: (1) the existence of a securities law violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted in the primary violation. *See Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

**II – Aiding and Abetting under CEA** Plaintiffs also bring this claim against Kadlec in his capacity as Board Member of the NFA for "aiding and abetting: Section 22(b) (1) of the CEA creates liability for

"[a]ny person ... who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter...." "Generally stated, to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008), aff'd, 730 F.3d 170 (2d Cir. 2013), and aff'd, 730 F.3d 170 (2d Cir. 2013)  Further 7 U.S.C. 13(a) makes it unlawful to steal, purloin, convert Plaintiffs money or property (¶364) and NFA 2-4 9061 makes it unlawful to convert and disclose another parties transaction records and trade secrets.(¶XX) Further Kadlec in his capacity as Board Member are bound by the statutory duties of 17 CFR § 1.59 which prohibits employees of the NFA from disclosing any material, non-public information (which includes Plaintiffs electronic data and trade secrets) obtained through special access related to the performance of such duties. Specifically, 7 U.S.C. 25(b) also provides a private right of action to traders (Plaintiffs) for aiding and abetting.

**[A] Primary Violation** Kadlec does not dispute the two underlying conversions of Plaintiffs [a] money and [b] property electronic records, transaction data and trade secrets [5] alleged in Count 7. (See NFA at X ADMIS converted funds) Similarly Kadlec has not disputed the underlying tort of misappropriation. (See Count 6)  (See NFA at 5 stating "ADMIS and High Ridge misappropriated trade secrets"). The FAC clearly alleges that moneys, funds, and property were unlawfully converted. (¶XX)

**[]B] Actual Knowledge** Kadlec's decision to join NFA's MTD is fatal and flawed and should be gronds for dismissal. His legal arguments are also incoherent. Kadlec asserts in his joined motion that he has no knowledge of the conversion. But this contradicts the assertion in Count 7, that ADMIS (and since Kadlec authorized the conversions in the G&F Agreements and ORSA and multiple withdrawals from Plaintiffs accounts, ¶540, Exhbit 9, Kadlec did have knowledge of the conversion, and admits as so in Count 7 (See NFA at 23).  Therefore on this point his motion should be denied.

**[C] Substantial Assistance** Plaintiffs have also pled substantial assistance and incorporate the arguments from Aiding and Abetting Fraud. (Count 4). Without limitation Kadlec substantial assistance was in helping conceal the conversions and also in affirmatively assisting in the conversion. Acts

---

[5] [b] Conversion of Plaintiffs personal financial data, and material non-public trading records Court's have held that the charge of access to and disclosure of [a Plaintiffs'] personal private financial data alleges an exercise of control of that data which is inconsistent with [Plaintiffs'] \private possession of it, and thus an act of conversion. Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017)

undertaken by agent helped to conceal the conversion and therefore constitute "substantial assistance." *Kaufman v. Cohen,* 307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003). *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013)

Kadlec offers no other objection to the claim and since by his joining of motion to admit the underlying torts in Count 7 this cause must be dismissed. For these reasons Plaintiffs have adequately pled Civil Conspiracy against Defendant Kadlec. To the extent the Court deems the allegations not sufficiently clear Plaintiffs respectfully seek leave to amend the civil conspiracy complaint.

### Count 7 Conversion

In Count 7 Plaintiffs bring a valid cause of action for conversion against Kadlec in his individual capacity as CEO of ADMIS. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995). The "[t]wo key elements of conversion are (1) [the] plaintiff's possessory right or interest in the property . . . and (2) [the] defendant's dominion over the property or interference with it, in derogation of [the] plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) . *Deangelis v. Corzine*, 998 F. Supp. 2d 157, 183-84 (S.D.N.Y. 2014) A corporate officer can be liable for conversion even when acting on behalf of his or her employer. *See LoPresti v. Terwilliger,* 126 F.3d 34, 42 (2d Cir.1997). " *Deangelis v. Corzine*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014)

**[A] Conversion of Monies** [A]n action will lie under New York law for conversion of money where there is an obligation to return or otherwise to treat in a particular manner the specific money in question." LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997). Further, "funds of a specific, named bank account are sufficiently identifiable to support a conversion claim." Newbro v. Freed, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006) See Bright View Trading Co. v. Park, 2004 WL 2071976, at *4, 2004 U.S. D.st. LEXIS 18572, at *13 (S.D.N.Y. Sept. 16, 2004);

Plaintiffs have pled that Kadlec and ADMIS failed to treat monies in the manner that they transferred for, and for the purpose that they were transferred for – specifically in compliance with the CEA and CFTC Rules. (Those rules prohibit and make it unlawful to withdraw monies without the authorization and consent of the customer 7 U.S.C 13(c)) Here Kadlec exerted dominion over Plaintiffs funds and the FAC alleges that fees were taken to pay High Ridge, Boshnack, Rothman and others,

without authorization and consent, and to fund ADMIS' debts on its G&F Agreements  (¶XX, ¶XX). The FAC also alleges more and more fees and additional moneys were taken from their account (¶XX). Kadlec joins NFA's MTD to concede that illegal parts of the arrangements included withdrawal of "more and more fees" Therefore Plaintiffs have plausibly pled a count of conversion.  *See Deangelis v. Corzine*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014) holding that a claim for conversion lies when funds given to a party for one purpose—here, to facilitate trades in futures contracts, subject to segregation in compliance with the CEA and CFTC Regulations—is used for another purpose—here, to cover [another party's] debts. *See also Lawson v. Full Tilt Poker Ltd.,*930 F.Supp.2d 476, 487–88 (S.D.N.Y.2013) (rejecting motion to dismiss conversion claim where funds that were assured to be segregated "in fact were improperly comingled with [the defendant company's] operational funds"). Under 7 U.S.C 13(a) the conversion of plaintiffs money and property of value over $100 is unlawful under the laws of the Commodities Exchange Act. (e.g. ¶158, ¶364) Therefore exerting dominion over and with the intent to interfere in Plaintiffs rights to the profits and monies its account Kadlec did intentionally syphon the funds from the trading account, to the exclusion of Plaintiffs and without their authorization and consent. The FAC therefore adequately alleges Kadlec's conversion of Plaintiffs funds. (see *Darashtian* ID)

**[B] Conversion of Electronic Data** Further Plaintiffs have also pled unlawful conversion of its trade secrets, electronic records financial data and property. (see e.g. ¶400). A claim for conversion also applies to electronic records. Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272 (N.Y. 2007)Plaintiffs'confidential financial and trading data, electronic records and trade secrets data were also converted in their unauthorized disclosure to Boshnack, Rothman and HRF. Plaintiffs with owned or had an interest in the property and electronic records stored on the computer. See Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017) The charge of access to and disclosure of [Plaintiffs] personal private financial data alleges an exercise of control of that data which is inconsistent with [Plaintiff's] private possession of it, and thus an act of conversion.

Plaintiffs have also alleged that Kadlec converted Plaintiffs financial data and trading records when it gave them to High Ridge. Kadlec without authorization and consent, exerted dominion, on the confidential trading data and financial records, and acted in manner not consistent with the terms on which he had been given them or the laws of the CEA and CFTC, and instead disclosed them to Plaintiffs competitors (¶XX, ¶XX). Therefore Plaintiffs have adequately pled that Kadlec exerted dominion on

Plaintiffs moneys and property that were provided for one purpose – to use for exclusively for Plaintiffs CTA business and account, and instead unlawfully used for another  purpose, to transfer those asserts, property and moneys to its direct competitors.

**[C] Kadlec's defenses are fatal** In Kadlec's defense to conversion fails. First, by joining NFA's motion to dismiss, he first admits (and certainly does not defend) that the underlying  conversion was done by ADMIS. The FAC also alleges that Kadlec as CEO, directly authorized in the ORSA, and G&F and other conduct, the conversion and dissemination of Plaintiffs funds for his own unlawful purpose  Also Kadlec also admits that ADMIS and High Ridge had "dominion" over Plaintiffs assets, moneys and property. *See Deangelis v. Corzine*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014) Holding corporate officer can be liable for conversion even when acting on behalf of his or her employer.

Kadlec does not dispute any other prong of the claim that Plaintiffs possess rights and/or interest in the property and they are not discussed in this opposition.

For these reasons Plaintiffs have adequately pled Conversion in Count 7 against Defendant Kadlec. To the extent the Court deems the allegations not sufficiently clear Plaintiffs respectfully seek leave to amend the civil conspiracy complaint.

## COUNTS 5 and 6  - MISAPPROPRIATION OF TRADE SECRETS

In Count 5 and 6 Plaintiffs plead a valid cause of action against Kadlec in his individual capacity as CEO of ADMIS. As clearly pled in the FAC, since the conduct of Kadlec is alleged to be unlawful and his individual and commercial interests, Kadlec has no immunity under DTSA. 18 U.S.C. § 1833(a)(1). Subject matter jurisdiction is only granted exemption … for "any otherwise *lawful activity* conducted by a governmental entity of . . . a State." In both Counts 5 and 6, Kadlec's misappropriation was done as a private actor, he has no immunity and these claims are brought in his individual capacity as CEO of ADMIS. Kadlec in his MTD also has failed to defend once or provide any rebuttal to  facts alleged that the conduct was even *lawful*.  (¶158, ¶232, ¶364,¶368,¶371, ¶377, ¶391-4¶01) Therefore his defense of unlawfulness has been waived.

**[A] Plaintiffs have pled a cause of action under New York Law and DTSA** Under the DTSA , a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent. *AUA Private Equity Partners*, *LLC v. Soto*, No. 17 Civ. 8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citing 18 U.S.C. § 1839(5)). The requirements are similar for showing a misappropriation of a trade secret under

the DTSA and misappropriation under New York common law. *See*, *e.g.*, *Drennen*, 235 F. Supp. at 565. For substantially the same reasons that the Complaint sufficiently pleads a DTSA claim, the Complaint also states a claim for misappropriation of trade secrets under New York law. *ExpertConnect, L.L.C. v. Fowler*, 18 Civ. 4828 (LGS), at *12-13 (S.D.N.Y. July 10, 2019)

**[B] Plaintiffs Pled Their Information and Value** Kadlec's main defense is that Plaintiffs did not plead "information" or "value". However he does not cite to one paragraph to support this untrue assertion. Plaintiffs did in fact more than adequately plead the information and describe the trade secrets in detail.

### *(i) Plaintiffs adequately described the information*

Plaintiffs have adequately pled the contours of its trading algorithms to put Defendants on notice of the protectable information, ¶351, ¶676, ¶86, ¶41 – specifically the components of its trading algorithms – e.g the real-time trade secret acquisition of a CTA's timing, execution, volumes, prices, strikes, triggers, and markets, especially in a trading strategy  See Saks Inc. v. Attachmate Corp. , No. 14 CIV. 4902 CM, 2015 WL 1841136, at *18 (S.D.N.Y. Apr. 17, 2015) ; Holding that type of proprietary formula that gives it a unique advantage, such as a complex pricing or **trading algorithm in a financial business** is a trade secret Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc. , 323 F.Supp.2d 525, 537–38 (S.D.N.Y. 2004). *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016) Further NFA Rules 2-4 9061 also acknowledge that a CTA's transaction history and trade details are also a trade secret (see e.g. ¶875, ¶858, ¶77, ¶78 NFA2-4 9061 also acknowledges under its own rules  that a CTA's electronic data, and trading history and transaction history (which discloses their trading activity) is also a trade secret. Therefore it is more than sufficient to put Defendants on notice, that consistent with their own NFA rules, the CTA trade details and transaction records are what are routinely considered trade secrets. ¶875, ¶858, ¶77, ¶78 (see e.g. ¶875 - including trade details, transaction history, trading records,  trading executions, strategies, timing, formulae, compilations, methods. Plaintiff also incorporated by reference ¶75 the relevant sections in the related case ADMIS 20-CV-3873 *ECF*15 ¶26-¶57 ADMIS 3873 - ECF15¶42, ¶40, ¶34 , ¶30 - unique and proprietary reporting in monitoring risks in the Commodities Options derivative markets. The design, functions, features, reporting, capabilities and algorithms are all the competitive trade secrets of Plaintiffs. Courts in this district have accepted relatively general descriptions of alleged secrets at the motion to dismiss stage. *See, e.g., Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) (holding that "technical data, internal pricing information, work product, research, engineering designs" was sufficiently specific

in light of the specific course of conduct alleged). Kadlec doesn't point to any paragraphs to support his superficial arguments. (See (¶351, ¶676, ¶86, ¶41, ¶875, ¶858, ¶77, ¶78.  ¶75, ADMIS-ECF15¶42, ¶40,¶34, ¶30) Also Plaintiffs have alleged that its risk management strategies were trade secrets (¶84). New York law "requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed." *Sit-Up Ltd. v. IAC/InterActive Corp.*, No. 05 Civ. 9292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008). Courts have held that general contours to put Defendants on notice of the protectable information are sufficient (see  *Dardashtian v. Gitman*, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) holding that  "computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce.")[6]

### (ii) Plaintiffs also adequately Pled Value

Plaintiffs pled value in their significant development costs and maintaining the trade secrets secret. *See Medidata Sols*. *v. Veeva Sys*., No. 17 Civ. 589, 2018 WL 6173349, at * 4 (S.D.N.Y. Nov. 26, 2018) (the complaint plausibly alleged that the trade secrets at issue derived independent economic value from being secret when the plaintiff "spent a great deal of time and money . . . developing its technology"); *see also Gen*. *Sec*., *Inc*. *v. Com, Fire & Sec*., *Inc*., No. 17 Civ. 1194, 2018 WL 3118274, at *2 (E.D.N.Y. June 25, 2018) (the complaint plausibly pleaded independent economic value when the plaintiff kept the trade secrets at issue "on a secure computer accessible only to employees"). *ExpertConnect, L.L.C. v. Fowler*, 18 Civ. 4828 (LGS), at *9 (S.D.N.Y. July 10, 2019) e.g.¶79.¶82 - Plaintiffs restrict access to all its Confidential Information on its servers, including but not limited to password access, restrictive access to drives ¶79  ¶861, ¶877.

The FAC pleads value sufficiently in costs and development time See ¶80, ¶81, ¶574-¶576, 3873 ECF15¶34 [7] See e.g. ¶80 - borne from substantial investment of time and significant investment, cost, time  and development by Kumaran and .. designed and built over decades by Kumaran, and substantial

---

[6] Kadlec cite to Northland is misplaced. The IP at issue there is a software program that had a specific software licensing agreement ("EULA") and was a computer program. Therefore the underlying facts are not the same. There is no EULA her. That case is also not a final order, as a Protective Order was granted holding many of the items did meet the standards for trade secrets, including specifically a traders "volumes, strikes, prices, trades and transaction records". ECF102.

[7] ADMIS ECF15FAC¶34 Kumaran had valued the economic interest a multi-million dollar business, as the sole owner and inventor to be sizable investment of economic benefit as a CTA, and therefore individually invested the money to launch various funds as well as labor, with a business model, to run a CPO and hedge fund, called the STORM Fund, LP which would Kumaran, individually would return sizable economic value and benefit.

time, money, research, development and highly-specialized skills, that are not easy to find. Finally the Complaint also competitive value, that its Competitors were not able to develop the product independently (See e.g ¶80, ¶575 -  ¶80 - Its competitors Vision were not able to develop these independently or successfully as is documented by their substantial prior losses in options trading for which they were disbarred, and their documented errors and omissions in risk management services

**[C] Plaintiffs Pled Acquisition, Disclosure and Use**

The DTSA gives rise to a claim for an "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C.§1836(b)(1). "Misappropriation" under the DTSA includes the (1) acquisition, (2) disclosure, or (3) use of a trade secret. *Id*.§ 1839(5).  DTSA provides a cause of action for the a trifecta of misappropriation.  Defendant Kadlec's motion to dismiss, wrongly classifies the liability under the DTSA for "use" and tries to pass the blame to High Ridge.  However under DTSA Plaintiffs have pled all there (a) acquisition (b) disclosure or (c) use. Since Kadlec does not defend at all the prongs of acquisition of disclosure those defenses are waived and his motion should be denied.

**(a)       Acquisition**   Under the DTSA , a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent. *AUA Private Equity Partners*, *LLC v. Soto*, No. 17 Civ. 8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citing 18 U.S.C. § 1839(5)). "Improper means" can involve "theft, misrepresentation . . . [or] breach or inducement of a breach of a duty to maintain secrecy," 18 U.S.C. § 1839(6)(A) *ExpertConnect, L.L.C. v. Fowler*, 18 Civ. 4828 (LGS), at *11 (S.D.N.Y. July 10, 2019) Under DTSA "improper means" include "theft, bribery, ___*misrepresentation*___, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." This definition is identical to the definition in § 1(1) of the UTSA.  Here Plaintiffs have pled Kadlec acquired the trade secret by improper means, specifically by using fraud and misrepresentation in his solicitations to induce customers to open accounts. The FAC alleges clearly that Kadlec knowingly concealed the G&F Agreements and ORSA and other agreements to share trade secrets with HRF prior to account opening, and therefore used fraud and misrepresentation to acquire the trade secrets. (¶XX). This is sufficient to state a claim for improper acquisition.  (Noting Kadlec does not dispute this allegation in his MTD so his defense is waived)

(b)      **Disclosure** Most fatal of all is Kadlec does not dispute the unauthorized disclosure of Plaintiffs. trade secrets. The FAC alleges clearly, that after the improper acquisition Kadlec authorized and caused unlawful disclosure of Plaintiff trade secrets and account information to its competitors, HRF, Felag, Rothman, Boshnack and their competing entities in Stamford, CT. (¶XX)The FAC alleges this disclosure was done without Plaintiffs knowledge and consent. (¶XX) Further the FAC states that HRHC directly competing businesses in the CTA referral business. (¶XX)Further unauthorized disclosures occurred to other third parties including Ms. Villa. The FAC also alleges that other entities too received disclosures including Vision Investment Advisors who went on to complete directly with Plaintiffs (¶XX) Again Kadlec does not dispute the unlawful disclosure of trade secrets in the MTD. Therefore this prong is waived.

**(c) Use** The only defense that Kadlec makes is on the third prong which is "use" this time asserting that only High Ridge is using them. This is not correct. The FAC alleges that the conspirators in the scheme went far beyond High Ridge – which served as a vehicle to continue transfer to trade secrets. The FAC alleges that ADMIS and Kadlec went on to acquire benefit from the trade secrets, in their ongoing partnership and liaison with Vision Investment Advisors, Boshnack, Rothman and their family officers. Use, in the dictionary means "to obtain benefit from". The FAC clearly alleges that Kadlec to this date is acquiring benefit from Plaintiffs trade secrets, as each trade and each misappropriate transaction is clearing through ADMIS. Further the FAC asserts that the ongoing use in unfair competition and unlawful use of Plaintiffs trade secrets by its direct competitors, was designed to create unlawful unfair competition, tat ADMIS and Kadlec equally profits from , as they remain the clearing agent for the misappropriated trades. Therefore Kadlec is using for his benefit, and his ongoing profit, the misappropriate trade secrets.

Therefore Plaintiffs have adequately pled a cause of action for misappropriation of trade secrets under New York law and DTSA in counts 5 and 6 against Defendant Kadlec. To the extent the Court deems the allegations not sufficiently clear Plaintiffs respectfully seek leave to amend the misappropriation claims.

## D – OTHER ARGUMENTS

### I - Statute of Limitations, II - Section 22 Claims, III -  Rule 8

In the interest of efficiency and not duplicating the arguments in this memo Plaintiffs join and included by reference the arguments for Statue of Limitations, Standing, Section 22 and Rule 8 arguments in the Section 22 Joint opposition to the motion to dismiss for CEA claims. Since Kadlec pled no statute of limitations of defense to any other claims they are not relevant here.  Since the arguments under Section 22 rely on very similar statutory basis, the arguments are not duplicated herein.

Kadlec's arguments that Kumaran has no individual claims in this action are also without merit. Kumaran has Article III standing as well as standing under the DTSA as owner of the trade secrets. Further Kumaran has the right to bring both individual and derivative claims as NRCM is a New York LLC. Under New York law, a member of an LLC need not be a manager to sue derivatively on its behalf. *Tzolis v. Wolff*, 10 N.Y.3d 100, 109, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (N.Y. 2008) ("We therefore hold that members of LLCs may sue derivatively."); *Bischoff v. Boar's Head Provisions Co.*, 436 F.Supp.2d 626, 631 (S.D.N.Y. 2006) ("New York LLC members may assert derivative actions under New York law."). Kumaran is also individually harmed by the conduct as a CTA, a registered member of the NFA, and the owner of the trading records and track records. Therefore Kumaran's individual claims have Article III standing. The Court should note Defendants NFA do not dispute standing by Kumaran.

### IV – Kadlec has no State Law immunity for his Claims

#### (i)      In His Individual and Commercial Interests

Kadlec has no immunity under any statute for his actions as a private actor and as CEO of ADMIS. Courts have held that a corporate officer is held liable for the torts and frauds he commits in the state Corporate officers or employees "may be held personally liable for torts committed in the performance of their corporate duties" *Kopec v. Hempstead Gardens,* 264 A.D.2d 714, 716, 696 N.Y.S.2d 53; A corporate officer or director is liable for the torts of the corporation when he or she knowingly participated in the wrong or, in the case of fraud, had knowledge of the misrepresentation *Santa Barbara v. Avallone & Miele, Inc.,* 270 N.Y. 1, 7, 199 N.E. 777). [8] Where an employee, agent or officer induces or conspires with his corporation and others to commit a fraud or a criminal act in which event he is

---

[8] <u>Am. Feeds & Livestock Co. v. Kalfco, Inc.</u>, 149 A.D.2d 836, 837, 540 N.Y.S.2d 354, 355 (1989)

liable. [9]Arthur v. Griswold, 55 N.Y. 400; Downey v. Finucane, 205 N.Y. 251, 98 N.E. 391, 40 L.R.A.,N.S., 307;  Therefore there is no immunity for State Law for his acts individually as CEO of ADMIS that procured the fraud on Plaintiffs in the state of New York. '[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced' " [10] Whether Kadlec's conduct may have been committed "on behalf of the corporation in the course of official duties" does not prevent liability from being imposed upon them. [11]

(ii)    In his capacity as Board Member as Regulator

Plaintiffs have not brought any state law claims against Kadlec in his capacity as Board Member. Therefore CEA does not preempt or apply to these claims,

In the alternative, however to the extent they are determined in that way  "[P]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained.' " *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981), It cannot reasonably be argued that Congress has "unmistakenly ordained" that the state statutes creating private rights of action for commodities regulation are to be preempted by the CEA. Under the CEA, the statute provides that "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." In view of this statutory language, amplified by the legislative history and the analogous case law, we conclude that the statute is intended to preempt state and federal agency regulation of commodities only, while preserving those state rights of action which are adjudicated in state courts. <u>Bishop v. Commodity Exch., Inc.</u>, 564 F. Supp. 1557, 1564 (S.D.N.Y. 1983)With respect to the authority of the states to *regulate* commodities, the CEA provides that CFTC jurisdiction is "exclusive" as to certain enumerated transactions, including "transactions involving contracts of sale of a commodity for future delivery." 7 U.S.C. § 2 (1982 Supp.). The statute further provides that the jurisdiction of state and federal "regulatory authorities" is not limited or superseded by the CEA except as to the enumerated transactions and that "[n]othing in this section

---

[9] Arthur v. Griswold, 55 N.Y. 400; Downey v. Finucane, 205 N.Y. 251, 98 N.E. 391, 40 L.R.A.,N.S., 307; Churchill v. St. George Development Co., 174 App.Div. 1, 160 N.Y.S. 357 <u>Schoenbrun v. M.J.B. Holding Corp.</u>, 13 Misc. 2d 574, 577, 178 N.Y.S.2d 270, 273 (Sup. Ct. 1958)

[10] *Rajeev Sindhwani, M.D., PLLC *1422 v. Coe Bus. Serv., Inc.,* 52 A.D.3d 674, 677, 861 N.Y.S.2d 705, <u>N. Shore Architectural Stone, Inc. v. Am. Artisan Const., Inc.</u>, 153 A.D.3d 1420, 1421–22, 61 N.Y.S.3d 627, 629 (2017)

[11] *Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.,* 52 A.D.3d at 677, 861 N.Y.S.2d 705; *see PDK Labs, Inc. v. G.M.G. Trans W. Corp.,* 101 A.D.3d at 973, 957 N.Y.S.2d 191;

shall supersede or limit the jurisdiction conferred on courts of the United States or any State." Bishop v. Commodity Exch., Inc., 564 F. Supp. 1557, 1563 (S.D.N.Y. 1983)

In his dual capacity wasn't acting in his aegus of or for the benefit of the regulator.  None of the conduct as pertains to Kadlec state laws apply to "operation of the commodities futures markets"

The Commodity Exchange Act preempts state law claims only that "bear upon the actual operation of the commodity futures markets"), cited with approval in Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 59 (2d. Cir. 1996) Further the conduct alleged in this Complaint – viz-a-viz Kadlec – does not bear upon the operations of the commodities futures markets. The gist of causes against Kadlec (as a private actor) is to do with misappropriation of trade secrets, unfair competition, dissemination of confidential and trade secrets information to its competitors and other civil torts. None of these torts  are required for the "actual operations of the futures markets" and instead they sound in civil and commercial claims. Therefore the CEA does not preempt the, and Kadlec's state law claims survive..

**V – Federal Claims were Not Barred** Kadlec, in his individual and commercial capacity of ADMIS, incorrectly states that the Court dismissed all his individual causes of action in their rulings on October 6, 2020 and October 24, 2020. However his interpretation of the Order is not correct. The Order **only ruled** on the jurisdiction of the National Futures Association, Defendant (""NFA"). There was no ruling either way on the Court Order as to claims against Kadlec and the Court certainly did not rule that all claims against Kadlec (individually) were dismissed with prejudice. That would have been a final ruling an appealable order. The Court ruled that Plaintiffs can replead their claims against the NFA, in a certain manner, which Plaintiff did. Kadlec, at his own option and decision, chose not to make an appearance in July 2020 when the reconsideration was being briefed, and the record shows reference to inviting Kadlec, to participate in the briefing which he declines, the only subject matter before the Court in the July 20, 2020 Motion for Reconsideration and subsequent motions was related to the NFA. There was no briefing on Kadlec's individual claims, and neither did Kadlec assert a position or file his own brief or argue his own causes/ Therefore Mr. Kadlec is incorrect that Order 24, 2020 granted a with prejudice dismissal of all his individual claims. Since he remained a Defendant in this action, Plaintiffs have combined his individual claims with his Section 22 claims (which was clearly pled in the FAC as to distinguish the claims in his corporate capacity and his regulatory capacity), and there can be no confusion as to which claims are brought in which capacity. It is not infrequent to bring claims in two capacities (*see* Dardashtian  ID bringing claims in an individual capacity and a derivative capacity).

Therefore claims against Kadlec in his commercial and individual (private) capacity as CEO of ADMIS were not discussed or briefed in the October 6, 2020 and October 24, 2020 orders. Should there have been wording in that order related to Kadlec (individually) which there wasn't Plaintiffs would have appealed or objected to any final dismissal of claims. As such , there was only a ruling of Federal claims against the NFA, and Plaintiffs have, duly, abided by that ruling for the Defendants NFA.

Therefore in his individual capacity, Plaintiffs have claims under the DTSA and RICO, as they do against ADMIS in Related Case. Those claims are briefed in this motion. Kadlec has no immunity in his commercial capacity as CEO of ADMIS as his acts were not in the aegus of his duties, but solely as CEO of commercial and private interests, and for commercial motives. That distinction was made explicitly clear across the FAC in which claims were addressed to Kadlec, in his individual capacity and commercial role as CEO of ADMIS (¶5, ¶43, ¶53, ¶809, ¶857, ¶894, ¶906, ¶920, ¶931). There could be no possible confusion in the wording as to which claims were brought and Kadlec does not point to any paragraphs that support his untenable position that all claims were solely in his capacity as a Board member. Further since the torts and acts by Kadlec were unlawful, and as alleged illegal, DTSA for instance, specifically grants an exemption for unlawful conduct. See supra 18 U.S.C.1833(a)(1) Further it is widely accepted that a party seeking qualified immunity (and Kadlec has not argue qualified immunity) has to meet the burden that his acts were in the interest of his duties of the regulator. Here the FAC alleges that Kadlec acted with private interest and to benefit the profits of ADMIS as CEO. This again hold true that he has no immunity for his acts done for the commercial benefit of ADMIS

And finally there is no immunity for illegal conduct. The thrust of this complaint is that Kadlec's conduct was illegal. Kadlec in his MTD does not defend once (see supra) the legalities of any of the conduct alleged herein, including wire fraud, mail fraud, misappropriation and since he has not met the burden to show how the actions were lawful, immunity is not granted on any level.

For these reasons, Kadlec's individual claims in his personal and private interests as CEO of ADMIS remain unaffected by the claims proceeding against the NFA.

## VI – Motion and Request to Replead

Plaintiffs believe they have adequately pled a cause of action for each of the Claims herein against Kadlec herein. To the extent the Court deems any of the allegations insufficient or unclear, Plaintiffs hereby respectfully seeks leave to replead them and to amend the Complaint. For the foregoing reasons, Plaintiffs claims against Kadlec should not be dismissed as they all state a valid cause of action

Mem 2 Opp Kadlec, Page 42


Respectfully submitted


//SSK//

Samantha Siva Kumaran


//BMA//

Brian M. August

AugustLaw NYC

100 Willougby Street #9E

Brooklyn, NY 11258

Counsel for NRCM