**IN THE UNITED STATES DISTRICT COURT**
**SOUTHTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, ) | |
| Et al ) | Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* ) | Judge: Hon Gregory H. Woods |
| ) | Magistrate Judge: Stewart D. Aaron |
| -against- ) | |
| ) | **PLAINTIFFS OPPOSITION TO** |
| NATIONAL FUTURES ASSOCIATION, LLC ) | **MOTION  TO DISMISS** |
| Et al., ) | **NFA, WAHLS AND KIELA's** |
| Defendants, **)** | **STATE LAW CLAIMS** |
| **)** | |

<u>**PLAINTIFFS OPPOSITION MEMORANDUM OF LAW TO DISMISS NFA, WAHLS**</u>

<u>**AND KIELA'S STATE LAW CLAIMS**</u>

Respectfully submitted,

//SSK//

Samantha Siva Kumaran

Pro-Se Plaintiff

//BMA//

Brian M. August

AugustLaw NY

100 Willoughby Street #9E

Brooklyn, NY 11259

Counsel for NRCM

ii

# **TABLE OF CONTENTS**

Preliminary Statement……………………………………………………………… Pg.X

Count 3 - FRAUD………………………………………………………………Pg. 1

Count 4 – AIDING AND ABETTING FRAUD…………………… ..……………………Pg. 37

Count 7 – CONVERSION …………………………………… …………………………………Pg. 48

Count 8 – AIDING AND ABETTING CONVERSION ……………………………………Pg. 51

Count 10  - CONSPIRACY………………………………………………………...……Pg. 53

Count 9 – TORTIOUS INTERFERENCE…………………….…………………………………Pg. 56

Count  6 – MISAPPROPRIATION OF TRADE SECRETS ………………………………Pg. 61

OTHER ARGUMENTS…………………………………………………………………..Pg.67

Immunity ……….. ,… ……..………………………………………………...……Pg.67

No State Law Preemption  ……….. ,… ……..………………………………...……Pg 67.

Request to Replead  .. ……….. ,… …………………………………………….…..Pg 69

iii

## TABLE OF AUTHORITIES

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi. , 977 F.2d 1147, 1150 (7th Cir. 1992)*

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir.2009)*

*F. Harper F. James, Law of Torts § 7.14 (1956)*

*Lesavoy v. Lane, 304 F.Supp.2d 520, 526 (S.D.N.Y.2004)*

*Aaron Ferer Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)*

*Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010)*

*ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997)*

*Accord In re Veeco Instruments, Inc. Sec. Litig., 235 F.R.D. 220, 232 (S.D.N.Y.2006)*

*Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972);*

*AIM Int'l Trading, LLC v. Valcucine S.p.A., No. 02 Civ. 1363, 2003 WL 21203503, at \*8 (S.D.N.Y. May 22, 2003)*

*Alken v. Lerner, 485 F. Supp. 871, 879 (D.N.J. 1980)*

*American Tobacco Co. v. United States,328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946).*

*Andre Romanelli, Inc. v Citibank, N.A., 60 AD3d 428, 429 [1st Dept 2009]*

*Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 446–48 (S.D.N.Y. 2010)*

*Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir.1983)*

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007)*

*ATSI, 493 F.3d at 101, 105 ; Salvani, 50 F.Supp.3d at 476–77 ; Malenfant, 784 F.Supp. at 144*

*AUA Private Equity Partners, LLC v. Soto, No. 17 Civ. 8035, 2018 WL 1684339, at \*4 (S.D.N.Y. Apr. 5, 2018)*

*Aviles v. S&P Glob., Inc., 380 F. Supp. 3d 221, 283-84 (S.D.N.Y. 2019)*

*Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)*

*Baena v KPMG LLP, 453 F3d 1, 6 [1st Cir 2006]*

*Baird v. Franklin, 141 F.2d 238, 239 (2d Cir. 1944)*

iv

*Banks v. Consumer Home Mortgage, Inc., 01-CV-8508 (ILG), at \*1 (E.D.N.Y. Mar. 27, 2003)*

*Banque Arabe et Internationale D'Invesissement v. Md. Nat'l Bank, 57 F.3d at 153*

*Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)*

*Bateman Eichler, Hill Richards, Inc. v Berner, 472 US 299, 306-307*

*Beauford v. Helmsley, 865 F.2d 1386*

*Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987)*

*Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)*

*Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015)*

*Bischoff v. Boar's Head Provisions Co., 436 F.Supp.2d 626, 631 (S.D.N.Y. 2006)*

*Black v. Finantra Capital, Inc. , 418 F.3d 203, 209 (2d Cir. 2005)*

*Bosco v. Serhant*

*Brass v. American Film Technologies, Inc., 987 F.2d 142, 150-52 (2d Cir. 1993)*

*Brawer v. Options Clearing Corp. 807 F.2d 297, 298 (2d Cir. 1986)*

*Breard v. Sachnoff Weaver, Ltd., 941 F.2d 142, 144 (2d Cir. 1991)*

*Bright View Trading Co. v. Park, 2004 WL 2071976, at \*4, 2004 U.S. D.st. LEXIS 18572, at \*13 (S.D.N.Y. Sept. 16, 2004)*

*Bruce v. Martin, 1990 WL 52180*

*Burns Jackson v Lindner, 88AD2d 50, 72, affd59 NY2d 314).*

*Butterman v. Walston Co.,387 F.2d 822 (7th Cir. 1967)*

*Calvin Klein Trademark Trust v. Wachner, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000)*

*Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004)*

*Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008)*

*Center v Hampton Affiliates, 66 NY2d 782, 784*

*CFTC v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)*

*CFTC v. Sidoti, 178 F.3d 1132 (11th Cir.1999)*

*CFTC v. Trinity Finan. Group, Inc., Comm Fut. L. Rep. 27,179, 1997 WL 820970 (S.D.Fla. Sept. 29, 1997)*

*Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007)*

v

*Chiarella v. United States, 445 U.S. 222, 247 (1980)*

*Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994)*

*Colavito v. N.Y. Orgon Donor Network, Inc., 8 N.Y.3d 43, 50 (2006)*

*Colonial Realty Corp. v. Bache Co.,358 F.2d 178*

*Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990)*

*Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 195–96 (S.D.N.Y. 2006)*

*Commercial Data Servers, Inc. v. IBM, 166 F. Supp.2d 891, 898 (S.D.N.Y. 2001)*

*Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)*

*Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)*

*Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987)*

*Cosmas v. Hassett, 886 F.2d 8, 12-13 (2d Cir. 1989)*

*Cosmas, 886 F.2d at 13. ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997)*

*Cragie v Hadley, 99 NY 131*

*Cragie, 99 NY at 134; accord Reynolds v Snow, 10 AD2d 101, 109 [1st Dept 1960]*

*Curiale v. Peat, Marwick, Mitchell & Co. , 214 A.D.2d 16, 630 N.Y.S.2d 996, 1002 (1st Dep't 1995)*

*Curiale v. Peat, Marwick, Mitchell & Co. , 214 A.D.2d 16, 630 N.Y.S.2d 996, 1002 (1st Dep't 1995) ). Aviles v. S&P Glob., Inc., 380 F. Supp. 3d 221, 283-84 (S.D.N.Y. 2019)*

*Curtis Publ'g Co. v. Butts, 388 U.S. 130, 154–55, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)*

*Dandong v. Pinnacle Performance Ltd. , No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013)[1]*

*D'Andrea v. Rafla-Demetrious, 3 F. Supp.2d 239, 250 (E.D.N.Y. 1996), aff'd, 146 F.3d 64 (1998)*

*Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017)*

*Deangelis v. Corzine, 998 F. Supp. 2d 157, 183-84 (S.D.N.Y. 2014)*

*DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001)*

vi

*DeRosa v. Nat'l Envelope Corp., 595 F.3d 99 (2d Cir. 2010).*

*DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)*

*Dodona I, LLC v. Goldman, Sachs & Co., 847 F. Supp. 2d 624, 637 (S.D.N.Y. 2012)*

*Doubleline Capital LP v. Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018)*

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir.2009)*

*Elbit Sys., Ltd. v. Credit Suisse Grp., 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013)*

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir.2015)*

*ExpertConnect, L.L.C. v. Fowler, 18 Civ. 4828 (LGS), at \*12-13 (S.D.N.Y. July 10, 2019)*

*Fertitta v. Knoedler Gallery, LLC, No. 14–CV–2259, 2015 WL 374968, 5 (S.D.N.Y. Jan. 29, 2015)*

*Filler v. Hanvit Bank, 339 F.Supp.2d 553, 557 (S.D.N.Y.2004)*

*Finkelstein v. Wachtel, 00 Civ. 2672 (JSM), at \*1 (S.D.N.Y. Apr. 21, 2003)*

*Flickinger v. Harold C. Brown Co., 947 F.2d 595, 599 (2d Cir. 1991)*

*Fogarazzo v. Lehman Bros., Inc., 341 F.Supp.2d 274, 294 (S.D.N.Y.2004)*

*Fraternity Fund Ltd., 479 F.Supp.2d at 368; see also Oster v. Kirschner, 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dep't 2010)*

*Free Country Ltd. v. Drennen, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016)*

*Frigitemp Corp. v. Financial Dynamics Fund, Inc., 524 F.2d 275, 283 (2d Cir. 1975)*

*Gaines Serv., 105 Misc.2d at 697, 432 N.Y.S.2d 760*

*Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)*

*Garner, ed., Black's Law Dictionary. 8th Ed. (2004)*

*Ge Dandong v. Pinnacle Performance Ltd. , No. 10 Civ. 8086, 2013 WL 5658790, at \*9 (S.D.N.Y. Oct. 17, 2013)*

*Gen. Sec., Inc. v. Com, Fire & Sec., Inc., No. 17 Civ. 1194, 2018 WL 3118274, at \*2 (E.D.N.Y. June 25, 2018)*

*GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466, (2d Cir. 1995)), cert. denied, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996)*

*Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)*

vii

*Gomez-Jimenez v. New York Law School, 956 N.Y.S.2d at 59*

*Gouldsbury v Dan's Supreme Supermarket, 154 AD2d 509, 510*

*Hammond v. Smith Barney Harris Upham & Co., [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990)*

*Handbook of the Law of Torts § 106, at 697 (4th ed. 1971)*

*Handeen v. Lemaire, 112 F.3d 1339, 1349 n. 2 (8th Cir.1997)*

*Hart v. Rick's Cabaret Int'l, Inc. 967 F. Supp. 2d 901 (S.D.N.Y. 2013)*

*Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir.1990)*

*Henry v Allen, 151 NY 1, 9 [1896]*

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009)*

*Hochfelder v. Midwest Stock Exchange,503 F.2d 364 (7th Cir. 1974)*

*Honeyman v. Hoyt, 220 F.3d 36, 39 (2d Cir. 2000)*

*Houbigant, Inc. v. Deloitte & Touche, LLP, 303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499 (1st Dep't 2003)*

*Houbigant, Inc. v. Deloitte & Touche, LLP, 303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499 (1st Dep't 2003)*

*Hussein vs. City of New York*

*IIT v. Cornfeld, 619 F.2d 909, 922 (2d Cir.1980)*

*In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 530–31 (S.D.N.Y. 2008)*

*In re Beacon Assoc. Litig., 745 F.Supp.2d 386, 410 (S.D.N.Y.2010)*

*In re Cannavest Corp. Sec. Litig., 307 F. Supp. 3d 222, 236–37 (S.D.N.Y. 2018)*

*In re Complete Mgmt., 153 F.Supp.2d at 334; In re Health Mgmt., 970 F.Supp. 192, 203 (E.D.N.Y.1997)*

*In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 428, 465–66 (S.D.N.Y. 2013)*

*In re Gas Reclamation, Inc. Sec. Litig., 659 F.Supp. 493, 504 (S.D.N.Y.1987)*

*In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 330 (S.D.N.Y. 2003)*

*In re J.P. Jeanneret Assoc., Inc., 769 F.Supp.2d 340, 375 (S.D.N.Y.2011)*

*In re Leslie Fay Companies Sec. Litig., 871 F.Supp. 686, 699 (S.D.N.Y.1995)*

*In re Leslie Fay Cos. Sec. Litig., 835 F.Supp. 167, 175 (S.D.N.Y.1993)*

viii

*In re Leslie Fay, 835 F.Supp. at 174*

*In re Marsh & Mclennan Cos. Sec. Litig. , 501 F.Supp.2d 452, 469 (S.D.N.Y. 2006)*

*In re Nat. Gas, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005)*

*In re NovaGold Res. Inc. Sec. Litig., 629 F.Supp.2d 272, 301 (S.D.N.Y.2009)*

*In re Philip Servs. Corp. Sec. Litig., 383 F. Supp. 2d 463, 474–76 (S.D.N.Y. 2004)*

*In re Sanofi-Aventis Sec. Litig. , 774 F.Supp.2d 549, 561 (S.D.N.Y. 2011)*

*In re Scottish Re Grp. Sec. Litig. 524 F.Supp.2d 370, 384 (S.D.N.Y. 2007)*

*In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir.1993)*

*Inc. v. One Groupe Intern., Inc., 354 F. Supp. 2d 357 (S.D.N.Y. 2005)*

*Int'l Fund Mgmt. S.A. v. Citigroup Inc. , 822 F.Supp.2d 368, 387 (S.D.N.Y. 2011)*

*Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013)*

*IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir.1993)*

*Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir. 1989)*

*Jenkins v. McCormick, 184 Kan. 842, 844-845, 339 P.2d 8, 11 (1959)*

*Jones v. Arnold, 359 Mo. 161, 169-170, 221 S.W.2d 187, 193-194 (1949)*

*JP Morgan Chase Bank v. Winnick, 406 F.Supp.2d 247, 252 (S.D.N.Y.2005)*

*Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.)*

*Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001)*

*Kaufman v. Cohen,307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003)*

*Kirschner v. KPMG LLP, 15 N.Y.3d 446, 465 (N.Y. 2010)*

*Kroese v. New York Stock Exchange,227 F.Supp. 519 (S.D.N.Y. 1964)*

*Kronfeld v. Trans World Airlines, Inc., 832 F.2d 726, 732 (2d Cir.1987)*

*Krys v. Pigott, 749 F.3d 117, 130-31 (2d Cir. 2014)*

*Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)*

*Land v. Forgione, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019)*

*Lawson v. Full Tilt Poker Ltd.,930 F.Supp.2d 476, 487–88 (S.D.N.Y.2013)*

*Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005)*

*Lerman v. Flynt Distrib. Co., 745 F.2d 123, 137, 139 (2d Cir.1984)*

ix

*Lerner v. Fleet Bank, N.A.,*459 F.3d 273, 283 (2d Cir.2006)

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)

*Liberty Ridge LLC v. RealTech Sys. Corp., 173 F.Supp.2d 129, 137 (S.D.N.Y.2001)*

*Lingsch v. Savage, 213 Cal.App.2d 729, 735-737, 29 Cal.Rptr. 201, 204-206 (1963)*

*Litras v Litras, 254 AD2d 395, 396; see Alexander Alexander of N.Y. v Fritzen, 68 NY2d 968, 969*

*Litwin v. Blackstone Grp. L.P., 634 F.3d 706, 716–17 (2d Cir.2011)*

*Long Island Lighting v. Transamerica, 646 F. Supp. 1442, 1452 n.13 (S.D.N.Y. 1986)*

*LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997)*

*Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Services, 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005)*

*Lumbermens Mut. Cas. Co., 388 F. Supp. 2d at 305*

*Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (1st Dep't 1987)*

*Marbury Management, Inc. v. Kohn,*373 F.Supp. 140 (S.D.N.Y. 1974)

*Mayfield v. Asta Funding, Inc., 95 F.Supp.3d 685, 697 (S.D.N.Y.2015)*

*McConnell v Commonwealth Pictures Corp. ( 7 NY2d 465, 470)*

*McLean v. City of New York, 12 NY3d at 203)*

*McMahan & Co. v. Wherehouse Entertainment, Inc., 900 F.2d 576, 579 (2d Cir.1990)*

*MDC Corp., Inc. v. John H. Harland Co., 228 F. Supp.2d 387, 397-98 (S.D.N.Y. 2002)*

*Medidata Sols. v. Veeva Sys., No. 17 Civ. 589, 2018 WL 6173349, at * 4 (S.D.N.Y. Nov. 26, 2018)*

*Merrill Lynch, Pierce, Fenner Smith v. Curran, 456 U.S. 353, 395 (1982)*

*Meyer v. Jinkosolar Holdings Co. , 761 F.3d 245, 250 (2d Cir. 2014)*

*Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997)*

*Michelman v. Clark-Schwebel Fiber Glass Corp.,*534 F.2d 1036, 1043 (2d Cir.), cert. denied,429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976)

*Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.1993)*

*Minpeco, S.A. v. Conticommodity Servs., Inc., 552 F. Supp. 332, 337 (S.D.N.Y. 1982)*

x

*Modern Settings v. Prudential-Bache Sec.*, 602 F. Supp. 511, 513 (S.D.N.Y. 1984)

*Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 800–04 (3d Cir.1978)

*Morrow v. Black*, 742 F. Supp. 1199, 1207 (E.D.N.Y.1990)

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983); see also Aronov, 2015

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y.2009)

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)

*Nathel v. Siegal*, 592 F.Supp.2d 452, 464 (S.D.N.Y. 2008)

*Newbro v. Freed*, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006)

*Nomura Sec.*, 280 F. Supp. 2d at 205

*NovaGold Res. Inc. Sec. Litig.*, 629 F.Supp.2d 272, 301 (S.D.N.Y.2009)

*Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)

*Novak*, 216 F.3d at 308. In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 530–31 (S.D.N.Y. 2008)

*Noved Realty Corp. v. A.A.P. Co.*, 250 A.D. 1, 5, 293 N.Y.S. 336 (1st Dep't 1937)

*Ontario Ltd. v. Lencore Acoustics Corp.*, 142 F. Supp.2d 309, 319 n. 4 (E.D.N.Y. 2001) (Glasser, J.)

*Oran v. Stafford*, 226 F.3d 275, 286 (3d Cir.2000)

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 377–79 (S.D.N.Y. 2005)

*Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir.1991)

*Ouaknine*, 897 F.2d at 80

*Overton v. Todman & Co.*, 478 F.3d 479, 487 (2d Cir.2007)

*Pa. Pub. Sch, Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 357 (S.D.N.Y. 2012)

*Penato v. George*, 383 N.Y.S.2d 900, 904 (2d Dep't 1976)

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 181 (S.D.N.Y.2006)

*Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993)

*Pettit v. American Stock Exchange*, 217 F.Supp. 21 (S.D.N.Y. 1963)

*Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 474–76 (S.D.N.Y. 2004)

*Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir.2009)*

*Price v Keyes, 62 NY 378, 384-385 [1875]*

*R&W Technical Servs., Ltd. v. CFTC, 205 F.3d 165, 169 (5th Cir.2000).*

*Restatement (Second) of Agency §§ 272-282 (1958)*

*Restatement, supra, § 551 cmt. 1; accord Chiarella v. United States, 445 U.S. 222, 247-48, 100 S.Ct. 1108, 1124, 63 L.Ed.2d 348 (1980)*

*Rich v. New York Stock Exchange, 522 F.2d 153, 155 n.4 (2d Cir. 1975)*

*Richardson v. Artrageous, Inc., No. 93 Civ. 5221(RPP), 1994 WL 97222 at \*3 (S.D.N.Y., March 18, 1994)*

*Roeder v. Alpha Indus., Inc. , 814 F.2d 22, 26 (1st Cir. 1987)*

*Rolf v. Blyth, Eastman Dillon Co., Inc., 570 F.2d 38, 45 n. 12, 46 (2d Cir. 1978)*

*Rombard v. Chang*

*Ross v. FSG PrivatAir, Inc., No. 03 Civ. 7292, 2004 WL 1837366, at \*5 (S.D.N.Y. Aug. 17, 2004)*

*S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109–10 (2d Cir.2009)*

*Saks Inc. v. Attachmate Corp. , No. 14 CIV. 4902 CM, 2015 WL 1841136, at \*18 (S.D.N.Y. Apr. 17, 2015)*

*Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)*

*Sam Wong & Son, Inc. v. N.Y. Mercantile Exch. , 735 F.2d 653, 661 (2d Cir. 1984)*

*Saratoga County Bank v King, 44 NY 87, 94 [1870]*

*SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018)*

*Schlaifer Nance Co., 119 F.3d at 97 (quoting H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2901)*

*SEC v. Solucorp Inds., Ltd., 274 F.Supp.2d 379, 418-19 (S.D.N.Y. 2003)*

*Securities Exchange Comm. v. Aragon Capital Mgmt 672 F. Supp. 2d 421 (S.D.N.Y. 2009)*

*Sharette v. Credit Suisse Int'l, 127 F. Supp. 3d 60, 79-80 (S.D.N.Y. 2015)*

*Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)*

*Simmons v. Evans, 185 Tenn. 282, 285-287, 206 S.W.2d 295, 296-297 (1947)*

*Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir.1997)*

*Sit-Up Ltd. v. IAC/InterActive Corp., No. 05 Civ. 9292, 2008 WL 463884, at \*10 (S.D.N.Y. Feb. 20, 2008)*

xii

*Somerville v. Major Exploration, Inc.,576 F. Supp. 902, 909 (S.D.N.Y. 1983)*

*States v. Reyes 302 F.3d 48, 54 (2d Cir.2002)*

*Steinberg v. Merrill Lynch, Pierce, Fenner Smith, Inc*

*Strong v. Repide, 213 U.S. 419, 431-433 (1909)*

*Tellabs, 551 U.S, 127 S.Ct. 2499*

*Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17-CV-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017)*

*Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006)*

*Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272 (N.Y. 2007)*

*Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir.1993)*

*Time Warner, 9 F.3d at 268*

*Troyer v. Nat'l Futures Ass'n, 290 F. Supp. 3d 874, 880 (N.D. Ind. 2018)*

*Troyer v. Nat'l Futures Ass'n, No. 1:16-cv-00146-SLC, at *27-28 (N.D. Ind. Sep. 26, 2019)*

*TSC Indus., 426 U.S. at 450, 96 S.Ct. 2126*

*TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 448, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)*

*Tymoshenko v. Firtash, 57 F.Supp.3d 311, 321 (S.D.N.Y.2014)*

*Tymoshenko, 57 F.Supp.3d at 321; see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996)*

*Tzolis v. Wolff, 10 N.Y.3d 100, 109, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (N.Y. 2008)*

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 218 (S.D.N.Y. 2002)*

*United States v. Bush 1:18-cr-00907-PAC (S.D.N.Y. Jan. 28, 2021)*

*United States v. Gonzales,520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)*

*United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989)*

*United States v. Locascio,6 F.3d 924, 943 (2d Cir. 1993)*

*United States v. Long,917 F.2d 691, 697 (2d Cir. 1990).*

*United States v. Nektalov, 461 F.3d 309, 315 (2d Cir.2006)*

*United States v. Pierce, 224 F.3d 158, 165 (2d Cir.2000)*

xiii

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir.2005)

*Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 483-84 (E.D.N.Y. 1998)

*Venture Technology, Inc. v. National Fuel Gas*, 685 F.2d 41, 45 (2d Cir. 1982)

*Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)

*Vitanza v. Bd. of Trade of N.Y. , No. 00 CV 7393(RCC), 2002 WL 424699, at \*3 (S.D.N.Y. Mar. 28, 2002)*

*W. Prosser, Handbook of the Law of Torts § 106, at 697 (4th ed. 1971)*

*Wiener v. Lazard Freres Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998)

*Wight v BankAmerica Corp.*, 219 F3d 79, 86-87 [2d Cir 2000]

*Woodworth v Janes, 2 Johns Cas 417, 423 [Sup Ct 1800]; Stone v Freeman, 298 NY 268, 271 [1948]*

*Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985)

*Young v. Keith*, 112 A.D.2d 625, 627 (3d Dep't 1985).

*Zaretsky v. E.F. Hutton Co., Inc.*, 509 F. Supp. 68, 75 (S.D.N.Y. 1981) (Lowe, J.)

## *PRELIMINARY STATEMENT*

Opp, NFA, State Law Claims, Page 1

## MEMORANDUM OF LAW COUNT 3 FRAUD

In Count 3, Plaintiffs bring claims against Defendants NFA for fraud under New York common law fraud and also under 7 U.S.C. 6(b) Section 22 of the Commodities Exchange Act.

**I - Common Law** The elements of fraud under New York law are: '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.' " Premium Mortgage Corp. v. Equifax, Inc., *583 F.3d 103, 108 (2d Cir.2009)*. Court have held ("[T]he plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff."). Cf., e.g., Houbigant, Inc. v. Deloitte & Touche, LLP, *303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499 (1st Dep't 2003)*

**II - Commodities Exchange Act – Section 22** Plaintiffs have also brought a claim for fraud under the Section 22. The CEA and its accompanying regulations directly proscribe attempts to deceive and defraud in connection with futures and options trading. 7 U.S.C. § 6b(a)(2)(a) (c) conduct in connection with a futures contract provides: It shall be unlawful for any person directly or indirectly: (a) To cheat or defraud or attempt to cheat or defraud any other person; (c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.  Courts holding that there is a private remedy under the Commodity Exchange Act, as amended, for actions in fraud brought under § 4b, *7 U.S.C. § 6b*. Alken v. Lerner, 485 F. Supp. 871, 879 (D.N.J. 1980) See also *Merrill Lynch, Pierce, Fenner Smith v. Curran*, 456 U.S. 353, 395 (1982) )holding exchanges held liable for fraud under private cause of action)

In order to establish liability for fraud, Plaintiffs have the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality. *See Hammond v. Smith Barney Harris Upham & Co.,* [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) 24,617 (CFTC Mar. 1, 1990);[1]

---

[1] *CFTC v. Trinity Finan. Group, Inc.,* Comm Fut. L. Rep. 27,179, 1997 WL 820970 (S.D.Fla. Sept. 29, 1997), *aff'd in relevant part, CFTC v. Sidoti,* 178 F.3d 1132 (11th Cir.1999). *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)*

Opp, NFA, State Law Claims, Page 2

**III - Materiality and Reliance** There is no dispute by NFA or Kadlec that the misrepresentations and/or omissions in this case – namely to conceal the unauthorized involvement of Boshnack, Rothman, Felag and HRF in the Plaintiffs CTA and trading accounts were material. The FAC alleges that without Plaintiffs knowledge, consent and approval the fraudulent scheme involved (i) the concealment of G&F Agreement which placed guarantees and fees on its account; (ii) an unlawful oral risk services agreement ("ORSA"); (iii) unlawful dissemination of trading data and electronic data across interstate lines to its competitors; (iv) unauthorized and excessive ongoing fee arrangements; (v) illegal and excessive margin arrangements, calculations which were non-compliant with CME SPAN; (i) HRF, Boshnack and Rothman's individual guarantees on its trading account who are persons with a litany of disciplinary actions and who were former owners of a disbarred and tarnished FCM Vision Financial Markets, LLC;

A representation or omission is "material" if a reasonable investor would consider it important in deciding  whether to make an investment. *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *R&W Technical Servs., Ltd. v. CFTC,* 205 F.3d 165, 169 (5th Cir.2000). At the pleading stage, a plaintiff satisfies the material requirement of [Rule 10b–5] by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000) (citing Basic, 485 U.S. at 231, 108 S.Ct. 978).

Courts have ruled that misstatements or omissions are material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S, 438, 448, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Thus, Plaintiffs must plausibly allege that Defendants "misrepresentation[s] or omission[s] [were] a 'substantial factor in inducing [them] to act the way that [they] did.' " *Ge Dandong v. Pinnacle Performance Ltd.* , No. 10 Civ. 8086, *2013 WL 5658790, at *9* (S.D.N.Y. Oct. 17, 2013)[2]

Whether a misstatement or omission is material is "an inherently fact-specific finding ... that is satisfied when a plaintiff alleges a statement or omission that a reasonable investor would have

---

[2] (quoting *Curiale v. Peat, Marwick, Mitchell & Co.* , *214 A.D.2d 16*, *630 N.Y.S.2d 996, 1002* (1st Dep't 1995) ). *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 283-84 (S.D.N.Y. 2019)

Opp, NFA, State Law Claims, Page 3

considered significant in making investment decisions." *Litwin v. Blackstone Grp. L.P.,* 634 F.3d 706, 716–17 (2d Cir.2011) Since materiality is a mixed question of law and fact "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)3.

Courts have held that "the CEA is a remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived. As the Fifth Circuit recently explained in *R&W:* In 1974, Congress gave the [CFTC] - [Which they then delegated to the NFA] - even greater enforcement powers, in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising. Remedial statutes are to be construed liberally, and in an era of increasing individual participation in commodities markets, the need for such protection has not lessened. *Id.* at 173 (citations omitted) (emphasis added). Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)

Since NFA does not dispute (with any substance or reference) the materiality or reliance on the misstatements and reliance they are not further elaborated.

B - Standards of Pleading of Fraud under 9(b)

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. The complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993). *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner, Inc. Secs. Litig.,* 9 F.3d 259, 265 (2d Cir.1993); However, not all elements of a fraud claim need be pleaded with equal particularity. Rule 9(b) provides that "[m]alice, <u>intent, knowledge,</u> and other condition of mind of

---

3 See also *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 197 (2d Cir.2009) Dodona I, LLC v. Goldman, Sachs & Co<u>.,</u> 847 F. Supp. 2d 624, 637 (S.D.N.Y. 2012)

Opp, NFA, State Law Claims, Page 4

a person may be averred generally." *See Shields,* 25 F.3d at 1128. (emphasis added). The Court of Appeals has held that "allegations of scienter ... are **not** subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991)

All that is required under Rule 9(b) is that there exist a "minimal factual basis for ... conclusory allegations of scienter." *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994) "In fact, conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.' " *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (*quoting Ouaknine,* 897 F.2d at 80). There are two methods of pleading that may give rise to such an inference. A plaintiff may either (1) identify circumstances indicating conscious or reckless behavior by the defendants, or (2) allege facts showing both a motive for committing fraud and a clear opportunity for doing so. *Shields,* 25 F.3d at 1128; *Cosmas,* 886 F.2d at 13. <u>ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.,</u> 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997)Contrary to NFA's defense, Plaintiffs have more than adequately complied with <u>Rule 9(b)</u>, and the allegations of Scienter (See Section E below).

In bringing its claims Plaintiffs have brought claims for both (I) Fraudulent Misrepresentations and (II) Fraudulent Concealment and Omissions. The Court should note that materially omitted from both NFA's response is any defense of discussion of (II) the material fraudulent concealments and omissions. In this case, Plaintiffs have only brought claims of fraud against NFA and Kadlec. The exact fraudulent misrepresentations apprised to NFA are listed in detail below: [I]nstead of an affirmative misrepresentation, a fraud cause of action may be predicated on an omission of material fact or fraudulent concealment where the defendant had a duty to disclose material information." Kaufman, 307 A.D.2d at 119–20, 760 N.Y.S.2d at 165. Under New York law, the duty to disclose arises if: '(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge.'" *Nomura Sec.,* 280 F. Supp. 2d at 205 (citation omitted). The Court should note that NFA's MTF is silent on their omissions of material facts and material concealments which form the basis. This is fatal. The FAC was expressly clear ¶XX-¶XX that the cause of action against NFA for fraud was alleged not just for material misstatements but also for concealments or omissions.

Opp, NFA, State Law Claims, Page 5

C – Plaintiffs Allegations of Fraud Against NFA

Plaintiffs have alleged two types of fraudulent conduct against NFA. Both fraudulent misrepresentations and fraudulent concealments (material omissions). Plaintiffs have alleged that NFA provided inaccurate or incomplete information that it had a duty to update to prevent such statements from being misleading. (See Duties Section # infra). NFA's defense that Plaintiffs did not plead which statements were fraudulent is not correct. Below is a detailed list of misstatements and omission made by each Defendant.

Plaintiffs have incorporated to meet the Rule 9(b) a Detailed **Exhibit 3** incorporated by reference that explains in detail to meet the detailed standards requested by Defendants NFA to explain each of the fraudulent statements and omissions and why they were fraudulent. **Exhibit 1 and** 2 are NFA publications also incorporated by reference to support the fraud claims.. The following is a list of fraudulent misrepresentations or misstatements made by NFA as alleged in the FAC

> Statement 1 - ¶60 – Thorough Fitness Examination
> *"If High Ridge applies for membership, NFA will conduct a "**thorough**" fitness examination." (Emphasis added)*
>
> *Statement 2 -* ¶60 *"If the firm becomes registered, NFA will **ensure** that* <u>any customer</u> *who inquires about High Ridge through NFA's BASIC system will be provided with information about all of Vision's disciplinary actions*." (*See ECF57.*Att 5, Pg.2)
>
> Statement 3 –NFA's entry of **ADMIS's financial condition** is misleading and incomplete.
>
> Statement 4 – Exhibit 1, "BASIC provides **transparency** into FCM's financial condition"
>
> Statement 5 – Exhibit 2 – BASIC, Pg. 13. Everything You Need to Know
>
> Statement 6 – Exhibit 2 – NFA's mission and role to "protect investors"
>
> Statement 7  - NFA's statements made by employee Muhammed Afzal were misrepresentations and also contained omissions.¶704, ¶695, ¶697

Detailed Explanation Subject to Rule 9(b) and why the statements are rendered false, misleading and inaccurate under Securities Law, and the duty to rendered past statements from being misleading is pled subject to Rule 9(b) detail **in Exhibit 3  (Rule 9(b) detail attached hereto)** to meet the detail requirements in opposition to the motion by Defendants.

Opp, NFA, State Law Claims, Page 6

The following is a list of fraudulent concealments and omissions pled against NFA in the FAC (Also explained in detailed in Rule 9(B) Fraud explanation **Exhibit 3**

- Omission #1 -  Material concealments and omissions in the NFA Basic system in Lazzara's and LCI's entry are actionable as fraud

- Omission #2 -  NFA's and Kadlec's material concealments and omissions in the NFA Basic system in ADMIS's entry are actionable as fraud

- Omission #3 – NFA's material concealments and omissions made by Agkok in September 2017 contained material omissions.

- Omission #4 – NFA's material concealments and omissions made by Agkok, Paschen in September and October 2017 contained material omissions.

- Omission #5 – NFA's material concealments and omissions by Muhammed Afzal were misrepresentations and also contained omissions.

- Omission #6 – NFA's omissions and material concealment that it had approved the risk services agreements to share Plaintiffs data are actionable as fraud.

- Omission #7 –NFA's material concealments and omissions in its not disclosing its conflicts of interest and that had already approved the ORSA and G&F Agreement and other the conduct prior to inducing an Arbitration, are also actionable

Explanations for each of the fraudulent concealments and omissions and how they are actual as fraud under the heightened pleading standards of Rule 9(B) are provided in **Exhibit 3.**

[C2] – Fraud by Kadlec

In addition, Plaintiffs have stated Kadlec made fraudulent statements and omissions in his statements to Plaintiffs. NFA is liable for the fraud by Kadlec. Those fraudulent omissions also occurred in March 2018 (¶XX, ¶XX) It is well accepted that a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals ( *see Henry v Allen*, 151 NY 1, 9 [1896] [imputation is "general rule"]; *see also Cragie v Hadley*, 99 NY 131; *accord*

Opp, NFA, State Law Claims, Page 7

*Center*, 66 NY2d at 784). The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent" ( *see Andre Romanelli, Inc. v Citibank, N.A.*, 60 AD3d 428, 429 [1st Dept 2009]). *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)

NFA has admitted that the well-pled allegations in the Complaint show fraud by ADMIS and High Ridge. The FAC is rife in allegations and facts that Lazzara, ADMIS, Kadlec and Vision Defendants made repeated fraudulent misrepresentations to Plaintiffs both in the solicitations of the futures accounts, including in public literature, and also in communications and statements. Among the litany of fact based plausibly pleading fraud. Further Kadlec's signature was on the G&F Agreement and also overseeing the ORSA, showed his direct involvement in the fraud.

## II – Fraudulent Omissions and Concealment

NFA and Kadlec's motion to dismiss is completely vacant on the fraudulent omissions and concealment that was well-plead in Plaintiffs' complaint. The FAC alleges material omissions of underlying fraudsters ADMIS and Kadlec. Plaintiffs have categorized the fraudulent omissions by ADMIS and Kadlec into at least six material areas which were not just material but resulted in damages and excessive charges and penalties to its account. In all cases Plaintiffs have explained the information was material, and Kadlec had a duty to disclose the information, prior to Plaintiffs opening accounts at ADMIS. There is no dispute at this point, before the District Court, that fraudulent concealment, and material omissions, that demonstrate fraud and deception (¶XX, ¶XX) NFA's admissions that an underlying fraud was committed should be noted. See also CFTC v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002) ("Fraudulent omissions accepted as a matter of law")

Opp, NFA, State Law Claims, Page 8

     (a)  Undisclosed *fees* that were mandatory to be disclosed prior to account opening, ¶XX

     (b)  Undisclosed *margin allowances* inconsistent with CME Span also mandatory to be disclosed prior to account opening ¶XX

     (c)  Undisclosed *risk services*, not in compliance with the CFTC Reg 1.11 and mandatory to be disclosed under CFTC 1.55 (¶*XX)*

     (d)  Undisclosed *discretionary authority* granted on margining and liquidation, expressly prohibited under the CEA without Plaintiffs' knowledge and consent, and mandatory to be disclosed (¶XX)

     (e)  Undisclosed guarantees by NFA members placed on its account, mandatory to be disclosed under CFTC 1.55 (¶XX)

     (f)  Undisclosed sharing and dissemination of electronic trading records, material, non-public trading records to competitors and persons with conflicts of interest. ¶XX,¶XX,  Mandatory to be disclosed under CFTC 1.59

Plaintiff have also alleged actional omissions in conversations with Kadlec after the fraud was uncovered. In emails and in person communications on or around April 2018, Plaintiffs spoke to Kadlec inquiring about information about how their account was handled. Kadlec had a duty to disclose to Plaintiffs all material information related to the account, and had superior knowledge of the G&F Agreements and the ORSA and that he had approved its dissemination to its competitions. The FAC alleges Kadlec in his communications continued to material conceal and omit any dialog about G&F Agreements and ORSA, which Plaintiffs were entitled to know and Kadlec had a duty to disclose. These omissions are also actionable as fraud. (¶XX, ¶XX)  Therefore Kadlec, through joining NFA's motion to dismiss in Count 3, has admitted to the underling fraud. NFA also does not dispute Kadlec's imputation for the fraud claims. (see Section E). As stated supra, Kadlec's actions, are imputed to the principal. Kadlec's motion to dismiss argue his actions were in his capacity as NFA Board Member. Plaintiffs have both allegation in both his capacities.  All Kadlec's omissions, including related to VIA and their ongoing registration, are imputed to NFA (See Supra) Therefore Plaintiffs have adequately pled fraud imputed to NFA. Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud ( *see e.g. Price v Keyes*, *62 NY 378, 384-385* [1875] As we explained long ago, a corporation "is represented by its officers and agents, and their fraud in the course of the corporate dealings [] is in law the fraud of the corporation" ( *Cragie*, *99 NY at 134*; *accord Reynolds v Snow*, *10 AD2d 101, 109* [1st Dept 1960], *affd8 NY2d 899*). Like a natural person, a corporation must bear the consequences when it commits fraud ( *see e.g. Wight v BankAmerica Corp.*, *219 F3d 79, 86-87* [2d Cir 2000] [under "fundamental principle(s) of agency," managers' misconduct within the scope of their employment is imputed and "bars a trustee from suing to recover for a wrong

Opp, NFA, State Law Claims, Page 9

that he himself essentially took part in"]).  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)/
Therefore NFA is also liable for Kadlec's fraud.

[D] – KNOWLEDGE  -  FACTS OF FRAUD ALLEGED TO HAVE KNOWN

    Fraud is defined by Black's Law Dictionary as: A knowing misrepresentation of the truth or
concealment of a material fact to induce another to act to his or her detriment.Bryan Garner, ed., Black's
Law Dictionary. 8th Ed. (2004), s.v., "fraud." Consequently, fraud includes any intentional or deliberate
act to deprive another of property or money by guile, deception, or other unfair means

    **Exhibit 4** attached is a summary table of Actual Knowledge of the Defendants. Plaintiffs have

also alleged actual knowledge Pre-September 2011 of the illegal ORSA (starting in November 2014 and

continuing and all material aspects of the fraud. NFA's role in the scheme and conspiracy was to conceal

and to permit the concealment of Boshnack, Rothman, Felag and HRF's material role in customer and

traders accounts. The FAC alleges that NFA, Kadlec, Wahls and Kiela were primary violators of the

fraud, and had actual knowledge.  FAC pleads <u>actual knowledge</u> of the OSRA and its material terms

dating back to Nov 2014 and the concealment thereof. (¶XX) The FAC also describes NFA, Wahls,

Kiela and Kadlec's role in the fraudulent scheme as authorizing illegal ongoing market participation of

Boshnack, Rothman Felag and HRF, in an "oral risk services agreement" ORSA which would have

resulted in disqualification of all four persons as members. ¶XX, ¶XX.  The FAC specifically states facts

of actual knowledge material terms and aspects of the ORSA, dating back to November 1, 2014  were

unlawful and the core details of the fraudulent scheme The FAC alleges those unlawful terms permitted

Boshnack to undertake unlawful margining and other discretion ¶252 These specific terms, and

contractual provisions contained in the OSRA were signed and proved by Nicole Wahls ¶XX , Kiela

(¶XX) and Kadlec (¶¶XX).  NFA's MTD wholly fails to defend or deny the allegations in the ORSA.  Other

supporting facts showing the existing of the ORSA and NFA's knowledge are Vision's admissions in

the Vision MTD .Vision MTD at 12-13  admits "*Crucially, the arrangement between ADMIS and High

Ridge was well-known to the National Futures Association ("NFA")"* In related case also, ADMIS has

admitted NFA compliance officers are to be called as witnesses.

      Vision MTD at 33     - High Ridge and Felag, **with NFA's knowledge,** performed risk
      management services for ADMIS;… The agreements incorporate ADMIS's obligations under
      the relevant law ..was **known to the NFA and subject to NFA audit**.

      Vision MTD at 4, n8  - -  High Ridge and ADMIS have **undergone multiple independent audits**
      since the arrangement was consummated; never was a red flag raised by the arrangement.

Opp, NFA, State Law Claims, Page 10

All these facts above, plausibly allege that NFA and Kadlec had actual knowledge of the fraud. Therefore Plaintiffs have plausibly alleged facts that NFA had <u>actual knowledge</u> of the fraudulent scheme. A Table of Actual Knowledge is included and incorporated in **Exhibit 4** attached.

[2] Kadlec's Additional Actual Knowledge

Of particular importance is a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals ( *see Henry v Allen*, *151 NY 1, 9* [1896] [imputation is "general rule"]; *see also Cragie v Hadley*, *99 NY 131*; *accord Center*, *66 NY2d at 784*). *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)

In addition to the above, the facts show that Kadlec also had direct and actual knowledge of all the foregoing in his role as Board Member of the NFA. Since Kadlec serves on the Board of Directors[4] he is also an agent of the NFA and bound by the duties of the NFA. Kadlec also serves as CEO of ADMIS, and he had direct knowledge of all the fraudulent activities above, including but not limited to all facts above, including the fraudulent solicitation of Plaintiffs account.  "An agent's knowledge is imputed to its principal. *Restatement (Second) of Agency* §§ 272-282 (1958)." *Long Island Lighting v. Transamerica*, 646 F. Supp. 1442, 1452 n.13 (S.D.N.Y. 1986). This is also adopted by the Second Circuit. At the very least, Kadlec had knowledge of the fraud, and therefore NFA did. "Under New York law, knowledge acquired by an agent acting within the scope of its agency is imputed to the principal, even if the information was never actually communicated." *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),266 F.3d 112, 122* (2d Cir.2001). *See also Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013)

Kadlec, acted during the relevant period as also a Board Member of NFA, and was instrumental at facilitating the deals, ORSA, G&F Agreements, and fraudulently concealing the arrangements and not making the required disclosures to customers, that perpetrated the fraud, his knowledge is imputed to the NFA, and simultaneously acted as CEO of ADMIS. (Noting neither NFA nor Kadlec dispute or argue the dual role.  Further NFA on 13 only disputes imputation for Plaintiffs pleading of "violations' of NFA bylaws and rules. NFA does not dispute imputation for "knowledge" or for allegations of "fraud". Since Kadlec acted as an agent and Board Member of NFA all his action, continuing to date, to perpetrate the

---

4 The purpose of the Board of Directors in Section 1. **Section 1: General.** The duties of the Board of Directors shall include the management of NFA's business, the adoption of NFA's Bylaws, and the fulfillment of NFA's fundamental purposes.

Opp, NFA, State Law Claims, Page 11

fraud, acting as agent of NFA, are also imputed to NFA. Since Kadlec was an agent of the NFA, his knowledge is also imputed to NFA. See *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 479-80 (N.Y. 2010) The agency law rule of imputation generally presumes that a principal knows and approves of the acts of, and shares the knowledge of, its agent ( *see generally Center v Hampton Affiliates*, *66 NY2d 782, 784*). This "general rule" is undergirded by the "presumption that an agent has discharged his duty to disclose to his principal `all the material facts coming to his knowledge with reference to the subject of his agency `" ( *id.*, quoting *Henry v Allen*, *151 NY 1, 9* [1896]).

NFA in their MTD also admit "ADMIS and High Ridge" perpetrated the fraud. (NFA at ¶) The FAC also alleged Kadlec was a key facilitator of the fraud. (¶XX).  NFA's admissions that ADMIS knew of and directly participated in the underlying fraud, therefore supports plausible facts that Kadlec also knew of the fraud.  Therefore Kadlec's knowledge as an agent, is imputed automatically to the Board and the NFA. When a Member of its Board, and acts as an agent. NFA concedes,

NFA reference on Pg. 13 (n9)  that as regards to Count 1, they acknowledge a Principal-Agent relationship and cited their only defense that Kadlec's violations of the bylaws and rules did not impute to NFA by falsely claiming that Plaintiff did not plead any direct rules or violations by Kadlec. Kadlec's violations of NFA bylaws and rules were well-pled and are addressed in Count 1 and do impute to NFA. *In re Palladium* also acknowledges as does NFA, the principal-agency relationship of Kadlec.

Neither NFA or Kadlec has argued the adverse interest exception, and therefore it is not addressed here and considered waived. Further Kadlec's ongoing tenure on the Board, supports that there is no adverse interest exception that applies. Therefore, the Complaint alleges NFA had "actual knowledge " of the fraud by virtue of Kadlec being NFA's agent. Neither NFA nor Kadlec has argued the adverse interests defense so it is not discussed and waived.

(i)    . Facts That Kadlec Had Actual Knowledge Of Include without limitation
- Actual Knowledge Disclosures of Fee Withdrawals Were Not being made ("Trailing Fees and Commissions")
- Actual Knowledge that Disclosures of Risk Management Services ("OSRA") were not being made to customers and Plaintiffs
- Actual Knowledge Disclosures not being made of Material Financial Information that Accounts were guaranteed by Boshnack, Rothman and HRF,
- Disclosures of Margin Related activities were not consented to or made to Customers.
- Actual Knowledge that Margin Allowances and other Non-Compliant Margin were being used
- Actual knowledge that HR, Felag, Boshnack, Rothman had discretionary authority to add and extend margin and liquidate account on customer accounts, which is not black letter

Opp, NFA, State Law Claims, Page 12

> law impermissible under the CEA and constitutes illegal and fraudulent market
> participation subject to statutory disqualification.

¶263-¶264 - Under CFTC Reg 1.57(iv), it is expressly clear that an IB is not permitted to act on behalf of an FCM. Therefore NFA and Kadlec's approval of this deal was impermissible under the Act

NFA Rule 2-2- (i) Act in any capacity requiring registration under the Act unless the Member or Associate is either registered in that capacity or exempt from registration.

### [3] Actual Knowledge Post September 2017

There is no dispute that NFA had knowledge post September 27 and 29, 2017. The FAC provides dates and times of email exchanges documented on several occasions the underlying fraud in complaints to Ms. Funda Agkok. Those emails document s and material contents documented details of the fraud. Other emails were documented to the NFA in October 19, 2017 with dates and times, speaker and event. *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d at 253–55 (claim survives motion to dismiss based, in part, on email exchanges by, among and to the defendants detailing the transactions at the core of the fraudulent scheme and defendants' understanding of their wrongful nature).

Therefore the FAC clearly alleges that Plaintiffs documented in written correspondence to the NFA specific details of the fraud – including (a) its confidential and trade secret CTA transaction records were being disclosed to third parties who were NFA members without authorization and consent (b) unauthorized fees (as well as phoned and emailed the NF) Further NFA concedes in its brief, that it knows of the fraud. These were, to wit,  "illegal aspects of an ORSA", and "fraudsters" .

(a)     The Complaint also plead specific and actual knowledge by Wahls and Kiela

FAC also pleads that in her multiples audits dating back to November 2014 Wahls and Kiela and NFA was material in the execution of the documents to facilitate the scheme.  NFA continued to partake in the scheme notable signing audits further authorizing all terms of unlawful activity NFA, Wahls and Kiela have offered no defense or dispute on the unlawful terms or the violations of the law or their signatures on documents condoning the fraud. (¶430-¶455, ¶¶453-¶463). In fact NFA's admission that the ORSA contain any illegal terms whatsoever renders the entire agreement null and void. NFA and Wahls not only knew of the fraud, they overtly continued it.

(c) The Complaint also plead specific and actual knowledge by NFA from Afzal

The FAC also alleges detailed correspondence to Afzal including specific documents listing compliance violations and dates and times of correspondence with NFA. (¶682-725) After receipt of this, NFA then registered Vision Investment Advisors, continued to commission and report make

fraudulent statements in filings to the CFTC and conceal Rothman, Boshnack and Felag's true and unlawful market participation conducting activities as an FCM, that they were not registered to do cuaing further injury and damage to Plaintiffs. Therefore their can be no dispute, that *after* September 27, 2017 Defendants NFA, Kadlec, Wahls and Kiela had actual knowledge of the fraud.

[E] -  DUTY TO DISCLOSE

To satisfy a claim for fraudulent concealment and material omissions Plaintiffs have also shown that NFA and Kadlec had a duty to disclose that information. NFA argues that only in circumstances of a fiduciary duty does it have a duty to disclose under Aiding and Abetting Fraud. This analysis  is flawed in multiple aspects. NFA relies on a single irrelevant case law *Land v. Forgione*, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019) for its proposition that the only duty it disclose was if it was a fiduciary. First, *Land v. Forgione* is a case related to a restaurant owner and not a regulated entity [SRO] with a statutory mandate to uphold, comply with and enforce its own compliance laws. Therefore *Forgione* is not relevant or precedent case law and is not in anyway applicable to the Commodities Exchange Act. Plaintiffs allege that NFA had a statutory duty to disclose information to plaintiffs, and also a duty to investigate. Further as described below, NFA had a special duty to Plaintiffs as registered members of the NFA. In addition its duties were also by virtue of its special knowledge and trust and confidence, NFA also  had a quasi-fiducoiary and/or fiduciary to Plaintiffs. Further, NFA has access to superior knowledge and material information, and they knew Plaintiffs were acting on miskaen beliefs, and NFA had duties under the Special Facts doctrine. Finally NFA had duties under the CEA, to not engage in any scheme to defraud. See 7 U.S.C 6(b) , NFA 2-2 etc.

These duties applied to both Count 3 and Count 4 for Aiding and Abetting fraud. To state a material misstatement or omission claim under Securities Laws (and Commodities Exchange Act) , a plaintiff must "allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007) (citing Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) ). In re Cannavest Corp. Sec. Litig., 307 F. Supp. 3d 222, 236–37 (S.D.N.Y. 2018) Under the standards of omission claims under CEA 7 U.S.C. 6(b) Plaintiffs have pled the requisite Scienter (*See* Section G infra).

Opp, NFA, State Law Claims, Page 14

(A)    NFA and Kadlec had a Statutory Duty to Comply with Its Own Laws and the Anti-Fraud Provisions

As a first matter, unlike *Forgione,* NFA as an SRO, has a statutory duty and mandate to comply with its own rules, and regulations including the antifraud provisions of 7 USC 6 (b). *See Brawer v. Options Clearing Corp. 807 F.2d 297, 298 (2d Cir. 1986)*

> The introductory paragraph of § 19(g)(1) of the Securities Exchange Act of 1934, *15 U.S.C. § 78s(g)(1),* in relevant part, provides:  Every self-regulatory organization **shal**l comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules. . . . 78s(g)(1) Compliance with rules and regulations  (1) **Every** *self-regulatory organization* **shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules, and (subject to the provisions of** *section 78q(d) of this title***, paragraph (2) of this subsection, and the rules thereunder) absent reasonable justification or excuse enforce compliance—**

Similar provision proscribe NFA's duties as an SRO under the Commodities Exchange Act.

> 7 U.S.C. 21 § (p) (1)  Standards for registration; Commission findings
> **An applicant association shall not be registered as a futures association unless the** *Commission* **finds, under standards established by the** *Commission***, that—** (1)  such association is in the public interest and **that it will be able to comply** with the provisions of this section and  **the rules and regulations thereunder and to carry out the purposes of this section**;

Among the rules and regulations that NFA has a duty to comply with are the anti-fraud provisions of the CEA which state 7 U.S. Code § 6b - Contracts designed to defraud or mislead  **It shall be unlawful—**

(1)   for any *person*, in or in connection with any order to make, or the making of, any *contract of sale* of any *commodity* in *interstate commerce* or for future delivery that is made, or to be made…. (A)  to cheat or defraud or attempt to cheat or defraud the other *person*; ..(C)  willfully to deceive or attempt to deceive the other *person* by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for, in the case of paragraph (2), with the other *person*;5

See also 7 U.S. Code § 13(c.) Therefore under NFA's own statutory duties and regime, NFA had a duty to disclose not to engage in any means whatsoever in any device, scheme or fraudulent conduct.

(B)    NFA and Kadlec had a Duty to Act and Investigate and Enforce Compliance and Other Statutory laws

NFA's statutory duties extend to protection of investors in multiple delegated areas  without limitation

> 7 U.S.C. 21 § (p) (1)  establish … a program **to audit and enforce compliance with such standards;**

---

5 NFA 2-2 No Member or Associate shall (a) Cheat, defraud or deceive, or attempt to cheat, defraud or deceive, any commodity futures or swap customer or counterparty.

Opp, NFA, State Law Claims, Page 15

7 U.S.C. 21 § (p) (7)  **the rules of the association are designed to prevent fraudulent** and manipulative **acts and practices**, to promote just and equitable principles of trade, in general, **to protect the public interest**, and to remove impediments to and perfect the mechanism of free and open futures trading;

NFA's statutory duties included without limitation (See e.g. FAC. ¶64)

    (i)    to establish training standards and proficiency testing for persons involved in the solicitation of transactions, their supervisors and a program to audit and enforce compliance with such standards under 7 USC 21(p)(1) "*Sales Practices*";

    (ii)    to establish special supervisory guidelines **to protect the public interest** relating to the **solicitation by telephone of new futures or options accounts** 7 USC 21(p)(4) "*Telemarketing Supervision*"

    (iii)    **to enforce compliance** and **prevent market participation fraud**, and to protect market participants, customers and members and to design rules to **prevent fraudulent and manipulative acts and practices**, to promote just and equitable principles of trade, in general, **to protect the public interest** and remove impediments to and perfect the mechanism of free and open futures trading (includes disciplinary processes programs) 7 USC 21(b)(7) (8)(9); ("*Compliance*");

NFA's duties also included enforcing compliance and therefore had a duty to investigate the compliance laws, and take action under its mandatory requirements. (See also Scienter, duty to act). Among those statutory mandates are

    (a)    17 CFR § 170.5 - Prevention of fraudulent and manipulative practices which mandates that NFA <u>must</u> establish programs to protect customers and options customers, and must promote fair dealing, and <u>must</u> monitor and enforce compliance for option customer protections.

    (b)    17 CFR § 170.3, NFA must assure faire interest of the members, and 'no single group or class of members shall dominate or otherwise exercise disproportionate influence on any governing board of an association."

Under the equal rights, NFA had a statutory duty to Plaintiffs to protect their accounts as options customers and treat their concerns equally, as well as prevent fraudulent practices to harm options customers. Therefore they <u>equal duties to plaintiffs</u> as well as Conspirators to investigate their compliance laws. Therefore NFA did have a statutory duty to act and a duty to investigate as well as a duty to disclose fraud.

(C) NFA and Kadlec had a Duty to Disclose with Superior Knowledge

In addition, New York recognizes a duty to speak in three situations: first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth, *see Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672* (1931) (Cardozo, J.); second, when the parties stand in a fiduciary or confidential relationship with each other, *see Allen, 945 F.2d at 45*; and third, "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of

Opp, NFA, State Law Claims, Page 16

mistaken knowledge." *Aaron Ferer Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123* (2d Cir. 1984); *accord Young v. Keith, 112 A.D.2d 625, 627* (3d Dep't 1985).

NFA and Kadlec also had a duty to disclose where it had superior knowledge. Plaintiffs have alleged the G&F Agreements and ORSA were not readily available information and NFA and Kadlec has superior knowledge. New York Courts have applied the rule of "superior knowledge" in an array of contexts in which silence would at one time have escaped criticism. *See Minpeco, S.A. v. Conticommodity Servs., Inc., 552 F. Supp. 332, 337* (S.D.N.Y. 1982); *Noved Realty Corp. v. A.A.P. Co., 250 A.D. 1, 5, 293 N.Y.S. 336* (1st Dep't 1937). "It is no longer acceptable, if it ever was, to conclude in knowing silence, a transaction damaging to a party who is mistaken about its basic factual assumptions when . . . he would reasonably expect a disclosure." *Gaines Serv. Leasing Corp. v. Carmel Plastic Corp., 105 Misc.2d 694, 697, 432 N.Y.S.2d 760* (N.Y.Civ.Ct. 1980), *aff'd without opinion, 113 Misc.2d 752, 453 N.Y.S.2d 391* (N.Y.App.Term. 1981). New York has joined other jurisdictions in limiting the "privilege to take advantage of ignorance," *Restatement, supra,* § 551 cmt. 1; *accord Chiarella v. United States, 445 U.S. 222, 247-48, 100 S.Ct. 1108, 1124, 63 L.Ed.2d 348* (1980) (Blackmun, J., dissenting), and has rejected "the dubious business ethics of the bargaining transactions with which deceit was at first concerned," Prosser, *supra,* at 696; *accord Gaines Serv., 105 Misc.2d at 697, 432 N.Y.S.2d 760.* The FAC has alleged that by concealing the G&F Agreements and ORSA, Defendants NFA and Kadlec "knew that the plaintiff was acting under a mistaken belief with respect to a material fact." *Frigitemp Corp. v. Financial Dynamics Fund, Inc., 524 F.2d 275, 283* (2d Cir. 1975. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150-52 (2d Cir. 1993)

(D) 98% LEGAL  NFA and Kadlec Duty to Disclose under Insider Trading Laws

NFA and Kadlec are also prohibited under the Insider Trading rules from CFTC Reg 1.59 (d) from misusing or disclosing material non-public information and are bound by duties to disclose any unlawful access to material non-public information. 6CFTC Reg 1.59 prohibits self-regulatory organization board and committee members from using or disclosing material, non-public information obtained. Under the insider trading laws and 10(b) rules since NFA and Kadlec had material knowledge

---

6 CFTC Reg. 1.59 (d) Prohibited conduct. (i) No employee, governing board <u>member</u>, committee <u>member</u>, or consultant shall.. (ii)    Disclose for any purpose inconsistent with the performance of such <u>person</u>'s official duties as an employee, governing board <u>member</u>, committee <u>member</u>, or consultant any material, non-public information obtained through special access related to the performance of such duties.

that HRF, Boshnack, Rothman and Felag has obtained material non-public information they also had a duty to speak and disclose that to Plaintiffs to stop further harm – not just permit them to start a directly competing CTA called Vision Investment Advisors, based on improperly acquired trade secrets. (S

### (E) NFA and Kadlec had a Duty of Informal Trust

In the alternative to a full fiduciary relationship Plaintiffs assert that NFA and Kadlec had a duty of informal trust. New York courts have long held that a fiduciary relationship embraces not only those the law has long adopted — such as trustee and beneficiary — but also more informal relationships where it can be readily seen that one party reasonably trusted another. *See* W. Prosser, *Handbook of the Law of Torts* § 106, at 697 (4th ed. 1971) (citing cases); *Restatement (Second) of Torts* § 551 cmt. f (1977). NFA's public literature shows that it advertises itself and hold itself out as invoking a relationship of trust and confidential. See Exhibit 2 " reflecting the trust and confidence" and in protecting the interests of  investors. NFA' statutory duties also are to protect investors. *\*See* 7 USC 21(p) (Supra). These duties to protect investors, and also to registered members (Plaintiffs) who have no choice but to become members of the NFA, involves a heightened duty of trust and confidence. Since Plaintiffs are compelled to become member of the NFA, to proceed with the careers as commodities traders, this relationship, involves one of where Plaintiffs had to rely upon and place trust and confidence in the NFA. Therefore, Plaintiffs assert that NFA and Kadlec had an informal relationship of trust  and/or quasi fiduciary duty to Plaintiffs. *See Allen, 945 F.2d at 45*. *See also Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150-52 (2d Cir. 1993) (as attached in Exhibit 2).  Courts previously have observed in looking to New York law Employing this broad definition, we held a fiduciary relationship might well have existed between executives of a subsidiary of WestPoint-Pepperell and the corporate entity. *See Allen,* ID  Therefore NFA and Kadlec had duties under a relationship of informal trust.

### (F) NFA had a Fiduciary Duty to Plaintiffs

Plaintiffs also assert that because NFA and Kadlec had a superior position and confidential information and given their duties,  also had a fiduciary duty to Plaintiffs. A fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship, or if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Ross v. FSG PrivatAir, Inc.,* No. 03 Civ. 7292, 2004

Opp, NFA, State Law Claims, Page 18

WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004) (quoting *Calvin Klein Trademark Trust v. Wachner, 123 F. Supp. 2d 731, 733-34* (S.D.N.Y. 2000)).

Plaintiffs have demonstrated that subject to the Statutory Duties (see supra) of the NFA Defendant was "under a duty to act for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown Co., 947 F.2d 595, 599* (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676* (1st Dep't 1987)). "While the 'exact limits' of what constitutes a fiduciary relationship are 'impossible of statement,' a fiduciary relationship may be found in any case 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.' "*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 218* (S.D.N.Y. 2002) (quoting *Penato v. George, 383 N.Y.S.2d 900, 904* (2d Dep't 1976)). Contractual relations or formal writings are not required to establish a fiduciary duty. *See, e.g., Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Services, 388 F. Supp. 2d 292, 305* (S.D.N.Y. 2005).

Courts have held an expansive view of fiduciary duties, "Rather, the ongoing conduct between parties must be considered." *United Feature Syndicate, Inc., 216 F. Supp. 2d at 218* (citations and quotation marks omitted). *Accord United States v. Chestman, 947 F.2d 551, 568* (2d Cir. 1991) (finding a fiduciary relationship "exists when confidence is reposed on one side and there is resulting superiority and influence on the other").

Therefore in these circumstances, as Plaintifs were registered CTA's and members and reliant on NFA for trust and confidence, Plaintiffs assert they did have a fiduciary or quasi-fiducary duty to Plaintiffs. The facts in this case show that NFA were responsible for (and Plaintiffs relied on the NFA) (a) handling all compliance enforcement  (b) protecting Plaintiffs from fraudulent practices (c.) preventing theft of funds and property and electronic data from its account (d) requiring members don't engage in fraudulent sales and solicitations (e)  and they also had discretionary regarding some of their authority. NFA also had a duty to protect Plaintiffs property and assets and monies from unlawful theft and infringement. NFA and Kadlec "occupied a superior position over Plaintiff with respect to its discretionary responsibilities" and "had superior access to confidential information about how the commodities futures accounts would be shared and handled" including  the discretionary authority on margining and provision of services and guarantees and fee withdrawals to Boshnack, Rothman and Felag"  - none of which were permissible under the CEA – all of which was concealed from Plaintiffs (¶XX, ¶XX)

Opp, NFA, State Law Claims, Page 19

NFA's superior position necessitated that Plaintiffs repose their trust and confidence in in NFA and Kadlec to fulfill their duties, and Plaintiffs did so by opening commodities accounts and retaining monies at ADMIS and becoming members of the NFA. Plaintiffs reasonably and foreseeably trusted in NFA's statutory duties to uphold the compliance laws and NFA recognized that Plaintiffs would rely on and repose their trust in it when deciding to become NFA members, and open accounts at ADMIS. (¶XX) *In fact Plaintiffs had no choice but to become members of the NFA as membership was "mandatory". Thus, being compelled to an organization and to entrust your career to an SRO, provides a heightened standard of trust and confidence imposed in the relationship with the NFA.*

 Whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge is a "fact-specific inquiry." *Lumbermens Mut. Cas. Co., 388 F. Supp. 2d at 305; Wiener v. Lazard Freres Co., 672 N.Y.S.2d 8, 14* (1st Dep't 1998) (noting that whether a fiduciary duty exists "is necessarily fact-specific to the particular case") (citing New York cases). Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 195–96 (S.D.N.Y. 2006). Courts have also held, that these fact inquiries cannot be resolved a pleading stage. "Defendants discretion, control, and superior position over Plaintiffs gave rise to a fiduciary duty ... on the part of Defendant to the Plaintiffs. *See* Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 446–48 (S.D.N.Y. 2010) The Court finds that these allegations are sufficient to make it plausible that Defendant owed a fiduciary duty to Plaintiffs. This duty at a minimum was focused on the information related to Plaintiffs business relationship with the NFA as a registered and paying CTA. Plaintiffs argue that the fiduciary relationship applied to information that was material to its CTA and business that NFA had trust and confidence and superior relationship to disclose facts.

As a separate note, the origins of fiduciary relations is an evolving concept in securities laws, and was intended by congress to mean "a guarantee of straight-shooting in the markets".

> Unless constant extension of the legal conception for a fiduciary relationship- **a guarantee of "straight-shooting"-**supports the constant extension of mutual confidence which is the foundation of a maturing and complicated economic system, easy liquidity of the resources in which wealth is invested is a danger rather than a prop to the stability of that system .... Just in proportion as it becomes more liquid and complicated, an economic system must become more moderate, more honest, and more justifiably self-trusting. 32. H.R. REP. No. 1383, 73d Cong., 2d Sess. 3, *5* (1934).

Because of NFA's special rule, meeting all the factors, a test for investors pleading a fiduciary relationship with requires that plaintiffs plead that: (1) [Defendants] held themselves out to investors as

Opp, NFA, State Law Claims, Page 20

having certain specialized polices and procedures to protect investors; (2) investors reasonably relied on those representations; and (3) they had discretionary responsibilities such as to independently value the fund's portfolio. *See Pension Comm.*, 446 F.Supp.2d at 196–97. Therefore given the role NFA played to its CTA, and its duties to protect investors, and Plaintiffs reliance (and that their membership was mandatory) plaintiffs assert NFA had a fiduciary or quasi fiduciary duty to Plaintiffs as compulsory members. – at least as related to information about its accounts and CTA business.

The extension of the legal conception of "fiduciary relationship" was perceived as a vehicle **for guaranteeing "straight shooting"** in a maturing and increasingly complicated market and a "prop" to that system, a clear understanding of the role of the fiduciary concept within the securities context, and in particular the insider trading context, is crucial. Congressman Rayburn was clear in describing those individuals who would be fiduciaries under an extended concept of fiduciary relationship. In the paragraph directly following the abovementioned text, 7

> He quoted President Wilson:
> Society cannot afford to have individuals wield the power of thousands
> without personal responsibility. It cannot afford to let its strongest
> men be the only men who are inaccessible to the law. Modern democratic
> society, in particular, cannot afford to constitute its economic
> undertakings upon the monarchial or aristocratic principle and adopt
> the fiction that the kings and great men thus set up can do no wrong
> which will make them personally amenable to the law which restrains
> smaller men; that their kingdom, not themselves, must suffer for their
> blindness, their follies, and their transgressions of right.33
> 33. H.R. REP. No. 1383, 73d Cong., 2d Sess. 3, *5* (1934) (Sam Rayburn quoting President Wilson).

Under these principles, and NFA's role and special knowledge and necessary trust and reliance as CTAmembers, NFA has a fiduciary duty or quasi fiduciary duty to Plaintiffs.

(G) Duty under Special Facts Doctrine

NFA also had a duty under the Special Facts Doctrine. "The common law of actionable misrepresentation long has treated the possession of "special facts " as a key ingredient in the duty to disclose . See *Strong* v. *Repide*, *213 U.S. 419, 431-433* (1909); 1 F. Harper F. James, Law of Torts § 7.14 (1956). " *Chiarella v. United States*, 445 U.S. 222, 247 (1980). Plaintiffs state that the NFA had superior knowledge to information, that as professional participants, in the processes of registration (already with

---

7 See Risk Arbitrage and Insider Trading: A Functional AnLysis of the Fiduciary Concept Under Rule 10b-5, 5 Touro  Law Review. 121,  (No. 1, 1988) Laurence A. Steckman

Opp, NFA, State Law Claims, Page 21

the Series 3) that NFA had a duty to "protect investors" – and numerous other statutory duties as outlined herein – to protect Plaintiffs from fraud and to ensure "transparency". NFA's public literature about BASIC, and boasts "protect investors"  and "prevent fraudulent market activities"(See Exhibit 2).  The special facts doctrine, imposing NFA's duty to disclose to Plaintiffs has been prominent in cases involving confidential or fiduciary relations, where one party's inferiority of knowledge and dependence upon fair treatment is a matter of legal definition, as well as in cases where one party is on notice that the other is "acting under a mistaken belief with respect to a material fact ." *Frigitemp Corp*. v. *Financial Dynamics Fund, Inc.*, *524 F.2d 275, 283* (CA2 1975); see also Restatement of Torts § 551 (1938) See *Chiarella ID* Contrary to Defendants' MTD, their obligations of disclosure weren't just on fiduciary relations, but also ones with a broad array of "trust and confidence". Likewise, the "special facts " doctrine in a broader array of contexts where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. See James Gray, Misrepresentation — Part II, 37 Md. L. Rev. 488, 526-527 (1978); 3 Restatement (Second) of Torts § 551(e), Comment *l* (1977); *id.*, at 166-167 (Tent. Draft No. 10, 1964). See also *Lingsch* v. *Savage*, *213 Cal.App.2d 729, 735-737*, *29 Cal.Rptr. 201, 204-206* (1963); *Jenkins* v. *McCormick*, *184 Kan. 842, 844-845*, *339 P.2d 8, 11* (1959); *Jones* v. *Arnold*, *359 Mo. 161, 169-170*, *221 S.W.2d 187, 193-194* (1949); *Simmons* v. *Evans*, *185 Tenn. 282, 285-287*, *206 S.W.2d 295, 296-297* (1947). *Chiarella ID* Therefore NFA and Kadlec had a duty to disclose under the special facts doctrine.

(H) NFA and Kadlec had a Special Duty to its paying NFA Members

Plaintiffs also assert by virtue of their compulsory membership and registration with the NFA, NFA and Kadlec had a special duty to protect its members. NFA acknowledges that membership is mandatory in order for Plaintiffs to conduct business as traders in commodities futures. Therefore Plaintiffs had no choice, but to subject itself to NFA rules, and requirements, and pay the requisite membership fees. Plaintiffs did that. They paid the fees, and are entitled to all the benefits of membership. As members, NFA had a statutory duty to protect its members, and applies the rules and regulations equitably among members. This includes own statutory duty under 7 USC 21(p) to abide by its own rules and regulations and not engage in any fraud and deceit. When Plaintiffs (as paying registered members) made several attempts to speak to and report clear compliance violation on its accont (both as registered CTA's), NFA failed to act, investigate and disclose material information related to its CTA account. NFA at the time knew of the G&F Agreements (they had approved), knew of the unlawful ORSA (they

had approved, as well as signatures on Wahls and Kiela's audits), and knew that Plaintiffs' as registered CTA's were requiring legitimate answers on the rules and laws and oversight on High Ridge. Instead, the FAC alleges NFA refused to respond to Plaintiffs with answers to any of its material questions. (¶XX). Since as CTA's, registration is mandatory, NFA had a special duty to its paying members, in good standing, to respond to questions, with the focus of information related to its accounts. If the G&F Agreements and ORSA were legal, there should ha

NFA is required to enforce "transparency" and by abiding by its onw rules, "not engage in any device of fraud and deceit". In accordance with this Special Duty, NFA and Kadlec had a responsibility, especially when repeatedly asked, to disclose the arrangements they approved, namely the G&F Agreements and the ORSA (¶XX, ¶XX) and to take actions to protect Plaintiffs. The FAC alleges that only did NFA not protect Plaintiffs, they partook in further radvsere actions to defraud and harm Plaintiffs – specifically registering direct competitors VIA in March 218, whom they knoew had engaged insider trading and nlawful access to material non-public information to directly compete with Plaintiffs' provision of services as CTA's. NFA and Kadlec instead of preventing further harm to Plaintiffs, took over t actions to worsen and further the harm, and this violated a Special Duty NFA had to its registered members. With regard to the "special duty/special relationship rule", Courts have further held that immunity is not applicable is a "[g]overnment action, is **non-discretionary**", and .. ministerial actions may serve as a basis for liability, .. "if [the government] violate[s] a **special duty owed** to the plaintiff, apart from any duty to the public in general" (McLean v. City of New York, 12 NY3d at 203). (See *Hussein vs. City of New York*). Therefore NFA did have a special duty to Plaintiffs.

[F] – SCIENTER

 I – Plaintiffs have also met the requisite standards of scienter to show 'strong inference' of fraud

NFA also falsely states that Plaintiffs did not plead scienter. This is incorrect. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). A similar standard applies to securities law. To establish scienter, the [securities laws] require that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(2)(A)

Opp, NFA, State Law Claims, Page 23

## II – Pleading Standards

The Court of Appeals has held that "allegations of scienter ... are not subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991) (*quoting Ouaknine v. MacFarlane,* 897 F.2d 75, 81 (2d Cir.1991)). All that is required under Rule 9(b) is that there exist a "minimal factual basis for ... conclusory allegations of scienter." *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994) (*quoting Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987)). "In fact, conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.' " *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (*quoting Ouaknine,* 897 F.2d at 80).

Courts have held that "a complaint need only aver intent generally" and that "[t]o satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff . . . adequately identifies circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett, 886 F.2d 8, 12-13* (2d Cir. 1989). *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 152-53 (2d Cir. 1993) Plaintiffs need only provide the Defendants with fair notice of the alleged fraud and a sufficient factual basis for scienter. Although fraudulent intent may be averred generally, a complaint must nevertheless allege facts giving rise to a "strong inference" of scienter, Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.1993), that is, an actual intent to defraud, knowledge of the falsity, or a reckless disregard for the truth. Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), overruled on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989).

### ii - Plaintiffs have plead Scienter

Courts have recognized two distinct ways in which a plaintiff may plead scienter without direct knowledge of the defendant's state of mind that may give rise to such an inference. Plaintiffs may allege scienter by either (1) showing the defendants' motive and opportunity to perpetrate fraud, or (2) alleging 'strong circumstantial evidence of conscious misbehavior or recklessness.' " Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013) ("IPERS") (emphasis in original) *Shields,* 25 F.3d at 1128; *Cosmas,* 886 F.2d at 13. ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1318 (S.D.N.Y. 1997) *See Beck Id.* "At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) '**engaged in deliberately**

Opp, NFA, State Law Claims, Page 24

illegal behavior'; (3) **'knew facts or had access to information, suggesting that their public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor**.' " ECA, 553 F.3d at 199 (quoting Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)). (emphases added). Concealment can also invoke scienter (*See* Brass – holding that Defendant concealed material information regarding the restriction on his account as it would lessen Plaintiffs interest, were sufficient to show scienter).Here similarly Plaitniffs have alleged NFA and Kadlec, concealed material information about the G&GF Agreements and ORSA, as it would lessen their interest to open an account, and the concealments (as well as ongoing concealments) provide sufficient circumstances to satisfy scienter.

*I –Motive*

Plaintiffs have alleged motive in the facts that (1) engaged in deliberately illegal behaviour.(2) 'knew facts or had access to information, suggesting that their public statements were not accurate'; or (3) 'failed to check information they had a duty to monitor.' *NFA's motive was also, with the conscious intent, that they knew they had approved unauthorized market participation and violated the CEA to permit Boshnack. Rothman, Felag and HRF to step into the shoes of an FCM and provide margining and risk without the registration. NFA also had motive to cover-up and conceal illegal.  NFA knew the activity was illegal, and was an integral part of the fraudulent scheme to keep the arrangements "oral" and "undocumented" as the participation could invoke criminal or other illegal culpability. (see See In re Time Warner, 9 F.3d at 263-64. Courts holding that motive is pled, when the participant know conduct is illegal or could result in criminal consequences ).*

The FAC also alleges that NFA knew that the only way for the Vision Brokers to remain in the business or have sufficient credit to clear was with the guarantees of Boshnack and Rothman (¶XX). The FAC states that the G&F Agreements approved had a tight time frame to approve the registrations by November 1, 2014 (¶XX,¶XX). However, at the last minute, and under economic pressure and likely loss of billions of dollars Boshnack, Rothman, HRF, strong-armed  additional provisions, or they would not agreed to the terms to register or guarantee the accounts ¶XX. The FAC states, they knew these additional provisions of services, such as providing risk services for an FCM, were outside the mandate of the CEA.  The FAC states that Plaintiffs have learned in order to get "buy'" in from NFA, (further asserting that NFA had direct actual knowledge of what was transpiring, noting the facts were not pled on information and belief), Boshnack, Rothman and Kadlec got approval from the NFA, of the material

Opp, NFA, State Law Claims, Page 25

terms of the ORSA (¶XX, ¶XX). This also supports actual knowledge of unlawful participation and the concealment of the fraud.

Courts have held that ordinary economic motives (such as ordinary fees) are not sufficient to plead scienter – however the same does not hold true for "extraordinary" monetary gain or "excessive" fees. (See also ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P., 957 F. Supp. 1308, 1331 (S.D.N.Y. 1997 – sufficient to meet motives – and distinguishing between abnormal market share and "extraordinary" fees – that could only have been generated by one  buyer – of a billion dollar scheme – as different from ordinary economic motives – including "reliance" on one purchaser)

Here the FAC alleges that the scheme generated over a billion dollars of revenue ¶XX, and that they would have lost a sizable market share, if they did not secure these atypical guarantees (¶XX, ¶XX). Defendants do not dispute, that excessive revenue is over $10 million a year, which results from the sale of these "toxic" and "fraudulent dark pool" accounts. They needed to make these deals with Boshnack and Rothman, as they were one of the few (if not the only) participants that were willing to back these "risky subprime brokers" (¶XX, ¶XX). Vision MTD at 23-24 also admits "Plaintiffs accounts were **among thousands of commodities futures trading accounts**" which were impacted by the scheme The FAC alleges that Defendants needed the terms of the deal and the illegal terms of the ORSA to perpetuate the *unsecured subprime* Vision brokers' billion-dollar market.  The FAC also alleges that Defendants would not have been able to continue generating the revenue (as Vision brokers would have no other clearing home (¶XX), or customers would have elected to opt-out (¶XX), if the truth about the about the ORSA and/or the perpetual trailing fees and commission being paid to the disbarred Vision (¶XX) had been told to Plaintiffs. Therefore Defendants had a motive to assist in perpetuation of the fraud, as the market share was "extraordinary" and they were reliant on only one backer.

Further NFA had motive because of the substantial revenue that it created for the industry – revenue that relied upon illegal participation and illegal conduct. Therefore to avoid criminal culpability, and to allow the fraud and illegal participation to be un-detected, NFA's motive was not for legitimate fees, but to conceal its own unlawful conduct and approvals. NFA also had motive in concealing the "true nature of the alliance" between Boshnack, Rothman, Felag and HRF and ADMIS from the "public" in false advertising, as any disclosure, would be rendered incomplete unless all terms of the ORSA were disclosed, which would have exposed the unlawful and illegal provisions.

Opp, NFA, State Law Claims, Page 26

*II – Opportunity*

The FAC also states that it is clear that NFA had the opportunity to propagate the fraudulent conduct alleged. They were in the sole and exclusive position to "sign audits" and authorize bulk withdrawals from accounts. They were also in exclusive position, to approve the illegal terms of the "ORSA". The FAC also alleges weak spots and gaps and that the CFTC has failed to conduct any oversight on the NFA during all the relevant periods in this Complaint.(*¶XX)* The FAC identifies several areas of oversight where NFA is entrusted and is the sole regulatory to enforce the Compliance laws. The opportunity to commit fraud is generally assumed where the defendant is a corporation or corporate officer. *See, e.g., In re AstraZeneca Sec. Litig., 559 F.Supp.2d 453, 468* (S.D.N.Y.2008) ; *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F.Supp.2d 163, 181* (S.D.N.Y.2006) ("Regarding the 'opportunity' prong, courts often assume that corporations, corporate officers, and corporate directors would have the opportunity to commit fraud if they so desired.").

Given NFA's regulatory power,  the facts allege that over the last five (5) years they have had no regular oversight, no checks and balances on its audits and public statements of internal weak internal process NFA, Kadlec, Wahls and Kiela clearly had clear opportunity to facilitate that activities below. (¶57-¶73). The Court should also note, NFA's brief is remarkably silent, and does not mention once, CFTC oversight. Plaintiffs have made specific factual allegations that the conduct was not reported to the CFTC (¶282). NFA's failure to defined once that the CFTC approved this, and their admission that aspects of the conduct was illegal (See NFA at 5), shows Plaintiffs have plausibly pled an inference of fraud. Unlike in *Troyer*, where NFA relied its defense of negligence heavily upon CFTC guidance and directives, in this case, NFA's motion to dismiss, tellingly, makes not one mention of the CFTC oversight of NFA. Neither is their one mention of ministerial, black-letter law of NFA's statutory and regulatory requirement to be comply with and enforce CFTC rules, orders or directives. The Court is also respectfully  requested to take judicial notice of the CFTC OIG Report (attached to Plaintiffs complaint) as Exhibit 2. The facts in that Complaint specifically state the OIG had not conducted oversight and "no report was on record"  (¶68) Without oversight, therefore NFA clearly <u>had the opportunity</u> to perpetrate the fraud during the relevant period, impacting Plaintiffs account

Further, NFA's had the opportunity to lead "plausible deniability" by intentionally keeping the infringing services "oral" and without a paper trail supports an strong inference of scienter.

Opp, NFA, State Law Claims, Page 27

(A)    Conscious Misbehavior or Recklessness

In the alternative to the Motive and Opportunity arm above,  plaintiffs may also satisfy the scienter requirement by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138 (quoting Acito, 47 F.3d at 52) Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)  Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud" (*Tellabs, 551 U.S. at 319*, *127 S.Ct. 2499* (internal quotation marks omitted)), and is a required element of fraud, whether accomplished by misrepresentation or market manipulation, and whether in violation of Section 10(b), Rule 10b–5) (*see, e.g., ATSI, 493 F.3d at 101, 105* ; *Salvani, 50 F.Supp.3d at 476–77* ; *Malenfant, 784 F.Supp. at 144*). The same similarly applies to the Commodities Exchange Act.

"[I]f Plaintiffs cannot make [a] 'motive' showing, Plaintiffs can raise a strong inference of scienter by showing the 'strong circumstantial evidence' prong" (quoting Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) ). " 'The inquiry ... is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.' " Pa. Pub. Sch, Emps.' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341, 357 (S.D.N.Y. 2012) (quoting Tellabs, 551 U.S, 127 S.Ct. 2499).

To meet the  strong circumstantial evidence prong, a strong inference of scienter may arise when a plaintiff pleads that a defendant: "..**(2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.**" *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306* (2d Cir.2015) (*quoting ECA,* 553 F.3d at 199 (*quoting Novak,* 216 F.3d at 311 )). *See also S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109–10* (2d Cir.2009). In assessing whether a plaintiff has pleaded scienter, courts consider whether all of the facts, taken together, give rise to an inference of scienter that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, 551 U.S. at 314*, *127 S.Ct. 2499*. *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 79-80 (S.D.N.Y. 2015) Here Plaintiffs meet all three (3) standards.

I – Conscious Misbehavior

*[A] – Engaged in Deliberately Illegal Behavior*

Here there is no doubt that Plaintiffs have alleged that Defendants engaged in deliberately illegal behavior. The Complaint is rife with conduct that Defendants intentionally attempted to circumvent the

Opp, NFA, State Law Claims, Page 28

rules and to "contract around" the CEA. Specifically Plaintiffs alleged deliberately unlawful conduct in violation of the following statutes 7 U.S.C. §13 and authorize conduct that does not comply with the CFTC Rules and CEA.  NFA in their MTD, concede that there was illegal conduct at ADMIS - at a minimum withdrawing more and more fees, and sharing of customer trade secrets (See NFA at 5). Kadlec has admitted in his MTD he was acting in his capacity of NFA Board Member and remains on the Board today as the conduct continues. Therefore any unlawful behavior by Kadlec is also imputed to NFA (See supra 3.E). Defendants NFA, Wahls, Kiela, and Kadlec do not provide one defense of the multiple allegations of unlawful conduct alluded in this Complaint and violations of the CEA and CFTC Rules. (e.g. ¶158,¶232,¶364,¶368,¶371,¶375,¶377,¶391,¶394-¶404,¶413,¶570). The center of this Complaint is on unlawful conduct – none of which NFA defends, which is fatal to their defense. 7 U.S.C. § 13 (a) (1)-(5); 7 U.S.C. §13 (b); 7 U.S.C §6, 7 U.S. Code § 6k (1), (5)). (¶359-¶403)  Therefore Plaintiffs have pled the requisite scienter at the pleading stage to survive a MTD, for "deliberately engaging in illegal conduct" which satisfies the prong under conscious misbehavior.

*[B]  Knew Facts or Had Access to Information Suggesting their Public Statements Were not Accurate*

A complaint sufficiently pleads scienter where it alleges defendants had " 'knowledge of facts or access to information contradicting their public statements.' " *Id.* (*quoting Novak, 216 F.3d at 308* ). *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 79-80 (S.D.N.Y. 2015)

Here the Complaint again alleges that NFA and Kadlec clearly had "knowledge of facts and/or access to information" that contradicted their public statements. NFA and Kadlec knew that in ADMIS' entry of "financial condition" there was no public statement that ADMIS had secured financial guarantees from Boshnack, Rothman and HRF – material information that a customer (and Plaintiffs) would have considered material in their decision to entrust funds. (¶XX, ¶XX) NFA and Kadlec, also knew and had access to information, that there were risk services being provided by HRF, Felag, Boshnack and Rothman by way of an ORSA. The public statements and documents and reports filed at the CFTC concealed that (¶XX, ¶XX, ¶XX)

Further the FAC alleges that all public literature, sales and solicitations, including mandatory disclosure documents and agreements by ADMIS, Lazzarra, and approved by NFA, materiality concealed both the G&F Agreements and the ORSA. NFA had access to superior information and knowledge of facts that rendered these disclosure incomplete or untrue. Their failure to update their websites also, that rendered their prior statements about HRF and customers having access to information about Vision disciplinary

Opp, NFA, State Law Claims, Page 29

information also misleading and/or incomplete, which they had a duty to update (See Duties Supra). In all cases, both NFA and Kadlec, knew facts, and had material information, that would have impacted investors, customers, traders, CTA's not opening accounts, that they intentionally concealed from public statements. (¶XX, ¶XX). A complete list of Actual Knowledge of Facts is included by reference in Section D supra. Claims "typically" survive motions to dismiss when based on specific allegations demonstrating " 'defendants' knowledge of facts or access to information contradicting their public statements.' " Id. (quoting Novak, 216 F.3d at 308).

Plaintiffs also have satisfied the "conscious misbehavior" prong by alleging "NFA had knowledge of facts or access to information contradicting their public statements". Without limitation their public statements, not only on their websites (Supra X),  but also in their disclosures in BASIC, as well as their public literature (Supra ID) they were well aware that futures customers, would open accounts at Vision brokers, and ADMIS, that would render their public statements incomplete and omitting material information that was relevant to their decision. As stated supra, their public information related to "material information about FCM" purposefully withheld disclosure of the true financial data, that ADMIS' accounts were subject to guarantees . The access to information was already identified as relevant and material, as NFA admitted on their website the need for "customers" to have access to High Ridge's former disciplinary information about Vision, and yet concealed these invasions of futures accounts from Plaintiffs.

II - Recklessness

In the alternative, Plaintiffs argue they have also met Scienter by showing recklessness. Recklessness can be shown by "defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." Novak, 216 F.3d at 308. In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 530–31 (S.D.N.Y. 2008), aff'd, 730 F.3d 170 (2d Cir. 2013), and aff'd, 730 F.3d 170 (2d Cir. 2013). Plaintiffs have also pled sufficient detail to show "strong inference" of scienter under the prong of recklessness. The Second Circuit has observed that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have (as described above) either specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." Novak, 216 F.3d at 308.– A failure "**to check information [defendants] had a duty to monitor**" may also give rise to a strong inference of

Opp, NFA, State Law Claims, Page 30

recklessness. Novak, 216 F.3d at 311; see also Nathel v. Siegal, 592 F.Supp.2d 452, 464 (S.D.N.Y. 2008) (same). In such circumstances, " 'defendants knew or, more importantly, should have known that they were misrepresenting material facts.' " Kalnit, 264 F.3d at 142 (quoting Novak, 216 F.3d at 308)

"Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater."[110] Kalnit, *264 F.3d at 142*. "Under certain circumstances, [courts] have found allegations of recklessness to be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Novak, *216 F.3d at 308.* Accord In re Veeco Instruments, Inc. Sec. Litig., *235 F.R.D. 220, 232 (S.D.N.Y.2006)* (holding that the scienter requirement was satisfied by identification of specific facts constituting strong circumstantial evidence of recklessness and allegations that defendants knew of or recklessly ignored a series of accounting improprieties). See Breard v. Sachnoff Weaver, Ltd., 941 F.2d 142, 144 (2d Cir. 1991) ("For Rule 10(b)(5) [sic] purposes, scienter includes recklessness."); SEC v. Solucorp Inds., Ltd., 274 F.Supp.2d 379, 418-19 (S.D.N.Y. 2003) (scienter element under Sections 10(b) and 17(a)(1) "may be satisfied by proof of reckless conduct"); see also In re Amaranth Natural Gas Commodities Litig., 587 F.Supp.2d 513, 529 n. 97 (S.D.N.Y. 2008) ("Second Circuit law, which permits scienter to be shown by recklessness, continues to bind this Court" in Section 10(b) cases because the Supreme Court has expressly declined to reach the issue.  *Securities Exchange Comm. v. Aragon Capital Mgmt* 672 F. Supp. 2d 421 (S.D.N.Y. 2009)

### [A] NFA failed "to check information [defendants] had a duty to monitor"

In the alternative under a Recklessness theory, Plaintiffs have also alleged that NFA failed to check information they had a duty to monitor. NFA and Kadlec had a statutory duty to enforce the Compliance laws under 7 U.S.C. 21(p)(o). This is a ministerial duty. (See supra DUTIES). Under those duties they had a statutory duty to enforce NFA 2-3 (NFA "shall", NFA "shall" uphold .. See also Count 1 – ministerial duties of the NFA)

The also had a duty to monitor the sales and solicitations of its members, to ensure they were not misleading NFA 2-29 "shall".. and NFA 2-4 9005 "any misrepresentations on fees shall be a compliance violation".  The G&F Agreements also contained specific provisions that on permitting Vision's associated persons to re-register NFA was responsible and had a duty to monitor their re-registration remained in compliance with the laws. ¶XX-¶XX

Opp, NFA, State Law Claims, Page 31

Given Boshnack, Rothman and Felag's past association a disbarred entity Vision Financial Markets, NFA also had a duty to ensure that these individuals did not pose a threat to other customers and members (¶XX, ¶XX) Since NFA accepted a Settlement, and also oversaw the G&F Agreements, they had a duty to enforce that agreement remained in compliance. Therefore NFA had a statutory duty to enforce NFA 2-26 and NFA 2-29 that the sales and solicitation of commodities futures accounts under these agreements complied with the rules and regulation. NFA had a duty to monitor this. Therefore in the alternative, of the recklessness theory, Plaintiffs allege that NFA failed to check information it had a duty to monitor NFA 2-26, NFA 2-29, and NFA 2-3, and that the sales and solicitations of customer accounts and fees being withdrawn were not in compliance causing significant harm to Plaintiffs. (¶XX)

*[B] NFA's failures was unreasonable, given the dangers known to it*

Further in the alternative, Plaintiffs have alleged NFA and Kadlec's conduct was highly unreasonable.  A plaintiff pleading the "conscious misbehavior or recklessness" theory of scienter must allege conduct which is "highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit, 264 F.3d at 142* (internal quotation marks omitted).. (quoting Honeyman v. Hoyt, 220 F.3d 36, 39 (2d Cir. 2000) ). Specifically, given that Boshnack and Rothman had been associated persons of a disbarred FCM, Vision Financial Markets, LLC, and NFA had before it, 172 CFTC reparations cases, with over 135 of them representing "fraud", "misrepresentation" and "non-disclosure", and NFA's obligations under Bylaw 301(e.) to ensure Boshnack, Rothman and Felag do not pose an ongoing threat to customers. (¶*XX, ¶XX, ¶XX, ¶XX*)

NFA was aware of the risks of re-registration, Plaintiffs well-pled allegations shows at a minimum failure of NFA's to check information that would protected investors and prevented the fraud.

NFA and Kadlec were aware of what the danger that Boshnack, Rothman and their entities had posed in the past. NFA refers to them in their MTD "fraudsters" . The FAC alleges a serial pattern of with a documented regulatory violations citing "misrepresentations" and "non-disclosures".(¶XX, ¶XX) If the word "danger" should apply to anyone in the industry it would be Boshnack and Rothman (See ECF57, Exh1). ¶XX¶XX And their heightened danger was also self-evident in NFA's own bylaws – Rle 301(a)(e) recognizing the threat that associated persons  of disbarred companies, could only be registered if they did not pose a threat to other members. ¶XX,¶XX.

Opp, NFA, State Law Claims, Page 32

The FAC alleges NFA clearly knew that all unsuspecting customers and newcomers to the futures industry, (including Plaintiffs) that selected Lazzara or ADMIS, or any Vision broker would not have access to NFA also reviewed and was required to and had a statutory duty to review the public disclosures of ADMIS and each IB referring accounts to ADMIS, and protect those accounts. The FAC states that NFA knew that none-of ADMIS's public literature, disclosures or FCM statements as required/ Therefore NFA, knew or should have known the disclosures were not being made.

Therefore NFA's failures were not reasonable – given the specific circumstancs of Boshnack and Rothmans past disciplinary conduct. "Fraudsters" have no place in the membership of the NFA. It is not disputed that Kadlec, ADMIS, Lazzara and LCI made material misrepresentations and omissions about the account. (¶XX) A representation or omission is "material" if a reasonable investor would consider it important in deciding whether to make an investment. *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *R&W Technical Servs., Ltd. v. CFTC,* 205 F.3d 165, 169 (5th Cir.2000). Courts have held that "the CEA is a remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived. As the Fifth Circuit recently explained in *R&W:* In 1974, Congress gave the [CFTC] even greater enforcement powers, [Which they then delegated to the NFA] in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising. Remedial statutes are to be construed liberally, and in an era of increasing individual participation in commodities markets, the need for such protection has not lessened. *Id.* at 173 (citations omitted) (emphasis added). Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., 310 F.3d 1321, 1328–29 (11th Cir. 2002)

Finally Plaintiffs allege recklessness by failure to check the information, NFA had a duty to monitor. Clearly NFA had a statutory duty to enforce the compliance laws, and to monitor participants compliance with the CEA. In the alternative, NFA , with all the "dangers" of re-registering Boshnack, Rothman, Felag and HRF by their own Bylaw .

*Scienter* element of plaintiffs' federal securities claims Plaintiffs correctly assert that reckless conduct satisfies the *scienter* requirement of section 10(b) and rule 10b-5, *Rolf v. Blyth, Eastman Dillon Co., Inc., 570 F.2d 38, 45* n. 12, 46 (2d Cir. 1978), and that assertions of knowledge need be averred only generally. *Zaretsky v. E.F. Hutton Co., Inc., 509 F. Supp. 68, 75* (S.D.N.Y. 1981) (Lowe, J.)

Opp, NFA, State Law Claims, Page 33

Court's also consider the enormity of the fraudulent scheme involved. *See In re Leslie Fay Cos. Sec. Litig.,* 835 F.Supp. 167, 175 (S.D.N.Y.1993) ( "Alleged fraud of this magnitude, coupled with plaintiffs' other allegations, creates an implication of recklessness, on the face of the pleading, which compels us to deny defendant's motion."). Plaintiffs did not allure to just isolated incidents, but a scheme that generates well over $10 million dollars a year. ¶XX,¶XX) **NFA not once deny or defend the enormity of the fraud of illegal revenues of over $50 million.** (FAC ¶XX, ¶XX, ¶XX). Also Vision's MTD has also acknowledged the "magnitude" of the scheme – acknowledging the facts that " thousands of customers"   NFA'S MTD does not deny or oppose the size of the scheme nor the magnitude of unlawful revenue it collects for the futures industry, all the while praying on innocent market participants like Plaintiffs ¶XX. Therefore in the same, Courts have recognized all factors in determining an inference of scienter. The enormity of the fraud attributed makes a finding of scienter or conscious misbehavior or recklessness particularly appropriate.

Further Courts consider in the case of audits, with multiple red flags, in the aggregate support an inference of fraudulent intent. Also when an auditor deliberately choses to ignore obvious "red flags" - Courts have upheld that multiple allegations of "red flags," considered in the aggregate, support an inference of fraudulent intent adequate to survive a motion to dismiss. "[B]ecause the 'red flags' would be clearly evident to any auditor performing its duties, one could reasonably conclude that [NFA] must have noticed the 'red flags,' but deliberately chose to disregard them to avoid antagonizing or disrupting [ADMIS reliance on funding by Boshnack and Rothman] and incidentally frustrating its fraudulent scheme." *In re Leslie Fay Companies Sec. Litig.,* 871 F.Supp. 686, 699 (S.D.N.Y.1995). *See also In re Complete Mgmt.,* 153 F.Supp.2d at 334; *In re Health Mgmt.,* 970 F.Supp. 192, 203 (E.D.N.Y.1997) (both finding scienter allegations sufficient where auditor ignored multiple red flags). Noting that after it was well-documented Plaitniffs account had been defrauded continuing into January 2019-Feburary 2019 NFA, Wahls and Kiela deliberately chose to take no action to remedy the fraud. These actions also plead conscious misbehavior in failing to monitor information they had to monitor, and consiouclsly allowing the conduct to continue. (See supra).

[G] DAMAGES

Finally plaintiffs have pled damages. The conduct has caused direct and proximate harm to Plaintiffs NFA, Kadlec's, Wahls, and Kiela's overt actions do not dispute that Plaintiffs were injured. Plaintiff

Opp, NFA, State Law Claims, Page 34

Kumaran suffered ongoing damages as registered CTA who maintained her registration to launch and move forward to start the hedge fund. NFA then went on to cause additional harm and damages  Plaintiff NRCM suffered ongoing and additional damages. The FAC alleges rather than take action to enforce compliance on the fraud.  Contrary to NFA's analysis, Plaintiffs damages weren't just restricted to withdrawal of fess during the life Plaintiffs accounts were opened. Each Plaintiff has suffered inordinate damage after that. In March 2018, NFA's overt actions continued to cause further harm to Plaintiffs. First after full and actual knowledge of the fraud, and misappropriation, they went onto register the same perpetrators, Rothman, Boshnack in a new entity Vision Investment Advisors as CTA's to act in direct competition with Plaintiffs. To this day plaintiffs are suffering harm from unfair competitions. (¶XX)

[H] - NFA's Defenses of Fraud Are Misplaced

NFA makes numerous unworthy defenses to the fraud claims nor do the refute the actionable misrepresentation and omissions above (See C – NFA omissions and  misrepresentations). Instead they make bald accusations that there was "no misrepresentation" and their motion is vacant (completely silent) on the omissions and concealment – which is the substance of the complaint. This is fatal.

(a) Audits were check the box – knowledge

First they claims Wahls and Kiela audits8 were "'check-the-box'" exercise and specifically criticize Plaintiffs pleadings as not *"identifying any step NFA's rules required that Wahls and Kiela failed to make"*.  or what audit procedures they should have used, and why. (NFA at 5). However it is well accepted that Plaintiffs at this stage of the proceeding are not required to plead "what step in an audit was missed" Courts have held that such detailed facts of audit are peculiarly within Defendants' knowledge, and thus are not required at the pleading stage. *See In re Leslie Fay,* 835 F.Supp. at 174 ("[T]he specifics of [BDO's] auditing procedures strike us as the type of facts which are particularly within defendants' knowledge and therefore, need not be included in the complaint.") (citing *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)); *Liberty Ridge LLC v. RealTech Sys. Corp.,* 173 F.Supp.2d 129, 137 (S.D.N.Y.2001) ("[C]ourts should not demand a level of specificity in fraud pleadings that can only be achieved through discovery.") (citations omitted). *Cf. Vladimir,* 1997 WL 151330, **7–8, 1997 U.S. Dist. LEXIS 3823, at *24–25 (holding only failure to particularize facts

---

8 NFA again continues to ignore Trey Lazzara's material fraud, and omits the pertinent facts in the Complaint related to audits of Lazzara.

Opp, NFA, State Law Claims, Page 35

concerning auditor's misconduct was "inexcusable ... ***after*** he had conducted extensive discovery"). <u>n re</u> <u>Philip Servs. Corp. Sec. Litig.</u>, 383 F. Supp. 2d 463, 474–76 (S.D.N.Y. 2004)

      (b)      Reciting bulk paragraphs that are irrelevant

     NFA recites a string of 100 paragraphs, none of which reference <u>the actual paragraphs that allege</u> <u>fraud with particularity</u>. The correct paragraphs that are relevant to the fraud claims, are listed above in Section C (See Exhibit 3) itemizing the specific actionable statements of fraud and concealment.  By simply picking the wrong paragraphs to distract the Court, they do not focus on the core 14 misstatements and omissions pled. See<u>. In re Philip Servs. Corp. Sec. Litig.</u>, 383 F. Supp. 2d 463, 474– 76 (S.D.N.Y. 2004) Court not permitting Defendants to single out certain paragraphs in the Complaint that summarize the more precise allegations described above, and contends that these "general allegations" are insufficiently particularized.  However, "[i]t is elementary that, on a motion to dismiss, the Complaint must be read as a whole," *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985) (citing *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), and Defendants cannot secure dismissal by cherry-picking only those allegations susceptible to rebuttal and disregarding the remainder. *See Manavazian v. Atec Group, Inc.,* 160 F.Supp.2d 468, 479–80 (E.D.N.Y.2001) (rejecting "with dispatch" argument whereby "[d]efendants simply [found] fault with paragraphs of the complaint that purport to do. Plaintiffs aren't required to plead fraud in each and every single paragraphs. As stated above, Plaintiffs have met the requisite statements and concealments of fraud in Section C – clearly itemized.

(d) Lumping and Conclusory allegations

      As stated above in Section B, Plaintiffs allegations that were relevant to the fraud claims (See Exhibit 3, Section C Statements 1-7 and Omissions 1-7  above) did not incur any lumping together any of the Defendants. As pertains to the precise statements of fraud (a) Speaker (b) Date and (c) Time. to satisfy Rule 9(b), Plaintiffs have also pled NFA finds **not one** accusation of lumping or conclusory allegations, when it comes to the specific statements of fraud as described in detail above, Plaintiffs have met those standards for each of seven actionable statements and seven actionable omissions (See Supra Section C).  Further at the pleading stage, since NFA and ADMIS and Kadlec were acting as insiders, Plaintiffs are entitled to the Group Pleading Doctrine or relaxed Insider Pleading Standards. The particularity requirement is somewhat relaxed when the defendants are "insiders." *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).  See *In re Bisys Securities*

Opp, NFA, State Law Claims, Page 36

*Litigation*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005). The group pleading doctrine, asserts that "[i]t is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's filings, press releases and other publications . . . are the collective actions of [all of the Individual Defendants]."

**(e) Information and Belief.**

In Point 4 NFA falsely accuses Plaintiffs of making statements attributed to NFA and Kadlec's fraudulent statements and omissions "on information and belief". To try to prove their point, NFA cuts and pastes a list of irrelevant paragraphs, apparently hoping the Court will not check the relevance of these paragraphs to fraud. NFA cites to FAC ¶¶ 15, 29, 114, 116, 122, 133, 247, 254, 602; *see, e.g.*, *id.* ¶¶ 19, 428, 463, 618, 622. However a careful read of each of those paragraphs, shows they are wholly irrelevant and not attributable to the actual fraudulent concealments and omissions and fraudulent misrepresentations alleged by NFA and Kadlec.

- For instance ¶15 and ¶29 are both related to whether Kumaran was first to uncover the scheme "upon belief, so far the customers and CTA's never found out" and "upon information and belief, Kumaran was the first CTA to uncover the scheme."
- ¶114 and ¶116 are both related to ADMIS' approval of the brokers in the G&F Agreements. "ADMIS upon information and belief conducted its own due diligence and went through carefully all the former *Vision brokers*, and the ones they would agree to guarantee" and "Upon information and belief, the subprime remaining 100 or so *Vision brokers*, who did not qualify to be guaranteed - did not have those additional funds" (*See* Att. 8 ¶23) But Plaintiffs provided facts supporting these statements not just by supplying the G&F Agreements, and also LCI's IB Agreement. None of these are relevant to the fraud imputed to NFA and Kadlec.

For space reasons Plaintiffs cannot go through each one in this opposition but a careful read shows, that <u>none of them</u> are relevant to the actionable statements of fraud relevant to Count 3. For example, NFA's incomplete and inaccurate statements publicly made on the NFA website or in NFA Basic are misrepresentations actionable as fraud a Plaintiffs have adequately alleged the representation was false. Courts have held, that before simply assuming "informatino and belief" it must be determined if the information and belief actually applied to fraud. Two threshold questions must be answered to determine whether paragraph (b)(1)'s third element applies: *First,* which allegations regarding the statement or omission are made on information and belief?[51] *Second,* are those the types of allegations that may be alleged on information and belief? If plaintiff *has* put forward allegations on information and belief, then whether paragraph (b)(1)'s third element is met raises three additional questions: *First,* what facts have the plaintiffs put forward to support that belief? *Second,* have the plaintiffs stated those facts with

Opp, NFA, State Law Claims, Page 37

particularity? *Third,* are those *"sufficient* facts to support those beliefs [?]" *Novak,* 216 F.3d at 313–14.<u>In</u> <u>re Initial Pub. Offering Sec. Litig.</u>, 241 F. Supp. 2d 281, 330 (S.D.N.Y. 2003) Here none of the actionable statements listed in Section C (supra) were pled on information and belief  and therefore these cherry-picked irrelevant paragraphs do not apply. Therefore none of NFA's defenses apply and do not pass the well-pled allegations to survive a motion to dismiss for Count 3.

## [I] – Plaintiffs have met the Elements of Fraud

NFA's boiler plate defense that Plaintiffs has not met the pleading standards fails For the reasons above, Plaintiffs have pled [1] Misrepresentations and Omissions in Section 3.C [2] Knowledge in Section 3.D supra,  [3] Falsity  as stated in  [4] Reliance and Materiality [5] Injury / Damages Since this disingenuous rebuttal does not have any specific, Plaintiffs have plausibly pled fraud by the allegations above.

<u>Standards of Reliance Are Different Under New York Law and Federal Securities Law</u>

New York law requires that a plaintiff alleging fraud establish "actual reliance" on a specific misrepresentation or omission . *Int'l Fund Mgmt. S.A. v. Citigroup Inc.* , *822 F.Supp.2d 368, 387* (S.D.N.Y. 2011). In fraud cases arising under the *federal* securities laws, "reliance on ... omitted information may be presumed where such information is material," *Black v. Finantra Capital, Inc.* , *418 F.3d 203, 209* (2d Cir. 2005),  Defendants do not dispute that the information that was concealed was material. NFA / Kadlec do not dispute once in their motions to dismiss that the information omitted and concealed (namely the G&F Agreements, the illegal ORSA, the unauthorized excessive fees, and the excessive margin errors by owners of a disbarred entity Vision) were material. Therefore this issue is not disputed that the facts concealed were material and substantial and would have altered Plaintiffs decision to engage in the foregoing transactions. (¶XX, ¶XX)

Therefore Plaintiffs have adequately plead a cause of action for Count 3 – Fraud and Defendants' motion should be denied. Plaintiffs respectfully seek leave to amend the complaint for Cont 3 if it is deemed that any particular allegation is not deemed clear or sufficient.

## Count 4 – Aiding and Abetting Fraud

**I – Common Law** In Count 4, Plaintiffs bring a cause of action against NFA, Wahls, and Kiela for aiding and abetting fraud.. To state a claim for aiding and abetting fraud, a plaintiff must show: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." E.g., Filler v. Hanvit Bank,

Opp, NFA, State Law Claims, Page 38

*339 F.Supp.2d 553, 557 (S.D.N.Y.2004)*; Steed Fin. LDC v. Laser Advisers, Inc., *258 F.Supp.2d 272, 282 (S.D.N.Y.2003)* Standards for aiding and abetting liability under Federal Securities Law are similar and involve existence of the underlying securities law violation. The imposition of aiding and abetting liability requires three elements: (1) the existence of a **securities law violation** by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted in the primary violation. See Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir.1983); IIT v. Cornfeld, 619 F.2d (2d Cir.1980).

**II – Commodities Exchange Act - aiding and abetting** Plaintiffs also bring this claim against NFA, Wahls and Kiela for "aiding and abetting: Section 22(b) (1) of the CEA creates liability for "[a]ny person ... who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter...." "Generally stated, to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008), aff'd, 730 F.3d 170 (2d Cir. 2013), and aff'd, 730 F.3d 170 (2d Cir. 2013) Specifically and without limitation 7 U.S.C. 25(b) also provides a private right of action to traders (Plaintiffs) for aiding and abetting.

A – Existence Underlying Fraud or Violation

To meet prong [1] of aiding and abetting Defendants NFA, Wahls and Kiela do not dispute that the Plaintiffs have alleged a violation by the primary wrongdoers. In fact the Court should take note that the regulator, frequently refers to its registered market participants as "fraudsters" and "the Complaint alleges ADMIS and High Ridge committed fraud". (NFA at 23) Therefore Plaintiffs have met Prong 1, that Conspirators, committed an underlying fraud and multiple securities law violations on Plaintiffs. NFA's motion to dismiss as refers to its market participants as "fraudsters" and continue to date to have taken no action to date. (NFA at 17)

**B – ACTUAL KNOWLEDGE:** Plaintiffs have pled actual knowledge of the underlying fraud. (see also Count 3 – "Actual Knowledge"). All arguments are incorporated herein by reference.

**C - CONSCIOUS AVOIDANCE:** In the alternative to actual knowledge, Plaintiffs also allege knowledge on the basis of Conscious Avoidance theory. The Second Circuit has alternatively held that conscious avoidance satisfies the knowledge prong of an aiding and abetting charge. See United States

Opp, NFA, State Law Claims, Page 39

v. Bakal, *20 Fed.Appx. 37, 42 (2d Cir.2001)*. United States v. Samaria, *239 F.3d 228 (2d Cir.2001)* Either actual knowledge or "conscious avoidance" may satisfy the knowledge prong of an aiding and abetting charge." *Refco,* 759 F.Supp.2d at 334 (quoting *Fraternity Fund,* 479 F.Supp.2d at 368). *See Kirschner v. Bennett,* 648 F.Supp.2d 525, 544 (S.D.N.Y.2009) ("To survive a motion to dismiss, therefore, the [plaintiff] must allege facts giving rise to a 'strong inference' of defendant's actual knowledge of the underlying harm, or the conscious avoidance of the same such that 'it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge.' ") (*quoting Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,* 479 F.Supp.2d 349, 367–68 (S.D.N.Y.2007)). The Court will not "spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers." *Fraternity Fund Ltd.,* 479 F.Supp.2d at 368; *see also Oster v. Kirschner,* 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dep't 2010) (under New York state law pleading standards for aiding and abetting fraud claims, "actual knowledge need only be pleaded generally ... [and may] be divined from surrounding circumstances.")

NFA, Wahls and Kiela's motion to dismiss is devoid of any argument related to conscious avoidance. Conscious avoidance "occurs when 'it can almost be said that the defendant knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Refco,* 759 F.Supp.2d at 334 (quoting *Fraternity Fund,* 479 F.Supp.2d at 368 (citations omitted)). Conscious avoidance occurs when "it can almost be said that the defendant actually knew" because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge. *United States v. Nektalov,* 461 F.3d 309, 315 (2d Cir.2006) (quoting *United States v. Reyes* 302 F.3d 48, 54 (2d Cir.2002) (quoting Glanville Williams, Criminal Law: The General Part § 57, at 159 (2d ed.1961))).Accordingly,  Courts have seen no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007)

Plaintiffs plead actual knowledge based on the conscious avoidance theory and assert that Defendants NFA, Kadlec, Wahls, and Kiela consciously avoided confirming facts and details of the fraud, including (a) whether Conspirators had made the required disclosures to customers and CTA's as stated in the G&F Agreements or as mandatory and a statutory requirements (b) whether CTA"s and

Opp, NFA, State Law Claims, Page 40

customers had granted <u>consent</u> to access their trading records, or <u>consent</u> for risk services to be able to later deny knowledge. Wahls, Kiela, and NFA consciously avoided checking that customers and CTA's had actually approved the G&F Agreements, the fee withdrawals, and if proper disclosures had been made in the sales and solicitations, in order, to be able to plausibly deny knowledge and avoid liability. Given NFA, Wahls and Kiela's detailed knowledge of the operations and "restructuring" of Boshnack, Rothman and Vision Financial Markets, LLC after it was disbarred (¶XX, ¶XX) and their approval of the Settlement, Defendant were intimately familiar with both the G&F Agreements,  HRHC competing arm and how HRF operations were run.

NFA Defendants were aware Boshnack, Rothman had competing interests in HRHC (¶XX,¶XX) were intimately aware of structuring of the G&F Agreements, as well as the specific s of the inside operations of Vision affiliates, they also had insight into their back operations, and personnel, and by approving the material terms of the ORSA (that were unlawful) they knew that it in order to provide risk management services, ti could not possibly be done, without granting fully disclosed access or transfer to the customers trading records (electronic data) and trade secrets across interstate lines to HRF, Felag, Boshnack and Rothman. *See also Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 372, 442–43 (S.D.N.Y.2010) Therefore NFA consciously knew that a component of providing this risk services, included direct acquisition of the customer accounts,  (Which they knew was not lawful without consent) and then failed to check if the traders had knowledge and authorization They knew they could plausibly deny the ORSA and its terms, by it also being kept oral. Therefore Plaintiffs have plausibly pled conscious avoidance that NFA knew but failed to verify in orde to later deny knowledge. This heightened knowledge als is due to NFA;s experience and hands on inside work with Vision, to how its operations ran in how it would have performed those risk services, that required acquisition of the trading accounts.

See Anwar "Citco Defendants "consciously avoid[ed] confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor [they] substantially further[ed]." <u>Fraternity Fund</u>, 479 F. Supp. 2d at 368; <u>cf. Rosner v. Bank of China</u>, No 06. Civ. 13562, *2008 WL 5416380, at *5*-*11 (S.D.N.Y. Dec. 18, 2008) *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 443 (S.D.N.Y. 2010)

(i)      Wahls and Kiela Consciously Avoided Confirming Facts of High Ridge's fraud

The FAC alleges, without limitation, Wahls , Kiela and NFA consciously avoided verifying  other facts that would have confirmed the fraud. For example, the terms of the G&F Agreements in particular identified that ADMIS and HRF had to make relevant disclosures to customers to comply with NFA 2-

26 and NFA 2-29. (¶¶XX) NFA knew these terms were material. (¶XX, ¶XX). Should Wahls or Kiela have performed a simple check that customers had been sent the disclosures about the G&F Agreements as required under ¶XXX they would quickly bverified no such disclosures were being made since November 2014. Therefore NFA consciously avoided confirming it so as to perpetuate the sche,e and not destabilize the funding arrangement. NFA, Wahls or Kiela could also have also simply checked the disclosures made to customers on the risk servicesm to make sure customers had knolwewdge and consented to the ORSA. A quick review of the communicatinos with customers would have hown qickly that no customers (including plaintiffs) were receiving the mandatory disclosures under the CFTC Reg 1.55.  Finally, NFA, Wahls, and Kiela were obligated to check and review the public disclosures and soliciattions sent to customers to ensure the sales and solications were not frraudueln and the customers had consented to the fee withdrawals. Very easily it would have been shown that no customers had knowledge or consented to the excessive fees (that were lucrative and enormous to keep the fraud going). that properly disclosed the fee withdrawal arrangements and sharing with HRF. Any one of the above simple checks would have confirmed the fraud. Therefore in the alternative to actual knowledge, Plaintiffs have alleged all Defendants consciously avoided confirming it. Therefore given these fact, "it can almost be said that the defendant actually knew" because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge. *United States v. Nektalov,* 461 F.3d 309, 315 (2d Cir.2006) (quoting *United States v. Reyes* 302 F.3d 48, 54 (2d Cir.2002) Plaintiffs have adequately pled the conscious avoidance theory. Allegations of conscious avoidance also are documented with Kiela's audit in October 2017-Mar 2018 where she had riect emails showing Plaintiffs had not granted consent. Yet the FAC states Kiela did not investigate the fraud and instead did a routine audit and failed to investigated to not confirm any facts.

## D –- SCIENTER

### Scienter Conscious Misbehavior or Recklessness

Plaintiffs incorporate by reference Count 3 for Scienter. Plaintiffs have also met the pleading standards that may also plead actual knowledge by alleging facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See* OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 377–79 (S.D.N.Y. 2005), opinion adhered to on reconsideration, No. 02 CIV. 8993 (LAK), 2005 WL 309755 (S.D.N.Y. Feb. 9, 2005), The actual knowledge prong is "not identical to the

scienter required for the underlying fraud." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 652 F.Supp.2d 495, 502 (S.D.N.Y.2009) (*quoting J.P. Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 253 n. 4. (S.D.N.Y.2005)).   Plaintiffs have pled strong circumstantial evidence of conscious misbehavior.

## E –SUBSTANTIAL ASSISTANCE

## I – OVERT ACTIONS

Plaintiffs have also met the third element of aiding and abetting that Defendants substantially assisted in advancing the commission of the fraud. Under New York law, substantial assistance occurs "when a defendant affirmatively assists, **or** helps conceal, **or** fails to act when required to do so, thereby enabling the fraud ... to occur." *Fraternity Fund Ltd.,* 479 F.Supp.2d at 370 (citation omitted).

NFA's MTD fundamentally ignores the first two prongs of substantial assistance that Wahls, Kiela , Kadlec and NFA affirmatively assisted **or** helped conceal the fraud, which were well pled in the FAC. Instead, NFA's sole defense rests only on the third prong of whether their "inaction" based was in violation of a duty to act. To support this proposition, they rely upon inapposite case law, *Land vs. Forgiorne,* which is not relevant precedent to the case. This case is based on a restaurant owner who did not have any fiduciary duties to his employees to disclose. The responsibilities of a restaurant owner cannot be compare to the statutory duties under the Commodities Exchange Act of an [SRO] who is under a mandatory regulatory regime and duty to enforce compliance law,  duty to investigate, duty to disclose, as well as duties to its protect public interests, which all do impose a duty to act. (See Count 3 # Duties) Nonetheless NFA totally ignores the first two prongs, which Plaintiffs have met of (a) affirmatively assisted or (b) helped conceal the fraud.

Additionally, the Court should note that *individual* Defendants Wahls and Kiela offer no defense to Count 4, and the claims of Aiding and Abetting fraud. A large portion of the Complaint in overt actions and substantial assistance was pled in detail. Neither does Kadlec offer any defense of his aiding and abetting fraud. In joining the defense of NFA, he joins the admissions by NFA at 23, that acknowledge "the alleged fraud of ADMIS and High Ridge". The actions of all Wahls, Kiela and Kadlec in aiding and abetting fraud are also imputed to NFA. For these reasons in itself the MTD should be denied.

Opp, NFA, State Law Claims, Page 43

(i) Concealment - Plaintiffs have Pled Substantial Assistance by Concealment

NFA, Kadlec, Wahls and Kiela's participation in the fraud was to conceal the material financial arrangements in the G&F Agreements and the ORSA the Customers and Plaintiffs. 1.55 (¶XX,¶XX). The scheme of concealment also included omitting the existing of the ORSA from the CFTC on mandatory reports that required its disclosure to the CFTC Reg 1.11-1.14. To perpetuate the also on reports on disclosed for registration of Boshnack, Rothman, FElag and HRF. (¶XX. Further the FAC, alleges that the NFA knew that the material terms of the ORSA were illegal, (¶XX) and Plaintiffs have pled actual knowledge and such actual knowledge is

Therefore the underling fraud, included concealment and intentional omissions in CFTC misreporting and violations of the regulations to conceal the ORSA not just from mandatory reports but also in disclosures to customers . The key allegations of NFA's  and Kadlec's role in the fraud, relates to both (a) the existence of the ORSA which violates the CFTC and CEA (b) the concealment of the ORSA from the CFTC and on reports that were mandatory to be disclosed (c) the failure to enforce laws that invoked disclosure and compliance of the ORSA with the CFTC rules, and (d) the fraudulent concealment by ADMIS, Lazzara and HRF, Boshnack of the ORSA. Plaintiffs have pled NFA, Kadlec's, Wahls and Kiela's knowledge of the fraud, by stating they participated. This is corroborated by Vision's MTD, that also alleges NFA's actual knowledge of the "arrangements". As stated supra, since the ORSA is illegal, its terms are null and void (See Section 2 ID). However, nowhere in NFA's Motion to Dismiss, do they challenge or defend Plaintiffs well-pled and extensive detail of the material terms of the ORSA (¶XX) and how they violate the CEA (¶XX).  See *Kaufman v. Cohen*, *307 A.D.2d 113, 126*, *760 N.Y.S.2d 157* (1st Dep't 2003). *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013) (acts of concealment sufficient to show substantial assistance)

(ii) Affirmative Assistance in  Enabling the Fraud in detailed audits and signatures by Wahls

The FAC alleges that at the core of the fraudulent scheme, Defendants NFA, Kadlec, Wahls, and Kiela's affirmative assistance started in November 1, 2014  by approving an oral risk services agreement "ORSA" which knowingly did not comply with the laws, regulations, and rules of the Commodities Exchange Act. Plaintiffs have detailed material terms of the ORSA which were unlawful and illegal. Without limitation the ORSA was not in compliance with CFTC Reg 1.11-1.14 and the reports that are required to be furnished the commission. The ORSA, the very existence of the ORSA, and all material terms violated 7 U.S.C. 13 (a)((4), (5)(6). The FAC alleges that Defendants NFA and Kadlec were aware

of and facilitated material terms including (a) extending margin an credit and (b) discretionary authority all of which were unlawful and prohibited under the CEA. The FAC also alleges that the terms were unlawful, as expressly provided under the CEA. NFA, Wahls, Kiela and Kadlec offer no defense to the illegalities of the ORSA or to any of the 7 U.S.C. 6 and 7 U.S.C. 13 statutes listed.

Further Plaintiffs have alleged that ORSA and its terms that are atypical, prohibited and not routine. Courts have held that the approval of terms, contract, or special financing that is not typical of the standard contracts in the markets. holding the ORSA contained material illegal terms). Plaintiffs have also alleged that the G&F Agreements that provided hundreds of Vision brokers atpyical financing was also not standard for the FCM. Participation in the financing of a fraudulent scheme, particularly where, as here, it is alleged that the financing was not routine, constitutes substantial assistance. *See, e.g., Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 800–04 (3d Cir.1978) (bank's atypical financing transactions constituted substantial assistance); *Bruce v. Martin,* 1990 WL 52180, at *5 (Sweet, J.) (upholding substantial assistance allegation that amounted to a "suggestion ... that the Sureties were not operating from only the ordinary economic motivation of collecting the premium"); *In re Gas Reclamation, Inc. Sec. Litig.,* 659 F.Supp. 493, 504 (S.D.N.Y.1987) (participation in "atypical financing transactions" supports aider and abetter liability). Finally, NFA, Wahls and Kiela are alleged to have helped perpetuate ADMIS and Lazzara's fraud by providing to the CFTC (and also to customers) false and incomplete risk reports and RMP's to conceal that monies and property were being disseminated to Boshnack, Rothman, Felag and the new reincarnated Vision/ These Broker practices encouraged and facilitated the ongoing fraudulent scheme, and thus constitute substantial assistance. *See Bruce v. Martin,* 1990 WL 52180 at *5. <u>ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.,</u> 957 F. Supp. 1308, 1330 (S.D.N.Y. 1997) The FAC alleges specific documents signed by Wahls, NFA, Kiela and Kadlec approving the unlawful material terms on dates between November 1, 2014 – January 2017. (¶XX,¶XX) *See JP* Morgan Chase Bank v. Winnick, 406 F.Supp.2d at 253–55 (aiding and abetting claim survives motion to dismiss based, in part, on email exchanges by, among and to the defendants detailing the transactions at the core of the fraudulent scheme and defendants' understanding of their wrongful nature).

Other overt acts by Wahls and Kiela included signing audits, and intentionally not checking facts so as to consciously avoid confirming it. Further after Plaintiffs documented the fraud and caught the Conspirators, NFA, Wahls and Kiela took affirmative actions to continue to conceal and cover up the fraud.  The FAC  "multiple audits" between November 1, 2014 and January 2017 when Plaintiffs opened

Opp, NFA, State Law Claims, Page 45

the account, NFA, Wahls and Kiela, approved and authorized the ORSA, its material terms, to substantially further fraud and that conduct was unlawful, under the express codified market participation rules of the CEA. ¶XX Where the primary fraud claim is predicated on misrepresentations in documents, substantial assistance usually involves assistance in the preparation or dissemination of the documents. *ABF Capital Mgmt. v. Askin Capital Mgmt.,* 957 F.Supp. 1308, 1328 (S.D.N.Y.1997).

Plaintiffs have also pled a complex and interdependent scheme where each party, including Vision brokers (Lazzara), Boshnack, Rothman, HRF, numerous other entities, ADMIS, as well as NFA benefitted from the symbiosis of the scheme. The scheme wasn't an isolated event, centered on Plaintiffs accounts. The scheme was widespread and symbiotic.. In *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F.Supp. 1308 (S.D.N.Y.1997),* The court held that where plaintiffs "allege a **highly interdependent scheme** in which both parties benefitted from ... fraudulent activity .... allegations that a defendant actively assisted and facilitated the fraudulent scheme itself, as opposed to assisting in the preparation of the documents themselves, are sufficient.. Defendants were in a **"symbiotic" relationship**,. *See id.* at 1330. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) .For the reasons above, Plaintiffs have pled substantial assistance.

(iii) – Inaction of Failure to Act When Required to Do So

The third prong of substantial assistance is failing to act when required to do so. Courts have ruled that "Inaction on the part of the alleged aider and abettor "ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). ("Inaction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act.' "); *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,* 261 F.R.D. 13, 25 (S.D.N.Y.2009)

(i)     NFA Did Have a Duty to Act

Plaintiffs incorporate by Reference all Duties included in Count 3. Unlike the restaurant owner case cited b Defendants in *Forgione*, Plaintiffs have asserted that NFA, through its statutory duty as a SRO, and mandate defined in 7 USC 21(p) has a statutory duty to enforce the compliance laws, investigate fraud and act. Namely (i) NFA Had A Statutory Duty to Act and Investigate and Enforce Compliance (ii) NFA had a Statutory Duty to Prevent Fraudulent Practices (iii) NFA had a Fiduciary or

Opp, NFA, State Law Claims, Page 46

Quasi Fiduciary Duty to Plaintifs as CTA's (iii) NFA has a Special Duty to Plaintiffs (iv) NFA had a Informal Duty of Trust and Confidence (v) NFA had a Duty to Prevent Further Diversions (vi) NFA had a Duty to Comply itself with the CEA and its own rules. NFA recasts Plaintiffs allegations that they fault NFA for not acting and claim they are absolved from action as they believe, they did not have a fiduciary duty to act however as argued in Count 3, NFA did have a multitide of duties, including but not limited to a Statutory Duty to enforce compliance, investigate and uphold the CEA>

*(i) NFA's inaction defense fails as it was in conscious and reckless violation of their duties to act*

Plaintiffs have also pled that Count 3 Scienter that Defendants acted with conscious misbhaviour or recklesseness. Plaintiffs incorporate by reference those arguments. Plaintiffs mhave also pled substantial assistance by the pleading of Scinter and reckess violations of their duties to act.

The intent of the statutory regime and legislation for NFA's role to registered CTA's and its members, invokes that NFA, was to protect investors. The conduct here was a reckless violation of their duties.

(ii)    Inaction was Designed to Further The Fraud

In the alternative, if the Court deems NFA had no statutory duty or any other duty (supra) to act, or NFA's failure to act was not a conscious or reckless violation of a to prevent the fraud or other illegal activities, Plaintiffs have also pled that the "inaction" was designed to further the fraud. (¶XX, ¶XX, ¶XX). Courts have ruled that when a Defendants inaction was for the purpose of permitting the fraud to continue, then such inaction cannot be excused. (See XXX) ¶XX, ¶XX Here Plaintiffs alleged NFA knew the fraud and illegal conduct was continuing, (¶XX,¶XX and had actual knowledge, yet they failed to take any action, as they were complicity in the activities and intended the fraud to continue. Therefore Plaintiffs have raised triable issues of fact, that plausibly alleged NFA was a participant in the fraud, and intended to further the fraud. (¶XX, ¶XX) See also *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989) holding that genuine issues of material fact raised to participation of the fraud.

[F] – Direct and Proximate Harm [Injuries] – se in Fraud

The aider/abettor's actions must also "proximately cause[] the harm on which the primary liability is predicated." *Rosner v. Bank of China,* 528 F.Supp.2d 419, 426 (S.D.N.Y.2007). In Count 4, NFA, Wahls, Kadlec and Kiela also do not dispute in their motion to dismiss that Plaintiffs did not suffer additional proximate harm and injury as the aiders and abettors continue and conceal the fraud.

Opp, NFA, State Law Claims, Page 47

## [G] – Wahls and Kiela Offer No Defense to the Substantial Allegations

### (i)    Wahls Fails to Make a Defense

The Court should note that Wahls  and Kiela individually offers no defense of the allegations of fraud against them for aiding and abetting fraud. The FAC is explicit that Wahls and Kiela had actual knowledge of the fraud (¶XX,¶XX). Wahls  and Kiela's failure to provide any defense to her allegations of signatures on the audits, and repeated "multiple audits" that authorized the illegal conduct is fatal to For instance Wahls offers "no explanation" to the Court on her signatures on documents before the Court. ¶XX.  Wahls highlights not one paragraphs that her audits "gave the green light" for the Conspirators to propagate the fraud. In fact Wahls stays silent on Count 4.  Wahls does not defend the facts pled that "ADMIS intend to call Wahls as a defense witness" and Wahls was "routinely familiar" with the Plaintiffs allegations were specific, on dates and times of Wahls audits, and exact material terms signed to authorizing and overtly enabling the fraud. And since Wahls is employed by and an agent of NFA Wahls actions are  imputed also to NFA Therefore Wahls has not raised a defense in the MTD.

### (ii)    Kiela Fails to Make a Defense

The Court should also note that Defendant Kiela has also offered no individual defense of her role in the multiple audits that authorized the foregoing conduct. Specific facts alleged of the role include (a) signing audits of multiple Vision brokers since November 1, 2014 (¶XX) that did not comply with the sales and solicitations of NFA 2-29 to disclose the G&F Agreements and (b) oversight of ADMIS in their promotional materials and literature to also disclose the material risk services and ORSA (¶XX). and also her furtherance of the fraud with Lazzara after October 2017.

## [H] – Cases by NFA are Not Applicable

NFA cites to two lone cases in defense of their Aiding and Abetting – neither of which apply to securities related fraud, or the types of conduct alleged in this Complaint.

*(a)  Chemtex, LLC v. St. Anthony Enters., Inc.***, (S.D.N.Y. 2007)** *Chemtex* is inapposite and applies incorrect standards as it relates to fraudulent conveyance of property and asserts in a bankruptcy case. This action is not a fraudulent conveyance case the standards for actual fraud in a bankruptcy case under the Uniform Fraudulent Transfer Act ("UFTA") and federal Bankruptcy Code do not apply.

*(b) Land v. Forgione***, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019).** Kadlec cites to *Land vs. Forgiorne* in their defense that unless they owed a "fiduciary" duty they had no obligation to act. But the case is inapplicable, because in the first instead Forgorne was a "restaurant owner" that cannot be compared to

Case 1:20-cv-03668-GHW-SDA   Document 100   Filed 06/30/21   Page 61 of 82

Opp, NFA, State Law Claims, Page 48

statutory duties under the CEA, or to the securities laws. Therefore a restaurant owner case is inapposite. Further, Second Circuit does not just invoke a fiduciary duty, it regards inaction in the case of any duty to act, as well as when the inaction was designed to intentionally aid the fraud, or was in conscious and reckless violation of the duty to act. *See Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). Id

### COUNT 7 – STATE LAW CONVERSION

In Count 7 Plaintiffs bring a cause of action for conversion. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, *460 F.3d 400, 403-04* (2d Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, *87 N.Y.2d 36, 44* (1995). The "[t]wo key elements of conversion are (1) [the] plaintiff's possessory right or interest in the property . . . and (2) [the] defendant's dominion over the property **or interference with it**, in derogation of [the] plaintiff's rights." *Colavito v. N.Y. Orgon Donor Network, Inc*., *8 N.Y.3d 43, 50* (2006) (citations omitted).  (emphasis added) *Deangelis v. Corzine*, 998 F. Supp. 2d 157, 183-84 (S.D.N.Y. 2014)

Defendants do not dispute the first prong of the claim that Plaintiffs possess rights and/or interest in the property. Prong [1] is not discussed in this opposition. Defendants MTD ***only*** disputes the second aspect that Plaintiffs failed to plead they exercised dominion over their property. *See NFA at 23-24*. Under 7 U.S.C 13(a) the conversion of plaintiffs money and property of value over $100 is unlawful under the laws of the Commodities Exchange Act. (e.g. ¶158, ¶364) Further Plaintiffs have also pled unlawful conversion of its trade secret, electronic records and property. (see e.g. ¶400).Under New York law, which permits a claims for "dominion or interference with" Plaintiffs property. Clearly omitted from Defendants motion, is any denial that Defendants, interfered in Plaintiffs right of possession.

A conversion claim in the commodities futures trading lies, when funds given to a party for one purpose (here Plaintiffs transferred funds and elsectronic financial account data) for one purpose – to facilitate trades in futures contracts – subject to compliance with the CEA, NFA and CFTC regulations and instead, is used for another purpose, to pay for concealed G&F Agreements, or to facilitate and unlawful ORSA, and transfer of Plaintiff trade secrets and – all without the customers consent, knowledge, authorization and disclosure. (¶XX, ¶XX). See Lawson v. Full Tilt Poker Ltd., 930

Opp, NFA, State Law Claims, Page 49

F.Supp.2d (S.D.N.Y.2013) (rejecting motion to dismiss conversion claim where funds that were assured to be segregated "in fact were improperly comingled with [the defendant company's] operational funds").

I - Plaintiffs adequately plead interference in their rights of possession

**I – NFA, Wahls and Kiela Interfered in the Plaintiffs rights or interest to the Property**

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, **interfering with that person's right of possession**." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (N.Y. 2006). (emphasis added). Defendanst do not dispute the Plaintiffs had ownership of the property and money in question.  Defendants motion ignores the second prong of the defense "or interferes in their rights of possession". NFA, Wahls and Kiela offer no defense of and do not raise an argument over their "interference" with Plaintiffs right of possession, and this argument is therefore waived.

[A] Conversion and Interference in Plaintiffs Monies

Plaintiffs have adequately alleged a conversion of their monies, and interference in trading their monies in the manners prescribed under the CEA. Those laws and rules under the CEA, prohibit the withdrawal of funds without Plaintiffs knowledge and consent – and expressly prohibit the sharing of profits without a CTA's consent (NFA 2-3 ¶XXXX). Plaintiffs assert "[A]n action will lie under New York law for conversion of money where there is an obligation to return <u>or otherwise to treat in a particular manner the specific money in question.</u>" LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997). Further, "funds of a specific, named bank account are sufficiently identifiable to support a conversion claim." Newbro v. Freed, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006) See Bright View Trading Co. v. Park, 2004 WL 2071976, at *4, 2004 U.S. D.st. LEXIS 18572, at *13 (S.D.N.Y. Sept. 16, 2004); NFA, Wahls and Kiela (a) interfered in the funds from its account and its diversion of monies to HRF, Boshnack and Rothman and (b) interfered in the treatment of Plaintiffs property and money to be treated in compliance with the CEA.  The Complaint alleges that Defendants interfered in that right by (a) engaging and authorizing an <u>unlawful arrangement</u> in an ORSA that  permitted dissemination of Plaintiffs confidential electronic trading records, financial data and trade secrets to its competitors; (b) approving bulk transfers from the Plaintiffs accounts without authorization and (c) signing multiple audits starting in November 2014 that gave the green light to facilitate the conversions for the benefit of Conspirators. Because Defendants conduct approved illegal conduct and facilitated the unauthorized

Opp, NFA, State Law Claims, Page 50

withdrawals and conversions of monies from Plaintiffs' account and were for unlawful purpose NFA's admission that the terms were illegal voids all immunity. (See NFA at 5 admitting that illegal terms of the ORSA included "withdrawing more and more funds".

Since all Defendants interfered in Plaintiffs rights and instead (i) provided signed documents that stamped "approvals" on the <u>unauthorized</u> withdrawals of funds from Plaintiffs account and Conspirators did intentionally withdraw and siphon moneys and funds from Plaintiffs account (¶XX) to the exclusion of Plaintiffs rights and without Plaintiffs authorization, or consent, all Defendants therefore interfered in the lawful use and rights of Plaintiffs property. (¶*XX, ¶XX).* Further since NFA, Wahls, and Kiela's approvals and signatures on audits, that approved "illegal market participations" and illegal conduct, (without authority from the CFTC) interfered in plaintiffs control of its assets and electronic trading records without authorization and consent. (¶XX, ¶XX). These actions and approvals of illegal conduct, substantially interfered in Plaintiffs rights to its property. (¶XX, ¶XX). Plaintiff can establish conversion by showing the defendant's …**interference** with the property violated the plaintiff's rights. <u>Colavito v. N.Y. Organ Donor Network, Inc.,</u> *860 N.E.2d 713, 717* (N.Y. 2006). The syphoning and purloining of funds and moneys, and dissemination of electronic records, and trade secrets from the commodities futures accounts resulted in direct and proximate harm injury to Plaintifffs. NFA, Wahls and Kiela's conduct interfered into its exclusive rights thereto, to sustain a claim for conversion. <u>Dardashtian v. Gitman,</u> No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017)

[B] Conversion and Interference in Plaintiffs electronic records and trade secrets

A claim for conversion applies to electronic records stored on a computer. Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272 (N.Y. 2007).Plaintiffs confidential personal data, electronic trading records and trade secrets data were stored on the computer. Plaintiffs with owned or had an interest in the property and electronic records stored on the computer.  The charge of access to and disclosure of Dardashtian's personal private financial data alleges an exercise of control of that data which is inconsistent with Dardashtian's private possession of it, and thus an act of conversion <u>Dardashtian  ID</u>

[C] Kadlec's Conversion is Imputed to NFA

In both cases of [a] monies and property and [b] electronic records and data, NFA, Wahls and Kiela interference violated Plaintiffs rights.  Further since NFA have admitted that the FAC adequately pleads the ADMIS and High Ridge converted Plaintiffs moneys and funds, Kadlec's actions to convert

Opp, NFA, State Law Claims, Page 51

are imputed to NFA. A corporation must, therefore, be responsible for the acts of its authorized agents even if particular acts were unauthorized ( *see Ruggles v American Cent. Ins. Co. of St. Louis*, *114 NY 415, 421* [1889]). "The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent" ( *see Andre Romanelli, Inc. v Citibank, N.A.*, *60 AD3d 428, 429* [1st Dept 2009]). *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)

Therefore Plaintiffs have adequately pled a cause of Conversion in Count 7 against NFA, Wahls, Kiela and this cause must be dismissed. Since the actions were unlawful (as defined by the CEA 7 USC 13(a)(1)(4)(5) and Defendants have offered no defense to their illegalities there is no immunity for this claims (See NFA at 5 admitting illegal withdrawal of funds, and illegal transfer of trade secrets). To the extent the claims is unclear or ambiguous Plaintiffs respectfully seek leave to amend and replead.

### Count 8 Aiding and Abetting Conversion and Misappropriation

[A] Aiding and Abetting Conversion and Misappropriation under Common Law

In Count 8 Plaintiffs have pled a cause of action for Aiding and Abetting Conversion. Under New York law, the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar. The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance. *See, e.g., Design Strategy, Inc. v. Davis,* 469 F.3d 284, 303 (2d Cir.2006) *Lesavoy v. Lane,* 304 F.Supp.2d 520, 526 (S.D.N.Y.2004), *aff'd in part, vacated on other grounds in part,* 170 Fed.Appx. 721 (2d Cir.2006) (aiding and abetting conversion); *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005) (aiding and abetting fraud).

[B] Aiding and Abetting Conversion under 7 U.S.C. 25(b)

Plaintiffs also bring this claim against NFA, Wahls, Kiela and Kadlec for "aiding and abetting conversion: Section 22(b) (1) of the CEA creates liability for "[a]ny person ... who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter...." "Generally stated, to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008), aff'd, 730 F.3d 170 (2d Cir. 2013), and aff'd, 730 F.3d 170 (2d Cir. 2013).

Opp, NFA, State Law Claims, Page 52

Further 7 U.S.C. 13(a) makes it unlawful to steal, purloin, convert Plaintiffs money or property (¶364) and NFA 2-4 9061 makes it unlawful to convert a traders transaction records and trade secrets. Further NFA employees are bound by the statutory duties of 17 CFR § 1.59 which prohibits  employees of the NFA from disclosing any material, non-public information (which includes Plaintiffs electronic data and trade secrets) obtained through special access related to the performance of such duties. Specifically and without limitation 7 U.S.C. 25(b) also provides a private right of action to traders (Plaintiffs) for aiding and abetting.

[A] Existence of Primary Violation of Conversion

Defendant do not dispute the existence of the primary violation of conversion. (*See* NFA at 23 that ADMIS and High Ridge.[9] NFA's admission of this supports the allegations the conduct was unlawful (e.g. ¶158,¶364, 7 U.S.C 13(a), ¶400). As stated in Count 7, Plaintiffs have alleged wrongful conversion of both their monies in their FCM account, and to their electronic records trade secrets, and personal financial data. Defendants have admitted the wrongful conversion of money and property.

[a]  Conversion of Plaintiffs monies (See Count 7)
[b] Conversion of Plaintiffs personal financial data, and material non-public trading records

Court's have held that the charge of access to and disclosure of [a Plaintiffs'] personal private financial data alleges an exercise of control of that data which is inconsistent with [Plaintffs'] \private possession of it, and thus an act of conversion. Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017) Similarly Defendants have not disputed the underlying tort of misappropriation. (See NFA at 5 stating "ADMIS and High Ridge misappropriated trade secrets")

**[B] Actual Knowledge** Plaintiffs incorporate by reference the allegations of actual knowledge or conscious avoidance of aiding and abetting and fraud from Count 3 and 4.

**[C] Substantial Assistance** Plaintiff incorporate by reference in full the substantial assistance in Count 4 for aiding and abetting fraud. In particular and in addition, Wahls and Kiela raise no individual defenses to the charges of substantial assistance of conversion and misappropriation.

**(a) Wahls substantial assistance in conversion**

Wahls substantially assisted in the fraud in both conversion of Plaintiffs moneys and property Plaintiffs have alleged that Wahls continued to provide substantial assistance in converting Plaintiffs property

---

[9] Again Plaintiff document the primary violators of conversion were Trey Lazzara, LCI – the introducing broker responsible for Plaintiffs account with independent duties, ADMIS, Kadlec, Boshnack, Rothman, Felag and HRF, and NFA continues to abbreviate the reference. Plaintiffs dispute the contention that just ADMIS and HRF were the violators and preserve their rights accordingly. For purposes of this motion it does not impact the cause of action.

Opp, NFA, State Law Claims, Page 53

(which includes confidential and private financial records, trading data and trade secrets (electronic conversion of Plaintiffs CTA programs, and material non-public information) and with actual knowledge, signed audits in January 2019-February 2019 that allowed Vision Investment Advisors and other Boshnack affiliates to use also as CTA's, and transact in directly competing programs, after improperly acquiring Plaintiffs CTA program. (Wahls continued to interfere and obstruct Plaintiffs proprietary and sole rights to use and profit from the CTA program, and continued to facilitate the scheme to convert property for the benefit and unlawful unfair market competition of Boshnack, Rothmand, VIA and their entities.(¶XX,

**(b) Kiela's substantial assistance in conversion**

Kiela also participated directly in the conversion by way of her audits on Vision brokers, ADMIs and Lazzara./ Specifically when she was aware of the conversion fo plaintiffs propery, she furthered the conversion by allowing further disclosure of PLaintff property to Vision Investment Advisors in 2018, and also took no action to return additional properies converted from Plaintiffs account. Kiela's ongoing actions have and are allowing the fraud to continue and harm plaintiffs

**(c.) Kadlec's substantial assistance in conversion**

Kadlec's substantial assistance in conversion is admitted in NFA's motion to dismiss as it has admitted that ADMIS and High Ridge converted Plaintiffs moneys and properties. Kadlec's actions are also imputed to the NFA. (See supra) See Kirschner ID)

**[Other Elements]** Since Defendants do not dispute any other elements against Count 8 (NFA at 24) no opposition is raised and those defense are waived. Kadlec also has joined by reference NFA's motion. For the same reasons plead in Aiding and Abetting in Count 4 under 7 U.S.C. 25(b), Wahls, Kadlec, Kiela and NFA aided and abetted and provided substantial assistance in the conversion of Plaintiffs money and property. Therefore Plaintiffs have plausibly pled substantial assistance by Wahls, Kiela and NFA for conversion of Plaintiffs money and property

## COUNT 10 -CIVIL CONSPIRACY

In Count 10 Plaintiffs adequately pled a Count of Civil Conspiracy against NFA, Wahls and Kiela. To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an **underlying tort**, must plead facts sufficient to support an inference of the following elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."

Opp, NFA, State Law Claims, Page 54

*Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010) Courts do not hold the Plaintiffs to the stricter Rule 9(b) standards on the conspiracy claim, but rather the normal Rule 8(a) standards. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir.1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy.) Defendants' are incorrect that such a cause of action does not exist. Such a cause is valid to connect the actions of the individual defendants and conspirator, who were part of a common scheme "Although an independent cause of action for civil conspiracy is not recognized in this State . . . **a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme"** (*Litras v Litras*, *254 AD2d 395, 396*; *see Alexander Alexander of N.Y. v Fritzen*, *68 NY2d 968, 969*; *Gouldsbury v Dan's Supreme Supermarket*, *154 AD2d 509, 510*; *Burns Jackson v Lindner*, *88AD2d 50, 72*, *affd59 NY2d 314*).

(i)     Underlying Torts were Pled and Admitted to by Defendants

Plaintiffs have pled four underlying torts. [1]The tort of fraud, [2] the tort of unfair competition, [3] the tort of misappropriation including trade secrets, and [4] the tort of conversion. NFA and Kadlec (in joining NFA's brief) have  admitted to all the underlying tort of fraud of ADMIS and High Ridge. (In all cases Defendants do not dispute the underlying torts. NFA MTD stated ""Admis and High Ridge committed the fraud", and "ADMIS and High Ridge misappropriated trade secrets" or "ADMIS and High Ridge converted monies and property"10 Similarly ADMIS does not dispute anywhere in the motion the well-pled fact and tort of unfair competition. Therefore Plaintiffs may plead the existence of a conspiracy, in order to connect the actions of the individuals.

(ii)     Pleading Standards at Met for Civil Conspiracy

Once fraud or [underlying tort] is established, the conspiracy must be proven, requiring "(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy ." *Richardson v. Artrageous, Inc.,* No. 93 Civ. 5221(RPP), 1994 WL 97222 at *3 (S.D.N.Y., March 18, 1994).   The FAC alleges an agreement between NFA and Conspirators was to enter into an ORSA which violates the rules and regulations of the CEA, CFTC and NFA. (¶XX, ¶XX, ¶XX). The agreement was that NFA, would permit unlawful conduct to continue and facilitate it not

---

10 NFA continue to refer to the participants as ADMIS and High Ridge, but the FAC applies to Lazzara, LCI and numerous other conspirators.

Opp, NFA, State Law Claims, Page 55

being disclosed to newcomers to the futures industry(¶XX, ¶XX) Also the agreement between the conspirators, was to conceal and cover-up the scheme, without disclosing the activities that were unlawful. The fundamental allegation in this Complaint is that NFA, Wahls, Kiela, Kadlec and Conspirators, had an agreement to permit unlawful conduct, that they *knew* violates the laws of the CFTC, CEA and NFA.(¶XX, ¶XX). Contrary to their motion to dismiss Plaintiffs have carefully outlined detailed statutes of illegal conduct (7 U.S.C 13(a)(1)(4)(5)), 7 U.S.C. 6(b)(a) etc)

Again the Court should note, that Defendants at no time deny or oppose any of the unlawful conduct. This is fatal to their motion for which it should be denied. Courts have determined that illegal conspiracies, of course, can rarely be proved through evidence of explicit agreement , but must generally be proved through inferences from the conduct of the alleged conspirators. *See Michelman v. Clark-Schwebel Fiber Glass Corp.,534 F.2d 1036* (2d Cir.), *cert. dem,429 U.S. 885*, *97 S.Ct. 236*, *50 L.Ed.2d 166* (1976).

NFA"s MTF is silent and vacant in response to Wahls overt acts to sign "multiple audits' containing evidence of both Wahls express knowledge of the unlawful ORSA, and their overt acts to conceal it. Wahls signatures on documents authorized the illegal torts of conversion, fraud, and misappropriation (¶XX, ¶XX). Also NFA's MTD is silent and vacant on Kiela knowledge and participation in the scheme, as well as her signatures on documents authorizing the underlying torts of conversion, fraud and misappropriation. (¶XX, ¶XX) To continue the unlawful participation of Boshnack, Rothman and Felag they concealed their activities in material and mandatory disclosures to the CFTC and also to customers and traders (plaintiffs) who had a statutory right to know this information CFTC 1.55 ¶XX. This facilitate the scheme that they could continue their guarantees on thousands of customers accounts which relied on Boshnack's funding (¶*XX*). These arrangements they knew were unlawful, and  their purpose was to keep them concealed. NFA's material role in facilitating and approving an illegal ORSA, under which monies and properties were transferred to HRF and other fraudulent market participation occurred is sufficient to plead NFA's material role in the scheme. (See also Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009) – holding a party facilitating a contract  to partake in unlawful conduct sufficient to plead civil conspiracy. (See also Count 3, 4, 8 aiding and abetting conversion) and to keep the illegal arrangements undocumented and concealed (and to cover-up). (¶XX) Since Kadlec also facilitated the scheme and directly participated in the underlying torts of fraud, conversion, unfair competion, and misappropriation his acts are imputed to the NFA. (*See*

Opp, NFA, State Law Claims, Page 56

Kirchsner ID.)  "Moreover, great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." 777388 Ontario Ltd. v. Lencore Acoustics Corp., *142 F. Supp.2d 309, 319* n. 4 (E.D.N.Y. 2001) (Glasser, J.)." *Banks v. Consumer Home Mortgage, Inc.*, 01-CV-8508 (ILG), at *1 (E.D.N.Y. Mar. 27, 2003) Therefore Plaintiffs have adequately pled a cause of Civil Conspiracy in Count 10 against NFA, Wahls, Kiela and this cause must be dismissed. Since the actions were unlawful (as defined by the CEA 7 USC 13(a)(1)(4)(5) and Defendants have offered no defense to their illegalities there is no immunity for this claims (See NFA at 5 admitting illegal withdrawal of funds, and illegal transfer of trade secrets). To the extent the claims is unclear or ambiguous Plaintiffs respectfully seek leave to amend and replead.

### COUNT 9 - Tortious Interference

Plaintiffs have adequately pled a cause of action under Count 9 for Tortious Interference

To state a claim for tortious interference with prospective economic advantage, plaintiffs must prove that-"(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).

(i)    Interference

NFA admits in their motion that Conspirators "interfered" in their business relations. Therefore Defendants concede there was improper underlying tort of interference, by first admitting that "ADMIS and High Ridge" were the ones that interfered in their business relations.[11] (NFA at 24) The definition of "interfere" is  [1] : to act in a way that impedes or obstructs others  [2] : to enter into the concerns of

---

11 As a separate note, NFA continue only to blame ADMIS and High Ridge for the tortious conduct and ignore the culpable conduct by Introducing Broker Trey Lazzara, who repeatedly instigated the fraud and misrepresentation. This was in violation of his own independent duties and ethics as a broker . NFA also ignores the culpable conduct as well as key players Felag, Rothman and Boshnack. For simplicity of this motion only, and without waiver of its rights, Plaintiffs acknowledge NFA, Wahls and Kiela's admission that "ADMIS and High Ridge" interfered in business relations. Plaintiffs also assert numerous other Conspirators were parties to the conduct, particularly Trey Lazzara.

Opp, NFA, State Law Claims, Page 57

others. However, Plaintiffs allege that NFA, Wahls and Kiela <u>also</u> interfered in their economic advantage and business relationships.

(1)    Wahls, Kiela and NFA Interference

The FAC pleads that Wahls, Kiela and NFA interfered in Plaintiffs economic advantage and business relations by (i) authorizing illegal conduct in an ORSA that she knew was not permissible under the CEA and CFTC that obstructed Plaintiffs rights of to accurate and exchange-complaint risk management, (¶*XX, ¶XX)* (ii) approving inaccurate reports to the CFTC that concealed the ORSA that permitted Conspirators to treat Plaintiffs moneys and property not in compliance with the CEA (¶XX -¶XX);(iii) signing documents that authorized illegal margin activity on Plaintiffs accounts that again interfered in the treatment of Plaintiffs money and property not in compliance with the laws of the CEA (¶XX-¶XX); (iii) signing documents that authorized dissemination of trade secrets and material non-public information, electronic records and trading activity to its competitors (¶*XX, ¶XX)* (iv) interfering in Plaintiffs competitive provision of CTA services by disseminating its confidential account to HRHC (owned by HRC), (v); authorizing bulk transfers of monies from Plaintiffs account to both deplete its CTA performance, and purloin profits, without Plaintiffs consent ¶XX, ¶XX). (vi) approving illegal sales and solicitations material that knowingly fraudulently concealed the G&F Agreements and ORSA, to induce Plaintiffs to open and transact in futures trading accounts.

This conduct cause direct and proximate losses to Plaintiffs which then substantially interfered in its business relations. knew of the unfair competition and illegal aspects of the ORSA,

**Wahls Interference** The FAC alleges that Wahls conduct continued to interfere and impede Plaintiffs business included but not limited to in multiple audits between November 1, 2014 until present including January – February2019, with full knowledge of the harm caused to Plaintiffs, ignored the concerns of Plaintiffs, and propagated further direct competition to permit Vision Investment Advisors continue to engage in unfair competition and directly compete with Plaintiffs, directly impeding their provision of services. (¶XX, ¶XX).  Wahls, NFA and Kiela continued to permit Vision Investment Advisors to act and trade on material non-public information, continuing to obstruct Plaintiffs rights to its proprietary property and failed to address any of the concerns of Plaintiffs ¶XX< ¶XX< ¶XX

**Kiela Interference** The FAC plead that Kiela interfered in Plaintiffs economic advantage and business relations by also approving the above alleged conduct (See supra (1) Wahls) as related to Vision brokers, including Trey Lazzara and ADMIS (FAC¶XX, ¶XX) Specifically but not limited to after September

Opp, NFA, State Law Claims, Page 58

2017 Kiela, had direct and actual knowledge of Plaintiffs conversion of monies and diversion of electronic records and trade secrets trading data and NFA. Kiela  interfered in and did not take any actions to prevent further harm to Plaintiffs in diversion and use of their trade secrets. Kiela interfered in did not take any actions to refund unauthorized fees to Plaintiffs harming their business In March 2018 registered Vision Investment Advisors, Rothman, and Boshnack to directly compete with Plaintiffs using inside information and material non-public information. The use of material non-public information in any form of trading is also illegal. This then cause substantial interference and harm to Plaitniffs business relations and economic advantage. Again, Plaintiffs have not pled that NFA interfered with their business relations; they claim ADMIS and High Ridge did.

**NFA Interference:** NFA also interfered in Plaintiffs economic advantage and business relations by (a) knowingly approving in illegal activities that would damage Plaintiffs' CTA by permitting its competitors HRHC, HTC to have discretionary margin on its account – which harmed its economic advantage (¶XX) (b) concealing the G&F Agreements and ORSA in its all mandatory customer disclosures related  from Lazzara and ADMIS, including but not limited to risk disclosures, CFTC 1.55, CFTC 1.11, and own publications, websites and BASIC, so Plaintiffs would have "no knowledge" its accounts were being disseminated to Vision – which harmed its economic advantage  (¶XX) (b) by also authorizing the illegal conduct in the ORSA that would deplete Plaintiffs' monies and disseminate trade secrets to its competitors without consent (c) authorizing market participation that it knew would violate the CEA in Boshnack, Rothman, Felag and HRF were not permitted to do, including unlawful margin allowances, and; (d) actively and persistently concealing their

**Kadlec Interference:** Since the Defendants acknowledge and agree that ADMIS interfered in Plaintiffs business relations and Kadlec also was involved in the interference (Notably by engaging in unfair competition with Vision Investment Advisors and procuring their use of Plaintiffs property in direct competition, Kadlecs role in ongoing interference is imputed to NFA. (See Kirschner ID). Kadlecs ongoing interference also used his position on the NFA Board to continue to facilaite ongoing business interference with Kumaran.

**(i)** **Wrongful means** New York Courts have held that "dishonest, unfair, or improper means" must amount to misconduct that constitutes either a crime or an independent tort. *See Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004). *See, e.g., AIM Int'l Trading, LLC v. Valcuine S.p.A.,* No. 02 Civ. 1363, 2003 WL 21203503, at *8 (S.D.N.Y. May 22, 2003). NFA leaves out the words "unfair" in the well accepted standards of "dishonest, ***unfair*** or improper means". NFA's

Opp, NFA, State Law Claims, Page 59

defense therefore rests on the words "dishonest" and "improper". Therefore at the very least, Defendants do not dispute that the conduct was "unfair" which meets the pleading standards of wrongful means For this purpose their motion should be denied.

Plaintiffs have shown that Wahls, Kiela and NFA used "dishonest, unfair and improper means". Courts have held that allegations of fraud and illegal means satisfy the prong of "wrongful means". The independent torts are conversion (see Count 7), fraud, misrepresentation, and misappropriation. Courts have also held that allegations of fraud and illegalities satisfy the prong of wrongful means . *Cf. MDC Corp., Inc. v. John H. Harland Co.*, *228 F. Supp.2d 387, 397-98* (S.D.N.Y. 2002) (finding allegation that defendant "acted maliciously and used fraudulent or illegal means" is sufficient pleading of wrongful means). The FAC states numerous allegations of dishonest and fraudulent concealment. (Count 3 – e.g. that NFA knew of the G&F Agreements and the ORSA and made false and incomplete statements to conceal that customers accounts opened at ADMIS would be subject to illegal risk services by disbarred owners  ¶XX - (2) that NFA and Kadlec took overt actions to fraudulently concealed the ORSA and G&F even when (3) the material terms of the ORSA were unlawful (¶XX – noting NFA does not dispute once that 7 U.S.C. 13(a) and 7 USC 6. was violated Plaintiff has also pled specific conduct in detail of the illegal conduct of NFA, Wahls, and Kiela (¶XXXX)

(b) Wrongful means includes Illegal Conduct

Since Defendants offer no denial or defense to the well-pled Federal statutes of illegal conduct. 7 U.S.C.13 (s) & 7 U.S.C. 6(b) Defendants have waived their defense on illegalities. Therefore Plaintiffs claims survive on illegal conduct Further the wrongful means including undercutting Plaintiffs to give its property and competitive advantage to HRHC and Vision Investments which substantially interfered in its business relations and economic advantage., See also PKG Grp., LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251–52 (S.D.N.Y. 2006) (holding that the allegations of such misconduct, taken, as they must be, most favorably to plaintiff, assert that defendants made false statements and covertly took actions to undercut Plaintiffs, are sufficient to provide fair notice to Defendants of the wrongful means conduct upon which to base its claims). The unopposed pleading of illegal conduct is sufficient to plead wrongful means.

## (c) Specific Business Relations

Defendants also wrongly allege that Plaintiffs did not plead specific business relations with an identified third party. This is false. Plaintiffs have sufficiently pled (and at least consistently inferred)

Opp, NFA, State Law Claims, Page 60

the existence of specific business relations that were harmed. See e.g. ¶574 – Alleging business relationship with friends and family "investing substantial monies" in formation capital and the formation of hedge funds and ¶576 Plaintiffs raised capital from "friends and family to sizable investment of capital" and "ten year proforma over tens of millions" and "business model to raise substantial assets." Plaintiffs also alleged they planned to "start with small capital (less than $100,000) and overtime scale it up to a significantly large number". This was consistent with other facts that they had prospective relations to raise over $1 million. Further the Complaint shows NRCM was dissolved and the company harmed (See ¶XXX) losing that access to capital.

Courts have held  Plaintiff must at least show that "particular prospective business relations were lost due to the defendant's improper interference ." *D'Andrea v. Rafla-Demetrious, 3 F. Supp.2d 239, 250 (E.D.N.Y. 1996), aff'd, 146 F.3d 64 (1998)*. In  *D'Andrea* the Court stated,  "A cause of action for interference with prospective economic advantage contemplates a defendant who has interfered with specific precontractual relations or a prospective relationship between the plaintiff and a third party that would have proceeded to some sort of binding, if not contractual, relationship but for the defendant's interference ." 3 F. Supp.2d at 251 (emphasis added).  The Second Circuit may have imposed a less stringent standard with respect to the type of business relationship that must be shown, it has not altered the "but for" requirement set forth in the New York cases. See, e.g., Commercial Data Servers, Inc. v. IBM, 166 F. Supp.2d 891, 898 (S.D.N.Y. 2001) ("Plaintiff must specify `some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior.'"). *Finkelstein v. Wachtel*, 00 Civ. 2672 (JSM), at *1 (S.D.N.Y. Apr. 21, 2003)

If the Court determines that more specificity is required at the pleading stage to further identify business parties and relations, consistent with ¶574, ¶576 Plaintiffs respectfully seek leave to replead. Other specific business relations that were alleged to have been harmed included ¶XX-¶XX – which include Plaintiffs have met the specific standards of an prospective and/or existing relationship through which Plaintiffs would have done business but for the allegedly tortious behavior". (*See* Commercial Data Servers, Inc. id) Since NFA, Wahls, and Kiela, conduct was clearly illegal, and not necessary part of the functioning of the futures market, to allow, *to wit* "fraudsters" to engage in Plaintiffs account under an impermissible ORSA, and intentionally act as market participants to circumvent the express rules of the CEA and CFTC to secure "financing" their illegal acts those unauthorized acts, do not grant them immunity. As NFA were not acting in the aegus of the regulatory capacity, but instead to procure

Opp, NFA, State Law Claims, Page 61

illegal market participation as clearly prescribed by 7 USC.13(a) (unlawful conduct) no immunity exists. Immunity is not granted when conduct is outside the proper and lawful functioning of the government, and the SRO acts for unlawful purpose, to intentionally commits acts of concealment of fraud to circumvent the rules/laws of the CEA.

## COUNT 6- MISAPPROPRIATION OF TRADE SECRETS

Plaintiffs brought a valid cause of action for misappropriation of trade secrets under New York  Law.

[A] Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets under New York law, the Complaint must plausibly allege "(1) that it possessed a trade secret and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Schroeder v. Pinterest Inc*., *17 N.Y.S.3d 678, 690* (1st Dep't 2015) (quoting *N. Atl. Instruments*, *Inc. v. Haber*, *188 F.3d 38, 43-44* (2d Cir. 1999).  The requirements are similar for showing a misappropriation of a trade secret under the DTSA and misappropriation under New York common law.  Under the DTSA , a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent. *AUA Private Equity Partners*, *LLC v. Soto*, No. 17 Civ. 8035, *2018 WL 1684339, at \*4* (S.D.N.Y. Apr. 5, 2018) (citing *18 U.S.C. § 1839(5)*). *ExpertConnect, L.L.C. v. Fowler*, 18 Civ. 4828 (LGS) (S.D.N.Y. July 10, 2019)

"Misappropriation" under the DTSA includes the (1) acquisition, (2) disclosure, or (3) use of a trade secret. *Id*.§ 1839(5).

New York law "requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed." Sit-Up Ltd. v. IAC/InterActive Corp., No. 05 Civ. 9292, 2008 WL 463884, at \*10 (S.D.N.Y. Feb. 20, 2008). A trade secret claimant must "provide Defendants with the general contours of the alleged trade secrets" that it seeks to protect. Chatterplug, Inc. v. Digital Intent, LLC, No. 16 Civ. 4056, 2016 WL 6395409, at \*3 (N.D. Ill. Oct. 28, 2016). Courts have held that general contours to put Defendants on notice of the protectable information are sufficient (see Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at \*5 (S.D.N.Y. Nov. 28, 2017) holding that  "computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and

Opp, NFA, State Law Claims, Page 62

Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce.")

Here Defendants as the NFA, know and incorporate within their rules that a CTA's trading strategies and trading records constitute a trade secret. (NFA 2-4, 9061). Therefore it is already known that the trading algorithms of a trader are trade secrets. Defendants attempt to distract the Court by pointing to a single paragraph ¶76, but the correct relevant paragraphs are (¶351, ¶676, ¶86, ¶41, ¶875, ¶858, ¶77, ¶78.  ¶75, ADMIS-ECF15¶42, ¶40,¶34, ¶30 – see below outlining e.g "CTA's timing, execution, volumes, prices, strikes, triggers, and markets" and : trade details, transaction history, trading records, trading executions, strategies, timing, formulae" Holding that type of proprietary formula that gives it a unique advantage, such as a complex pricing or **trading algorithm in a financial business** is a trade secret Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc. , *323 F.Supp.2d 525, 537–38* (S.D.N.Y. 2004). *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016). Further any ruling that a CTA's trading records or transactions are not trade secret would contravene with Federal statue. NFA is also bound by CFTC 1.59 (d) which prohibits disclosure and use of material non-public information. That is also widely held to be a traders positions and transaction records. Therefore at this pleading stage, Defendants are more than adequately on notice as to what the trade secrets are and to their value.

[B] Plaintiffs Pled Their Information and Value

Defendants' defense is that Plaintiff did not plead information or vale. Plaintiffs did in fact more than adequately plead the information and describe in detail the trade secrets at hand.

(i)     Plaintiffs adequately described the information

Plaintiffs have adequately pled the contours of its trading algorithms to put Defendants on notice of the protectable information, ¶351, ¶676, ¶86, ¶41 – specifically the components of its trading algorithms – e.g the real-time trade secret acquisition of a CTA's timing, execution, volumes, prices, strikes, triggers, and markets, especially in a trading strategy  See Saks Inc. v. Attachmate Corp. , No. 14 CIV. 4902 CM, *2015 WL 1841136, at *18* (S.D.N.Y. Apr. 17, 2015) ; Holding that type of proprietary formula that gives it a unique advantage, such as a complex pricing or **trading algorithm in a financial business** is a trade secret Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc. , *323 F.Supp.2d 525, 537–38* (S.D.N.Y. 2004). *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016) Further NFA Rules 2-4 9061 also acknowledge that a CTA's transaction history and trade details are also a trade secret (see e.g ¶875, ¶858, ¶77, ¶78 NFA2-4 9061 also acknowledges under its own rules  that a CTA's

electronic data, and trading history and transaction history (which discloses their trading activity) is also a trade secret. Therefore it is more than sufficient to put Defendants on notice, that consistent with their own NFA rules, the CTA trade details and transaction records are what are routinely considered trade secrets. ¶875, ¶858, ¶77, ¶78 (see e.g. ¶875 - including trade details, transaction history, trading records, trading executions, strategies, timing, formulae, compilations, methods. Plaintiff also incorporated by reference ¶75 the relevant sections in the related case ADMIS 20-CV-3873 *ECF*15 ¶26-¶57 ADMIS 3873 - ECF15¶42, ¶40, ¶34 , ¶30 - unique and proprietary reporting in monitoring risks in the Commodities Options derivative markets. The design, functions, features, reporting, capabilities and algorithms are all the competitive trade secrets of Plaintiffs. Courts in this district have accepted relatively general descriptions of alleged secrets at the motion to dismiss stage. *See, e.g., Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) (holding that "technical data, internal pricing information, work product, research, engineering designs" was sufficiently specific in light of the specific course of conduct alleged). Defendants' argument to just use ¶76 is irrelevant and not a comprehensive pleading of what Plaintiffs outlined in their pleading to identify the components and details of the trade secrets. (See (¶351, ¶676, ¶86, ¶41, ¶875, ¶858, ¶77, ¶78. ¶75, ADMIS-ECF15¶42, ¶40,¶34, ¶30) Also Plaintiffs have alleged that its risk management strategies were trade secrets (¶84).  New York law "requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed." Sit-Up Ltd. v. IAC/InterActive Corp., No. 05 Civ. 9292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008). Courts have held that general contours to put Defendants on notice of the protectable information are sufficient (see  Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) holding that  "computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce.")[12]

---

[12] Kadlec cite to Northland is misplaced. The IP at issue there is a software program that had a specific software licensing agreement ("EULA") and was a computer program. Therefore the underlying facts are not the same. There is no EULA her. That case is also not a final order, as a Protective Order was granted holding many of the items did meet the standards for trade secrets, including specifically a traders "volumes, strikes, prices, trades and transaction records". ECF102.

Opp, NFA, State Law Claims, Page 64

(ii) Plaintiffs also adequately Pled Value

Plaintiffs pled value in their significant development costs and maintaining the trade secrets secret. *See Medidata Sols*. *v. Veeva Sys*., No. 17 Civ. 589, *2018 WL 6173349*, at * 4 (S.D.N.Y. Nov. 26, 2018) (the complaint plausibly alleged that the trade secrets at issue derived independent economic value from being secret when the plaintiff "spent a great deal of time and money . . . developing its technology"); *see also Gen*. *Sec*., *Inc*. *v*. *Com, Fire & Sec*., *Inc*., No. 17 Civ. 1194, *2018 WL 3118274, at *2* (E.D.N.Y. June 25, 2018) (the complaint plausibly pleaded independent economic value when the plaintiff kept the trade secrets at issue "on a secure computer accessible only to employees"). *ExpertConnect, L.L.C. v. Fowler*, 18 Civ. 4828 (LGS), at *9 (S.D.N.Y. July 10, 2019) e.g.¶79.¶82 - Plaintiffs restrict access to all its Confidential Information on its servers, including but not limited to password access, restrictive access to drives ¶79 ¶861, ¶877.

The FAC pleads value sufficiently in costs and development time See ¶80, ¶81, ¶574-¶576, 3873 ECF15¶34 13 See e.g. ¶80 - borne from substantial investment of time and significant investment, cost, time and development by Kumaran and .. designed and built over decades by Kumaran, and substantial time, money, research, development and highly-specialized skills, that are not easy to find. Finally the Complaint also competitive value, that its Competitors were not able to develop the product independently (See e.g ¶80, ¶575 - ¶80 - Its competitors Vision were not able to develop these independently or successfully as is documented by their substantial prior losses in options trading for which they were disbarred, and their documented errors and omissions in risk management services

## [C] References to Northland are Irrelevant

In an attempt to find a shot at Plaintiffs, Defendants rest their defense on a case still in progress related to another software company business Timetrics Software (Northland) since 2011. This case is incomparable, as in that case, the IP was directly related to a software license agreement "End User License Agreement" EULA that Plaintiffs were engaged in with the client that had express terms related to a software program. Therefore the IP could not have been similar, as there is no such underling software license agreement or computer descriptions in this case. In that case, also the client had direct license to a computer program. No such similar facts exist here. Further, that case has conflicting orders,

---

13 ADMIS ECF15FAC¶34 Kumaran had valued the economic interest a multi-million dollar business, as the sole owner and inventor to be sizable investment of economic benefit as a CTA, and therefore individually invested the money to launch various funds as well as labor, with a business model, to run a CPO and hedge fund, called the STORM Fund, LP which would Kumaran, individually would return sizable economic value and benefit.

Opp, NFA, State Law Claims, Page 65

and is under both reconsideration and appeal. In that case, the Court should note, extensive motion practice occurred prior on a protective order and preliminary injunction, which was granted in favor of Plaintiffs, including an Issued Protective Order (19-CV-08345, ECF85, ECF102) that warranted sealing and trade secret protection on the very materials being sought in this court – namely trades and trading strategies. The Court in Northland specifically did identify the issues of trading strategies, trade secrets, specifically incorporating into the SDNY Model Order ECF85 and ECF102 that "**trades and trading statements, and other documents that disclose actual trading or hedging positions (including volumes, strikes, prices, and types of instruments) in the respective trading accounts from the FCMs**" were to be treated as trade secrets.  If the Court is to incorporate that case,  given that the level of detail was sufficient to warrant heighted protective order and protection against further dissemination they are more than sufficient to put the Defendants on notice of what the trade secrets are in this proceeding. (See Dardashtian v. Gitman, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) holding that if previous descriptions were sufficient to warrant restraints against defendants dissemination of trade secrets, there was adequate level of detail for Defendants to discern the trade secrets at issue) The Courts ruling was primarily related to the description of the "computer program" There the Court did find that the specific language "were adequately defined to warrant trade secret redaction.  The Northland case is not a related case, and involves a software licensing arrangement, and a breach of settlement, there is no relation to this matter. Therefore reference to that is not directly related. However, to the extent seeks to incorporate the Court should also note the extensive briefing on the Protective Order (ECF52, ECF54), and Preliminary Injunction and the final ruling on that order is not yet decided and therefore not controlling.

[D] Misappropriation, Disclosure and Use

Since the advent of the DTSA, New York law and DTSA hold similar standards for misappropriation to include both use and disclosure.  Here NFA is alleged to have illegally authorized and approved agreements (that it knew were unlawful and not permissible under the CEA and CFTV rules) that authorized **disclosure of** Plaintiffs trade secrets to its competitors. NFA's, Wahls and Kiela's signature on documents authorizing and consenting to the disclosures in the ORSA were material, as under this "approval", ADMIS, High Ridge, Felag, Rothman, Boshnack then unlawfully acquired, disclosed and used Plaintiffs trade secrets in interstate commerce.

Opp, NFA, State Law Claims, Page 66

The FAC alleges that both Kadlec and NFA's conduct authorized an illegal contract (without Plaintiff's knowledge and consent) to disclose their trade secrets to their competitors (including HRHC), and NFA Wahls, and Kiela conducted further actions to then authorize market participation for VIA to use those trade secrets in direct competition, NFA facilitated unlawful disclosure and use of plaintiff trade secrets to its competitors, and but for Defendants violations of its duties of secrecy, the harm and damage of ongoing use would not have occurred to Plaintiffs. Under the dictionary "use" also means "acquires a benefit from". The FAC also alleges that NFA acquired a benefit from the unlawful disclosure and transfers of trade secrets from one CTA to another, more favored group of members. ¶XX, and also the facilitation of the fraud which perpetuates over a billion dollars revenue (¶XX) Therefore Defendants acquired benefit from and still acquire benefit from the unlawful use and disclosure of Plaintiffs trade secrets. NFA then went further, to register and allow direct competitors use VIA (noting NFA's memo is silent upon the misappropriation to Vision Investment Advisors). As NFA receives monies from each and every transaction from the misappropriated trading strategies now, sed at VIA, NFA also is acquiring benefit from and using Plaintiffs trade secrets. Specifically the ongoing use was facilitated through NFA and Kadlec's unlawful registration of Vision Investment Advisors, and continues to benefit them today. (See Count 2)> Therefore PLaintiff has plasubly alleged a state law claims tha all Defendants acquired a benefit from the ongoing use of Plaintiffs trade secrets.

[E] Kadlec's Misappropriation is Imputed to NFA

Since the FAC is clear that Kadlec, ADMIS misappropriated trade secrets, including the unauthorized disclosure and use of trade secrets, which are now being used in direct competition with Vision Investment Advisors,  all actions of Kadlec, including his ongoing use are imputed to the NFA. Kadlec has stated his role in the fraud was in his capacity as NFA Board Member. A corporation must, therefore, be responsible for the acts of its authorized agents even if particular acts were unauthorized ( *see Ruggles v American Cent. Ins. Co. of St. Louis*, 114 NY 415, 421 [1889]). "The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent" ( *see Andre Romanelli, Inc. v Citibank, N.A.*, 60 AD3d 428, 429 [1st Dept 2009]).  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)

Opp, NFA, State Law Claims, Page 67

[F] Illegal conduct has no immunity either under  NY law,

As NFA were not acting in the aegus of the regulatory capacity, but instead to procure illegal market participation as clearly prescribed by 7 USC.13(a) (unlawful conduct) no immunity exists. Immunity is not granted when conduct is outside the proper and lawful functioning of the government, and the SRO acts for unlawful purpose, to intentionally commits acts of concealment of fraud to circumvent the rules/laws of the CEA.

## B – OTHER ARGUMENTS

Defendants do not raise any argument of Statute of Limitations so none are addressed here.

I– Defendants have no State Law immunity for their Claims
(i) Immunity is Not Granted for Unlawful Conduct

It is well accepted that immunity is not automatically granted if the allegations are well-pled that a party acted unlawfully or with illegal conduct. The thrust of the FAC, is the Defendants huddled together with some insiders, and set up a set of arrangements they knew would violate the CEA and CFTC Rules. Those illegal arrangements included unauthorized syphoning of funds across interstate lines and theft of electronic data and trade secrets. Other material terms of the illegal agreements ORSA included unlawful participation for members, whose company had been disqualified and disbarred. None fo the conduct alleged herein bears on the operations of the markets, and all of the conduct alleged has been pled to be illegal. Further Defendants have not argued qualified immunity and that defense is waived. Because the overarching theme is the activities alleged in this Complaint are unlawful and not in compliance with the CEA, (and Defendants do not even dispute that activities are unlawful, not denying or disputing any single one of the statutes alleged such as 7 U.S.C. 13(a)(1)(4)(5) and 7 U.S.C. 6(b)(a)(1)(2) etc their failure to oppose the illegal conduct means that have not met the burden to show they are entitled to immunity. Immunity is only absolute for lawful conduct. Since Defendants cannot dispute or obtain any excuse for their illegalities, their motions for immunity should be denied at this stage, as they have failed to defend the well-pled and detailed unlawful participation under the Commodities Exchange Act.

**(i)    CEA does not Preempt Immunity Under State Law**

The CEA does not also preempt state law claims. "[P]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained.' " Chicago

& N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981), It cannot reasonably be argued that Congress has "unmistakenly ordained" that the state statutes creating private rights of action for commodities regulation are to be preempted by the CEA. Under the CEA, the statute provides that "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." In view of this statutory language, amplified by the legislative history and the analogous case law, Courts have concluded that the statute is intended to preempt state and federal agency regulation of commodities only, while preserving those state rights of action which are adjudicated in state courts. Bishop v. Commodity Exch., Inc., 564 F. Supp. 1557, 1564 (S.D.N.Y. 1983)With respect to the authority of the states to regulate commodities, the CEA provides that CFTC jurisdiction is "exclusive" as to certain enumerated transactions, including "transactions involving contracts of sale of a commodity for future delivery." 7 U.S.C. § 2 (1982 Supp.). The statute further provides that the jurisdiction of state and federal "regulatory authorities" is not limited or superseded by the CEA except as to the enumerated transactions and that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." Bishop v. Commodity Exch., Inc., 564 F. Supp. 1557, 1563 (S.D.N.Y. 1983)

The Commodity Exchange Act preempts state law claims only that "bear upon the actual operation of the commodity futures markets"), cited with approval in Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 59 (2d. Cir. 1996) None of the conduct as pertains to NFA, Wahls, Kiela and Kadlec in this Complaint bear upon the **actual operations** of the markets. Instead NFA tries to recast the complaint is its role to regulate members. But the Complaint here alleges activities far beyond the scope and jurisdiction of regulating members, and civil litigation issues such as unfair competition, theft of one-trades records for the benefit of another, and purloining of moneys from one traders profits to benefit a competitor. This do not impact of affect the "operations on the futures markets". When conduct that is not proper or required to operate the markets (and has no uplic benefits NFA's and Wahls and Kielas shield of liability, especially for unlawful conduct, and improper operations, should not hold true. To d so, otherwise would be to permit every regulator who dos not defined role in unlawful conduct to hide behind the veil of immunity. As shown above, Defendants failed to dispute the unlawful conduct alleged in this actions and it is not related to the "proper functioning" and certainly not related to the "actual operations" of the futures market. The gist of causes instead are to do with misappropriation of trade secrets, unfair competition, fraud, dissemination of confidential and trade secrets information to its

Opp, NFA, State Law Claims, Page 69

competitors and other civil torts. None of these torts are required for the "actual operations of the futures markets" or public interest and instead they sound in civil and commercial claims. Therefore the CEA does not preempt the state law claims.

II – Motion and Request to Replead

Plaintiffs believe they have adequately pled a cause of action for each of the Claims herein against Kadlec herein. To the extent the Court deems any of the allegations insufficient or unclear, Plaintiffs hereby respectfully seeks leave to replead them and to amend the Complaint. For the foregoing reasons, Plaintiffs claims against Kadlec should not be dismissed as they all state a valid cause of action

Respectfully submitted

//SSK//

Samantha Siva Kumaran

//BMA//

Brian M. August

AugustLaw NYC

100 Willougby Street #9E

Brooklyn, NY 11258

Counsel for NRCM