**IN THE UNITED STATES DISTRICT COURT**
**SOUTHTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Et al | ) Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | ) Judge: Hon Gregory H. Woods |
| | ) Magistrate Judge: Stewart D. Aaron |
| -against- | ) |
| | ) **PLAINTIFFS OPPOSITION TO** |
| NATIONAL FUTURES ASSOCIATION, LLC | ) **MOTION TO DISMISS** |
| Et al., | ) **AGAINST ALL DEFENDANTS** |
| Defendants, | ) **FOR CLAIMS UNDER 7 USC 25(b)** |
| | ) **SECTION 22 of the CEA** |

<u>**PLAINTIFFS JOINT OPPOSITION AND MEMORANDUM OF LAW TO THE**
**MOTION TO DISMISS AGAINST ALL DEFENDANTS**
**FOR CLAIMS UNDER SECTION 22 OF THE COMMODITIES EXCHANGE ACT**</u>

FOR CLAIMS UNDER 7 U.S.C. 25(b)

Respectfully submitted,

//SSK//

Samantha Siva Kumaran

Pro-Se Plaintiff

//BMA//

Brian M. August

AugustLaw NYC

100 Willoughy Street #9E

Brooklyn, NY 100201

Counsel for  NRCM

Page ii

# <u>TABLE OF CONTENTS</u>

Preliminary Statement……………………………………………………………… Pg.X

Count 1 – Non-Discretionary Rules …………………………………………………Pg. 1

Count 2 – Discretionary Rules ……………….……………… ………………………Pg. 20

Count 13  – Violation of Arbitration Rules………………….…………………………Pg. 38

B - OTHER ARGUMENTS………………………………………………………..Pg.

I - Statute of Limitations ….…………………………………………….....Pg.40

II - Rule 8  …………....… ……………………………………………………Pg.43

III - Disputed Facts  .. ,… …………………………………….……....……Pg.47

IV – Aiding and Abetting Claims .. ……….. ,..………………………….…...……Pg.48

V – All Other State Law Claims .. ……….. ,..……………………………...…….Pg.48

VI - Request to Replead  .. ………..………………………………….…...…Pg.49

# TABLE OF AUTHORITIES

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi. , 977 F.2d 1147, 1150 (7th Cir. 1992)*

*Apex Oil Co. v. DiMauro,822 F.2d 246, 261 (2d Cir.), cert. denied,  U.S. 108 S.Ct. 489, 98 L.Ed.2d 487 (1987)*

*Baena v KPMG LLP, 453 F3d 1, 6 [1st Cir 2006]*

*Baird v. Franklin, 141 F.2d 238, 239 (2d Cir. 1944)*

*Bateman Eichler, Hill Richards, Inc. v Berner, 472 US 299, 306-307*

*Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015)*

*Bischoff v. Boar's Head Provisions Co., 436 F.Supp.2d 626, 631 (S.D.N.Y. 2006)*

*Bishop v. Commodity Exchange, Inc.,564 F. Supp. 1557, 1562 (S.D.N.Y. 1983)*

*Bosco v. Serhant*

*Brawer v. Options Clearing Corp. 807 F.2d 297, 301 (2d Cir. 1986)*

*Butterman v. Walston Co.,387 F.2d 822 (7th Cir. 1967)*

*Case Co. v. Board of Trade of the City of Chicago, 523 F.2d 355, 362 (7th Cir. 1975)*

*Center v Hampton Affiliates, 66 NY2d 782, 784*

*Colonial Realty Corp. v. Bache Co.,358 F.2d 178*

*Cragie, 99 NY at 134; accord Reynolds v Snow, 10 AD2d 101, 109 [1st Dept 1960]*

*Curtis Publ'g Co. v. Butts, 388 U.S. 130, 154–55, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)*

*DeRosa v. Nat'l Envelope Corp., 595 F.3d 99 (2d Cir. 2010).*

*DGM Investments, Inc. v. New York Futures Exchange, Inc., 01 Civ. 11602 (RWS), at \*1 (S.D.N.Y. Oct. 17, 2002)*

*Foundation Ventures, LLC v. F2G, Ltd., 08 Civ. 10066 (PKL), at \*10-11 (S.D.N.Y. Aug. 11, 2010)*

*Hart v. Rick's Cabaret Int'l, Inc. 967 F. Supp. 2d 901 (S.D.N.Y. 2013)*

*Henry v Allen, 151 NY 1, 9 [1896]*

*Hochfelder v. Midwest Stock Exchange,503 F.2d 364 (7th Cir. 1974)*

*In re Nat. Gas, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005)*

*Jordon v. New York Mercantile Exchange, 571 F. Supp. 1530, 1553 (S.D.N.Y. 1983)*

*Kaiser-Frazer Corp. v. Otis Co.,*195 F.2d 838, 843 (2d Cir. 1952)

*Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 479-80 (N.Y. 2010)

*Kroese v. New York Stock Exchange,*227 F.Supp. 519 (S.D.N.Y. 1964)

*Lerman v. Flynt Distrib. Co.,* 745 F.2d 123, 137, 139 (2d Cir.1984)

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)

*Marbury Management, Inc. v. Kohn,*373 F.Supp. 140 (S.D.N.Y. 1974)

*McConnell v Commonwealth Pictures Corp. ( 7 NY2d 465, 470)*

*Miller v. New York Produce Exchange,* 550 F.2d 762, 767 (2d Cir. 1977)

*Minpeco, S.A. v. Hunt,* 693 F. Supp. 58, 62 (S.D.N.Y. 1988)

*N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)

*P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F. Supp. 72, 75-76 (S.D.N.Y. 1979)

*Pettit v. American Stock Exchange,*217 F.Supp. 21 (S.D.N.Y. 1963)

*Rich v. New York Stock Exchange,* 522 F.2d 153, 155 n.4 (2d Cir. 1975)

*Rombard v. Chang*

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,*748 F.2d 774, 780 (2d Cir. 1984)

*Sam Wong Son, Inc. v. N.Y. Mercantile Exchange,*735 F.2d 653, 677 (2d Cir. 1984)

*Saratoga County Bank v King,* 44 NY 87, 94 [1870]

*SAS Inst. Inc. v. Iancu,* 138 S. Ct. 1348, 1354 (2018)

*Scotto v. Mei,* 642 N.Y.S.2d 863, 865, 219 A.D.2d 181 (App. Div. 1996)

*Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir.1997)

*Sirota v. Champion Motor Group, Inc.,*849 N.Y.S.2d 426, 430, 18 Misc. 3d 862 (Sup. Ct. 2008)

*Steinberg v. Merrill Lynch, Pierce, Fenner Smith, Inc*

*Stone v. Freeman,*298 N.Y. 268, 271, 82 N.E.2d 571 (1948)

*Strobl v. New York Mercantile Exchange,*561 F. Supp. 379 (S.D.N.Y. 1983)

*Troyer v. Nat'l Futures Ass'n,* 290 F. Supp. 3d 874, 880 (N.D. Ind. 2018)

*Troyer v. Nat'l Futures Ass'n,* No. 1:16-cv-00146-SLC, at *29 (N.D. Ind. Sep. 26, 2019)

*Tzolis v. Wolff,* 10 N.Y.3d 100, 109, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (N.Y. 2008)

Page v

*United States v. Bush 1:18-cr-00907-PAC (S.D.N.Y. Jan. 28, 2021)*

*United States v. Gonzales,520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)*

*Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d Cir.2005)*

*Vitanza v. Bd. of Trade of N.Y. , No. 00 CV 7393(RCC), 2002 WL 424699, at \*3 (S.D.N.Y. Mar. 28, 2002)*

*Woodworth v Janes, 2 Johns Cas 417, 423 [Sup Ct 1800]; Stone v Freeman, 298 NY 268, 271 [1948]*

PRELIMINARY STATEMENT

## MEMORANDUM OF LAW

### <u>Count 1 – Violation of 7 U.S.C. 25(b)</u>

[A] – Legislative  of the CEA / Summary of Legislative Background on NFA

Plaintiffs have pled a viable cause of action against a registered futures association under 7 U.S.C. 25(b) (Section 22) of the Commodities Exchange Act. The CEA governs the trading of commodity futures contracts, and grants to the [CFTC] the authority, in large measure, to implement the regulatory regime established therein." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.* , 977 F.2d 1147, 1150 (7th Cir. 1992), "The CEA has been described as a 'comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex.' " *Vitanza v. Bd. of Trade of N.Y.* , No. 00 CV 7393(RCC), 2002 WL 424699, at *3 (S.D.N.Y. Mar. 28, 2002) (quoting *Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.* , 735 F.2d 653, 661 (2d Cir. 1984) ).  *Troyer v. Nat'l Futures Ass'n*, 290 F. Supp. 3d 874, 880 (N.D. Ind. 2018)

The FAC¶58-68 states NFA was registered by the CFTC as the sole, nationwide, self-regulatory organization ("SRO") under the CEA in 1981. While the NFA is a private organization, it is supposed to perform regulatory functions to safeguard the integrity of the derivatives markets that the CFTC would otherwise have to undertake. NFA's rules also mandate the adoption, administration and enforcement of **uniform,** industry-wide requirements regarding the dealings and relations between and among Members and the protection of customers. (*See* Article III – NFA Articles of Incorporation (¶62). "These rules are subject to [the CFTC's] approval and must provide standards governing the sales practices of NFA members." *Id.* (citing 7 U.S.C. § 21(p)(3) ; 17 C.F.R. § 170.5 ). "In addition, these rules must be 'designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, in general, to protect the public interest, and to remove impediments to and perfect the mechanism of free and open futures trading.' " *Id.* (quoting 7 U.S.C. § 21(b)(7) ). *See Troyer ID*. Plaintiffs have asserted that NFA had a statutory and ministerial duty to enforce its rules and to abide by the laws of the CEA.   "Unless ordered by the Commission under 7 USC 21(k), **NFA has no authority and absolutely no discretion to vary, alter, abrogate any rule of the CFTC, except by written order of the Commission**. (emphasis added). (¶59)

In its MTD, NFA, Kadlec, Wahls and Kiela does not dispute or defend the statutory duties and obligations thereunder  delegated by the CFTC. Neither do Defendants deny their obligations to enforce

compliance of other NFA Members with the laws, rules and regulations thereunder. Plaintiffs incorporated by reference CFTC OIG Report (ECF1, Exhibit1). ¶64-¶73 lays out by Federal register at least eight areas of ministerial duties of the NFA.*Id.* Defendants do not dispute the delegated authority thereunder, and that such rules are governed by such statutory delegated authority.(¶64)

[B]  Private Rights of Action Under Section 22

Plaintiffs bring two claims against the All Defendants under 7 U.S.C. § 25(b)(2), stating that it violated the CEA by failing to enforce numerous bylaws or rules required by 7 U.S.C. § 21.
Under 7 U.S.C. 25 § (b) (2) Liability is as follows:-

> A **registered futures association** that fails to enforce **any bylaw or rule** that is required under section 21 of this title or **in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order** shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule7 U.S.C. 25(b)(2).

Plaintiffs have also brought causes of action against Compliance Officer Nicole Wahls ("Wahls") and Villa Sutkus-Kiela ("Kiela") and Board Member Tom Kadlec pursuant to 7 U.S.C. 25 (b) (3

> 7 USC 25 §  (b) (3)  Any individual who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.

Additionally, § 25(b)(4) requires:

> "A person seeking to enforce liability under this section must establish that the...registered futures association...acted in bad faith in failing to take action or in taking such action as was taken, and that such failure or action caused the loss." 7 U.S.C. § 25(b)(4).

(ii) Standing

Both Plaintiffs were registered members of the National Futures Association at the time of filing of the Complaint. Kumaran remains a registered member of the NFA as a CTA. Plaintiff Kumaran was the CTA who placed the trades and owns the single member LLC NRCM. NRCM was the sponsoring entity also registered as a CTA. Both Kumaran and NRCM's membership went into effect at the NFA on May 23, 2017. As is customary with hedge fund structures and under New York law, Plaintiffs also can bring claims individually and derivatively.

Defendants NFA, Wahls and Kadlec do not dispute standing of either Plaintiff Kumaran or NRCM. Plaintiffs are both CTA's and registered members of the NFA at the time the events occurred.

Kumaran remains a registered member as a CTA. Kumaran as the CTA executed and placed trades and is a CTA building her track record. **NFA, Wahls and Kiela do not dispute standing of both participants.** Therefore no rebuttal offered. As stated in Kadlec's memo, under New York law, a member of an LLC need not be a manager to sue derivatively on its behalf. Tzolis v. Wolff, 10 N.Y.3d 100, 109, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (N.Y. 2008) ("We therefore hold that members of LLCs may sue derivatively."); Bischoff v. Boar's Head Provisions Co., 436 F.Supp.2d 626, 631 (S.D.N.Y. 2006) ("New York LLC members may assert derivative actions under New York law.").  Therefore his additional standing arguments fail. Kumaran is the actual "trader" and remains a registered member as a CTA and registered was the actual trader, and NRCM,, a single member LLC, was simply the carrying vehicle of the account is now dissolved. Kumaran owns the trading access, and track record of the CTA, and has subsequently registered as a CTA, now sponsored by affiliated entity Nefertiti Asset Manageent, LLC. Both Kumaran and NRCM have asserted damages hereunder and both placed qualified transactions in this action.

[C] Summary Statement - Complaint Before This Court

Therefore the heart of this cause of action, is that starting around November 1, 2014, NFA Wahls, Kiela and Kadlec violated (and continued) to violate many of the rules and bylaws, acted without the authority and knowledge of the CFTC to approve an illegal set of material terms and market participation for Boshnack, Rothman, Felag and HRF, by way of an oral risk services agreement ("ORSA"). The material terms of which violated multiple express laws and rules of the CEA. (e.g.¶262-¶309,. The FAC alleges in detail that the ORSA contained material terms that were also expressly prohibited. (¶263,¶490-¶492, ¶839) The FAC alleges that Boshnack and Rothman are nefarious "bad actors" in the industry. (Pg.18 ¶60-¶69) In exchange for this Boshnack and Rothman provided significant personal guarantees to extend credit – to hundreds of introducing brokers clearing through ADMIS. The FAC provides facts showing that they have been subject to numerous disciplinary conduct and violated numerous securities laws. Id. . NFA, Wahls, Kiela and Kadlec knew of their extensive disciplinary history and reparations cases.(Id.Pg. 18-19¶89-90¶60-¶69, ¶473-474) However without protection to investors and customers, executed these secret deals to allow them perpetrate more accounts and more fraudulent conduct, now using oral arrangements.

The crux of this case, is that Plaintiffs have alleged that the very existence of the ORSA (¶263-264) and the material terms of the ORSA, (See ¶263 outlining material terms) were unlawful under the prescribed terms of the CFTC and CEA. (See ¶490, ¶359-¶403. By enabling this arrangement NFA, Wahls, Kiela and Kadlec  violated its own bylaw and rules, (and CFTC Rules) which subsequently caused direct and proximate damages. Plaintiffs have not just alleged specific provisions, but have alleged NFA, Kadlec, Wahls and Kiela repeatedly violated the CEA and failed to enforce its rules and bylaws in continuing conduct over multiple audits between November 1, 2014 and January 2017 when Plaintiffs were fraudulently induced to open a futures trading account at ADMIS. Compliance officers Wahsl and Kiela, signed audits in multiple approval, authorizing the material terms of the ORSA, that among other things (a) permitted margin activities that violate the CEA (¶263), (b), granted discretionary authority to Boshnack; (c) granted fully disclosed access to Customers material non-public information; (d) authorized a provision of services in risk management, that under the black-letter laws of the CEA, is required to be disclosed and approved to the CFTC (Reg 1.11-1.14, that instead was fraudulently concealed in reports to the CFTC and (e) reviewed sale and promotional literature from all conspirators, ADMIS, and Lazzara, that also failed to abide by the black-letter disclosures to customers and Plaintiffs on the risk services being provided under CFTC 1.55 (¶273,¶307-¶318) The pleadings thus far, also filed in this District by Defendants in related case, have also admitted that NFA, had full knowledge of the ORSA.

Plaintiffs have plausibly alleged that all such conduct was unlawful. (¶158, ¶232, ¶364,-¶396,¶401) and cited violations of 7 USC 6, 7 USC 13. At no time, does NFA, Wahls, Kiela defend these provisions as being unlawful. This is fatal to their defense. For this reason alone their MTD should be denied. Defendants do in fact acknowledge the ORSA did contain illegal terms.

The FAC alleges NFA's violations went further. Through multiple audits between November 1, 2014 – January 2017 they continued to sign approvals on the illegal ORSA, and also approved bulk transfers of monies from customers and Plaintiffs accounts for payments under another agreement, a G&F Agreement (ECF58,1). The monies withdrawn aggregated exceeded $10 million a year. Under the CEA, any unauthorized withdrawal amount over $100 is considered unlawful. NFA, Wahls, Kiel and Kadlec conspired and acted together to ensure that customers never knew about the G&F or the ORSA. Therefore customers consented to the withdrawals. Also behind the scenes, the arrangements involved "full disclosure" and unlawful dissemination of customers trading records and trade secrets to Boshnack,

Rothman, and his new affiliates. The FAC alleges that NFA failed to enforce horn-brook law of the CEA that mandate disclosures and consents be granted from customer accounts NFA 2-3. Instead they failed to enforce numerous laws requiring that disclosures are made to customers related to those withdrawals (¶179,¶322,¶367,¶376-¶377, ¶584,- NFA 2-4 9005) Further there are black letter laws related to disclosure of risk management services (¶272-¶318) CFTC 1.11-1.14 and CFTC 1.55 All these were violated.

NFA admits that Plaintiffs have listed over 44 violations of bylaws, rules, regulation and requirements. But even after Plaintiffs complained to the NFA in September 2017, NFA, Wahls, and Kiela took no actions to enforce these violation, or refund fees and property to Plaintiffs. Instead they sat back and did nothing, continuing to not enforce the law. There is no dispute in the underlying violations NFA's motion albeit admits to "conversion" by ADMIS and High Ridge, and 'fraud' by ADMIS and High Ridge. However the protections to customers under the laws of the CEA are to ensure fair market access and guarantee "straight shooting in the market". This in turn has caused irreparable damage to Plaintiffs. Therefore Plaintiffs have plausibly alleged, given the admissions of rule violations by NFA registered members, that it is not disputed there were underlying violations that the NFA failed to enforce the compliance laws. Therefore Plaintiffs bring these causes under 7 USC 25(b).

### [D] Standards of Bad Faith / Court's Application of Bad Faith Standard

The core question before the Court is what standard of "bad faith" is used under 7 U.S.C 25(b)(4) for determining the liability of a registered futures association.  Majority of the precedent that exists  in this District for determining "bad faith" or holding a defendant liable under Section 22 originated from causes of action brought against *exchanges. (See* Infra Count 2). This precedent is built upon the *discretionary* actions of exchanges to enforce emergency rules. In these cases, the resounding theme of actions has been lawsuits brought against exchanges, who failed to enforce market exchange rules or discretion. It is widely accepts that in those types of exchange-rule enforcements, where wide latitude of *discretion* is given to the Exchange, on what type of emergency action to take and when, Courts have adopted a bifurcated standard of bad faith for discretion. However such is not the case for non-discretionary violations of the CEA.  Therefore for the violations of ministerial and non-discretionary rules, NFA, Wahls, Kiela and Kadlec are held to the non-discretionary standard/

### I – Supreme Court has ruled that Standard of Negligence apply for Non-Discretionary Rules

NFA misstate the clear application and judicial record in of applying a bifurcated standard between *non-discretaionary and discretionary* and of bad faith under private rights of action under 7 U.S.C. 25. Accordingly, the Supreme Court has ruled that negligence is sufficient to prove bad faith when a regulatory body violates a *non*-discretionary rule.  In analyzing whether the duty is discretionary or non-discretionary, the highest authority in the Supreme Court has looked directly to the analysis of the plain text rule being violated.  The word "shall" generally imposes a nondiscretionary duty. This directive is both mandatory and comprehensive  See *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). And the word "any" naturally carries "an expansive meaning." *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). The Court ruled that the word 'shall' generally imposes a nondiscretionary duty." *SAS Inst., Inc. v. Iancu* , U.S. , 138 S. Ct. 1348, 1354, 200 L.Ed.2d 695 (2018). See  also *Lexecon Inc. ID* (1998).  Courts also analyze if the rule, regulatory, bylaw, or requirement impose a directive that is mandatory. (See e.g  NFA 2-2 "shall", NFA 2-4 9005 "all fees" See e.g CFTC 33.7 See e.g. CFTC 1.55 ())  Therefore the Supreme Court has consistently upheld a non-discretionary standards, and that standard is one of negligence. (See  *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018)[1]

### II – Recent cases under CEA also applied the Negligence Standards for Bad Faith for "non-discretionary duties"

Similarly the Commodities Exchange Act in recent cases applied the same Supreme Court authority for violations of 7 U.S.C. 25.  Section 25(b)(4) requires Plaintiffs to establish that [Defendants] "acted in bad faith in failing to take action." Section 22 of the CEA corresponds to Section 25 of Title 7 of the U.S. Code. Recent cases have also given careful consideration, consistent with the Supreme Courts' direction on the application of the word "shall" in determining if the standard of negligence should be used. Court determined if the specific rule being violated, invoked *Iancu.*

In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig., 435 F. Supp. 3d 845, 868 (N.D. Ill. 2020) the Court ruled

"The CEA provides that Cboe "**shall** list on the contract market only contracts that are not readily susceptible to manipulation" and that it "shall have the capacity and responsibility

---

[1] Also used in S.D.N.Y. United States v. Bush 1:18-cr-00907-PAC (S.D.N.Y. Jan. 28, 2021) The word "shall" permits no discretion here. See SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018) (" *The word 'shall' generally imposes a nondiscretionary duty.* ").

to prevent manipulation." 7 U.S.C. § 7(d)(3), (4). "The word 'shall' generally imposes a nondiscretionary duty." ***SAS Inst., Inc. v. Iancu*** , —— U.S. ——, 138 S. Ct. 1348, 1354, 200 L.Ed.2d 695 (2018). Moreover, Cboe's Rule 601 reads, "Any manipulation of the market in any Contract **is prohibited**." Since the statute and Cboe's own rules unambiguously require Cboe to prevent manipulation, Cboe was **not** exercising *discretion* if it allowed manipulation to occur and continue. Thus, plaintiffs need only plead that Cboe **was negligent to establish bad faith**." (emphasis added)>

*In re Chi. Bd. Options* the Court also upheld **Iancu**, as guiding precedent. The Court stated,  *"the pleading requirements for bad faith turn on whether [SRO] was exercising a *discretionary* power. If an exchange has *no discretion* to apply the rule to the alleged facts, plaintiffs can establish bad faith by pleading that the exchange should have known that its rule was being violated and failed to act, a negligence standard. However, if an exchange acts within its *discretion,* the pleading standard is higher—the plaintiff must show that the exchange acted "unreasonably" or that it had an "improper motivation.":

Likewise the Court is empowered to review the exact wording of the non-discretionary rules. Plaintiffs have alleged failure to enforce multiple *non-discretionary* rules of the NFA Rules and Membership Rules, as well as those of the CFTC and CEA. **Iancu** is also guiding precedent in this action. A complete table of non-discretionary violations are attached hereto in summary in Exhibit C.  The Court must conduct an case-by-case review of the rule, regulations and bylaws, to determine which ones NFA has a non-discretionary and ministerial duty to uphold. For example

- NFA 2-2  No Member or Associate **shall**: (a) Cheat, defraud or deceive, or attempt to cheat, defraud or deceive, any commodity futures or swap customer or counterparty;

- NFA 2-2  No Member or Associate **shall** (h) Embezzle, steal, purloin or knowingly convert any money, securities or other property received from or accruing to a customer, client, pool participant or counterparty in or in connection with a commodity futures contract or swap; or

- NFA 2-2  No Member or Associate **shall** (i) Act in any capacity requiring registration under the Act unless the Member or Associate is either registered in that capacity or exempt from registration.

- NFA 2-3  No Member or Associate **shall** share, directly or indirectly, in the profits or losses accruing from commodity interest trading in any account of a customer carried by the Member, or another Member, unless the customer's prior written authorization is therefore obtained

- NFA 2-4 Just and Equitable Principles of Trade provides that Members and Associates **shall** observe high standards of commercial honor and just and equitable principles of trade in the conduct of their commodity futures business and swaps business.

Mem 2 Opp NFA, Page 8

- NFA 2-29 - No FCM, IB, CPO or CTA Member or Associate **shall** make any communication related to its commodity interest business that: **(1) operates as a fraud or deceit;**

Further the NFA is mandated by state to
- 7 U.S.C. 21 (p) states the NFA **shall** adopt … rules of the association that **require** the association to…

Therefore nearly all (if not all) the violations in Count 1 are ministerial and non-discretionary rules and use the word shall (Plaintiffs have alleged more than adequately multiple NFA mandatory ministerial rules and bylaws that were violated, which have met the standards of negligence for bad faith. (¶777). NFA's fallaciously argue that Plaintiffs merely alleged "High Ridge and ADMIS violated rules" – and that because the violations occurred NFA must have failed to enforce the rules. But this case cannot involve passing the blame. NFA continues to ignore the proper allocation of wrongs. Second, NFA admits in several places ADMIS violated the rules. Therefore Kadlec, as CEO of ADMIS also in his dual capacity as NFA Board Member violated the rules.  Third passing the blame from NFA to ADMIS and High Ridge, and Vision  and Lazzara's MTD passing the blame to NFA raises *in pari delicto*. The conduct alleged in this Complaint is indisputably illegal.  In other actions ADMIS have stated NFA was to blame. In essence the wrongdoings alleged have turned into a finger-pointing exercises. All parties are to blame and Plaintiffs are enforcing their own rights under 7 U.S.C 25(b) to enforce its own

In pari delicto is a long-established tenet of law that instructs courts to refrain from intervening in a dispute between two parties at equal fault ( *see e.g. Woodworth v Janes*, 2 Johns Cas 417, 423 [Sup Ct 1800]; *Stone v Freeman*, 298 NY 268, 271 [1948]; *see also Baena v KPMG LLP*, 453 F3d 1, 6 [1st Cir 2006] [in pari delicto "prevent(s) a deliberate wrongdoer from recovering from a co-conspirator or accomplice"]; *see also id.* at 6 n 5). The majority, quoting *McConnell v Commonwealth Pictures Corp.* ( 7 NY2d 465, 470), opines that the doctrine of in pari delicto should apply "even in difficult cases" and "should not be `weakened by exceptions `" (majority op at 464). However, those decisions that have characterized the principle as "inflexible" ( *see Saratoga County Bank v King*, 44 NY 87, 94 [1870]) or "not to be weakened" ( *McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465, 470) have recognized that the doctrine is premised on concepts of morality, fair dealing and justice ( *see McConnell*, 7 NY2d at 470; *Saratoga*, 44 NY at 94; *see also Bateman Eichler, Hill Richards, Inc. v Berner*, 472 US 299, 306-307 [under the "classic formulation" of in pari delicto " (t)here may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be"]). It is therefore clear that the concept of in pari delicto is not a rigid concept, incapable of shaping itself to the particulars of an individual case.

Further, the actions of the Kadlec, attributable to the corporate entity/principal. Since Kadlec, who is also a perpetrator of the fraud, and serves as an agent of NFA, the agency law rule of imputation generally

presumes that a principal knows and approves of the acts of, and shares the knowledge of, its agent ( *see generally Center v Hampton Affiliates*, 66 NY2d 782, 784). This "general rule" is undergirded by the "presumption that an agent has discharged his duty to disclose to his principal `all the material facts coming to his knowledge with reference to the subject of his agency `" ( *id.*, quoting *Henry v Allen*, 151 NY 1, 9 [1896]). *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 479-80 (N.Y. 2010). There NFA is also liable for the violations of rules and bylaws by Kadlec.

[E] – Section 22 applies to "any" rules and did not limit the rights of traders.

Plaintiffs have listed sufficient violations that comply with its rights under the CEA. (¶777)

Under Section 25(b) the rule applies to "any" violation. The word "any" applies to each and every rule, regulation, bylaw and requirement. (See 7 USc 25 (d) use of the word "any"). See also *United States v. Gonzales,*520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) " And the word "any" naturally carries "an expansive meaning." When used (as here) with a "singular noun in affirmative contexts," the word "any" ordinarily "refer[s] to a without distinction or limitation" and in this way "impl[ies] *every"* Oxford English Dictionary (3d ed., Mar. 2016), www.oed.com/view/Entry/8973 (OED) (emphasis added) (all Internet materials as last visited Apr. 20, 2018) NFA admits that the FAC *asserts* approximately 44 rules and regulations that NFA supposedly failed to enforce, set forth in 13 numbered paragraphs.  NFA does not dispute that a cause of action under 7 USC 25 (b) applies to *any* violation. NFA claims that Plaintiffs listed over 44 violations ¶Violation in their FAC for which each must be analyzed. Plaintiffs have tabulated their summary of therefor. Therefore plaintiffs, under the standards of negligence, have more than adequately pled a cause of action under 7 U.S.C. 25(b) for all Defendants. The motion to dismiss should be denied.  Under the word "any", which is the rights granted to traders

NFA's admission that Plaintiffs listed 44 violations, which are also summarized in Exhibit 4. The number of violations alone should raise plausible cause of action. NFA, Wahls, Kiela and Kadlec **offers no defense** or denial to the primary violations – including false sale and solicitations by Lazzara and ADMIS (NFA 2-29, NFA 2-26), purloining of monies from Plaintiff's account NFA 2-3, fraud and deceit of Lazzara, ADMIS, Boshnack Rothman or the illegal risk services .Defendants never once deny or defend the well pled allegations of margin errors and "margin allowances" (¶328-¶349).  And they do not dispute the illegalities of the sharing of customers trade secrets. (In fact admitting its illegal in their

brief). Their failure to deny and defend any one single rule such as NFA 2-29 (fraudulent sales and solicitations), NFA 2-3 purloining profits from a trader, is fatal to their defense and it should be denied.

Instead NFA would like to convince the Court, that by them taking "no action" they remain in compliance with their statutory duties to uphold the CEA. Despite admitting the endless violations NFA, Kadlec, Wahls and Kiela which rakes in $10 million dollars a year of illegal revenue instead they pretend and make a ludicrous assertion the Complaint does not list a violation.

[F] - NFA's Arguments Are Not Permitted and/or Flaws

I –NFA is Judicially Estopped from Arguing Against Negligence

Defendants attempt to rewrite their own arguments and force the Court to apply a discretionary" standard to their ministerial rules. But that is not the intent of the CEA in its use of the word "shall". NFA had no discretion in enforcing these rules (7 USC 21(p). A case most relevant to the case at hand is *Troyer v. Nat'l Futures Ass'n*, No. 1:16-cv-00146-SLC, at *27-28 (N.D. Ind. Sep. 26, 2019), Defendants took an inapposite position and held that a bifurcated standard of *discretionary* and *non-discretionary* should apply to the standards of bad faith for SRO's, consistent with the Supreme Court's rulings on the word "shall". In that case, Troyer brought claims against an SRO for failing to enforce its own rules, and specifically related to the non-discretionary re-registration of various nefarious bad actors Henneghan who in similar fashion to this case, the Court, based on prior extensive disciplinary conduct, simply re-registered under a new company, and continued to defraud or harm market participants. (¶XX)

In *Troyer*, NFA's counsel argued in his pleadings "negligence is sufficient to satisfy the "bad faith" requirement *only* if NFA allegedly violated a *nondiscretionary* duty; bad faith beyond negligence is necessary if NFA allegedly violated a *discretionary* duty." As stated supra, NFA prevailed on their argument on summary judgement, as they were able to prove their conduct was not "negligent" as they relied upon CFTC precedent. In this action, however,

Therefore NFA are judicially estopped from arguing otherwise to this Court. Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. DeRosa v. Nat'l Envelope Corp., 595 F.3d 99 (2d Cir. 2010). Judicial estoppel will apply if: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party's former position has been adopted in some

way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. <u>DeRosa v. Nat'l Envelope Corp.</u>, 595 F.3d 99 (2d Cir. 2010). NFA's position was not just adopted but upon which they prevailed.

The Court ruled *Bosco v. Serhant* employed a dual standard when considering the term "bad faith" for purposes of <u>7 U.S.C. § 25(b)(4)</u>:

> [I]n the present setting, involving an exchange's failure to enforce its rule in accordance with the exchange's own interpretation, the courts, including our own, have treated the term "bad faith" as if it read "negligence." Thus, if an exchange's regulation imposes a duty that the exchange *should* know is being flouted, the exchange is acting wrongfully— in an attenuated sense, perhaps, but one sufficient under the cases we have cited to demonstrate bad faith. The test is different if the exchange injures a trader through the exercise of a discretionary power, such as the power to take emergency actions to prevent substantial losses; then more must be shown to constitute bad faith—either that the exchange acted unreasonably or that it had an improper motivation. Discretion implies latitude for judgment, and commodity exchanges must not be deterred from exercising judgment by the prospect of heavy liability if they make a mistake. (*citing* Troyer ID)

Courts have also used "judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir.2005) (quoting *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir.1997 In final motion for summary judgment, Boyle argued the negligence standards (See Reply Memorandum dated April 2019), arguing, to wit, "negligence is sufficient to satisfy the "bad faith" requirement *only* if NFA allegedly violated a *nondiscretionary* duty" (See ID)

Therefore NFA's transparent move to court hop from Indiana and Illinois and New York to persuade the Court to adopt different standards of lenience, to absolve them of very transparent wrongdoing, should not be applied. Iancu at the Supreme Court set the Court's resolved standards of bad faith, and the Court must apply Judicial Estoppel to prevent NFA changing his tune, to gain inequitable advantage.

## II – Courts in this District Have Also Upheld Different Standards of Bad Faith in Discretionary and Non-Discretionary Standards

NFA is also incorrect. Courts in this *See* Brawer v. Options Clearing Corp. 807 F.2d 297, **301** (2d Cir. 1986) Court held that a if a cause of action existed for violation of a discretionary rule, a claim that OCC and AMEX failed to comply with their respective adjustment rules could stand only if the complaint alleged bad faith **or fraud.** The Second Circuit has also respected the bifurcation of enforcement of rules between discretionary and non-discretionary. *See Brawer v. Options Clearing*

*Corp., 807 F.2d 297, 299 (2d Cir. 1986)*. Further Courts in this circuit have also held and affirm  that a private cause of action against an exchange or a clearinghouse for failure to comply with one of its rules **which requires an exercise of discretion**, [] may be brought only if it is premised upon allegations of fraud or bad faith. *Id*

In *Brawer*, the Court ruled that the relevant by-laws obviously gave AMEX and OCC great *discretion*. However they were explicit that "Under a different rule, a different sort of duty might obtain. *See Baird,* 141 F.2d at 244."  Plaintiffs case at hand is completely opposite. Unlike Amex and OCC, where the express bylaw analyzed gave the exchange "sole discretion" on when and whether to implement the rules, the case is inapposite here. The NFA has no discretion whatsoever in applying CFTC regulations or its other rules and bylaws, such as taking "unauthorized fees" out of traders accounts, or disclosing the risks and giving competitors unauthorized access to traders account – or the numerous other specific NFA Rules listed as violated. (*See* for example ECF1 ¶264, ¶ 168-176) Even in the case cited by Mr. Boyle in *Brawer vs. Options Clearing Corp* the Court acknowledged two different set of standards in determining bad faith for *discretionary* vs. *non-discretionary*.  Defendants not only want to court hop in jurisdiction and argue different law in each circuit, they seek to overturn the precedent at the highest authority (*See* **Iancu** supra).

Courts have also acceded to the view that an SRO violates a duty when it failed to take disciplinary action against a [Member], after there was reason to believe that the latter had converted the plaintiffs' securities. See Baird v. Franklin, 141 F.2d 238, 239 (2d Cir. 1944). *Baird* also recognized that actual knowledge of member's misconduct was not a prerequisite to Exchange liability. *Id.* at 243. And subsequent decisions, have upheld claims on what is essentially a negligence standard. *See Hochfelder v. Midwest Stock Exchange,*503 F.2d 364 (7th Cir. 1974); *Butterman v. Walston Co.,*387 F.2d 822 (7th Cir. 1967), *cert. denied,* 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). *Steinberg v. Merrill Lynch, Pierce, Fenner Smith, Inc.,* [1973-74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,599 (S.D.N.Y. 1974); *Marbury Management, Inc. v. Kohn,*373 F.Supp. 140 (S.D.N.Y. 1974); *Kroese v. New York Stock Exchange,*227 F.Supp. 519 (S.D.N.Y. 1964); *Pettit v. American Stock Exchange,*217 F.Supp. 21 (S.D.N.Y. 1963). *Cf. Colonial Realty Corp. v. Bache Co.,*358 F.2d 178 (2d Cir.), *cert. denied,*385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). *Rich v. New York Stock Exchange*, 522 F.2d 153, 155 n.4 (2d Cir. 1975). Enforcement of compliance laws is also This is consistent with the direction from the

Supreme Court (Supra) that if the statute uses the word "shall" then the standards of bad faith is negligence.

### III – Boyle does not have authority to state "Bosco" was incorrectly decided

NFA's counsel, no matter how qualified they are, are not the authority of the Court to determine if a case was incorrectly decided or not. Their arguments overlook the recent positive treatment in 2020 in *In Re. Chi* (supra) citing to Bosco, and  NFA's own judicially estopped reliance on that case in Troyer, both which upheld the negligence" standards, as well as the Supreme Court ruling in 2018 in **Iancu**, explicitly defining interpretation of a statute on the word "shall" (Supra), NFA's legal counsel does not have the authority now to state "Bosco was incorrectly decided".   The same counsel relied on that case and presented arguments to another Court (presiding Judge Magistrate Collins) that Bosco **was** persuasive authority. Those arguments are judicially estopped. In addition, Defendant's other criticisms of Bosco, below, are also without merit.

#### (i) Knew of Should Have Knew

Defendants also fault Plaintiffs for not meeting the "knew or should have known" standard by citing to Bosco.  However Courts again for this standard apply a negligence of "reasonable person' standard. "Plaintiffs must prove more than that defendant 'should have known' it was violating the law. 'Should have known' implies a negligence or 'reasonable person' standard. Hart v. Rick's Cabaret Int'l, Inc. 967 F. Supp. 2d 901 (S.D.N.Y. 2013)   Cited 182 times Therefore again, consistent with the laws of every non-discretionary violation, Plaintiffs have met at least the negligence standards for violations under Count 1 under Section 22 of the CEA and the motion should be denied.

#### (ii) Specific Rule in Bosco

> *Bosco* itself concerned a highly specific rule stating that "at the time of execution [of an order], every order received from a customer ... must be in writing,

Further, Defendants allegations that Bosco applies only to a specific rule is also without merit. The Supreme Courts decision in *Iancu* is binding on **all** non-discretionary rules, and has been applied in dozens of cases under the CEA and other cases, analyzing whether an SRO's decision making is ministerial or not. As stated supra, the CEA grants rights to traders under 7 USC 25(b) for *any* rule. Simply because there is no precedent for these issues, doesn't eliminate Plaintiffs rights for a new rule, that has not been before the Courts before. Therefore 7 U.S.C. 25(b) is explicit that it grants rights to traders for *any bylaw and rule that Defendants violated,* and their reference to Bosco's particular rule is

not precedent to the rule violations hereunder (e.g. NFA 2-2, NFA 2-3 NFA 2-4 9005, NFA 2-4 9061, NFA 2-26.etc). The critical decision is on whether the statute had interpretation or it was ministerial.

### (iii) NFA's defense against "doing better investigating"

NFA tries to rephrase the express and enumerate violations of its rules by misclassifying that Plaintiffs simply state "they could have done better" investigation. Respectfully there is no "could have done better". Either the rules were violated or they weren't. Iancu makes clear that the word "shall" is a ministerial non-discretionary duty. The rules are black letter law of the CFTC. E.g. It is mandatory to disclose all fess (e.g. ¶322, ¶330-¶332,¶367) NFA.  It is mandatory to disclose the risk service provider. It is unlawful to purloin fees from traders accounts. Could have done better – is an admission of failure of NFA to enforce its rules, which have caused Plaintiffs direct and proximate injury.  It is illegal to access a CTA' transaction records. The repeated reference to "in their view", is also a specious argument. The CFTC sets the rules and regulations, not Plaintiffs. There is no dispute that Plaintiffs account was defrauded that monies and property were illegal converted. NFA has admitted in several places, the underlying torts, or misappropriation, conversion, unfair competition and fraud. The black letter laws of the CEA, are not subject to Plaintiffs' interpretation or view either. They were expressly breached and NFA failed to enforce its rules and the CFTC Rules. Plaintiffs also documented *excessive* fees and *excessive* margin errors well outside the parameters permitted under the black-letter law of the CEA. (e.g. ¶374,¶763Over 18% a year withdrawals, ¶303, ¶597, 200% margin error) NFA does not dispute this and in fact concedes there were "*large* margin errors" and "something was wrong so they closed the account". These calculations weren't even miniscule or small for NFA to argue a negligible difference. They aren't subject to "Plaintiff's view". They are fixed black-letter calculations to enable traders a fair and level playing field. Without accurate margin calculations, the illegal arrangements, permitted Boshnack and Rothman his cohorts to illegally manipulate margin on their account, and create an inequitable playing field. (¶328-¶349) This is precisely the purpose of the NFA, to prevent unfair market participation – and the illegal ORSA did the opposite. (¶2, ¶9, ¶12)

NFA, Wahls, Kiela and Kadlec **offer no defense for the well documented margin errors** to penalized Plaintiffs account causing substantial losses and damage. Their failure to defend the margin errors is fatal, and again their motion should be denied. In fact their motion concedes to the egregious inaccuracy of Boshnack's calculations and the rogue illegal risk department run by Boshnack, Felag,

Rothman and HRF. These errors are unacceptable and undisputed, and violations of the CEA. Defendants also do dispute <u>once</u> the illegal market participation that these rogue actors also had "discretionary authority" on the margin – which is also <u>unlawful under the Act.</u> (¶262--¶264,¶324, ¶339, ¶343-¶349, )

[G]– NFA's Other Cases citation of the law in this District is inaccurate

On Pg.14 of their motion NFA cites to *W. Capital Design, Ryder and DGM Investments.* As discussed more completely in Section 2 (Count 2, infra), all these cases are related to an exchanges' failure to enforce discretionary rules, in order to preserve an orderly market, typically with emergency action. It is widely accepted that an exchanges' emergency action is not subject to interpretation, which is why the expanded "bad faith" definition to avoid conflicts of interest was expanded. These cases do not apply to the ministerial, non-discretionary standards, and also NFA is not an exchange. As registered futures associations there are very few rules and regulations that required "emergency" action – and also few that required "interpretation", as in W. Capital. NFA also fails to provide any explanation or justification to the Court why the violations above included any judgement or were subject to "interpretation". Therefore the use of the word "shall" is binding and invokes ***Iancu*** as controlling authority. The exchange cases are not correct authority for NFA's ministerial failure to enforce its bylaws and rules (or CFTC rules and regulations) where the word "shall" and "prohibit" is included and no discretion is allowed. Without limitation, there was no discretion for NFA to authorize an illegal risk services agreement that violates CFTC 1.11-1.14 and CFTC 1.55 and no mandate or authority, that can be construed of that was "emergency action". NFA clearly acted without CFTC authorization and in violation of the rules (¶282, ¶272-¶306,¶794, ¶674,¶281)-).

[H] Defendants Wahls, Kiela and Kadlec Afford No Individual Defense or Rebuttal for the Facts pled against them

    (i)  Wahls waives her individual defense

Pursuant to 7 USC 25(b)(3), the Court should take note the Wahls offers no individual defense for the  well-pled allegations of failing to enforce the NFA bylaws or rules, of the rules and regulations of the CFTC(¶432-¶455. ¶469-¶507, ¶456-¶468). Wahls defense is "silent" and omits any defense in denying the paragraphs of detailed allegations of compliance violations, instigated by Wahls, a primary participant and culprit (*Id.* ¶¶). Since Wahls offers no individual motion to dismiss and she has waived her defense. Wahl's conduct is also imputed to NFA, and accordingly. See *Kirschner v. KPMG LLP*, 15

N.Y.3d 446, 465 (N.Y. 2010).  Therefore NFA's  and Wahl's motion to dismiss should be denied as relates to Wahls' conduct.

### (ii) Kiela waives her individual defense

Likewise, under 7 U.S.C 25(b)(3) Kiela also fails to raise any individual defense for the numerous audits conducted e.g. ¶462-¶468, ¶629-¶655, Kiela's defense is "silent" and omits any defense in denying the paragraphs of detailed allegations of compliance violations, instigated by Kiela a primary participant and culprit including oversight of ADMIS, HRF and Lazzara. (Id ). Kiela also does not deny or dispute that she is the additional compliance officer on HRF. Since Kiela offers no individual motion to dismiss and she has waived her defense. Kiela's conduct is also imputed to NFA, and accordingly NFA's motion also be denied. See *Kirschner ID*  Therefore NFA's  and Kiela's motion to dismiss should be denied, as relates to Kielas' conduct.. Visions MTD also plausibly alleges that the two named compliance officers.

### (iii)  NFA is liable for the acts of Kadlec

On Pg.13 n5, NFA tries to disavow the acts of its Board Member and agent Kadlec who served on the Board and Membership committee during the relevant period of time. NFA states

> "Plaintiffs have also failed to state with specificity any alleged statutory or bylaw violation on Kadlec's part; there is thus no "underlying primary violation" to impute to NFA. *In re Platinum*, 449 F. Supp. 3d at 331 n.30."

This is incorrect. Not only has NFA <u>admitted</u> to primary violations by ADMIS (and Kadlec) the complaint has numerous detailed violations by Kadlec. See e.g. ¶11 – Kadlec violated NFA 2-4 9061 in the sharing of a CTA's trading records and trade secrets with other NFA members without their knowledge and consent; e.g.¶136,  ¶162 – Kadlec violated NFA 2-3, NFA 2-4 9061, CFTC 33.(7), CFTC 1.55, CFTC 1.57, NFA 2-29, NFA2-26 and failed to seek consent of customers to opt-out, and failed to abide by black letter laws of disclosure and purloining of monies from trades accounts; ¶173-¶178, Kadlec failed to abide by NFA 2-26, NFA 2-29 in providing fraudulent sales and solicitations in promotional materials, ¶232, Kadlec partook in unlawful activity under 7 USC 13(b)(1) and NFA2-3 to purloining profits from a CTA's account; ¶264, NFA and Kadlec approved material terms of the illegal ORSA that violated.

Therefore even by NFA's own admission, Kadlec violated the laws, **committed the fraud,** converted funds, illegal disclosed trades, there were multiple primary violations imputed to Kadlec. Kadlec has also raised his defense, that he was acting in his capacity as "Board Member". See Kadlec MTD. Defendants cannot have it both ways. Kadlec has argued his illegal actions were done in capacity of NFA Board Member. Therefore all wrongdoings by Kadlec for rule violations (as acknowledged in

NFA at 13 n5) are also imputed to NFA – and Kadlec remains on that Board today. It is well accepted that " "The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent" (*see Andre Romanelli, Inc. v Citibank, N.A.*, 60 AD3d 428, 429 [1st Dept 2009]). " *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010) "Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, **or commits fraud** " and … A corporation "is represented by its officers and agents, and their fraud in the course of the [] dealings [] is in law the **fraud of the corporation**" ( *Cragie*, 99 NY at 134; *accord Reynolds v Snow*, 10 AD2d 101, 109 [1st Dept 1960], *affd* 8 NY2d 899). *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010)-The Complaint further alleges in detail that Kadlec's main participation in the scheme was to commit fraud. The FAC also states clearly that Kadlec, made fraudulent omissions on mandatory reports to the CFTC and violated numerous rules related to the disclosures of Boshnack, Felag, Rothman and HRF. Therefore NFA is also liable for the failures of defendant Kadlec to enforce the Bylaws and Rules acts of agency, are imputed to its principal, *In Re Paladium*

Further neither NFA nor Kadlec have raised the adverse interest defense and therefore this argument is waived. The Court should note that Kadlec remains <u>to date</u> as Board Member and agent of NFA, bound by the statutory duties thereunder, and the fraud continues in the market place therein. Therefore NFA's motion to dismiss should be denied as well, as  they also liable as relates to Kadlec's conduct.

[I] Damages

Finally Defendants attack Plaintiffs pleading of damages is also without merit. Plaintiffs have adequately pled Section 22 damages in Pg.184.(a) of the FAC. To the extent they included other pleadings of damages in ¶761-¶772, Plaintiffs ***also*** did adequately include in its damage section 22 damages. (See Prayer for Relief (a)  Damages in accordance with Section 22 of the CEA, as permitted thereunder, including disgorgement of all fees and monies illegally obtained by NFA from the fraudulent scheme) Plaintiffs are ***also*** entitled to plead those damages, for any state law claims, and also against Defendant Kadlec who is joined in this pleading. Further the detailed itemization of damages at this stage in the pleadings is not required. The pleading adequately covers the damages covered under Section 22. Defendants conduct was a direct proximate cause of harm to Plaintiffs and is ongoing.

(ii) Klein is Irrelevant

NFA also cited to Klein for their proposal that Plaintiffs damages are not permitted. However this case is again inapposite. First Klein did not have an omnibus pleading with a CEO of corporation where state

law and individual commercial claims were being brought against ADMIS. But more importantly Klein is a case about an FCM who did not have <u>standing</u> to bring a claim Section 22. The case was submitted to the Supreme Court, and writ certiorari granted however it was never ruled on. In that case, the main argument was that because <u>Klein was an FCM</u> any losses were not the same as those of a trader, and hence were considered credit losses. This is not the case here, as Plaintiffs were both registered CTA, and traders, and they do have standing. Therefore any damages analysis from a party that has no standing (an FCM) is irrelevant. Klein should be disregarded.

### (iii) Damages for State Law Claims

Plaintiffs are also entitled to plead damages for state law claims for which Defendants have no immunity for unlawful conduct. (Discussed supra). In summary, when a party engages in illegal conduct there is no state law immunity. Those damages are relevant to the State Law claims or to Kadlec's role as a private actor. Therefore  at this stage, Plaintiffs are permitted to plead damages for all rule violations.

### (iv) Congress application of damages

The application of damages is not intended to limit or encourage malfeasance. The intention of Section 22 originated from conduct of exchanges. But (while it is premature at a MTD stage as Plaintiffs did include the correct ¶ for damages), Plaintiffs will later argue that the statute did not intend – as a biproduct – to allow or encourage illegal conduct from an SRO. What NFA essentially want to say. If they – for instance – violate a rule or bylaw – that robs a company of fund in a bank account – that the limitation on damages states, as long as that money was not paced in a [relevant] transaction, they have no damages. Plaintiffs argue the limitation does not apply to illegal or criminal or fraudulent conduct – that as will be proved herein is clearly unlawful. Nonetheless for a MTD, Plaintiffs have included in their damages, Section 22 damages. Pg.184 (a)

### (v) Kumaran's damages are ongoing

Plaintiff Kumaran is continuing as a CTA and opening futures accounts. Even transaction, impacted, that is impacted today is harmed. Kumaran has also an individual future account. Each and every transaction that Plaintiff instigates that was and continues to be harmed by this conduct is also subject to the ongoing damages.

## [J] – Whether all of Plaintiffs' Section 22 claims must meet the heightened Fraud Pleading Standards

Finally, NFA also raises a first time issue that it claims **all** of Plaintiffs' Section 22 claims must be meet the Rule 9(b) pleading standards as they sound in fraud. In relying on this, they cited to *Rombard*

*v. Chang.*  In that ruling the Court carefully went through each of the causes of action, and determined which ones were subject to the heightened standards and which one weren't. (See Chang, selecting 2 of the 5 claims only to meet the heightened pleading standards). Plaintiffs argue that for each rule violation, Congress did not intend that traders must plead each and every negligent rule violation with the same heightened pleading standard. That is not consistent with the bifurcated pleading standards of "discretionary" and "non-discretionary". Therefore Plaintiffs assert for Count 1, Plaintiffs need only meet the bad faith standard of negligence (see Iancu supra)

## [K]– NFA's Case Law to Support Standards of Pleading in Fraud are Inapposite

In the alternative if the Court is to apply for some of the rules, the heightened pleading standards, as can be seen in Count 3 and 4, Plaintiffs have adequately pled sufficient details to meet the standards of Scienter, and incorporate them herein.

Defendants also again attempt to sway the Court with inappropriate standards of law in strange bedfellow cases of law – (a) A Price Fixing and Class Action Market Manipulation Case (In re Nat Gas) and (B) Biro – a Defamation Case) – to support their case. Neither of these cases, applies relevant standards of fraud pleading that apply.

### (i)  Nat Gas is Inapplicable Case Precedent and Does Not Apply to This Case

Contrary to Defendants' assertion that Plaintiff's if its Section 22 7 U.S.C 25(b) *claims sound in fraud* and must be *pled with particularity*, the case law cited by Defendants in support of this proposition, i.e., *In re Nat. Gas*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) and  *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) applies to price fixing and market manipulation claims in *In. Re Nat Gas* (which require a specific standard of fraud pleading in cases of price manipulation) It is well accepted that price fixing and manipulation claims fall under a different statute and set of laws under the CEA. This is not a price fixing or market manipulation case, so this case does not apply to those standards. There is no direct parallel to the  [SRO]  violations – for instance on NFA 2-3, that have bearing on market price manipulations or should be held to the same standards as Price Fixing case – that impacts the entire commodities futures markets. In this case, where allegedly Plaintiff bring their own cause of NFA's violation to harm their CTA, and not a fraud on market prices, In Re Nat Gas and price fixing is inapplicable and is not on par.

### (ii) Biro is Defamation Case Law is inapplicable

*Biro* in its whole should also be disregarded and is also wholly inapplicable standard of law, as it only applies to a narrow body of law of defamation *claims for publication of limited figure* - which also apply completely different standards under newspapers and defamation law. This body defamation cases of public figures in newspapers and publications include - does not apply <u>at all</u> to the facts of this case. Further the standards of law for defamation "actual malice" and those do not apply to 7 USC 25 (b). Therefore *Biro* should be disregarded in its entirety and its associated cases.[2] Both cases are a strange bedfellow or choice of supporting precedent none of which come close to application to the NFA Rule violations that are relevant (see Troyer vs. NFA).

For these reasons Plaintiffs have successfully pled sufficient to pled a cause of action for a non-discretionary violations of the CEA under 7 U.S.C. 25(b) for all Defendants. Plaintiffs also respectfully seek leave to amend, if it is determined that any of the allegations are not sufficiently clear.

## COUNT 2 – VIOLATION OF DISCRETIONARY RULES

Plaintiffs have brought a second cause of action (Count 2) for Defendants' discretionary violations of the CEA under 7 USC 25 (b). ¶789-¶806. A *discretionary* violation is any rule, regulation, bylaw  where NFA can exercise *discretionary* authority. As discussed above (Supra Count 1), Courts have applied a bifurcated standards in applying the standards of bad faith, and made a case-by case determination of whether any rule, bylaw, regulation or requirements was ministerial (and the statute invokes the word "shall", or if the an element of discretion is required). Plaintiffs have indicated that in all  cases for the ¶Violations, the word "shall" invoked a ministerial and non-discretionary duty.  (See Table 1). (see <u>Iancu</u> ID)

For Cause 2, Plaintiffs have alleged that for the violations of the CEA, under Section 7 USC 25 (b) that invoked NFA's *discretion,* Plaintiffs have brought this cause specifically applied to any discretion in the re-registration of Boshnack, Felag and Rothman, (¶¶266-271,¶295-¶298, ¶363-¶364, ¶390-¶403,) and the new registration of High Ridge Future ("HRF") id. ¶390-¶403and Vision

---

[2] Biro states - Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with "actual malice"—that is, with knowledge that the statements were false or with reckless disregard as to their falsity. *See, e.g., N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (public officials); *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 154–55, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (public figures); *Lerman v. Flynt Distrib. Co.,* 745 F.2d 123, 137, 139 (2d Cir.1984) (limited-purpose public figures).

Investments Advisors ("VIA"), the latter to directly compete with Plaintiffs after improper acquisition of material non-public information and insider trading. ¶666-¶681

### 2. Re-Registration of Boshnack, Rothman, Felag violated NFA rules and Bylaws

Plaintiffs have asserted a separate cause that NFA violated its own Bylaws and 7 U.S.C. 13 in its decision to re-register Boshnack, Rothman and Felag. (¶789-¶805). Without limitation the FAC alleges specifically NFA violated NFA Bylaw 301 (e) states that NFA could only re-register Boshnack, Rothman and Felag upon a finding by the Membership Committee (See Chapter 7) that the reason for ineligibility **does not cause the person to pose a threat to Members, Associates or customers** ¶67, ¶295-¶298, ¶362,¶670-¶676,¶793-¶798

NFA Bylaw 301**(e) Exceptions from Ineligibility, Restrictions and Qualifications.** A person who is ineligible or disqualified to become or remain a Member or associated with a Member under paragraphs (a) or (d) above may nevertheless become or remain a Member or associated with a Member

  (i)  Subject to the provisions of Section 17(b)(3) of the Act, upon a finding by the Membership Committee[3] (See Chapter 7) that the reason for ineligibility **does not cause the person to pose a threat to Members, Associates or customers;** or

  (ii)  In such other situations as may be approved or directed by the Commission.

NFA's MTD is vacant and offers no rebuttal, no denial, no explanation and no defense for the express violation of NFA Bylaw 301 (e) that Plaintiffs carefully alleged. This is fatal.

The FAC first alleges under 301(e.)(ii) the Commission did **not** direct Boshnack, Rothman and Felag to be re-registered. NFA also offers no such defense that relies on authority from the CFTC as they did in the Troyer case. NFA does not dispute (and in fact) admits that the ongoing registration of Boshnack, Rothman, Felag and HRF did in fact pose a threat to other customers and members (Plaintiffs). *To wit*, NFA at , 17("fraudsters", "illegal aspects of agreements", unauthorized fees"– that "ADMIS and High Ridge" committed the fraud". These are words that are coincident with "did not pose a threat to Members, Associate or customers".

The crux of the FAC centers around the unlawful ongoing market participation that ***does*** indeed pose an ongoing threat to customers and members. Plaintiffs account was subject to multiple infractions of the CEA, purloining of funds (¶145,¶152, ¶374,¶408.¶368,¶379,¶527,¶552 ), dissemination of proprietary and material non-public information, overcharging of excessive fees (up to 18% a year¶183, ¶189, ¶201-¶202, ¶374,¶543,¶779, ¶), excessive margin errors (¶303, ¶597, -¶), non-compliance with

---

[3] Defendant Kadlec, who has a personal self-interest in the registrations, in his capacity as CEO of ADMIS, was also on the "Membership Committee".

inaccurate compliance with exchange rules of margin – and insider trading on material non-public information, and the most distasteful violation of fraud and misrepresentation.(¶4,¶580-¶610, ). There can be no dispute that Plaintiffs and NFA agree, the re-registration caused significant damage to Plaintiffs. (¶761-¶772). Therefore prima farcie Plaintiffs have adequately pled a cause of action under 7 U.S.C. 25 (b) for Defendants violation of NFA Bylaw 301(e.)

### 3. Whether NFA's violation of Bylaw 301(e) was discretionary or non-discretionary

The first question before the Court is whether NFA's enforcement with Bylaw 301(e) is *discretionary* or *non-discretionary*. Defendants offer no evidence, discussion or cite to no case law or rule that states it is discretionary. In a similar action Troyer vs. NFA, the Court ruled that a similar bylaw NFA Bylaw 301(d) was in fact <u>*Non-Discretionary*</u>. There, the Court explained the analysis as follows:

> If NFA's actions were discretionary in nature, then Troyer must meet a heightened bad-faith standard by showing that NFA acted unreasonably or with an improper motivation in failing to enforce Bylaw 301(a)(ii)(D). On the other hand, if NFA's actions were not discretionary in nature, Troyer could meet his standard of proof on the second element of his CEA claim by showing that NFA was merely negligent in failing to enforce Bylaw 301(a)(ii)(D). *Troyer v. Nat'l Futures Ass'n*, No. 1:16-cv-00146-SLC, at *29 (N.D. Ind. Sep. 26, 2019

> "Court concludes that NFA's duty to enforce Bylaw 301(a)(ii)(D) was not discretionary in nature. As a result, Troyer need only establish that NFA's failure to enforce Bylaw 301(a)(ii)(D) was due to negligence, rather than a heightened bad-faith standard. " *Troyer ID*

The Court also noted that "NFA points to nothing in the text of Bylaw 301(a)(ii)(D) that indicates NFA's enforcement of this bylaw is discretionary" and The Court then ruled that "that NFA's duty to enforce Bylaw 301(a)(ii)(D) was not discretionary in nature." and "As a result, [Plaintiffs] need only establish that NFA's failure to enforce Bylaw 301(a)(ii)(D) was due to negligence, rather than a heightened bad-faith standard."

Likewise for NFA Bylaw 301(e) NFA offer no explanation and point to nothing in their MTD that in the text of  Bylaw 301e  that indicated Defendants' enforcement of this bylaw is discretionary. Therefore, since NFA Bylaw 301(d) was found by Courts to be non-discretionary, Plaintiffs argue the Court should similarly find NFA Bylaw 301(e.) should also apply a non-discretionary standard. Noting that NFA, Wahls, Kadlec and Kiela offer no defense for violations of NF Bylaw 301(e), and no authority from the CFTC, Plaintiffs need only apply a "negligence" standards to Defendants to the violation. Under

Mem 2 Opp NFA, Page 23

the "negligence" standard, Plaintiffs have more than adequately met the burden of bad faith for Wahls, Kiela's and NFA's violation of this Bylaw (¶67, ¶295-¶298, ¶362,¶670-¶676,¶793-¶798) Further Defendants have not offered one defense (unlike in Troyer) why their determination that BOshnack, Rothman and Felag was not "negligent". Since they have failed to defend their negligence standard, Plaintiffs believe that argument is waived, for purposes of this MTD. Therefore Defendants MTD should be also denied for Count 2.

> Recently, in *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, the Northern District of Illinois addressed the nature of an exchange's duties when **enforcing, versus interpreting**, its own rules. The court stated: "While an exchange has discretion to ***interpret*** its own rules, where a market participant violates a rule—and the exchange knows (or should know) about the violation—the failure to enforce suggests wrongfulness. 2019 WL 2289903, at *10 (emphasis added) (citing *Bosco*, 836 F.2d at 278). The court further observed: "[The exchange] points to nothing in the text of Rules 601 or 603, or *30 elsewhere, showing that their *enforcement* is discretionary . . . ." *Id.* (emphasis in original, bold underline emphasis added).

## 4. If the Court is to apply a Discretionary Standard for NFA Bylaw 301(e)

Therefore the question is whether NFA Bylaw 301(e) involved an "interpretation" of its rules. In this case, the Court must apply a "discretionary" standard of bad faith. [[In enacting the Futures Trading Act of 1982, Congress specifically amended the Commodity Exchange Act to provide prospectively that private litigants bringing actions against an exchange [and a registered futures association] must establish that "the contract market [or registered futures association] . . . acted in bad faith in failing to take action or in taking such action as was taken. . . ." 7 U.S.C. § 25 (b)(4).]] Hence, to succeed on a claim of bad faith plaintiffs must establish "first, that the *exchange* acted or failed to act with knowledge and second, that the exchange's action or inaction was the result of an ulterior motive ." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 780 (2d Cir. 1984). *Minpeco, S.A. v. Hunt*, 693 F. Supp. 58, 61 (S.D.N.Y. 1988) Here the cases cited, apply to exchanges.

## Standards of Bad Faith Required for Violation of Discretionary Rules

The Court of Appeals for this circuit has established that commodity ***exchanges*** may only be held liable under the Commodity Exchange Act for actions that are taken or withheld in bad faith: "self-interest or other ulterior motive unrelated to proper regulatory concerns" must "constitute the sole or dominant reason for the exchange action" or inaction. *Sam Wong Son, Inc. v. N.Y. Mercantile Exchange,* 735 F.2d 653, 677 (2d Cir. 1984); *accord, Apex Oil Co. v. DiMauro,* 822 F.2d 246, 261 (2d

Cir.), *cert. denied,* U.S. 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Brawer v. Options Clearing Corp.,* 807 F.2d 297, 302 (2d Cir. 1986); *Ryder ID.*

Majority of the precedent in this District therefore applies the bad faith standard under Section 22 only for *discretionary* actions or inaction taken by *exchanges* who have discretion on whether to take emergency action to maintain orderly markets. In those circumstances, Courts balance the competing needs of serving the public interest of maintaining orderly markets and prohibiting market manipulation and conflicting interest of private interests. However, in this action the precedent related to the exchanges' emergency action and *discretionary* decision making is not applicable. Therefore as a first matter, Plaintiffs assert that ***all*** the cases cited by Defendants (*DGM*, *W. Capital* and *Ryder* )), which are the staple diet in S.D.N.Y. for evaluating whether an exchanges decision for discretion rule enforcement, is not the applicable analysis for the sorts of discretionary application to registrations of Boshnack, Rothman and Felag **does not apply.**

[A] Why specifically Defendants Case Law is Inapplicable
NFA's cases are also only applicable to exchanges

Relying on the *exchange*-centered cases, NFA bases its defense on <u>three</u> cases that are not applicable to violations in this case. (NFA at 21). In *W. Capital Design* an action was brought against NYMEX (N.Y. Mercantile *exchange*) related to specific violations of the exchange of NYMEX Floor Rule 6.06(A). The complaint was related to NYMEX failing to offer a "a safe, fair and orderly market" (*Id.*) and that NYMEX options floor brokers were charged more favorable options premiums to those of public, and far from any consistent pricing model. (*Id.*) However this is precisely the exchange based justification that bears no impact on this case.

Similarly *DGM Investments*, (another *exchange* case) is also inapplicable statutory precedent. DGM relies on outdated and inapplicable rules (NYFE Rule 315) which no longer exists or is precedent in the Commodities Exchange markets and has not been since 2004.[4] DGM was also related to alleged price-manipulation and the non-enforcement of specific now-extinct NYFE 315 *exchange rules* on a specific product called EFP's. Plaintiffs case (the case at hand) is not in anyway comparable and brings

---

[4] The New York Futures Exchange (NYFE) **was** a subsidiary of the New York Stock Exchange (NYSE) focused on the trading of futures and options contracts, mainly pertaining to NYSE stock index futures. Founded in 1980, the NYFE has since undergone several mergers and acquisitions, including a combination with several other commodities exchanges in 2004 to create the New York Board of Trade (NYBOT).2 Most recently, in 2007 the NYBOT and all of its subsidiaries were acquired by the Intercontinental Exchange (ICE), today, known as the ICE Futures exchange. https://www.investopedia.com/terms/n/nyfe.asp

no similar causes of action related to price-fixing or price manipulation or EFP's let alone on a dinosaur exchange like NYFE. Therefore NYFE rules and their enforcement are severely outdated and irrelevant precedent for the types of rule violations being alleged here. Neither Plaintiffs traded or executed on ICE nor NYFE and/or have brought any claims on any related exchange rules.

Also *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 780 (2d Cir. 1984) (rejecting a claim "that although NYME knew or should have known that FCMs were violating EFP rules, it took no action to secure compliance") is again a case related to market action on an exchange for a specific type of EFP transaction that could harm investors. These exchange violations cannot be compared to NFA's ministerial compliance with its own bylaws for non-emergency or non-trading events that do not impact operations of the live-trading floor.

[B] Why Exchanges history has set the Precedent

The question is whether the "exchange heightened" standard of bad faith should apply to NFA's discretionary violations of the CEA. Courts have ruled that the heightened standard of proof required to prevail on a claim against a commodity *exchange* arises from several factors. First, under the self-regulatory scheme established by Congress with the enactment of the Commodity Exchange Act, commodity *exchanges* are accorded "broad and flexible powers [to] enable **them to insure an orderly market and prevent manipulation in prices**. . . ." *Case Co. v. Board of Trade of the City of Chicago,* 523 F.2d 355, 362 (7th Cir. 1975); *accord, Miller v. New York Produce Exchange,* 550 F.2d 762, 767 (2d Cir. 1977); *P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F. Supp. 72, 75-76 (S.D.N.Y. 1979). (emphasis added). Therefore the history of application of the discretionary standard of bad faith, was rooted in the ability of an *exchange* to maintain orderly markets and prevent customers harm from price manipulation. This does not have bearing on the registration of bad actors Boshnack, Rothman, Felag and their affiliates HRF, VIA, who are not necessary or an integral part of providing an "orderly market" and/or "preventing manipulation in prices".

Further the case precedent, which sprang from application to the exchanges, stated that "The application of the bad faith standard must be established as the "sole or dominant" reason for the *exchange* action or inaction because of the possibility, inherent in the scheme of *exchange* self-regulation, that exchange directors may simultaneously "act to advance the public interest, as well as to advance their own interests." *Bishop v. Commodity Exchange, Inc.,* 564 F. Supp. 1557, 1562 (S.D.N.Y.

1983).  *Minpeco, S.A. v. Hunt*, 693 F. Supp. 58, 62 (S.D.N.Y. 1988) Again this standard applies to exchanges, with the overarching principle being in the need to **advance the public interest.**

The origin in SDNY of the use of the words "sole and dominant" reason being included in the application of bad faith, was again because the Courts recognized that governors or members of an *exchange*, would need to balance the public interest with those of their own. In Bishop vs. Commodity the Court ruled that

> "Should a Governor vote in favor of such a rule in the **belief that the rule served the public interest,** even if also in the expectation and hope that it would serve his personal interest, his behavior would not give rise to liability." *Bishop v. Commodity Exchange, Inc.,* 564 F. Supp. 1557, 1562 (S.D.N.Y. 1983). *Minpeco, S.A. v. Hunt*, 693 F. Supp. 58, 62 (S.D.N.Y. 1988)

Therefore the intent and formation of the bad faith context, in application to *exchanges,* and the word "sole and dominant" interest, was the Court's evaluation of the exchange's action was **made in public interest** which is the intent of the Act and not, for instance of a Governor of an exchange who may also be trading on the exchange. The balance that was sought to be made in applying the rule that the *exchange* had to justify its discretion in apply the rule, was to serve the public interest. The Court in Minpeco went on to state*,*

> "In sum, the requirement of bad faith as a sole or dominant motive balances: the competing needs of exchanges and their officials and of the trading public. Although governors must be able to police the markets effectively with the broad *discretion* accorded by Congress, traders must not be deprived of their right to challenge illegitimate regulatory action. The Commodity Exchange Act, which embodies the statutory model of *exchange* self-regulation, mandates that we strike a balance that does not insulate *exchange* officials from answering serious questions posed by injured traders. To do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework established by Congress. . . . On the other hand, if the [the exchange] governors sincerely and rationally believe **their action is in the public interest**, there should not be liability simply because the action has the incidental effect of advancing their private interests or damaging someone whom they do not like." See also *Sam Wong,* 735 F.2d at 677. *Minpeco, ID* 693 F. Supp. 58, 62 (S.D.N.Y. 1988)

Even ignoring the clear distinction in apply 7 USC 25(b) to *exchanges* versus the registered futures association, there are three operative words, in the Court's analysis of what constitutes bad faith. (1) Whether the exchange's action was **in the public interest** (2) whether the discretion was needed to maintain an **orderly market (***See Minpeco***)**  and (3) whether the decision was to protect customers from some sort of **price manipulation**.

Here the registration of Boshnack, Rothman, Felag, HRF and VIA was not an integral or necessary apart of maintaining an orderly market or price manipulation, and as plausibly alleged with the facts here in (and as admitted by NFA), "fraudsters", "unauthorized fees", "unlawful sharing of customer trade secrets", "more and more fees". "margin errors", illegal parts of a contract" etc..etc.. was certainly not in the public interest. NFA has failed to meet the statutory bar, to demonstrate to the Court, how any of their actions in registration were "in the public interest". Therefore Defendants point to no justification, supported by statute how the conduct was in good faith, or a based on a good faith basis of decision. Boshnack and Rothman are not necessary parts of the orderly functioning of the commodities futures markets. In fact, they were a "menace" and "bad actors" with diabolical collection of securities law violations, alleged to harmed over 172 market participations in CFTC complaints. (ECF57 Exhibit 1). The companies they ran were told to exit the business, paying restitutions of millions of dollars to harmed futures customers. (¶92-¶97, ¶24-¶25, ¶289, ¶294,¶)

Therefore the intent of the legislation and interpretation of 7 U.S.C. (b)(4) in applying the bad faith standard, was to examine if the rule in question served the public interest and/or the balance of interest in the discretionary decision served the public interest. Plaintiffs have alleged the conduct in this case was the opposite. The weight of any supposed "discretion" was *not* in public interest, were not weren't required for "orderly conduct" of the exchanges on which this legislature was originally drawn. Therefore in this standard, Plaintiffs allege they have pled "bad faith" – the actions of NFA were not in the public interest, were not in the interest of an "orderly market" and were not needed to protect "price manipulation". Further, since the FAC alleges rampant illegal conduct, Defendants have not plausibly pled anything that rises to "Good faith" Neither can they point to necessary "emergency" actions of an exchange to maintain orderly markets or prevent market price manipulation.

Second, unlike the legislative precedent Defendants NFA rely upon,  NFA is **not** an *exchange*. Instead, the core allegation in this action are that Defendants and Conspirators fraud, intentionally engaged in "illegal" conduct and "rule violations of the CFTC" to force their way into the markets, and after statutory disqualification, set up oral and illegal contracts, to attempt to end-around or contract their way around the rules of the CEA, keeping their arrangements "oral" and undisclosed form the CFTC. This therefore constitutes illegal or unlawful market participation and cannot be subject to the standard of "good faith". the NFA, , Here the conduct as alleged, was  **not to advance the public interest .. It was illegal and there is bad faith.**

     (i)     Other exchange used language for "bad faith"

Defendants also rely upon the boiler-plate exchange driven language that to show bad faith for exchanges Plaintiffs must show "self-interest **or** other ulterior motive **unrelated to proper regulatory concerns" . (emphasis added – add CITE).**Defendants Wahls, Kadlec Kiel and NFA, focus on the first part of the sentence "self interest". Both Plaintiffs may also meet this standards by the latter part "**or** other ulterior motive unrelated to proper regulatory concerns.

 (a) For Defendant Kadlec

Plaintiffs have clearly met that he was acting both in his capacity as CEO of ADMIS (who stands to personally gain substantial amounts of money) ¶530-¶555,¶863  and also in his dual capacity as NFA Board Member. Therefore given, his self-interest – (which includes extraordinary, and excessive fees – estimated over $10 million a year) Plaintiffs have pled Kadlec's individual self-interest.

 (b) For Defendants NFA, Wahls and Kiela  "Other ulterior motive unrelated to proper regulatory concerns.

It is true the first part of the prong in the phrase "*acted with self interest **or** ulterior motives unrelated to proper regulatory concerns*" includes the words self interest. . Plaintiffs have met the other prong of "other ulterior motive unrelated to proper regulatory concerns. Plaintiffs did not rely on self-interest, and instead  met the pleading standards of bad faith under the second prong. The illegal participation of fraudsters Boshnack,Rothman and Felag was unrelated to the proper regulatory concerns of "ordinary function of the commodities futures market, was not in the public interest, and as stated supra was unlawful.

     NFA instead tries to argue solely by resting its comments on that Plaintiff did not plead "self interest". This argument is not necessary (Supra). Even if the Court is to consider this prong,  Plaintiffs charge of "unauthorized fees" and "illegal market participation" can support the charge of self-interest – when an exchange of SRO obtains a sizable part of market fees and commission based on unlawful conduct. (See Fraud Count 3, Scienter met with extraordinary revenue and excessive fees) While Defendants state that increasing volume and increased revenue is a normal goal of the SRO, it must be done so in compliance with the black letter laws of the CEA.

     Defendants argument fails as it ignores the undisputed fact, that the revenue created from all of Boshnack, Rothman and Felags' activities, (without disclosures to the customers and consent) was illegal revenue and involved illegal margin activities which in turn gave Boshnack and his cohorts an unfair

market participation advantage (¶6,¶9, ¶319-¶358).[5] Therefore, since NFA authorized illegal market participation by way of the ORSA, and nondisclosure to obtain that revenue, this revenue is not justifiable under the "good faith: requirement. An exchange or SRO, can't come into Court, and claim it has generated over $10 million dollars a year in fees, from illegal activities, and expect the Court to state, just because they are fees they are proper.

> (ii) The Illegal ORSA and concealment of the registration warrant an immediate
>      determination of bad faith as it is illegal

"`It is the settled law of this State . . . that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose.'" (quoting Stone v. Freeman,298 N.Y. 268, 271, 82 N.E.2d 571 (1948) (alterations in original)); *Foundation Ventures, LLC v. F2G, Ltd.*, 08 Civ. 10066 (PKL), at *11 (S.D.N.Y. Aug. 11, 2010)NFA, Kadlec Wahls and Kiela, have not disputed (or raised a defense) the clear fact, the unlawful revenue generated from the scheme is $10 million a year in unauthorized fees from customer accounts. (NFA even admits to illegal aspects of a deal charging unauthorized fees). Illegal market participate and unauthorized fees of over $50 million dollars scalped from customers and Plaintiffs account constitute not just grand larceny, and certainly meets the pleading standards of bad faith. Plaintiffs have alleged the purloining of profits, fees and Defendants admit "unauthorized fees" repeatedly in their brief, is illegal. And therefore any revenue from unlawful activities is not protected from the "bad faith" exemption.  In fact as clearly stated, the intent of 7 U.S.C 25(b) was not to permit an SRO to also chide behind the cloak of immunity for unlawful conduct and use that as a shield and then not once defend or deny to the Court the conduct is illegal.

"Scotto v. Mei, 642 N.Y.S.2d 863, 865, 219 A.D.2d 181 (App. Div. 1996) ("[I]t is black-letter law that a contract entered into in violation of a statute is an unlawful undertaking and such an illegal contract can not give [protections to the accused]."). " *Foundation Ventures, LLC v. F2G, Ltd.*, 08 Civ. 10066 (PKL), at *11 (S.D.N.Y. Aug. 11, 2010) The Court should note that NFA, Wahls and Kiela's failure to dispute (purloining of funds (b) illegal fees (unauthorized is fatal to their defense. And this alone should give rise to bad faith. Likewise the NFA cannot hind behind a cloak of immunity, and

---

[5] NFA, Wahls and Kiela, do not dispute once, the illegal margin activities and margin allowances explained in detail, In fact they concede there were "margin errors". NFA at 3.  Neither does NFA  dispute once the unfair market participation, or suppression of CTA's accounts or purloining of fess to reduce profitability. These failures are again FATAL to NFA's defense.

simultaneously endorse illegal market participation and then feed their own revenue from illegal revenues they know are derived in violation of the CEA and then claim this is the "proper functioning of the market" for which they are immune. The two are oxymorons. Not autonomous / Not congruent.

NFA's admission of "illegalities" should also not go unnoticed to the Court. The Commodities Exchange Act, 7 U.S.C 13 delineates expressly, unequivocally, the conduct that the CFTC considers illegal. Plaintiffs have explained in detail, multiple allege And the NFA does not deny or respond to any of the allegations of illegality. That on its face, is a fatal deficiency for which NFA's, Wahls. The FAC also specifically alleges that NFA violated the mandatory non-discretionary rules prescribed by the Commission under 7 U.S.C 13

### (iii)The illegal ORSA and therefore the registration is void under law

Plaintiffs have pled the ORSA the existence of, and all substantive terms and provisions are illegal.(¶262-¶263,¶359-¶403,) A contract with illegal subject matter is considered void . Sirota v. Champion Motor Group, Inc.,849 N.Y.S.2d 426, 430, 18 Misc. 3d 862 (Sup. Ct. 2008) ("It is well settled that a contract which violates a prohibitory statute or which cannot be performed without violation of that statute is an unlawful undertaking and is illegal , void and unenforceable.");see also Kaiser-Frazer Corp. v. Otis Co.,195 F.2d 838, 843 (2d Cir. 1952) (Hand, A., J.) ("[A] contract which violates the laws of the United States and contravenes the public policy as expressed in those laws is unenforceable."). *Foundation Ventures, LLC v. F2G, Ltd.*, 08 Civ. 10066 (PKL), at *10-11 (S.D.N.Y. Aug. 11, 2010)

### (iv)Recast Illegalities of Boshnack, Rothman, HRF, Felag's Participation

Instead NFA tries to purposefully recast aspects of the illegalities of the arrangements (See NFA at 5) recasting to the Court what it believes are illegal.

> *Instead, Plaintiffs' claims of illegality focus on the oral agreement that supposedly contemplated that ADMIS would charge unauthorized fees and give High Ridge access to ADMIS's customers' trade secrets.*

However the FAC alleges far more illegal terms that that and illegal market participation and NFA incorrectly (again) cites to the wrong paragraphs. ¶263,¶490,¶492,¶839. NFA also fails to defend (not once) which is fatal, any of the actual material terms that were alleged to be unlawful (See ¶263 See also ¶261-¶318, see e.g. CFR 1.57, 7 USC 6(d)(a)(1)(2) etc. At a Motion to Dismiss stage, NFA does not have the ability to re-state facts. Plaintiffs have instead asserted all material terms of the ORSA, (including the existence of the ORSA) that were carefully alleged as unlawful and Defendants failed to defend once. Any of the statutes listed as unlawful, or make one defense of the unlawful conduct.

Therefore their MTD should be denied and the conduct constitute bad faith. NFA's defense to this is fatal. NFA's admissions by its own recasting of the illegalities that were that the ORSA would allow "unauthorized fees. s that giving High Ridge access to ADMIS' customers trade secrets, was an illegal part of the deal should also be noted as bad faith.

### (v) Plaintiffs also plead bad faith by Concealment / Illegal Conduct Falls in the Gambit of "improper" conduct, no related to the proper regulatory concerns

The statutory and legislative history of the ulterior motive, has been carefully explained by the Courts, to include conduct that includes concealment, something beyond what is seen. As discussed supra, the concept of a "trust and confidence" in the markets, and concept of fiduciaries is to guarantee participants who open accounts at FCM, a fiduciary duty" and "straight shooting in the markets" (*See* Section A - Count 4 supra) . In *DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 01 Civ. 11602 (RWS), at *1 (S.D.N.Y. Oct. 17, 2002) the Court ruled that "The line sought to be drawn by the authorities and the statute is that between negligence and inaction and action that an "ulterior motive" meaning according to the Random House Dictionary of the English Language, Library of Congress Catalog Card Number 74-129325:

1. being beyond what is seen or avowed: intentionally kept concealed: ulterior motive;
..3. lying beyond or outside of some specified or understood boundary: more remote: a suggestion ulterior to the purposes of the present discussion.

In the present context, bad faith must constitute an intent to commit an act, or fail to do an act, for some reason outside of the recognized performance of the office.  Therefore acts of concealment are also, outside the legal and proper functioning of the market are also bad faith. FAC states Defendants knew the ORSA was illegal and not permitted and engaged in intentional activity to conceal it from the CFTC and from customers. Other concealments including hiding the G&F Agreements, and the perpetual trailing fees and commissions, including in mandatory sale and solicitation that NFA approved.  See *Strobl v. New York Mercantile Exchange,* 561 F. Supp. 379 (S.D.N.Y. 1983). The Court held that Plaintiff alleges further that defendants "withheld certain information ... **that should have been made known to the public**"  upholding a finding of bad faith. Consistent with the above, Plaintiff alleges further that defendants "withheld certain information ... that should have been made known to the public" Courts have also held an SRO withholds certain information… they should, have been made public this is improper conduct  Plaintiff alleges that the exchange knew of the conspiracy and intentionally violated the CEA and its own rules in order to further the conspiracy.

See also *DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 01 Civ. 11602 (RWS), at *1 (S.D.N.Y. Oct. 17, 2002) Allowing a finding of bad faith for secret motive outside the parameters of the duties imposed". Unlike the exchange actions cited, plaintiffs in this action have alleged now undisputed illegal conduct (Supra) which is clearly outside of the duties and parameters approved under the CEA.  NFA motion is unsurprisingly vacant in taking cover from the CFTC. **NFA makes no mention of the CFTC.** Therefore NFA, intentionally acted outside of and "lying beyond or outside of some specified or understood boundary", which falls under the legislative definition of ulterior motive

Once a contract is deemed illegal it is null and void.. NFA's opposition attempts to restate terms as well. But these are not the illegalities that Plaintiffs "focused" on in the Complaint.  Section 11 of the Compliant focused on the illegal ability for Boshnack et al to have discretionary authority and extend margin and credit on customer accounts and operate as an FCM (¶259,¶263-¶267,¶279,¶307).   NFA offers no defense to this. The illegalities focused involved HRF, Felag operating outside their registration and market participation (CFR 1.57) (NFA Offers no defense to this). Therefore Plaintiffs count 2 for illegal registration of Boshnack, Rothman and Felag meets the standards under unlawful conduct. Further NFA's motion is silent upon the unlawful registration of VIA, and false information submitted on its application. (e.g.¶393,¶395,¶500-¶502). Therefore these counts should also not be dismissed.

### (vi)Irrational or other Reckless conduct

Similarly reckless conduct or conduct that is irrational or arbitrary can also amount to bad faith. in the alternative, Plaintiffs have also pled Defendants' conduct with regard to Boshnack, Rothman, Felag and HRF and VIA and their re-registration was both irrational and reckless conduct. Plaintiffs include by reference to Count 3, their standards of pleading for Recklessness. Courts have held, irrational or arbitrary behavior in some circumstances may support an inference of bad faith, the behavior [also] has to be "so arbitrary" as to justify an inference of "constructive bad faith." See Minpeco, 693 F. Supp. at 63; see also Brawer v. Options Clearing Corp., 807 F.2d 297, 303 n. 9 (2d Cir. 1986) ("We do not mean to foreclose the possibility that [exchange actions] might be so arbitrary as to constitute constructive bad faith."), cert. denied, 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987); Jordon v. New York Mercantile Exchange, 571 F. Supp. 1530, 1553 (S.D.N.Y. 1983), affirmed in relevant part, Sam Wong, 735 F.2d 653 (2d Cir. 1984). In the alternative Plaintiffs also argue the conduct was irrational and reckless and not consistent with the proper functioning of the market.

### (vii)    Fraud or Bad Faith

Finally Courts in this District have not just applied the bad faith standard for *discretionary* duties. They have also held that ***either (emphasis)*** fraud or bad faith meets the pleading standards to show a violation of the discretionary standard. In the alternative, Plaintiffs argue the pleading of fraud is sufficient to withstand the motion for Count 2 instead of alternative standard of bad faith. *See Brawer v. Options Clearing Corp., 807 F.2d (2d Cir. 1986)*. Further Courts in this circuit have also held and affirm  that a private cause of action against an exchange or a clearinghouse for failure to comply with one of its rules which requires an exercise of discretion, [] may be brought only if it is premised upon allegations of fraud **or** bad faith. (emphasis added on "o**r")**

**[F] Knowledge** The final prong to meet bad faith under the heightened pleading standard is knowledge, Plaintiffs have clearly pled knowledge both pre-September 2017 and post-September 2017. (Plaintiffs incorporate by reference all arguments related to fraud from Count 3 and 4 (supra). As pertains to the unlawful re-registration of Rothman, Boshnack and Felag, HRF and VIA and violations of NFA Bylaws, Rules and Regs in Count 2, the FAC clearly alleges knowledge of the rule violation. Specifically in re-registering Boshnack, Rothman and Felag in November 2014, the FAC alleges that NFA, Wahls and Kiela, had full knowledge of the ORSA ¶260-¶358, The FAC alleges that NFA, Wahls and Kiela, knew that the material terms of the ORSA violated provisions of the CEA and CFTC Regs (¶430-¶455,456-¶468,¶469-¶507,, ) – including that HRF, Boshnack, Felag and Rothman could "extend margin and credit on customers account" and that they would have "discretionary" authority on Plaintiffs' account. The FAC alleges NFA knew that these market participation terms were expressly prohibited under aegis of registration solely as an IB. (¶263-¶266, ¶381-¶394) Further the FAC alleges that to intentionally circumvent the laws of the CEA and CFTC, NFA, knowingly with Conspirators, made the material terms of the ORSA. And through "multiple audits" prior to September 2017, continued to authorize and approve and illegal ORSA, that would have (if disclosed) led to disqualification of Boshnack, Rothman, Felag and HRF, rendering their market participation and registration not permissible under the black-letter laws of the CEA. (id, ¶263-¶266, ¶381-¶394, ¶136,¶152, ¶155, ¶158,¶646-¶686,) Therefore the FAC alleges knowledge that registrations of the above participants violated the statutory disqualifications of the CEA.

[G] - - NFA's defense is off-point

(i) Fitness Exam and Disqualification

NFA once again tries to recast Plaintiffs FAC with inaccurate facts pled.  It first miscast the thorough fitness examination as being solely to do with "criminal activities" Plaintiffs incorporate by reference the arguments from Count 3 Section C and the statements of fraud related to the "fitness examination". Specifically the fitness examination involved various certifications that NFA and HRF (the sponsor) had not made untruthful or incomplete applications. Therefore ¶381, ¶382, ¶384, ¶393,¶394 pled how NFA's failure to do a thorough fitness examination would have in fact led to disqualification. Plaintiffs did in fact plead disqualification.[6]

See e.g ¶381 Specifically Plaintiffs alleged that the ORSA prohibited their market participation under NFA 2-26 / 17 CFR 1.57 (c) and 7 USC 2 (c.)(v)(IV) which made it unlawful for the them to directly  or indirectly extending, or maintaining credit to or for, or collecting margin on Kumaran's account. It also prohibited them from having discretion on Kumaran's account, as well as power of attorney to handle margin calls (see ¶381, n41). This also was a statutory disqualification under 7 U.S.C. 12(a)(g) as well as constituted unlawful conduct. **NFA does not dispute these violations of 17 CFR 1.57.(c) and 7 USC 2 (c.)(v)(IV).**

The FAC¶382  also specifically point to 7 USC 6(k)(1)(5) which are non-discretionary rules that make it unlawful for Boshnack et al to participate in the manner of an FCM including extending margin and credit on customer accounts. (¶382 n42). **This would lead to statutory disqualification.  NFA does not dispute the violations and unlawful participation alleged under 7 USC 6(k)(1)(5).**

The disqualification was also well pled in ¶384 - Any registration under the Act of an FCM must also comply with 7.U.S.Code § 6d(a)(1) and (2) -  making it unlawful for Boshnack, Rothman, Felag, and HRF – without registration, who were expelled – to continue to act on behalf of ADMIS, without disclosing their activities, and without the proper registration as an FCM.  (¶384, n43, n444) **NFA does not dispute the violations and unlawful participation alleged under 7 USC 6(d)(a)(1)(2). This would lead to statutory disqualification.**

The FAC also alleges they knowingly submitted false reports see. e.g ¶393 - 394  not disclosing in their registration and on mandatory reports to the Commission, material information related on their market participation containing the terms of the ORSA which were violations of the ORSA 7 USC 13

---

[6] Plaintiffs used the word disqualification and statutory disqualification as one and the same.

(a)(3)(4) (5) (See ¶393 n45, n46), ¶391, **NFA does not dispute the violations and unlawful participation alleged under 7 USC 6(d)(a)(1)(2). This would lead to statutory disqualification.**

NFA distorts the statutory disqualification language to also fully ignore the NFA Rules (and CFTC Rules) that prohibits Boshnack, Rothman, Felag and their entities from continuing to act in manner that is prohibited under the CEA. NFA 2-2 (i) Act in any capacity requiring registration under the Act unless the Member or Associate is either registered in that capacity or exempt from registration.

NFA also tries to argue that Plaintiff did not plead HRF was subject to statutory disqualification, But it missed the point, that Plaintiffs pled Boshnack, Rothman and Felag who are associated person and subject Bylaw 301(e) were subject to disqualification. Thereby imputing the conduct to the wrong entity NFA tries to confused the Court. This cause of action is primarily against Boshnack, Rothman, Felag in their individual capacity that made false reports on their registration. As pertains to 7 U.S.C. 12, as stated in Count 3, Plaintiffs allegations do plead violations that would render disqualification. This conduct would specifically cause statutory disqualification under 7 U.S.C 12(a)(2)(G) – making it unlawful to willfully made any materially false or misleading statement or omitted to state any material fact in such person's application; 7 U.S.C 12(a)(3)(G) – making it unlawful to omit material facts from any reports to the Commission; 7 U.S.C. 12(a)(3)(L) – having knowledge of the foregoing; 7 U.S.C. 12(a)(2)(h) and (b). Also the FAC alleges that HRF was subject to statutory disqualification[7] as it was denied membership as an FCM and then registered as an IB– see also 7  U.S.C. 12(a)(2)(b)

[ii] Cause of Expulsion

NFA also rehash their old argument from Troyer, where they won, based on a "negligence" standards of NFA Bylaw 301(a)(ii)(D). The argument is a non-sequitur as Plaintiffs never raised that rule in their Complaint, and did not allege any specific violation of NFA Bylaw 301(a)(ii)(d). Instead, as stated supra Plaintiffs  specifically alleged violations of other registration rules NFA Bylaw 301 (e) and also that NFA knowingly violated 7 U.S.C. 13 in not disclosing on the reports related to registration. NFA rehashed the Troyer argument, how NFA reached a "settlement" and that because there was a "settlement" they weren't actually "expelled" – and that there is a difference in being "effectively disbarred" by settlement versus withdrawal. But Plaintiffs Complaint in this action makes no specific reference to NFA Bylaw 301(a)(ii)(d), nor does it allege or fault NFA for whether Boshnack, Rothman and Felag were a cause of Vision's expulsion.

---

[7] The FAC uses the word disqualification and doesn't use the formal term statutory disqualification but they are intended to mean the same and this is inherently implied and consistent with the pleading.

Instead, unlike the Troyer case, in this case, Plaintiffs cite rogue participations **after** they were registered, and NFA's violations of the CEA for conduct that harmed Plaintiffs pursuant to NFA Bylaw 301€. The Conduct continues to pose a threat to harm other customers and members including Kumaran who remains an NFA member trader and all transaction forthcoming are subject to harm. NFA's violations of the rules for their continued conduct and registration. Therefore the whole Troyer argument is irrelevant in this case. NFA also misstate that the focus of the FAC is on NFA's *prior* disciplining of Vision. It is not. It is on the re-registration and future conduct of the individuals Boshnack, Rothman, Felag and HRF and their new entity VIA, which is subject to disqualification and this cause in Count 2. Therefore the "cause of expulsion" playbook argument is not even relevant in this case. This case also involves the ongoing unfair competition, and misuse of material non-public information NFA with VIA. (Again NFA's MTD is silent on VIA's registration)

[iii]  G&F Agreements were materially breached rendering them void

NFA misstates the allegations with  the G&F Agreement. Plaintiffs have alleged that NFA failed to enforce compliance of the G&F Agreements – specifically the provision that required Consents from customer  and did not permit fraudulent sales and solicitations under NFA Rule 2-29. By rewording the FAC, Plaintiffs After Vision was disbarred, any "agreement" that allowed Boshnack, Rothman and its entities to participate in the commodities futures markets and be registered had to remain in compliance with the laws of the CEA. In addition Boshnack and Rothman individually signed a Settlement Agreement under which conditions of their registration remained in compliance with the CEA. The NFA as the sole SRO, responsible for their compliance, had a statutory duty to ensure and enforce that any ongoing participation by  Boshnack, Rothman, HRF, Felag and later VIA, and their provision of terms under the G&F, complied with the CEA . (e.g. ¶182-¶187,) The FAC alleges that NFA failed to enforce the G&F Agreements compliance with the CEA, including but not limited to prior to September 2017. (Specifically the FAC alleges NFA failed to enforce the material customer disclosure provisions of the G&F. ¶152-¶153,¶175-¶180, ¶440-¶459, ¶464,¶469,¶474¶. Further the FAC also alleges NFA attempted to circumvent the provisions of the G&F by approving an "additional set of terms", in an ORSA, to end around or contract around the CEA to permit Boshnack, Rothman, Felag and HRF to act illegally.  As stated in Count 2, a condition of their registration was they would not pose a threat or cause harm to other customers or Members.

[iv] Diligence on Risk Management was not thorough

Finally NFA again misstate the allegations in the Complaint. Plaintiffs did not just assert issues on the qualification  of HRF risk management they specifically made allegations of violations related to ADMIS and its reports to the CFTC. In ¶, the FAC states NFA and Kadlec's 's conduct related to authorizing illegal conduct for ADMIS by knowingly submitting false information on the reports to the CFTC. related to HRF, Felag, Boshnack and Rothman. By the standards of disqualification, under 3.12. See e.g. § 3.12 (1) (i) states that the applicant **will not be permitted to engage in any activity requiring registration as an associated person until the applicant is registered as such** in accordance with this section;  and see also, § 3.12(1)(iii) states **that it is unlawful for the sponsor to make the certification required by this paragraph (c)(1)(iii) if the sponsor knew or should have known that any of that information is not accurate and complete**

These omissions would have led to disqualifications., On Page X NFA cites to *In re RBC Capital Markets, LLC/CFTC No19-47* to defend claims that if "NFA failed to perform due diligence on the risk management activities of High Ridge" does not matter as risk management does not apply to IB's.  But NFA completely missed the point and In re RBC Capital actually supports Plaintiffs charge and not NFA's. The facts pled in the FAC, are that Defendants failed to enforce the rules on ADMIS. Specifically they did not enforce NFA 2-26 (which has a ministerial and non-discretionary) standard for violations of CFTC Reg 1.11 and CFTC 1.55. (¶18 (c.), ¶272-306) on ADMIS

NFA 2-26 states Any Member or Associate who violates any of CFTC Regulations 1.11, 1.33, 1.55, 1.56, 1.57, 1.65, 155.3, or 155.4, as applicable, **shall** be deemed to have violated an NFA Requirement.

This rule uses the word "shall" and therefore invokes a ministerial and non-discretionary duty on the NFA to enforce the rules. On the disclosures of the risk activities to the CFTC. See *Iancu* ID

NFA and Kadlec wholly avoids the allegation wrong conduct here – because ¶280 also specifically applies to ADMIS. ADMIS is also an NFA Member, that NFA is required to enforce NFA 2-26 and CFTC/ Here the well-pled allegation is that NFA did not enforce or violated the ministerial rules of NFA 2-26, CFTC 1.11 and CFTC 1.15 on **ADMIS's** risk management and on the mandatory reports to the commissions. In fact the FAC states also that NFA, knowingly in concealing the reports to the CFTC under Reg 1.11 -Reg.1.14.

(viii)      Kadlec's and NFA's registration of VIA were also a violation of the bylaws

Finally the Defendants make no defense of the prohibited conduct and false reports related to the registration of Vision Investment Advisors. (¶666-¶679, They also do not defend any of the allegations

of unfair market competition, or use of Kumaran's trade secrets and material non-public information in ongoing direct participation.(¶63,¶86, ¶192-¶193,¶324-¶327,¶536,¶675-¶681.  Defendants failure once to dispute or defend or countenance in any aspect the unfair competition and direct unfair market competition which 7 U.S.C. 1 the purpose of the CEA protect, is fatal to NFA's defense. NFA's and Kadlec's total silence on VIA's competition is also telling.

For the foregoing reasons, Plaintiffs have adequately pled a cause of action for Count 2-Defendants' violation of the discretionary rules of the CEA. To the extent the Court determines that any of the allegations are not clear or could be better pled, Plaintiffs respectfully seek leave to replead. Plaintiffs believe the allegations are strong enough to survive a MTD.

## COUNT 13 – SECTION 22 CLAIM – ARBITRATION

Plaintiffs have also brought claims in Count 13 against Defendant NFA only for violations under 7  U.S.C. 25 (b) for violating their own rules and bylaws, to maintain a "fair "and "expeditious" arbitration. Because Plaintiffs are registered members of the NFA, upon registration, for the first two years of learning of a grievance, unless otherwise contracted, they must, and are compelled by statute at the NFA. Since that requirement is a "compulsory" requirement, Plaintiffs are also entitled to the fundamental fairness under the Federal Arbitration Act provides for parties that have to arbitrate their disputes. No party that is "forced" to arbitrate, should simultaneously be "forced" to arbitrate in an inherently unfair or tainted forum.

Plaintiffs rights to bring this claims are governed by congressional standard under 7 USC 25(b) which states  "A registered futures association that fails to enforce **any** bylaw or rule that is required under section 21 of this title". Congress and the intent of the statute was not to limit traders rights to one specific set of rules. Any as discussed supra is all expansive and includes all bylaw and rules under Section 21. Plaintiffs therefore do have a statutory right to invoke a violation 7 USC 21 (b)(10) and Article III(c) which mandate NFA "shall" provide a "fair", "expeditious" and "efficient" arbitration proceeding. Plaintiffs claims are not against the arbitrators (as was previously misconstrued) but its rights for engaging in a commercial transaction to pay for an arbitration, and NFA's obligations, and statutory obligations to uphold that end of the transaction. NFA's argument is to use their immunity as a shield, and then they should not be able to injure traders, with commercially unreasonable conduct. For instance, as paying members of the NFA, NFA could arbitrarily require a member to "wire $12,000 to a Board

members account" in order to testify. (See e.g ECF1). If that conduct was unlawful or not consistent with the FAA, NFA's argument is that they are free to engage in any and all illegal or auspicious or not-compliance conduct and use the ruse of "arbitral immunity". In this case Plaintiffs assert NFA was acting as a commercial entity, and charging fees for a proscribed service. NFA advertised that service as "fair and expeditious" and among other rules, a guarantee to appoint a panel within 30 days. Just as any commercial transaction, of a party pays fees for a service within a finite amount of time, the breaching party does not acquired the benefit of waiting a year, (why not two years, why not perpetually) and then not comply with their terms of the commercial deal. For this reason, since Plaintiffs are paying CTA's, and registered, they assert NFA failed to uphold its end of the commercial deal (as one would expect in any business transaction). NFA is also incorrect about "administrators" having the same immunity as arbitrators. Recent cases show that "administrators" in their commercial capacity can be held liable for not upholding their commercial end of the bargain.  The Court of Appeals for the Ninth Circuit recently issued an interesting decision on arbitral immunity. *Hopper v American Arbitration Association,* No.16-55573, (9th Cir. December 7, 2017). *Hopper* involved a doctor who took his arbitration claim to the AAA pursuant to a provision in his contract with Blue Cross. Hopper chose the AAA because it promised to provide 'neutrals.' However, Hopper subsequently sued for false advertising based on his allegation that the AAA could not guarantee neutrality, given that the arbitrators were independent contractors. The district court in California dismissed the case on the grounds of arbitral immunity. However, the Ninth Circuit reversed and remanded for further proceedings, stating that:

> Arbitral immunity extends to claims that arise out of a decisional act and exists to "protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Sacks v. Dietrich,* 663 F.3d 1065, 1069 (9th Cir. 2011) (citation omitted). But Hopper's false advertising claim is predicated on AMs descriptions of its arbitrators disseminated through its website and direct mail. Commercial advertisement, designed to sway individuals to choose AAA over its competitors- as Hopper alleges occurred here- is distinct and distant from the decisional act of an arbitrator. Therefore, adjudication of claims, like false advertising, that arise before a formal arbitration relationship between parties to arbitration, arbitrators, and arbitration companies like AAA will not lead to "undue influence" over the arbitration process, nor will it expose arbitrators' decisions to "reprisals by dissatisfied litigants."

Similarly here, Plaintiffs claims are not to do with the Arbitrators,  but action a even prior to the appointment in arbitrators, and inordinate delays. NFA promises and advertises *and by statute is mandate to provide its CTA members an "expeditious" and "fair" forum. Plaintiffs suffered additional

compounding damages for NFA's inability to provide an "expeditious" and "fair" forum. As for damages, as stated supra, Congress did not intend to limit a traders rights under Section 22 . It applies to "any" statute. Plaintiffs assert that as in any business and commercial arrangement, in their capacity as "administrators" the value of the transaction is inherent amount of the damages, and it was not the intent to have an exchange or SRO act in other commercial capacities and then not have any accountability whatsoever for breach of those commercial terms. They are essentially using the statute as way to intentionally procure mischievous conduct, to then clam no liability. In this case, that was an unintended consequence and Plaintiffs argue, that in a "business transactions" with the NFA in their role as administrators – a quasi contract applies, and the damages apply as in quasi-contract.(for their commercial role).

## SECTION B – OTHER LEGAL ARGUMENT

### I - Statute of Limitations Defense Fails for Section

As a first matter, **all** Defendants do not raise a motion to dismiss defense or objection to the statute on all other causes of action Counts 3 – 13 , and only pose an objection the statute of limitations for Counts 1 and 2. Therefore the Court need not entertain (and Plaintiffs do not respond to) any statute of limitations issues on all other causes of action Counts 3-13.

(i)     Discovery of the Fraud and Injurer was February 26, 2019

For Counts 1 and 2, Plaintiffs first argue that the statute of limitations from the date it first learned of the injury and the injurer. Plaintiffs have clearly alleged they only learned of NFA's involvement in the scheme on or around February, 26 2019. (e.g. ¶716). plaintiffs have alleged that while they learned that there were some violations of High Ridge that they uncovered on September 27, 2019, they were quick to do due diligence and request information on the NFA. (e.g. ¶614) However due to the NFA's own fraudulent concealment, and all Defendants withholding of information of all aspects of the fraud Plaintiffs had no knowledge (and could not have had knowledge as there was no public record) of the details of the activities or to identify who all the parties were. (¶ The FAC alleges that Plaintiffs asked again from the NFA about the their knowledge of the fraud in March 2018 and again their requests were not answered. (e.g.¶682)Therefore due to NFA's own fraudulent concealment did Plaintiffs by virtue of admissions by ADMIS in February 26, 2019 learn of NFA's involvement as a party to the fraud. (¶716) Therefore as a first matter Plaintiffs allege the clock for statute starts ticking when Plaintiffs learned of

the injury and the injurer as the NFA which was February 26, 2019. Since the Complaint was filed on May 8, 2020 this filing is more than within the two year statute of limitations.

The clock "does not run until a plaintiff discovers 'the injury *and the injurer*' ". Shak v. JPMorgan Chase & Co., 156 F. Supp. 3d 462, 474 (S.D.N.Y. 2016) *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.2012). Courts have characterized defendants as bearing a "heavy burden" on this point, because inquiry notice "exists only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered" the fraudulent conduct. *In re Crude Oil Commodity Futures Litig. ("In re Crude Oil")*, 913 F.Supp.2d 41, 59 (S.D.N.Y.2012) (quoting *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 194–95 (2d Cir.2003)). Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999). Shak v. JPMorgan Chase & Co., 156 F. Supp. 3d 462, 473–74 (S.D.N.Y. 2016) Clearly Plaintiffs uncovered NFA's role in the fraud on February 26, 2019 and therefore it is also a dispute in fact which cannot be resolved at the MTD Stage on which components of the fraud Plaintiffs should have learned and when.

### (ii)    Doctrine of Fraudulent Concealment

In the alternative Plaintiffs plead that the statute of limitation is tolled by the doctrine of fraudulent concealment.  The statute of limitations for a violation of the CEA may be tolled if a plaintiff can show fraudulent concealment of the violation by a defendant. *See In re Issuer Plaintiff Initial Public Offering Antitrust Litig.,* No. 00 Civ. 7804, 2004 WL 487222 (S.D.N.Y. Mar, 12, 2004); *In re Nine West Shoes Antitrust Litig.,* 80 F.Supp.2d 181 (S.D.N.Y.2000). The doctrine of fraudulent concealment serves to "prevent a defendant from 'concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.' " *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988) (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)). "[T]he purpose of the fraudulent-concealment doctrine is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect t.' " State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988) (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349 (1874)). A plaintiff demonstrates fraudulent concealment sufficient to toll the running of applicable statutes of limitations where "he establishes (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of

that cause of action until some point within [the time period set forth by the applicable statute of limitations] of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." Id. The element of concealment by the defendant may be proven "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." Id.

Under the doctrine of fraudulent concealment , the statute of limitations is equitably tolled if a plaintiff pleads (1) wrongful concealment by the defendant; (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period; and (3) due diligence in pursuing discovery of the claim. *Butala v. Agashiwala,* 916 F.Supp. 314, 319 (S.D.N.Y.1996).  The first element may be satisfied by showing that a defendant took "affirmative steps to prevent the discovery of the plaintiff's injury, or [that] the nature of the wrong itself may have been self-concealing." *Butala,* 916 F.Supp. at 319. Plaintiffs here have demonstrate they took active due diligence tofind the true nature of the fraud and instead **all** the Defendants all took affirmative steps to prevent Plaintiff from discovering the full nature of the fraud and their role in the scheme. The FAC alleges Defendants took affirmative steps to conceal their involvement from September 27, 2017 until Plaintiffs uncovered it on February26, 2019. These steps are indicated in e.g. ¶614, ¶634-628, ¶682, ¶714, ¶719-720, ¶721-731. In all communications with NFA and Kadlec, they all participated in the concealment. Further the FAC shows that Plaintiffs were diligent in making requests and even issuing subpoenas and therefore was not due to a lack of due diligence on Plaintiffs part. Therefore in the alternative, fraudulent concealment doctrine tolls the statute due to the Defendants own affirmative steps to delay Plaintiffs from learning of their role until February 26, 2019. Therefore the claims are brought timely. The fraudulent concealment doctrine may also be used to toll the limitations period for *non-fraud* claims only "where the plaintiff is able to establish that the defendant took affirmative steps beyond the allegedly wrongful activity itself to conceal her activity from the plaintiff." *SEC v. Gabelli,* 653 F.3d 49, 59–60 (2d Cir.2011).

(iii)    Plaintiffs invoke the Doctrine of Equitable Estoppel

Plaintiffs also invoke the tolling of the statute due to the doctrine of equitable estoppel due to the fraudulent concealment (supra) of all Defendants)

(iv)  Defendants case law is inapplicable

Finally, Defendants rest their entire proposition of a defense of statute of limitation on one single case *Levy vs. BASF.* That case is distinguishable here and noncomparable because in that prior case,

Plaintiff *Levy* had previously (about three years prior) filed a substantial class action on exactly the same subject matter in this district. During that prior litigation, Levy had ample opportunity to either do due diligence or research other Defendants, to bring her other claims. There, instead she waited another three (3) years to bring a second class action/litigation, on substantially similar facts but 3 years later. Unlike the Levy case, there is no "prior class action litigation", and Plaintffs have had no chance to do discvery. As stated above Plaintiffs exerted timely due diligence dating back to March 1, 2019 when they first issued a non-public FOIA request to learn of NFA's involvement in the fraud. (¶719-721) Based on the February 26, 2019 discovery of the injury, in any event, the statute does not toll until February 26, 2021 and this Complaint was filed timely on May 8, 2020. Plaintiffs notified NFA as promptly as April 4, 2019 of the likelihood of claims under 7 USC 25, and as alleged in the Complaint NFA by their actions, obstructed Plaintiff due diligence by among other things, refusing to comply with subpoenas. (¶719-731). Therefore the facts in this case on due diligence and discovery are also inapposite.

### (v.)    Fraud Claims Toll the Statute to Six (6) Years

In the alternative if the Court is to apply a Rule 9(b) for fraud standard to both Causes 1 and 2, for each and every violation of the CEA, which Plaintiffs have argued is not the intent of the Section 22 private rights of action and causes granted to traders for violations of the act, this would be first impression ruling,  (See Causes 1 and 2 defense infra). However this in turn obfuscates the statute of limitations. Courts have ruled that "Accordingly, the statute of limitations which should be applied to [] CEA claims is the six-year period provided by New York law, N.Y.CIV.PRAC.LAW §§ 213(2) 213(8), for actions based on breach of contract and on fraud . " *Fustok v. Conticommodity Services, Inc.*, 618 F. Supp. 1076, 1080 (S.D.N.Y. 1985). Specifically, if the Court is to overrule the CEA two year statute and involves fraud and because his CEA claims sound in fraud and breach of contract, the New York law prescribing a six-year statute of limitations applies. *See* N.Y.CIV.PRAC.LAW §§ 213(2) (contract) and 213(8) (fraud) (McKinney Supp. 1984)." *Fustok v. Conticommodity Services, Inc.*, 618 F. Supp. 1076, 1079 (S.D.N.Y. 1985)

### (vi)    Early dismissal is not permitted at this stage

The statute of limitations is an affirmative defense. Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999). Because the Complaint alleges a complex

series of steps taken across different time frames and to intentionally conceal activities there are questions of fact as to when Plaintiffs' claim arose.

**II – Rule 8 Defense** Defendants also move to dismiss under Rule 8. Plaintiffs argue that because of the specifics of the complaint combining both a RICO and Securities Fraud claims, which includes claims not only against a corporate CEO of ADMIS, who has individual and commercial claims in the private sector, but substantial regulatory law against a regulatory entity under Securities Law and Section 22. Courts have accepted different standard for pleadings under Securities Fraud and RICO claims, even when the pleadings are solely counselled. Therefore Plaintiffs argues that the defense raised by Defendants is not applied for RICO claims, and is being raised to have paragraphs removed from the complaints to reduce their own liability. For instance, while the complaint is long, no Defendant, has articulated one paragraph or one section that they believe is either redundant or irrelevant. Defendants point to no paragraphs or sections that contain duplicative material, and neither do they file a motion under 12(f) seeking leave to strike materials that are redundant. Since the Defendants cannot point to one paragraphs or do not cite to anything irrelevant in the Complaint, the Complaint has plausibly alleged the contours of the allegations for the Defendants to file their cohesive responses. Once the Defendants have been able to file a coherent response in a MTD, (and not identify any irrelevant paragraphs), it means the Complaint adequately put them on notice of the claims and the causes of action for them to respond to.  Further Courts in this district have provided justified under standards consistent with  RICO pleadings, as well as the fact the Complaint has to have the required specificity of fraud under Rule 9(b). The length is also needed to provide notice of each Defendant o the particular racketeering acts they are alleged to have committed.  the US. Government ***counselled* 132–page complaint** RICO pleadings were permitted and the court accepted and integrated a ***counselled* 70–page supplement** in order to determine that any "ambiguities" which the complaint alone should have made clear. Instead of refiling a Complaint, the court ruled that it granted Plaintiff leave to submit a Supplemental Exhibit and founds that the newer 70 Page exhibit document also integrated with the 132 page Complaint, satisfies Rule 8(a) with respect to providing notice to each defendant of the particular racketeering acts he is alleged to have committed. United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1130 (E.D.N.Y. 1992) There are other RICO pleadings (counselled) with multiple Defendants that have permitted more lengthy complaints.

In a **counseled Plaintiffs' 175–page, 862–paragraph RICO complaint**, plaintiff In Touch Concepts, Inc. ("Zcom") brought a multi-party action against defendants. The Court accepted complaint given the history in the proceeding. <u>In Touch Concepts, Inc. v. Cellco P'ship</u>, 949 F. Supp. 2d 447, 452 (S.D.N.Y. 2013), <u>aff'd,</u> 788 F.3d 98 (2d Cir. 2015), and <u>aff'd,</u> 788 F.3d 98 (2d Cir. 2015). In this case, Plaintiff *Pro-Se* has thirteen (13) Defendants, located across multiple states and with numerous affiliates. The Complaint spans a time span of close to 6 years of activities – and the complaint together with causes of action are 149 pages. The Complaint detail length is 101 pages and 48 pages of causes of action bringing it at a total of about 149 pages within consistent with detailed fraud 9(b), securities fraud 10(b), and RICO claims.  Court notes the prolixity of the complaint and that set forward the fraudulent conduct that forms the basis of plaintiffs' allegations in a **counselled** 99–page, 14–cause–of–action, 307–paragraph complaint cluttered with boilerplate legalese. Pahmer v. Greenberg, 926 F. Supp. 287, 294 (E.D.N.Y. 1996), aff'd sub nom. Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997)

The case at hands has been expanded (in response to criticism by Defendants) that insufficient detail of the fraud claims was included in the FAC, and now includes detailed documentation of predicate acts of RICO violations, given the consistent standards of RICO Claims, and Securities 10(b) and Rule 9(b) fraud claims, and the seriousness of the allegations, the Complaint is of  similar length (currently about 149 pages with detailed times and dates) and more than fairly puts Defendants on notice of the Claims. Therefore Plaintiffs respectfully move the Court to accept a longer Complaint. *See In re Global Crossing Ltd. Securities Litigation,* 313 F. Supp. 2d 189 (S.D.N.Y. 2003) it was understandable Plaintiffs aired on side of caution to include additional detail to avoid dismissal under Rule 9b.

Aside from the RICO component which adds significant complexity to the Complaint, Plaintiffs complaint also embodies Securities Fraud under the equivalent of Rule 10(b). Plaintiffs requests is further supported by law, since the amended complaint, is governed by similar fraud statutes of fraud under Section 10(b) of Securities fraud, RICO and the Rule 9(b) fraud standards and is being pled against a thirteen separate Defendants, across multiple states and a five year timeline and therefore must be pled with additional detail and care. Similarly, in one of two notable rulings on this subject in In re Parmalat Securities Litigation, 375 F. Supp. 2d 278 (S.D.N.Y. 2005). the Court expressed its "substantial

sympathy" with the plight of the defendants, who were faced with responding to a complaint of "**368 pages and 1,249 paragraphs**" and observed that the "requirement of pleading fraud with particularity does not justify a complaint longer than some of the greatest works of literature." *Id.* at 311. The court nonetheless declined to hold that the complaint failed to comply with Rule 8, on the ground that the complaint did not "overwhelm the defendants' ability to understand or to mount a defense." *Id.* (internal quotation marks omitted); *see also In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1142, 1146 (C.D. Cal. 2002) (refusing to hold lengthy complaint violated Rule 8 because it was "not so opaque as to defy understanding"). Likewise, the court in *In re Global Crossing Ltd. Securities Litigation,* 313 F. Supp. 2d 189 (S.D.N.Y. 2003) held that a securities fraud complaint containing **840 separate paragraphs and spanning 326 page**s—which the court described as an "enormous mountain" of a pleading—complied with Rule 8  *Id.* at 211, 212. According to the court, given the nature of the alleged fraud and the particularity requirement of Rule 9(b), it was understandable for plaintiffs to have "erred on the side of detail and prolixity." . *Id.* at 212.The court added that "[a] motion to dismiss is a vehicle for testing the legal sufficiency of plaintiffs' claims, and not a device for editing their prose." *Id.*

Other courts have pursued similar reasoning, even while expressing dismay at the size of the complaints before them. In Geinko v. Padda,  No. 00-C-5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002, for example, the court rejected the contention that a **counselled 386-page** complaint ran afoul of Rule 8, reasoning that "[w]hile Plaintiffs may have attached superfluous and irrelevant matter to their Amended Complaint," the complaint was "not an unwieldy, 'puzzle-style' complaint" and "clearly delineates the charges they allege against each individual defendant." *Id.* at *3. *In re Williams Securities Litigation* 339 F. Supp. 2d 1242 (N.D. Okla. 2003), exemplifies the reasoning of courts that have sustained prolix complaints under Rule 8. In upholding a complaint asserting Section 10(b) claims,[8] the court reasoned that, even though the complaint "arguably may lack clarity in some respects due to the number of parties and the sheer volume of information," nonetheless "one can discern from the Complaint what causes of action are asserted against each Defendant and the alleged factual basis for each of these causes of

---

[88] Section 10(b) of the Securities Exchange Act of 1934 [15 USC § 78j(b)] provides that: ... To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. In the CEA, the equivalent Statute under which claims are brought is 7 USC  §  6(b).

action." *Id. at 1261*. The court cited *Conley v. Gibson* in support of its ruling, reading that case to stand for the proposition that "a plaintiff has complied with the federal rules 'if the defendant has fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *In re Williams*, 339 F. Supp. 2d at 1261 (quoting *Conley*, 355 U.S. at 47); [9]. Here no Defendant has used the word "opaque" or "unintelligible. Plaintiffs also erred on the side of caution given the extraordinary history of this case, where it was dismissed with prejudice because plaintiffs **did not plead enough facts.** Therefore given the specific facts and history of the case, Plaintiffs aired on the side of caution to make sure there would be no ambiguity in the jurisdiction and the merits (plausibility) of fraud in the case.

Without deletion of material facts from the Complaint, that are necessary to distinguish the allegations for Kadlec, and the history of the scheme, it would be difficult to eliminate substantive facts. Court declined to dismiss the complaint under Rule 8 after 99 page complaint and considered Defendants' substantive motions to dismiss. Pahmer v. Greenberg, 926 F. Supp. 287, 294 (E.D.N.Y. 1996), aff'd sub nom. Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) As further support Plaintiffs point to two RICO Complaints, *16-CV- 01465* (See Allstate vs. Albramov. et al) at **397 pages** and *18-cv-13336* (*Allstate et al vs. Mercialy*) at **297 pages** which were accepted by the Court, with detailed dates and times.

Extensivity of the Complaint - also contains similar heightened pleadings, and covers allegations dating back to 2014 and until 2020 of six years of conduct, including references to background conduct of Vision, the entity that was disbarred dating back to 2011. Given the extensive briefing on the motion for reconsideration, and the significant number of regulatory statutes cited, the related cases 20-CV-3871 and 20-CV-3873, having this Court adjudicate this case properly on the merits once, against a registered futures association who is alleged to have participated in the fraud, including thorough application of the regulatory statutes, it will greatly relieve burden in the long run, on all parties including all Defendants.

Finally Plaintiff asserts that since the Complaint was mostly filed by a Pro-Se litigant, additional lenience is respectfully requested, given not only the RICO filing (where counselled pleadings comparatively above have **exceeded 300 pages**), but also the length was needed because of the extensive regulatory statutes in Federal law that were included. Plaintiffs may have unwittingly copied the statutes into the Complaint which also added length, but they do not harm or distract the Defendant from having

---

[9] *see also In re Nat'l Century Fin. Enters., Inc., Invest. Litig.*, No. 2:03-MD-1565, 2006 WL 469468, at *10 (S.D. Ohio Feb. 27, 2006) (rejecting Rule 8 argument and citing *Conley*)

notice of the FAC. They were included to ensure the Court had clear guidance on the serious allegations under which rule. They were intended to add clarity and help the Court resolve the case on the merits.

### III – Incorrect and Disputed Facts

In addition Defendants claim includes multiple statements of disputed facts where they attempt to change the narrative of the claims. For instance without limitation, they repeatedly impute the fraud to just ADMIS and High Ridge. However the facts actually alleged that Independent Broker Trey Lazzara was a key participant in the fraud, and multiple compliance laws under 7 USC 21 were not enforced on the Introducing Broker soliciting and carrying the account. The IB is subject to his own laws of ethics and compliance that the NFA is supposed to enforce – including but not limited to the fraudulent sales and solicitations, carefully pled by Lazzara (¶576-¶612) For purposes of this Complaint against NFA, details of each participant in the scheme may not need to be described, but the court should note carefully NFA's continued silence on the well -pled allegations on the underlying fraud, pled against LCI, and NFA's failure to enforce the laws on Lazzara. At the pleading stage in a MTD, the Court is not permitted to accept NFA's version of facts as to who committed the fraud as true and all factual allegations should be in favor of Plaintiffs. Therefore Plaintiff documents a list of multiple statements of disputed facts that NFA have included in their brief that the Court should not rely on. (**See Exhibit 5**)

Further NFA uses its brief to point to a decades old lawsuit on a copyright case. After 20 years of running a business since 1993 there was only one case they could find. There have been no cases ever brought against Plaintiffs. On the other hand, this case is overlooks the real perpetrators – guys with 100 violations. Plaintiffs object to the use of a decades old lawsuit for a company that is not even a party to this case and request that it be removed under Rule 12(f) as it is not just irrelevant it is used to distract from the metrics of the case. NFA have not shown why the case is relevant as it is one single 10 year old case. The case is not relevant to the matter at hand, as it was in 2011 before the DTSA and does not rely on recent law. It is also a software license case.  NFA Defendants are also more concerned about pages, than they are about Boshack 172 CFTC reparations and CEA violations. In summary NFA's ad hominem attacks serve on purpose – to poison the Court against Pro-Se Plaintiffs and hope the Court doesn't look at the facts of this case. I believe though that the facts and law are on our side in this case. Its not about pages. Its about actually enforcing the Commodities Exchange Act – a job the NFA seems to not care about doing.

Mem 2 Opp NFA, Page 49

## IV – Aiding and Abetting Claims

Finally Plaintiffs incorporate by reference the arguments raised in the State Law claims for claims made for aiding and abetting (Counts 4 and Counts 8) under the CEA. Section 22(b) (1) of the CEA creates liability for "[a]ny person ... who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter...." "Generally stated, to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513, 531 (S.D.N.Y. 2008), aff'd, 730 F.3d 170 (2d Cir. 2013), aff'd, 730 F.3d 170 (2d Cir. 2013) Specifically and without limitation 7 U.S.C. 25(b) also provides a private right of action to traders (Plaintiffs) for aiding and abetting.

## V – All Other State Law Claims

Plaintiffs have filed all other state law claims not subject to this Section 22 act in the State Law filing and incorporate by reference. This was to avoid duplication of the CEA claims from the state law claims as Kadlec is a common party to both claims.

## VI – Motion to Replead

Plaintiffs believe they have adequately pled a cause of action for each of the Claims under Section 22 of the Commodities Exchange Act against all Defendants in Causes 1,2 and 13. To the extent the Court deems any of the allegations insufficient or unclear, Plaintiffs hereby respectfully seek leave to replead them and to amend the Complaint. For the foregoing reasons, Plaintiffs claims under Section 22 of the Commodities Exchange Act counts 1, 2 and 13 should not be dismissed as they all state a valid cause of action.


Respectfully submitted
//SSK//                                        //BMA//
Samantha Siva Kumaran                          Brian M. August
                                               August Law
                                               100 Willoughby Street #9E
                                               Brooklyn NY 11201

                                               *Counsel* for NRCM