# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SAMANTHA SIVA KUMARAN, *et al.,*    )
        Plaintiffs/Petitioners,    )
                              )
v.                              )     Case No. 1:20-cv-03668-GHW-SDA
                              )
NATIONAL FUTURES ASSOCIATION, *et al.*,  )
        Defendants.           )

## REPLY IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS NATIONAL FUTURES ASSOCIATION, VILIA SUTKUS-KIELA, AND NICOLE WAHLS

Zachary C. Schauf
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
ZSchauf@jenner.com
*Admitted pro hac vice*

Gregory M. Boyle
 *Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Admitted pro hac vice*

*Counsel for National Futures Association*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................1

I.      The FAC Falls Far Short Of Rule 8 And Rule 9's Standards. ..............................2

II.     Plaintiffs' Damages Claims Must Be Dismissed ................................................5

        A.      Plaintiffs Have Not Plausibly Pled The Central Premise Underlying Their
                Claims. ...................................................................................................6

        B.      Plaintiffs' Claims Under The CEA Must Be Dismissed...........................7

                1.      The Statute of Limitations Has Run on Counts 1 and 2. ............7

                2.      Counts 1 and 2 Fail to State a Claim.........................................9

                        i.      Counts 1 and 2 do not plead NFA failed to enforce any bylaw
                                or rule. .........................................................................9

                        ii.     Counts 1 and 2 do not plead Section 22 damages.........................10

                        iii.    Counts 1 and 2 do not plead that bad-faith conduct by NFA
                                caused Plaintiffs' losses. .............................................11

                                a.      Counts 1 and 2 do not plead an ulterior motive. ...............12

                                b.      Counts 1 and 2 do not plead that NFA knew of the
                                        violation of any rule whose nonenforcement caused
                                        Plaintiffs' harm. ...............................................12

                                c.      *Bosco* cannot help Plaintiffs avoid dismissal....................14

                3.      Count 13 Fails to State a Claim. ..............................................17

        C.      Absolute Immunity Bars All The Non-CEA Damages Claims. ............................18

        D.      Plaintiffs' State-Law Claims Fail On The Merits. ................................21

III.    Plaintiffs Waived Any Claim For Injunctive Relief. ..........................................24

IV.     Plaintiffs Are Not Entitled To Replead.............................................................25

CONCLUSION....................................................................................................................25

CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ..............................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................5, 14

*Austern v. Chicago Board Options Exchange, Inc.*, 898 F.2d 882 (2d Cir. 1990) ........19

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) ..................................................23

*Bosco v. Serhant*, 836 F.2d 271 (7th Cir. 1987) ..........................................13, 14, 16, 17

*Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986)...........................12, 15

*Buhannic v. American Arbitration Ass'n*, No. 18 CIV. 2430, 2019 WL 4735005
(S.D.N.Y. Sept. 27, 2019) ....................................................................................19, 20

*Chevron Corp. v. Donziger*, No. 11 CIV. 0691, 2013 WL 4045326 (S.D.N.Y. Aug.
9, 2013) .....................................................................................................................8, 18

*City of Providence v. Bats Global Markets, Inc.*, 878 F.3d 36 (2d Cir. 2017) ........ 18-19

*DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 265 F. Supp. 2d 254
(S.D.N.Y. 2003) ..............................................................................................................12

*Drake v. Laboratory Corp. of American Holdings*, No. 02CV1924, 2007 WL
776818 (E.D.N.Y. Mar. 13, 2007), *aff'd*, 417 F. App'x 84 (2d Cir. 2011) .............24

*Effex Capital, LLC v. National Futures Ass'n*, 933 F.3d 882 (7th Cir. 2019), *cert.
denied*, 140 S. Ct. 1122 (2020) .................................................................................20, 21

*Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540, 2018 WL 557906
(S.D.N.Y. Jan. 23, 2018)..............................................................................................23

*Global Gold Mining, LLC v. Robinson*, 533 F. Supp. 2d 442 (S.D.N.Y. 2008)...........20

*Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999)..............................................25

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...........................3

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)........................................................13

*Hopper v. American Arbitration Ass'n*, 708 F. App'x 373 (9th Cir. 2017)....................20

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .....................................................................18

*Imbruce v. American Arbitration Ass'n*, No. 15 CIV. 7508, 2016 WL 5339551 (S.D.N.Y. Sept. 23, 2016) ...................................................................................19

*In Touch Concepts, Inc. v. Cellco Partnership*, 949 F. Supp. 2d 447 (S.D.N.Y. 2013), *aff'd*, 788 F.3d 98 (2d Cir. 2015).................................................................2

*Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56 (2d Cir. 2016) ..............................3, 4

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)........................................................24

*Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255 (2d Cir. 2006) ...............................................................................................10, 11, 18

*Koch v. Christie's International PLC*, 699 F.3d 141 (2d Cir. 2012) ..............................................8

*Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345, 2021 WL 797113 (Feb. 26, 2011), *appeal docketed*, No. 21-798 (2d Cir. Mar. 29, 2021) ...................23

*Land v. Forgione*, 177 A.D.3d 862 (N.Y. App. Div. 2019)..........................................................22

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ......................................................21, 22

*Levy v. BASF Metals Ltd.*, 917 F.3d 106 (2d Cir. 2019)..........................................................7, 8

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018) ...............................................................................9

*Markowits v. Friedman*, 144 A.D.3d 993 (N.Y. App. Div. 2016).................................................22

*Matsumura v. Benihana National Corp.*, 542 F. Supp. 2d 245 (S.D.N.Y. 2008).......................3, 4

*In re Natural Gas*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ...........................................................11

*New England Cleaning Services, Inc. v. American Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999) ...............................................................................................19

*New Majority Holdings, LLC v. Ghaida*, No. 11 CIV. 8813, 2012 WL 4741950 (S.D.N.Y. Oct. 3, 2012) ...........................................................................................24

*Newcomb v. American Arbitration Ass'n*, No. 13 CIV. 2468, 2014 WL 352826 (S.D.N.Y. Jan. 13, 2014)..........................................................................................19

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)....................................................................................18

*In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781 (3d Cir. 1999) .........................................................................................................24

*Pahmer v. Greenberg*, 926 F. Supp. 287 (E.D.N.Y. 1996), *aff'd sub nom. Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ...................................................................2, 3

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ............................................8

*In re Platinum & Palladium Antitrust Litigation*, 449 F. Supp. 3d 290 (S.D.N.Y. 2020) ......................................................................................................................18

*Rich v. New York Stock Exchange*, 522 F.2d 153 (2d Cir. 1975) ...............................16

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774 (2d Cir. 1984) ..........................................................................................................15

*Sejin Precision Industry Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542 (S.D.N.Y. 2016) .......................................................................................................................8

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462 (S.D.N.Y. 2016) .......................8

*Silvercreek Management, Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428 (S.D.N.Y. 2017) ................................................................................................................... 6-7

*Song v. Yao Brothers Group LP*, No. 10 CIV. 04157, 2013 WL 12109109 (S.D.N.Y. July 30, 2013), *aff'd*, 570 F. App'x 59 (2d Cir. 2014)..................... 12-13

*Troyer v. National Futures Ass'n*, 981 F.3d 612 (7th Cir. 2020) .................................10

*Troyer v. National Futures Ass'n*, No. 16-CV-00146, 2019 WL 4695524 (N.D. Ind. Sept. 26, 2019), *aff'd on other grounds*, 981 F.3d 612 (7th Cir. 2020)..................15

*United States v. Hernandez*, 894 F.3d 496 (2d Cir. 2018) ...........................................15

*United States v. Nektalov*, 461 F.3d 309 (2d Cir. 2006) .............................................22

*United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114 (E.D.N.Y. 1992)........................................................................................2

*United States v. Santos*, 553 U.S. 507 (2008) .............................................................16

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005) .................................15

*Western Capital Design, LLC v. New York Mercantile Exchange*, 25 F. App'x 63 (2d Cir. 2002)......................................................................................................11, 12

*In re Weatherford International Securities Litigation*, No. 11CIV1646, 2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013) .................................................................25

*Wood ex rel. United States v. Applied Research Associates, Inc.*, 328 F. App'x 744 (2d Cir. 2009)..........................................................................................................4

*Zamora v. FIT International Group Corp.*, 834 F. App'x 622 (2d Cir. 2020) ..............23

**STATUTES**

7 U.S.C. § 21(b)(10) ........................................................................17

7 U.S.C. § 25(b)(4) ....................................................................15, 16

7 U.S.C. § 25(c) ............................................................................7

28 U.S.C. § 2680(a) ........................................................................16

**OTHER AUTHORITIES**

*Black's Law Dictionary* (5th ed. 1979) ........................................16

Fed. R. Civ. P. 8(a) ........................................................................5

Fed. R. Civ. P. 9(b) ....................................................................5, 21

# INTRODUCTION

In their motion to dismiss, Defendants National Futures Association ("NFA"), Vilia Sutkus-Kiela, and Nicole Wahls demonstrated that Plaintiffs have utterly failed to plead any facts plausibly suggesting that NFA[1] is liable for the alleged wrongdoing of ADM Investor Securities ("ADMIS"), High Ridge Futures LLC ("High Ridge"), or Trey Lazzara. In response, Plaintiffs Samantha Kumaran and Nefertiti Risk Capital Management ("NRCM") have filed a labyrinthine set of briefs in opposition. Those briefs, however, only highlight their complaint's deficiencies. Plaintiffs have no adequate justification for their First Amended Complaint ("FAC")'s violations of basic pleading standards under both Rule 8 and Rule 9(b). Nor do Plaintiffs identify any allegations that state a claim under Section 22 of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25. Meanwhile, the CEA preempts—and absolute and arbitral immunity bar—Plaintiffs' remaining claims. Plaintiffs fail with their attempts to evade these clear legal rules barring their deficient state-law causes of action.

The Court should dismiss with prejudice. As NFA noted in its motion to dismiss, "Kumaran is a serial litigant with a long history of filing meritless complaints much like this one." ECF No. 74, at 1 ("Mot."). She has doubled down here with a set of equally misdirected arguments and meritless briefs that violate this Court's rules and orders. Kumaran now lacks even her prior excuse of *pro se* status, as she files jointly with counsel. Dismissal with prejudice is warranted here.

# ARGUMENT

Plaintiffs' opposition briefs add nothing that can save the FAC, and this case, from dismissal. They do not cure the FAC's failure to meet Rule 8 and Rule 9(b)'s standards. They cannot change that Plaintiffs' CEA causes of action are time-barred and do not plead any element

---

[1] Defendants use "NFA" to refer collectively to NFA, Sutkus-Kiela, and Wahls.

of a CEA claim. They cannot avoid that absolute immunity and preemption bar Plaintiffs' state-law claims, or that those state-law claims also fail on the merits. And Plaintiffs do not even attempt to salvage a claim for injunctive relief. Because Plaintiffs do not explain how they could possibly overcome the FAC's deficiencies, the Court should dismiss with prejudice.[2]

## I. The FAC Falls Far Short Of Rule 8 And Rule 9's Standards.

NFA showed in its initial brief that the FAC violates both Rule 8 and Rule 9(b). Mot. at 8-11. Plaintiffs' responses lack merit.

***Rule 8***. The FAC, at 186 pages and over 1,000 meandering and repetitive paragraphs, violates Rule 8's "short and plain statement" requirement. Fed. R. Civ. P. 8(a). The Court has the power to, and should, dismiss the case with prejudice on this basis alone. Mot. 8-9. Plaintiffs principally respond by pointing to other cases that courts did not dismiss. ECF No. 106, at 44-48 ("CEA Br."). But the decisions Plaintiffs cite often involve completely different circumstances— for example, that the defendants had never moved to dismiss under Rule 8, or the court had already required the plaintiff to cure Rule 8 defects. And, indeed, these cases confirm that courts can, and do, dismiss complaints as prolix as the FAC.[3] None of these decisions, moreover, involve a similar attempt to incorporate by reference hundreds of pages in additional allegations from pleadings filed in other cases, as the FAC seeks to do with Plaintiffs' lawsuits against ADMIS and Vision. Mot. 9. True, NFA has made enough sense of Plaintiffs' convoluted FAC to identify its patent

---

[2] Wahls and Sutkus-Kiela are sued for actions taken in their roles as NFA employees. FAC ¶¶ 37-41. Plaintiffs' claims against them fail for the same reasons they fail against NFA. Contrary to Plaintiffs' assertions, CEA Br. 15-16, NFA has not "waived" their defenses, and has responded to those allegations concerning them, *see* Mot. 5-6, 18.

[3] *E.g.*, *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 452 (S.D.N.Y. 2013) ("But for the procedural history of this case, the Court would exercise its authority to dismiss this prolix pleading."), *aff'd*, 788 F.3d 98 (2d Cir. 2015); *Pahmer v. Greenberg*, 926 F. Supp. 287, 294 n.2 (E.D.N.Y. 1996) ("Although defendants have not moved to dismiss plaintiffs' complaint under Rule 8, the Court notes that dismissal of the complaint under Rule 8 might be warranted."), *aff'd sub nom. Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997); *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1130 (E.D.N.Y. 1992) (treating supplementary document curing Rule 8 defects, filed "in response to a directive from this court," as "a 'more definite statement' under" Rule 12(e)).

legal defects, and has "been able to file a coherent response in a MTD." CEA Br. 44. But that hardly excuses Plaintiffs' violation of Rule 8's requirement of a "short and plain statement."

Plaintiffs also assert that the FAC *had to be* 1,000 paragraphs in order to plead their RICO and other fraud claims. *Id.* at 45-46. But as one of their own cited cases illustrates, pleading more complex claims does not justify overlong or confusing complaints. *Pahmer v. Greenberg*, 926 F. Supp. 287, 294 n.2 (E.D.N.Y. 1996) ("The fact that plaintiffs assert five RICO claims does not justify their verbose complaint."), *aff'd sub nom. Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997).

***Rule 9.*** Plaintiffs' claims must satisfy Rule 9(b) because they sound in fraud. Mot. 9-11. Plaintiffs conflate Rule 9(b)'s requirements with the substantive standards for pleading bad faith under the CEA, arguing that the Court must examine each NFA or CFTC rule that was supposedly violated to determine whether it is discretionary or not before deciding whether Rule 9(b) applies. CEA Br. 18-19. Not so. Rather, "where 'the wording and imputations of the complaint are classically associated with fraud,' Rule 9(b) governs any non-fraud claim that the plaintiffs have made 'little, if any, effort to differentiate' from the fraud allegations upon which the action is predicated." *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (citation omitted). Each of NFA's alleged wrongs stem from the central allegations that ADMIS, Vision, and others purportedly committed fraud with NFA's help. *See, e.g.*, FAC ¶¶ 215, 231, 698. Those allegations, then, must be pled with particularity, as even Plaintiffs' own cases recognize. *E.g.*, *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("underlying acts of fraud" in conspiracy claim subject to Rule 9(b)). The FAC fails to do so. *See Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016) (describing standards).

1. The FAC generally fails to plead that NFA made any specific misrepresentations or omissions. Mot. 10. And the few misrepresentations or omissions that Plaintiffs attempt to identify

in the FAC, *see* ECF No. 100-3, do not yield a "strong inference" of fraudulent intent. *Jus Punjabi*, 640 F. App'x at 58. To satisfy Rule 9(b), Plaintiffs must either demonstrate "motive and opportunity" or plead a "strong" circumstantial case for recklessness or conscious misbehavior. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). And the inference of fraudulent intent must be "as compelling as any opposing inference one could draw from the facts alleged." *Matsumura*, 542 F. Supp. 2d at 255. Plaintiffs' only intent allegations—that NFA wanted more members and fees at all costs, Mot. 14—certainly flunk these standards.[4]

2. As NFA has noted, plaintiffs cannot "lump separate defendants together in vague and collective fraud allegations." Mot. 10. Plaintiffs provide no defense of the FAC's constant lumping together of the various defendants, merely denying they did so for a few statements among the FAC's thousand paragraphs. ECF No. 107, at 35-36 ("State Law Br."); *see* Mot. 10 nn.7-8 (noting same standard applies under Rules 8 and 9 and listing scores of instances of lumping); *see also, e.g.*, FAC ¶¶ 393-394 (claiming "Defendants" fraudulently failed to disclose oral risk agreement). This is reason enough to dismiss the case. Nor can Plaintiffs rely on group pleading, State Law Br. 35-36, when NFA's alleged role and duties were so different from ADMIS's.

3. The FAC provides nothing but "speculation and conclusory allegations" that NFA knew of ADMIS and High Ridge's alleged fraud. *Wood ex rel. United States v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009); *see* Mot. 11. Plaintiffs' claims all depend on this central idea, and their failure to plead knowledge undermines their entire case. *See infra* 6-7.

4. Finally, as NFA explained in its opening memorandum, "allegations of fraud are not

---

[4] Plaintiffs also assert that NFA staffers induced them into arbitration to conceal NFA's participation in fraud. FAC ¶¶ 979-981. But the facts stated in the FAC more plausibly suggest that NFA followed up on Kumaran's September 2017 complaints, FAC ¶¶ 637-639, closed its investigation in March 2018 having failed to find circumstances supporting further action by NFA, FAC ¶ 685, and thus told Kumaran that she could only continue pursuing her complaints via arbitration.

supposed to be pled upon information and belief." Mot. 11. Again, Plaintiffs fail to defend themselves, except to claim that fourteen statements in the FAC do not rely upon information-and-belief pleading. State Law Br. 36-37. But Plaintiffs' allegations based on information and belief include *key* allegations for their claims, including—among other things—allegations about parties' motives to commit fraud, FAC ¶ 133; their motives to enter into the alleged oral risk agreement, FAC ¶ 254; Wahls' and Sutkus-Kiela's supposed "check-the-box" audits or failures to audit, FAC ¶¶ 428, 622; the object of the fraud, FAC ¶ 602; and the resulting harm to Kumaran, *id.* These allegations cannot satisfy Rule 9(b).

## II. Plaintiffs' Damages Claims Must Be Dismissed

The FAC also fails to state a claim for damages. Section 22 of the CEA provides the only cause of action that Congress authorized against NFA for its actions as a self-regulatory organization ("SRO"). Plaintiffs' Section 22 claims are largely time-barred and entirely meritless. Absolute immunity bars all of Plaintiffs' other causes of action, which also fail to state a claim.

In addressing Plaintiffs' arguments, NFA follows Rule 8 and Rule 9(b). Under Rule 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). NFA thus accepts as true any "well-pleaded facts" alleged in the FAC. *Id.* at 679. To be well-pled, however, Plaintiffs' allegations must comply with *Iqbal*'s standards—and allegations sounding in fraud must also satisfy Rule 9(b). Thus, in assessing whether Plaintiffs have pled their claims, NFA ignores (as this Court must) "conclusory statements" of fact or "legal conclusions," *id.* at 678, as well as allegations that fail to plead fraud with particularity, Fed. R. Civ. P. 9(b).

Plaintiffs often (and incorrectly) assert that, because NFA did not contest certain allegations in the FAC, it "admits" those things to be true. E.g., CEA Br. 8, 21; State Law Br. 12. Because this is a motion to dismiss, NFA accepts as true any non-conclusory factual allegations in

the FAC; NFA need not accept conclusions of law or conclusory allegations of fact. But many of Plaintiffs' allegations (factual and legal, conclusory or otherwise) are simply irrelevant to NFA's defenses. For instance, whether the alleged oral agreement or its supposed illegality have been plausibly pleaded makes no difference, because Plaintiffs have not plausibly alleged NFA knew about the agreement. That NFA therefore had no need to respond to these allegations does not mean NFA "admits" them to be true. Nor has NFA "admit[ted]" that ADMIS and High Ridge committed alleged legal violations about which NFA is not plausibly alleged to have knowledge and therefore has no reason to address. E.g., CEA Br. 5.

### A. Plaintiffs Have Not Plausibly Pled The Central Premise Underlying Their Claims.

As NFA has explained, Plaintiffs' claims rely on assertions that NFA staff knew about ADMIS's supposed oral agreement with High Ridge. Mot. 5, 17. Plaintiffs' opposition briefs draw deeply from this same well, basing most of their fraud allegations on the claim that NFA knew ADMIS and High Ridge had an illegal oral arrangement and did not stop it (or even approved it). *See* CEA Br. 3-4, 16, 31, 33, 36; State Law Br. 2, 6, 8-9, 15-16, 21, 23-24, 28, 37, 43-44, 55, 57-58, 66; ECF No. 108-3, at 4, 11, 13-16; ECF No. 108-4, at 2-3. Indeed, Plaintiffs call this assertion "the heart of" their CEA "cause of action," and "[t]he crux of this case." CEA Br. 3-4.

Yet the FAC provides nothing but conclusory assertions that NFA knew of this agreement (much less its illegal aspects). Mot. 17; *see, e.g.*, FAC ¶¶ 17, 268-275, 312, 317, 363, 416, 486, 529. Likewise, Plaintiffs provide only conclusory allegations that Sutkus-Kiela and Wahls knew about and "approved" the supposed oral agreement during their audits. FAC ¶¶ 328, 431-35. "While knowledge and intent 'may be alleged generally,' under the pleading standard of Federal Rule of Civil Procedure 9(b), a court 'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations.'" *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 438

(S.D.N.Y. 2017).

Plaintiffs' only non-conclusory knowledge allegation is their claim that ADMIS and Vision admitted NFA's knowledge in related litigation. FAC ¶¶ 138, 449. But as NFA has shown, Mot. 17, and as Plaintiffs' briefs fail to contradict, ADMIS and Vision only said that NFA knew about the written Guarantee & Fee Agreement—not about any oral risk services agreement, much less allegedly illegal provisions in such an agreement. Plaintiffs do not claim that the written agreement is illegal. Stripped of their conclusory knowledge allegations, Plaintiffs' claims collapse.

### B. Plaintiffs' Claims Under The CEA Must Be Dismissed.

Neither Plaintiffs' failure-to-enforce counts nor their arbitration count state CEA claims.

### 1. The Statute of Limitations Has Run on Counts 1 and 2.

Counts 1 and 2 are time-barred. As NFA noted in its motion, Mot. 12, CEA claims must be brought within two years of discovery, 7 U.S.C. § 25(c). And it "is 'discovery of the injury, not discovery of the other elements …,' that 'starts the clock.'" *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019). Plaintiffs discovered their injuries no later than September 2017, when Kumaran discovered that "unauthorized access had been given to [NRCM's] account to third parties, Vision's owners and affiliates." FAC ¶ 607. But Plaintiffs did not file their first complaint until May 11, 2020—long after the statute of limitations expired.

Plaintiffs try to salvage their claims, principally, by asserting they did not discover NFA's supposed role in the alleged scheme until 2019. CEA Br. 41-42. Second Circuit law forecloses this argument. "The relevant inquiry … is not whether [Kumaran] had discovered the identity of the defendants," but rather "when [Kumaran] discovered her CEA injury—that is, a loss that was the result of a CEA violation." *Levy*, 917 F.3d at 108. Plaintiffs cite two cases they claim support them, but neither does. One case merely quotes the plaintiff's *argument* that discovery of the injurer is required; it then finds that the statute of limitations bars the plaintiff's claim regardless.

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 474 (S.D.N.Y. 2016). The other cites parenthetically a *Seventh Circuit* decision that mentions discovery of the identity of the defendant, in the course of making a different point. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012). Neither of these cases helps Plaintiffs' argument, while recent Second Circuit precedent in a CEA case directly refutes it. *See Levy*, 917 F.3d at 108.

Nor does the doctrine of fraudulent concealment help Plaintiffs. CEA Br. 41-42. The statute of limitations does not depend on "whether [Kumaran] had discovered the [fraud] scheme she alleges in her complaint." *Levy*, 917 F.3d at 108. It depends solely on when Kumaran discovered the *monetary loss* that undergirds Plaintiffs' CEA claim. *Id.* Fraudulent concealment thus tolls the statute of limitations only if it prevents the plaintiff from uncovering the loss itself. *See, e.g.*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157-58 (2d Cir. 1995) (fraudulent concealment requires "a conspiracy or other fraudulent wrong *which precluded [the plaintiff's] possible discovery of the harms that he suffered*," and rejecting fraudulent concealment argument when plaintiff "was clearly aware of the[] acts" grounding the claim before the limitations period). Here, Kumaran "had *actual* knowledge of her CEA injury in" September 2017 or earlier; "[t]hat knowledge of her CEA injury 'start[ed] the clock,' irrespective of when she discovered the additional information necessary for her to bring her suit." *Levy*, 917 F.3d at 109. Regardless, none of the allegations to which Plaintiffs point, CEA Br. 42, identify any affirmative acts of concealment, as the fraudulent-concealment doctrine requires.[5]

---

[5] Plaintiffs assert, without elaboration or citation to authority, that equitable estoppel applies. CEA Br. 42. Plaintiffs have "waived this argument by failing to develop it." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013). Regardless, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2016). The only acts to which Plaintiffs point that do not already form the basis of their claims, CEA Br. 42, involve mere failures to respond to inquiries, FAC ¶¶ 614, 624-628. These allegations do not plead any "affirmative steps," much less "deception, fraud or misrepresentations." *Sejin*, 235 F. Supp. 3d at 553.

## 2. Counts 1 and 2 Fail to State a Claim.

Counts 1 and 2 also utterly fail to plead the elements of a Section 22 claim. Plaintiffs do not plead that NFA failed to enforce any "bylaw or rule"; that Plaintiffs suffered Section 22 damages; or that NFA's bad-faith failure to enforce any bylaw or rule caused them harm.

### i. Counts 1 and 2 do not plead NFA failed to enforce any bylaw or rule.

As NFA explained in its initial memorandum, the FAC includes a laundry list of 44 rules and regulations that NFA supposedly failed to enforce or that Kadlec violated,[6] FAC ¶ 777—but they do not plead any *specific facts* showing a violation of those rules under the standards set by *Iqbal* and Rule 9(b). Mot. 12-13 & n.9. Plaintiffs respond, first, that the sheer "number of [alleged] violations should raise [a] plausible cause of action." CEA Br. 9. But of course, listing *more* conclusory allegations does not make them any less conclusory. Next, Plaintiffs simply list the rules again, just as in the FAC, without any factual context. CEA Br. 7-8, And on those rare occasions when Plaintiffs *do* focus on particular NFA or CFTC rules, *see, e.g.*, CRA Br. 5, 9, 21, 34-35, they point to nothing in the FAC that plausibly alleges that NFA was required to enforce those rules but failed to do so, *see* Mot. 4-5, 13.

Plaintiffs make a substantive argument about just one rule: NFA Bylaw 301(e), which requires NFA to make certain determinations before admitting members who otherwise would be barred for violations covered by NFA Bylaw 301(a) or (d). CEA Br. 20-24. That bylaw, however, does not apply to this case. Plaintiffs assert that Vision, Boshnack, and Rothman had been "expelled," *e.g.*, FAC ¶ 259, which would render them ineligible for membership under Bylaw

---

[6] Plaintiffs continue to assert that Kadlec's actions are "imputed" to NFA. CEA Br. 16-17. To impute Kadlec's actions, however, Plaintiffs would need to show that Kadlec took actions triggering Section 22 liability "within the scope of [his] employment" as an NFA board member. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 539 (S.D.N.Y. 2018). The FAC does not do that, much less with the specificity Rule 9(b) requires. Claims that Kadlec acted improperly while serving as *ADMIS*'s CEO are irrelevant—as those acts would be outside the "scope of his … office" at NFA. *Id.*; *see, e.g.*, FAC ¶¶ 275, 289, 508.

301(a)(ii)(D)—but that, before admitting High Ridge, NFA made no finding that they would not harm other members under Bylaw 301(e).

This argument's premise is false: Vision, Boshnack, and Rothman were not expelled. Vision agreed to withdraw from and not reapply for membership, while Boshnack and Rothman were never named in Vision's disciplinary complaint. Mot. 4. Under CFTC precedent, which NFA is bound to follow, "an 'agreement not to reapply' is not an 'expulsion,'" and thus neither Bylaw 301(a)(ii)(D) nor Bylaw 301(e) applies. *Troyer v. Nat'l Futures Ass'n*, 981 F.3d 612, 618 (7th Cir. 2020). Plaintiffs also assert that NFA failed to enforce Bylaw 301(e) *after* High Ridge became a member, and that the "continued conduct" of "Boshnack, Rothman, Felag and [High Ridge] and their new entity VIA" required NFA to determine if they posed a danger to other members. CEA Br. 35-36. Bylaw 301(e), however, applies only *after* NFA has already expelled or suspended a member under Bylaw 301(a), which did not occur here.

### ii.     Counts 1 and 2 do not plead Section 22 damages.

NFA also showed in its initial memorandum that Counts 1 and 2 do not seek damages for the limited category of losses Section 22 makes actionable. Mot. 13-14. Plaintiffs appear to believe that any loss by any trader is actionable if the trader just asks for "Section 22 damages." CEA Br. 17. That is incorrect. Under Section 22, Plaintiffs can recover solely for "trading loss[es]" that are "the result of [the plaintiff's] purchases or sales in the commodities market." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 260, 262 (2d Cir. 2006). Here, however, Plaintiffs seek to recover only for allegedly lost "trade secrets," fees, and "overcharges," FAC ¶¶ 762, 768, pp. 184-85, none of which are trading losses. Plaintiffs do not tie their losses to anything the statute makes actionable.

Plaintiffs attempt to distinguish *Klein*, but their efforts fail. First, Plaintiffs say that *Klein* did not involve "an omnibus pleading" with claims "being brought against ADMIS." CEA Br. 17-

18. That does not distinguish this case: ADMIS is not a co-defendant. More importantly, this point has no bearing on whether Plaintiffs have Section 22 damages claims against *the NFA defendants*. Second, Plaintiffs assert that *Klein* was a standing case. CEA Br. 18. But again, they are wrong. While the court used the word "standing" in a section header of the opinion, it dealt with statutory standing, a colloquial term for the merits question of when a plaintiff "may assert a private right of action for violations of the CEA." *Klein*, 464 F.3d at 259. That is the same question at issue here. Third, Plaintiffs try to distinguish *Klein* on the ground that the plaintiff was an FCM rather than a CTA. CEA Br. 18. That distinction, however, makes no difference. *Klein*'s reasoning applies equally here. The Second Circuit found that "Klein's losses were not the result of its purchases or sales in the commodities market," and that its claimed loss "was a credit loss, not a trading loss." *Klein*, 464 F.3d at 260, 262. Klein's claim thus failed because it did "not suffer any 'actual losses that resulted from [a contract market] transaction' as required by § 22 of the CEA." *Id.* at 262. The same is true here.

### iii. Counts 1 and 2 do not plead that bad-faith conduct by NFA caused Plaintiffs' losses.

NFA has also shown that Counts 1 and 2 fail to plead bad faith or causation. Mot. 14-18. To plead a Section 22 claim, Plaintiffs must allege that NFA failed to enforce its rules in bad faith and that this failure caused Plaintiffs' losses. *See W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 25 F. App'x 63, 64 (2d Cir. 2002); *infra* 12-17. But Plaintiffs have not plausibly pleaded either that NFA "acted or failed to act with knowledge" or that its "action or inaction was the result of an ulterior motive." *W. Capital*, 25 F. App'x at 64. Nor have they plausibly pleaded causation. Their allegations certainly do not "comply with … Rule 9(b)," as any CEA claim that "sounds in fraud must." *In re Nat. Gas*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005). Plaintiffs' contrary arguments fail.

### a. Counts 1 and 2 do not plead an ulterior motive.

As Plaintiffs acknowledge, CEA Br. 23-24, to plead a CEA claim, they must show that "self-interest or other ulterior motive unrelated to proper regulatory concerns … constitute[d] the sole or dominant reason for the exchange action or inaction." *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 265 F. Supp. 2d 254, 259 (S.D.N.Y. 2003). Plaintiffs assert that a desire for more fees and members suffices to plead self-interest. CEA Br. 28-29. But the Second Circuit has rejected this precise argument. *See Brawer v. Options Clearing Corp.*, 807 F.2d 297, 303 (2d Cir. 1986); Mot. 15. Plaintiffs are thus left to argue that NFA had some undefined "other ulterior motive," simply because ADMIS and High Ridge were not acting in the public interest. CEA Br. 28. But the supposed motives of ADMIS and High Ridge—even had Plaintiffs plausibly pled those motives—has nothing to do with whether *NFA* had the motive that Section 22 requires.

### b. Counts 1 and 2 do not plead that NFA knew of the violation of any rule whose nonenforcement caused Plaintiffs' harm.

Plaintiffs also have not alleged that NFA "acted or failed to act with knowledge" of the violation of any rule whose nonenforcement caused Plaintiffs' supposed harm. *W. Capital*, 25 F. App'x at 64. Kumaran first contacted NFA to complain in September 2017. But Plaintiffs fail to plausibly plead that, before that date or after, NFA knew of a rule violation that caused their losses. Indeed, Plaintiffs do not even address causation in their opposition, except to assert—in conclusory fashion—that NFA caused their harms. CEA Br. 4, 5, 14, 17, 22. That failure alone constitutes waiver of the causation element, which is fatal to Plaintiffs' CEA claims.

*Post-September 2017*. Plaintiffs do not explain how NFA's conduct after September 2017 could have caused them damages. Mot. 15-16. As Plaintiffs seem to acknowledge, CEA Br. 17, Section 22 requires the alleged conduct to be the proximate cause of a plaintiff's injury. *See, e.g.*, *Song v. Yao Bros. Grp. LP*, No. 10 CIV. 04157, 2013 WL 12109109, at *11, 13 (S.D.N.Y. July

30, 2013), *aff'd*, 570 F. App'x 59 (2d Cir. 2014). But as NFA explained in its initial memorandum, Kumaran closed her ADMIS account in June 2017, FAC ¶ 605, which ended any unauthorized fees or disclosure of trade secrets. Nothing NFA did (or did not do) in September 2017 could have caused losses on an account closed in June 2017.[7]

*Pre-September 2017.* Plaintiffs also fail to plead facts plausibly showing that, before September 2017, NFA knew of any rule violation that caused Plaintiffs' supposed harm.

1. In their brief, Plaintiffs now deny that their allegations regarding NFA's supposed failure to conduct a "thorough fitness examination" have anything to do with High Ridge becoming an NFA member. Instead, they assert that NFA should have expelled ADMIS, High Ridge, and their associated persons because of the allegedly illegal provisions of the purported oral risk services agreement. CEA Br. 34-35, 37-38; *see, e.g.*, FAC ¶¶ 395-396, 666. But as already explained, Plaintiffs plead nothing but conclusory statements suggesting that NFA ever knew about this oral agreement, much less its supposedly illegal provisions. *See supra* 6-7. They thus cannot plausibly plead bad faith. Nor, for that matter, does the FAC allege any facts to suggest how a reasonable NFA fitness examination would have discovered a secret, unwritten agreement to fleece ADMIS and Vision's customers. These assertions therefore fail to state a claim even under the lower negligence standard Plaintiffs advocate. *See Bosco v. Serhant*, 836 F.2d 271, 278 (7th Cir. 1987).

2. Plaintiffs alleged that NFA "omitted any reference or link to the arrangement [between ADMIS and Vision] on" BASIC, FAC ¶ 561; ECF No. 100-3, at 3-5, but never tied this allegation to any rule NFA failed to enforce or any theory of how NFA supposedly acted in bad faith, *see* Mot. 17-18. Plaintiffs previously suggested that NFA had promised in its 2014 press release to

---

[7] Plaintiffs vaguely suggest that the alleged illegal acts—and perhaps Plaintiffs' damages—remain "ongoing." CEA Br. 17. But if Kumaran continued trading with ADMIS *after* discovering the alleged fraud, that "intervening act" would have been "a 'superseding cause' that breaks the legal chain of proximate cause" and would have rendered NFA's alleged inaction irrelevant. *Higazy v. Templeton*, 505 F.3d 161, 181 (2d Cir. 2007).

provide certain information on BASIC. FAC ¶ 562. But all NFA had promised was to reference Vision's disciplinary history in High Ridge's entry—and NFA did precisely that. *Id.*; Mot. 18. Plaintiffs offer no response to NFA's arguments. They have thus waived reliance on these claims.[8]

3. Finally, as NFA explained in its initial brief, Mot. 18, Plaintiffs plead no facts plausibly showing that Wahls and Sutkus-Kiela's alleged audits of High Ridge violated any rule, regulations, or statute. Indeed, Plaintiffs' allegations are self-contradictory. At times, Plaintiffs allege that Wahls and Sutkus-Kiela engaged in "check-the-box" audits—which implies that they had no knowledge of any rule violations. FAC ¶ 428; *see id.* ¶¶ 430, 451. At other points, Plaintiffs aver that Wahls and Sutkus-Kiela conducted these audits with knowledge of the oral risk services agreement and intended to permit the agreement to continue. CEA Br. 4, 33; FAC ¶¶ 37-41, 422, 431-436. But on either theory, they plead no facts plausibly showing wrongdoing or knowledge beyond "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

### c. **Bosco** *cannot help Plaintiffs avoid dismissal.*

As NFA has shown, Plaintiffs cannot rely on *Bosco v. Serhant*, 836 F.2d at 278-79, to lower the scienter standard from bad faith to negligence for failure to enforce non-discretionary rules. Mot. 18-19. *Bosco*'s rule does not apply in the Second Circuit, where bad faith is required to state a CEA claim. *Id.* And applying *Bosco* would not help Plaintiffs in any event—because Plaintiffs do not identify non-discretionary rules that NFA knew or should have known were violated. *Bosco*, 836 F.2d at 278; Mot. 19.

None of Plaintiffs' responses advance their CEA claims. First, NFA is not "judicially estopped" from arguing that *Bosco* does not apply. CEA Br. 10. NFA was a defendant in another

---

[8] Plaintiffs also assert that BASIC's entry on ADMIS's financial position should have included information about the financial guarantees on ADMIS's customer accounts that the alleged oral agreement supposedly gave High Ridge. ECF No. 100-3, at 5. These allegations depend on the conclusory assertion that NFA knew of the alleged oral agreement. And, in any event, Plaintiffs identify no rule requiring NFA to include such information on BASIC.

CEA case in the Seventh Circuit—where *Bosco* is binding law—and had to litigate within *Bosco*'s framework. *See Troyer v. Nat'l Futures Ass'n*, No. 16-CV-00146, 2019 WL 4695524, at \*13-14 (N.D. Ind. Sept. 26, 2019), *aff'd on other grounds*, 981 F.3d 612 (7th Cir. 2020). NFA's position here (that *Bosco* does not apply outside the Seventh Circuit) is not "clearly inconsistent" with that prior position. *Uzdavines v. Wks. Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005).[9]

Second, Plaintiffs point to a single line in a Securities Exchange Act case to suggest the Second Circuit follows *Bosco*. *See Brawer*, 807 F.2d at 302 n.8; CEA Br. 11-12. The statement to which they point is dicta that, at most, suggested the question was open. And in fact, the question was *not* open. Plaintiffs barely try to distinguish *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774 (2d Cir. 1984), which preceded *Brawer* and controls here, Mot. 18-19. There, the plaintiff alleged that an SRO failed to enforce rules that set *mandatory* requirements, including certification requirements, to engage in certain transactions. *Brawer*, 748 F.2d at 777-78. Much like Plaintiffs here, Ryder "allege[d] that although [the SRO] knew or should have known that [regulated parties] were violating" its rules—a negligence standard—"it took no action to secure compliance." *Id.* at 780. The court rejected this claim for failure to plead bad faith. *Id. Ryder*'s controlling holding renders irrelevant Plaintiffs' dicta from *Brawer*. *See United States v. Hernandez*, 894 F.3d 496, 504 (2d Cir. 2018) ("We are bound by prior decisions of this Court unless and until the precedents are reversed *en banc* or by the Supreme Court ….").[10]

Third, NFA does not purport to exercise any "authority" to declare *Bosco* wrongly decided. CEA Br. 13. If, counterfactually, Second Circuit caselaw had not rejected *Bosco*, then this Court

---

[9] NFA also argued in *Troyer*, before both the district court and the Seventh Circuit, that *Bosco* was wrongly decided.

[10] Plaintiffs assert that the cases requiring bad faith only apply to exchanges. CEA Br. 24-27. But the cases themselves make no such distinction. Nor does Section 22 itself—whose textual "bad faith" standard applies equally to all covered entities. 7 U.S.C. § 25(b)(4).

would have to decide—as with any other out-of-circuit case—whether to follow *Bosco*. And if the Court needed to reach that question, NFA has shown that *Bosco* was wrongly decided. Mot. 18.

By its terms, the CEA requires plaintiffs to prove bad faith in every case. 7 U.S.C. § 25(b)(4) (plaintiff must show SRO "acted in bad faith in failing to take action or in taking such action as was taken"). Unlike other statutes, such as the Federal Tort Claims Act, that distinguish between the exercise of discretionary and nondiscretionary authority, 28 U.S.C. § 2680(a), the CEA makes no such distinction. Nothing in the CEA suggests that "bad faith" means "bad faith" in some cases, but "negligence" in others. To the contrary, "the meaning of words in a statute cannot change with the statute's application." *United States v. Santos*, 553 U.S. 507, 522 (2008) (plurality opinion). The Supreme Court has disapproved the "interpretive contortion" of "giving the same word, *in the same statutory provision*, different meanings *in different factual contexts*." *Id.* And as *Bosco* itself acknowledged, "[i]n ordinary English 'bad faith' implies a deliberate wrong rather than just failing to come up to an objective standard of care, which is what negligence is." 836 F.2d at 276. Based on only two decisions from the 1970s, *Bosco* nevertheless found that prior courts "have treated the term 'bad faith' as if it read 'negligence." *Id.* at 277-28.[11] But there is no indication either that the phrase "bad faith" was broadly (and counterintuitively) interpreted to mean "negligence" when Section 22 was enacted, or that Congress intended to adopt this supposed meaning. Nor does this rationale explain how the same term could mean two different things in different situations. Instead, the Court should read "bad faith" to match its ordinary meaning at the CEA's passage: "[N]ot simply bad judgment or negligence, but … the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Black's Law Dictionary* 127 (5th ed. 1979).

---

[11] One of *Bosco*'s cited cases was from this circuit, but that case interpreted a Securities Exchange Act provision that did not contain the phrase "bad faith." *Rich v. N.Y. Stock Exch.*, 522 F.2d 153, 154-55 nn.3-4 (2d Cir. 1975).

Finally, Plaintiffs have not plausibly identified any nondiscretionary actions that NFA failed to take, and thus the bad faith standard would apply even under *Bosco*. In *Bosco*, the Seventh Circuit found the defendant exchange lacked discretion because it had violated even its own interpretation of a highly specific rule in failing to enforce it. 836 F.2d at 277-78. The violations were clear, and the exchange had a ministerial duty to enforce its rule. Not so here. Plaintiffs repeatedly assert that their listed rules use the word "shall" and thus impose mandatory duties. CEA Br. 13-15. But even if the rules are nondiscretionary for NFA *members*, NFA's decision whether to apply those rules to a particular member requires the exercise of discretion. NFA often must interpret the language of its compliance rules, which may require answering difficult legal questions. *See Bosco*, 836 F.2d at 278 ("Interpretation is often, and was here, discretionary"). After resolving any ambiguities, NFA must conduct a factual analysis to determine who, if anyone, has violated those rules. This, too, is a discretionary inquiry that cannot be resolved mechanically. These determinations differ fundamentally from the one *Bosco* deemed nondiscretionary.

### 3. Count 13 Fails to State a Claim.

As NFA has explained, this Court correctly found that Plaintiffs' prior arbitration-based damages claims were barred by arbitral immunity, Mot. 19. In Count 13, Plaintiffs present these same allegations as violations of NFA's duty to adopt "fair" and "equitable" procedures for arbitration. 7 U.S.C. § 21(b)(10). Arbitral immunity applies just as fully to this repackaged claim. *See* Mot. 22; *infra* 19-20. But Plaintiffs also lack a CEA claim on the merits.

***First***, as NFA has already explained, Plaintiffs cannot plead Section 22 damages based on their alleged harms from the arbitration, because these claims are not "trading losses." Mot. 19-20. Plaintiffs offer no response to this point, except to assert that "Congress did not intend to limit a trader[']s rights under Section 22." CEA Br. 40. However, Congress clearly *did* "limit claims to

those of a plaintiff who actually traded in the commodities market" and lost money "as a result of" those trades. *Klein*, 464 F.3d at 260. It does not allow claims for damages sustained elsewhere.

**Second**, NFA explained in its motion that Plaintiffs failed to plead that NFA's arbitration-related conduct violated any rule or statute, and that most of its allegations concerned the behavior of other actors. Mot. 19-20. The FAC's few allegations about NFA's actions are mere "naked assertion[s]" that NFA acted illegally, which do not satisfy Rule 9(b). *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) . Plaintiffs' opposition brief discusses arbitral immunity and damages, but does not try to show that the acts alleged in Count 13 state a CEA claim against NFA. CEA Br. 38-40. They have thus waived any such argument, and Count 13 can be dismissed on that ground alone. *See Chevron Corp. v. Donziger*, No. 11 CIV. 0691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013).

### C. Absolute Immunity Bars All The Non-CEA Damages Claims.

Immunity or preemption applies to bar each of Plaintiffs' non-CEA claims. Mot. 20-22. Plaintiffs' contrary arguments comprehensively fail.

**Regulatory immunity.** As Judge Woods already found in relation to Plaintiffs' federal-law claims, absolute immunity bars damages actions against NFA and its officers for both their "affirmative acts" and their "omissions or failure to act" related to their regulatory duties. Mot. 20. Plaintiffs' only response is to assert—without citation—that "[i]mmunity is only absolute for lawful conduct." State Law Br. 68. Of course, quite the opposite is true: Absolute immunity is absolute. And immunity is implicated only when plaintiffs have alleged illegal conduct; otherwise, there would be no lawsuit at all. *See, e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731, 744-46 (1982); *Imbler v. Pachtman*, 424 U.S. 409, 422-24 (1976). Plaintiffs have waived any other argument against immunity. Indeed, none exists: Plaintiffs' allegations—which boil down to an assertion that NFA "inadequately responded to, monitored, or policed [its] members' actions," *City of Providence v.*

*Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017)—fall within the core of absolute immunity. *See* Mot. 20-21.

**Arbitral immunity.** NFA also has absolute immunity against damages claims regarding NFA's role in administering the arbitration in which Plaintiffs participated. Mot. 21. "Immunity applies even if the organization has violated its own rules." *Imbruce v. Am. Arb. Ass'n*, No. 15 CIV. 7508, 2016 WL 5339551, at *3 (S.D.N.Y. Sept. 23, 2016). Arbitral immunity thus bars Plaintiffs' CEA claim regarding the arbitration.

Plaintiffs assert that arbitral administrators do not enjoy the same immunity as the arbitrators themselves. CEA Br. 39. This is incorrect. *See Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("[E]xtension of arbitral immunity to encompass boards that sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusory."). Nor does it matter whether some of the complained-of acts occurred "prior to the appointment [of] arbitrators," or involved allegations of "inordinate delays." CEA Br. 39. Courts have immunized commercial arbitration associations for a wide variety of alleged conduct, including "defective notice" of hearings, *Austern*, 898 F.2d at 886, "improper selection of the arbitration panel," *id.*, "notifying [the defendant] of the [arbitration] demand" when there was allegedly no valid arbitration agreement, *New England Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 544-45 (1st Cir. 1999), "defective reviewing procedures," *Buhannic v. Am. Arb. Ass'n*, No. 18 CIV. 2430, 2019 WL 4735005, at *5 (S.D.N.Y. Sept. 27, 2019), and failure to forward communications to the arbitrators, *Newcomb v. Am. Arb. Ass'n*, No. 13 CIV. 2468, 2014 WL 352826, at *2 (S.D.N.Y. Jan. 13, 2014). All the conduct of which Plaintiffs complain occurred "under the [NFA]'s management of the arbitration and thus [is] sufficiently related to the arbitral process to justify immunity." *Buhannic*,

2019 WL 4735005, at *5.

Plaintiffs cannot avoid this conclusion by recasting the arbitration as a commercial transaction between NFA and Kumaran. CEA Br. 38-40. As with regulatory immunity, arbitral immunity depends on the substance of the claim and the effect of denying immunity on the arbitral process, not how the claim is worded. *See Glob. Gold Mining, LLC v. Robinson*, 533 F. Supp. 2d 442, 448 (S.D.N.Y. 2008). Plaintiffs rely on a single unpublished, out-of-circuit case that does not help their cause. *See Hopper v. Am. Arb. Ass'n*, 708 F. App'x 373 (9th Cir. 2017) (mem.). As *Hopper* itself recognized, arbitral immunity "extends to claims that arise out of a decisional act," *id.* at 373—and all Plaintiffs' allegations involve decisional acts related to the initiation and administration of the arbitration, Mot. 19-20. The claim in *Hopper*, by contrast, related to "[c]ommercial advertisement, designed to sway individuals to choose AAA over its competitors." 708 F. App'x at 373. Here, Plaintiffs do not complain about advertising or otherwise raise claims that necessarily "arise before a formal arbitration relationship" begins. *Id.* Indeed, NFA members like NRCM are *required* to resolve disputes via an NFA arbitration—so Plaintiffs could never have raised a claim of the type *Hopper* addressed.

***Preemption.*** The CEA preempts state-law claims whenever "application of state law would directly affect trading on or the operation of a futures market." *Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 894 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020). Plaintiffs do not dispute this point. State Law Br. at 69. Instead, Plaintiffs aver that their specific claims—unfair competition, theft of trade secrets, and so on—do not fall within the CEA's preemptive scope. State Law Br. at 68-69. But Plaintiffs fail to grapple with any of the actual *conduct* they allege in the FAC. Each of Plaintiffs' claims revolves around allegations that NFA failed to enforce its regulations against ADMIS and High Ridge, failed to discipline them, or failed to disclose

information about their alleged secret oral agreement to market participants. FAC ¶¶ 813-815, 819-820, 885, 897, 910, 922, 935. Claims based on such disciplinary choices and alleged regulatory failures trench on "specific and central element[s]" of NFA's delegated role. *Effex*, 933 F.3d at 894. Plaintiffs' state-law claims would certainly "affect trading on … a futures market," by altering how NFA regulates its members. *Id.* Letting such state-law claims go forward would empower courts to "supervise the NFA's regulation of its members and thus impede its federally mandated role in the [CEA]'s overall scheme." *Id.* at 895.

### D. Plaintiffs' State-Law Claims Fail On The Merits.

Plaintiffs' opposition briefs also fail to salvage their failure to plead the elements of their state-law claims. These claims all sound in fraud and must satisfy Rule 9(b). Mot. 22 n.12.

***Fraud (Count 3):*** Plaintiffs' fraud claim fails on every element. First, because the FAC does not "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), Plaintiffs do not plausibly allege a false representation of fact, much less a material one, *see* Mot. 22. Plaintiffs list a litany of allegations from the FAC that supposedly plead fraud. State Law Br. 5-8; ECF No. 108-3. But as already explained, these allegations either are not fraudulent omissions or concealments or are premised on the conclusory assertion that NFA somehow knew of ADMIS and High Ridge's alleged oral agreement.

Second, the FAC provides nothing but conclusory allegations that NFA had "knowledge" that any representation "was false when made." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006).[12] *Cf.* State Law Br. 8-9; ECF No. 108-4. Third, Plaintiffs also fail to plead justifiable reliance. *Lerner*, 459 F.3d at 291. They attempt to argue reliance based on the standards for fraud

---

[12] Plaintiffs also purport to rely on the CEA for their fraud claim. FAC ¶ 808; State Law Br. 1. This claim, to the extent it is separate from Plaintiffs' other CEA claims, fails for the same reasons.

under federal securities law, State Law Br. 37-38—but Plaintiffs' fraud claims do not arise under the federal securities laws, FAC ¶¶ 807-844. Fourth, plaintiffs cannot plead damages—particularly after September 2017, when Plaintiffs allegedly discovered ADMIS and High Ridge's fraud. *Lerner*, 459 F.3d at 291; *see supra* 12-14.[13]

***Aiding and Abetting Fraud (Count 4):*** As with the underlying fraud claim, Plaintiffs' aiding-and-abetting claim fails because the FAC lacks allegations that NFA had actual knowledge of ADMIS and High Ridge's alleged fraud. Mot. 23. Plaintiffs attempt to allege "conscious avoidance" instead, but this version of knowledge fails because the FAC provides no non-conclusory allegations that NFA "decided not to learn the key fact, not merely to have failed to learn it through negligence." *United States v. Nektalov*, 461 F.3d 309, 315 (2d Cir. 2006). Likewise, Plaintiffs do not plead substantial assistance. Mot. 23. They again attempt to rely on conclusory allegations that NFA knew of and helped hide ADMIS and High Ridge's alleged oral agreement. State Law Br. 42-43. But again, they have pled no facts supporting those allegations. Moreover, Plaintiffs also attempt to rely NFA's supposed failure to act—but they do not allege that NFA owed them a fiduciary duty; hence, they cannot ground "substantial assistance" on NFA's supposed failure to act. *Land v. Forgione*, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019). Plaintiffs attempt to distinguish *Forgione* because the defendant there was a restaurant owner rather than an SRO. State Law Br. 13, 42. But *Forgione* stated a general principle of aiding and abetting under New York law, *see, e.g.*, *Markowits v. Friedman*, 144 A.D.3d 993, 996 (N.Y. App. Div. 2016), and NFA owed no special duty to Plaintiffs to inform them of an alleged oral agreement of which it did not know, State Law Br. 18-22.

---

[13] Plaintiffs assert that they suffered damages because NFA let Boshnack and Rothman compete with NRCM as a CTA starting in March 2018. State Law Br. 34. But they plead no plausible allegations that NFA knew of a fraud; indeed, NFA had closed its investigation of High Ridge without finding evidence of fraud. *See supra* 4 n.4. Nor do they plead justifiable reliance on any representation or omission of NFA's.

***Misappropriation of trade secrets (Count 6):*** Because the FAC failed to "put forth specific allegations as to the information owned and its value," Plaintiffs failed to plead a "trade secret" that could be misappropriated. *Kumaran v. Northland Energy Trading, LLC*, No. 1:19-cv-8345, 2021 WL 797113, at *11 (Feb. 26, 2021), *appeal docketed*, No. 21-798 (2d Cir. Mar. 29, 2021). Plaintiffs seek to distinguish *Northland* by raising a series of irrelevant differences between the intellectual property in the two cases. State Law Br. 64-65. The relevant comparison, however, is between the *descriptions* of the intellectual property alleged in each complaint. *See Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). They are nearly identical. *Compare Northland*, 2021 WL 797113, at *11, *with* FAC ¶ 76; State Law Br. 63. Plaintiffs also provide no authority to suggest NFA can be held liable for ADMIS's alleged misappropriation when NFA is not alleged to be making use of Kumaran's trade secrets. Mot. 23.

***Conversion (Count 7):*** The FAC does not allege that NFA exercised "dominion over [their] property or interference with it." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020). Plaintiffs' contrary assertion depends on their erroneous claims that the FAC alleges NFA's knowledge and approval of ADMIS and High Ridge's oral agreement and that Kadlec's actions are attributable to NFA. State Law Br. 50-51.

***Aiding and Abetting Conversion and Misappropriation (Count 8):*** As explained above, Plaintiffs have not pled NFA's actual knowledge or substantial assistance; they thus have not pled an aiding and abetting claim. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012).

***Interference with Economic Advantage (Count 9):*** As explained in NFA's initial brief, Plaintiffs cannot plead tortious interference because they did not allege that *the NFA defendants* interfered with their business relations. Mot. 24. In their briefs, Plaintiffs sometimes claim to allege interference by NFA, and sometimes claim the opposite. State Law Br. 59 ("Plaintiffs have not

pled that NFA interfered with their business relations; they claim ADMIS and High Ridge did.").

Any claims of interference, moreover, rely on Plaintiffs' conclusory allegations that NFA knew of the alleged oral agreement. *Id.* at 57-59. The same is true of Plaintiffs' assertions that NFA used "dishonest, unfair, or improper means." *Id.* at 59-60. And although Plaintiffs allege that friends and family invested capital with Kumaran, *id.* at 61, nowhere does the FAC allege "some particular, existing business relationship" with a third party, "through which plaintiff would have done business but for the allegedly tortious behavior." *New Majority Holdings, LLC v. Ghaida*, No. 11 CIV. 8813, 2012 WL 4741950, at *3 (S.D.N.Y. Oct. 3, 2012).

**Civil Conspiracy (Count 10).** Plaintiffs admit that conspiracy is not a separate claim under state law and requires pleading an underlying tort. State Law Br. 54-55. NFA takes no position on the allegations that ADMIS, High Ridge, or Lazzara committed a tort. *Id.* at 55. But they are not defendants in this case. And "one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (applying, *inter alia*, New York law); *see Drake v. Lab'y Corp. of Am. Holdings*, No. 02CV1924, 2007 WL 776818, at *4 (E.D.N.Y. Mar. 13, 2007), *aff'd*, 417 F. App'x 84 (2d Cir. 2011). Because Plaintiffs have pleaded no underlying tort against any defendant, they "necessarily fail[] to state an actionable claim for civil conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). Regardless, because the FAC provides no non-conclusory allegations that NFA knew of or intended to aid ADMIS's alleged fraud, Plaintiffs cannot plead the other conspiracy elements. Mot. 24.

## III.    Plaintiffs Waived Any Claim For Injunctive Relief.

Plaintiffs do not make any arguments in their opposition briefs supporting their request to enjoin the arbitration, or even respond to NFA's arguments on the issue. Plaintiffs have thus

waived any claim to injunctive relief. *See In re Weatherford Int'l Sec. Litig.*, No. 11CIV1646, 2013 WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013). In any event, Plaintiffs have failed to plead a claim for injunctive relief for the reasons explained in NFA's initial memorandum. *See* Mot. 25.

## IV. Plaintiffs Are Not Entitled To Replead.

At several points in their opposition briefs, Plaintiffs ask for leave to replead. CEA Br. 20, 37-38, 49; State Law Br. 37, 51, 57, 61, 70. But Plaintiffs have already had an opportunity to amend their complaint, and the resulting FAC is even more flawed than the original. Nor do they provide any indication of what information they could add to a Second Amended Complaint that would alleviate the many fundamental flaws in their FAC. The Court should therefore deny leave to replead and dismiss with prejudice. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated: August 13, 2021

Respectfully submitted,

/s/ *Gregory M. Boyle*

Zachary C. Schauf
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
ZSchauf@jenner.com

Gregory M. Boyle
 *Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Counsel for National Futures Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2021, I electronically filed the foregoing Memorandum of Law in Support of Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to Plaintiffs.


DATED: August 13, 2021

<div style="margin-left:2em">

*/s/ Gregory M. Boyle*
Gregory M. Boyle

</div>