**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Et al | ) Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | ) Judge: Hon Gregory H. Woods |
| | ) Magistrate Judge: Stewart D. Aaron |
| -against- | ) |
| | ) **NRCM'S OBJECTIONS** |
| NATIONAL FUTURES ASSOCIATION, LLC | ) **TO THE REPORT AND** |
| Et al., | ) **RECOMMENDATIONS** |
| Defendants, | ) **DEFENDANT KADLEC** |
| | ) |

**PLAINTIFFS OPPOSITION AND MEMORANDUM OF LAW TO THE REPORT AND**
**RECOMMENDATIONS FOR THE MOTION TO DISMISS AGAINST DEFENDANT**
**KADLEC**


**FOR CLAIMS BROUGHT AGAINST KADLEC**


//BMA//

Brian M. August

AugustLaw NY

100 Willoughby Street #9E

Brooklyn, NY 11201

Counsel for NRCM


Plaintiff Kumaran in the interest of efficient joins the legal arguments in this motion

//SSK//

Samantha Siva Kumaran

Pro Se Plaintiff

## INTRODUCTION

The Report and Recommendation (the "Report" or "R&R") should not be followed. It has not only failed to draw all reasonable inferences in Plaintiffs' favor but, while disregarding properly pleaded and particularized factual allegations, has, instead, relied on multiple "new" arguments raised either by the Court, or using arguments raised for the first time in Reply, or otherwise waived in Kadlec's MTD. Plaintiff never had the opportunity to brief these new and improperly interposed arguments and the court provided Plaintiffs no opportunity to be heard regarding them. Plaintiff has raised plausible claims which should not have been dismissed. *See generally McCarthy v. Dun & Brad. Corp.,* 482 F.3d 184, 191 (2d Cir. 2007); *Goldman v. Belden*, 754 F.2d 1059, (2d Cir. 1985). *Bell Atl. Corp. v. Twombly*, 550 U.S., 57 S.Ct. 1955,(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant [is] liable for the misconduct alleged." [1] *Ashcroft v. Iqbal*, 556 U.S., S.Ct. 1937,(2009).

### *Issue 1A – RICO 1962 (c) and (d) Court Fails To Properly Review Kadlec's Individual Predicate Acts*

In wrongly dismissing Count 11 the RICO 1962(c) claims, the Court makes several factual errors in referencing an incomplete set of facts and predicate acts that were itemized with Complaint. The R&R not only disregards properly pleaded facts but also the predicate acts they establish and makes several factual errors by referencing an incomplete set of facts in with Complaint. The thrust of the error, is the R&R focusses solely on Exhibit 9 ¶3 (See R&R at 30) yet fails to consider the substantive other allegations in the Complaint and all Kadlec's others predicate acts of fraud, concealments, and a plethora of affirmative misrepresentations and omissions all evidencing his knowledge of and participation in bringing about the common purpose of defendants' schemes (ECF106.Kad.Opp.Pg19-25). The FAC contained detailed allegation that constitute Kadlec's individual involvement in the predicate dating back to November 2014 incomplete supporting allegations. *See* especially FAC at ¶¶173-¶174 setting forth particularized allegations showing Kadlec's involvement in the scheme dating back to November 2014 including that he executed the G&F Agreements, and supporting allegations

---

[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, *(2d Cir. 1985).* A complaint should not be dismissed if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 57 S.Ct. 1955,167 L.Ed.2d 929 (2007).

he was directly responsible for corporate disclosures concealing the G&F and fraudulent statements to the CFTC as well as on customer disclosures (See Exhibit 3).

More reasonably, Plaintiffs should have been given the opportunity to amend their Complaint or at a bare minimum, to provide a Supplemental Exhibit highlight the predicate acts as they have now done in Exhibit 4 (attached) providing further particularization of Kadlec's furtherance of the fraud. Instead, the gravamen of the Court's error was to ostensible ignore the FAC ¶173-¶174 and only focus on Ex 9. Plaintiffs also had no opportunity to amend the RICO pleading (See Exhibit 4) and it can be seen from the Vision SAC 20-CV-3871 ECF89.Ex.15 Plaintiffs have substantially amended their pleading of RICO and because this complaint was combined with the NFA, Plaintiffs should be able to amend the Complaint outside of a combined NFA filing. This is especially prejudicial as the Court denied Plaintiffs request to transfer Kadlec to 20-CV-3873 (ECF25). Plaintiffs again seek leave to amend their claims or submit Supplemental Exhibit. (*See* Exhibit 4, See also 20-CV-3871 SAC ECFX.15 showing supplemental Exhibit of Predicate Acts). But this pleading deficiency should not be fatal, as Plaintiffs could easily have either repleaded, or attached a Supplemental Exhibit[2]. Therefore to support that the FAC contained the predicate acts Plaintiffs have attached Supplement Exhibit (See Exhibit 4).[3], [4]

In any event, the R&R used <u>multiple new arguments</u>, on erroneous or incomplete facts (below) that were never briefed and are briefed for the first time herein. The Court is not permitted to dismiss claims on arguments waived by Defendants.

*Issue 1B – The Report ignores Kadlec's role as a Corporate Insider:* The primary error in Count 11 is the Report relies solely on Exhibit 9, and disregards the other material, relevant predicated acts the Complaint pleadings (See Exhibit 3) including Kadlec' role in furthering the fraud by concealing the G&F Agreements he signed, and his individual role in furthering the fraud in concealing Vision's material guarantees and risk services on all corporate disclosures to induce customers on material omissions . As stated in Issue 3A, Court plainly errs as it disregards that Kadlec is a corporate insider and was, in fact, directing ADMIS' every day business (the Court however acknowledges Kadlec is defendants'

---

[2] United States v. Priv. Sanitation Indus. Ass'n of Nassau, Inc., 793 F. Supp. 1114, 1130 (E.D.N.Y. 1992), granting leave to file 70 page Supplemental Exhibit to more clearly itemized predicate acts for each Dfdnt.

[3] The **_only_** argument Kadlec's MTD and Reply raised was as to whether Plaintiffs pled predicate acts. Kadlec did not move to dismiss on other grounds, none were expanded and those arguments were waived. (e.g. Enterprise, O&M, Open-Ended Continuity, Intent to defraud, Misappropriation, Lazzara's statements not being fraudulent communications, the existence of wire fraud or mail fraud). Additional grounds should not have been invested by the court, particularly where Plaintiff was denied an opportunity to respond to such grounds, which Kadlec, by omissions of them actually waived.

[4] Plaintiffs met all pleading standards of a RICO Claim in prongs [1],[4],[5],[6].[7]] See ECF106 at 19

President and that Plaintiffs referred to him as CEO without objection, raising factual issues, *prima facie* and at a minimum, that he was in fact (and should be construed in law) as being responsible for directing ADMIS fraudulent day-to-day operations. S*ee In re Parmalat Sec. Litig.,* 479 F.Supp.2d 332, 340 (S.D.N.Y.2007) ("Alleging direct involvement in the company's everyday business is critical to support the [group pleading] presumption."). The oversight is manifest, as the R&R then proceeds to ignore Kadlec's individual signature on all material financial documents submitted to the Court and attached to the Pleadings (.e.g G&F Agreements ECF31, Consolidated Financial Statements, (ECF4) Corporate Disclosures (ECF15.1-15.3), the IB Agreement (ECF57.8)). The FAC also acknowledged Kadlec also directed and oversaw company contracts, the G&F Agreements and all the IB Agreements, and was on the governing body for reporting the RMP under CFTC 1.11-1.14 which concealed the ORSA.

*Issue 1C – Fatal Error in Unauthorized Fees:* On. Pg31 the Report continues a string of incorrect facts to support an erroneous legal conclusion regarding ADMIS' pattern of unlawful conduct in deceptive omissions and misrepresentations about the "trailing fees and commissions" which were part of the G&F Agreements and were all omitted. The FAC alleges the Purpose of the scheme, included ADMIS and Lazzara used material misrepresentations and deceptive omissions in its solicitations and corporate disclosures, using mail fraud and wire fraud) to induce customers by concealing among other things, Boshnack' material financial interest in the CTA account, the G&F Agreements, Boshnack and Rothman's material guarantees on their accounts, that excessive fees and overcharges would exceed 18% a year to deplete their profits, Visions' *prior* disciplinary conduct spanned 175 CFTC reparations, umpteen NFA violations that led to Vision being disbarred, and they ran a competing HRHC CTA options referral services, with material conflicts of interest – all of which if disclosed – Plaintiffs would never had opened accounts.(¶143,¶221).Under CEA laws, communications are fraudulent (misleading statements with material deceptive omissions), "if a reasonable investor would have altered his decision in the mix of information" to do business or invest. See Goldman v. Belden 2d Cir 1985 ECF106.Pg1-4. The FAC alleges [plaintiffs] would have altered their investment decision and not opened accounts at ADMIS had they been aware of such information and the omission were material. The FAC also alleges that as part of the scheme ADMIS failed to make disclosures prior to the account solicitation (as is black-letter law under the CEA) and waited until Day 2, after the accounts were opened, to begin charging fees and when questioned used further misrepresentations and omissions rendering the transmittal of statements and fees, which contained "deceptive omissions or material

misrepresentations" further fraud. Plaintiff did not consent or authorized to having their accounts guaranteed by HRF, Boshnack or Rothman, nor to them collecting fees from their arrangements. Under the CEA that constitutes fraud.

*__Issue 1.C.(i) Court's Use of Lazzara's Statements Were Incorrect and Incomplete:__* In its incorrect analysis the Report takes a snippet from Ex9. ¶2 but ignores the rest of the paragraph, and incorrectly applied the standards of fraud. *First,* the Report errs to include *__all relevant facts__* related to Lazzara's untruthful and incomplete statements on Day 2, when fees were detected. The most glaring error made on Pg.31 is the Reports' incorrect citation, to only use part of paragraph on Exh9 ¶2 excluding the rest of the paragraph whereby Lazzara (with the knowledge of ADMIS) "made fraudulent representations the fee was an exchange cost, but fraudulently concealed the recipient was HRF, and there was no such clearing cost from the exchange".[5] The misstatements and omissions Exh9,¶2 and ¶589 were fraudulent statements[6]. This statement itself embodies fraudulent misstatements and glaring deceptive omissions, on which Plaintiffs relied. If Lazzara had properly disclosed the Guarantees. Plaintiffs would have close the account, and his deceptions were intended to induce reliance on false information. Likewise the Report omits ¶588-589[7] (same) that the statements were materially false and untruthful when made. A statement that contains material misrepresentations or deceptive omissions, that a reasonable investor would have relied and changed its decision to do business, constitutes fraud when the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " and changed the decision to do business with ADMIS. *Id.*

---

[5] Ex 9 ¶2. When Kumaran questioned the charge, Lazzara using interstate wires and telecommunications, (with the knowledge and participation of ADMIS) made fraudulent representations that it was "clearing cost", misrepresenting the fees were an exchange cost, but with scienter and intent, fraudulently concealed the recipient and beneficiary of those fees was HRF, and there was no such "clearing cost" from the exchange.

[6] Kadlec failed to raise any arguments in his MTD the misrepresentations and/or omissions were "material" or that Plaintiffs "relied" on them to their detrimental and they were instrumental in Plaintiffs induced to open and maintain accounts at ADMIS, and they have subsequently been harmed. These arguments were waived. (*See* ECF77, ECF110)

[7] ¶588 Just days after opening the account, the unauthorized fees started following the operating playbook of the scheme. (See Vision FAC ¶197-¶330)

**¶589** Kumaran challenged and disputed the fees, but Lazzara, using the tradecraft response, stated that "the account was not set up correctly" and on Day 2, misrepresented the new fees were exchange clearing costs. (This also deters the switching costs to close the account which is why transaction fees are added on the second day). **This information was materially false and untruthful when made, and intended to deceive and Lazzara intentionally failed to disclose that monies were being diverted to pay HRF. This constitutes fraud and unlawful conduct.(7 USC 13(1))**

Objections to R&R Kadlec, Page 5

The Court's blatant error then proceeds to incorrectly deduce, that financial misrepresentations that contain deceptive omissions, to conceal the entire G&F Agreements, excessive 18% withdrawals of fees (¶13, ¶30), and Vision's disbarment, extensive disciplinary conduct, 175 reparations, competing HRHC CTA business and vested conflicts of interest, excessive margin errors of over 200%, and prior fines of $2.1 million in customer restitution due to risk errors, do not constitute fraud under the CEA. This is a plain error (See supra). The Court offers no analysis either on materiality (*See* ECF106 2-3) nor the undisputed argument that Plaintiffs would have altered their decisions to continue business. The Court also erroneously seems to think that because Lazzara continued to mislead Plaintiffs, who had not yet realized a fraud was being perpetrated, that their inability to penetrate the fraud was somehow an implicit "authorization." That is incorrect application of material misrepresentation and deceptive omissions, as is the R&R's conclusion that the omissions that HRF/Boshnack/Rothman was the recipient of the fees was **material** - noting also unauthorized purloining of monies from CTA's without consent is unlawful. Plaintiffs have clearly pled by Lazzara's and ADMIS's concealments and omissions in their marketing and communications were fraudulent. (See e.g. ¶208-¶215,¶221).

This argument of "materiality" was also w not opposed in Kadlec's MTD, neither was the fact that Plaintiffs "relied" on the deceptions, or they would not have opened their accounts, rendering the Reports use of waived argument erroneous. The Report also errs as it offers no analysis on the elements of fraud namely [1] misrepresentation [2] scienter and [3] reliance and [4] harm. The Report's glaring most error continues on Pg. 31 stating that "the fact that the fees were provided to High Ridge" doesn't render them fraudulent. That is also a manifest error. A material misrepresentation and deceptive omission, that was material to Plaintiffs decision to open a commodities futures account, that they relied upon, (especially) excluding HRF's past disciplinary conduct after Vision was effectively disbarred, $2.1 million in customer restitution for losses, 175 reparations, or their accounts were being personally guaranteed by Boshnack and Rothman, were material omissions and deceptive statements, that Plaintiffs under no circumstances would have chosen to do business with ADMIS, and were intentionally concealed. The Report is also plainly incorrect that deceptive omissions of HRF (previously Vision) being the recipient of the fees, and not disclosed to Plaintiffs does not constitute fraud under the CEA. (See e.g. ¶753. NFA 2-4 9005)  As discussed supra, the error is the R&R ignored the standards of **materiality** and "**omissions**" and that Plaintiffs had a right to "opt-out" of the arrangements and any information that is deceptive under CEA NFA 2-2, 7 USC 6(b), NFA 2-4, 9005 is a CEA fraud. (See NFA 2-

2(b)) e.g. ¶569, ¶60 –showing materiality in Plaintiffs would not have chosen not to do business or open accounts) .

The Court also errs to omit ADMIS, Kadlec and Lazzara' duty to disclose HRF (¶660-661) and their position of superiority (ECF106 at 7-8). Not only was the concealment of HRF and Vision (and its past disciplinary record) material, Lazzara and Kadlec knew that the guarantees on Plaintiffs accounts were also material information that would have altered Plaintiffs decisions to open accounts at ADMIS so he continued the fraud. Each transaction fee used to pay guarantees to HRF and Boshnack, that Plaintiffs had not authorized, was a fraudulent communication, using mail/wire fraud. (e.g. ¶539) Receiving [even more] false and deceptive information on Day 2, does not render the *prior* false statements using wire and mail communications non-fraudulent.[8] Neither does it transform Lazzara's fraudulent explanations into a knowing consent or authorization. Lazzara's statements incorporated *further* material misrepresentations and deceptive omissions regarding "exchange fees," thus, his Day 2 statements and omissions were directly furthering the fraud of the scheme to conceal of Vision's financial interest in its competitors traders which was material. Lazzara's statements on Day 2 also concealed the  reasons for the "transaction fees" that, as pled in the FAC (and related complaints) were intended to cause Plaintiffs' reliance on misinformation. Therefore the ongoing withdrawals of fees were fraudulent as they concealed the material G&F Agreement and Boshnack's interest on Plaintiffs commodities accounts, which were material. [9]

*Issue 1.C.(ii) Fees have to be disclosed Prior to Account Opening*: The Reports conclusion that the fees were thus "disclosed" is also erroneous conclusion of law under the CEA. The R&R ignores that the blackletter law of the CEA, that all fees must be disclosed *prior* to the opening of the account and as part of sales and solicitations process, and contain no deception of their source, recipient, or nature whatsoever. (e.g. ¶136,¶¶152-153,¶155,¶¶157-159).[10] The FAC is clear Plaintiffs were fraudulently induced as they relied on the material omissions and non-disclosure of the fees, and guarantees, *prior to* opening the accounts and relied on Kadlec's and ADMIS's deceptive omissions (as a corporate insider) in all public disclosures transmitted through wire and mail fraud, as ADMIS corporate

---

[8] Second, the Court omits the facts that the intent of the scheme was to intentionally add fees on Day 2.(¶196,208-210).

[9] NFA 2-4 9005 any fee that is anyway "deceptive" is a compliance violation. NFA 2-4 9005 "Any such arrangement which is intended to or is *likely to deceive* customers is a CEA violation"

[10] NFA 2-26, CFTC 1.55, CFTC 33.7, NFA2-2, NFA 2-3 NFA 2-4 9005, NFA 2-37(g), 7 USC 6(b). 7 USC 13 etc.

disclosures that were predicate acts of fraud. (e.g ¶153, ¶¶173-174 20-CV-3873 ECF15 Ex1-5 ) It was clearly explained _why those communications were fraudulent_.  ECF106 1-11.

Moreover the Report fails to discuss the trade processing fees that were subsequently tacked onto the account later on May 2, 2017 (e.g. ¶599) and NFA's own admission that there were "illegal aspects of the deal" and "charging unauthorized fees" or "excessive" fees. ECF74 1,3,12-13,15,17. All those transactions with unauthorized withdrawals (for which there are more than two predicate acts) also count as predicate acts of mail fraud and wire fraud, as the communications (including HRF's extortions of up to 18% of more fees to deplete a CTA's profits) also contained material omissions that Plaintiffs account was being individually guaranteed by its competitors who were disbarred Boshnack and Rothman who also ran competing HRHC CTA businesses and fees were being withdrawn to pay for those guarantees, and used to secure an unfair competitive advantage of misappropriation and theft of monies (Diversion of plaintiffs monies, property, asserts and funds to Vision Enterprise). [11]

_**Issue 1.D Court's error in explain why [communications] were fraudulent:**_ For the foregoing reasons supra in 11A and 11B, the R&R's application of the law for fraudulent communications under the CEA was a fundamental error. Plaintiffs clear explanations of why the communications under the CEA are fraudulent. (See _Goldman_ ID, omitting information that is material that a reasonable person would consider important in altering the mix).  Without referring to the correct sections of the FAC, or addressing materiality, the R&R incorrectly applies the CEA fraud standards. see ECF106 at 1-11. The FAC also clearly states, "L_azzara's statements on January 31, 2017 contained both affirmative misrepresentations and material omissions, as did the fees that appeared in ADMIS' statements the next day, as they materially omitted that they were not "exchange clearing fees" but fees being paid to Boshnack and Rothman, who had placed personal Guarantee and Fees under the G&F Agreements on Plaintiffs accoun_ts." Both the affirmative misrepresentations made by Lazzara and in ADMIS statements contained deceptive omissions, which were **material** and on which Plaintiffs relied to do continue to do business with ADMIS. Because the Court ignores the affirmative misrepresentations and omissions in salient paragraphs (using only  Exh9 ¶2) it reaches an erroneous conclusion.

---

[11] The R&R also ignores deceptive omissions(¶583) of the G&F Agreements, guarantees by Boshnack, _**excessive**_ trailing fees, trade processing fees, transaction fees and material omissions in documents for solicitation (transferred across wires), that were material to an investor, that if known a reasonable investors would have considered it important in deciding how to act. (ECF106.Kad.Br.Pg1-4,Pg.6 ¶583, 3873 ECF15Exh 1-5, )

Plaintiff also explained by deceptive omissions were material, in concealment of guarantees and fee arrangements, (including material fiduciary risk services agreements) with disbarred Vision owners of Boshnack, Rothman, and Felag were material in the mix of information (as well as their 175 CFTC reparations) and any reasonable investor would have chosen not to open accounts or do business with ADMIS or Lazzara which established as the standard for fraudulent communications. (See Supra). The false statements induced Plaintiffs to rely on them to entrust funds with ADMIS, and funds were diverted outside of what is permitted under the CEA. By omitting the incorporated by reference paragraphs (e.g. ¶173,¶ See Exhibits 1-3) as well as all paragraphs related to why the fees incorporated deceptive omissions about the Plaintiffs established under CEA laws, Plaintiffs more than adequately explains "why the [communication] were fraudulent, as they contained material misrepresentations, deceptive omissions, which plaintiffs relied upon.

### *Issue 1.E Court errs in its analysis of fraudulent intent and intent to defraud*

The Court continues its egregious errors on Pg.31 by again incorrectly citing to only Ex9, ¶1) that "these allegations are not sufficient to allege an intent to defraud".[12] But Plaintiffs did not use Ex9¶1 as their pleading of Kadlec's intent to defraud, which was included in detail in ECF106 at 8-12 and the proper application of **Scienter**. To pled intent to fraud, the R&R improperly applied the standards of the Second Circuit to pled Scienter which was explicitly argued and was fundamentally overlooked by the R&R ignoring ECF106 Pg.10[a] Motive Pg.9 [b] Opportunity P.10 [c] Conscious Misbehavior P.10-11 [d] Engaged in Deliberate Illegal Behavior P.11 and [e] Recklessness P.12. The Court's over-reliance on Ex9¶1 which was incidentally incomplete and misfiled as Exhibit 6 – in part due to the lack of time, and could readily be amended – Plaintiffs have also attached Exhibit 3, as an amended set of RICO Predicate acts,  which were already in the Complaint, and could have made more clear to the Court the Scienter, if it was not apparent from ECF106.  While public reports suggest that Courts are generally biased against *Pro-Se* litigants, Plaintiffs argue the R&R abused its discretion to not apply ***any*** of the proper pleading standards for Scienter and Fraudulent Intent. The Court's primary error on Pg.31  is to wrongly conflate that an isolated FAC.Ex.9 ¶1 is  "insufficient to allege an intent to defraud". This error is manifest, because Plaintiffs pleading of Kadlec's <u>intent to defraud</u>, and Scienter, relied on substantial other facts in the FAC, that were adequately argued in their opposition brief

---

[12] Again the R&R improperly acts on arguments waived by Kadlec as Defendants failed to include any such argument for RICO or fraud.

ECF106 at 8-12. All the relevant paragraphs were carefully alleged, including the required standards for. Therefore the Court's singular reliance on an misnamed exhibit was an abuse of discretion and incorrect application of Scienter.

*Issue 1.F Use of Spool v. World Child:* On Pg. 31 the Court also incorrectly applies a citation to *Spool v. World Child (2d Circ 2008)* to claim Plaintiffs did not allege why [communications] were fraudulent*. Spool* is again not a CEA fraud case and does not apply the relevant standards of pleading of fraud under the CEA – and is not relevant to solicitations in ADMIS Corporate Disclosures used to induce customers to open CEA accounts for CTA's trading (See Exhibit 1) that were missed by the Court (¶¶173-174). Neither is *Spool* relevant to the standards of pleading scienter under the CEA. The facts here are inapposite as the R&R did not incorporate Rule 9(b) standards of Scienter under CEA fraud, and neither did the R&R refer to the numerous ADMIS corporate disclosures (See e.g.¶¶173-174, 20-CV-3873 ECF15 Exhibits 1-4) and failed to incorporate by reference Kadlec's role as a corporate insider, with direct involvement in day-to-day affairs within ADMIS, who had direct involvement in the company's everyday business. (See also ECF31 with Kadlec's signature). The use of solely Ex9 ¶1 was a manifest error to ignore Plaintiffs the rightful pleadings in all relevant paragraphs. (Exhibit 2,3).

*Issue 1.G Plaintiffs did not make conclusory allegations ADMIS misappropriated their trade secrets*

Using another argument that was waived in Kadlec's MTD or Reply, therefore used in error, the Report repeats a pattern to not refer to substantive allegations in the FAC on which Plaintiffs relied for the Fraud and RICO. Plaintiffs object to the R&Rs unfounded assertion (unsupported by citing to *any* relevant facts in the FAC) that allegations ADMIS misappropriated trade secrets were conclusory. The Report invents a pleading deficiency of ADMIS misappropriation again on single erroneous paragraph Exh9¶3 (which again was mislabeled) and waived by Kadlec, which is an abuse of discretion.[13]

As discussed in Count 5 for DTSA, Plaintiffs met all the factors of [A] existence of the trade secrets ¶74-86 [B] improper acquisition (¶173-174, ¶583-599) [C] unauthorized disclosure (e.g. ¶611,¶223¶262-266,¶248-249,¶350-¶358,¶97,¶403,¶683,¶624,¶534,¶474,¶390,  ¶262,¶401,  and ¶188-¶215) and [D] ongoing use (¶667-681) and also failed to incorporated by reference the substantive allegations of misappropriation were well-pled in the ADMIS FAC 20-CV-3873 which were

---

[13] See e.g., Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017) (district court abused its discretion by  "inappropriately discredit[ing] significant allegations on which Plaintiffs' claims relied, failing to treat the complaint in the light most favorable to the Plaintiffs, and [failing] to draw reasonable inferences in the Plaintiffs' favor, as required [on a Rule 12(b)(6) motion]").

not conclusory by any means.[14] (ECF106 at 37-38).The substance of the error was not to incorporate by reference relevant parts of the 3873 case, or the above references and the single use of Ex9¶3 was an err of law and fact and abuse of discretion. Plaintiffs well-pled allegations of misappropriation of trade secrets are also a predicate act of RICO included (¶7-9, ¶354, ¶399) Further the Court also ignores the well-pled allegations of misappropriation are a predicate RICO act, 18 UC 1831 el seq, and ongoing use and unfair competitions with VIA, that Kadlec approved and participated in unfair competition. (e.g.¶674-679) The R&R's fatal error also ignore HRF/ Kadlec/ Boshnack/ Rothman/ VIA in unfair competition (making no mention of VIA's unfair competition in its analysis) is also a fatal error. Notably Kadlec also joins  NFA's MTD that Plaintiffs pled "HRF" misappropriated trade secrets. Clearly omitting review all the allegations, this statement was erroneous. Kadlec also stood to profit individually, and further Kadlec has no immunity for illegal dissemination under 18 USC 1833(a) – See also DTSA. Without relying on any of the facts, the R&R made a plain sight error in facts supporting the underlying predicate act of misappropriation of Plaintiffs trade secrets. Therefore the Court using an incorrect singular fact of Ex 9¶3, rendered an incorrect conclusion of law that the underlying predicate acts of misappropriation were not pled.[15]

*Issue 1.H –  Whether Plaintiffs Pled An Enterprise* As a first matter, Kadlec failed to move to dismiss on whether Plaintiffs pled an "Enterprise" or whether Kadlec met the "Operations and Management" test. (See Kad MTD at ECF77, omitting any motion on Enterprise or O&M). Therefore both these arguments were waived. Any "general objections" that are not developed are also waived – cannot move to dismiss by generically stating "pleading was deficient". Failure to meaningfully engage with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)

The Court instead on its own volition, and without citing to any of the elements of "Enterprise" incorrectly uses an inapplicable *DNC case* where a group of Democrats tried to stop Trump winning an

---

[14] Notably the R&R cites to no paragraphs in the Complaint for Plaintiffs pleading of ADMIS's misappropriation in improper acquisition, disclosure and use. Neither does the Court supports its allegation of a "conclusory", nor does it properly incorporate by reference the relevant sections of ADMIS's misappropriation. (See ¶74-86, incorporating ADMIS FAC ¶26-57, Vision FAC ¶32-37)

[15] Plaintiffs object as it is well-pled that Kadlec, in his individual capacity, on the governing body of the FCM, make false statements on the RMP pursuant to CFTC 1.11-1.14, and Kadlec approved the disclosures of Plaintiffs electronic records and trade secrets to its competitors by approving the unlawful risk services agreement which he was responsible as corporate insider from disclosing. Nonetheless that Reports' citation on R&R Pg 30 refers to ADMIS misappropriation.

election. Not only was that a closed-ended RICO case, the facts were inapposite as the *DNC* Court stated that having a common purpose that was "lawful" – meaning stopping a Republican winning – was not an Enterprise as it did not have a criminal purpose. The case is inapposite to the this, because Plaintiffs did plead a common "Purpose" that was "unlawful." Plaintiffs also did not string together Defendants, but also carefully alleged their common purpose, role in the scheme,  and operations on how the scheme was fulfilled.  The R&R application of *DNC* was both erroneous in law, and erroneous in fact as it did not cite to the relevant paragraphs and furthermore, all these arguments were waived in argument by Kadlec. (Notably Kadlec also failed to oppose the arguments in Reply also, so both defenses were waived and not grounds for dismissal). Plaintiffs pled an Association-in-Fact ("AIF") Enterprise. The Report also errs to analyze the pleading criteria of an Enterprise. An AIF Enterprise must have "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. In other words, it is " 'a group of persons associated together for a common purpose of engaging in a course of conduct.' " *Id.* (quoting *Turkette,* 452 U.S. at 583); *see also id.* at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."). *Town of Mamakating, N.Y. v. Lamm,* No. 15-CV-2865 KBF, 2015 WL 5311265, at *6 (S.D.N.Y. Sept. 11, 2015).

Plaintiffs have alleged Boshnack, Rothman, Kadlec, ADMIS, High Ridge, Lazzara and others operated as a continuous unit as an AIF Enterprise, in an open-ended pattern of continuity for an *unlawful* Purpose .. "to purloin monies, and disseminate trade secrets, and to so illegally, using wire fraud and mail fraud" including in a coordinated manner concealing their activities. See also *Purchase Real Estate Grp. v. Jones*, No. 05cv10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (stating that members of an AIF enterprise must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes".) The Report also errs by applying no analysis of the scheme's common Purpose (e.g. ¶9-10) its open-ended continuity and conspirators functioning as a unit and Kadlec's predicate acts in furtherance of the scheme. Further the Court fails to properly apply the standards of Open-Ended Continuity. Plaintiffs also amended their RICO pleading in 20-CV-3871 SAC ECF89 ¶697-780 and if the pleading of Enterprise was in anyway deficient, should have been afforded the opportunity to replead to more closely match the structure of that alleged in 3871 SAC Counts 1 and 2, or move Kadlec to the related case 20CV3873.

*1.I – Report errs in its application of Operations and Management for Corporate fraud*

The Court also errs to dismiss Plaintiffs claim under the O&M criteria. R&R Pg. note XX. First, as outlined above, Kadlec failed to dispute his role in the Operations and Management and his arguments to dismiss on these grounds were waived.[16] Moreover, Courts have held "[t]he `operation or management' test expresses this requirement in a formulation that is easy to apply." *Id.* Instead, while again ignoring all the relevant Predicate Acts (see Exhibit 2-3), the Court plainly errs as it uses inapposite case law and applies a *DNC election*, where groups of independent caucuses were rallying for same "lawful" outcome to overturn Trump being elected. However in this instant case of CEA fraud, with corporate insiders, High Ridge, ADMIS, Kadlec, Boshnack, Rothman, NFA and others, the FAC alleges they conspired and acted together for an <u>unlawful </u>Purpose. Specifically the Court's oversight is in not looking at the relevant paragraphs of  Kadlec independent acts and role in the operation. (Exhibit 2-3).

In any event, the Second Circuit, in *First Cap Asset Mgmt.,* 385 F.3d at 176 (quoting *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir. 1994)), recently observed that "the `operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage."[140] *Id.* at 178 (quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1349 n. 2 (8th Cir.1997)). Courts have held O&M is a relatively easy hurdle to meet in corporate insiders (which is not the case for instance in the DNC Convention who act separately). The Second Circuit has further stated that "it is no great leap to find that one who assists in the fraud also conducts or participates in the conduct of the affairs of the enterprise."[142] *Id.* In addition, where, as here, a defendant's "liability is also premised on a RICO conspiracy theory ..., the standard ... applied] to [the defendant] is even more relaxed." Because the Court overlooked all the relevant fraud paragraphs and Kadlec's individual rule (See Exhibits 1-3) and ignored his role on the governing body of the FCM for CFTC 1.11(d) for the RMP, and also misapplied the standard that one that partakes in the fraud, easily meets the Operations and Management test.[17] Reliant also on Kadlec's waived arguments in ECF77 and ECF 110 the R&R's conclusions were flawed.

---

[16] See Kad.MTD. ECF77 and also Reply ECF110. Again, Kadlec failed to raise arguments on the Enterprise and Operations Management in the MTD and were waived. Therefore the Court erred to dismiss on waived arguments by Defendant.

[17] The Court also misquotes Pg.21 CEA106. Without limitation in an "imprecise" summary, R&R excludes specific reference to ¶504 and Kadlec's role in corporate insider in public documents for ADMIS, he missed the role of Kadlec's individual signature on G&F Agreement and f bulk payments to customers (citing to *ORRecove*ry) and ¶280 application of Kadlec's role under CFTC 1.11(d) on the governing body of the FCM, making false "annual and quarterly" reports to the CFTC. Specifically he omits Kadlec's Predicate acts in Exhibit 3. Plaintiffs had the opportunity to amend the pleading of AIF Enterprise in related case.

*Issue 2A – Kadlec's acts to Conspire under 1962(d) / ECF106 Pg.24:*  Because of the report's manifest error to not review the relevant predicate acts of Kadlec in his individual role as a corporate insider of ADMIS and the corporate disclosures, or his individual role in the G&F Agreements  (ECF31) and the other predicate acts that were already pled in the FAC, this led to an incorrect application of the law, and incorrect conclusion on Kadlec's individual role of conspiracy. For ease of the Court, Plaintiffs have summarized all Kadlec's individual predicate acts that Court omitted  were overlooked by the Court as well a Kadlec's individual role in the fraud (see Exhibits 1-3). The gravamen of the Court's error appears to be to wholly relied on Exhibit 9. Therefore the Court led to an improper conclusion on the well pled conspiracy and improperly failed to refer to any facts or paragraphs on Kadlec's individual participation in predicate acts. Kadlec's conspiracy to commit these acts, was beyond doubt, accurately in conformance with 1962(d). As a result, the Court made an error to not include **any of the facts** related to Kadlec's **conspiracy** to commit the foregoing predicate acts. (e.g. ¶136-138, ¶208-210,).

*Issue 3A -  R&R  fails to apply Group Pleading Doctrine on ADMIS Corporate Disclosures*

On P32-33 the R&R wrongly dismisses substantial claims for fraud under both State Law[18] and also the 7 USC 6(b)[19] against Kadlec in his individual capacity, as both CEO of ADMIS and NFA Board Member, because it makes a substantial error in incorrectly determining fraud was not pled with particularity under 9(b), and citing to the incorrect predicate acts for Kadlec's individual role in the fraud. (Issue #1A) To state a claim for fraud under the CEA, the R&R Pg.32 identifies [5] prongs. [20] The issue before the Court, is only in prong (1). The R&R also made no ruling on [2], [3], [4],[5]. [21]

In arriving at the incorrect conclusion, the R&R, errs to [a] wholly ignore Kadlec's role as a corporate insider, with direct involvement in day-to-day affairs on ADMIS corporate publications

---

[18] If the Court has dismissed Federal Law claims, which Plntfs dispute, the Court erred to exercise supplemental jurisdiction on the State Law claims therefore  proceeding on the merits was in error an this discussion was incorrect.

[19] The Court incorrectly dismissed  valid fraud claims under both the CEA 7 USC 6 (b) and common law fraud. The Court's ruling on fraud under the CEA 7 USC 6(b) is not subject to an exercise of supplemental jurisdiction. The Court also errs to apply inconsistent standards acknowledging 7 USC 25(b) fraud claims against Kadlec but not NFA, which is an inconsistent application of the law. Kadlec's fraud claims were valid and not time barred.

[20] R&R 32 "To state a claim for fraud under § 4b of the Commodity Exchange Act a Plaintiff must allege (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; (3) materiality; (4) and reliance (5) in or connection with any order to make . . . any contract of sale of any commodity for future delivery.").

[21] Notably the R&R does not dismiss on any of the well-pled arguments under prongs [2]-[5] above and only dismisses the fraud claims for prong (1). Therefore Plaintiffs met all the pleading standards for (2) scienter and (3) materiality, (4) reliance (5) connection with the sale of any commodity future delivery and therefore Plaintiffs s have plausibly alleged all other elements to meet the standards to survive a MTD. This dismissal was in error.

(¶173-174);[b] the well-pled allegations in  and Kadlec's individual acts (Exhibit 1, 2 and 3).[22] In plain error, on Pg. 33-34, the Report wholly omits Kadlec's fraud as a corporate insider of ADMIS on its Corporate publications and brochures and legal standards for the Group Pleading doctrine[23]. Specifically the FAC cited to "statements in prospectuses, annual reports, registration statements and press-releases" (See FAC¶¶173-174, ¶583, and incorporated by reference 20-CV-3873 Exhibits 1-5 and referred to Kadlec's direct involvement in the everyday business of the company (see e.g. In  re BISYS Sec. Litig.2005 ECF106 at 3-4).

The plain err is failing to include substantive material paragraphs in the FAC where Kadlec's role as a corporate insider on ADMIS corporate publications on which Plaintiffs relied which were incorporated by reference to the Complaint (¶173, ¶583 and instead focused on a dialog in April 2018. As a result of using incomplete facts, the R&R reached an incorrectly conclusion of law, and incorrectly ignored the group pleading doctrine for corporate insiders. The failure to use material facts and substantive allegations that were the basis of Plaintiffs complaint for predicate acts of fraud relies is an abuse of discretion See Christine Asia Co. v. Ma Id. The specific group-pleading documents overlooked by the Court were Exhibit 1-5 referenced clearly (also attached). Kadlec's MTD ECF77 also waived any outbound MTD that the specific documents contained material misrepresentations and deception omissions.(ECF 77 at 15, joining NFA EC74 at 23, that admitted the FAC alleged ADMIS and HRF committed the fraud. Therefore the R&R erroneously dismisses the fraud claims, by only focusing on the April 2018 statements made directly to Kumaran. (Issue #3E) (See ECF106 at 9-12). To the extent

---

[22]  ¶148 Kadlec's role as corporate insider on G&F Agreements; ¶¶173-174, ¶583Kadlec's role in Group Pleading incorporating by reference 20-CV-3873 Exhibits 5, Exhibits 1-14, and ADMIS 20-CV-3873 ¶77-¶100, ¶¶248-249,¶268, ¶270, ¶275- specifically his role under CFTC 1.11, ¶¶278-280 Kadlec's role in the governing body on approving the risk services CFTC, ¶281-¶283 with facts showing dates and times of CFTC's confirmation the risk services were not disclosed or approved; ¶286, ¶289-290, ¶309, ¶¶343-344, ¶349, ¶355, ¶396, ¶¶416, ¶¶435-436, ¶453 Kadlec's specific role in overseeing fraud and that customer disclosures were not made, ¶522, ¶¶531-532 corporate insider approving the fraud on the RMP to the CFTC, ¶535,537, ¶611 – admitting to sharing electronic data in accordance with the risk services agreement, ¶615, 656, ¶658

[23]  The group pleading doctrine permits a court to presume, at the motion-to-dismiss stage, that "group-published" documents such as "statements in prospectuses, registration statements, annual reports, [and] press releases" are attributable to "individuals with direct involvement in the everyday business of the company." In re BISYS Sec. Litig., 397 F.Supp.2d 430, 438 (S.D.N.Y.2005) (quoting In re NTL, Inc. Sec. Litig., 347 F.Supp.2d 15, 22 n. 26(S.D.N.Y.2004)). In order to invoke the group pleading doctrine against a particular defendant, the complaint must allege facts indicating that the defendant was a corporate insider, with direct involvement in day-to-day affairs, within the entity issuing the statement. See id. at 440–41; see also In re Parmalat Sec. Litig., 479 F.Supp.2d 332, 340 (S.D.N.Y.2007) ("Alleging direct involvement in the company's everyday business is critical to support the [group pleading] presumption."). DeAngelis v. Corzine, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014)

pleading was not clear, since ADMIS fraud was pled with particularity, and Kadlec admits that "ADMIS and HRF committed fraud" this claim was incorrect dismissed.

*Issue #3.B – Material Facts Overlooked*

The thrust of the Court's error is to ignore the well-pled facts in the Complaint (Exhibit 2. ¶148 Kadlec's role as corporate insider on G&F Agreements; ¶¶173-174, ¶583Kadlec's role in Group Pleading incorporating by reference 20-CV-3873 Exhibits 5, Exhibits 1-14, and ADMIS 20-CV-3873 ¶77-¶100, ¶¶248-249,¶268, ¶270, ¶275- specifically his role under CFTC 1.11, ¶¶278-280 Kadlec's role in the governing body on approving the risk services CFTC, ¶281-¶283¶286, ¶289-290, ¶309, ¶¶343-344, ¶349, ¶355, ¶396, ¶¶416, ¶¶435-436, ¶453, ¶¶531-532 corporate insider approving the fraud on the RMP to the CFTC, ¶522, ¶535,537, ¶611 – admitting to sharing electronic data in accordance with the risk services agreement, ¶615, 656, ¶658) that describe in detail Kadlec's individual role as an officer and insider of ADMIS, and in the multiple misrepresentations and omissions in ADMIS corporate documents and disclosures, as well as fraudulent concealments of the G&F Agreements (to which he was signature ECF31); was responsible for signing corporate disclosures, and on the governing body (see CFTC 1.11-1.14) approved and participated in the fraud. The Court's error is to misapply the CFTC 1.11(d) for Kadlec's role on governing body of the FCM and therefore his knowledge of the risk services, as a corporate insider and responsibilities to make accurate disclosures to the CFTC. (¶275-280) The Court also ignored material registrations and misstatements on BASIC and FCM mandated disclosures under securities laws which deceived Plaintiffs to doing business with ADMIS. (See ¶583,) and instead relies upon an isolated set of facts that occurred after April 2018 which were not the basis of Plaintiffs fraud claims.  The Court incorrectly assess Kadlec's role in the public disclosures, as well as on the governing body of the FCM, specifically defined under CFTC 1.11 (d) and therefore was an error of law in application of regulatory statute. By focusing only on April 2018 events, the Court incorrectly dismisses the claims under prong (1).

*Issue #3C–  Rule 9(b) Relaxed Pleading Standards for Scienter and Fraudulent Intent:* In addition the R&R erred to apply the Rule 9(b) standards were also met for both the Group Pleadings and for Scienter. At a MTD stage, Rule 9(b) provides that "[m]alice intent, knowledge, and other conditions of a person's mind may be alleged generally." A more general standard of scienter is applicable because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Wight v. Bank Am. Corp.,* 219 F.3d 79, 91 (2d Cir.2000). The R&R overlooked that Plaintiffs pled facts sufficient to give rise to plausible reasonable inference of fraudulent intent against Kadlec. (ECF106 P1-12) The Second Circuit

has ruled that at a pleading stage, Plaintiffs are only required to plead Scienter, and to allege facts that give rise to a "strong inference" of fraudulent intent. *Lerner,* 459 F.3d at 290; *see also Powers v. British Vita, P.L.C.*(2d Cir.1995). A complaint may give rise to a strong inference of fraudulent intent in two ways. First, the plaintiff may allege "a motive for committing fraud and a clear opportunity for doing so .", *or* alternatively "identifying circumstances indicating conscious misbehavior, recklessness, illegal conduct ," *Powers, 57 F.3d at 184* ( *Beck v. Mnfcrs Hnvr Trust Co* (2d Cir.1987)). By not applying the standards of strong inference of fraud (ECF106 8-12)- of [A] Motive Pg.9 [B] Opportunity Pg.10 [C] Conscious Misbehaviour  Recklesness and [d], the Report improperly applied Scienter and Fraudulent Intent for Kadlec and an incorrectly applied  Rule 9(b). (See (ECF106 id).  (Notably Kadlec fails to oppose Plaintiffs arguments of Scienter ECF106 8-12)

*Issue #3D – Court Rules on Arguments in Reply, Waived in the MTD as fraud as a corporate insider:*
The Court incorrectly moved to dismiss on arguments either (a) waived by Kadlec in his MTD or (b) raised for the first time in Reply.  It is expressly clear in ECF77 that Kadlec's failed to move to dismiss on his corporate role as an insider, and signature on the G&F Agreements, on the material corporate disclosures (such as ADMIS annual reports, consolidated financial statements, registrations, NFA Basic of ADMIS such as Kadlec's signatures ¶173-¶174 20-CV-3873 Exhibit 1-5) in his MTD. There was no dispute that Kadlec concealed the G&F Agreements, which were material to induce reliance on their decision to do business with ADMIS.  Kadlec's scant original motion to dismiss (ECF77 at 15) simply "joined NFA's brief" and by joined the legal argument that plainly acknowledge that Plaintiffs pled ECF74 at 30 that the FAC plausibly alleged "ADMIS and High Ridge committed the fraud". This alone was a plain error by the Court, as Kadlec's MTD clearly failed to move to dismiss on any arguments related to ADMIS and distinguishing his role as a corporate insider. This use of (a) arguments raised only in Reply and (b) arguments waived by Kadlec in the MTD is a plain error by the Court, and materially prejudicial. Worse, Kadlec failed to oppose any of Plaintiffs well-pled arguments in its Opposition on Scienter [a[ motive [b] opportunity (c) conscious misbehavior, (d) recklessness (ECF10. Kadlec's arguments in Reply are also false as Plaintiffs never applied the group pleading statements to "oral statements". (ECF110 at 8). Neither did Kadlec raise in ECF110 Reply raised anything related to April 2018 for Count 3.

*Issue #3E –  R&R makes factual error in Footnote 33 related to NFA Def Mem at 10:* In footnote 33 the R&R also makes a plain error. In defending the Reports use arguments raised *only* in Reply and denial

of SurReply, (noting the Court's denial of Sur Reply and thus use first time arguments in Reply is also impermissible) the Report incorrectly states that NFA Defs. Mem at 10 raised the "group pleading issue of "insiders" under corporate disclosure law. This is plain error. NFA Mem at 10 made no mention of ADMIS and Kadlec in corporate disclosures. Neither did NFA make any argument related to the group pleading doctrine, that Kadlec, as a corporate insider, directing the day-to-day activities of the fraud – and instead admitted to the existence of the fraud. (See Issue #1). NFA Defs Mem 10 also does not reference any of ADMIS sales, solicitations or publications, or Kadlec's signatures or Kadlec's role on the G&F Agreements or as directing the day-to-day affairs of the company. Therefore the R&R uses impermissible arguments in Reply that were never briefed

*Issue #3F – Kadlec's admission of Fraud in Joining NFA's brief:* The Court also errs to ignore that Kadlec joined NFA's MTD where NFA states explicitly that the FAC plausibly alleged "ADMIS and HRF" committed fraud. Kadlec's joining of a Motion that states a company he is CEO of and responsible for directing the day-to-day activities of the company, the FAC met the standards of CEA fraud. The error by the Court is particularly egregious, as Plaintiffs filed the G&F Agreements with Kadlec's signature at ECF31, as well as multiple Corporate publications such as the Consolidated Financial Statements, all with Kadlec's signature, and the Court ignored documents incorporated by reference The Report fails to apply the law for insiders which states  "*No specific connection between fraudulent representations in [corporate disclosures] and particular defendants is necessary where, as here, defendants are insiders* ." See also DiVittorio v. Equidyne Ext Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (See ECF106 1-12).The R&R ignores Kadlec's admissions of ADMIS' fraud is fatal.

*Issue #3G – Whether Kadlec's Omissions in April 2018 Caused Damages:* The gravamen of the Report's error was not just to ignore all Kadlec's individual predicate acts  and his role as a corporate insider (Issue 1A) and to repeatedly ignore (a) Kadlec's individual role in concealment of the G&F Agreements, ADMIS Consolidated Financial Statements and brochures; (b) all Kadlec's role in the G&F Agreements (c) his role on governing body of the FCM in concealment of the ORSA.. (see Exhibit 1,2 and 3) the R&R instead singles out, *only* what it appears to be only the facts related to the 2018 meeting between Kadlec and Kumaran, but then ignores the other facts and all other averments of fraud. (Kadlec did not brief this issue in ECF77). Even if the Court was to solely rely upon the April 2018 (which is an error in itself), the Report further makes a substantial error to not consider the ongoing damages to Plaintiffs and harm to both NRCM and Kumaran in reliance and cause of Kadlec's ongoing concealments, fraud and

omissions. As a first matter, Kadlec's deceptive omissions in 2018 to fraudulently induce them into an NFA Arbitration and were affirmative steps to conceal material facts that would purposefully obstruct Plaintiffs from pursuing Section 22 claims. As registered CTA's, and him as an ongoing NFA member, he had an ongoing duty to both Plaintiffs, to disclose material information. Kadlec also had duties under the Federal Arbitration Act, to disclose the material conflicts of interest required under the FAA of NFA approvals and material facts related to the G&F Agreements and arrangements. Not only were Kadlec's further April 2018 omissions, done with scienter, to fraudulently conceal his activity, they were done to aid and abet the fraud, and constitute predicate concealment acts under 1962(d) (Issue 1J) and also for Scienter (Issue 3C). They were also intended to fraudulently induce and prevent Plaintiffs from enforcing its Section 22 rights which justifies equitable tolling.

Lastly because the Report (in plain error) also ignores Kadlec's ongoing role in unfair competition with VIA (e.g. ¶¶9,11,13,41, 63,84), and participation in the ongoing scheme in direct competition with Kumaran (¶¶675-679) the Report fails to identify, ongoing damages to Kumaran as a CTA now in direct competition with VIA, Boshnack, Rothman from their fraudulent scheme from Kadlec, as well as the damages from NRCM having to be shuttered. The Reports' analysis that Kadlec did not further cause damages, wholly ignores ¶¶761-¶763,765-767) and Kadlec' disclosures and use of Plaintiffs property in ongoing unfair competition, for which Plaintiffs have been substantially damaged. Plaintiffs continue to suffer damages from Kadlec's role in unfair competition with VIA, and reliance on Kadlec's material omissions. In addition Kadlec's concealment in April 2018 were to propagate the fraud and ongoing participation with VIA. Therefore the R&R incorrectly applies damages. Damages further accrued by the misuse in unfair competition were also adequately pled. (¶761-767)

***Issue 3H – Use of Tutor was Inapposite to a CEA Fraud case:*** The Court made another substantial error in the use of *Tutor Perini* for group pleadings under the CEA or financial fraud. First, the Court uses an incomplete cite of the Order which states "Where fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." (quoting *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 641–42 (S.D.N.Y. 1999). As documented clearly in Issue #1A  the Report ignored Kadlec's individual predicate acts, Exhibits 1,2 and 3, and instead manifestly erred to only consider the April 2018 statements.  By ignoring the other predicate acts, and his role as an insider specifically in the ADMIS Corporate Documents, and false disclosures concealing the G&F Agreements, the Court led to an incorrect conclusion as Plaintiffs clearly

did plead dozens of predicate acts to put Kadlec on notice of his role in the fraud. Therefore the FAC clearly outlined all of Kadlec's individual predicate acts.

*Issue 3I  - Courts Refusal to Grant Leave to Amend for Fraud under 7 USC 6(b), CEA:* Finally, since the Court dismisses solely under Rule 9(b) and the Court agrees this is the first time the Court construed claims against Kadlec in his individual, Plaintiffs should have been granted leave to amend. When a motion to dismiss is granted, "the usual practice is to grant leave to amend the complaint." 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989); see also Luce v. Edelstein, 802 F.2d 49, 56 (2 Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."). Refusal to grant leave must be based on a valid ground. *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230 ("outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion"). *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002) The Court also abused its discretion to not allow Plaintiffs leave to amend the Federal Law 7 USC 6(b) and offers no analysis of why an amendment of the CEA fraud claims would be futile.  Also the Court applied inconsistent law to rule on the State Law claims, and then in footnote declined to comment if Plaintiffs should have leave to amend State law claims for fraud. Clearly Plaintiffs pled Kadlec's explicit role in (i) corporate documents and public disclosures under securities laws, which are subject to the group-pleading insiders (ii) the Court omitted reference to 20-CV-3873, Exhibits 1-5) which were material signature to claims for Kadlec's fraud (iv) the Court omitted CFTC 1.11-1.14 and Kadlec's role as an insider and director on the governing body of the FCM, and misstatements to the CFTC on the RMP. The Court also abused its discretion to not permit an amendment or allow Plaintiffs to move Kadlec to the ADMIS action when requested (ECF25) where it was clear that Kadlec' individual role related to his directing ADMIS' day-to-day affairs. This was prejudicial to Plaintiffs and led to wrongful conclusions of law and fact.

*Issue 3K – Kadlec Imputation, Value fraud claims under Section 22 imputed to NFA:* The Court also erred to apply imputation of Kadlec's fraud claims to the NFA. Inconsistent application of law. Allows Kadlec's fraud claims under 7 USC 6(b) but then fails to impute his fraud to NFA. This ruling also inconsistent rights under 7 USC 25 (b). Brought fraud claims for Kadlec and NFA under Section 22 denied one but not the other. Manifestly erred that Kadlec's fraud is imputed to NFA, and therefore NFA's claims for fraud are valid. (See ECF107 at 16). Kadlec's fraud in April 2018 also imputed to NFA to conceal and omit VIA and not disclosure conflicts of interest in the Arbitration to intentionally prevent

Plaintiffs asserting their rights. The Court also erred not to apply any of the imputation law, as well as the In pari Delicto arguments to the NFA.

***Count 4 - Aiding And Abetting Fraud*** Plaintiffs also brought aiding and abetting under 7 USC 25(b)(3). For the CEA claims, Court incorrectly applied equitable tolling and fraudulent concealment.[24] (See Kum Objections on SOL, NRCM joins these arguments, Kadlec also did not move to dismiss on a statute of limitations for Aiding and Abetting so this argument is also waived)

***Issue 4A - Court Errs to Use of Arguments Waived in MTD and also in Reply:*** The Court first errs to use arguments waived in the MTD and also in Reply for "substantial assistance". In Kadlec's MTD (ECF77 at 15) he chose to join NFA's MTD for "aiding and abetting fraud" and ***only*** argued that Plaintiffs did not plead substantial assistance by stating "*failure to act is not a substantial assistance absent a fiduciary duty*" (ECF74 P.30). Plaintiffs countered his arguments in Opposition, vigorously arguing why "inaction" was not required a "fiduciary duty" and demonstrating how Plaintiffs met substantial assistance by "concealment" and "failure to act when required to do so". (ECF 106 Pg.12-18). Instead in Reply, <u>Kadlec failed to oppose any of Plaintiffs substantial assistance arguments raised</u> and moved to a new argument that instead Plaintiffs failed to pled underlying fraud". (ECF110 at 18). It is expressly clear that when Defenants fails to oppose any of Plaintiffs arguments raised in Opposition they are deemed "waived".[25] Plaintiffs again expressly objects to the Court's use of unbriefed arguments on "substantial assistance" that Kadlec expressly waived. The R&R has essentially made up its own arguments on law and facts that were not briefed, for aiding and abetting fraud which is an abuse of discretion and prejudicial.

***Issue 4B - Court Errs in Application of Law for Substantial Assistance:*** The Court manifestly errs in its application of substantial assistance. Under NY law, substantial assistance occurs "when a defendant affirmatively assists, **or** helps conceal, **or** fails to act when required to do so, thereby enabling the fraud

---

[24] Notably the Court ignored Kadlec's overt acts and affirmative representations in April 2018 to conceal his conversion when Plaintiff directly questioned him directly (¶658 stating "Plaintiff did not have any indication of the scheme", Kadlec also intentionally failed to disclose conflicts in the Arbitration, so a to prevent Plaintiffs bringing CEA claims, and the Court also ignored affirmative steps to conceal the G&F Agreements for 523 days with Kadlec's signature that were guarantees on Plntfs' accounts that were material, and required consents and disclosures, (ECF31), to intentionally run the clock on Plaintiffs statute. His April 2018 concealments and failures to disclose. This also supports that Plaintiffs had no knowledge of the "fraudulent scheme" until October 2018 and November 2019 when the G&F Agreements were produced, as well as Kadlec's affirmative steps to conceal and delay liability.

[25]("A Defendant effectively concedes Plaintiff's arguments by his failure to respond to them."). Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107, at *1 (S.D.N.Y. July 24, 2018). It is clear in the MTD, by ***only*** arguing that Plaintiffs pled "failure to act" and this imposed a "fiduciary duty." Plaintiffs object to a repeated instances where the Report ***again*** erred to use arguments not raised by Kadlec in ***any of the his MTD and Reply*** and waived in his outgoing motion. (ECF 74 at 30, ECF 77 at 15, ECF 110).

... to occur." See *Fraternity Fund Ltd.,* 479 F.Supp.2d at 368) (ECF106 at 15-18). Plaintiffs pled all three prongs of substantial assistance. The Court **errs** as it fails to apply prongs (1) (2) and (3) and Kadlec waived any new arguments in opposition to substantial assistance in his Reply[26]. Instead, the Court tries to dismiss the claims on "brand new and unbriefed" argument on 'substantial assistance' whether Kadlec concealed the ORSA from customers (without briefing) that failed to meet pleading standards of Rule 9(b). [27]

*Issue 4C - Kadlec's role in the ORSA is irrelevant and was not briefed by Defendants* The Court's reliance on the risk services is also an error. As stated in Issue 5A (DTSA) and Issue 1A (RICO), first the Court misapplied CFTC 1.11(d) statute to include Kadlec's individual role on the governing body of the FCM and its fraudulent disclosures and approval of the RMP. In any event, there were substantial other allegations of fraud and Kadlec's role in fraudulently inducing customers to do business with ADMIS. The black letter law disclosures of the fees and G&F Agreements.

*Issue 4D - Kadlec's role in concealment of the G&F Agreements and material arrangements with Boshnack and Rothman was sufficient:*

Tellingly the R&R errs as it makes little to no mention of concealment of the G&F Agreement, excessive fees of over 18% and thus reaches multiple incorrect conclusions. Even, arguing inuendo, that the ORSA did not matter, Kadlec's role in concealment of the G&F Agreements that he signed (ECF31), the existence guarantees and withdrawal of excessive fees without disclosures, and his false statements on the Consolidated Financial statements, concealment in ADMIS Basic, and all ADMIS Disclosures and other ADMIS disclosure corporate documents satisfied the 'substantial assistance' tests. Further the R&R is void on the material deceptive omission and Kadlec's role in concealment of HRHC's competing CTA business or the guarantees by Boshnack on Plaintiffs competing trading, or the materiality of Vision's extensive disciplinary actions. (All of which were material in reliance). Plaintiff pled substantial assistance in fraud related to concealment of G&F Agreements and HRHC's competing CTA business.

---

[26] Kadlec did not move to dismiss on "substantial assistance" other than relates to fiduciary duty, and failed to proffer any defense to Plnts Oppositio "substantial assistance" for aiding and abetting fraud. This is not the first time the R&R abused its discretion to go beyond the arguments raised that they expressly waived. See also RICO claims – Court attempts to dismiss on multiple new arguments that were waived by Defendants" and were not even briefed. (See Issue 11A- E raise issues that were waived by Defendants, and therefore not briefed at all before the Court in the MTD - all these arguments should be struck))

[27] Pleading under Rule 9(b) was discussed in Count 3. The Court materially erred to apply the correct pleading under 9(b) of Scienter and fraudulent intent (See ECF106 P12-18)  The Court's error in Rule 9(b) included failure to apply the group pleading standards for corporate insiders on ADMIS corporate documents that Kadlec was the signature and directing the day-to-day activities of the company.

### *Issue 4E - Rule 9(b) standards were incorrectly applied - Engaged in Deliberate Illegal Behavior*

The Court also incorrectly applied the Rule 9(b) standards for fraud and scienter and that substantial assistance can be pled  (see Issue 3B).  Materially, the Court erred not to apply Rule 9(b) when the FAC plead Kadlec engaged in deliberate illegal behavior.[28] Therefore his April 2018 communications are supportive of his intent to conceal fraudulent and illegal conduct. Courts have held that when a party engages in illegal behavior that is sufficient to pled SA. (See ECF106)

### *Issue 4F - R&R errs to apply the Three (3) Prongs of Substantial Assistance:* Specifically, the Report's

error in not applying Kadlec's "substantial assistance" in aiding and abetting fraud is because it relied on an incomplete facts that his conduct is not *just* dependent on the ORSA, but also other parts of the fraud including without limitation the material G&F Agreements and financial agreements with Boshnack and Rothman that were concealed, guarantees by Boshnack, the trailing fees and commissions and the fact Plaintiffs as CTA',s were guaranteed by owners of a disbarred Vision who ran competing CTA businesses which they had a right to know and was material.[29]

### *Issue 4.F.(i) R&R errs in applicable of law in Prong 3 – "failure to act when required to do so".*

Regardless of the Kadlec's role in the ORSA, the R&R manifestly erred to apply the third prong of "**or fails to act when required to do so**" by which Plaintiffs plausibly pled substantial assistance. As this argument  was unopposed (ECF106 17-18), dismissal on this ground was plain error as Kadlec waived argument on Prong 3. Further R&R failed to apply that Kadlec's inaction was designed to aid the primary fraud (id. at 17) and Kadlec's inaction was a reckless violation of a duty to act. (id.at 18, ¶¶143-146,¶¶137-144,¶¶182-188,¶¶211,¶231,¶522-524,¶830-832,¶260-318,¶¶136-147).  Failure to act includes his requirements to disclose as an NFA Board member (see Duties ECF106 at X))

### *Issue 4.F.(ii) R&R errs to apply Prong 2 "helps conceal" the fraud:* The Report also makes a plain error

to not apply legal standards of "helps conceal the fraud". The error is built upon the prior omission in the Report of the references to ADMIS's corporate documents ¶¶173-174, ¶583 (20-CV-3873 Exh1-5 incorporating by reference group pleading corporate disclosures under the Group pleading doctrine.

---

[28] At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) '**engaged in deliberately illegal behavior'**; (3) **'knew facts or had access to information, suggesting that their public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor**.'  ECA, 553 F.3d at 199 (quoting Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)).

[29] Notably neither Kadlec nor NFA disputed the underlying existence of the fraud, calling ADMIS and HRF "fraudsters" and NFA pleading that "ADMIS and HRF committed the fraud" (see ECF74 at XX). Therefore it is inapposite that Kadlec had "no knowledge" of the fraud when he joins NFA' MTD.

Even Kadlec's encounter with Plaintiffs in April 2018 support how he helped concealed the fraud. ¶650-¶686.This also supports equitable tolling due to fraudulent concealment for claims against Kadlec. The R&R errs to not include any facts to conceal Kadlec's failure to disclose the G&F Agreements, and material guarantees and fees being paid to HRF. (ECF 106 P15,¶583,¶195-206,¶136-147 272-¶306,¶289-290). Ignoring these facts was an abuse of discretion. (Exhibit 1)

*Issue 4. F.(iii)  R&R errs to incorrectly apply Prong 1 -  Kadlec's actions to "affirmatively assists"*

The R&R also errs as it fails to apply the "affirmative assistance" by relying solely on whether Kadlec's knew of the ORSA. But this is immaterial to Kadlec's overall duties to disclose the Boshnack arrangements, such as material guarantees and fees, (ECF31) in all Corporate Disclosures, including on ADMIS Basic which were clearly pled as material misrepresentations and deceptive omissions upon which a reasonable investor would not have opened accounts at ADMIS. (See Issue 1A, 3A) above. In plain error the Report makes no reference to documents filed ECF31 show he executed the G&F Agreements, and is responsible and signed for all corporate disclosures (ECF15.1-15.4) and also signed the RMP (Risk management Program) on the governing body which was also fraudulently submitted to the CFTC Reg 1.11-1.14).  Therefore plaintiffs met all the elements of aiding and abetting fraud and/or at a minimum should have been allowed to replead.

*Issue 5 – Aiding and Abetting Conversion:*  For Count 8, as argued in Count 4 the Report's error is in the application of "substantial assistance". The R&R's analysis is flawed because in order for Plaintiffs to plead substantial assistance, they need only to plead that "Kadlec failed to act when required to do so" or "helped conceal the conversion" or provided "affirmative assistance" (ECF106 12-18). In this case, for conversion of Plaintiffs money and funds, which were related to the G&F Agreements (and not the ORSA), Kadlec failed to act when he had a duty to do so. Further for the conversion of Plaintiffs electronic data, Kadlec's approval of the RMP on the governing body of CFTC 1.11-1.14, show he authorized the dissemination of electronic data. The Report also incorrectly applied Rule 9(b) standards for intent to defraud and illegal conduct. Kadlec's role in the ORSA is irrelevant in stating an aiding and abetting conversion, as the G&F Agreements was equally material.  The Report erred to apply any of the correct predicate acts (Issue #1A) assessing Kadlec's role in assisting the fraud and conversion.

*Issue 6A – Incorrect application of law Corporate Officer under NY Law for Conversion*

For NY Law claims, as stated supra pursuant to 1367(c), the Court erred to exert jurisdiction if it had dismissed Federal claims and a similar argument would apply. While improperly exerting

jurisdiction on the State Law claims Further Court repeats the error to not establish the underlying tort of conversion (which NFA and Kadlec admit to). The Report build on its prior error and incomplete analysis that Kadlec is a corporate insider, with direct involvement in day-to-day affairs within ADMIS, directing the company's everyday business. The Court also material fails to apply Kadlec's personal acts and role as signature including but not limited to  (a) the G&F Agreements (ECF31); (b) consolidated financial statements (ECF15.4); (c) corporate disclosure documents (ECF15.1-15.3) and (d) other publications and NFA Basic (e.) IB Agreements. (see Issue 1A,1B)

By using incomplete facts (notably Kadlec's signature on the G&F Agreements) which diverted Plaintiffs monies and electronic records to HRF, Boshnack and Rothman without their consent and used them for a purpose not in compliance with the CEA, and not as instructed by Plaintiffs, the Report reached an incorrect conclusion of law, that "a corporate officer" is liable for the conversion. "[I]t has long been established, ..., that a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[,]" *LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997)*. Second Circuit precedent holds that Kadlec as a corporate officer, directing the day-to-day affairs, is individually liable for conversion. [30]  In any event, the Court then errs in law to not properly apply Kadlec directly participated in the torts including his continued fraud and concealment in 2018 in New York, when directly questioned in April 2018 he directly participated in the conversion. Similar to MFGlobal case, Kadlec, as signatory on the G&F Agreements [ECF31], and RMP (governing body of the FCM under CFTC 1.11) authorized the transfer of funds and electronic data from plaintiffs' accounts, without their knowledge and consent, and such consent was black-letter law, and material in Plaintiffs agreement to do business with ADMIS.

*Issue 6B - R&R Again Uses Arguments Raised by Kadlec  For First Time in Reply that applied only NFA*

The repeated error, is that the Report also use arguments raised only in Reply related to Kadlec's role a corporate officer distinguishable from ADMIS (and noting clearly this argument was waived in the MTD). Further the Court makes a plain error that Kadlec joined NFA's MTD, admitting in clear view the FAC alleges that "ADMIS converted Plaintiffs monies and electronic data" and that raised no

---

[30] *See also In re MF Glob. Holdings Ltd. Inv. Litig., 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014),* holding that [CEO] authorized transfer of customer funds outside of that the CEA and the CFTC Regulations, and  required to be segregated and not used for [] proprietary purposes. See also *MFGlobal, "*the Court is persuaded that the Complaint sufficient facts to enable it to draw a reasonable inference that [CEO], his individual capacity exercised unauthorized dominion over customer funds. *In re MFGlobal id. (2d Cir. 2015)*

argument that "ADMIS did not exert "dominion" over Plaintiffs monies and electronic data". (ECF77 at 15, ECF74 30-31). Thereby NFA's arguments were that "NFA did not exert dominion" were inapplicable to ADMIS and Kadlec exerting dominion. The Court instead uses again first time arguments in Reply, as Kadlec never moved to dismiss on his role as a Corporate Officer and that argument was waived.[31]

***Issue 7A – Court errs in four underlying torts for Civil Conspiracy (Count 10)*** If the District Court has dismissed Federal Claims the Court is not permitted to exert jurisdiction over the state law claims.  The Report's first error is that it failed to properly apply the supporting facts of the underlying torts. The R&R then erred to as it built on previous errors and relied on incorrect analysis of fraud, misappropriation, unfair competition and civil conspiracy.[32]  Because of prior error in not applying the underlying torts in Counts 3, 5, 6 and 7 the Court incorrectly applied NY law to civil conspiracy. The Court is also incorrect that NY law does not recognize an independent claim of civil conspiracy. Under NY law, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" See Litras v Litras, 254 AD2d 395, 396. (ECF 106 Pg24-27) As the Court also erred in 1962(d), it also plainly erred to apply Second Circuit standards under V*en.Tech.Inc v .Nat.Fuel Gas* (2d Cir 1982) that Civil Conspiracy claims survive if ("the circumstances warrant .. the conspirators had a unity of purpose or a common design, understanding, or a meeting of minds in an unlawful arrangement) (ECF106 at 26-27).

***Issue 7B - Court Errs in Unlawful Conduct:*** The Report errs in its application of the law, as it fails to review if any of the arrangements or conduct was illegal or in compliance with the CEA and CFTC Rules. (See *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009)* – holding a party facilitating a contract to partake in unlawful conduct sufficient to plead civil conspiracy).

---

[31] The Court also errs to permit SurReply (See ECFXX, ECFXX) and abused his discretion, when it was also pointed out to the Court that Kadlec in usual fashion had raised arguments in Reply. Kadlec's joining of NFA's brief was his own error and those arguments were waived.

[32] [A] **Fraud (**Count 3) and Kadlec's individual role as a corporate insider on ADMIS publications and corporate documents, his individual role in G&F Agreements, his individual role under CFTC 1.11(d) on the governing body and his false report to the CFTC 1.11(d) to  and [B] **Misappropriation of Trade Secrets**– for Kadlec's improper acquisition (using fraud and misrepresentation as an insider on corporate disclosures, ADMIS consolidated statements, G&F Agreements), disclosure (to HRF, Boshnack, Rothman, Felag and VIA), and Use [C] **Conversion –** erring to review the fact and New York law, that an corporate insider, who signed the G&F Agreements to divert customers monies and property, is liable as an independent tort and [D] **Unfair Competition** - notably the Court also plainly errs in any analysis of the unfair competition between Kumaran (CTA) and the ongoing use in competition by VIA, Rothman and Boshnack [CTA] after April 2018, and Kadlec' role also in that facilitation.

See ECF106 25-27[33]  Further the R&R errs to ignore the material issue of the well-pled allegation that material terms of the arrangement were unlawful and illegal. (¶580).[34] The Report also omits facts that NFA also admits "aspects of the ORSA were illegal" ECF74 at XXX. [35] The FAC clearly documents **illegal activity,** which is sufficient to plead Scienter, Recklessness and also Civil Conspiracy (ECF106 at 26). Kadlec's participation in concealment of the G&F Agreements and ORSA was an unlawful arrangement and is sufficient to plead civil conspiracy for a common purpose of unlawful agreements.

The Report also errs to use waived arguments in the underlying torts, as Kadlec joins NFA's brief, not disputing underlying torts of fraud, misappropriation and conversion.  This alone supports Plaintiffs adequately pled underlying torts lending to civil conspiracy between ADMIS, High Ridge, Kadlec, Boshnack, Rothman, Felag , Lazzara and others, to deceive and defraud customer commodities, to (a) purloining monies, (b) engage in unfair competitions (c) disseminate trade secrets and (d) engage in other fraudulent conduct as carefully pled. [36]

*Issue #8 –Tortious Interference*  For State law claims as stated supra pursuant to 28 U.S.C. 1367(c), the Court erred to exert jurisdiction if it had dismissed Federal claims. The Court's error in Count 9, is in Plaintiffs pleading of "business relations." The Court errs as it fails to cite to any relevant facts in the FAC (which is an abuse of discretion) and appears to dispute that Plaintiffs pleading in ¶574, ¶576 did not adequately meet the standards of business relationship. Plaintiffs assert that the Court erred in this regard, because at a pleading stage, Plaintiffs are permitted to plead "prospective relationship" and "particular existing relations" by specifically outlining business relations ¶574 alleging business relationships with friends and family investing "substantial monies" in formation capital and formation of hedge funds  ¶576 Plaintiffs raised capital from friends and family etc.  If such allegations were not clear, Plaintiffs should have been permitted to amend. Further the Court builds on its prior errors in "whether Kadlec's individually participated in the fraud" (See Issue 1A, 3A, Kadlec individual predicate acts). Kadlec also knew Plaintiff Kumaran, was moving forward with a CTA/CPO in discussions in April

---

[33] The Court should note, that Kadlec does not once at no time deny or oppose any of the unlawful conduct. This is fatal to his motion for which it should be denied

[34] illegal conduct of Kadlec (See ¶158, ¶359-¶403 e.g. ¶ ¶375 7 U.S.Code § 6d (a)(2), ¶377-¶378 - 7 U.S.C. 13(a)(5), ¶382 - 7 U.S. Code § 6k (1), (5)); ¶384 - 7.U.S.Code § 6d(a)(1) and (2); ¶391, ¶393, ¶394 - 7 USC 13 (a)(3) and (4); ¶671-¶679 - 17 USC 13(a)(3) ,¶232,¶364,¶368,¶371,¶375,¶377,¶391,¶394-¶404,¶413,¶570Plaintiffs

[35] The Court also incorrectly thinks Plntfs are bringing claims under 7 USC 13 that is not correct.

[36] Kadlec already joined NFA's MTD in pleading knowledge of the underlying torts of fraud, misappropriation and conversion (ECF74 at 30-32 claiming ADMIS and HRF committed fraud, or ADMIS converted conversion, HRF committed misappropriations etc.

Objections to R&R Kadlec, Page 27

2018, and disclosures of the STORM Fund (20-CV-3871-ECF89.24 ) – and yet proceeded to engage in direct unfair competition with VIA, to attract prospective customers and capital away from Plaintiffs, which also interfered in prospective economic advantage. For these reasons, combined with the facts the Court failed to allow any reasonable amendment the Court erred.  (See ECF106 P.27-30)

### Issue 9.A – DTSA - Court Overlooked CFTC 1.11(d) and Kadlec's individual Role:

The main error in the R&R a pertains to the trade secrets claims is in the Court's analysis of Kadlec's <u>individual role</u> in the unlawful ORSA (the oral risk services arrangements) which granted competitors HRF, Boshnack, Rothman and Felag, the ability to wrongfully acquire and have disclosure (and then use) Plaintiffs trade secrets in unfair competition.

The Court made its error, in not applying CFTC 1.11(d) where Kadlec's individual role in approving an unlawful "risk services", as was required to be disclosed by the governing body of the FCM and by admission of the CFTC was prohibited. (¶282) This error was manifest, as it directly applies to Kadlec's individual role on the governing body, in approving the risk services agreement, under which Plaintiffs trade secrets were both (a) improperly acquired (both using fraud and misrepresentation); (b)improperly disclosed to their competitors, Boshnack, Rothman, Felag, HRF and VIA  and then (c) used in unfair competition. Implemented in May 2016, DTSA allows the owner of a trade secrets a cause of action for the trifecta of misappropriation (a) acquisition (b) disclosure and (use). (see *AUA Private Equity*). By overlooking the key facts that Kadlec was individually responsible under the CEA for the approval of the RMP (as CEO on the governing body of the FCM) and that was required to be its compliance CFTC 1.11-CFTC1.14, and Kadlec's individual signatures on the G&F Agreements which prohibited sharing of customer data, and subsequent admissions on October 12, 2018 that "ADMIS disclosed trade secrets in accordance with its "risk services agreement" which means had to be in the RMP, any risk services Kadlec approved had to be in compliance with the RMP and disclosed. Therefore approved by Kadlec. Since the RMP had to be signed and approved by Kadlec (CFTC 1.11(d)), Plaintiffs also plausibly pled, that Kadlec' authorized the illegal risk services, to be "oral", and details of material terms of  the unlawful provisions of the ORSA, and why Kadlec as signatory had to conceal them. This improper acquisition is also corroborated by key facts that persons at the CFTC Ms Gonzales, that Kadlec and the FCM had concealed these activities. Because Kadlec, as CEO on the governing body. individually approved and signed the quarterly and annual RMP  he directed the risk

services of the FCM and was responsible for disclosures. Therefore at his direction, as CEO, any risk services arrangements that involved sharing trade secrets and customer accounts was at his behest.

Further the relevant facts of Kadlec's improper acquisition and disclosure, also stem from his fraudulent concealment in the RMP (and to customers/Plaintiffs under CFTC 1.55) about the true risk management program for which he individually signed the documents to the CFTC and also signed for instance Consolidated Financial Statements (*See* ECF15.4) in which deceptive omissions concealed that competitors, HRF, Boshnack, Rothman and Felag were acquiring CTA's trading accounts (with full disclosure). Kadlec's also attempted to conceal his ongoing misappropriations disclosures and use in his communications with Plaintiffs in April 2018, and then went onto use them in unfair competition with Vision Investment Advisors ("VIA"). (¶674-678). These facts adequately pled Kadlec's individual involvement in the unauthorized disclosure, as well as improper acquisition, and subsequent use with competitors at VIA. (¶650,¶9,¶11,¶13,¶63,¶84)

*Issue 9.B - Immunity DTSA 1833(a):* The Court also manifestly erred in that it failed to apply the proper immunity exemptions under DTSA 1833 (a) where Kadlec's role in engaging in unfair competition with Vision Investment Advisors (and false statements on registration) which are subject to the immunity exemptions as Kadlec was acting for unlawful purpose and with private interests for his role in ADMIS to profit from the activities. (See ECF106 at 38)

*Issue 9.C - Reply/SurReply:* Finally in a repeated pattern documented in these objections, the R&R also improperly used arguments raised for the first time in Reply. Notably Kadlec's MTD ECF77 only faulted Plaintiffs for not pleading trade secrets (a) value and (b) Information. Kadlec did not once move to dismiss on his own individual allegations that his conduct was differentiated from ADMIS. Neither did Kadlec move to  dismiss or expand upon any other arguments raised in opposition specific to "improper acquisition". Plaintiffs replied (ECF106 at 34-38) on "value" and "information". Kadlec then abandoned those arguments and instead moved to dismiss on new arguments. Neither party briefed Kadlec's role on the ORSA and Plaintiffs had no opportunity to be heard.  Nonetheless Plaintiffs moved for SurReply, and the Court relied on new arguments, which were not able to be responded in Reply. The Court also abused its discretion to not allow Sur Reply to rule on arguments without the opportunity to be heard.

*Issue 9.D Incomplete Facts - Para530:* Finally the Court fails to review the substantive allegations in the Complaint referring only to ¶530. The substantive allegations were discussed in supra. Lastly, Plaintiffs did plead the existence of a trade secrets. Since Kadlec only moved to dismiss by expanding that

plaintiffs did not plead "value" and "information" – all paragraph references, including the accepted precedent that trading algorithms and a CTA's transaction records that disclose positions and executions are trade secrets, as they derive independent economic value from being kept secret. (See *Johnson Controls vs. APT Critical Systems* S.D.N.Y. 2004 - ECF106 at 35)

***Issue 9.E Inapposite Case Frydman:*** Plaintiffs case is also nothing like Frydman v. Verschelier" cited at R&R 28. Plaintiffs pled detailed facts, dates and times, as well as motivation and reasons, on how the illegal risk services (oral) came about, Kadlec's implementation of its material terms, and how Kadlec benefits from the terms to engage in unfair competition and disclosure of CTA's trade secrets to their competitors. (e.g. ¶9,11,13,¶41-43, ¶63,74,¶92-94) The Court should note again Kadlec also fails to dispute (or oppose in Reply) any of the detailed allegations of Kadlec's disclosure of Plaintiffs trade secrets to competitors HRF, Felag, Boshnack and Rothman, or ongoing use in unfair competition. (Failure to oppose an argument is Reply is considered a waiver) Kadlec therefore waived his Reply to oppose Plaintiffs detailed and well-pled allegations of use in unfair competition. Failure to meaningfully engage with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)  These omissions are fatal. For these reasons the well-pled DTSA claims the R&R recommendations should not be adopted.

***Issue 10 – Misappropriation of Trade Secrets under NY Law (Count 6)*** The Court improperly asserts jurisdiction on State Law claims if it has dismissed Federal Law claims. The Court's analysis is in error, as it ignores the facts of Kadlec's ongoing use with VIA in unfair competition and all the well pled allegations of ongoing use for which Kadlec is a direct recipient of the profits and beneficiary. (e.g ¶9,11,13,¶41-43, ¶63,74,¶92-94, ECF106 at 34-38  ).Second, the Court misapplies the law,  as since the advent of the DTSA in 2016, New York law, now applies all three facts of misappropriation of (a) acquisition (b) disclosure and (use) and Courts in NY adopt the same standards. The Court errs to not apply all three. (*See Expert Connect vs. Fowler 2019* holding that claims under New York law and DTSA are similar). Therefore the R&R's application of legal precedent is outdated.

***ISSUE 11 - LEAVE TO REPLEAD OR MOVE KADLEC TO THE ADMIS RELATED CASE***

The Court cites to no reason why Plaintiffs should not be entitled to amend Counts 3,4,6,7,8,9 and 10.  [O]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). The Courts reasons to not leave to amend the RICO and DTSA claim were also in error, as if the allegations related to Kadlec's approval

of the risk services under CFTC 1.11(d) and disclosures to VIA, HRF, Boshnack, Rothman, and Felag for use in unfair competition were unclear, Plaintiffs could remedy that. Also as was clearly explained in Counts 11 and 12, and by virtue of the Supplemental Exhibit, (Exhibit 3) and the revised pleadings of RICO in 20-CV-3871 SAC ECF89 the Court's decision to not leave to amend the RICO was also unfounded as is customary in fraud *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2 Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").

For these reasons, as well as the multiple attempts to use arguments that were waived either in the MTD or in Reply, Plaintiffs object to the R&R in full. Further to the extent Plaintiffs were prejudiced by not having more than 14 days to file their Opposition (or some arguments were not clear) as the Court set multiple overlapping orders, Plaintiffs also should be allowed to replead their Federal law claims, and/or transfer Kadlec's claims to the ADMIS case 20-CV-3873 where similar causes of action are pending.  For the reasons cited in the brief related to NFA, filed by NRCM, Kumaran joins those arguments and Kadlec's claims were equitably tolled by his fraudulent concealment and equitable estoppel.

### ISSUE 12 – 7 USC 25(B) CLAIMS

In the interest of efficiencies, all arguments related to his imputation of violations to the NFA under 7 USC 25(b) are incorporated herein by reference and not duplicated.

In the interest of efficiencies, Plaintiff Kumaran also respectfully joins all arguments raised by NRCM in the NFA objection brief.


**Respectfully submitted**

//BMA//

Brian M. August

Counsel for NRCM

**Plaintiffs Kumaran joins the arguments raised here by NRCM for all claims against Kadlec/**

//SSK//

Samantha S. Kumaran

Pro-Se Plaintiff