**IN THE UNITED STATES DISTRICT COURT**
**SOUTHTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, | ) | |
| Et al | ) | Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | ) | Judge: Hon Gregory H. Woods |
| | ) | Magistrate Judge: Stewart D. Aaron |
| -against- | ) | |
| | ) | **KUMARAN'S OBJECTIONS** |
| NATIONAL FUTURES ASSOCIATION, LLC | ) | **TO THE REPORT AND** |
| Et al., | ) | **RECOMMENDATION** |
| Defendants, | **)** | **FOR NFA DEFENDANTS** |
| | ) | |

## PLAINTIFFS OPPOSITION AND MEMORANDUM OF LAW TO THE REPORT AND RECOMMENDATIONS FOR THE MOTION TO DISMIS AGAINST NFA, WAHLS, KIELA

Respectfully submitted,

//SSK//

Samantha Siva Kumaran

*Pro-Se* Plaintiff


Plaintiff NRCM in the interest of efficient joins the legal arguments in this motion


//BMA//

Brian M. August

Counsel for  NRCM

AugustLaw NY

100 Willoughby Street #9E

Brooklyn, NY 11201

### *ISSUE  1A – STATUTE OF LIMITATIONS*

Plaintiffs object to the R&R in full as it ignored the most important argument of bad faith and fraud needed to plead a cause of action under 7 USC 25(b). Based on this omission (which ignored nearly all the briefings of Defendants and Plaintiffs) it renders any analysis of statute of limitation and whether Plaintiff's cause of action under 25(b) was timely based on inaccurate application of the law.

Plaintiffs first objection relates to the R&R's incorrect conclusions of the time bar of all Plaintiffs CEA 22(b) claims. Plaintiffs brought six (6) valid claims (Counts 1,2,3,4,8 and 13) under Section 22(b) of the CEA: [a] Counts 1 and 2, for NFA, Wahls, Kadlec, and Kiela's bad faith failure to enforce its compliance laws; [b] Counts 4 and 8 against NFA, Wahls, Kadlec and Kiela for their bad faith aiding and abetting in the foregoing ; [c] Count 3 against NFA and Kadlec for fraud under 7 USC 6(b) and the private rights of action under the CEA in a private right of action for fraud and (d) Count 13 against NFA for bad faith failure to enforce Arbitration rules, which is a prescribed right of action under 7 USC 21(b)(10). The R&R incorrectly applied the timing of accrual and failed to apply equitable tolling of fraudulent concealment for 7 USC 25(b) of the CEA for all claims  as well as equitable estoppel.  Further the Court erred to dismiss Count 3, 4, 8 and 13  when the arguments of statue of limitations ("SOL") was expressly waived by Defendants and not even raised in their MTD. (See Issue 1A)

Moreover the R&R fails to distinguish between a cause of action under 7 USC 25(b) which requires a heightened pleading of bad faith and causation, as difference from those of a price fixing scheme under 7 USC 25 (a) (Issue 1B). The R&R relies heavily on two cases *Levy* ( D.J. Woods) and *Behrens,* which as discussed herein are inapposite as they were 7 USC 25(a) price fixing claims. The *Levy* case  also failed to pled any due diligence whatsoever for multiple years.

Further, most importantly the Report applies *distinguishable* case law, in *Levy and Behrens* that fails to note that unlike Levy, Plaintiffs are registered CTA's (NFA Members) who are compelled to bring claims at the NFA, and then ignores the well-pled facts, that they did in fact bring their claims within six (6) months, due to affirmative actions by NFA to fraudulently induce them into an NFA Arbitration, to prevent them from bringing their CEA claims. (See 20-CV-3873 ECF71, ECF78, ECF43, ECF38). Most glaring of all, the R&R wholly ignores to even review the exhaustive string of due diligence by Plaintiffs and affirmative steps to conceal material facts by NFA and Kadlec which justify equitable tolling and equitable estoppel. (Exhibits 1 and 2 document the affirmative steps overlooked).

The R&R also errs to ignore NFA and Kadlec took affirmative steps to fraudulently conceal *material facts* to intentionally prevent or delay Plaintiff bringing a 7 USC 25(b) claim (see Exhibit 2). (*See Behrens* Id outlining review of material facts concealed). The FAC also states once they learned of the cause of action under 7 USC 25 (b) **on April 6, 2019** they notified NFA in letter on April 9, 2019. (ECF1 ¶177-178) and that NFA then took further affirmative steps to deny a conference with the Panel to prevent an exit from the Arbitration, and obstructed subpoenas, even issued on September 17, 2019 (ECF1 ¶220-231) to inequitably conceal their wrongs. The Court's failure to analyze even once, the elements of the equitable tolling, fraudulent concealment and solely on not applying fraudulent concealment[1] was an abuse of discretion to conclude there is outright dismissal of six (6) valid CEA claims . SOL is a fact based inquiry that cannot be determined at a Motion to Dismiss stage. *Harris vs. City of New York 2d Cir.1999*.

Plaintiffs have pled facts that expressly NFA and Kadlec undertook a plethora of affirmative steps to obstruct Plaintiffs from bringing its CEA claims under 7 USC 25(b), and the FAC is replete with dates, times, persons, speakers, and including i.e. deliberately stalling and taking no less than 273 days to appoint a Panel  (violating Rule 3(a), ¶XX¶) and affirmatively violating 7 (a)(2) to delay over 523 days to withhold material facts such as the G&F Agreements which was a material fact needed to plead a fraudulent concealment scheme, to give cause of action under 7 USC 25(b) and waiting till November 12, 2019 to even disclose the "risk services" was oral.  The failure of the Court to consider even one of the affirmative steps taken by NFA, or one fact of due diligence by Plaintiffs and omit even one fact of itemization of the material facts concealed was plain error. (See *Behrens ID* – Plaintiffs should identify material facts concealed by Defendants to seek fraudulent concealment and equitable tolling)  The facts pled in this case how NFA's own conduct was to compel Plaintiffs to improperly bring claims at the NFA, without disclosing the conflicts of interest so as to avoid their own CEA 22(b) liability.

The Report also erred to not distinguish between a cause of action under 7 USC 25(b), constantly relying on *Levy* and *Behrens* claims under 7 USC 25(a) which the Congress expressly states in the code does not apply registered futures associations. (see Issue 1A).

Additionally, using arguments not briefed by the parties and waived by Defendants, the Court's erred to interpose incomplete facts, without affording Plaintiffs the opportunity to be heard on the issue and , and in plain error relying on "incomplete snippet" of a Sep 29 email from IB Lazzara. The use

---

[1] The Court also incorrectly applies the separate doctrines of fraudulent concealment, equitable tolling and equitable estoppel. (See Issue 1E below)

of partial facts without consideration of *all* the contents of the emails, including all facts of the emails by and between Plaintiffs and Funda Agkok NFA on the same dates Sep 27 and 29, (ECF1 Exhibit4). Not only did the Court misquote the Lazzara Sep29 email (the actual words stated were "NFA, CFTC and CME"), no reasonable investor of ordinary intelligence, could infer from that email, as well as the emails in the chain, that *all the regulators* NFA,CFTC,CME were parties to a "fraud" or had ***failed to enforce*** the rules ***in bad faith***.  The Sep29 email did not put Plaintiffs on inquiry notice NFA were parties to a fraud or had caused a CEA violation. The Report proceeds to ignore public documents available at that time (ECF 57.10) which mention nothing about a scheme, but only a transfer of "*prior* Vision customers in 2014 to ADMIS". See FAC Exh10. Since NRCM was not even formed till 2016, nothing in that public announcement or any other public literature, could alert Plaintiffs or an ordinary investor that NFA had committed a bad faith violation of its rules or fraud to bring a cause of action under 7 USC 25(b) – let alone that it was party to a "fraudulent scheme". The more reasonable interpretation of Lazzara's email, was he was lying (which he had repeatedly done) and/or ADMIS had breached its contract. (which is not a Sec 22 claim at all). Plaintiffs then diligent started inquiring about the facts (ECF1¶4) and was met with NFA's repeated affirmative steps to conceal their own part in the wrongdoing.

Notably the Court then ignores ¶282-¶283 3873 ECF15.5¶39-42 communications with the CFTC, and CME and NFA that corroborate that all the regulators were parties to a fraud. The Report then improperly ignores NFA's own statements by ¶¶695-696, ¶980-¶983 demonstrating that they took affirmative steps to conceal their liability pretending they knew nothing about it and were "going to start compliance investigations" if Plaintiff paid $9500 to the NFA to bring their claims at the NFA Arbitration instead – therefore intentionally and affirmatively taking steps to prevent Plaintiffs bringing Section 22 claims, and materially failing to disclose their conflicts of interest. Before this Court in related case 20-CV-3873 are also related motions specifically to do with the NFA's fraudulent inducement of the NFA Arbitration (ECF78, ECF71) which are material to affirmative steps, and to delay factual discovery to run the clock on CEA claims.

The Court therefore made a plain error that the Sep29 email (taken in isolation without all other facts such as the Sep 29 emails to the NFA), would put a reasonable person in inquiry notice of a 7 USC 25(b) claims, let alone with all the regulators that the NFA, CFTC, CME, were ***all*** part of a fraud and no ordinary investor would have irresponsibly gone to Federal Court on September 30, with  a cause of action against the NFA,CFTC and CME under 7 USC 25 (b). FRCP 11(b)(3) requires an attorney to sign

pleadings that Plaintiff have sufficient information for a <u>cause of action</u> against NFA – for "bad faith failure to enforce the rules, that caused Plaintiffs damages". Plaintiffs had no such valid "cause of action under 7 USC 25(b)(2) or (3) on September 30, 2017.[2] Further the R&R erred to consider any facts, for individual Kadlec's affirmative steps. ¶658 where Plaintiffs on April 20, 2018 state "*At that time Plaintiffs did not have knowledge of the extent of fraud and participation or what Vision was doing. Nor did they know with certainty its account had been disseminated or anything about the existence of risk group, or Boshnack's guarantees.*" The FAC is also expressly clear that even in April 2018 Plaintiffs were still unclear about High Ridge futures role. The FAC alleges that it was not until October 12, 2018 they even learned of the risk services (¶611) and not until November 12, 2019 that they even heard that their accounts have been guaranteed by Boshnack (¶XX). ¶656 pled Kadlec's inducement to the NFA forum.

Plaintiffs ignorance to the 7 USC 25(b) claim, despite repeated due diligence to inquire is pled through the FAC. (¶619-620, ¶627-628– had no knowledge of NFA' conduct, ¶611– had no detailed knowledge of the risk services agreement until October 12, 2018). Outlined in Exhibits 1 and 2 are the facts overlooked in the R&R of both the due diligence taken by Plaintiffs, and the affirmatively steps taken by NFA to conceal their liability, using the NFA Arbitration as a shield (because Plaintiffs were members) to intentionally obstruct Plaintiffs from bringing CEA claims. It took subpoenas from the Arbitral Body, and the Arbitrators issuing a stay on November 19, 2019 to allow Plaintiffs to finally assert their rights. The R&R again overlooked NFA's failure to address the conflicts of interest in Plaintiffs having simultaneous CEA claims against them in Court and appearing as witnesses in an Arbitration on the same facts – and the Panel's Order of a stay on November 19, 2019 is what permitted Plaintiffs to bring their claims. Therefore the Court also failed to apply the equitable estoppel doctrine.

---

[2] The R&R's conclusions are also inapposite because Plaintiffs for instance could not have determined an injury 7 USC 25(b) from Count 13 an arbitration, until NFA violated the Arbitration rules (7(a)(2) and Rule 3(a)(i) failure to appoint a Panel for 275 days - which as alleged wasn't even commenced until 2018, could not possible have given rise to a cause of action in 2017. Those violations were not known until 2018. Therefore the Court's lumping of all bylaws, rules and regulations under 7 USC 25(b) accrues, even before they occurred is inconsistent. For example in Count 2, Plaintiffs brought a cause of action for bad failure to enforce compliance rules NFA 2-2 (i) and Bylaw 301(a)(c)(d)(e) in the registration of <u>Vision Investment Advisers</u> in 2018, which Plaintiffs learned about on October 12, 2018 (¶XX). It is incongruent that Plaintiffs learned of this cause of action for VIA in September 2017 <u>prior to even the registration of VIA,</u> or the arbitration being commenced. (Count 13). The mistake the Court makes is to not apply distinguishable causes of action permitted under 7 USC 25(b) for each bylaw, rules and regulation that was violated, and not just the supposed fraudulent scheme. Likewise the existence of Wahls and Kiela's audits of separate causes of action under 7 USC 25 (b)(3) were distinguishable from ADMIS' purported fraud, and are tolled until February 26, 2019 for Keila and Wahls audit on April 6, 2019. (¶720)) and the fact show Plaintiffs only learned of the "bad faith" audits that were causation on Feb 26, 2019.

The failure to apply any inquiry into the elements of fraudulent concealment was a plain error ignoring all NFA's affirmative steps. A court's decision to apply or decline to apply equitable tolling is reviewed for abuse of discretion.  Zerilli–Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74, 81 (2d Cir. 2003)*

*Issue 1A – Defendants waived any SOL argument for Counts 3, 4, 8 and 13* The MTD's (ECF74 and ECF77) specifically failed to move to dismiss that Plaintiffs statute of limitations had expired for Counts 3, 4, 8 and 13. When a Defendant fails to raise timely an argument in a MTD of SOL, it is considered waived (Orthdx Jwsh Coal. of Chstnt Rdge v. Vill. of Chstnt Rdge NY, No. 19-CV-443 2021 WL 3605041, at *6 (S.D.N.Y. Aug. 13, 2021)  ("Defendant waived its statute of limitations defense by not raising it in its motion to dismiss.") [3] Further, Plaintiffs expressly raised this point that Dfndnts had waived SOL on Counts 3, 4, 8 and 13 in their opposition. (See ECF107 at 40). Again Defendants, failed to oppose this in their Reply papers (ECFX, ECFXX). Any uncountered arguments raised by Plaintiffs in their opposition are also considered waived. "Failure to meaningfully engage with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A Defendant effectively concedes Plaintiff's arguments by his failure to respond to them."). Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107, at *1 (S.D.N.Y. July 24, 2018).Therefore dismissal on an limitations on Count 3, 4, 8 and 13 which were not raised, waived or not briefed by Defendants in their MTD was a plain error and was manifestly unjust.

*Issue 1B – Cause of Action under 7 USC 25(b) is distinct from Price Fixing 7 USC 25 (a)(1):* The CEA's two-year statute of limitations, provides that any private action for violation of the CEA "shall be brought not later than two years after the date the cause of action arises"7 U.S.C. § 25(c) A cause of action "arises" under the CEA when a party is placed **on inquiry notice of the violation**, or, in other words, "when circumstances would suggest to a person of ordinary intelligence the probability that he has been

---

[3] [F]ailure to raise the defense in a motion to dismiss, has been held to be a waiver." *Santos v. Dist. Council of N.Y. & Vicinity of Untd Brthd of Carpenters*, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978); *se S.E.C. v. Amerindo Inv. Advsrs*, 639 F. App'x 752, 754 (2d Cir. 2016) (summary order) ("[The defendants] waived their statute of limitations defense by not raising it in their motion to dismiss the amended complaint.") see Rosenblatt v. City of New York, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (Lynch, J.) ("Plaintiff effectively concedes defendants' other arguments … by her failure to respond to them...."); see generally Abrahams v. Young & Rubicam Inc., 79 F.3d 234, 237 (2d Cir. 1996). A statute of limitations defense is waived if it "is not included 'at the earliest possible moment.' " *Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners of Am.*, 619 F.2d 963, 967 n.5 (2d Cir. 1980) (quoting *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968)). *Muia v. Brookview Rehab Funding, LLC*, No. 10-CV-1315, 2012 WL 1014753, at *3 n.4 (N.D.N.Y. Mar. 23, 2012) (holding that a statute of limitations defense was "deemed waived" where the "[d]efendants did not raise it in their initial [m]otion to dismiss").

[defrauded]." Kolbeck v. LIT Am., Inc., 923 F. Supp. 557, 564 (S.D.N.Y. 1996). The Court's first error is to apply the cause of action for inquiry under 7 USC 25(a)  - a price fixing case -  to the cause of action for a registered futures association under 7 USC 25(b)(2) (3) and its compliance officers for bad faith. It is expressly clear that 7 USC 25 (a) as codified by Congress <u>does not apply</u> to registered futures associations. In order to plead a cause of action under 7 USC 25 (b)(2) and (3) Plaintiffs must plead <u>heightened pleading standards</u> of (i) bad faith and (ii) causation by the NFA. Therefore the cause of action under 7 USC 25 (b)(2) and (3) is <u>not the same</u> as under 7 USC 25(a) and certainly not the same as those under price manipulation. Supporting this distinction the CEA is explicit in the words "cause of action arises". If Congress had intended a 7 USC 25(a) cause of action to apply to the NFA it would not have expressly carved it out. Therefore the relevant inquiry is when the cause of action arose, or when Plaintiffs were on inquiry notice of a cause of action for 7 USC 25(b)(2) and (3). This means specifically Plaintiffs had to plead that NFA, Wahls, KIela and Kadlec acted <u>in bad faith</u> failed to enforce their rules, which caused Plaintiffs damages. (Is it not the same as pleading a general "price fixing scheme" or "fraud"). The Report also erred to ignore the substantive pleadings of bad faith (ECF107) which in turn led to an erroneous application of law. The distinction is separate from, *Behrens* and *Levy*, banks manipulating metals prices, which could have been known on public price reports.

***Issue 1C – Court Errs on Inquiry Notice on September 29, 2017:***  Raised for the first time and unbriefed without Plaintiffs opportunity to be heard [4] was the R&R suddenly adopts that an incomplete snippet of a Sep29 Lazzara email was sufficient notice of a 7 USC 25(b) bad faith cause of action. This is false. Under 7 USC 25(a) an injury for a price-fixing claims is differentiated from the heightened pleading of bad faith needed to bring claims against the NFA under 7 USC 25(b). The Report then makes several factual errors. *First* it misquotes the email and ignores the salient quote "***NFA, CFTC, and CME***". No reasonable investor of ordinary intelligence would construe that email, to be notice ***all the regulators*** had committed a fraud (or had in bad faith caused a CEA violation). Second, it ignores the other facts, i.e. on Sep29 Plaintiffs email <u>to Lazzara</u> indicated they were not in fact aware of a scheme, but were diligently inquiring about what the relationship was. Material facts show they only uncovered their trade secrets were disclosed on October 12, 2018 (¶611)). Third, and the most glaring error of all, it also ignores the simultaneous emails on dates Sep 27 and 29, from Plaintiffs **to the NFA** (See ¶715,

---

[4] Plaintiffs also argue this was not raised in NFA and Kadlec's briefs, and this argument was waived.

¶613-¶619 ECF1 Exhibit4[5]) showing Plaintiffs due diligence and NFA's affirmative steps to conceal. The Report also errs to ignore other facts, incorporated in the FAC (Exhibit 12) that the only public notice related to NFA's approvals of ADMIS/HRF was an aged 2014 transfer of Vision customers. Taken together, Plaintiffs had no ability to construe from ECF57.12 that had anything to do with an ongoing relationship as NRCM was formed in 2016[6].  Other facts show no other public notice of such a "relationship approved" by the NFA, CFTC and CME sufficient to show bad faith causation. Facts show NFA and Kadlec intentionally concealed material facts of the G&F Agreements (ECF31) until **November 12, 2019.** to prevent CEA causation being known. Other facts, show the Sep29 email was not sufficient to show regulators committed fraud and ignores Plaintiffs calls to the CFTC and CME in May 2018. (¶282, incorporating 3873ECF15.5 ¶39-42). Both these calls suggested that the regulators were not parties to a fraud. Further, most telling is the Reports omission that on March 25, 2018 NFA, pretended they knew nothing about it, and as part of the fraudulent concealment, stated they would implement "compliance investigation" *only* if they brought their claims at the NFA Arbitration for $9,500 and thereby intentionally inducing Plaintiffs to prevent bringing their CEA claims. Therefore putting all the facts together, it is clear that NFA and Kadlec, by their own affirmative steps, fraudulently concealed their role in the CEA violations for 25(b).

The Reports suggestion is irresponsible - that Plaintiffs as registered CTA's, based one partial snippet of a sentence on Sep 29, 2017 grouping "NFA, CFTC and CME" to having approved a "non-descript" and  "non-public relationship", Plaintiffs should have run into Federal Court on September 30, 2017 and brought suit against *all regulators* for fraud. This is nonsensical. The R&R fails to apply any of the due diligence Plaintiffs undertook to obtain the material facts to plead a claim for bad faith under 25(b). Therefore the Court made a plain error that an edited clip, without review of all the facts was sufficient that Plaintiffs could bring a cause of action for bad faith under 7 USC 25(b).[7]

*Issue 1D - Levy and Behrens Support Plaintiffs Equitable Tolling and Plaintiffs right to the fraudulent concealment doctrine and equitable estoppel.*

The R&R also does not properly apply the Second Circuit ruling on *Levy* which supports Plaintiff relief. The Second Circuit ruled, that once [Levy] was aware of this injury, the CEA gave her two years

---

[5] Plaintiffs note a typo in ¶614, which referred to Exhibit 4 instead of ECF1. Exhibit 4. Nonetheless the Court oversight of ¶613-¶619 was a manifest error as it used events on September 29, 2017.

[6] Lazzara email could only have been construed to have applied to a past even in 2014 that could not implicate NRCM.

[7] "Defendants bear a heavy burden in establishing that the plaintiff was on inquiry notice as a matter of law." Newman v. Warnaco Grp., Inc., 335 F.3d 187, 194–95 (2d Cir.2003).

to ascertain the facts necessary to bring her suit. 7 U.S.C. § 25(c). Levy v. BASF Ltd., 917 F.3d 106, 109
(2d Cir.). Accordingly, Plaintiffs had two years from Sep 29, 2017 to "ascertain the facts" needed to
bring their suit. Unlike *Levy* however, Plaintiffs have set forth detailed due diligence to "ascertain the
facts" for a 7 USC 25(b) suit and enumerate affirmative steps taken by NFA to conceal material facts
needed to bring suit concealed (See Exhibits 1 and 2) which invokes the fraudulent concealment
doctrine, as well as the extraordinary circumstances that Plaintiffs were fraudulently induced into an
NFA Arbitration under equitable estoppel, that prevented Plaintiffs from bringing a CEA claim due to a
conflict of interest in being under a FAA.[8]. Levy on the other hand did no due diligence.

Likewise the R&R errs in law and incorrectly applies precedent of *Behrens* which states "the law
requires Plaintiffs to show that  MTD Defendants' allegedly wrongful concealment "prevented [their]
discovery of the ***nature of the claim*** within the limitations period." *Butala v. Agashiwala*, 916 F. Supp.
314, 319–20 (S.D.N.Y. 1996) (Noting Behrens use of "**nature of the claim**') - and requiring that Plaintiffs
show how "when Defendants wrongfully concealed certain ***material facts*** .. and how those alleged acts
of concealment prevented Plaintiffs from learning about the ***nature of their claims.***" (Ex 1 and 2)

**L**ikewise, *Behrens* states **"***Indeed***,** the law requires a plaintiff to identify **material facts** that were
wrongfully concealed. *See Koch*, 699 F.3d at 157; *cf. Levy*, 2017 WL 2533501, at *8"  Behren WL
1437109 at *7. However the Court errs as it ignores all ***material facts*** that were concealed for Plaintiffs
to even bring a 7USC25(a) claim, let alone a 7USC25(b) claim for bad faith failure to enforce rules (which
is a  nature of the claim). Exhibits 1 and 2 lists all *material facts*  concealed that were overlooked by
the Court.[9] The R&R failure to review these are incorrect application of ability to bring 7 USC 25(b)
claims and the ***nature of the claims*** against NFA, Wahls, Kiela and Kadlec. The Court erred in that the
"nature of the claim" under 7 USC 25(b) is by Congress' statute, different from that under 7 USC

---

[8] The Court also ignores Plaintiffs rights under 9 USC 1 el seq to be entitled to fair and neutral forum, and NFA's failure to
disclose conflict of interest. Also in related case pending before the Court in 20-CV-3873 is the conflict in 7 USC 25(b) and
9 USC 1, for Plaintiffs rights to equitable fairness in a non-conflicted arbitration and therefore could not bring CEA claims
against NFA, while simultaneously under NFA Arbitration where there is unconscionability of the rules (NFA Rule 17) that
NFA can interpret the rules and act also in arbitral capacity to interpret the rules. They cannot serve simultaneously as
Neutral Administrators and Defendants under Sec 22 in Federal Court. (See 20-CV-3873)

[9] Material Facts include without limitation (a) the G&F Agreements ¶XX, ECF31, concealed by NFA for 575 days until
**November 12, 2019** (b) the existence of the ORSA ¶XX, concealed by NFA and Kadlec until **October 12, 2018 (c)** the existence
of Kiela's audits where she failed to enforce the Compliance laws on February 26, 2019(¶XX, (d) existence of Wahls audits
on **April 6, 2019** (f) CFTC's denial of any knowledge of existence of the risk services agreements  on May 12, 2018; (g) CME's
denial of any knowledge of any risk services agreement on **May 10, 2018**. (h) facts that the risk services was "oral" to avoid
compliance with the CEA, which was not known until **November 12, 2019.**

25(a)(1). **Arguing inuendo, even if Plaintiffs had notice of their "injury" on September 29, 2017, the NFA took affirmative steps to conceal material facts to prevent Plaintiffs from learning the <u>nature of a claims</u> under 7 USC 25(b) and then took additional affirmative steps to prevent them from bringing suit, despite repeated due diligence by Plaintiffs, including issuing subpoenas. (See Exhibit 1, 2)**

In *Behrens* the Court also held that Plaintiffs needed to identify "any steps they took to determine whether **<u>they had a claim</u>** against the MTD Defendants during the limitations period." But this is inapposite to the facts here as, in this case Plaintiffs did identify specific steps, identifying "if they had a claim" against NFA. ¶613-¶760 . These steps were also overlooked in plain error.

*<u>Issue 1E – Court erred to Apply Fraudulent Concealment Doctrine</u>*

The R&R also made a plain error on the doctrine of equitable tolling for fraudulent concealment. The statute of limitations for a violation of the CEA may be tolled if a plaintiff can show fraudulent concealment of the violation by a defendant. *See In re Issuer Antitrust Litig., No. 00 Civ. 7804, 2004 WL 487222 (S.D.N.Y. Mar, 12, 2004)*; *In re Nine West Shoes Antitrust Litig., 80 F. Supp. 2d 181 (S.D.N.Y. 2000).* The doctrine of fraudulent concealment serves to "prevent a defendant from `concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'" *New York v. Hendrickson Bros., Inc., <u>840 F.2d 1065, 1083</u> (2d Cir. 1988)*[10] "[A] statute of limitations may be tolled due to the defendant's fraudulent concealment." *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 157 (2d Cir. 2012). The doctrine is designed for application in cases where a plaintiff is unaware of his cause of action because of defendant's fraudulent conduct. *Torre v. Columbia University,* 1998 WL 386438 at *7 (S.D.N.Y. July 10, 1998). The key inquiry is "not whether the plaintiff had all the information available to him, but whether plaintiff knew enough to sue." *Ruso v. Morrison,* 695 F.Supp.2d 33, 47 (S.D.N.Y.2010) K*och v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012)*

Here, Plaintiffs have pled facts to allege that they did not have enough information to sue under 7 USC 25(b) before February 26, 2019.  An "injury" under price fixing manipulation that gives rise for a cause of action under 7 USC 25 (a) (Levy and Behrens) is not the same as a cause of action for bad faith and failure to enforce rules for an SRO under 7 USC 25(b) who's conduct is inherently self-concealing and they took affirmative steps to conceal the cause of action. So even if Plaintiff may have known of

---

[10]  Also Bailey v. Glover, 88 U.S. (21 Wall.) 342,349 (1874)₊ In re Nat Gas Com Ltgtn, 337 F.Supp.2d 498 (S.D.N.Y.  2004)

an "injury" on Sep 29, 2017 that ADMIS potentially breached their Customer Agreement or committed a fraud under 7 USC 25(a) they did not know of a cause of action under 7 USC 25(b). The general limitations rule is that a cause of action accrues once a plaintiff has a complete and present cause of action. Merck & Co. v. Reynolds, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010).

The facts (unlike *Levy*) show that Plaintiffs then promptly conducted due diligence to inquire about the nature of their claims, but due to NFA's own affirmative steps to conceal, Plaintiffs were obstructed from learning material facts, not through a lack of their own due diligence, from learning the nature of their claims. (¶¶614-628). The Court erred to apply the correct doctrine of due diligence.

The R&R also misapplies the words "**CEA violation**"  A plaintiff asserting fraudulent concealment as a reason to toll the applicable statute of limitations must show (1) that the defendant concealed the existence **of the CEA violation**; (2) that the plaintiff remained unaware of the violation during the limitations period; and (3) that the plaintiff's continuing ignorance as to the claim was not a result of a lack of due diligence. See *Issuer 2004 WL 487222, at *3; Nine West, 80 F. Supp. 2d at 192*. A plaintiff may show concealment "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery **of his claim or injury** or that the wrong itself was of such a nature as to be self-concealing "Hendrickson, 840 F.2d at 1083.[11], [12] (emphasis added). The Court conflates the words **CEA Violation** (which applies to 25(b)). Likewise, under the doctrine of fraudulent concealment, the SOL is equitably tolled if a plaintiff pleads with particularity (1) wrongful concealment by the defendant; (2) which prevented the plaintiff's discovery of the **nature of the claim** within the limitations period; and (3) due diligence in pursuing discovery **of the claim**. *Butala v. Agashiwala,* 916 F.Supp. 314, 319 (S.D.N.Y.1996). Again the R&R fails to distinguish the **nature of the claim** under 25(b). The first element may be satisfied by showing that a defendant took "affirmative steps to prevent the discovery of the plaintiff's claim or injury, or [that] the nature of the wrong itself may have been self-concealing." *Butala,* 916 F.Supp. at 319.  The Report also manifestly errs to overlook the  affirmative steps that NFA,

[11] Hendrickson also used the words "claim or injury". While in Levy the 2d circuit applied for a price fixing claim the word "injury", other cases, notably *Issuer and Hendrickson used the words "claim or injury"* Plaintiffs argue that the words "claim or injury" applies to a Cause of Action under 7 USC 25(b) unlike 7 USC25 (a) which is the intent of the CEA which specifically states "cause of action". See Hendrickson 2d.
[12] The R&R cites to a price fixing scheme which uses in prong (1) defendant concealed the unlawful conduct, but prong (1) should read defendant concealed **the existence of the CEA violation.** The wording is material, because to bring a claim under 7 USC 25(b), Plaintiffs could only bring a cause of action for a CEA violation if it could plausibly alleged NFA failed to enforce its rules due to bad faith that caused its damages. Plaintiffs alleged NFA concealed the existence of a 25(b) CEA Violation (which is different from Price Fixing.

Wahls, Kiela and Kadlec" took to prevent the discovery the **7 USC 25(b) claim**, to show NFA' bad faith failure to enforce its own rules caused the damages which is separate and distinct from ADMIS's fraud. (Ex. 1 and 2) R&R Pg.15 mis-cites to ¶470–¶472, the correct paragraph is incorrect ¶716-¶717 states it was only on this date, February 26, 2019 Plaintiffs knew of <u>causation</u> and ADMIS' specific admission that NFA were liable under 7 USC 25(b). (Causation is required element under 25(b)).[13]

*__Issue 1F - Plaintiffs not on notice of Wahls, Kiela and Kadlec's 7 USC 25(B)(3) claims:__* One of the first errors the R&R makes is that a <u>cause of action arises</u> under 7 USC §25(b)(3) for *each* Defendant. By lumping the Defendants together, the R&R fails to accrue the causes for each individual defendant. Additionally inquiry notice of Wahls, Kiela and Kadlec's individual causes of action, for their own individual bad faith failure to enforce the compliance laws could not have been given by the Sep 29 email. See *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG, 277 F. Supp. 3d 521, 575–76 (S.D.N.Y. 2017)* (holding that "the inquiry notice in question did not put Plaintiffs on notice of CEA claims against <u>other Defendants</u> not mentioned in the notice" – and "nothing in inquiry notice" indicates that other parties participated in [UBS] misconduct, and therefore CEA claims are timely filed to all other Defendants). Plaintiffs only had notice that Wahls and Kiela failed to enforce compliance rules and the existence of audits approving this on February 26. 2019 ¶716-717.[14] The claims against Wahls and Kiela therefore should be tolled separately as above. Likewise Kadlec's participation in the G&F Agreements was not known until November 12, 2019. The Court also makes a plain error that Plaintiffs were on inquiry notice of the compliance officers Wahls, Kiela's and board members' Kadlec's individual CEA claims under 7 USC 25(b)(3) [15], [16], [17]

---

[13] The Court incorrectly states it was the January 2019 audit that alerted Plaintiffs to NFA's knowledge of the scheme. This is incorrect. The relevant paragraph is ¶716 and it was ADMIS's admissions of production of documents and their liability.

[14] R&R at 21, mentioning Wahls and Kiela audits as **first date** Plaintiffs learned of existence of Kiela's audits on February 26, 2019, See also ECF1 ¶57 that Plaintiffs only learned about Wahls on **April 6, 2019**).

[15] Even if the Court were to consider a "fraud STORM warning for 7 USC 25(b) for NFA – which as argued supra was not sufficient for a reasonable investor of ordinary intelligence to impute that NFA, CFTC and CME had committed fraud –", clearly the inquiry notice with respect to the 7 USC 25(b) claims against other Defendants Wahls, Kiela and Kadlec were not included in the supposed Sep29 notice.

[16] The accrual of Wahls and Kiela's compliance officers causes could not have possibly accrued until February 26, 2019 (See FAC ¶XX) and Wahls on April 6, 2019 (¶XX). Wahls, Kiela and Kadlec also did not argue in their MTD that an incomplete excerpt from a Sep 29 email (which does not mention them) was sufficient to trigger inquiry notice that all they had individually committed fraud. (See ECF74 no motion to dismiss that Sep 29 email could have given a cause of action under 7 USC 25(b)(3) and Defendants waived this argument)

[17] Likewise Plaintiff did not even learn of the existence of the G&F Agreements or Kadlec's signature thereupon until November 12, 2019 (ECF31). Plaintiffs also did not learn of the risk services agreement until Oct 12, 2018 ( ¶611).

The Report also erred to apply the fraudulent concealment doctrine to specific Defendants. "The doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment." *Griffin v. McNiff*, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y. 1990); *see also O'Brien v. Nat'l Prop. Analyst Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989) ("Allegations that *other* defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against *all* defendants. The doctrine of fraudulent concealment tolls the statute of limitations *only* as to those defendants who committed the concealment." *Behrens v. JPMorgan Chase Bank N.A., No. 16-CV-5508 (VSB), 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 31, 2019)* Therefore any inquiry notice for claims brought against each individual Defendants, Wahls, Kiela and Kadlec was not contained in the Sep29 email.  Further the R&R errs that all conduct by Wahls, Kiela and Kadlec is imputed to the NFA.

*Issue 1G - NFA's audits and bad faith is self-concealing:* If the Report it to use an <u>unbriefed issue</u> on the Sep29 Lazzara email, it also errs to exclude the pertinent facts that NFA's audits are self-concealing.[18] The Sep29 email also cannot impute Wahls and Kielas individual claims as it contained no information about NFA's audits required to plead a 7 USC 25(b)(3) cause, because NFA's audits are inherently self concealing. The R&R applies incorrect precedent because unlike a public price-manipulation case as in *Levy* and *Behrens* where public notices made clear that metal pricing could have been fixed by looking at public data, under a 7 USC 25(b claim, Plaintiffs expressly had to plead bad faith and causation, and those elements required material information about **NFA's audits** and such activities are inherently self-concealing. *See* Hendrickson, 840 F.2d at 1084; In re Issuer Plaintiff, 2004 WL 487222 at *4. There is no public record of NFA's audits on ADMIS or High Ridge or their content. Further NFA's "approvals of their relationship" was also self-concealing. R&R also erred to include review of Exhibit 10 – the only "public notice" of NFA's approval of any supposed "relationship" - dated November 2014 (See ECF57.10) which shows nothing that would give rise to a cause of action.  Therefore the R&R erred to use these new and incomplete facts.

Not only is the FAC explicit ¶716-717, ECF1¶56, that Plaintiffs only learned of Wahls and Kiela's audits and cause of action on February 26, 2019 and April 6, 2019 respectively, NFA, Wahls' and Kiela's participation was self-concealing as the nature of audits could not have been known. The Court should

---

[18] The Court should note that Defendants did not once dispute in their MTD or Reply that (a) Lazzara's Sep29 email was inquiry notice of NFA's bad faith failure to enforce its rules <u>in its audits</u>; neither did they argue that the Sep29 email was notice NFA had committed fraud, therefore Plaintiffs object to the R&R use of waived arguments.

note it was not until after Plaintiffs filed suit May 8, 2020 listing two officers as Jane Does, that in November 2020 did NFA agree to cooperate and disclose the names (see ECF29). The R&R errs also to not review that NFA, Wahls and Kiela took affirmative steps to delay, obstruct and conceal the audits (See 1.C supra) and not due to Plaintiffs lack of due diligence, including extraordinary steps of issuing FOIA requests, promptly on March 1, 2019( **¶subpoenas** on September 4, 2019 and September 16, 2019. (See ECF85).  In each case NFA took affirmative actions to conceal Wahls, Kiela's audits and NFA's approvals on those concealed audits.

The R&R errs as 7 USC 25(b)(3) claims brought for compliance offices are also self-concealing as NFA audits are not public and there was no available information on NFA's audits to approve violations of the CEA  (also not mentioned in the Sep29 email). It is plain error that Lazzara's non descript email, was sufficient that Plaintiffs should have run into Court on September 30, 2017 and brought suit against all possible Compliance Officers under 7 USC 25(b)(3). By NFA' own affirmative steps to delay Plaintiffs acquiring the information to bring a claims to delay facts about the audits. NFA deliberately and materially impeded Plaintiffs rights to information.[19] The FAC is explicit that NFA affirmatively concealed the existence of the audits. (See also Exhibit 1 and 2)

### Issue 1H – Court confuses Equitable Estoppel and Equitable Tolling

The R&R also makes a plain error as it incorrectly commingles the different taxonomies of equitable tolling, fraudulent concealment of a cause of action and equitable estoppel. The Second Circuit has distinguished the different taxonom[ies] of tolling, in the context of avoiding a statute of limitations, [to] includes at least three phrases: equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel. *Pearl v. City of Long Beach*, 296 F.3d 76, 81–85 (2d Cir. 2002).

[A] **Equitable Tolling** [20] involves the doctrine where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence

---

[19] FAC also pleads obstruction to prevent Plaintiffs exiting the Arbitration.  Report also errs to ignore ¶725-¶727 (reference ECF1 ¶125-¶260 showing affirmative acts of concealment of Wahls and Kiela testifying as witnesses, and affirmative steps to not disclose material conflicts of interest under the Federal Arbitration Act. (See Exhibit 1)

[20] The 2ⁿᵈ Circuit  has used "equitable tolling" to mean fraudulent concealment of a cause of action that has "in some sense accrued earlier," *see Pinaud,* 52 F.3d at 1156 (characterizing the plaintiff's argument to allege that "even if [the plaintiff's claims] in some sense accrued earlier, the statute of limitations was equitably tolled by virtue of the individual defendants' fraudulent concealment of their actions"), and to mean fraudulent concealment that postpones the accrual of a cause of action, *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985) ("Under this doctrine [of equitable tolling], the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence .... The doctrine has been applied ... where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action").

of the "cause of action" and the statute of limitations was equitably tolled by virtue of the individual defendants' fraudulent concealment of their actions and means fraudulent concealment that postpones the accrual of a cause of action *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985).

[B] Equitable Estoppel The Second Circuit has used "equitable estoppel" to mean fraudulent concealment that postpones the running of the statute of limitations *see Keating,* 706 F.2d at 382[21]  It cover both circumstances (i) "where the defendant conceals from the plaintiff the fact that he has a cause of action" <u>and</u>  (ii) "where the plaintiff is aware of his cause of action, <u>but the defendant induces him to forego suit until after the period of limitations has expired</u>." Joseph M. McLaughlin, *Practice Commentaries,* N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990). *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978)

Not only did the R&R err to not apply the relevant inquiries and factual analysis to support each of the three phases, the R&R's plain error is that it excludes the second circumstance of Equitable Estoppel whether NFA and Kadlec, <u>induced Plaintiffs to forego suit, and took affirmative steps to induce Plaintiffs to forego their CEA claims</u> by bringing an NFA Arbitration so that it would delay until after the period of limitations. (see Exhibit 1 – showing affirmative steps to forego bringing suit).   These circumstances and facts were all overlooked in plain error.

### *Issue 1I – Exceptional Circumstances Also Warrant Equitable Tolling*

 The R&R also erred (building on its prior error Issue 1H to commingle equitable estoppel) to review any of the facts in the FAC related to whether "Defendants induced Plaintiffs to forego suite until after the period of limitation had expired" (*See* McKinney ID).  The R&R failed to apply relevant facts and the well-pled events that Plaintiffs were in fact prevented from exercising their rights to bring 7 USC 25(b) claims in District Court. Notably the Court admits R&R at 22 that "Plaintiffs allege that NFA compliance officer Afzal made false statements designed to induce them to initiate an NFA-controlled arbitration so that the NFA could cover-up its "illegal and fraudulent participation" in the alleged scheme. (FAC ¶¶ 698, 701, 705.)". And ECF107 specifically alleges NFA took affirmative steps, to prevent Plaintiffs bringing their CEA claims.[22]  *See Johnson v. Nyack Hosp.*, *86 F.3d 8, 12* (2d Cir. 1996)

---

[21] *Keating,* 706 F.2d at 382 (noting that under federal law "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action" and ruling that New York has adopted "the same equitable estoppel doctrine".

[22] See e.g. ECF107  Afzal knew and intended to prevent CEA claims; ECF1 Plaintiffs notified NFA timely on March 1, 2019 to do due diligence and April 11, 2019 via letter they had claims under Section 22 -  NFA took affirmative steps to conceal G&F Agreements, and obstruct conference with the Panel to prevent Plaintiffs from bringing their claims. Therefore a fact based discovery should occur on the specific April 11, 2019 letters where NFA were notified of a cause of action and they also prevented Plaintiffs holding a conference with the Panel to address the parallel claims and conflicts of interest. Therefore equitable estoppel applies as Afzal, NFA and others intentionally took affirmative action to prevent Plaintiffs from bringing suit, despite prompt and timely due diligence.

(noting that this court has applied equitable tolling doctrine "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights. . . .'")

Exceptional circumstances also were since Plaintiffs are registered NFA members they were also mandated to bring claims under NFA rules  (*See* 20-CV-3873 with conflicting ruling) and therefore other extraordinary circumstances of conflicts of interest under the FAA (See also 20-CV-3873 ECF71, ECF78) detailing conflicts of interest in CTA's mandated to bring claims before the NFA, and not simultaneously be able to bring 7 USC 25(b) claims).  Further Plaintiffs argue that being CTA's and registered members, were under statutory obligations to comply with NFA's arbitration code. NFA's own affirmative acts, to prevent them from brining Section 22 claims, counts as the "extraordinary circumstance" that "stood in [Plaintiffs'] way and prevented timely filing.' *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) <u>*Behrens*</u> ID. Plaintiff had been induced to bring an NFA Arbitration and under the Federal Arbitration Act 9 USC 1 el seq are entitled to fair, neutral and unbiased forum. This statute then conflicts with 7 USC 25(b) where Plaintiff could not reasonably bring claims against the NFA <u>at the same time</u>, because NFA, were concurrently administering an Arbitration under which they had discretion of interpretation in their rules under NFA Rule 17 and serving in an Arbitration capacity. This would cause Plaintiffs being in a conflicted arbitration and non-neutral forum which conflicted their rights under the FAA. It was not until the Arbitrators <u>granted a stay on November 19, 2019</u> which states "<u>so that Plaintiffs could bring their claims against NFA</u>" that Plaintiffs were estopped to bring their claims. (Noting the Panel's Nov 19 2019 order ECFXX is also material in invoking equitable estoppel). [23]

First the R&R errs that NFA also used fraudulent inducement that if they paid them $9500 and brought their claims at NFA, and they promised compliance investigations, in order for Plaintiffs to forego their CEA violations. Plaintiffs repeatedly sent letters (which were concealed) from the Panel to address the conflicts of interest in having simultaneously claims against the NFA under CEA 7 USC 25(b) and conflicts under the Federal Arbitration Act. Plaintiffs also undertook prompt due diligence, issuing subpoenas, sending letters to the NFA, addressing the conflicts, all of which were <u>thwarted by NFA</u> to prevent Plaintiffs enforcing 7 USC 25(b). (See Exhibit 1 and 2). NFA also took affirmative steps to conceal and delay subpoenas to obtain the information relevant. As there was a material conflict of interest, and it would have prejudiced their rights to a fair and neutral hearing at the NFA. Plaintiffs then <u>timely</u>

---

[23] Plaintiffs also brought their claims <u>promptly</u> in less than six months after the stay on May 8, 2020.  There was a NYC shut down that started on March 15, 2020 and Covid 19 also impacted Plaintiffs filing even sooner than six months.

took steps under Federal Arbitration Act <u>to seek relief from the Panel</u> who issued both the subpoenas in October 2019 (which again NFA failed to respond to) and  issued a stay on November 19, 2019.

The R&R fails to apply the rest of the ruling  in *Johnson v. Nyack* where the Second Circuit also applies "exceptional circumstances" to mean "We [the 2nd Circuit] made it clear that we had in mind a situation where a plaintiff "could show that it would have been *impossible* for a reasonably prudent person to learn" about his or her<u> cause of action</u>. *Id.* (emphasis added); *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.1985), *see Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir.1996). Pearl v. City of Long Beach, 296 F.3d 76, 81–85 (2d Cir. 2002)  And as explained clearly in Issues 1A-1E, Plaintiffs would have been impossible for them to learn their 7 USC 25(b)(2)(3) cause of action that it was the NFA's bad faith failure to enforce its compliance rules in [self-concealing] audits (learned on April 6, 2019) and other arrangements (such as a concealed G&F Agreements (learned on November 12, 2019), and an unlawful ORSA (learned on October 12, 2018), that were the causation of its damages. The Court also misstates the facts that ADMIS admitted on February 26, 2019 ¶716, that NFA were the parties liable, as they failed to enforce the rules. ADMIS stated NFA was the liable party for the causation Therefore the only indication of bad faith was February 26, 2019.

*1J – Court's use of "rare and exceptional circumstances" was incorrectly applied from § 2244(d)*

On Pg.17, by confusing the doctrines of equitable estoppel and equitable tolling, the Court cites to *Smith v. McGinnis*, 208 F.3d (2d Cir. 2000) stating that only in "rare and exceptional circumstances" is equitable tolling applied. But the case cited to *McGinnis* quotes from a prisoner case that specifically only applies to **§ 2244(d)'s** enforcement of a prisoner's rights and it was only under this statute that equitable tolling subject to a condition of "rare and exceptional circumstances."<sup>*24*</sup> The use of "rare and exceptional circumstances", is not applied to general tolling under a fraudulent concealment doctrine for the CEA or the types of claims being brought hereunder. (See *Issuer ID*) More importantly the use of *McGinnis* does not include the full citation "In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll" .*See McGinns id.* The R&R errs

---

<sup>24</sup> In *McGinnis* the quote "rare and exceptional cases' referred to another prisoner case under§ 2244(d) which is inapplicable precedent. McGinnis cited a 5th circuit law, *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999) cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999). The *Turner* court held that equitable tolling can apply to the limitation period of **§ 2244(d)** only in "rare and exceptional circumstances." *Id.* at 811.  *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied* 1999 WL 105620 (U.S., April 19, 1999) (No. 98-8209). (Discussing whether's prisoner's rights specifically under 2244 (d) literacy counts as "rare and exceptional".  Court held plaintiff's unfamiliarity with the legal process during the filing period merits equitable tolling. *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (age discrimination case).

to not apply any of the relevant facts of Plaintiffs well-pled due diligence.(Exhibit 1 and 2 overlooked). Therefore the application of *McGinnis* was incomplete and in err.  None of these cases are relevant or applicable as under the CEA, fraudulent concealment is ordinarily tolled. *Issuer ID*

*1K – Distinguishable Facts from Levy and Behrens:* The Court relies heavily on *Levy* and *Behrens* (filed by the same Pro-Se attorney) as a price fixing claim under 7 USC 25(a)(1) which cannot be used exactly as guiding precedent for Plaintiffs 7 USC 25(b)(2)(3) CEA claims.[25] Further the facts surrounding Plaintiffs claims, who are registered CTA's are very different, including those of equitable tolling. Notably, unlike Levy distinguishable factual circumstances were manifestly overlooked (i) unlike Levy, the facts allege that NFA took affirmative steps to fraudulently induce them into the NFA Arbitration to prevent them bringing their Section 22 claims (¶XX,¶XX CEA Brief). (ii) unlike Levy, an action was initiated in the short time period, the Notice of initiation of Arbitration was filed timely on March 5, 2018  where NFA could not be enjoined; (iii) unlike Levy, Plaintiffs undertook extensive and timely due diligence (while NFA and Kadlec took affirmative steps to conceal) (iv) unlike Levy, Plaintiffs have itemized material facts that were concealed by NFA (Exh2) The Courts failure to address this difference was material, and as extensive due diligence was conducted by Plaintiff unlike Levy, who pled no facts that could  support due diligence.

*Issue 2A – Plaintiffs Pled Damages for 7 USC 25(b) claims:* The Court then using an "in the alternative" incorrectly dismisses *all* the six CEA claims, *not* for failure plead the elements of the claim, but erroneously concludes Plaintiffs did not plead damages under 7 USC 25(b).[26] In reaching this unsupported conclusion, the R&R cites to absolutely no paragraphs and entirely ignores substantive sections of the FAC. This is a manifest error. Specifically substantial damages were pled in the FAC as incurred on Plaintiffs' trading accounts between January 2017 – September 2017; (a) ¶52 losses of over $92,922.78 (noting NFA and Kadlec do not dispute the losses)[27] see also ¶468, ¶507, ¶655; (b) excessive

---

[25] Levy 2d ruling applied to 7 USC 25(a)(1) for price fixing and manipulation which has a different requirement in order bring a cause of action, and specifically excludes registered futures associations. Plaintiffs in this case had to plead a distinct cause of action from ADMIS and co-defendants, under a higher standard of 7 USC 25(b) which by statute, required pleading of two extra elements (a) bad faith and (b) causation. In other words of cause of action against the NFA, a registered futures association, is not the same a  group price fixing manipulation injury. Even if Plaintiff knew the injury under a 7 USC 25 (a)(1) claim, *Levy* does not and cannot apply to the NFA, as 7 USC 25(b) requires different material facts to plead a claim. (See supra neither does the Sep29 email provide inquiry of a NFA committing fraud)

[26] The Court's failure to review any of the arguments of bad faith was also a plain error as this was material to distinguishing a 25(b) cause of action and renders the prior analysis on Statute of Limitations in correct application of the law.

[27] See e.g.¶52. The amount in controversy exceeds $75,000. On the morning of May 17, 2017 Plaintiffs were reported profits of $58,371.10. On the close of account Plaintiff were reported 1099 losses of -$34,551.68. Unauthorized margin inflations

margin errors penalizing trading transactions in excess of $134,000 (¶52, ¶590 incorporating Vision ¶239,¶336, ¶339 (substantial losses)); (c) unlawful depletion of profits by over 18% (¶13,¶189) and (d) errors in transactional margin over 200% (¶597) (d) other purloined fees and charges of over $1,260 (¶599). Further the FAC specifically plead damages as over $75,000 (See FAC¶768). The FAC specifically identifies Section 22 damages in prayer for relief (Pg184 [a],[b]). The Court's obfuscation of material facts in the Complaint that Plaintiffs relied upon was an abuse of discretion.[28] The transparency of the Court's error is contradicted in its own narrative when it states "_Plaintiffs detected cash balances did not tie_ out" and "_significant drawdown in their account_"¶599-¶600 (R&R at 9) The Court should also note NFA admits to "more and more fees" and "large margin errors" all which count to damages under covered transactions. Therefore **all** CEA claims were erroneously dismissed in plain error as Damages were pled.(¶52). The Court could find no fault with the rest of Plaintiffs pleading of the elements of the claim.  The 12(b)(6) MTD standards also prohibit dismissal of a claim when all elements are met.[29]

_**Issue 2B – Court Fails to Provide Any Reason to Dismiss Counts 4 and 8 Aiding and Abetting**_ Another manifest error the R&R provides no legal analysis on Counts 4 and 8 on Plaintiffs valid aiding and abetting claims pled under 7 USC 25(b). Given that Plaintiffs met all the elements of the claims, the Report recommendation offers no reason to dismiss the valid CEA aiding and abetting claims was also a manifest error. Clearly Plaintiffs met all the elements to state a claims and this ruling was unsupported as the R&R cannot dispute the pleading standards in Count 4 and 8 in the alternative were not met. [30]

_**Issue 2C – Court errs to overlook Wahls and Kiela's 7 USC 25(b)(3) individual claims:**_ In clear error, the Court also fails to differentiate the valid claims against Wahls and Kiela 7 USC 25(b)(3) which specifically provides a private cause of action against a compliance officer for failure to enforce the rules. Plaintiffs

---

that violate non-discretionary exchange rules were added by disbarred Vision owner to Boshnack exceeded $134,000. The net MTM loss reported to Plaintiff was $92,922.78 not including other unauthorized fees and disputed withdrawals purloined from the account and overcharges to the NFA. State law claims for misappropriation and other trade secrets for causes where no immunity is granted damages also exceeds $1,000,000.

[28] See e.g. Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017) (district court abused its discretion by  "inappropriately discredit[ing] significant allegations on which Plaintiffs' claims relied, failing to treat the complaint in the light most favorable to the Plaintiffs, and [failing] to draw reasonable inferences in the Plaintiffs' favor, as required [on a Rule 12(b)(6) motion]").

[29] At a minimum, Plaintiffs should be have been given leave to replead if the only issue was that Damages were not clearly pled as they also pled across all the related cases. The Court gave no reason for "in the alternative" to not replead and failure to replead also an abuse of discretion."[O]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." _Jin v. Metro. Life Ins. Co.,_ 310 F.3d 84, 101 (2d Cir.2002).

[30] In fact the R&R silence on Counts 4 and 8 applying the standards for drawing all inferences in favor of Plaintiffs, should lean in Plaintiffs favor that these were valid aiding and abetting claims and R&R found no faults, therefore these claims were also erroneously dismissed).

pled claims with detailed supporting facts for independent against compliance officers Wahls and Kiela for their bad faith role in violating CEA (referencing documents with dates, times, and material terms). e.g. ¶¶430-445,¶629-655, ¶469-507). The R&R incorrectly commingles claims with NFA and also erred to discuss imputation. [31] (ECF107. ) Wahls and Kiela's actions are also imputed to NFA.

***Issue 2D  - R&R errs to overlook Kadlec's 7 USC 25(b)(3) individual claims:*** Likewise the Report  is completely vacant on Kadlec's individual claims under 7 USC 25(b)(3). (R&R 21-22). There is also no doubt that Plaintiffs adequately pled causes of action and damages for Kadlec in his role as a an NFA Board Member and Committee. Notably, the R&R also fails to discuss Kadlec's multiple violations of NFA rules under 7 USC 25(b)(3) which is a clear error. (*ECF*107 16-17)  Since Kadlec's actions are also imputed to the NFA  (noting NFA did not dispute this assertion) this oversight is manifest. Plaintiffs not only pled damages, but also clear and unequivocal violations of NFA Rules (¶464, Violations - CEA 107 16-17). Plaintiff therefore met all the elements of the Claims for Kadlec, noting that Court fails to point to any deficiencies in the claims so they were wrongly dismissed. (See R&R Pg. 13).

***Issue 2E – Court offers no analysis on CEA fraud claims:***  As also discussed in Issue #4A, notably the Court errs to review t̲h̲e̲ ̲m̲o̲s̲t̲ ̲i̲m̲p̲o̲r̲t̲a̲n̲t̲ ̲c̲l̲a̲i̲m̲ that NFA participated in a fraud.[32] (CEA 108 Pg.1-40). The R&R errs as it offers no analysis whatsoever on the elements of the claim of fraud (Count 3) which all parties did not dispute were valid private rights of action under 7 USC 25(b) and were the substantive elements of NFA's MTD. For all the foregoing reasons all Plaintiffs CEA claims (Claims 1,2,3,4,8 and13) were dismissed on erroneous or unsupported grounds.

***Issue 2F – Court errs to properly apply 7 USC 21 for rules NFA 2-26 and NFA 2-29:*** The R&R also errs that it cannot summarily lump together all the compliance rules together and not apply the *discretionary* and *non-discretionary* standards.[33] Specifically Plaintiffs alleged multiple rules – including but not limited those under e.g. NFA 2-4 9005 -making any type of deception, and NFA 2-2 which are all non-

---

[31] R&R at 21 also incorrectly summarizes that the FAC claims "Wahls and Kiela failed to enforce audit procedures". This is not a correct fact. Plaintiffs alleged that Wahls and Kiela, failed to enforce **Compliance Rules** intentionally allowing members to violate non-discretionary and mandatory rules.  ¶460-¶507), including but not limited to not disclosing fees and improper access to their CTA account, as well as signing documents that violated other rules/ The Court cannot dismiss these claims as Plaintiffs have shown documents exist to prove their clams. (Subpoenas on the record ECF85) Plaintiff also met all the elements of the claims for Wahls/Kiela noting the R&R fails to point to any deficiencies in the claims. R&R at 13.

[32] Among many  incongruences - on one hand the Report states "Plaintiffs knew NFA participated in a fraud" and then in states they are not entitled to bring fraud claims under their implied private right of action under Sec 22

[33] Given that Damages were pled Plaintiffs extensively met and pled the standards of bad faith for the elements of the Claim, the Court's dismissal did not apply the MTD standards on the elements was erroneous. It is the clear intent of the statute to protect CTA's and traders who have been harmed, from fraudulent practices.

discretionary.  While the Court did not dismiss the Complaint for NFA's failure to enforce NFA 2-26 and NFA 2-29 Plaintiffs object to a plain error in law in the Court's application of 7 USC 21 and the statute' application of rules after 1985 (¶57-¶73) Plaintiffs brought their claims under 7 USC 21(o), 7 USC (a)(2), 7 USC 21(b)(7)(8)(9)(10),  7 USC 21 (p)(1)(3)(4) 7 USC 21(k)(i)(j).  In Pg.19 ftnte the Report misinterprets both *Nicholas vs. Saul* and *Troyer*.  *Saul* referred to a specific provision under 7 USC 21(m) and uses the words "may approve" which has CFTC discretion and does not apply to this case. This is clear error. Materially NFA 2-26 and NFA 2-29 are primary rules contemplated in the express statutory delegations under 7 USC 21(p)(3)(4) to prevent fraudulent sales and solicitations ¶64, ¶ECF1.1 Exh 1, Table1, Pg.10, Tbl 6, Pg 18-19 and 21(b)(7)—which generally requires that the association's rules be designed to prevent fraudulent practices (see NFA 2-29). Plaintiffs have provided in **Supplemental Exhibit** errors in those two cases as they were not dispositive. If however the Court is to rely on them **Appendix A** addresses the R&R's error.[34] Further the application of *Troyer1* was incorrect and supports Plaintiffs as 7 USC 21(c) as all rules after 1985 have to be approved by the CFTC to grant continuing grant of rights.[35] The idea that no rules after 1985 are required is also non-sensical. That would mean that nothing after the Dodd Frank Act, no rules required by CTA's and CPO's that were defined in 2012, and all the Crypto-Currency and Bitcoin updates to the CEA are unenforceable.  Furthermore the R&R errs as it does not include 7 USC 21(c) – which supports that all rules approved by the CFTC have to conform with the requirements, and the CFTC's continuing grant of rights, is conditioned upon the Commissions continued finding that the rules of the futures association (as amended and approved) conform with the requirements. Therefore NFA 2-26 and NFA 2-29 are all non-discretionary rules, approved and

---

[34] In summary, Footnote 19 - *Saul* (a 1980's case from N.J.) applied *only* to 7 USC 21(m), which is a specific statute related to registration requirements that contains the words "may approve" - granting discretion to the CFTC to require additional rules such as NFA 2-8(e). The words "may approve" does not apply to the provisions of 7 USC 21 that Plaintiffs applied (see ECF1.1, ¶¶56-73). In summary, Troyer I is inapplicable, as if it also specifically applied to whether Troyer wanted NFA to "adopt a _new_ hypothetical bylaws related to expulsion NFA Bylaw 301" – that had not yet been approved.to apply retroactively to "expelled" AP's.  If the Bylaw was not adopted, it was considered not required.

[35] Citing Troyer 1: **All** of the NFA's rules are subject to the CFTC's approval. *See* 7 U.S.C. § 21(j); *MBH Commodity Advisors, Inc.*, 250 F.3d at 1056. Under § 21(a), part of the registration process for a futures association is that it must submit its bylaws and rules to the CFTC for "review and approval." 7 U.S.C. § 21(a)(2). Likewise, § 21(j) requires that a registered futures association submit any changes to its rules to the CFTC for approval. 7 U.S.C. § 21(j); *MBH Commodity Advisors, Inc.*, 250 F.3d at 1068 (citations omitted). The CFTC "shall approve such rules if such rules are determined by the Commission to be consistent with the requirements of [§ 21(j)]." 7 U.S.C. § 21(j). In that same vein, the CFTC is authorized to abrogate any rule of a registered futures association if it appears to the CFTC that such abrogation is necessary or appropriate to assure fair dealing by the members of the association. 7 U.S.C. § 21(k)(1). Therefore under 7 USC 21(j) all rules adopted after 1985 had to be approved by the CFTC as consistent with the requirements of 7 USC 21.

adopted by the CFTC as required. (**Supplemental Exhibit A** expands on why the R&R erred on required laws). The Court erred to review the relevant provisions Plaintiffs applied in 7 USC 21. ¶57-73.

*Issue 3A – Bylaw 301E  Incorrectly Applied; R&R Uses Arguments Waived in MTD and Raised only in Reply.*

As  a first matter, Plaintiffs object that the R&R used an unbriefed argument, raised only in Reply by NFA which was deemed waived related to NFA Bylaw 301(e) and (c) (ECF 107 21-23) NFA and Kadlec's exclusion of this was foreseeably omitted as Count 2 specifically referred to NFA Bylaw 301(e) so the issue was not unforeseen. Defendants deliberately included new arguments in Reply to gain unfair advantage, as Plaintiff did not have an opportunity to be heard on the application of that law, as they specifically noted in their opposition the issue was waived. Nonetheless the Court's use of one-sided briefing on Bylaw 301(e) and other Bylaws 301(a)(c)(d) and (e) was incorrect and impermissible. Plaintiffs also brought claims under Bylaw 301(c) ¶296 which meets the standards of

*Issue 3B – Court misquotes Plaintiffs and then "guesses" on waived arguments*

On no fewer than three (3) times the R&R first repeatedly misquotes Plaintiffs arguments on Bylaw 301 (e) by stringing together "*suspended, disbarred or expelled*". R&R 20-21. Plaintiffs object to misquoting as these words were never raised them in their Plaintiffs' opposition. (ECF107 at 35 uses "disqualified" for Bylaw 301(e)). Plaintiffs never argued "suspended, disbarred, or expelled" in their opposition. Because the Court incorrectly adopted NFA's arguments in Reply (without briefing, using waived arguments not raised in the MTD) the R&R tellingly inserts, "it is unclear what bylaws Plaintiffs are arguing" or  "what appears to be" and "while not clear from the complaint". The R&R also can't "guess" on Defendants' waived arguments. Defendants *only* moved to dismiss on NFA Bylaw 301(a)(ii)(d) and no ***other*** briefing occurred as pertains to Bylaw 301. Second Circuit precedent is clear that an argument not raised in the MTD is waived and arguments raised in Reply may not be considered. ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 100 n.16 (2d Cir. 2007); In re. Various Grand Jury Subpoenas, 235 F. Supp. 3d 472, 485.  Also Plaintiffs did not brief other Bylaws (a)-(e.) as they were waived by Defendants, this led to an incorrect application of the rules.

*Issue 3C – Report fails to Apply Disqualification and Ineligibility Standards 301(a)* Even if the Court is to prejudicially include new arguments in Reply, the R&R's material error was to misapply the conditions in  Bylaw  301(e)  of  "*disqualification*"  and  "*ineligibility*"  incorrectly  injecting  terms  "*suspended,*

disbarred[36] or expelled". Second, Plaintiffs never argued "suspended, expulsion or disbarred" in their brief EC107 Pg.1-Pg44. Therefore the R&R has an incorrect application of the CEA as Bylaw 301(e) as it is not contingent on "expulsion". The Report errs as it did not incorporate the correct provisions of Bylaw 301(e), but instead erroneously applied the standards for Bylaw 301(a)(ii)(d) of "expulsion". Instead, the operative words of Bylaw 301.(e) are **_ineligible_** or **_disbarred_** (and not "suspended, disbarred, or expelled". The R&R also errs in law, as Bylaw 301(e) is different from  301(a)(ii)(D) as it is contingent on **_all_** prior provisions of **_all_** Bylaw 301(a) as well as **_all_** of NFA Bylaw 301(d).(Unlike 301(a)(ii)(d) which is only precedent on Bylaw 301(a)(ii)(A)-(C)). These distinctions are material, because NFA Bylaw 301 (e) is _not_ contingent on NFA's wrong narrow reliance on the word "expulsion". 301(e) centers on persons, who are either **_ineligible_** or **disqualified** to become or remain a Member or associated with a Member under paragraphs (a) or (d). The key words here are **_ineligible_** or **_disqualified_** versus 301(a)(ii)(d) which relies on key words _expelled or suspended_ are manifest.[37] Because NFA' failed to include in their MTD any of the other NFA Bylaw 301(a),(c),(d) in their MTD they were not briefed. If the Court is now to ignore new arguments in Reply, Plaintiffs have included Supplemental Exhibit for unbriefed new arguments Bylaws 301(a)-(e).

**_Issue 3D – Report Fails to Apply Registration Rules 2-2(i):_** The Court also failed to apply the proper standards of law, as well as on NFA 2-2 (i). (ECF108 at 35,  ¶217). First NFA 2-2i is not contingent on the word "expulsion". Since NFA failed to oppose Plaintiffs opposition that they violated NFA 2-2(i) in allowing Boshnack, Rothman and Felag to operate outside of their registration requirement that argument was also waived. The R&R erred to not properly apply the violations of registration. The Court also wholly ignores the primary argument that they continued acted without registration, performing functions solely permitted for those registered in the capacity of FCM. (¶¶264-266, ¶¶381-384), and

---

[36] In addition the Court fails to take notice of NFA's public announcement on June 2014 that Vision was effectively "disbarred". (ECF57.12, "showing NFA's admission of effective disbarment").  Further the registration of HRF and Boshnack, Rothman and Felag was refused as an FCM (See also CEA Br. X-X) and their ongoing participation (without license) to secretly continue to act in the capacity as an FCM under NFA Bylaw 301(a) and (d) would subject them to ineligibility and disqualification. This in turn invokes Bylaw 301(e). Bylaw 301(e) does not have anything to do with the word "expulsion".

[37] The Report also excludes the material facts for Bylaw 301(e) that HRF was statutorily disqualified and denied registration as an FCM and therefore was _disqualified_ as an FCM ¶98, ¶105. This led to an incorrect conclusion and analysis of applicable provision of NFA Bylaw 301 (and applicable statutes) as to HRF's denial of registration The R&R also overlooked material facts contained in NFA's and FINRA's own admissions about HRF's disqualification as an FCM. Attached to the complaint as Exhibits for Judicial Notice, 20-CV-3871 ECF20.11 Exhibit 11 Pg. 52-54 stating High Ridge would apply as a new FCM and that registration was denied and NFA's public announcement on June 14 (ECF57.4) of their application as a FCM triggering NFA Bylaw 301 (c)(ii),(iii),(x)(xiv),(xvi) which makes a person disqualified, _inter alia_, if their registration as a FCM was refused, or they made false statements on their registration applications. (¶668,¶679,¶671,¶680,¶66,¶89-91, ¶105)

since they were both *ineligible* and *disqualified*, NFA and Kadlec violated the IB registration, as well as made false statements on their registration forms. E.g. ¶¶390-396, ¶668¶679,¶671,¶680)

*Issue 3E – R&R errs to distinguish Facts in Troyer and Hennighan* In addition the R&R relies on a case that has inapposite facts because it does not apply to an FCM that was statutorily disqualified. *Troyer vs. NFA*, even is inapplicable as Troyer brought claims specifically under Bylaw 301(a)(d)(iii) alleging failure of NFA to expel Heneghan (AP) as a cause of Statewide **IB's** expulsion. Not only did the Troyer case apply a different bylaw but the facts of the Statewide **IB's** "settlement" are distinguishable.  Unlike Statewide (**IB**), Vision was an **FCM** and changed its name to High Ridge and reapplied for membership as an FCM, and the facts show HRF's application was revoked and it was statutorily disqualified as an FCM.[38] (e.g. ¶66, ¶88-91,¶105, ECF107 at 34-35). Therefore the statutory disqualification of an FCM vs. a settlement to withdraw of an IB is material, as the facts in this case, state Boshnack, Rothman and Felag continued to operate, in violation of their registration requirements as an FCM, and were *ineligible* and *disqualified* to do so. (e.g.¶98-105,¶87) This triggers NFA Bylaws 301(e), 301(a), Bylaw 301 (c)(ii),(iii),(x)(xiv),(xvi) (¶296) and 301(d) therefore the Troyer case again is inapposite to the fact and application of the statute. If the Court is using new NFA arguments in Reply, Plaintiffs have included **Supplemental Exhibit** that specifically explains the reasons of *ineligibility* and *disqualification* that were not previously briefed or waived in the original MTD's.

*Issue 4A – Report errs to deny Plaintiffs valid fraud claims against NFA under CEA:* The Court also plainly errs to not rule on the merits of Count 3 -  7 USC 6(b) fraud claims that were rightly brought under the CEA Section 22 against the NFA.[39] The decision is clearly erroneous by the R&R's own contradictory citation Pg. 16 n20 that discusses Plaintiffs private right of valid CEA fraud claims under Section 22. The R&R erred as it failed to properly apply the application of 7 USC 25 under which Plaintiffs are entitled to a valid, private right of action against the NFA for fraud under 7 USC 6(b). (See ECF108 at 1 *citing Curran* &*Lerner*). The R&R uses a footnote to incorrectly assert that Plaintiffs fraud claims are not permitted

---

[38]The Court should also note that Defendants failed to dispute or respond to any of arguments raised in Plaintiffs opposition brief related to HRF's disqualification and also failed to move to dismiss on anything related to HRF's **permanent disqualification as an FCM**. Instead they only made a red herring argument about "expulsion". These facts are material as they directly apply to the applicable provision of Bylaw 301(e).  Since High Ridge's application as an FCM was denied, the Court's oversight of the relevant ineligibility and disqualification provisions was material error. The R&R therefore had a plain error to apply the incorrect parts of NFA Bylaw 301(a)-(e).

[39] In inconsistent application of the law, the Report allows the Kadlec CEA 7 USC 6(b) Sec 22 fraud claims to progress but applies inconsistent thoughts to arbitrarily deny NFA's valid fraud claims but to proceed with Kadlec's Sec 22 fraud claims.

under 7 USC 25, but this is an error. The R&R is erroneous in its application of the law (and is clearly inconsistent) as it even admits the existence of valid private rights of action for fraud 7 USC 6(b) under Section 22, Pg. 16 n20 - as it cites to CFTC v. Fin. Robotics, Inc., No. CIV.A. H-11-2446, 2013 WL 3280038, at *4 (S.D. Tex. June 27, 2013) which states " More recent decisions have applied § 25(c)'s two-year limitations period to private claims asserted under 7 U.S.C. § 6b and accruing after 1983. See, e.g., Dyer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 928 F.2d 238, 240 (7th Cir.1991); Kolbeck v. LIT America, 923 F.Supp. 557, 564 (S.D.N.Y.1996), aff'd 152 F.3d 918, 1998 WL 406036 (2d Cir.1998) (holding that private actions under 7 U.S.C. § 6b are subject to § 25(c)'s two-year limitations period). Therefore the 7 USC 6(b) claims are valid 7 USC 25 claims and were wrongly dismissed against NFA. (The Court should note no claims were brought against Wahls or Kiela, and the court inconsistently allowed the claims against Kadlec in his capacity as NFA Board Member).

The Court's ECF33 order therefore did not prohibit (and should never have contemplated or been construed) to deny Plaintiffs to not bring private 7 UC 25(b) claims, are it is expressly clear after *Curran,* that implied private rights of action under 7 USC 25(b) were preserved.

> "Because § 25 was passed at the invitation of the Supreme Court for codification of the right of private actions under the CEA recognized in *Curran, Curran* recognized an implied right of action for the violation of the CEA alleged here, that is, a violation of § 4b of the CEA, 7 U.S.C. § 6b, and the claim alleged here plainly falls within the scope of § 25 as drafted by Congress."  In *Curran,* the Court held that private actions could be implied under five discrete sections of the act: 7 U.S.C. §§ 6a, 6b, 7(d), 7a(8), and 13(b)," citing *Curran,* 456 U.S. at 390–91, 102 S.Ct. at 1845–46), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993)) See also N. Cent. F.S., Inc. v. Brown, 951 F. Supp. 1383, 1403–04 (N.D. Iowa 1996).

### *Issue 4B – Orders on October 6 and October 24 did not discuss fraud claims*

Not only did the Court err that private rights of action under 7 USC 6(b) are permitted under Section 22, the R&R overlooked that in the original complaint on May 8, 2020[40] (ECF1) Plaintiffs had not brought a fraud claim. CEA fraud claims as a private right of action were therefore not contemplated or discussed in ECF33. Therefore any ruling on the fraud claims in ECF33 was not even contemplated in a decision on October 6, 2020 as no fraud claims were dismissed or even present and ECF33 did not discuss claims under 7 USC 6(b). *Second*, adding a related claim to the same conducted, transaction and occurrence is permitted under FRCP 15(c) and Defendants did not dispute the CEA fraud claims arise out of the same conduct, transaction and occurrence. They also did not even oppose Plaintiffs'

---

[40] As a separate factual error the Original Complaint was filed on May 8, 2020 and emailed to the Pro-Se Intake Office due to Covid closures. It was uploaded on May 11, 2020. The original date of filing as time stamped was May 8, 2020.

rights to a private right of action for fraud.[41] In any event, the Court's ECF33 was not construed to arbitrarily deny Plaintiffs valid rights to a private right of action that Congress has granted them under Section 22. The Report is further erroneous in its application, as clearly the R&R has now proceed with fraud claims against Kadlec under 7 USC 25(b) and 7 USC 6(b). (R&R Pg.32 n.37). Kadlec's Section 22 fraud claims are imputed to the NFA so this ruling is contradictory in law. Therefore the Report abused its discretion to arbitrarily allow fraud claims against Kadlec but not NFA, when no claims were even brought in the original complaint that were subject to reconsideration. (*See* Curran) Sec 22 allows valid fraud claims as a private right. Therefore the Court's failure to simply "ignore" Plaintiffs private right of action for fraud under Section 22 against the NFA was flawed. This is also an err in application of law.

***Issue 4C – No MTD's disputed the validity of existence of fraud claims under CEA*** Since neither NFA nor Kadlec moved to dismiss based on the validity of Plaintiffs private rights of action for fraud 7 USC 6(b), nor did they dispute the validity of the existence of fraud claims, this argument was waived. The Court erred as Defendants did not file any MTD for the existence of Plaintiffs rights to bring valid CEA fraud claims, which are permitted under Section 22, therefore this argument was also waived. It would also be illogical that Plaintiffs could not bring fraud claims, as NFA and Kadlec argued that all claims under Section 22 had to meet heightened pleading standards fraud under Rule 9(b). Further fraud is a valid pre-requisite for Plaintiffs to plead bad faith (See ECF107 at 33, citing *Brawar*). In direct contradiction, the R&R admits to the existence of valid CEA fraud claims also on R&R Pg16 n2, as a valid right of action. Therefore the R&R's arbitrary decision to dismiss valid CEA claims for fraud is unsupported by law, plain error and an abuse of discretion.

***Issue 4D - NFA and Kadlec's Reply do not counter Plaintiffs substantive and meritorious arguments on fraud***

The Courts error was manifest, as NFA did not oppose in Reply, the substance of Plaintiffs opposition brief on fraud. (ECF108 1-39 ). For instance, NFA did not even oppose the material arguments raised on their fiduciary duties to CTA's which was a founding part of Plaintiffs brief. Without limitation, their Reply ECF109 failed to argue against (i) NFA's material omissions in NFA Basic as well as (ii) failure to update prior public statements about High Ridge to not render them misleading, and (iii) actionable

---

[41] Further *Behrans* also supports the erroneous ruling under ECF33 which denied Plaintiffs the right to bring under RICO claims against NFA (See *Behrans* permitted RICO claims against NFA). Such a ruling in ECF33, while Plaintiff was unrepresented by counsel was also an error in law as Plaintiffs had valid RICO claims. (See *Behrans ID* – allowing private rights of action against NFA for RICO). The Court's ruling to arbitrarily deny RICO claims and valid 7 USC 25(b) fraud claims was in error. Therefore Plaintiffs seek leave to amend to add valid RICO claims, as that ruling was also plain error.

omissions by Agkok, Bond and Afzal. Plaintiff detailed arguments on fiduciary duties that NFA has to CTA's related to disclosing the material Guarantees from Boshnack on its account.  The Court's failure to even address these items when all parties acknowledged the existence of valid fraud claims under the CEA is a manifest error and unjust. Further the Court could find no substantive pleading deficiency, and the decision is particularly egregious because NFA based its entire MTD (ECF74) on Plaintiffs requirements to plead fraud as the claims "sound in fraud". Given that Plaintiffs met the pleading standards for fraud, and sounding in fraud, and pled valid CEA fraud claims, denying valid Section 22 fraud claims, the ruling do ignore valid CEA claims outright was erroneous.

***Issue 4E- Magistrate Judge's Order Is Not Applicable to Claims Not Pled in ECF1:*** As stated in Issue 4B,  ECF1 clearly did not bring any fraud claims, and 7 USC 25 claims include a private rights of action for Plaintiffs as CTA's for fraud, the Courts interpretation of the R&R is incorrect. Section 22 includes implied private rights of action for fraud and ECF33 did not preclude fraud as it was never pled. Second, to the extent the Court states Plaintiffs did not object to the ruling ECF33, since there was no fraud claim in ECF1,  it was not construed as being discussed. Further Section 22 claims expressly do include private rights of action for fraud, so it was not contemplated in the ECF33 Order.[42] Since fraud was never in the original complaint, Plaintiffs never raised any objections as it was implied as a Section 22 private right of action. (See Issue 4A, Pg16 n20)

***Issue 5A – Arbitration Count 13 - Plaintiffs have valid cause of action under 7 USC 25(b) and 7 USC 21(b)(10)***

In R&R 22-23 the Report concurs that Plaintiffs have a valid private right of action under 7 USC 25(b) for NFA's bad faith failure to enforce rules under 7 USC 21(b)(10). This right is of particular importance, because Plaintiffs are registered members <u>who are mandated</u> to arbitrate at the NFA. (see also ¶57-¶73, CFTC report ECF1.1).[43] That is why Congress granted a private right of action under 7 USC 25(b)

---

[42] Court conduct a *de novo* review if it appears after reading the R & R that the magistrate judge may have committed plain error in ruling against the defaulting party. *See Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 174 (2d Cir.2000). "This rule, however, is a nonjurisdictional waiver provision, and its violation may be excused in the interests of justice." *Id.* (citing *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) Further *Behrans* also supports the erroneous ruling under ECF33 which denied Plaintiffs the right to bring under RICO claims against NFA (See *Behrans* v. JP Morgan. The Court permitted RICO claims against NFA). Such a ruling in ECF33, while Plaintiff was unrepresented vy counsel was also an error in law as Plaintiffs had valid RICO claims as Behrans – allowing private rights of action against NFA for RICO. The Court's ruling to arbitrarily deny RICO claims, and valid 7 USC 25(b) fraud claims was in error. Therefore Plainitfs seek leave to amend to add valid RICO claims, as that ruling was also plain error.

[43] ¶57-¶73  OIG Report (ECF1.1) also expressly laid out that 7 USC 21(b)(10) was a delegated statutory authority and NFA must implement fair, expeditious and equitable proceedings. CFTC also approved all those rules (See R&R at 22). The FAC also notes that OIG Report has documented dozens of complaints about NFA Arbitrations not complying with regulations.

for traders, when NFA violates, or intentionally in bad faith fails to enforce its Arbitration rules. (e.g. for fraudulent and illegal purpose). In this regard, the R&R agrees that Congress did grant a private right of action for NFA's violations under 7 USC 21(b)(10) it is governed by statute, there is no immunity is granted for NFA's failure to enforce those arbitration rules. Such a ruling would be adverse to the intent and plain language of the Congressional statute 7 USC 25(b) that makes it mandatory for NFA to apply a "fair, expeditious and equitable hearing" especially as CTA's have nowhere else to go. Plaintiffs therefore object to any ruling that states there is arbitral immunity for failure to enforce its Arbitration rules, as that is expressly permitted under CEA22 in it capacity of an administrator of the arbitration.

*Issue 5B  Court fails to properly apply 7 USC 21(b) Arbitration Rules violation:* However the Court then makes a plain error on Pg.23 and states "Plaintiffs did not identify any Arbitration Rule NFA failed to enforce". This is false. (See ¶714-¶715, ECF1 ¶125-¶260) Among the many rules, NFA violated include **Rule 3(a)(1)** to not appoint a Panel within 30 days (NFA delayed appointment of a Panel over 275 days to avoid liability and warranted equitable tolling to the CEA claims – this also is not disputed by NFA in their briefs); The FAC also alleges NFA's failure to enforce **Rule 7(a)(2)** to produce the G&F agreements by October 5, 2018 and failed to enforce the rules instead over 523 days to November 18, 2019 to conceal facts for CEA claims. (¶714, ECF1¶235, ¶259). Also NFA violated **Rule 7(h)** – failing to have preliminary conference (¶715, inc ECF1¶178)  with Panel and also  **Rule 9(7)(d)** failing to set up audio recording of material arguments. (¶715, ECF1 ¶181) The Report is a clear error as the FAC makes multiple detailed allegations of specific rules NFA violated.

*Issue 5C – R&R Errs to Apply 7 USC 21(b)(10) Damages for Arbitration:* The Court also errs in its application of damages under 7 USC 25(b). The CEA has evolved significantly since the 1982 amendment. In 2009 the Dodd Frank was passed and in 2012 the CFTC codified the definitions of CTA's and CPO's.[44] As of September 30, 2021,there are now 1352 CTA's and 1244 CPOs making up a substantial class of members which the CEA's protections of rights must be enforced. [45], [46] The interpretation of the legislation is intended to protect the *current* rights and remedies of participants who have no option but to submit to Arbitration, and the damages under covered [transactions] intended by 7 USC 25(b) is

---

[44] On September 5, **2012** the terms Commodity Trading Advisor ("CTA") and Commodities Pool Operation ("CPO") were added to the Federal Registry. https://www.marketswiki.com/wiki/Commodity_Trading_Advisor
[45] https://www.nfa.futures.org/registration-membership/membership-and-directories.html
**[46]** Notably NFA's brief cites to decades if not mostly 1980's law for exchanges that is not relevant to the case at hand.

not incongruous with the required rules under 7 USC 21(b)(10).[47]  In evolving precedent, recently Courts have held that administrators of Arbitration are liable for business damages, in their business activities _prior to_ the appointment of an arbitrator. This duty occurred prior to the appointment of a Panel and was therefore not related to their "Arbitral" duties – see CEA Br.38-40, holding that activities _prior_ to the Panel were considered a business related transaction (not arbitral). Citing to _Hopper._ Courts are now distinguishing between "administrators" and the Arbitrators themselves. Accordingly and consistent with the grant of rights under 7 USC 25(b)/7 USC 21(b), Plaintiffs are entitled to business transaction damages. Any ruling to deny damages would essentially override the intent of Congress under 7 USC 21(b)(10). By its very nature, CTA's seeking restitution on [covered transactions], are entitled to a fair, expeditious, and equitable forum. A ruling that NFA has no liability for violating 7 USC 21(b)(10) would grant NFA a free pass, to intentionally delay arbitration why not 10 years, obstruct proceedings, charge arbitrary fees of over $10,000 a witness[48], and then hide behind 7 USC 25(b) to claims they have no liability or consequence for damages, including of [covered transactions]. This is because the statute has not been tested before in the first impression case to apply to cover the rights of the now several thousands CTA's, CPO's. Plaintiffs have assert the intent of the statute is NFA's failure to enforce 7 USC 21(b) has also caused damages not just for [covered transactions] but also additional business costs (at a minimum of $9500) of amounts paid for NFA to uphold its end of the bargain to implement timely Panel.[49] Plaintiffs damages from NFA's failures under 7 UC 21(b) also count as equitable tolling, that NFA took affirmative actions to prevent Plaintiffs as CTA's from enacting its Section 22 rights. A ruling adverse here, would simply give NFA a license to violate all its Arbitration rules, on [covered transactions] giving them a legal loophole to take 523 days, 5 years, to ever enforce its arbitrations, and CTA's/CPO's/AP's who have no alternative and a compulsory duty to submit to NFA arbitration. This would render any private rights of recourse of 7 USC 25 null and void,  which was not the intent of Congress where traders were given express rights for NFA to uphold its administration duties under 7 USC 21 (b)(10)  (which it has failed to do). Congress intended by statute to eliminate this type of malfeasance. This also justifies equitable tolling delay to not enforce its Bylaws and mandatory

---

[47] Plaintiffs bought their damages for covered transactions under protections of 7 USC 21(b) so the damages are the same.

[48] See ¶ECF1 ¶247-¶253 – NFA Board Members violated the Arbitration Rules to extort witness fees of over $10,000.

[49] Plaintiffs have also incurred damages of excessive unnecessary legal costs and times – noting four motions to compel and documents not produced until November 18, 2019 for failure to enforce 7(a(2) which also warrants equitable tolling. The intent of Congress was not give loopholes for NFA to take advantage of the statute when NFA paying members have no option but to submit to arbitration, and then have no liability under 7 USC 21(b)(10) for bad failure to enforce the rules.

code. There is are also significant damages to a CTA in overhead and operating costs in NFA dragging an arbitration out 523 days or 18 months (versus an expected 6 months) and violating the 30 days requirement to appoint a Panel. The  material breaches of 7(a)(2) also caused NRCM to shutter (file for dissolution) caused by NFA's bad faith failure to enforce their rules – in large part by not effecting a timely and compliant Arbitration code.[50]

*Issue 6A -  Supplemental Jurisdiction:* The Court also erred under 28 U.S.C. 1367(c)(3) to exert jurisdiction on the state law claims. See  *Levy v. BASF Metals Ltd.*, 2017 WL 2533501, at * 9. The usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Catzin v. Thk You & Gd Lck Crp., 899 F.3d 77, 83–84 (2d Cir.2018), *Cohill, 484 U.S. at 350 n.7,108 S.Ct. 614.* The R&R recommendation to proceed with analysis on immunity for state law is also inconsistent with other rulings in this District cited to in the Report. In *Behrens (a case relied upon by the R&R)* the Court also stated "The Second Circuit counsels against exercising supplemental jurisdiction in such a situation, stating "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Cap Asst Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004).*  Therefore any analysis on state law claims was an error under 28 U.S.C. 1367(c)(3).[51]

*Issue 6B – No Immunity under State Law:* For the reasons cited above that the Court improperly exercised jurisdiction on the State Law claims, the analysis on immunity on the state law claims is also improper. In any event, the R&R erred in its exceptions as Plaintiffs clearly pled, that the type of conduct engaged in by the NFA, specifically (a) disseminating trade secrets (b) transferring CTA's economic advantage to another CTA referral and (c) other civil conspiracy to engage in "RICO predicate acts"  does not bear upon the normal operations of the market. *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d (2d Cir.2001). Further NFA's participation in a private "banking" arrangement of ADMIS and Boshnack, Rothman, also is not a part of their day-to-day regulatory activities – under which NFA, participated in a fraud on multiple customers. Plaintiffs also pled that activity that is unlawful (including those of authorizing CTA' records to be given to their competitors and engaging in unfair competition) is not "normal functioning of the market". The NFA also failed to raise any opposition in their MTD or Reply that they did not engage in unfair competition. (This argument therefore waived). Lastly, the Court erred to conduct an

---

[50] In addition, there is no legal basis for a statutory cap on damages fraud and illegal conduct which has been alleged herein
[51] The Report also failed to apply any analysis or reason such as novelty why Federal Court should exert jurisdiction.

inquiry on which specific acts (e.g. misappropriation of trade secrets, fraud) supposedly fall under "the normal operations of the market". Unlike an exchange, where NYSE must facilitate free functioning markets, none of the activities NFA partook in here were needed (especially Boshnack's facilitating unfair competition) and they do not fall under the aegus of NFA's duties. The R&R erred also as each activity alleged would have to be properly analyzed. (*see* In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95–103 (2d Cir. 2007 **reviewing each of five areas of activity to determine if they bore upon operations of the market).** Plaintiffs did not bring State law claims for "registration activities" as the R&R incorrectly infers, instead misappropriation, trade secrets, fraud, civil conspiracy and unfair competitions.  As also argued, there is no exemption for illegal conduct permitted under State law claims. The Report incorrectly fails to differentiate the FAC doesn't just plead NFA were not "not applying laws they are supposed to regulate" but ___*also*___ the conduct was unlawful under Federal and State law statutes. E.g ¶372, ¶¶399-401 ,¶354, ¶¶7-8. *18 USC 1831*, RICO *18 USC 1962*). Thus the Complaint pled illegal activities <u>unrelated to the CEA</u> which give rise to valid State Law claims and which are not preempted.


In the interest of efficiencies, Plaintiff NRCM also respectfully joins all arguments raised by Kumaran herein in the NFA objection brief.


Respectfully submitted,

//SSK//

Samantha Siva Kumaran


Plaintiff NRCM also joins in full any arguments from this brief.


//BMA//
Brian M. August, Esq.
*Counsel for NRCM*