**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, *et al.*, | ) | |
| Plaintiffs/Petitioners, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03668-GHW-SDA |
| | ) | |
| NATIONAL FUTURES ASSOCIATION, *et al.*, | ) | |
| Defendants. | ) | |

**DEFENDANTS NATIONAL FUTURES ASSOCIATION, VILIA SUTKUS-KIELA, AND
NICOLE WAHLS' RESPONSE TO KUMARAN'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Zachary C. Schauf
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
ZSchauf@jenner.com
*Admitted pro hac vice*

Gregory M. Boyle
*Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Admitted pro hac vice*

*Counsel for National Futures Association*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Plaintiffs' Allegations Of Fraud By ADMIS And Vision. ....................................2

    B.    Plaintiffs' Allegations Concerning NFA. ...............................................4

    C.    Procedural Background.....................................................................7

LEGAL STANDARD...............................................................................................8

ARGUMENT .....................................................................................................9

I.    Magistrate Judge Aaron Properly Found Plaintiffs' Non-Arbitration CEA Claims Time-Barred. .................................................................................9

    A.    Plaintiffs Discovered Their Injury In August 2017. ................................9

    B.    Equitable Doctrines Cannot Help Plaintiffs..........................................11

II.    Magistrate Judge Aaron Properly Dismissed Plaintiffs' CEA Claims On Their Merits. .................................................................................15

    A.    Plaintiffs' Bylaw 301 Claim Fails.....................................................16

    B.    Plaintiffs' Claim Under NFA's Compliance Rules Fails.......................18

    C.    Plaintiffs' Arbitration Claim Fails. ..................................................22

    D.    Plaintiffs Fail In Their Attempts To Recast Counts 3, 4, And 8 As CEA Claims. ....................................................................................24

III.    Magistrate Judge Aaron Properly Dismissed Plaintiffs' State-Law Claims.....................25

CONCLUSION...............................................................................................27

## TABLE OF AUTHORITIES

CASES

*A Star Group, Inc. v. Manitoba Hydro*, No. 13-cv-4501, 2014 WL 2933155
(S.D.N.Y. June 30, 2014), *aff'd*, 621 F. App'x 681 (2d Cir. 2015) ..........................................1

*Behrens v. JPMorgan Chase Bank, N.A.*, No. 16-cv-5508, 2019 WL 1437019
(S.D.N.Y. Mar. 31, 2019), *appeal docketed*, No. 21-2603 (2d Cir. Oct. 15,
2021) .....................................................................................................................11, 12, 13, 14

*Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007) ...................................................................14

*Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir.
1985) .........................................................................................................................................15

*CFTC v. Mass Media Marketing, Inc.*, 297 F.3d 1321 (11th Cir. 2002) .......................................2

*Chevron Corp. v. Donziger*, No. 11-cv-691, 2013 WL 4045326 (S.D.N.Y. Aug. 9,
2013) ...........................................................................................................12-13, 14, 21

*In re Chicago Board of Options Exchange Volatility Index Manipulation Antitrust
Litigation*, 435 F. Supp. 3d 845 (N.D. Ill. 2020) ....................................................................19

*Effex Capital, LLC v. NFA*, 933 F.3d 882 (7th Cir. 2019), *cert. denied*, 140 S. Ct.
1122 (2020) .................................................................................................................................2

*First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir.
2004) .........................................................................................................................................27

*Funcia v. NYSE Group*, No. 07-CV-1745, 2007 WL 4276897 (S.D.N.Y. Dec. 3,
2007) .........................................................................................................................................24

*Gill v. Financial Industry Regulatory Authority*, No. 11-CV-2713, 2013 WL
1203746 (S.D.N.Y. Mar. 6, 2013), *report and recommendation adopted by*
2013 WL 1201499 (S.D.N.Y. Mar. 29, 2013) .........................................................................24

*Gonzalez v. Garvin*, No. 99-cv-11062, 2002 WL 655164 (S.D.N.Y. Apr. 22, 2002) ..........8, 21, 22

*Gross v. Rell*, 585 F.3d 72 (2d Cir. 2009) ....................................................................................25

*Johnson v. Nyack Hospital*, 86 F.3d 8 (2d Cir. 1996) ..................................................................14

*Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255 (2d Cir. 2006) ...............20, 22, 23, 25

*Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345, 2021 WL
797113 (S.D.N.Y. Feb. 26, 2021), *appeal docketed*, No. 21-798 (2d Cir.
Mar. 29, 2021).............................................................................................................................1

*Latouche v. Wells Fargo Home Mortgage, Inc.*, 752 F. App'x 11 (2d Cir. 2018) ........................14

*Levy v. BASF Metals Ltd.*, 917 F.3d 106 (2d Cir. 2019)...................................9, 10, 11, 12

*Mario v. P&C Food Markets, Inc.*, 313 F.3d 758 (2d Cir. 2002).........................9, 19, 20

*Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250 (2016) ...........................15

*New York Pet Welfare Ass'n v. City of New York*, 850 F.3d 79 (2d Cir. 2017)..............................5

*Nicholas v. Saul Stone & Co., LLC*, No. 97-cv-860, 1998 WL 34111036 (D.N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000) .................................21

*In re NYSE Specialists Securities Litigation*, 503 F.3d 89 (2d Cir. 2007)...................................26

*Ortiz v. Barkley*, 558 F. Supp. 2d 444 (S.D.N.Y. 2008) ..................................................8

*Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-251, 2019 WL 3554460 (S.D.N.Y. Aug. 5, 2019) ..................................................8

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) ..................................................12

*Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997) ..................................................2

*Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201 (S.D.N.Y. 2013).................................8

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ..................................................12

*Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75 (S.D.N.Y. 2012), *aff'd sub nom. In re Lyondell Chemical Co.*, 542 F. App'x 41 (2d Cir. 2013)........................10

*Stevenson v. New York Department of Corrections*, 489 F. App'x 517 (2d Cir. 2012...................................................14

*Syphrett v. Heath*, No. 10-cv-5142, 2015 WL 1780149 (S.D.N.Y. Apr. 20, 2015) ........................9

*Troyer v. NFA*, No. 16-cv-146, 2017 WL 2971962 (N.D. Ind. July 12, 2017) ......................20, 21

*Troyer v. NFA*, 981 F.3d 612 (7th Cir. 2020) ..........................................17, 18

*Twersky v. Yeshiva University*, 579 F. App'x 7 (2d Cir. 2014) ....................................15

*United States v. Martinez*, 862 F.3d 223 (2d Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 2772 (2019)...................................................19

*Western Capital Design, LLC v. New York Mercantile Exchange*, 180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) ....................................15

*Western Capital Design, LLC v. New York Mercantile Exchange*, 25 F. App'x 63
(2d Cir. 2002) ...........................................................................................................16

*Williams v. Romarm*, 751 F. App'x 20 (2d Cir. 2018) ............................................ 22-23

*Xu v. Financial Industry Regulatory Authority Inc.*, 503 F. App'x 7 (2d Cir. 2012) ...................26

*Yadav v. New York Stock Exchange, Inc.*, No. 91-CV-2256, 1992 WL 197409
(S.D.N.Y. Aug. 4, 1992), *aff'd*, 2 F.3d 403 (2d Cir. 1993) (unpublished table
decision) ..................................................................................................................24

STATUTES

7 U.S.C. § 1a(28) ...........................................................................................................2

7 U.S.C. § 1a(31) ...........................................................................................................2

7 U.S.C. § 6b ...........................................................................................................24, 25

7 U.S.C. § 21 ...........................................................................................................20, 21

7 U.S.C. § 25 ...............................................................................................................24

7 U.S.C. § 25(a) ......................................................................................................11, 25

7 U.S.C. § 25(b) ..............................................................................9, 11, 15, 23, 25

7 U.S.C. § 25(c) ............................................................................................................9

28 U.S.C. § 1367(c) ....................................................................................................27

OTHER AUTHORITIES

*Arbitration*, NFA (2021), https://bit.ly/3qvWgdl ........................................................7

Fed. R. Civ. P. 72(b)(3) ..............................................................................................8

NFA Bylaws, https://bit.ly/3kvC1J1 ....................................................................16, 17

NFA Code of Arbitration, https://bit.ly/2ZUoAeS ..............................................13, 15

NFA Compliance Rules, https://bit.ly/30ksc9S ....................................................6, 23

*In re Vision Financial Markets LLC*, NFA Case No. 13-BCC-018 (N.F.A. June
20, 2014), https://bit.ly/3dJ1ZXc ........................................................................5, 18

## INTRODUCTION

This case concerns a suit brought by Samantha Kumaran and an entity that Kumaran controls, Nefertiti Risk Capital Management ("NRCM"), which is the latest frivolous lawsuit brought by a serial litigant with a history of filing meritless complaints. In 2014, Judge Crotty dismissed with prejudice an action claiming that KMPG had "misappropriat[ed Kumaran's] trade secrets"—after having dismissed her initial "318-page, 1,417-paragraph complaint" for failing to "comply with the Federal Rules." *A Star Grp., Inc. v. Manitoba Hydro*, No. 13-cv-4501, 2014 WL 2933155, at *1 & n.1, *3 (S.D.N.Y. June 30, 2014), *aff'd*, 621 F. App'x 681 (2d Cir. 2015). Earlier this year, Judge Vyskocil dismissed her "rambling" complaint alleging "a laundry list of" claims concerning "misappropriation of trade secrets" (with the same attorney who represents NRCM here representing Kumaran's entity there). *Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345, 2021 WL 797113, at *4 (S.D.N.Y. Feb. 26, 2021), *appeal docketed*, No. 21-798 (2d Cir. Mar. 29, 2021).

This suit is more of the same. Kumaran and NRCM ("Plaintiffs") claim that two participants in the futures market—ADM Investor Services ("ADMIS") and High Ridge Futures LLC ("High Ridge")—defrauded them by charging excess fees and stealing their trade secrets. This suit, however, is not against ADMIS or High Ridge. Instead, it is against the National Futures Association ("NFA"), a futures industry self-regulatory organization ("SRO"), and two NFA employees. Via a rambling, 1,000-plus paragraph Amended Complaint ("FAC"), Plaintiffs seek to hold NFA liable for the alleged misdeeds of ADMIS and High Ridge based on conclusory claims of an elaborate conspiracy among ADMIS, High Ridge, and NFA (among others).

Magistrate Judge Aaron painstakingly reviewed Plaintiffs' often-impenetrable FAC and issued a Report and Recommendation ("R&R") recommending that the FAC be dismissed with

1

prejudice.  ECF No. 113.  Magistrate Judge Aaron correctly recommended dismissing Plaintiffs' FAC on multiple independent grounds:  Plaintiffs' claims under the Commodities Exchange Act ("CEA")—the only cause of action that Congress authorized against NFA when it acts in its regulatory capacity—are untimely and fail to state a claim.  And Plaintiffs' state-law claims cannot proceed given NFA's absolute regulatory immunity.  None of Plaintiffs' objections to the R&R has merit.  This Court should adopt that careful decision in full.

## BACKGROUND

### A.  Plaintiffs' Allegations Of Fraud By ADMIS And Vision.

This case concerns the futures industry.  Futures are traded on futures exchanges.  Futures commission merchants, or FCMs, are intermediaries that "solicit[] or accept[] orders to buy or sell commodities for future delivery" and accept money or credit from customers to secure trades. *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1084 (2d Cir. 1997); *see* 7 U.S.C. § 1a(28); R&R at 3 & n.1.  Many people who seek to participate in the futures market do so via introducing brokers.  Introducing brokers "are independent entities that solicit and accept customer orders, but use the services of FCMs for clearing, record keeping and retaining customer funds."  *CFTC v. Mass Media Mktg., Inc.*, 297 F.3d 1321, 1323 n.1 (11th Cir. 2002); *see* 7 U.S.C. § 1a(31).  FCMs and introducing brokers are regulated by the CFTC and in many cases also by NFA, an SRO authorized "to complement the [CFTC's] regulation."  *Effex Capital, LLC v. NFA*, 933 F.3d 882, 886 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020).

Plaintiffs—Samantha Siva Kumaran and her now-dissolved single-member limited liability company, NRCM—allege that they were victims of a fraud by certain market participants. FAC ¶¶ 4, 6, 44, 47, ECF No. 57.  Plaintiffs allege that in December 2016, Trey Lazzara—an "associated person" of an introducing broker—convinced Kumaran to refer her and NRCM's

accounts to ADMIS for FCM services.  *Id.* ¶ 580; R&R at 9.  Plaintiffs allege that Kumaran soon noticed that ADMIS was charging unauthorized fees and making large margin errors. *Id.* ¶¶ 588-592; R&R at 9.

Plaintiffs claim these errors reflected an elaborate conspiracy.  Lazzara had been affiliated with an FCM known as Vision Financial Markets, LLC ("Vision"), which had ceased to serve as an FCM in 2014 as part of a settlement of NFA disciplinary proceedings.  FAC ¶¶ 90, 2d 81,[1] 582; R&R at 4-5.  Another FCM, ADMIS, entered into a "Guarantee & Fee Agreement" to acquire Vision's business and to contract with Vision's successor company, High Ridge, to introduce Vision's customers to ADMIS.  FAC ¶¶ 148, 167; R&R at 6.  Plaintiffs assert that High Ridge and ADMIS also entered a separate oral agreement for High Ridge to provide third-party risk management services to ADMIS customers.  FAC ¶¶ 118-120, 252, 260; R&R at 7-8.  And Plaintiffs assert that this oral agreement contemplated that ADMIS would charge its customers unauthorized fees and would give High Ridge access to ADMIS's customers' confidential trading information.  FAC ¶¶ 130-136, 195, 213, 262, 580-585; R&R at 8.  Lazzara allegedly hid these agreements and misrepresented his relationship with ADMIS.  FAC ¶¶ 588-592.  Plaintiffs also claim that one of High Ridge's officers, Robert Boshnack, "launched a directly similar program in direct competition" to Kumaran's business, supposedly based on confidential information improperly acquired from her ADMIS account.  *Id.* ¶ 676.

Kumaran discovered her purported concerns quickly.  Plaintiffs allege that by "June 25 2017 Kumaran closed the account at ADMIS, citing gross negligence."  *Id.* ¶ 605; R&R at 10.  Then, "[o]n or around August 20[,] 2017," Kumaran found that the account balances "did not tie out" and that "unauthorized fees and payments had been made."  FAC ¶ 606; R&R at 10.  Finally,

---

[1] The FAC repeats paragraphs numbered 60-90; NFA uses "2d __" to refer to the second iteration of those numbers.

Plaintiffs allege that, by "September 20, 2017[,] Kumaran uncovered that" High Ridge had been given "unauthorized access … to [NRCM's] account."  FAC ¶ 607.

Plaintiffs allege that when they initially contacted NFA regarding their concerns, they found NFA's responses unsatisfactory.  For example, Plaintiffs claim that Kumaran sent copies of her communications with Lazzara to a member of NFA's compliance department, *id.* ¶ 614, and did not receive a response, *id.* ¶ 619; R&R at 10.  Plaintiffs also assert that two other compliance officers did not follow up on an email Kumaran sent on October 19, 2017.  FAC ¶¶ 623-624, 627; R&R at 10.  Defendants Nicole Wahls and Vilia Sutkus-Keila, NFA compliance officers, launched a review of Lazzara's activities beginning on October 17, 2017, and concluding around February 2018.  FAC ¶¶ 37, 39, 421, 629-654.  Plaintiffs aver that NFA informed Kumaran on March 15, 2018, that her case had been closed—without, in Plaintiffs' view, investigating adequately.  *Id.* ¶¶ 475, 685.

Kumaran alleges that NFA then informed her that in order to pursue her grievances against ADMIS, Lazzara, and any other members, she would be required to pay a fee and submit to NFA's arbitration proceedings.  *Id.* ¶¶ 695, 704; R&R at 11.  Kumaran paid the fee and initiated an arbitration.  FAC ¶¶ 706-708.

## B.  Plaintiffs' Allegations Concerning NFA.

Plaintiffs now claim that NFA is liable for the lost trade secrets and unauthorized fees they claim to have suffered from the alleged fraud by ADMIS and High Ridge.  Magistrate Judge Aaron discerned, from Plaintiffs' labyrinthine Amended Complaint, three alleged violations of the CEA by NFA.  R&R at 17-24.

***First***, Plaintiffs claim NFA violated Bylaw 301.  Bylaw 301(a) bars individuals from NFA membership if they were: (1) "suspended or expelled" from NFA membership; (2) "barred or

suspended" for violating certain rules; (3) "a cause of any suspension [or] expulsion" of another member; or (4) knowingly "associated with the person any other person" who was ineligible due to a suspension, expulsion, or bar, unless NFA finds that "the reason for ineligibility does not cause the person to pose a threat" to others.  NFA Bylaw 301(a)(ii)(A)-(E), (e).  Plaintiffs allege that NFA was required to make a finding about whether the individuals associated with Vision (High Ridge, Boshnack, Howard Rothman, and John Felag) posed such a threat.  R&R at 19-20; *e.g.*, FAC ¶¶ 24, 26, 2d 64-66, 89, 102, 113, 291, 295-98.  And Plaintiffs do so even though, in this case, no entity was barred, suspended, or expelled.  Instead, Vision in 2014 agreed to a settlement in which NFA disciplined Vision and Vision agreed to "withdraw from NFA membership."  Decision at 2, *In re Vision Financial Markets LLC*, NFA Case No. 13-BCC-018 (N.F.A. June 20, 2014), https://bit.ly/3dJ1ZXc ("NFA Decision");[2] R&R at 20-21.  Indeed, NFA's complaint did not even *name* Vision's two principals and associated persons, Boshnack and Rothman.  FAC Exhibit 4, ECF No. 57-4, at 2.  Even so, when Boshnack and Rothman "announced their intentions to form a new FCM called High Ridge Futures LLC," an NFA press release stated that if "High Ridge applie[d] for membership," NFA would "conduct a thorough fitness examination."  *Id.*

Ultimately, High Ridge sought registration as an introducing broker, not as an FCM.  FAC ¶ 102; R&R at 8.  Even though Rule 301 by its terms does not apply, and even though High Ridge did not apply for membership *as an FCM*, Plaintiffs nonetheless contend that "NFA could only re-register Boshnack, Rothman, and Felag upon a finding by the Membership Committee … that the reason for ineligibility does not cause the person to pose a threat."  Opposition to Motion to Dismiss First Amended Complaint, ECF No. 99 at 21 (emphasis omitted); *see also* R&R at 19.

---

[2] Magistrate Judge Aaron properly concluded that the court could consider the NFA decision, because the FAC incorporated its contents by reference.  R&R at 6 n.8; *N.Y. Pet Welfare Ass'n v. City of N.Y.*, 850 F.3d 79, 86 (2d Cir. 2017).

*Second*, Plaintiffs claim that NFA failed to adequately enforce its compliance rules, specifically Compliance Rules 2-2, 2-3, 2-4, and 2-14, regarding fraud and just and equitable principles of trade among NFA members.[3]  *E.g.*, FAC ¶¶ 11, 27, 41, 63, 136, 138, 152; R&R at 21.  Plaintiffs allege that NFA failed to stop the alleged conspiracy between ADMIS and High Ridge and that NFA's audits of High Ridge—allegedly conducted by two of NFA's compliance employees, Wahls and Sutkus-Kiela—were insufficiently rigorous.  FAC.¶¶ 428, 430, 451, 463; R&R at 21.

At the core of these allegations is Plaintiffs' claim that NFA knew about the alleged *oral* agreement between ADMIS and High Ridge.  *E.g.*, FAC ¶¶ 178, 182-187, 236, 443, 448.  Plaintiffs allege that ADMIS and High Ridge also had a written Guarantee & Fee Agreement—but they do not contend that the written agreement contained anything improper.  *Id.* ¶¶ 152-153, 169.  Instead, Plaintiffs' claims of illegality focus on the alleged oral agreement, which supposedly contemplated that ADMIS would charge unauthorized fees and give High Ridge access to ADMIS's customers' trade secrets.  *Id.* ¶¶ 130-136, 195, 213, 221, 262.  That oral agreement, per Plaintiffs, is what violated NFA's compliance rules regarding fraud and just and equitable principles of trade.  *Id.* Plaintiffs do not, however, plead any non-conclusory facts showing that NFA *actually knew* about this alleged oral agreement, or that the CEA or NFA's rules required audit procedures that somehow would have uncovered a secret, unwritten, illegal agreement like this one.

*Third*, Plaintiffs object to how NFA handled their arbitration.  One of NFA's functions is to provide an arbitral forum (akin to the Financial Industry Regulatory Authority, or FINRA, or

---

[3] Rule 2-2 prohibits members from, *inter alia*, "defraud[ing]" any customers or "enag[ing] in manipulative acts or practices"; Rule 2-3 bars members from "shar[ing], directly or indirectly, in the profits or losses" of customers' trades; Rule 2-4 requires members to "observe high standards of commercial honor and just and equitable principles of trade"; and Rule 2-14 states that members who "fail[] to comply with any NFA requirement shall be subject to ... disciplinary action."  *See* NFA Compliance Rules, https://bit.ly/30ksc9S.

the American Arbitration Association) for disputes between customers and members.  *See Arbitration*, NFA (2021), https://bit.ly/3qvWgdl.  Plaintiffs conspiratorially characterize NFA as having "induce[d] Plaintiffs into an NFA controlled arbitration," FAC ¶ 696, and they label the arbitration rulings as efforts to rig the arbitration against them and to hide the conspiracy they assert among ADMIS, High Ridge, and NFA, *id.* ¶¶ 714, 723.  Plaintiffs further assert that NFA took too long to assemble a panel and that the panel refused to compel key documents and treated Plaintiffs unfairly.  *Id.* ¶¶ 714, 723, 984.  Plaintiffs seek to recover their membership fees, as well as the fees they paid to initiate arbitration.  FAC Prayer (a).

### C.  Procedural Background.

Kumaran filed this suit *pro se* on May 11, 2020 as a putative class action.  Compl. at 1, ECF No. 1.  This Court *sua sponte* dismissed the complaint with prejudice on July 2, 2020, holding that NFA and its officers are entitled to absolute immunity from damages suits related to NFA's regulatory or arbitral functions and that the claims for injunctive relief failed because Kumaran did not allege that the parties' arbitration agreement was invalid.  Order of Dismissal at 1, 6-8, ECF No. 13.  Magistrate Judge Aaron recommended reconsidering that order in part, on the ground that immunity does not apply to claims under 7 U.S.C. § 25.  ECF No. 33 at 7-8.  Magistrate Judge Aaron thus recommended granting Kumaran leave to amend her claim under 7 U.S.C. § 25, as well as to replead her state-law claims, which were dismissed for lack of supplemental jurisdiction. *Id.*  This Court adopted the R&R.  ECF No. 34, at 2.

Plaintiff filed a FAC, this time signed by an attorney representing NRCM.  ECF No. 57.  The FAC asserts ten counts directed at NFA:  violations of the Commodities Exchange Act (Counts 1, 2, and 13), fraud (Count 3), aiding and abetting fraud (Count 4), misappropriation of trade secrets (Count 6), conversion (Count 7), aiding and abetting conversion and misappropriation

(Count 8), interference with economic advantage (Count 9), and civil conspiracy (Count 10). The NFA Defendants moved to dismiss the FAC in its entirety. *See* NFA Memorandum of Law in Support of Motion to Dismiss First Amended Complaint, ECF No. 74.

Magistrate Judge Aaron recommended dismissing the FAC with prejudice in full. R&R, ECF No. 113. He concluded that Plaintiffs' CEA claims, other than the one count arising out of the arbitration procedures, were untimely, and that all the CEA claims failed on their merits. R&R at 24-25. He also concluded that Plaintiffs' state-law claims were barred by NFA's immunity. *Id.* Plaintiffs have now submitted a lengthy set of objections to the R&R. *See* Plaintiffs' Objections to Report and Recommendation for NFA Defendants, ECF No. 120 ("Objections").

## LEGAL STANDARD

This Court reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Absent a "timely objection," the Court "need only find that 'there is no clear error on the face of the record.'" *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013). Parties may not raise new arguments in their objections that were not raised before. *Gonzalez v. Garvin*, No. 99-cv-11062, 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002). "A proper objection requires reference to a specific portion of the magistrate judge's recommendation; if a party makes only conclusory or general objections or simply reiterates his original arguments," then the Court again "need only satisfy itself that there is no clear error." *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-cv-251, 2019 WL 3554460, at *1 (S.D.N.Y. Aug. 5, 2019); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (internal quotation marks omitted)).

Moreover, a complete failure to object to some portion of the report "waive[s] the right to challenge" that conclusion. *Syphrett v. Heath*, No. 10-cv-5142, 2015 WL 1780149, at *4 (S.D.N.Y. Apr. 20, 2015); *see Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).

## ARGUMENT

### I.      Magistrate Judge Aaron Properly Found Plaintiffs' Non-Arbitration CEA Claims Time-Barred.

Magistrate Judge Aaron recommended dismissing all but one of Plaintiffs' CEA claims for one simple reason:  Plaintiffs' suit was untimely, and no equitable doctrine delayed the limitations period.  R&R at 14-17.  (The only exception is Plaintiffs' CEA claim concerning the arbitration.) Plaintiffs raise a slew of objections to those straightforward conclusions, but all fail for the same reason:  Plaintiffs concede that they knew of their injuries no later than August 2017.

### A.  Plaintiffs Discovered Their Injury In August 2017.

The CEA permits suits against NFA only in limited circumstances—and Congress paired this cause of action with a specific two-year limitations period.  7 U.S.C. § 25(b), (c).  As Magistrate Judge Aaron correctly observed, this limitations period runs from when a plaintiff discovers her "CEA injury."  R&R at 15 (quoting *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019)).  The Second Circuit has thus held that the key limitations question is when a plaintiff discovered the "loss that was the result of a CEA violation."  *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108-09 (2d Cir. 2019).  The question is *not* when the plaintiff "discovered the identity of the defendants" or "the manipulation scheme [they] allege."  *Id.*; *see* R&R at 15.

Magistrate Judge Aaron correctly determined that Plaintiffs knew about their loss more than two years before they sued on May 11, 2020.  In particular, Magistrate Judge Aaron explained that Plaintiffs knew of their alleged financial losses no later than August 20, 2017 and knew of the allegedly fraudulent scheme no later than September 29, 2017.  R&R at 15-16.  That conclusion is

clearly correct:  Plaintiffs allege that they closed their ADMIS account on or around June 25, 2017, FAC ¶ 605, and noticed allegedly "unauthorized fees and payments" from the account on or around August 20, 2017, FAC ¶ 606.  By August 20, 2017, Plaintiffs were, by their own allegations, aware that they had been charged unauthorized fees.  And by September 2017, Plaintiffs were aware that "unauthorized access" to their account "had been given" to third parties.  FAC ¶ 607; *see* FAC ¶ 29 ("around September 29, 2017, when Plaintiffs uncovered the scheme …").  Nonetheless, Plaintiffs did not file suit until May 11, 2020—roughly 2 years and 9 months later.  R&R at 16.  Plaintiffs' claims are thus time-barred.

Although Plaintiffs raise several objections to this straightforward conclusion (Issues 1A, 1B, 1C, 1F, 1K), none has merit.[4]  Tellingly, Plaintiffs do not dispute that they had actual knowledge of improper charges—and even wrongdoing—as early as August and September 2017.  FAC ¶¶ 29, 601, 605-606; R&R at 16-17.  Instead, Plaintiffs argue that their suit is timely *even though* they knew, more than two years before they sued, that they had incurred an injury (and even that the injury was allegedly wrongly caused).

Principally, Plaintiffs argue that the limitations period should be delayed until they supposedly learned of NFA's alleged involvement and "bad faith."  (Issues 1C, 1F).  The Second Circuit's decision in *Levy*, however, forecloses this argument.  917 F.3d at 108.  In *Levy*, the Second Circuit held:  "The relevant inquiry … is not whether [Plaintiff] had discovered the identity of the defendants or whether she had discovered the manipulation scheme she alleges in her

---

[4] Plaintiffs also argue, for the first time, three additional counts in their FAC—Counts 3, 4, and 8—were CEA claims and that NFA waived any defenses to these claims (Issue 1A).  Plaintiffs' characterization of these counts is incorrect, as explained below.  *Infra* pp. 24-25.  And regardless, NFA's limitations arguments clearly applied to any claim under the CEA (aside from the arbitration-based claim), as did Magistrate Judge Aaron's reasons for dismissing such claims.  *See* R&R at 15 n.18; *Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 84 (S.D.N.Y. 2012), *aff'd sub nom. In re Lyondell Chemical Co.*, 542 F. App'x 41 (2d Cir. 2013).

complaint.  Rather, the question is when [Plaintiff] discovered her CEA injury—that is, a loss that was the result of a CEA violation."  *Id.*

Plaintiffs have no answer to *Levy*'s dispositive holding.  First, Plaintiffs contend that *Levy* does not apply because Plaintiffs brought suit under 7 U.S.C. § 25(b), not § 25(a), as in *Levy* (Issue 1B).  But this is a distinction without a difference.  *Levy* in no way turned on the specifics of § 25(a); instead, it applied general accrual principles.  *See Levy*, 917 F.3d at 108 (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (RICO), and *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (FTCA)).  And there is zero support in § 25's text for applying different accrual rules to different subsections.  Second, Plaintiffs argue that *Levy* does not apply because Plaintiffs are registered commodities trading advisors ("CTAs"), whereas the plaintiffs in *Levy* were not (Issue 1K).  But again, that is a distinction without a difference.

### B.  Equitable Doctrines Cannot Help Plaintiffs.

Magistrate Judge Aaron also correctly rejected Plaintiffs' argument that the court should equitably toll the statute of limitations due to the defendants' alleged fraudulent concealment of their causes of action.  R&R at 17.  "In order for equitable tolling to be available on the basis of fraudulent concealment, a plaintiff must prove that (1) the defendant concealed the existence of the unlawful conduct, (2) the plaintiff remained ignorant of the violation until sometime within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence."  R&R at 17 n.21 (quoting *Behrens v. JPMorgan Chase Bank, N.A.*, No. 16-cv-5508, 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 31, 2019)).  Magistrate Judge Aaron correctly concluded that Plaintiffs could not satisfy these requirements because they had actual knowledge of their injury by August 2017.  R&R at 17.  This conclusion was clearly correct.

Plaintiffs raise six overlapping objections to the court's ruling on these equitable doctrines (Issues 1D, 1E, 1G, 1H, 1I, 1J), which boil down to two basic points.  First, they claim that Magistrate Judge Aaron incorrectly rejected their request for equitable tolling based on fraudulent concealment.  And second, they claim Magistrate Judge Aaron should have invoked equitable estoppel (as distinct from equitable tolling) to deem their claims timely.  Neither claim has merit.

   ***Equitable Tolling.***   *First*, Plaintiffs' central equitable tolling argument—that NFA fraudulently concealed Plaintiffs' claim (Issue 1E)—fails for the same reason as their primary limitations argument.  Fraudulent concealment tolls the limitations period only if it "precluded [the plaintiff's] possible discovery of the *harms* that [s]he suffered."  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157-58 (2d Cir. 1995).  Here, Plaintiffs themselves allege that they had *actual notice* of the harm in August 2017.  Hence, Plaintiffs' objections to Magistrate Judge Aaron's decision— that they did not know the full scheme and all of its participants, Objections at 10-11—are irrelevant to their request for equitable tolling.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 87 (2d Cir. 2002) ("We have previously ruled that accrual of a cause of action based on specific acts of which a plaintiff was aware cannot be postponed, nor can a limitations period be tolled, simply by alleging that the acts were taken pursuant to a conspiracy.").[5]

   *Second*, Plaintiffs argue that fraudulent concealment applies because the alleged fraud was "self-concealing" (Issue 1G) and because NFA supposedly took "affirmative steps" to conceal its alleged misconduct (Issue 1K).  But to begin, Plaintiffs did not make the first of these arguments to Magistrate Judge Aaron; it is thus waived.  *See* ECF No. 99 at 41-42; *Chevron Corp. v.*

---

[5] Plaintiffs argue that *Levy* and *Behrens* support their position because they discuss concealment of the "nature of the claim."  Objections at 7-8 (quoting *Levy*, 917 F.3d at 109) (Issue 1D).  *Levy* and *Behrens*, however, hold exactly the opposite:  Both cases explain that plaintiffs cannot claim that they were unaware of the "nature and extent of the fraud" when they "had *actual* knowledge of [their] CEA injury."  917 F.3d at 109 (internal quotation marks omitted); *see Behrens*, 2019 WL 1437019, at *7 ("[A]ny contention that the MTD Defendants somehow concealed unlawful conduct is wholly inconsistent with" Plaintiffs' knowledge of "the same trading losses they seek to recover here.").

*Donziger*, No. 11-cv-691, 2013 WL 4045326, at \*1 n.3 (S.D.N.Y. Aug. 9, 2013).  And regardless, Plaintiffs again do not dispute that they *actually knew* of their alleged injuries in August 2017. *Supra* pp. 9-10.  Equitable tolling based on self-concealing actions is available only when the *harm* is inherently secret, such as price-fixing or bid-rigging conspiracies.  *Behrens*, 2019 WL 1437019, at \*7.

Plaintiffs fare no better with their claims that NFA took "affirmative steps" to fraudulently conceal the wrongdoing.   Again, these claims are wholly irrelevant because Plaintiffs do not dispute that they knew of their alleged injuries by August 2017.  *Supra* pp. 9-10.  Nor, in any event, do Plaintiffs adequately plead any "affirmative steps" that could trigger equitable tolling.  NFA's alleged "affirmative steps" boil down to: (1) failing to timely respond to Plaintiffs' questions; (2) conducting a "one-sided audit" of Lazzara; (3) "conceal[ing]" the agreement between High Ridge and ADMIS; and (4) informing Plaintiffs that they needed to pursue their grievances against ADMIS and High Ridge in arbitration.  *See* Objections, Exhibit 1, ECF No. 120-1 at 2-4.  The first two allegations simply complain that NFA should have *done more* to stop the alleged fraud or address Plaintiffs' concerns.  That is the *very opposite* of "affirmative steps" to conceal.  The third allegation is premised on Plaintiffs claim that NFA *knew* about the allegedly illegal oral agreement. But Plaintiffs plead no facts to support that theory, much less facts that show—under the "heightened" pleading standards of Rule 9(b)—that NFA affirmatively concealed this oral agreement.  *Behrens*, 2019 WL 1437019, at \*6.  And the fourth allegation is downright bizarre: NFA's rules *require* members to arbitrate disputes with other members.  NFA Code of Arbitration § 2(a), https://bit.ly/2ZUoAeS.  Plaintiffs plead not a single fact that NFA providing information regarding the mandatory arbitration was actually aimed at concealing some hidden fraud.

*Third*, Plaintiffs contend that Magistrate Judge Aaron improperly required them to show "extraordinary circumstances"; per Plaintiffs, only habeas litigants must show "extraordinary circumstances."  (Issue 1J).  This requirement, however, applies across the board.  *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (holding in antitrust context that equitable tolling applies "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights'" (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)); *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (FTCA); *Stevenson v. N.Y. Dep't of Corrs.*, 489 F. App'x 517, 517-18 (2d Cir. 2012) (ADA).

Here, Plaintiffs do not remotely show such extraordinary circumstances, which independently forecloses their request for equitable tolling.  (Issue 1I).  Again, leaving aside Plaintiffs' conclusory claims that NFA knew of and concealed the alleged illegal oral agreement, Plaintiffs' complaints here—about the quality of NFA's audits, its responses to Plaintiffs' emails, and its advice regarding arbitration—do not show any "extraordinary circumstances."  *Cf., e.g.*, *Behrens*, 2019 WL 1437019, at *7 (a denial of wrongdoing "does not constitute an extraordinary circumstance" (internal quotation marks omitted)); *Latouche v. Wells Fargo Home Mortg., Inc.*, 752 F. App'x 11, 14 (2d Cir. 2018) (Plaintiff's "conclusory allegations of non-disclosure … do not amount the sort of extraordinary circumstances that would warrant tolling.").

***Equitable Estoppel.***  Plaintiffs contend that Magistrate Judge Aaron should have separately considered whether to delay the limitations period based on "equitable estoppel."  (Issue 1H).  But Plaintiffs did not argue equitable estoppel before Magistrate Judge Aaron, and so "waived this argument."  *Chevron Corp.*, 2013 WL 4045326, at *1 n.3; *see* ECF No. 99 at 42.

In any event, Plaintiffs' estoppel arguments lack merit for the same reason as their tolling claim.  Estoppel is "an 'extraordinary remedy' which should be invoked 'sparingly and only under

14

exceptional circumstances," *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 10 (2d Cir. 2014) (citation omitted), where "the defendant's conduct caused [Plaintiff] to delay in bringing his lawsuit," *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985).  Plaintiffs' conclusory allegations do not identify any such "exceptional circumstances," for reasons already explained.  *Supra* p. 14.  And to the extent Plaintiffs claim that NFA led them to delay bringing this suit by supposedly inducing them into arbitration, Objections at 15, that claim makes no sense. Arbitration was the appropriate avenue for Plaintiffs' claims against NFA members like ADMIS— which is why NFA identified that avenue for Plaintiffs.  But, quite obviously, such an arbitration could *never* have allowed Plaintiffs to pursue claims *against NFA* or to pursue the claims that Plaintiffs bring here.  NFA Code of Arbitration § 2(a)(1).  The NFA arbitration thus could not possibly have been designed to keep Plaintiffs from bringing *this suit*.  *Cf. Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257-58 (2016) (finding party's mistaken belief that parallel litigation would apply to its dispute was "far from extraordinary").

## II.    Magistrate Judge Aaron Properly Dismissed Plaintiffs' CEA Claims On Their Merits.

Magistrate Judge Aaron also properly recommended dismissing Plaintiffs' CEA claims for the independent reason that Plaintiffs failed to plead the elements of a cause of action under 7 U.S.C. § 25(b).  Plaintiffs allege that NFA violated the CEA by failing to enforce its rules.  To plead such a claim, Plaintiffs must properly allege that:  (1) NFA failed to enforce a bylaw or rule that it was required by law to enforce; (2) Plaintiffs suffered actual losses cognizable under the CEA; (3) the losses were proximately caused by NFA's failure; and (4) NFA's failure to act was in bad faith.  *See W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 441 (S.D.N.Y. 2001) (citing § 25(b)(1), (b)(4)), *aff'd*, 25 F. App'x 63 (2d Cir. 2002).  Magistrate Judge Aaron recommended dismissing Plaintiffs' damages claims for two separate reasons:   First,

Plaintiffs failed to plausibly allege that that NFA failed to enforce any mandatory rule or bylaw, and second, Plaintiffs failed to plausibly allege that they suffered cognizable damages proximately caused by NFA's supposed wrongdoing.[6]  R&R at 17-24.  Both conclusions are correct.[7]

Magistrate Judge Aaron began by identifying the rules allegedly violated.  After canvassing Plaintiffs' lengthy complaint and construing the pleadings liberally, Magistrate Judge Aaron "reasonably discern[ed] three broad categories of rules" that Plaintiffs claim NFA failed to enforce: (1) NFA Bylaw 301(a)-(e); (2) NFA Compliance Rules; and (3) NFA arbitral rules.  R&R at 19; *supra* pp. 4-7.  Plaintiffs do not object to that categorization.  And while Plaintiffs' lengthy complaint mentions a grab bag of additional NFA rules, Magistrate Judge Aaron correctly found that "Plaintiffs do not adequately allege that those rules are required under 7 U.S.C. § 21, as is necessary to state a claim under" 7 U.S.C. § 25(b).  *Id.* 19 n.24.

### A. Plaintiffs' Bylaw 301 Claim Fails.

Magistrate Judge Aaron correctly dismissed Plaintiffs' claims concerning Bylaw 301. R&R at 20; FAC ¶¶ 24, 26, 2d 64-66.  Bylaw 301(a) presumptively bars certain persons from NFA membership: those who were "suspended or expelled" from NFA membership; who were "barred or suspended" for violating certain rules; who were "by [their] conduct while associated with a Member, a cause of any suspension [or] expulsion"; or who were "associated with the person any other person who is known to, or in the exercise of reasonable care should be known to" be ineligible due to a suspension, expulsion, or bar.  NFA Bylaw 301(a)(ii)(A)-(E), https://bit.ly/3kvC1J1.  Then, Bylaw 301(e) creates an exception:  Otherwise-ineligible persons may become

---

[6] Because Plaintiffs failed to meet these elements, Magistrate Judge Aaron did not reach whether Plaintiffs had adequately pled bad faith.  The utter dearth of plausible allegations as to NFA's knowledge or ulterior motive, however, is yet another reason to dismiss all of Plaintiffs' CEA claims. *See W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 25 F. App'x 63, 64 (2d Cir. 2002); ECF No. 74 at 14-18.

[7] Plaintiffs' FAC does not replead a claim for injunctive relief, and Magistrate Judge Aaron recommended dismissing any claim for injunctive relief with prejudice.  R&R at 35.  Plaintiffs do not object to that recommendation.

members if the NFA Membership Committee finds that "the reason for ineligibility does not cause the person to pose a threat to Members, Associates, or customers."  NFA Bylaw 301(e)(i).

Magistrate Judge Aaron correctly found that Plaintiffs' claims concerning Bylaw 301 failed because they had not pled the threshold requirement for Bylaw 301 to *apply*.  Plaintiffs' own allegations show that Vision was not, in fact, suspended, expelled, or disbarred; instead, it voluntarily withdrew.  As a result, Magistrate Judge Aaron properly concluded that Plaintiffs had no claim based on NFA's supposed failure to enforce Bylaw 301.  R&R at 20-21.  That conclusion accords with the Seventh Circuit's recent decision in *Troyer v. NFA*, which held that "an 'agreement not to reapply' is not an 'expulsion,'" and so "the NFA did not fail to enforce Bylaw 301(a)(ii)(D) because the NFA did not 'expel'" any member.  981 F.3d 612, 618 (7th Cir. 2020).

Plaintiffs raise two substantive objections[8] to the court's straightforward application of *Troyer* (Issues 3C, 3E), but neither has merit.  First, Plaintiffs argue that *Troyer* is inapplicable because 301(e) uses the words "ineligible or disqualified," rather than suspended, expelled, or disbarred.  Objections at 22.  But in fact, Bylaw 301(e) refers to individuals who were "ineligible or disqualified … *under paragraphs (a) or (d) above*"—pointing back to Bylaw 301(a)'s presumptive prohibition on registration by people who were "suspended," "expelled," or subject to a "bar[]."  *Troyer*'s holding—that "an 'agreement not to reapply' is not an 'expulsion,'" under paragraph (a)—is therefore squarely on point.  981 F.3d at 618.  Because Vision was not suspended, expelled, or disbarred, the presumptive bar in Bylaw 301(a) did not apply.  And as a

---

[8] Plaintiffs also make another meritless procedural argument.  They say that NFA waived its arguments regarding Bylaw 301, and that Magistrate Judge Aaron improperly "guessed" as to Plaintiffs' causes of action (Issues 3A, 3B).  Both assertions are wrong.  NFA argued in both its opening and reply briefs that Bylaw 301 was not implicated because Vision was not expelled.  ECF No. 74 at 16-17; Reply in Support of the Motion to Dismiss Defendants NFA et al, ECF No. 109 at 9-10.  As to Magistrate Judge Aaron's supposed "guessing," Plaintiffs purport to quote the R&R as observing (correctly) that Plaintiffs arguments were "unclear" and as stating that Magistrate Judge Aaron therefore "guessed" as to the right rules to address.  Objections at 21.  But the quoted language about "guess[ing]" *does not appear* in the R&R.  Magistrate Judge Aaron did a commendable job on a difficult task:  He thoroughly and comprehensively parsed Plaintiffs' often-incoherent allegations and construed them liberally.  R&R at 13.

result, NFA did not have to make the finding that Bylaw 301(e) requires before NFA may make an exception from that general rule.[9]

Second, Plaintiffs try to distinguish *Troyer* on its facts (Issue 3E). First, Plaintiffs stress that the party at issue in *Troyer* was an introducing broker, while Vision was an FCM. Objections at 24. But this is yet another distinction without a difference. Under *Troyer*, all that matters is whether the member was suspended, expelled, or disbarred—which Vision was not. *See* 981 F.3d at 618. Second, Plaintiffs argue that here, unlike in *Troyer*, High Ridge *was* statutorily disqualified. Objections at 23. That claim is obviously wrong. Vision withdrew its membership, just like in *Troyer*. NFA Decision at 2. And the NFA press release Plaintiffs cite makes clear that High Ridge was *not* barred from applying for membership as an FCM. ECF No. 57-4. All NFA said was that if High Ridge applied, NFA would conduct a thorough investigation. *Id.* ECF No. 57-4. High Ridge then applied for membership as an introducing broker—*not* as an FCM. FAC ¶ 98. And in any event, Plaintiffs cannot ground a claim under 7 U.S.C. § 25 on assertions about what NFA said it would do in a *press release*.

### B. Plaintiffs' Claim Under NFA's Compliance Rules Fails.

Magistrate Judge Aaron also properly recommended dismissal of Plaintiffs' CEA claims arising out of NFA's supposed non-enforcement of Compliance Rules 2-2, 2-3, 2-4, and 2-14. R&R at 21-22. Plaintiffs contend that NFA inadequately enforced its rules governing members' conduct, including the rules barring fraud, profit-sharing, and unjust practices. *Id.*; *supra* p. 6. Magistrate Judge Aaron recommended dismissing these claims because Plaintiffs failed to

---

[9] Plaintiffs also assert that "expulsion" is not the relevant inquiry because their claims also arise under NFA Rule 2-2(i) (Issue 3D). Rule 2-2(i), however, simply says that no member shall "[a]ct in any capacity requiring registration" unless "registered in that capacity." To the extent that Plaintiffs argue (for the first time) that High Ridge exceeded its role as an introducing broker, NFA discusses that argument below. *Infra* pp. 20-21. But Rule 2-2(i) has nothing to do with Plaintiffs' contention, under Bylaw 301, that High Ridge *was* registered when it *should not have been*.

adequately plead "actual losses" "*caused* by … failure to enforce" NFA rules.  R&R at 22 (emphasis added).

Magistrate Judge Aaron was correct.  To plead that losses were "caused" by alleged nonenforcement, a plaintiff must tie a "particular enforcement mechanism to a[] particular act of" misconduct and explain how "enforcement would have … avoided the alleged losses."  *In re Chicago Bd. of Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 873 (N.D. Ill. 2020).  Here, Plaintiffs simply assert—in conclusory fashion—that the fact of rule violations shows that NFA's oversight should have been more rigorous.  ECF No. 99 at 14 (NFA rules "were expressly breached and NFA failed to enforce its rules.").  Magistrate Judge Aaron was appropriately skeptical that Plaintiffs had adequately pled that NFA's rules or the CEA required more rigorous audits.  R&R at 22.  But Magistrate Judge Aaron found that he did not need to reach this question because Plaintiffs pled no non-conclusory facts showing that more rigorous audits would have *unearthed* High Ridge's alleged fraud or secret oral agreement.  *Id.*  And absent such well-pled facts, Magistrate Judge Aaron correctly concluded that Plaintiffs' allegations were "too speculative to be plausible."  *Id.*  Unless the "more rigorous" audits that Plaintiffs claim were required would have uncovered the secret oral agreement, alleged deficiencies in these audits cannot have caused Plaintiffs' alleged harm.

Indeed, Magistrate Judge Aaron's causation conclusion is so clearly correct that Plaintiffs do not even *dispute* it.  As such, Plaintiffs have waived any arguments as to causation, and this Court can simply adopt the R&R's findings.[10]  *Mario*, 313 F.3d at 766.  The three trifling

---

[10] Needless to say, Plaintiffs cannot resuscitate any objections by raising them in their reply brief.  *See United States v. Martinez*, 862 F.3d 223, 234 (2d Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 2772 (2019).

objections that Plaintiffs raise are not objections to Magistrate Judge Aaron's core conclusion—and even on their own terms, these objections lack merit.

First, Plaintiffs claim that they adequately pled monetary losses (Issue 2A).  But to begin, this objection misses the point for the same reason just explained.  Magistrate Judge Aaron did not conclude that Plaintiffs had not sufficiently quantified their losses, but that any such losses were not *caused* by NFA's action or inaction.  R&R at 20.  Indeed, Plaintiffs' damages allegations here fail for an independent reason that Magistrate Judge Aaron did not reach.  The cause of action in 7 U.S.C. § 25 does not allow plaintiffs to recover for *any* damages they may have suffered; instead, that cause of action allows for recovery only of "trading loss[es]" resulting from Plaintiffs' "purchases or sales in the commodities market."  *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 260, 262 (2d Cir. 2006).  Here, the losses Plaintiffs allege—lost trade secrets, fees, and overcharges—do not constitute trading losses.  *See* ECF No. 74 at 13.

Second, Plaintiffs argue that Magistrate Judge Aaron should have permitted their claims based on Rules 2-2(i), 2-26, and 2-29 (Issue 2F, 3D).  But as to Rules 2-26 and 2-29, Magistrate Judge Aaron correctly held that Plaintiffs could not invoke those rules because they are not *mandatory* or required by 7 U.S.C. § 21.  R&R 19.[11]  Plaintiffs do not dispute that "where a bylaw or rule is not required by § 21, there is no private right of action under § 25(b)."  *Troyer v. NFA*, No. 16-cv-146, 2017 WL 2971962, at *10 (N.D. Ind. July 12, 2017).  Plaintiffs *do* contend that these two rules are, in fact, required by § 21.  Objections at 19-20.  But they are wrong:  NFA became a registered futures association, thereby necessarily satisfying all of § 21's statutory requirements for registration, in 1981.  NFA did not adopt Rules 2-26 and 2-29 until 1985.  These

---

[11] These are the only two rules Plaintiffs specifically object should have been considered as mandatory.  Arguments based on any other rules are therefore waived.  *Mario*, 313 F.3d at 766.

rules therefore by definition *cannot* be required by § 21, and so they cannot give rise to a CEA claim. *See Troyer*, 2017 WL 2971962, at *10; *Nicholas v. Saul Stone & Co., LLC*, No. 97-cv-860, 1998 WL 34111036, at *18 (D.N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000). Magistrate Judge Aaron properly applied *Troyer* and *Nicholas*, which squarely addressed this question.

As to Rule 2-2(i), Plaintiffs argue that High Ridge executives exceeded the scope of their authority as introducing brokers and thereby "[a]cted in a[] capacity requiring registration under the Act" without being "registered in that capacity" and that NFA failed to enforce this rule (Issue 3D). But to begin, Plaintiffs did not raise this argument before Magistrate Judge Aaron. Their briefing mentioned Rule 2-2(i) only once, in the context of their meritless arguments that High Ridge was statutorily disqualified. *See* ECF No. 99 at 34-35. This argument is therefore waived. *Gonzalez*, 2002 WL 655164, at *2; *Chevron Corp.*, 2013 WL 4045326, at *1 n.3. This argument is also irrelevant because—again—Plaintiffs failed to adequately plead that NFA's supposed nonenforcement caused their alleged losses, as Magistrate Judge Aaron held and Plaintiffs do not challenge. And again, Plaintiffs have in any event failed to plead any nonconclusory facts showing that NFA *knew* that High Ridge executives were acting outside the scope of their authority.

Third, Plaintiffs contend that Magistrate Judge Aaron did not sufficiently address their claims against Defendants Wahls, Sutkus-Kiela, and Kadlec (Issues 2C, 2D). But in fact, Magistrate Judge Aaron expressly addressed their allegations that "Wahls and Sutkus-Kiela failed to enforce audit procedures." R&R at 21. And he found that these claims failed for the same reason the claims against NFA failed: Plaintiffs had not plausibly alleged that their damages were *caused* by Wahls's and Sutkus-Kiela's actions. *Id.* at 22. Again, Plaintiffs have not objected to that ruling. As for Defendant Kadlec, Plaintiffs assert without citation that NFA did not dispute the imputation of Kadlec's conduct to NFA. Objections at 19. This is false. NFA explicitly

argued: "Plaintiffs continue to assert that Kadlec's actions are 'imputed' to NFA.  To impute Kadlec's actions, however, Plaintiffs would need to show that Kadlec took actions triggering Section 22 liability 'within the scope of [his] employment' as an NFA board member.  The FAC does not do that, much less with the specificity Rule 9(b) requires.  Claims that Kadlec acted improperly while serving as ADMIS's CEO are irrelevant—as those acts would be outside the 'scope of his … office' at NFA."  ECF No. 109 at 9 n.6 (citations omitted).  Plaintiffs raise no new response to this argument (nor is it clear why this is relevant, given that Magistrate Judge Aaron recommended dismissing all of Plaintiffs' claims against Kadlec, regardless).

### C.  Plaintiffs' Arbitration Claim Fails.

Magistrate Judge Aaron dismissed Count 13, concerning the NFA-sponsored arbitration, for two reasons.  First, the court held that Plaintiffs had failed to identify a single arbitration rule that NFA had failed to enforce.  R&R at 23.  Second, Plaintiffs had failed to plead cognizable damages linked to the arbitration.  As Magistrate Judge Aaron recognized, CEA damages must stem from a loss from a qualifying transaction, and such a loss (if there was one) could not possibly arise out of arbitration.  *Id.*; *see Klein*, 464 F.3d at 260, 262.  Both conclusions are correct, and Plaintiffs' objections lack merit.

First, Plaintiffs contend that the court erred in finding that they had failed to identify a single mandatory rule and belatedly identify four rules they allege NFA failed to follow (Issue 5B).  Objections at 27.  But to begin, Plaintiffs' opposition to NFA's motion to dismiss did not cite any of these rules; instead, Plaintiffs claimed only that NFA had a freestanding obligation "to maintain a 'fair' and 'expeditious' arbitration.'"  ECF No. 99 at 38.  Any arguments based on these rules are thus waived.  *See Gonzalez*, 2002 WL 655164, at *2; *Williams v. Romarm*, 751 F. App'x

20, 23-24 (2d Cir. 2018).  In any event, none of the rules Plaintiffs now invoke impose mandatory obligations on NFA.[12]

Second, Plaintiffs object to Magistrate Judge Aaron's damages ruling and contend that they can recover the fees they paid to engage in arbitration.  Objections at 28 (Issue 5C).  But as explained above, the CEA permits the recovery of only certain types of damages—and arbitration fees do not qualify.  *Supra* p. 20.  Under 7 U.S.C. § 25(b), a futures association can be liable only for "actual losses that *resulted from* [a specified] transaction and were *caused by* [its] failure to enforce or enforcement of such bylaw or rule"—that is, a "trading loss."  *Klein*, 464 F.3d at 262.  Arbitration fees are not trading losses.  Indeed, as Magistrate Judge Aaron explained, Plaintiffs closed their account months before initiating arbitration—so nothing NFA did or did not do as part of the arbitration could have *caused* any CEA damages.  R&R at 23.

Indeed, permitting Plaintiffs to recover for non-trading losses would effectively eliminate NFA's well-established arbitral immunity.  As this Court has already recognized, arbitral immunity bars damages suits against NFA for actions taken in its arbitral capacity.  ECF No. 33 at 6.  But under the theories Plaintiffs invoke, NFA would *never* have such immunity; plaintiffs could always pursue claims under 7 U.S.C. § 25 by claiming that NFA had failed to provide a fair arbitration procedure.  Congress rejected, in the statutory text, that untenable result.  Meanwhile, Plaintiffs' citation-free assertion that NFA does not enjoy immunity in its capacity as an arbitrator (Issue 5A)

---

[12] Plaintiffs identify "Rule 3(a)(1) to not appoint a Panel within 30 days," "failure to enforce Rule 7(a)(2) to produce" specific agreements, "Rule 7(h) – failing to have preliminary conference," and "Rule 9(7)(d) failing to set up audio recording of material arguments."  Objections at 27.  As best as NFA can tell, these in fact refer to Rules 4(a)(1), 8(a)(2), 8(g), and 9(d)(4), and Plaintiffs have misconstrued them all.  *See* NFA Code of Arbitration, https://bit.ly/2ZUoAeS.  Rule 4(a)(1) requires NFA to appoint a three-judge panel if the parties make the request within 30 days.  In other words, the 30-day limit applies to the *parties*, not NFA.  Rule 8(a)(2) requires NFA to identify documents to be automatically exchanged.  Plaintiffs do not allege that NFA failed to identify any documents—it merely wishes NFA had identified *other* documents.  This is not a CEA violation.  Rule 8(g) is expressly phrased as discretionary, noting that "NFA *may* schedule a pre-hearing conference."  And last, Rule 9(d)(4) merely says that parties can generate a record of a hearing at their own expense.  It does not obligate NFA to do anything.

runs headlong into the numerous cases granting SROs immunity when they act in their arbitral capacities.  *See, e.g.*, *Gill v. Fin. Indus. Regul. Auth.*, No. 11-CV-2713, 2013 WL 1203746, at *5-6 (S.D.N.Y. Mar. 6, 2013), *report & recommendation adopted*, 2013 WL 1201499 (S.D.N.Y. Mar. 25, 2013); *Funcia v. NYSE Grp.*, No. 07-CV-1745, 2007 WL 4276897, at *3 (S.D.N.Y. Dec. 3, 2007); *Yadav v. N.Y. Stock Exch., Inc.*, No. 91-CV-2256, 1992 WL 197409, at *3 (S.D.N.Y. Aug. 4, 1992), *aff'd*, 2 F.3d 403 (2d Cir. 1993) (unpublished table decision).

### D.  Plaintiffs Fail In Their Attempts To Recast Counts 3, 4, And 8 As CEA Claims.

Plaintiff pled three (and only three) claims under the only cause of action that Congress authorized against NFA—7 U.S.C. § 25.  Those claims are Counts 1, 2, and 13.  Magistrate Judge Aaron duly dismissed the remaining claims as part of his ruling on Plaintiffs' state-law claims, which are barred by NFA's absolute immunity and are discussed further below.  Now, however, Plaintiffs claim that Counts 3, 4, and 8 allege violations of a *different* CEA provision—not § 25, but § 6b—and that Magistrate Judge Aaron erred by not considering these Counts as such (Issues 2B, 2E, 4A-4E).  But Magistrate Judge Aaron got it right, for two independent reasons.

First, Magistrate Judge Aaron correctly construed Plaintiffs' pleadings and briefs.  The FAC identifies Counts 3, 4, and 8 as common-law claims under "New York Law."  FAC p. 154 (Count 3 is a claim for "[f]raud" "[u]nder New York State Law and Common Law); *id.* p. 160 (Count 4 pled as "aiding and abetting in fraud" "[u]nder New York Law"); *id.* p. 170 (Count 8 pled as arising "under New York state law").  True, the FAC cites 7 U.S.C. § 6 during some of its rambling counts (including once in the heading of Count 4).  *Compare, e.g.*, FAC ¶ 808 (citing § 6 as a ground of "jurisdiction"), *with id.* ¶ 809 ("State law claims are not preempted by the CEA and … Plaintiffs brings its [sic] claims under New York State law").  But if there was any doubt about how Plaintiffs regarded these counts, the briefing resolved it:  Before Magistrate Judge Aaron, Plaintiffs addressed their CEA claims and their state-law claims in separate briefs.  Their CEA

brief addressed only Counts 1, 2, and 13, *see* ECF No. 99 at ii, while their state-law brief addressed Counts 3, 4, and 8, *see* ECF No. 100 at ii.  Certainly, Plaintiffs have well and truly waived any claim that these counts arise under the CEA.  *See Gross v. Rell*, 585 F.3d 72, 94-95 (2d Cir. 2009).

Second, Plaintiffs in any event do not have a cause of action to enforce 7 U.S.C. § 6b, which makes it illegal to enter into contracts to defraud.  "CEA § 22 [7 U.S.C. § 25] enumerates the *only circumstances* under which a private litigant may assert a private right of action for violations of the CEA."  *Klein*, 464 F.3d at 259.  A plaintiff may only sue a registered futures association for the specific violations identified in § 25(b)(2)—namely a bad faith failure to enforce mandatory rules.  The cases Plaintiffs cite for a private right of action to enforce 7 U.S.C. § 6b all involve suits against private individuals for violating the law.  Section 25(a) permits such suits against private individuals—but that section does not apply to futures associations.  Only § 25(b) does so.  Because § 25(b)(5) explicitly states that it is "the exclusive remedy" for CEA violations by futures associations, Plaintiffs lack a right of action to enforce 7 U.S.C. § 6b.

Third, Magistrate Judge Aaron correctly held that Plaintiffs' arguments concerning 7 U.S.C. § 6b violate this Court's prior order, which granted Plaintiffs leave to replead only those CEA claims arising under 7 U.S.C. § 25(b).  R&R at 17 n.22; ECF No. 34 at 2.  Plaintiffs object that because they did not bring these clams in the original complaint, they should have been allowed to replead them (Issues 4B, 4E).  But the *whole point* of this Court's prior order was to allow Plaintiffs to replead only *certain* claims.

### III.   Magistrate Judge Aaron Properly Dismissed Plaintiffs' State-Law Claims.

Magistrate Judge Aaron properly dismissed all of Plaintiffs' state-law claims on the ground that NFA, as an SRO, is absolutely immune from damages suits "in connection with the discharge of their regulatory responsibilities."  R&R at 24.  Looking closely to "the nature of the function

performed," Magistrate Judge Aaron recommended dismissing these claims because Plaintiffs'

claims against NFA lie in the heartland of NFA's regulatory functions.  *Id.* at 24-25.  Plaintiffs'

state-law claims aver, at bottom, that NFA acted wrongfully in (1) allowing High Ridge to register

as a member; and (2) auditing High Ridge as a member.  Both registration and auditing are core

*regulatory* functions.  Hence, as Magistrate Judge Aaron correctly concluded, because Plaintiffs'

"allegations concern the exercise of powers within the bounds of the government functions

delegated to it," absolute immunity barred Plaintiffs' state-law damages claims.  *Id.* at 25 (quoting

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007)).

Plaintiffs' lone objection (Issue 6B) is that they alleged "activity that is unlawful" and that

NFA's supposed conspiracy with ADMIS was not part of NFA's "day-to-day regulatory

activities."  Objections at 30.  But absolute immunity, by its very nature, applies even when

plaintiffs allege illegal conduct.  As the Second Circuit has held, the "central question … is not

whether the SRO is acting (or not acting) 'consistent with' the laws"; rather, "the immunity

depends only on whether specific acts and forbearances were incident to the exercise of regulatory

power, and not on the propriety of those actions or inactions."  *In re NYSE*, 503 F.3d at 98.  Here,

Plaintiffs' allegations against NFA—that it failed to adequately investigate and sniff out alleged

wrongdoing—fall squarely within the core of NFA's regulatory functions.  Whether Plaintiffs

claim that NFA carried out those functions poorly, or even in bad faith, *see Xu v. Fin. Indus.*

*Regulatory Auth. Inc.*, 503 F. App'x 7, 8-9 (2d Cir. 2012), does not change the fact that these

activities are "incident to the exercise of regulatory power."  *In re NYSE*, 503 F.3d at 98.

Plaintiffs also contend (Issue 6A) that Magistrate Judge Aaron should have dismissed their

state-law claims for lack of subject-matter jurisdiction, instead of reaching the merits.  Objections

at 30.  The supplemental-jurisdiction statute, however, expressly gave Magistrate Judge Aaron

discretion to reach the merits: Once a federal court dismisses all the federal claims, they "*may* decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c).  But the decision whether to address state-law claims "is left to the discretion" of the court.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182-83 (2d Cir. 2004) (quotation marks omitted).  Here, Magistrate Judge Aaron soundly exercised his discretion to bring Plaintiffs' baseless claims to a final and just conclusion.

## CONCLUSION

For the foregoing reasons, this Court should adopt Magistrate Judge Aaron's R&R in full and dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: November 15, 2021

Respectfully submitted,

/s/ Gregory M. Boyle

Zachary C. Schauf (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
ZSchauf@jenner.com

Gregory M. Boyle (*pro hac vice*)
*Counsel of Record*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2651
GBoyle@jenner.com
*Counsel for National Futures Association*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2021, I electronically filed the foregoing Response to Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to Plaintiffs.

November 15, 2021                                      /s/ Gregory M. Boyle
                                                                          Gregory M. Boyle