**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Et al | )    Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | )    Judge: Hon Gregory H. Woods |
| | )    Magistrate Judge: Stewart D. Aaron |
| -against- | ) |
| | )    **PLAINTIFFS JOINT REPLY** |
| NATIONAL FUTURES ASSOCIATION, LLC | )    **TO THE REPORT AND** |
| Et al., | )    **RECOMMENDATION** |
| Defendants, | )    **AGAINST DEFENDANT KADLEC** |
| | ) |

<u>**PLAINTIFFS JOINT REPLY AND MEMORANDUM OF LAW TO THE OBJECTIONS**</u>
<u>**TO THE REPORT AND RECOMMENDATIONS FOR THE MOTION TO DISMISS**</u>
<u>**AGAINST DEFENDANT KADLEC**</u>

**FOR CLAIMS BROUGHT AGAINST KADLEC**

//BMA//                                                  //SSK//

Brian M. August                                    Samantha Siva Kumaran

AugustLaw NY                                       Pro Se Plaintiff

100 Willoughby Street #9E

Brooklyn, NY 11201

Counsel for NRCM

**TABLE OF CONTENTS**

I - INTRODUCTION AND PRELIMINARY STATEMENT……………………………Pg.1

II – OVERVIEW OF THIS ACTION AGAINST KADLEC………………………….....Pg.5

III – BASIS OF KADLEC'S REPLY……………………………………………………Pg.6

IV – SUBSTANTIAL ASSISTANCE AND AIDING AND ABETTING CLAIMS…….….Pg.22

V – SECTION 22 CLAIMS …….…………………………………………………….Pg25

VI - RICO CLAIMS……………………………………………………….....…..Pg.28

VII – DTSA AND NEW YORK LAW TRADE SECRET CLAIMS………………………Pg.33

VIII – STATE LAW CLAIMS …………………………………………………..Pg.38

IX – LEAVE TO AMEND……………………………………..…………………Pg. 42

X –TRANSFER OF KADLEC'S CLAIMS……………………………………………Pg.44

.

# TABLE OF AUTHORITIES

*Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 (2d Cir. 1996)

*Abreu v. Fairway Mkt. LLC*, 17-CV-9532 (VEC), 2018 WL 3579107, at *1 (S.D.N. Y July 24, 2018)

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972)

*Alexander Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969

*AUA Private Equity Partners*

*Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d (S.D.N.Y. 2019).

*Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 197 (E.D.N.Y. 2007)

*Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (ECF107 at 2)

*Beck v. Mnfcrs Hnvr Trust Co (2d Cir.1987)*

*Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 209–10 (S.D.N.Y. 2018)

*Burns Jackson v Lindner*, 88AD2d 50, 72, affd59 NY2d 314)

*Christine Asia Co. v. Ma*, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017)

*CMG Holdings Grp. v. Wagner*, No. 15-CV-5814 (JPO-SDA), 2016 WL 4688865, at *3 (S.D.N.Y. Sept. 7, 2016)

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)

*Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 2 (S.D.N.Y. 2013)

*Expert Connect vs. Fowler 2019*

*Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)

*Ge Dandong v. Pinnacle Performance Ltd. *, No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013)

*Goldberg v. Gray*, 2016 U.S. Dist. LEXIS 100802, at *18 (N.D.N.Y. Aug. 2, 2016)

*Gouldsbury v Dan's Supreme Supermarket*, 154 AD2d 509, 510

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009)

*In re Bisys Securities Litigation*, 397 F. Supp. 2d 430, 442 n.56 (S.D.N.Y. 2005)

Page iv

*In re Gas Reclamation, Inc. Sec. Litig., 659 F.Supp. 493, 504 (S.D.N.Y.1987)*

*In re MF Glob. Holdings Ltd. Inv. Litig., 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014)*

*In re MFGlobal id. (2d Cir. 2015)*

*Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 131 S. Ct. 2296, 2298, 180 L. Ed. 2d 166 (2011)*

*Kaufman v. Cohen,307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003)*

*Kumaran v. Vision Financial Markets, 20-cv-03871, First Am. Compl., ECF No. 55, ¶ 128.)*

*Land v. Forgione, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019)*

*Litras v Litras, 254 AD2d 395, 396*

*Lodato v. Greyhawk N.A., LLC, 834 N.Y.S.2d 237 (N.Y. App. Div. 2d Dept. 2007).*

*Long Island Lighting v. Transamerica, 646 F. Supp. 1442, 1452 n.13 (S.D.N.Y. 1986)*

*LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997).*

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 191 (2d Cir. 2015)*

*Luce v. Edelstein, 802 F.2d 49, 56 (2 Cir.1986)*

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 25 (S.D.N.Y.2009)*

*Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)*

*PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017)*

*Powers v. British Vita, P.L.C.(2d Cir.1995)*

*Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 534 (2d Cir. 1999)*

*Rosenblatt v. City of New York, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007)*

*Santos v. Dist. Council of N.Y. & Vicinity of Untd Brthd of Carpenters, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978)*

*United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1130 (E.D.N.Y. 1992)*

*Walrus Master Fund Ltd. v. Citigroup Glob. Mkts., Inc., No. 08-CV-02404 (DAB), 2009 WL 928289, at *3 (S.D.N.Y. Mar. 30, 2009)*

## ARGUMENT

### I - INTRODUCTION AND PRELIMINARY STATEMENT

Starting in November 2014, a cabal of oligarchs led by Defendant Thomas R. Kadlec (who serves in dual capacity as CEO of ADMIS and an insider on the Board and Membership Committee of the Defendants NFA), have violated their fiduciary and statutory duties of trust and confidence to customers (Plaintiffs), and engaged in a scheme to unlawfully withdraw monies – now estimated to exceed $70 million dollars over seven years – by fraudulently inducing them into opening futures accounts and without complying with the black letter CEA disclosure laws. The central theme of this Complaint is that at the direction and control of Kadlec, all Defendants intentionally are violating the and evading the CEA compliance laws, by failing to seek necessary consents and providing the mandatory disclosures,  to notify them *prior* to opening the accounts, that owners of a disbarred FCM Vision, would by individually guaranteeing their accounts, have pecuniary interests in their performance  – and who simultaneously run competing CTA businesses. The conduct violates the most fundamental basic laws of "fair competition" – that their accounts would be guaranteed by their competitors with substantial fees withdrawn.

With wanton disregard for the rights of others – and for personal greed - Defendant Kadlec and other Defendants, have abused their roles and positions of superiority and influence, noting Kadlec is also a supposed "Board Member" at the "NFA" as well as his violated his corporate duties as "CEO" of a large FCM – using back-door, inside illegal deals with the NFA, to set up their own set of market rules – and "illegal oral arrangements" – not conform with the CEA, and that favor a select group of old-timer insiders.[1] By not playing by the rules and the black-letter laws of the CEA (that everyone else has to play by) they create a favorable advantage to not themselves but to also their cohorts Boshnack and Rothman, that boast an almost criminal resume of serial compliance violations – running their last company Vision so dishonorably it was kicked out.

---

[1] Kadlec notes in his brief ECF130 at 4 that Vision was registered in 1988 and Boshnack and Rothman appear to have been registered also as AP's since then. ADMIS is listed on NFA Basic as having been a member since 1982. NRCM and Kumaran are newcomers and only entered the futures industry in 2016. NRCM was formed December 14, 2015 and both NRCM and Kumaran's registration to NFA Membership on May 23, 2017 and were brand new to the industry who had not even heard of VFM. Prior to entering the futures sector, Kumaran has had a twenty five year successful career in NYC as a risk management consultant, entrepreneur and risk software provide since 1993, in the energy sector, servicing as Chief Risk Officer for Niagara Mohawk Energy Marketing in Syracuse NY and other large corporations with specialized expertise in Enterprise Risk Management, risk, audit and compliance. Ms. Kumaran is a minority woman small business owner in NYC.

Instead, dazzles by millions of dollars of free credit lines, Kadlec has directed and approved a set of "secret" arrangements to favor a select group of "old-timers" and  create an unlevelized set of market rules to benefit a network of "insiders" and "good-ole boys" - at the expense of others, start-up CTA's, and newcomers. My client NRCM is a owned by hard-working, honest, minority woman small business owner who has since 1993 in Tribeca NY, defying all statistics of longevity of entrepreneurship for over 25 years, built her own businesses in NYC – having earned a Highest First Class, advanced Masters Degree  in Applied Math and Theoretical Physics from the University of Cambridge, Trinity College.

Kadlec and NFA however start their oppositions with trying to discredit Ms. Kumaran (the CEO of Nefertiti) and a long-standing entrepreneur in NYC – who has successfully accomplished a substantial career in advanced risk management consulting, accolading Top 10 awards, and a roster of prestigious clients (¶85) including working for JP Morgan, and large Utilities Duke Energy. The unwarranted attack to discredit my client, is to divert the Court's attention from whom the real villains are – Howard Rothman and Robert Boshnack – which as attached in Exhibit 1 (ECF57.1) is a horrific resume **prepared by the CFTC** of over 132 CFTC reparations cases, mostly citing "fraud", "misrepresentation" and "non-disclosure." Plaintiffs did not want to be involved with these people, but they became victims of a fraud – and as true entrepreneurs intend to enforce their rights.

NFA and Kadlec knew who these guys were (saw the warning signs of character) – but were seduced by the billions dollars of atypical financing in "risk free" businesses, and collateral they would receive in risk free credit lines of hundreds of brokers – but, instead - at the expense of small companies like NRCM,  Ms. Kumaran, victims of the scheme,  who ended up (without consent) being saddled with the illegal fees and bills, purloining of profits, thefts of funds and a complete loss of their trade secrets to their competitors. (Which Kumaran and her companies spent two decades and substantial capital to not just develop, test, including award winning risk management software). But Kadlec and his Insiders – wanted to – create an unfair market place dominance – and destroy Ms. Kumaran's CTA business, and give it to her competitors (HRHC CTA Referral) and now Vision Investment Advisors, now registered as a directly competing (CTA).

Contrary to Kadlec's slanderous attack on Pg 1, Ms. Kumaran has no lawsuits filed against her – no disciplinary actions. She is a hard working, minority woman business owner, that has earned her

way to raise substantial capital – from friends and family – estimated at over $750,000 to launch various advanced hedge finds under the name Nefertiti - in options trading to be defrauded by these market-insiders. While this case isn't about racial discrimination – the facts still have a theme - Defendants an insiders good-ole white-boy network who by their collective and unremorseful actions have destroy a minority woman's hard-earned market place competitive position and forced her to dissolve her company, stolen her trade secrets, property and assets and want to continue as though nothing happened. This also is about old-timers in the market securing their position and forcing new market participants out. The FAC alleges, that Kadlec, Rothman and Boshnack, purloined her profits, stole monies from her account, tampered with margin outside of exchange rules, made large margin errors over 200% of CME, withdrew excessive fees of 18% a year, stole trade secrets, gave them to her competitors, set up directly competing options programs (that they had tried and failed to develop for 20 years), and then gloated that NRCM would have dissolve its company while they continue to misappropriate her labor, skills and expenditures.

Nefertiti and Kumaran did nothing wrong. Kadlec starts his brief ECF130 that he has suffered a misfortune. But the Court should see the misfortune was Plaintiffs. Landing in swamp of corrupt and dishonest market participants, who under the helm, authorization and direction of Kadlec, and a completely flaccid and lame duck regulator, have abused their superiority and influence on the Commodities markets, failed to uphold even the most decent expectation of honesty and integrity, and destroyed other people's livelihoods.

The Court should make no mistake on whom the misfortune was. Kadlec can't complain on Ms. Kumaran intelligence, accuracy in numbers, extensive risk management experience (clearly far more accurate than his own risk departments) and fortitude as an entrepreneur to enforce her rights. The Motions to Dismiss (including NFA's) concede "excessive fee withdrawals", "fraudsters", "unauthorized fees", "illegal aspects of a deal", "gross negligence". No Defendants can dispute the documents errors and omission of over 200% in margin, NFA stating "large margin errors" in the risk department at ADMIS – which turned out to be an undercover group of disbarred owners of Vision, who were kicked out for losing $2.1 million dollar of customer moneys. The purported illegal risk services, were replete with errors and omissions, were grossly negligent, and violated exchange rules. It turned out instead of the ADMIS risk department, Plaintiffs account was being operated illegally

and outside their registration capacity by competitors, Boshnack and Rothman, who were granted discretionary authority to manipulate margin on their account over 500% the allowable margin limits. That's illegal. That's also fraud. NFA and Kadlec however continue to do nothing about it.

The misfortune Kadlec opens his brief ECF130 really means – he got caught – and the $70 million dollars of unauthorized illegal revenue he and his cohorts are stealing – are at risk of being jeopardized if the Court orders, (as it should) ADMIS and Kadlec play by the rules and are mandated to _disclose_ the G&F Agreements, disclose that their accounts are personally guaranteed by Rothman and Boshnack, disclose the illegal risk services agreements, disclose the pecuniary interests and fees withdrawals are being diverted to HRF, Boshnack and Rothman, disclose that HRHC and HRF are direct competitors as CTA's and CPO's, and disclose Boshnack and Rothman's discretionary authority on thousands of accounts who are impacted by this fraud and continue to be impacted by this fraud that continues in the market place today. The misfortune Kadlec opens his ECF130 brief, is for the Court to pity Kadlec, that an honest person had the courage as a small business, not to let ADM Investor Securities destroy her companies, but to take them to Court. Instead they slander them – for simply upholding their rights.  NRCM and Kumaran have been subject to repeated bullying, derogatory statements and threats if they enforce their rights.

In concluding our opening statement, the Court should not be deceived by ECF130's opening statement. Kadlec has no misfortune, He stands to gain millions off the backs of hard-working small businesses, stealing their property, moneys, assets and trade secrets, to benefit his select group of market old-timers and insiders who since 1988 have dominated the markets. They now abuse that position to shut out and stifle market competition. The misfortune is and has been Ms. Kumaran, and NRCM and the other thousands of customers who are also victims of this fraud – and who had a right to know (before opening the accounts) that bad actors Rothman and Boshnack had obtained pecuniary interest in their accounts, had a right to know their prior debaucherous disciplinary conduct, had a right to know their serial compliance violations (as NFA stated in June 2014 customers had a right to know) and had a right to know the existence of these G&F Agreements, the ORSA, and have a right to opt out. That is the foundation of this case, as at Kadlec's direction, control and helm Kadlec is the mastermind and orchestrator of the scheme – the kingpin if you will - Plaintiffs account was defrauded, and Plaintiffs have suffered inordinate damages as outlined herein in the FAC –

commercial losses in the start-up costs of their hedge fund, loss of their trade secrets to their competitors, and other commercial losses in their CTA and businesses, for their flagrant disregard to uphold and enforce the CEA to benefit a few market insiders.

**II – OVERVIEW OF THIS ACTION AGAINST KADLEC**

7 USC 25(b) allows Plaintiffs to bring a private right of action against Kadlec. Under 7 U.S.C. 25 § (b) (2) Liability is as follows:-

> A *registered futures association* that fails to enforce *any bylaw or rule* that is required under section 21 of this title or *in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order* shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule 7 U.S.C. 25(b)(2).

Plaintiffs have also brought causes of action against  Tom Kadlec pursuant to 7 U.S.C. 25 (b) (3

> 7 USC 25 § (b) (3) Any individual who, in the capacity as an **officer, director, governor, committee member, or employee** of registered [2] entity **or a registered futures association** willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.

Because Kadlec's claims were in his dual role as CEO of ADMIS and also as Board Member of the NFA, his private claims were included in this Complaint, which resulted in an omnibus complaint combining civil claims against Kadlec together with his CEA 22 claims. First, the R&R made a plain error in dismissing Kadlec's individual claims. First and foremost the R&R wholly ignored the CEA 22 claims against Kadlec and made no ruling under 25(b)(3) (ECF123 Issue 2D). Neither Kadlec nor NFA oppose the objection in Issue #2D. Plaintiffs have pled dozens of CEA violations for Kadlec, who had a statutory duty to enforce. (See FAC ¶777 - Violations) Under the CEA, for failure to uphold non-discretionary rules, negligence is the only standard to meet to uphold bad faith. Kadlec did not oppose that in his individual oppositions and reply. Plaintiffs have clearly met that standard. There was no recommendation of dismissal on the merits of Kadlec's claims. Therefore on that basis alone the R&R should not be followed.

### III – Basis of Kadlec's Reply

Kadlec's opposition **ECF130** centers on two main themes or rebuttal; (a) that Kadlec was not personally involved in the fraud and/or other torts; and (b) Kadlec's had no personal involvement or role in the ORSA (oral risk services agreement). The ORSA as alleged in the FAC states that a "secret oral arrangement" under which High Ridge executives, Boshnack, Rothman and Felag, who were AP's of the disbarred Vision, were unlawfully allowed to continue to work under cover as an FCM, (despite being AP's of a disbarred Vision) exceeding their registration authority as an IB, violating 2-2(i) and Bylaws 301(a)-(e), and went as far as to have been granted discretionary authority on Plaintiffs competing CTA account. The FAC alleges that Kadlec and NFA knew of their competing HRHC CTA Referral business (as it was publicly announced), yet Kadlec knowingly failed to disclose to CTA's the material conflicts of interests in Boshnack and Rothman's CTA' having guarantees and fees on their accounts, and then going further to have discretionary margin and risk control, and purloining moneys from their competitors.

ECF130 also contains multiple new arguments in Reply or that were not briefed before Judge Aaron. Plaintiffs object to the ongoing use of numerous late-dated arguments, arguments waived in the original motions to dismiss, and multiple new laws and regulations that were waived by Kadlec in outgoing motions. The Court should strike these. In a similar fashion to seek procedural advantage on arguments that Kadlec waived in his MTD(ECF77) Kadlec starts his brief with an attack on Plaintiffs about the word "disbarred". The Court should first note this is again another unbriefed argument in his MTD. (ECF77)

**(a) Barred 100 times:** In ECF130 at 1, front and center highlighted to the Court, Kadlec reminds the Court that Plaintiffs pled in their FAC Vision was "disbarred" more than 100 times. This is correct. On Pg. 1 Kadlec states

"Plaintiffs refer to the disbarments more than 100 times in the FAC and made those allegations the centerpiece of Defendants' alleged wrongdoing." ECF130 at 1

But this is precisely the case in point. ECF74 and ECF77 in the original motion to dismiss, despite the clear allegations that Plaintiffs pled VFM was barred, Kadlec by joining NFA's brief only moved to dismiss on Bylaw 301(a)(ii)(d) – and an argument of cause of expulsion. ECF130 at 1 opposes Plaintiffs objections, on a waived issue, that despite being on notice that "disbarred" was a clear allegation in the FAC, NFA and Kadlec then waived their defense by only moving n 301(a)(ii)(d) which is a specific

Bylaw that only states "Boshnack and Rothman were a "cause of Vision's expulsion". The argument was a red-herring as Plaintiffs never included any allegation about being a "cause of the expulsion" a specific subdivision of 301(a)(ii)(d) which rehashed an argument Troyer II that dos not apply to the facts of this case. (ECF74 at 16-17) Plaintiffs pointed out in ECF106 that NFA and Kadlec waived any arguments and failed to brief any of the other Bylaws 301(a)-(e). See ECF106 at 21-22 – stating arguments were waived. Therefore it is prejudicial and not-consistent with the MTD standards, to allow a complaint to be dismissed on arguments that were expressly waived.[2]

Second, Plaintiffs complaint cited violations of **all** NFA Bylaws 301 (a)-(e) (¶792, ¶798, ¶67, ¶102, ¶291, ¶362, ¶674), specifically mentioning NFA Bylaw 301(c) (e.g. ¶296) and also NFA Bylaw 301(e). At no point did Plaintiffs either in their complaint or in their MTD, discuss an allegation that Boshnack and Rothman were a "cause of Vision's expulsion" or raise any allegation that invoked NFA Bylaw 301(a)(ii)(d). Kadlec also, did not raise any arguments on any of the other Bylaws in ECF77, other than by joining NFA's defense to solely raise a defense on 301(a)(ii)(d). (ECF74 at 16-17). Therefore no arguments related to being "disbarred" were before Judge Aaron – neither were any of the other provisions of Bylaws 301(a),301(c), 301(d), 301(e) briefed to the Court. These arguments should be struck.[3]

In Kadlec's ECF110 brief, he again re-iterated the red-herring diversion of the word "expulsion" (See ECF110 at 8  "*As set forth in the NFA Defendants' Reply brief, NFA Bylaw 301(e) does not apply to the facts here because neither Vision, Boshnack or Rothman were ever "expelled*."[4] However now for the first time at ECF130 at 1, he argues (and admits to the Court the fallacy of his original argument) as he knows that Plaintiffs have pled more than 100 times disbarred. Kadlec argues not to

---

[2] ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 100 n.16 (2d Cir. 2007); In re Various Grand Jury Subpoenas, 235 F. Supp. 3d 472, 485 ("The law in the Second Circuit is clear that arguments...raised for the first time in reply briefs need not be considered.").

[3] Plaintiffs have also argued in ECF123 Issue 3A,3B,3C and 3D, that Judge Aaron exceeded his discretion and made a plain error to make an alternative ruling on Bylaws 301(a)-(e) without briefing the parties, and that were expressly waived by NFA and Kadlec. [F]ailure to raise [a] defense in a motion to dismiss, has been held to be a waiver." *Santos v. Dist. Council of N.Y. & Vicinity of Untd Brthd of Carpenters*, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978)

[4] Arguments on the application of Vision being disbarred were c**learly not briefed in ECF77 or ECF110** (or any of the NFA's briefs)

the Court these arguments **on disbarred,** that were not previously before the Court, and to try to secure an unfair dismissal in an objections report relying on a new argument that is not permitted.[5]

<u>(b) New Arguments Not Previously Briefed in ECF77:</u> Kadlec's late argument fails in any event. As clearly demonstrated in NFA Reply, if the Court is to now include "late-dated" briefing on the word "barred" – ECF130 at 1, then **ECF57.4** and attached clearly to this Reply as **Exhibit 1**, shows that NFA made a public announcement that Vision was *effectively barred.* (See also Issue #25 ECF141).[6] Plaintiffs object to false and misleading statements. The facts on the record filed at ECF57.4 show NFA's public announcement dated June 20, 2014 states that Vision Financial Markets was *effectively barred. (verbatim)*. Therefore this is a distinction without a difference. NFA and Kadlec cannot have it both ways – to publicly announce an entity is *effectively barred*, and then claim in pleadings they were not *barred*. This is misleading to the Court and misstates the facts that NFA themselves have admitted in press releases.  The dictionary meaning of "effectively"  is … "<u>to have the same effect as</u>" or "<u>is actually</u>" or "<u>in such a manner as to achieve a desired result</u>." An entity is either barred or  not barred. You can't be half barred. Vision was barred. Therefore all the provisions that apply to Vision being barred in Bylaw 301(a) apply – and Kadlec's argument is misleading the Court with sophistry to avoid a truthful presentation of the fact that Vision (as announced by the NFA) was effectively barred. This in turn triggers – 301(a)(ii)(e.) and 301(a)(i)[7]

These arguments in Reply were not permitted the ability to respond. Judge Aaron also made an erroneous ruling on <u>*all*</u> Bylaws 301(a)-(e) without any briefing on them. Since these arguments overlap the NFA brief, they are included in opposition therein. Kadlec (in joining NFA's brief) also

---

[5] Plaintiffs also incorporate by reference herein Issue #23-#27 fromECF41  Issues 7B, also filed in the Motion for Sanctions (ECF141) that expands why the disbarred argument is a fallacy and the correct application of Bylaws 301(a),(c)(d) and (e.)
[6] Plaintiffs also respectfully request additional pages to respond to these ongoing new arguments that were not in ECF77 or ECF110 and not before the Court previously.

[7] Further 301(a)(ii)(e) is triggered because it was known to Kadlec (or with the exercise of reasonable care should be known to them), that they were registered solely as AP's of an IB and were ineligible and not registered in accordance with the Act and rules of the Commission (under Bylaw 301(a)(i) to continue to act as an FCM. In both these criteria, (see 301(a)(i) is not contingent on the underlying words "barred", suspended or expelled).  Therefore the services of having **discretion to extend margin and credit on customer account**s was prohibited under the Commission Rules. Further, under CFTC 1.14 any person providing risk services had to be registered as Material Affiliated Persons, and no such disclosures and registrations from the CFTC were obtained. **e.g (FAC ¶287-¶306)** which were signed by Kadlec in the RMP, and conferred by the CFTC were not disclosed to in the RMP and thus violated CFTC 1.11-1.14. Kadlec also knew it violated CFTC Reg 1.57 (c) – an IB m**ay not extend credit or margin** a customers' trades. As now AP's of IB they were not registered (akin to not holding the correct class of drivers' licenses) to act outside their registration capacity, and therefore were ineligible under 301(a)(i), (a)(ii)(c) and (a)(ii)(d), and were also associated with a former FCM that was barred. (301(a)(ii)(c)).

misrepresents that Bylaws 301(a)-(e) all have extremely distinct provisions and thresholds and criteria that cause each and everyone to be triggered. There is no "lumping" together of all Bylaws 301(a)-(e) to have a single "threshold". (see ECF141 Issue #23.) Therefore since all Bylaws 301(a)-(e) do not rely on the criteria of being "disbarred" – or being "suspended" or "expelled".

The FAC alleges **Kadlec**, in his individual capacity, to secure the billions of dollars of funding, (and to sneak around the CFTC and CEA Rules), directly authorized High Ridge executives, to act outside their registration capacity as IB's to work undercover for ADMIS, without the registration capacity to do so, and because this arrangement was illegal and the arrangements were kept "oral", thus violating numerous laws of the CEA (See ECF107 at 11) and exceeding their roles as IB's (going further to give them discretionary authority on Plaintiffs' accounts. Kadlec, despite the express briefing in ECF123 that his role also triggered Bylaw 301(c) – also fails to refute the objection that th R&R did not correctly apply Bylaw 301(c). (See ECF141 Issue #). The FAC alleges that Kadlec, as Board Member, Committee Member on the Registration Committee (thereby specifically responsible for lawful registrations) and CEO, knowingly authorized High Ridge executives to (in an ongoing basis) act outside their registration authority performing functions only an FCM can and continue "undercover", and illegally – to continue to as an FCM with discretionary authority on Plaintiffs accounts. Kadlec does not respond to Plaintiffs express objections that this also invoked Bylaw 301(c) – whereby Kadlec had knowledge that the registration applications contained material omissions. Therefore by joining NFA's opposition, Kadlec offers no defenses for Kadlec's participation in Bylaws 301(c). The specific Bylaws that applied were Bylaw 301(c)(ii)(iii),(x),(xiv),(xvi).

Kadlec opens ECF130 at 1 to join the fallacy that VFM was not disbarred, (despite facts on the record they were effectively barred) and trying to bolster a false narrative that Plaintiffs arguments on registration violations hinged on the terms "disbarred, suspended or expelled", but they did not. As also clearly shown, any new argument presented to the Court on the legal sufficiency between "effectively disbarred" which is what NFA publicly announced and "barred" was not before Judge Aaron, and Plaintiffs did not have the opportunity to respond or brief the issue. For these reasons alone, the Objection stands. As stated above, ECF57.4 makes clear NFA announced they were *effectively disbarred*. This is "sophistry" and separate legal argument that has not been briefed. These therefore are issues of fact, that cannot be resolved at a MTD and were overlooked by the Court.

Kadlec also offers no response to his own violations of Rule 2-2(i) – which is allowing Boshnack, Rothman and Felag to exceed their registration requirements. This defense to 2-2(i) is therefore noted as not refuted, since he authorized them to act on behalf of ADMIS and had a statutory duty to uphold 2-2(i). The standard for enforcement of 2-2(i) is negligence, therefore on this count also, Kadlec's violations and failure to enforce the CEA were wrongly dismissed. [8]

(c) Fraud – Count 3 The second incorrect theme of ECF130 is Kadlec wants the Court to believe in his Reply papers – he had nothing to do with it – and he has "no personal involvement in the fraud". (see ECF 130 at 14). As argued herein, not only is that false, but not even probable or plausible as argued expressly in the Opposition (See Scienter / Intent to Defraud ECF 107 at 8-12). Plaintiffs have argued that the company for which Kadlec directs and controls the day-to-day affairs, ADMIS – made dozens of corporate publications statements related to the financials, and risk program, with his signature on, contracts with his signature on it (See ECF31) and multiple public **written** statements (ECF124.1)[9] that he directed, controlled or authorized on behalf of ADMIS, would lead to a plausible and supported-by-law analysis that Plaintiffs cannot prove their claims in trial that Kadlec is jointly liable as the Joint Maker of the Statements or who directed, controlled and authorized the statements, Control Person. Given the facts he signed the G&F, and there was other public documents concealing the excessive fee withdrawals, it is not plausible " he knew nothing about it". (See e.g. ECF130 at 18).

(i) The Core Frauds The gravamen of Judge Aaron's error, as explained throughout the Objections (ECF124) is the R&R did not probably identify the five(5) core frauds. As alleged throughout the FAC and Opposition, there were five(5) frauds – (a) **Fraud 1** - the concealment of the G&F Agreements and material pecuniary interests that Rothman, Boshnack and its competing HRHC CTA referral business in Plaintiffs CTA account; (b) **Fraud 2** – the commissions and fees (which were excessive and over 18% of the annual profits)  to be diverted to HRF, Boshnack and Rothman which required

---

[8] Plaintiff Kumaran has objected that Kadlec has joined NFA"s brief ECF129 that continues to wrongly assert that NFA 2-2(i) was raised for the first time, when it was clearly briefed at ECF106 at 35-36. This rule was explicitly raised, and neither Kadlec or NFA responded to it in their Replies. ("[Party] effectively concedes [the other's] arguments ... by [his] failure to respond to them...."); see generally Abrahams v. Young & Rubicam Inc., 79 F.3d 234, 237 (2d Cir. 1996)

[9] Kadlec continues to incorrectly apply the group pleading to "oral statements". See ECF130 at 16 again stating "Collectively-authored written documents, but does not apply to oral statements." citing to *Goldberg v. Gray*, 2016 U.S. Dist. LEXIS 100802, at *18 (N.D.N.Y. Aug. 2, 2016). But Plaintiffs never applied the Group Pleading to "oral statements". They expressly argued in Issue #3D, that these applied to written corporate documents as provided in **ECF124.1.**

Plaintiffs' consent and disclosure **prior** to opening the account;(c) Fraud 3 – the unfair competition and  material conflict of interest in HRHC CTA referral services, and the options trading commercial programs in direct competition with HRHC that VIA then launched – and clear conflict in interest in Boshnack, Rothman and Felag acquiring Plaintiffs trading account; (d) **Fraud 4** - the existence of and material terms of the unlawful oral risk services agreements which commenced in or around November 2014 – which are mandatory to be disclosed to customers prior to opening an account (See 33.7, CFTC 1.55.(k)(l)(i), and; (e) **Fraud 5** - Vision's extensive disciplinary conduct which NFA publicly admitted as relevant that customers inquiring about High Ridge would have access to (ECF57.4).  As outlined in Issue the first plain error in the fraud claims, is that the R&R did not discern each of the underlying frauds, which are distinguishable and actionable independent of one another For instance, even if the ORSA oral risk services arrangements did not exist, Plaintiffs would still have cause of action for fraud against Kadlec, for fraudulent inducement of their accounts, for the material concealment of the G&F Agreements, and the concealment of material individual guarantees by competitors Boshnack and Rothman, extraordinary fees, (which are excessive and also give a fiduciary duty to disclose), and directly conflict interest of Boshnack and Rothman's competing CTA referral services, which by public announcement of the NFA, was part of the Settlement Agreement and Kadlec knew or should have known the material conflict of interest to other CTA's. Therefore excluding the oral risk services agreement, Plaintiffs still had an actionable fraud claim against Kadlec, for his role in concealment of **Frauds 1, 2, 3 and 5** – namely the concealing of the pecuniary financial fee withdrawals, the guarantees on their accounts, as well as Vision's extensive disciplinary conduct.

Kadlec in his reply continues to evade the core issues of the primary core frauds (supra), and does not counter that the R&R overlooked the *other* allegations of fraud for concealing the G&F Agreements, the excessive fees, the unfair competition. Instead ECF130 continues to focus solely on the ORSA. While this too is part of the fraud, dismissing the entire claims without analysis of the substantive core frauds was in error. ECF130 does not counter that Objection on other frauds. #3B

**(ii) Which statements and omissions were actionable:** The second error in the R&R, were a review of what Kadlec's role was in the above core frauds, and whether he contributed to or participated in the (as the maker of the statements) or he controlled, directed and authorized the above statements.

[10]Because the Plaintiffs argued that Kadlec's role in the fraud was in more than one form. (a) He directed, controlled an authorized and/or was (b) the joint maker of the written statements or (c) that Plaintiffs had adequately pled Scienter (discussed infra). Kadlec disputes that ¶173-¶174 dos not relate to Kadlec, but these paragraphs incorporate by reference  Exhibit 5, and a list of how the statements in Exhibits 1-4 was fraudulent. (Filed also at **ECF124.1**). Kadlec's only defense is that these are "ADMIS documents" (See ECF130 17 n9). But this is precisely the point that Kadlec, as CEO, who directs and controls the day-to-day affairs of ADMIS, and his name is on all the documents including with his signature. To invoke the maker of the statements, or join maker of corporation disclosures, Exhibit 1 therefore shows Kadlec is a corporate insider, with direct involvement in day-to-day affairs within ADMIS, direct involvement in the company's everyday business. ¶173 also states "Kadlec made no changes to his promotional literature to disclose the material roles of HRF, Boshnack and Rothman. "The R&R failed to properly apply the "joint maker" of the statements or the Control Person liability for the public documents, signed, authored or directed by Kadlec. Only if it appears to a certainty that a plaintiff could have proved no set of facts to sustain a claim for relief should the claim have been dismissed. *Id. Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir. 1999)

**(iii) Kadlec's Role in the ORSA:** The central issue that was in the R&R  was whether Plaintiffs pled sufficient facts in Kadlec's individual role in approving the unlawful oral risk services arrangements, which as stated supra, gave Boshnack, Rothman and Felag (AP's of the disbarred Vision, who were not authorized or permitted to act in the capacity as an FCM), the ability to provide material risk services on their competitors' accounts of ADMIS. Plaintiffs first argue as above, in the Core Frauds, Kadlec's role in the other infringing frauds was not discussed in the R&R and therefore was not a correct analysis of fraud.

In any event, Plaintiffs argued in **Issues 9.A (and also 4.C)** that Judge Aaron's conclusion that Kadlec, in his individual capacity, did not play a role in the ORSA, was a plain error, as it overlooked the key facts, of his role in authorizing the RMP (Risk Management Program) – a core document that certifies as truthful the operations in the risk management group, and have to comply with CFTC 1.11-

---

[10] The R&R errs as it only uses the April 2018 statements as the actionable statements of fraud, and also failed to include any of the written corporate disclosures, as well as the other elements of Scienter and Fraudulent Intent (argued Infra)

1.14.[11] as explained in ¶280 – that any such risk services arrangements, that are legally permitted under CEA have to comply with the CFTC 1.11(d), (b) etc. (see also ¶279-¶290). In ECF130 - Kadlec offers no specific rebuttal, to paragraphs highlighted in Objections 9A/4C related to Kadlec individual role in the RMP, the very clear and plain error highlighted in pointing to 279-¶290, in Kadlec's individual role as specifically on the Governing body of the FCM required to make quarterly and annual statements to the CFTC disclosing material updates to the companies risk program and all authorizations thereunder for parties to act in the capacity as a Material Affiliated Person. ¶280 footnote in authorizing the Risk Management Program, as the CEO and Director of ADMIS. The FAC alleges that Kadlec falsified reports to the CFTC and on registration statements to conceal the activities from the CFTC (and customers) and that constitutes fraud and requisite scienter and intent.

Of primary note, Kadlec in his opposition ECF130 – offers and cannot refute the objection related to ¶270-¶290. The failure to engage in a meaningful way concedes the objection.[12]As explained in ¶280 – since Kadlec is on the Executive Committee and Governing Body of ADMIS, that has to sign and approve the forms to the Kadlec's opposition also **stays vacantly silent,** and fails to address the core issue, that Boshnack, Rothman and Felag, continued to act undercover as an FCM, in violation of the RMP and documents disclosed and signed by Kadlec to the CFTC. (¶279-¶293).

**Issue 9.A.** ECF124 is specific to the objections to the R&R, which failed to note Kadlec's individual role in the RMP as expanded ¶289, ¶290, in footnote ¶280 – that Kadlec, was required as the Director and CEO of Executive Committee was required to sign the RMP to the CFTC, and those statements were materially false when made, and knowingly violated CFTC 1.11(d) etc. as the failed to disclose that the Vision Risk Group, were acting as Material Affiliated Persons. (e.g ¶287-¶289)[13]

---

[11] The RMP is a key document, that is defined in CFTC 1.11-1.14 and has to be updated quarterly and annually to the CFTC for approval, and must document all key persons and material changes to the risk management program at ADMIS. The RMP must be signed by Kadlec, representing the truth and accuracy of the risk management program..

[12] "Failure to meaningfully engage with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)

[13] In other documents filed at the Arbitration on October 12, 2018 ADMIS under the direction and control of Kadlec, by and through its counsel have simultaneously filed pleadings admitted they shared Plaintiffs trading strategies with HRF under a "risk services arrangement". Concomitantly in related action 3871, Counsel Wiggins Dana have stated an there is an existence of a risk services agreement, approved by the NFA. At the same time, ¶282 states the CFTC had no record of such an authorization for risk services Kadlec's purported lack of knowledge of all these conflicting counselled pleading is not plausible. These material issues of fact, can only be resolved in discovery to which Plaintiffs are entitled to prove their claims, that Kadlec not only authorized the ORSA, he fully participated in the concealment of such from the CFTC as he knew it was illegal. That again meets the requisite threshold of fraudulent intent and scienter.

The Objection was also specific to the plausibility of Kadlec's individual role in the fraud related to the ORSA. because not only did he sign the RMP, it was confirmed by Ms. Frances Gonzales as Director of oversight of ADMIS's risk program. Therefore Kadlec's role in the fraud was not just concealing the risk services from Plaintiffs, but also misrepresentations to the CFTC which alleges he concealed his own unlawful conduct Issue 1G - e.g. ¶611,¶223¶262-266,¶248-249,¶350-¶358,¶97,¶403,¶683,¶624,¶534,¶474,¶390, ¶262,¶401, and ¶188-¶215) showing Kadlec's role in unauthorized disclosures). ECF130 at 19 makes no opposition to the prong of Disclosure in Issue 1G.

**(iv) Rule 9(b) Standards / Scienter and Fraudulent Intent:** Kadlec devotes ECF130 Pg.15-16 arguing that Plaintiffs failed to meet the heightened pleading standards of Rule 9(b). However he fails to engage in the specific components that would meet that standard for pleading Scienter (ECF107 6-12). Plaintiffs have objected that the R&R made a plain error in its application of Rule 9(b) and the pleading of Scienter, and fraudulent intent. (Issues 4F, 4F(i), 4F(ii), 4F(iii)). Each of those issues clearly points out the error in application of Scienter – specifically by not applying (a)motive and opportunity and/or (b) conscious misbehavior, recklessness or unlawful conduct. On Pg.16 Kadlec simply parrots the standards of law, but does not engage in Plaintiffs specific arguments and Objection carefully raised in Issue #3C -  that at the pleading stage, in order to meet Rule 9(b)standards, Plaintiffs only plead Scienter and fraudulent intent. (See Issue #3C, ECF107 8-12) [14], [15]. **The Court should note,** Kadlec does not engage in responding to any of the well-pled allegations of Scienter. Failure to engage in a meaningful way with raised issues is considered waiver. *See* Felske Id.

ECF130 shows no oppositions to Plaintiffs well-pleaded allegations of Kadlec's individual scienter of (i) *Motive* (ECF107 at 9) – that Kadlec sought to gain excessive and illegal fees and commissions and access a market of IB's previously unavailable to him; (ii) *Opportunity* (ECF 107 at 10) – showing at the pleading stage opportunity is easily met by Corporate Officers including Kadlec; (iii) *Conscious Misbehavior and Recklessness* (ECF107 at 10-12) that Defendants' knowledge of or access to contradictory information usually are sufficient to state a claim based on recklessness. *In re*

---

[14] The Second Circuit has ruled that at a pleading stage, Plaintiffs are only required to plead Scienter, and to allege facts that give rise to a "strong inference" of fraudulent intent. *Lerner,* 459 F.3d at 290; *see also Powers v. British Vita, P.L.C.*(2d Cir.1995). A complaint may give rise to a strong inference of fraudulent intent in two ways. First, the plaintiff may allege "a motive for committing fraud and a clear opportunity for doing so", *or* alternatively "identifying circumstances indicating conscious misbehavior, recklessness, illegal conduct ," *Powers, 57 F.3d at 184* (*Beck v. Mnfcrs Hnvr Trust Co* (2d Cir.1987)).
[15] There was a typo in Issue #3C citing to ECF108 (which as NFA's brief on fraud) instead of ECF107 (which is Kadlec's brief related to fraud.) We notice the Court the correct document for Kadlec was ECF107.

*Scholastic,* 252 F.3d at 76." *In re Bisys Securities Litigation*, 397 F. Supp. 2d 430, 442 n.56 (S.D.N.Y. 2005). [16]Here the FAC is clear that Kadlec has knowledge of or access to contradictory information from his disclosures to plaintiffs and customers; and (iv) *Kadlec Engaged in Deliberately Illegal Behavior*ECF 107 at 11 - Specifically Plaintiffs alleged Kadlec engaged in deliberately unlawful conduct in violation of the following statutes . 7 U.S.C. § 13 (a) (1)-(5); 7 U.S.C. §13 (b); 7 U.S.C §6, 7 U.S. Code § 6k (1), (5)). (¶359-¶403), Kadlec's failure in ECF130 to address any of these specific arguments on Scienter, on what Judge Aaron failed to consider in his analysis of Kadlec's individual culpability to satisfy Rule 9(b) as is clearly set by Second Circuit standards to meet Rule 9(b) is notable. Courts have held that failure to engage in specific arguments (namely the express objections raised to ECF 107 6-12 and the specific allegations of motive, opportunity, conscious misbehavior, recklessness, and illegal conduct) counts as a conceding the arguments.

Plaintiffs clearly pled Scienter and Conscious misbehavior, that Kadlec's failure to act when required to do so, and his knowledge of contradicting facts (such as the concealment of the G&F Agreements in his public disclosures), which also in ECF130, Kadlec fails to dispute. These also meet the pleading standards of fraudulent intent and requisite scienter. Oversight of those core issues was a plain error in the R&R and should not be followed.

**(v) 17 CFR § 1.55 – NEW ARGUMENTS RAISED IN OBJECTIONS REPORT**

Again Plaintiffs respectfully request additional pages to brief new and unpresented issues raised in ECF130 that were not before Magistrate Judge Aaron. Instead Kadlec injects an entirely new set of arguments, that were expressly not briefed in ECF110 or ECF77 related to whether 17 CFR § 1.55 also needed to be complied with – which are specific wording requirements for a "Risk Disclosure Document". As a first matter, Plaintiffs document, that despite clear inclusion in the FAC and opposition briefings ECF106-ECF108, that Kadlec had failed to enforce CFTC 1.55(k)(i)(l) – (See ¶309-¶310,[17] **ECF107 at 14**– "Further it is black-letter law that all risk services are disclosed before

---

[16] At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) '**engaged in deliberately illegal behavior**'; (3) '**knew facts or had access to information, suggesting that their public statements were not accurate**'; or (4) '**failed to check information they had a duty to monitor**.' ECA, 553 F.3d at 199 (quoting Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)). All were pled in ECF107

[17] 309 Under Reg 1.55, all FCM's and IB's are required to disclose to customer and traders prior to opening accounts, details of their risk management program expanding upon anything that would be misleading to entrust funds to an FCM. CFTC1.55 includes mandatory disclosure laws to provide to traders and customers, that required both the IB and

account opening" (¶308-¶312, CFTC Reg 1.55). and specific elaboration of the requirements of CFTC 1.55(k)(i)(l). However it is expressly clear that Kadlec, **ECF 110 failed to respond to the arguments.**

Therefore, Plaintiffs object to the inclusion again of once again brand new arguments. See e.g. ECF130 pg17-18, arguing for the first time on specific components of 17 C.F.R. § 1.55. **There was no briefing on 17 C.F.R. § 1.55** and the risk disclosure document requirements, anywhere in the Motion to Dismiss ECF77/ECF74 or in any of the Reply paper ECF109/ECF110 and they are not in the R&R. Plaintiffs will need to respond to these __new and material issues,__ and they are again improperly raised and placed. These rules or defenses were not before Judge Aaron and not part of the consideration of the original filings. Judge Aaron also did not rule on the application of required disclosures because the R&R also erred to apply the Group Pleading doctrine (which Plaintiff identified in ECF124 Issue 3A). So this argument is improperly placed before the Court.

Plaintiffs also argue in the alternative the argument is expressly waived. Specifically since Plaintiffs briefed the issue in ECF107 at 14, citing to failure to uphold CFR § 1.55, and Kadlec failed to respond to it in ECF110. Therefore it is unequivocal that these issues were waived. *See* Felske Id **Plaintiffs** therefore respects that that issue ECF130 at 17 and reference to 17 C.F.R § 1.55 be struck.

In the alternative, if the Court is entertaining new arguments, Plaintiffs respectfully request that have the full and fair opportunity to respond to them. The late argument fails at the outset. as it is irrelevant to the disclosure documents that Plaintiffs filed in Exhibits 1-5. Defendant Kadlec cites in ECF130 at 17 to a specific portion of **§ 1.55(b)** which governs only the specific verbatim language that the CFTC requires for on particular risk disclosure statement which allows traders to be advised of

---

FCM (meaning the *Vision brokers* and ADMIS) had non-discretionary duties to disclose all aspects of their risk program to CTA's prior to opening accounts. **CFTC Reg 1.55 (k) (11)** provides that the futures commission merchant shall provide material information that includes a summary of the futures commission merchant's current risk practices, controls and procedures; and **CFTC Reg. 1.55 (l)** provides that in addition to the foregoing, each futures commission merchant shall adopt policies and procedures reasonably designed to ensure that advertising and solicitation activities by each such futures commission merchant and any introducing brokers associated with such futures commission merchant are not misleading to its FCM Customers in connection with their decision to entrust funds to and otherwise do business with such futures commission merchant.

310 Further protecting CTA's and Plaintiffs from these market abuses, **CFTC Reg 1.55 (i) r**equires disclosure to the CTA of all information about the business and operations of the FCM, (which would include the G&F Agreements and risk service arrangement) that is necessary for full and fair disclosure…expanding upon such information as necessary to keep such disclosure from being misleading, whether through omission or otherwise. Therefore Plaintiffs had an express right to know. Instead NFA conspired with Defendants to harm market participants like Plaintiffs and professional CTA's to keep these illegal arrangements not disclosed.

the risks of trading. (see 17 CFR[[ § 1.55(b)). Clearly this is irrelevant to the actual rules that Plaintiffs allege were violated and are **also required and mandatory** to be disclose under **17 C.F.R. §1.55 (k)(11), (l) and (i). (See above).** Therefore Kadlec's late-dated Objections raised arguments on the defenses of 1.55(b) is wholly irrelevant to the actual CEA rules invoked. 1.55(b) does not create an "exemption" for them to comply with the other sections of 1.55(k)(11)(l) and (i) which were specifically stated in the FAC that were part of the fraudulent omissions in corporate disclosures.

**(vi) Specific Documents Demonstrated in Exhibit 1-5 (ECF124.1) are not related to 17 CFR 1.55**

Kadlec's late-dated 17 CFR **§** 1.55 argument further fails, as it is also inapplicable to the specific corporate documents signed by Kadlec. (See E.g. Exhibit 4 –  CONSOLIDATED STATEMENT OF FINANCIAL CONDITION AND SUPPLEMENTAL INFORMATION DATED DECEMBER 2016 , Plaintiffs specifically opposed for instance Section **7. Derivative Financial Instruments** and the omission on the margin policies used by Vision Risk Group, namely "Margin Allowances" ¶328-¶349 - that were clearly not in compliance with CEA Rules - and included other material concealments of the unlawful outsourcing of risk (also not in compliance with margin and CME rules) to High Ridge and its AP's and executives, who had no registration to engage in risk management for an FCM, but instead were granted discretionary authority (acting as thought they were still an FCM) on whether to extend buying power or credit on Plaintiffs competing CTA account. This group published document, that Kadlec is the joint maker of the statements, is not subject to 1.55 so his entire argument on Pg.17 crumbles. Kadlec concealed this information in Section 7, Exhibit 4, and it contains material omissions and concealments. Plaintiffs as a Derivatives traders, specifically relied on Kadlec's signed corporate documents Section 7 **Derivative Financial Instruments** of Exhibit 4, in its decision to entrust funds to ADMIS. Kadlec failed to respond to this in ECF77 /ECF110 so the arguments were not before Judge Aaron and should be considered waived. Therefore Exhibit 4, is not subject to CFTC1.55

Even if the Court is now to accept late dated arguments on Exhibit 2 and 3 for the Disclosure Documents – the specific rules that do apply CFR 1.55(k)(i) and (l) specifically state that 1.55(i)

In connection with the disclosure of such information, the <u>futures commission merchant</u> shall provide material information about the topics described in <u>paragraph (k)</u> of this section, **expanding upon such information as necessary to keep such disclosure from being misleading, whether through omission or otherwise.**

And also "Notwithstanding any other provision" as the introductory sentence to CFR 1.55(i)

Notwithstanding any other provision of this section, no <u>futures commission merchant</u> may enter into a <u>customer account</u> agreement or first accept funds from a <u>customer</u>, unless the <u>futures commission</u>

> merchant discloses to the customer all information about the futures commission merchant, including its **business, operations, risk profile,** and affiliates, **that would be material to the** customer's decision **to entrust such funds to and otherwise do business with the** futures commission merchant **and that is** otherwise necessary for full and fair disclosure.

Kadlec's signature and as joint maker of the public corporate disclosures of ADMIS, and also as CEO who directs the statements, is liable as both the joint maker of statements, and also as person that controlled the making of first statements in his capacity as directing the day-to-day affairs of ADMIS.[18] Not only are Kadlec's late arguments on CFR 1.55 prohibited, they also fail as a matter of law, as Kadlec was obligated to disclose the material outsourcing of risk to Plaintiffs to Boshnack and Rothman (especially given their diabolical disciplinary conduct and their prior FCM's being effectively disbarred, along with over $2.1million of customer losses, and $1.5 million of fines, and serious 132 CFTC Reparations cases). Plaintiffs had a right to a full and fair disclosure prior to opening the accounts.[19]

Kadlec's belated new legal argument on Pg. 17 that the CFR § 1.55 did not require disclosure of the G&F Agreements is also both incorrect, because that information was also material to require a full and fair disclosure of the business, operations and risk profile of the FCM. CFR § 1.55(i). The argument also fails, as it overlooks the omission to disclose the ORSA. The facts support that Kadlec had not intention of disclosing the material aspects of outsourcing the risk management program at ADMIS to even the CFTC. (The FAC alleges that Kadlec's has also signed documents to the CFTC ¶280 materially omitting information about the truthfulness of the risk program as verified by Ms. Gonzales – Kadlec cannot refute those statements)

Arguments on ECF130 Pg.17 raised for the first time, therefore fail to address Kadlec's violations and fraudulent omissions in failing to comply with the black-letter disclosures required to Plaintiffs that ADMIS had unlawfully outsourced discretionary authority (¶263)  and material aspects of all their risk management on plaintiffs CTA account to former AP's of an effectively disbarred Vision - Boshnack, Rothman and Felag. In this regard, it was not just the G&F Agreements that were

---

[18] See *Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 131 S. Ct. 2296, 2298, 180 L. Ed. 2d 166 (2011)* The Supreme Court has held for fraud and deception under 10(b) which is analogous to CEA 180.(1).(A)  the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. (id).  *See also Blank v. TriPoint Glob. Equities, LLC, 338 F. Supp. 3d 194, 209–10 (S.D.N.Y. 2018).*

[19] Kadlec does not even dispute in his Reply ECF110 or objections ECF130 the **materiality** of the omission. (See ECF107 Pg2-3).  A representation or omission is "material" if a reasonable investor would consider it important in deciding whether to make an investment. *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972);

material, but the material terms of ORSA that were material to transacting in commodities futures on Plaintiffs account. (See ¶263, material terms of the ORSA gave fiduciary and discretionary authority to High Ridge and its AP's on the risk management margin and parameters – all of which are expressly required to be disclosed under CFR 1.55(k)(i) and (l), and also under the general fraud provisions of the CEA, including e.g. CFR 180 and NFA 2-2 and 7 USC 6(b). All these activities fall under the required disclosures of CFR 1.55, and also constitute fraud, under the laws of the CEA.

**(vii) Waived Arguments and Joining of NFA's brief**

Kadlec also spend a large part of his brief trying to walk back the gaping holes and empty argument in the original Motion to Dismiss (ECF77) that simply joined NFA's arguments on fraud. NFA stated that the FAC alleged that "ADMIS and High Ridge had engaged in fraud." (See also ECF130 at 13). The Court should not ignore, that Kadlec (by his own counsel) chose **to join this response** – and to the extent he has argued that the FAC alleged ADMIS has engaged in fraud, then as the CEO, and the Control Person, and maker of the statements, who directed, controlled the publications, and made multiple of the public disclosures, including on NFA Basic, he cannot now pretend his MTD did not allege plausible allegations of his own role in the fraud. Kadlec therefore has plausibly alleged (by joining ECF77) that ADMIS participated in a fraud – and the MTD regarding Kadlec, being both the joint maker of the statements, or acting in his capacity as CEO that directed, controlled or authorized the public written statements, is also jointly and severally held responsible for the actional omissions and misrepresentations. Therefore the R&R clearly erred to not incorporate the Exhibits 1-5 (ECF124.1) that were incorporated by reference, and also improperly applied the maker, control person of the Statements, as well as who controlled, published and directed the statements.

Notably Kadlec also fails to defend the allegations of fraudulent omissions in NFA Basic (and the financial statements of the FCM) that were required to disclose "everything of the finances of the FCM". (see Issues 3B, 3D, 4D specifically referring to concealment in ADMIS BASIC, material registrations and misstatements on BASIC  - also argued ECF107  at 3, ECF 108 at 5 – omissions in BASIC on FCM's financial condition, Statement #4, See also ECF108 Exhibit 3, Statement 4). Kadlec as Board Member and CEO of ADMIS, he fails to refute the material omission listed on BASIC and concealed in NFA BASIC, that Plaintiffs account was being individually guaranteed **by its competitors** Boshnack and Rothman, HRF and HRHC, who had direct pecuniary and financial incentives on the

account, including withdrawal of fees. All those are actionable as fraud, as Kadlec directed and controlled the statements. The objections to the NFA Basic entries concealing facts were not disputed in ECF130. Plaintiffs had a right to know under the anti-fraud provisions of the CEA of the substantial pecuniary relationship and the interest into the guarantees on its commercial CTA account, by competitors at HRHC CTA Referral and Boshnack and Rothman.

In the alternative, consistent with Second Circuit guidance, under Rule 9(b) Plaintiffs should have been afforded the opportunity to amend. *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2 Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") Further Kadlec does not dispute the difference in application of the CEA 22 claims for fraud, which the Court admitted apply to him individually. (see R&R 32 n 37 ) [20] and yet the Court arbitrarily did not apply the same provisions of fraud to the NFA. Clearly ECF113 32 n 37 agrees Plaintiffs have a private right of action under Section 22 by the implied rights under 7 USC 6(b). (See ECF123 Issue #4A). Therefore this was a clearly erroneous application of law to apply different standards to Kadlec and NFA when the same statutory claims of fraud were brought under CEA 22 for both Defendants. Kadlec offers no defense or rebuttal to the inconsistency.

**(viii) Other arguments are diversions**

Finally on Pg. 17 Kadlec continues to deflect the group-pleading requirements by stating they do not apply to "oral statements". But Plaintiffs never argued they applied to oral statements so this is irrelevant. Second, Kadlec argues to the group pleading with other Defendants Boshnack, Rothman, and NFA. The argument is also a red-herring as Plaintiff did not apply the group-pleading to jointly authored statements with NFA, Boshnack and Rothman. The FAC specifically incorporated the ADMIS Corporate Disclosures and Consolidated Financial Statements which Kadlec' directly controls and is responsible for the day-to-day operations, and is therefore liable as the joint maker of the statements or the person that controlled the statements. (See *Id*).

---

[20] **R&R 32 n 37** states  A similar standard applies to claims of fraud under the CEA. *See Walrus Master Fund Ltd. v. Citigroup Glob. Mkts., Inc.*, No. 08-CV-02404 (DAB), 2009 WL 928289, at *3 (S.D.N.Y. Mar. 30, 2009) ("To state a claim for fraud under § 4b of the Commodity Exchange Act a Plaintiff must allege (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; (3) materiality; (4) and reliance (5) in or connection with any order to make . . . any contract of sale of any commodity for future delivery.") (internal citation and quotation marks omitted). Accordingly, to the extent Plaintiffs assert a claim against Kadlec pursuant to CEA § 4b, 7 U.S.C. § 6b, it fails for the same reasons as Plaintiffs' state law fraud claim.

As stated in Scienter, and given the other specific conduct of Kadlec's failure to act when required to do so, his conscious misbehavior, recklessness (and knowledge of information contrary to facts) and illegal conduct (ECF107 6-12) is sufficient to meet the heightened pleading standards of 9(b). The R&R therefore did not consider these documents in it analysis of the conduct of Kadlec instead, just relying upon his April 2018 statements.

Finally, the Court should note in ECF130 Kadlec **does not dispute the objection in ECF124 Issue 3G** that the R&R erred to solely rely on the April 2018 and the erroneous conclusion that there were no damages flowing from the fraudulent concealment in the communications. As such this objection is conceded as there clearly were damages to both Plaintiffs (including NRCM being dissolved and Kumaran's ongoing harm and damages from the ongoing use in unfair competition with VIA – **Issue 3G** – Court to note no opposition in this issue). [21], [22]

**(ix) Equitable Tolling and Fraudulent Concealment**

Further Kadlec offers no independent response to the allegations of his own fraudulent concealment in the April 2018 communications which contribute to the equitable tolling for Kadlec's individual claims (**ECF123 Issue 2D, 1E, 1F**), as there is no mention in ECF130 of the 2018 interaction alone, being part of the fraud. (See e.g. ¶823-¶825,¶625 – which clearly stated in April 2018 Plaintiffs had no knowledge of the extent of the fraud and participation or certainty the account had been disseminated  - or the existence of the risk group – or Boshnack's guarantees – or the details of the fraudulent scheme. ¶625 also specifically stated Kadlec did know and had material knowledge and fraudulently concealed them from Plaintiffs.[23] As stated in Section 22 (infra IV) Kadlec, by joining ECF129, also offers no denial of the error in the R&R to not analyze **Kadlec's own individual claims under 7 USC 25(b**) – **See ECF123 Issues 2D, 1E, and 1F**).

---

[21] Kadlec also does not dispute **Issue 3E** that the R&R made a plain error to state that NFA Defs. Mem at 10 raised the "group pleading issue of "insiders" under corporate disclosure law. This is plain error. NFA Defs Mem at 10. Since no rebuttal is made to Issue 3E this objection is conceded and there was no argument incorporated in the original Motions to Dismiss. This further supports that Defendants arguments in Reply only were being improperly used without briefing. None of these extensive issues were raised in the MTD.

[22] Kadlec also offers no dispute to **Issue 4.D** and the materiality of concealment of HRHC's CTA referral business, and the direct conflict of interest in the fact that CTA's (Plaintiffs) were subject to pecuniary guarantees and fees **by their competitors.** Failure to oppose this Objection is fatal to the allegations of materiality and fraud on the other core frauds.

[23] ¶658 At that time Plaintiffs did not have knowledge of the extent of fraud and participation or what Vision was doing. Nor did they know with certainty its account had been disseminated or anything about the existence of risk group, or Boshnack's guarantees. But Kadlec did know and had material knowledge at the time of the communications.

Kadlec also does not dispute the fraudulent concealment and equitable tolling of his own conduct, for instance in April 2018 when Plaintiffs specifically conducted due diligence to inquire about the relationship of High Ridge and ADMIS, Kadlec's conduct demonstrates overt actions and affirmative steps to conceal his own participation in the fraud (¶656-¶665). Kadlec is also alleged to have deliberately obstructed production of the G&F Agreements which was due to Plaintiffs on **October 5, 2018** but the FAC alleges, that Kadlec intentionally withheld the documents for 523 days, and they wee not produced until **October 25, 2019.** (Noting Kadlec's signature is on the G&F Agreements). All these, together with the express conduct of Kadlec, for his individual claims under Section 22, support the fraudulent concealment and equitable tolling (as well as Plaintiffs due diligence and Kadlec's affirmative steps of concealment in April 2018. (*Id*)

Kadlec offers no individual defense to his own conduct of fraudulent concealment and these Objections against Kadlec's Section 22 claims being tolled are not opposed (ECF123 Issues 2D, 1E, 1F) – rendering this argument conceded. It is clear, that Plaintiffs had no knowledge of any CEA 22 claims against Kadlec, until **October 25, 2019** when the G&F Agreements were first produced – and they started to learn the extensivity of the conduct and pecuniary interest Rothman and Boshnack had in their account. Since Kadlec's signature was on the G&F Agreements, it was not until then, that Plaintiffs allege they did not have sufficient facts to bring any individual claims against Kadlec, therefore his own 25(b) claims should be tolled until **October 25, 2019 .** Kadlec also raises no individual objection to the table of material facts, due diligence and affirmative steps supplied in Exhibits 1,2 and 3 to ECF123, that show facts concealed to show Kadlec's individual claims.

The R&R also pointed to no legal argument, or facts, that would show Plaintiffs had individual claims against Kadlec until at least **October 25, 2019** when it learned of the ORSA and G&F.[24]

### IV – Substantial Assistance and Aiding and Abetting Claims

The Report made a manifest error as it failed to apply the correct standards of pleading of aiding and abetting. (See supra) and cited to no paragraphs. (Issue 4F, 4F(i)(ii) and (iii)). In opposition (ECF130 at 12-13) Kadlec simply recites the R&R but offers no affirmative defense to the objections,

---

[24] If the Court was to hold May 10, 2018 as the inquiry date Plaintiffs spoke to Ms. Gonzales and learned of the fraud in the risk services, and failure to disclose to the CFTC on the RMP and lack of compliance with CFTC 1.11-1.14, then this complaint is still timely filed as it was filed on May 8, 2020. (Date signed and emailed with proof to the Pro-Se Intake office)

on the facts supporting "Kadlec failed to act when required to do so" or "helped conceal the conversion" or provided "affirmative assistance" (ECF107 12-18, ECF 124 Issue 5)

ECF130 at 12-13  Kadlec's defense to Substantial Assistance is completely devoid of any page references to his outbound MTD ECF77, or substantive argument to engage in the specific allegations on how Kadlec in his individual capacity, aided and abetted in the fraud. There was no substantive argument in what was actually filed in ECF77.

To start, the Court should note that in Counts 4 ECF77 at 15 − Kadlec simply joined NFA's motion to dismiss which offered no rebuttal to Kadlec's individual role in providing substantial assistance to the fraud. By joining NFA's MTD, the only argument raised related to substantia; assistance was ECF74 at 23  which stated "*a failure to act is not substantial assistance absent a fiduciary duty to the plaintiff. Land v. Forgione, 177 A.D.3d 862, 864 (N.Y. App. Div. 2019)*". Plaintiffs responded substantively to the substantial assistance argument **against Kadlec** in ECF107 at 15-18. Issue 4F, ECF107 15-18 states Plaintiffs argued **(i) Kadlec helped conceal the fraud**  − which was supported by not just his April 2018 statements, but also other concealments in corporate disclosures he signed, authored, directed and controlled (ECF124.1). "Acts undertaken by [agent or CEO], helped to conceal the fraud and therefore constitute "substantial assistance." *Kaufman v. Cohen,* 307 A.D.2d 113, 126, 760 N.Y.S.2d 157 (1st Dep't 2003). *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 2 (S.D.N.Y. 2013) ECF130 offers no defense to this argument on Kadlec's actions to conceal the fraud. (Issue 4F.(ii)); **(ii) Kadlec affirmatively assisted the fraud −** No opposition was filed to Kadlecs' participation in atypical financing such as the G&F Agreements, and other conduct to conceal the arrangements in corporate disclosures. (Issue 4F.(iiii) ECF107 at 16) *In re Gas Reclamation, Inc. Sec. Litig.,* 659 F.Supp. 493, 504 (S.D.N.Y.1987) (participation in "atypical financing transactions" supports aider and abetter liability); ECF130 offers no defense to this argument on Kadlec's actions to conceal the fraud.  **(iii) Kadlec also failed to act when required to do so:**  No opposition was filed to Kadlec's statutory duty to act when required to do so, to enforce the black-letter disclosure to customers. ECF107 at 17 - (7 USC 21(p)). He was also required (had a non-discretionary duty) to act to enforce compliance, and to not engaged in fraudulent and deceptive practices, and to protect investors. ECF130 offers no defense to this argument on Kadlec's actions to conceal the fraud.  (iv) **Kadlec's Inaction was Designed to Aid the Primary Fraud:** Under New York law, Inaction on the part of the

alleged aider and abettor 'ordinarily should not be treated as substantial assistance, **except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act**.' "); *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,* 261 F.R.D. 13, 25 (S.D.N.Y.2009) ECF130 offers no defense to this argument on Kadlec's actions to conceal the fraud; Further Plaintiffs pled **Kadlec Intentionally Aided the Fraud. (ECF107 at 17)**

After Plaintiffs filed a substantive opposition ECF107 at 15-18, **for preservation of issues and waiver of argument, Plaintiff document to the Court, that** in Opposition ECF110 – Kadlec therefore provided no legitimate counter-argument to the specific allegations of substantial assistance

See **ECF 110 at 18** – Noting the defense to Count 4, simply pivoted his position, and failed to engage in Plaintiffs arguments in a meaningful way. Instead Kadlec pivoted to yet another new argument in Reply at ECF110 at 18 then claimed for the first time in Reply that Plaintiffs did not plead the existence of a fraud. (Introducing new arguments in Reply is prohibited). Also,

Kadlec incorrectly cites to his response at ECF110 at 20, which is related to aiding and abetting conversion. ECF110 at 18 is the correct reference for aiding and abetting fraud. Even if the Court was to also use ECF110 at 20, that opposition also failed to engage in a meaningful way as did ECF110 at 18 Count 4 and Count 8, on any of the material and substantive arguments raised in Issues 4F(i)(ii)(iii). Therefore, there was no briefing by Kadlec in ECF77 of ECF110 regarding the specific allegations of (a) Kadlec's concealment (b) Kadlec's failing to act when required to do so (c) affirmative assistance in the fraud or (d) Kadlec's inaction designed to further the fraud. Therefore it is clearly documented ECF74 because he claims he joined NFA's brief he waived in both ECF77 and ECF110 his arguments on this. In ECF130 he now claims he was "subsumed" with arguments (ECF130 at 13) which explains his absentee response. However the Second Circuit and Courts in this District have held this constitutes a waiver of substantive arguments.[25] His requests for lenience in clearly waived arguments, is particularly troubling because he joins NFA's brief ECF129 with dozens of arguments where he falsely accuses Plaintiffs of waiving material rules (such as 2-2(i), 301(a)-(e), arguing Section

---

[25] Defendants' "failure to **meaningfully engage** with [plaintiff's] arguments amounts to a waiver of their opportunity to respond." Abreu v. Fairway Mkt. LLC, 17-CV-9532 (VEC), 2018 WL 3579107, at *1 (S.D.N. Y July 24, 2018); see Rosenblatt v. City of New York, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (Lynch, J.) ("Plaintiff effectively concedes defendants' other arguments ... by her failure to respond to them...."); see generally Abrahams v. Young & Rubicam Inc., 79 F.3d 234, 237 (2d Cir. 1996).

22 for the first time) – when all Plaintiffs arguments were squarely in black and white in the briefs. Plaintiffs object to hypocrisy and a double standard of lenience here, where Defendants clearly waived arguments in ECF77 or ECF74, and yet they are allowed multiple opportunities to expand, re-brief or introduce new arguments in Reply or even raise new arguments in these Objections reports. Plaintiffs argue that Kadlec waived his substantial assistance arguments for aiding and abetting for both fraud and conversion, by failing to respond substantively in ECF110.

Moreover, the opposition **ECF130 fails to argue on point to the central arguments and paragraphs Issue 4F, 4F(i)(ii)(iii)** put forward under which Plaintiffs adequately alleged Kadlec's substantial assistance in the fraud.

Lastly, Kadlec does not dispute his claims were brought also under Section 22 which provides a private right of action for aiding and abetting. (25(b)(2)and(3)). There is clearly an erroneous application of law, to allow the Section 22 claims against Kadlec and not against NFA, Wahls and Kiela. Also as argued in the NFA Brief, Kadlec also waived his statute of limitations defense in Counts 3,4 and 8 and Kadlec offers no individual response to ECF123 Issues 1A-1I, addressing his own claims.

### V - Section 22  Claims

(i) Inconsistent application of Section 22 fraud claims to Kadlec: Plaintiff brought five (5) claims against Kadlec pursuant to CEA 22. Counts 1, 2, 3, 4 and 8[26]. In directly contradictory application of the law, the R&R acknowledged all five (5) CEA claims against Kadlec under Section 22. The exact same pleading was used between Kadlec and NFA that all such claims were brought under the Commodities Exchange Act, under the express rights granted to commercial private traders, especially those, who have no option to and are mandated to become members of the registered futures association to pursue their careers as CTA's. The upholding those laws and the ministerial duties and obligations of NFA and its executive, governors, committee, board members, and compliance officers is the central argument in this Complaint.  Kadlec's dual role served as a long-term market-stalwart, and insider, greasing his inside relations, was able to facilitate to "slip through" the NFA, the multiple enforcement violations of the CEA. Because he holds a dual role, he is equally liable under both roles as a private actor as CEO, who obtained substantial personal economic gain

---

[26] Count 13 was only brought against NFA which was the sixth claim for the NFA for its mandatory duties to registered paying members under 7 USC 21(b)(10) which is a required rule.

and personal benefit from the torts. However the FAC alleges his torts are concurrently under his role as NFA Board Member to not enforce the compliance laws, and to slip the illegal conduct through the cracks, violating multiple compliance laws, that included the unlawful re-registration of Boshnack, Rothman and Felag, as AP's of a third party, that continued to act, outside their registration capacity under cover of the FCM, by falsifying reports to the CFTC, doctoring registration applications – all done with the knowledge of Kadlec.

The R&R made a fundamental error however to reach no ruling on imputation. Since Kadlec's role was in dual capacity, - on the one hand perpetrating unlawful registration activities and no disclosures to customers – and on the other hand facilitating illegal registration and forms at the CFTC, his knowledge of the fraud should be imputed to the NFA.  The R&R erred not just to impute Kadlec's knowledge, frauds and other torts to the NFA, but also to wholly not analyze each of the individual wrongs by Kadlec, in his **dual** capacity Issue 2D,.

 Precisely argues that the R&R made  plain error, to not distinguish (see R&R pg 22) any of Kadlec's own wrongs, or failures to enforce the NFA laws and bylaws, and thus failed properly to apply the CEA to the wrong that ensued *after* Boshnack and Rothman, were allowed to reregister and continued to operate as an FCM(unlawfully).  Therefore the words barred, suspended and expelled are irrelevant for the ongoing violations of registration authority 2-2(i), and other Bylaws 301(a)-(e.)

As stated supra, the CFTC is the ultimate authority on the market participation rules and the Director responsible for oversight of ADMIS's risk management program, Ms. Frances Gonzales, spoke with Plaintiffs on May 10, 2018 and stated that "no such authorization was granted or approved by the CFTC for the sharing of CTA or customer records to High Ridge and its executives" and "no such so-called risk services were approved or disclosed on the RMP" . Not only does Kadlec not dispute ¶280, he also offers no refuting of Issue 2D. And equally important, he does not once dispute his signatures and role on the RMP (See also ECF124 #4C, #9A)/  Kadlec does not offer any rebuttal on ¶280-¶282. Therefore this points to a clear error in application of law, to apply the CEA law claims to Kadlec but not to NFA.

The R&R also makes another plain inconsistency in application of the law, acknowledging that Plaintiffs had a private right of action under 7 USC 25(b) for fraud, against Kadlec. This inconsistent application alone, shows the R&R should not be followed, as the CEA 22 claims were pled equally

between NFA, Kadlec, Wahls and Kiela. (See also Issue #4A). Finally the Court should note that both NFA and Kadlec made the premise of his MTD ECF77 that the claims should "sound in fraud". Kadlec repeats that objection in ECF130 but NFA has now abandoned that consuming theory in ECF74. These inconsistencies should be allowed.  The Court clearly allowed Kadlec's Section 22 fraud claims, and therefore both NFA and Kadlec's claims of fraud should have been applied equally.

**(ii) N**o *Rebuttal to ECF123 Issue 2D*: Kadlec joins NFA's brief ECF129 regards to Kadlec's individual claims for failure to comply with the CEA. Plaintiffs raised specific Objections (ECF123 Issue 2D) that Judge Aaron did not analyze any of the merits ("in the alternative") for any of Kadlec's individual claims under 7 USC 25(b)(2) for his bad faith failure to uphold the CEA and enforce the NFA bylaws, rules and regulations. The statute specifically allows for claims against NFA board members and committee members. Since Kadlec (by joining ECF129) does not address Objection Issue 2D in ECF123, Defendants have conceded that objection. In fact, NFA only argues whether Kadlec's own wrongdoing should be imputed to them. They then make the fallacious argument, that Kadlec's actions should not be imputed to them. Plaintiffs have also disputed that raising that  was not contained in the R&R – any arguments of imputation. Kadlec has argued an opposite posit Kadlec has argued **all his actions** were done in the "capacity as NFA Board Member". Kadlec cannot walk back his legal argument.

The conclusion is two fold. Objection #2D (ECF123 at 19) has not been disputed, that the R&R made a plain error to not analyze Kadlec's individual claims for violations under 7 USC 25(b)(2). The R&R also made a second plain error, which was not to address the imputation of those claims to the NFA, especially in light of the fact that in ECF110, Kadlec's specifically argued, that the FAC pled the allegations were in his capacity as Board Member. (See ECF110 at 8).

**(iii) NFA and Kadlec are arguing different imputations.:** The R&R made a plain error to not rule on either (a) Kadlec's individual 25(b)(2) claims which were clear pled, and (b) the imputation of these claims to NFA (See ECF107 at  5-7, ECF106 at 16, 8-9) . For these reasons alone, the R&R should not be followed. Kadlec does not dispute the imputation omissions in his own brief ECF130. The Court should note, that Kadlec has in fact argued a contradictory argument to NFA, in ECF110 that the acts were taken **in the capacity as a Board Member**. (See ECF 110 at 7). The FAC also alleges his dual capacity was used – specifically with acts related to registration of Boshnack, Rothman and Felag, and

making false statements on their applications, and other documents to the CFTC. (e.g ¶380-¶396). [27]Any frauds made to the CFTC on registration applications and in general his requirements as an NFA Board Member and on the Membership Committee of the NFA, including for the approval of VIA registrations, and Boshnack, Rothman and Felags' registration 2014, at the time had knowledge of the fraud - and therefore must at all times, to abide by the statutory duties to uphold the anti-fraud provisions of the CEA, are imputed to the NFA. (See ECF108 at 6-12). "An agent's knowledge is imputed to its principal. *Restatement (Second) of Agency* §§ 272-282 (1958)." *Long Island Lighting v. Transamerica*, 646 F. Supp. 1442, 1452 n.13 (S.D.N.Y. 1986). ECF108 at 10.

Kadlec in ECF130 also fails to dispute that Kadlec's "knowledge" of fraud is also imputed to the NFA.  Neither NFA nor Kadlec raise any opposition to the Objections that Kadlec's **knowledge of the fraud i**s thus imputed in Count 3 to the NFA – see e.g. knowingly making false statements on the Membership Committee on the registration of VIA, misstatements to the CFTC, approvals as a Board member of registrations of Boshnack and Rothman and Felag. This also therefore supports the fraud claim against NFA and wrongful dismissal without any review whatsoever on the merits on the most fundamental claims argued in the Memorandums of Law in the MTD and Oppositions (Count 3.)[28]

### VI - RICO Claims

**Issue 1A and 1B, Exhibit 3:** As explained in Count 3, Kadlec's individual role in the predicate acts and fraud was incorrectly assessed as the R&R only focused on Exhibit 9 (¶1) – instead of other predicate acts of fraud throughout the FAC. The Second Circuit has held in Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017) (district court abused its discretion by "inappropriately discredit[ing] **significant allegations on which Plaintiffs' claims relied**, failing to treat the complaint in the light most favorable to the Plaintiffs, and [failing] to draw reasonable inferences in the Plaintiffs' favor, as required [on a Rule 12(b)(6) motion]". Second, as explained in Count 3, significant allegation of Kadlec's role as a corporate insider, that controlled and **master-minded the operation** of concealing the G&F's and having innocent customers be subject unlawful

---

[27] The Court should not NFA argues improperly in ECF129 although not raised in the R&R that no imputation occurs as acts were done in his capacity as CEO. But the R&R has already ruled, for instance with the registration of VIA, that acts were done in his capacity as NFA Board Member.

[28] The Court should not that in ECF129 NFA, improperly raised this argument outside of the R&R. Since NFA has not withdrawn its motion, Plaintiffs respectfully require full and fair opportunity to respond. NFA"s brief is deficient, because it only discusses "acts" of Kadlec. NFA's late dated argument, fails to dispute the imputation of Knowledge of Fraud.

fee transactions (noting the FAC alleges over $70 million of unauthorized fees) does not abscond Kadlec as not engaging in predicate acts.

Since Plaintiffs had the ability to amend their RICO claims in 20-CV-3871, it is clear an more similar form of RICO pleading can be used in the instant action. The R&R erred as it did not consider all of Kadlec's predicate acts. Plaintiffs provided Exhibit 3 to itemize the predicate acts that were overlooked. Kadlec's criticism that Exhibit 3 should be included in the pleading is not consistent with FRCP 15(d). Kadlec also takes aim at Exhibit 3, because it clearly **provides a detailed list of predicate acts that were missed in the R&R.**. Plaintiffs put forward a proposed Supplemental Exhibit that is permitted under  FRCP 15(d) which states the court may permit supplementation even though the original pleading is defective in stating a claim or defense.[29] Supplemental Exhibits of this nature have frequently been accepted by the Courts in RICO type cases, where additional clarification is needed on predicate acts. *See e.g.* United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1130 (E.D.N.Y. 1992) Court granted Plaintiffs leave to submit a Supplemental Exhibit and found that the newer **70 Page exhibit document** also integrated with the **132 page Complaint,** satisfies Rule 8(a) with respect to p**roviding notice to each defendant of the particular racketeering acts he is alleged to have committed.**[30]   Plaintiff only need plead two predicate acts by Kadlec, and it has more than done so in Exhibit 3. Kadlec does not dispute any of the line items in Exhibit 3 – documenting multiple predicate acts of Kadlec. Kadlec  does not engage in any meaningful opposition to the core frauds and how they furthered the fraud – and instead complains about line spacing. The Court should respectfully note that Plaintiffs only need plead two predicate acts to satisfy the RICO in how Kadlec furthered the fraud, and note #13 his concealments in April 2018 and #8, his signatures

---

[29] FRCP15.(d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

[30] Kadlec instead tries to distract the Court on "line spacing" in Exhibit 3. This is not relevant to the central issue and was provided as a proposed Supplemental Exhibit. Courts in this District have permitted similar tables of Supplemental Exhibits for RICO claims attaching a detailed 41 pages in Appendix A in spreadsheet table form, and similar line spacing to show how each predicate furthered the fraud. Plaintiffs' Exhibit 3 is only 3 pages. See also CMG Holdings Grp. v. Wagner, No. 15-CV-5814 (JPO-SDA), 2016 WL 4688865, at *3 (S.D.N.Y. Sept. 7, 2016).(M.J. Stewart Aaron)  a RICO complaint that included a detailed exhibit of 134 predicate acts over 41 page attached as an exhibit each detailing numerous communications on **how they furthered the fraud.**

on Exhibit 4 the consolidated financial statements and #16 his concealment of the G&F Agreements for 523 days would be sufficient to meet that threshold. (See Exhibit 3, ECF124.3)

Therefore in compliance with FRCP15(d), Plaintiffs seek leave to amend and/or incorporate Exhibit 3 into the FAC, (as Kadlec's raises no substantive opposition to the line items), and that with this amendment Plaintiffs RICO claim has substantive form to survive a MTD. In the alternative Plaintiffs seek leave to amend the RICO claim against Kadlec, in this, or related case 20-CV-3873 where similar claims are brought against ADMIS.

**Issues 1C, 1C(i) and 1C(ii):** Again Kadlec omits the central issue which is that the R&R used an incomplete snippet of Exhibit 9 ¶2 and Lazzara's statements (excluding the embodiment of further affirmative misrepresentations and omissions – concealing the true recipient of the fees were HRF, Boshnack and Rothman (and not the exchange). The statements used in the R&R Ex 9¶2 were a plain error as they were incomplete and excluded the complete reference. Lazzara's statement are actionable as fraud, as he intentionally deceived, and made material misrepresentations to deceive who authorized the fees and the pecuniary interest someone elses (other than ADMIS) – a third party with competing interests to harm  had on the monetary transactions, that Plaintiffs had a right to full disclosure on. See also NFA 2-4 9005 among other black letter CEA laws, makes it a compliance violation for any form of deceit on the fees being charged to a commodities futures account. Therefore Kadlec makes no defense to the substance of the Objection – that the Lazzara snippet did not grant "authorization" of fees to HRF, Boshnack and Rothman and were  affirmative actions to perpetuate the fraud. Kadlec's defense that the paragraphs talks about Lazzara is incongruous with the R&R's use of (again a partial) snippet of a set of facts to draw an erroneous conclusion that the fees were "known" to Plaintiffs. The "fees" as being paid to compensate the owners of a disbarred former FCM were not "known" to plaintiffs and would have materially impacted Plaintiffs choice of who to do business with.

The R&R makes a error to ignore the fraudulent explanation for the reason for the fees – and that Plaintiffs were deceived to be originating from the CME Exchange to perpetuate the fraud. The embodiment of fraud also contains omissions in concealing the G&F Agreements, and the pecuniary interests of disbarred AP"s Boshnack and Rothman – thus rendering the withdrawals fraudulent transactions over mails and wire fraud. In any event, Kadlec's objections do not oppose the core legal

position that because the fee withdrawals were not authorized, illegal, and involved unlawful theft of funds from Plaintiffs accounts, each unauthorized transaction which (at Kadlec's direction and control as the CEO) constitute a predicate act of wire fraud and mail fraud, that Kadlec directed as the Control Person of ADMIS. Kadlec knew the G&F Agreements existence, knew that Plaintiffs and customers had no knowledge of them, and knew the fees were being withdrawn under false pretenses to pay HRF and others. The fees were also excessive – over 18%. Therefore the R&R's conclusion that the unauthorized taking of moneys from a CEA account, and Kadlec's omissions and over acts to direct such fraudulent withdrawals (without customer consent) is what constitutes mail and wire fraud.

Second, Kadlec's opposition to the objection Issue 1C(ii) does not address the central argument, that in order to be in compliance with the CEA, the fees (of all forms) had to be disclosed properly and completely prior to opening the account. The other gravamen of error in the R&R is that email snippet from January 30, 2017 was after the account was opened on January 18, 2017 and therefore also constitutes knowing violations of the CEA.  Kadlec does not dispute Issue 1C(ii) that Plaintiffs were required to have knowledge of the fees before and prior to the account being opened. Kadlcs also as CEO and Control Person, was required to ensure those upfront disclosures were made, and failed to act when supposed to do so, allowing the IB, solely responsibly for handling the account, to deceive and mislead Plaintiffs, the moneys were clearing costs being paid to the CME Exchange. That is a material misrepresentation, sent over interstate communications and constitutes fraud.

**Issue 1D , 1E and 1F:** Likewise, in Issues 1D, 1E and 1F, Plaintiffs objected that the R&R claimed they did not plead fraudulent intent by citing only to Exhibit 9 ¶1 – and not the properly pleaded Opposition Brief on Scienter and Fraudulent Intent was an abuse of discretion. (ECF107 6-12). This is a legitimate objection in a 12(b)(6) motion where a Plaintiff relied on the Court using all relevant paragraphs. The Second Circuit has held that in Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017) (district court abused its discretion by "inappropriately discredit[ing] **significant allegations on which Plaintiffs' claims relied**, ID). It is clear the Exhibit 9¶1 was not representative of Kadlec's motive, opportunity, conscious misbehavior and recklessness required to plead scienter (See ECF107 at 8 – 12 citing to several relevant paragraphs)[31]. In Issue 1D, Kadlec also

---

[31] ECF107 at 8-12 cites to **Motives -**  ¶111-¶112, ¶9, ¶233, ¶246, ¶955, ¶79, ¶111-¶113, ¶121, ¶132, ¶187, ¶246, ¶254,¶471, ¶481, ¶484, ¶880, ¶883,  - atypical guarantees e.g. ¶85, ¶105, ¶109-¶147,¶187, "risky subprime brokers" (e.g. ¶85, ¶105, ¶109-¶147,¶187 -  ((¶137-¶144, ¶182-¶188, ¶196-¶198, 20-CV-3873 ADMIS FAC ¶77-¶100, ¶211,

does not dispute the arguments raised on "why the communications were fraudulent". Communications are fraudulent when the embody affirmative misrepresentations and material omissions. Judge Aarons' failure to apply any of the standards of materiality and reliance on analyzing "if a communication was fraudulent" was also a plain error and failed to adopt the relevant standards of law. Courts have held that a communications are fraudulent and "that misstatements or omissions are material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " Basic Inc. v. Levinson, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (ECF107 at 2)

Accordingly use of *Spool and World Child* does not mirror the facts of this case, because Plaintiffs brought claims under the CEA and financial fraud and where the standards of law for disclosure for omissions in fraudulent concealment state (ECF107 at 2) Plaintiffs must plausibly allege that Defendants "misrepresentation[s] or omission[s] [were] a 'substantial factor in inducing [them] to act the way that [they] did.'" *Ge Dandong v. Pinnacle Performance Ltd.* , No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013) *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d (S.D.N.Y. 2019).

Kadlec does not oppose in ECF130 that Plaintiffs properly raised why the communications were fraudulent. As not opposed in ECF130 once, the concealment of Boshnack, Rothman and HRF's pecuniary financial interests in their competitor CTA account was **material** and as well-pled through the FAC, Plaintiffs would not chosen to do business with ADMIS or any of these people, if the facts had been disclosed. Therefore all communications authored, directed and controlled or jointly made by Kadlec were fraudulent as they contained the foregoing material omissions and affirmative misrepresentations. Kadlec does not dispute the **materiality** or that the substance on the merits on why the communications were fraudulent.

---

¶231, ¶522-¶524, ¶830-¶832),), extraordinary market share ti not allow customers to opt-out ¶4, ¶21, ¶40, ¶87-¶88, ¶122, ¶128-¶132, ¶151-¶154, ¶173, ¶176, ¶234, ¶262-¶271, ¶307-¶318,¶367-¶369

**Opportunity** -  (¶148-¶154, ECF31) As CEO he also approve the illegal terms of the "ORSA". (¶260-¶318) Further as CEO has approved fraudulent disclosures to the CFTC on the RMP Reports (¶344, ¶396).

**Engaged in Deliberately Illegal Behavior –** 7 U.S.C. § 13 (a) (1)-(5); 7 U.S.C. §13 (b); 7 U.S.C §6, 7 U.S. Code § 6k (1), (5)). (¶359-¶403), (e.g. ¶158,¶232,¶364,¶368,¶371,¶375,¶377,¶391,¶394-¶404,¶413,¶570). **Recklessness -** black letter law to disclose to customers the fees and the risk management program, ¶152-¶158, ¶308-¶312, ¶225-¶233 See also NFA 2-4 9005, CFTC 33.7 , CFTC 1.55 etc.

Kadlec instead diverts and objects that Plaintiffs discuss Mr. Lazzara's conduct. But this objection was raised appropriately in response to the R&R's use of (again a partial snippet) of a statement from Mr. Lazzara to decry all fraudulent communications from Kadlec – including his signatures on the Corporate Publications, and Consolidated Financial Statements. Kadlec's argument that the discussion on Lazzara is irrelevant, supports Plaintiffs objection that Magistrate Judge Aaron, improperly used a snippet from Lazarra, to not properly examine the corporate insider statements made by Kadlec himself in Exhibit 1, and Kadlec's role in the mail fraud and wire fraud, or directing and controlling the statements. Kadlec also makes no substantive opposition to the pleading standards for mail fraud and wire fraud.

**Issue 1G:** In Issue 1G, as also discussed in the DTSA claims, Kadlec states that there was a pleading deficiency created by the use of Exhibit 9¶3 alone. Despite the fact that Plaintiffs provided a detailed of **89 paragraphs** supporting the misappropriation claims, Kadlec continues to claim that one sentence in Exhibit 9 ¶3  was sufficient analysis for the court to analyze the predicate acts of misappropriation. If there was such a pleading deficiency, then this not grounds for dismissal, but also         support         leave         to         amend.(e.g.¶611,¶223¶262-266,¶248-249,¶350 ¶358,¶97,¶403,¶683,¶624,¶534,¶474,¶390, ¶262, ¶401, and ¶188-¶215). The Court's failure to cite to any relevant paragraphs of both fraud and misappropriation that formed the basis of the claims is not consistent with 12(b)(6). See Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017)) ID

**Issue 1H and 1I:** In ECF130, Pg. 24 Kadlec states that because the R&R did not dismiss the claims on the basis of pleading Enterprise or the Operations and Management, both of which were well pleaded, and therefore he does not refute the merits of the objections. Kadlec states "*As such, the objections set forth in Issues 1.H and 1.I are irrelevant.*" Accordingly, since Kadlec offers no substantive dispute to Issue IH and 1.I and Plaintiffs objections are unopposed on the merits and should survive.

### VII – DTSA and New York Law Trade Secret Claims

Plaintiffs also raised objections to the misappropriation of trade secrets claims under DTSA *18 U.S.C. 1831 el seq* and New York law regarding Kadlec's misappropriation, which includes his improper acquisition,  **as well as unauthorized disclosure** of trade secrets to its competitors HRHC CTA

Referral, and Vision Investment Advisors (and their owners and managers) who subsequently went on to use the foregoing setting up a directly competing CTA in the exact same options trading program.(Issue 1G). To plead misappropriation of trade secrets, Plaintiffs can allege three theories of liability (a) improper acquisition(b) disclosure and (c) use (citing to *AUA Private Equity Partners*).**[32]**

**Issue 1G, 9A.** However, Kadlec's opposition ECF130 Pg. 18-19 is flawed in its defense of the core issues on Kadlec's authorizations to disclose Plaintiffs' trade secrets and their ongoing use.

<u>Issue 1G - Kadlec fails to oppose Disclosure and Use</u> On ECF130 Pg. 19 Kadlec disingenuously starts his Opposition by misrepresenting there were only "**18 paragraphs** *in support of its argument that Plaintiff pled Kadlec's personal and improper acquisition, dissemination or use of Plaintiffs trade secrets*"(ECF130 at 19 and note 11 which cites to ECF124 at 11). But this is false. A clear read of ECF124 at 11, shows that Plaintiffs cited to **89 paragraphs** that relevant to the foregoing misappropriation.[33] That's a big difference. This is a particular material misrepresentation is designed to mislead the Court. In improperly not listing the ***relevant paragraphs*** for DTSA, it specifically omitted the paragraphs on **Kadlec's disclosure** and paragraphs on **ongoing use** which have caused substantial ongoing damages to Plaintiff Kumaran and Nefertiti hedge funds. On P. 19 the Court is misled, that there were no substantial allegations related to **disclosure**. Notably, while Kadlec's Reply ECF130 highlights [B] improper acquisition, the Response is completely devoid of opposition for [C] unauthorized disclosures (which listed 56 paragraphs (¶188-¶215, ¶262-¶266, ¶350-¶358, ¶403, ¶683, ¶624, ¶534, ¶474, ¶390, ¶611, ¶223, ¶248-¶249, ¶97, and [D] ongoing use ¶667-681. (about **15** paragraphs). Kadlec's failure to oppose the disclosure and use paragraphs, and inability to refute the well-pled allegations of his role in the **authorizing the disclosures** and role in ongoing use **fatal to**

---

[32] Judge Aaron did not recommend dismissal on the original arguments raised by Kadlec on failure to plead value and information. Instead the R&R stated that Plaintiffs failed to pled Kadlec's role in the improper acquisition because of his role in the ORSA. Plaintiffs have responded that for the same reasons the R&R failed to consider Kadlec's role in the ORSA in Count 3 fraud, this decision was erroneous, and second, Kadlec did not plead any specifics of improper acquisition in his opening MTD (ECF77). Third that the R&R did not consider all relevant paragraphs related to the other prongs, namely Kadlec's ongoing use, and his disclosures to Rothman, Boshnack and HRF (who were competitors). Plaintiffs requested SurReply on the limited new issues and that was denied. Plaintiffs have also argued denial of SurReply in Issue 9.C

[33] Issue 1G – ECF124 at 11 states  As discussed in Count 5 for DTSA, Plaintiffs met all the factors of [A] existence of the trade secrets ¶74-86 [B] improper acquisition (¶173-174, ¶583-599) [C] unauthorized disclosure (e.g. ¶611,¶223¶262-266,¶248-249,¶350-¶358,¶97,¶403,¶683,¶624,¶534,¶474,¶390, ¶262,¶401, and ¶188-¶215) and [D] ongoing use (¶667-681) and also failed to incorporated by reference the substantive allegations of misappropriation were well-pled in the ADMIS FAC 20-CV-3873.

his defense.[34] (See Issue 1.G Prong 2 [Unauthorized Disclosure] and Prong 3 [Use]). ECF107 at Since ECF130 cannot dispute the objection for disclosure and use. Kadlec's failure to meaningfully engage on these two prongs, and in this Issue, misquote the Issue 9D to mislead there were 18 paragraphs should be noted by the Court as ECF124 lists 89. Kadlec should not be allowed to then dispose of a claim, when there is no opposition to "disclosure" and "use".

**Issue 9D - Use of Relevant Paragraphs in the R&R :** Kadlec – to support a wrong dismissal – without including all facts relevant to the claims states that Judge Aaron – was allowed to only use ¶350[35] to summarize the specific acts of misappropriation. As stated above, the material facts that Plaintiffs were reliant upon, and were properly pled in the FAC, and also detailed in the opposition to the MTD (ECF 107 at 34-38). Kadlec's objection to Issue 9D that the Court has no obligation to review all paragraphs is not true. Under a 12(b)(6) standard, the Court must accept all allegations as true. Further the Second Circuit has held that in Christine Asia Co. v. Ma, 2017 U.S. App. LEXIS 24647, at *5-6 (2d Cir. Dec. 5, 2017) (district court abused its discretion by  "inappropriately discredit[ing] **significant allegations on which Plaintiffs' claims relied**, failing to treat the complaint in the light most favorable to the Plaintiffs, and [failing] to draw reasonable inferences in the Plaintiffs' favor, as required [on a Rule 12(b)(6) motion]" Plaintiffs have asserted **89 paragraphs**, relevant to these claims (See Issue 1G), and reliance on ¶350 was plain error.

**Issue 9C - Sur-Reply:** Kadlec also disputes that Plaintiffs should have had the right to file a Sur-Reply on new issues. Plaintiffs maintain that Judge Aaron incorporated arguments that had not been briefed by the parties, specifically regarding Kadlec's role in the ORSA, and were not contained in Kadlec's motion to dismiss. Further to the extent the Court adopts a broad net to favor Defendants, and rules that the use of "one word" such as misappropriation is sufficient to preserve all possible subsections of argument, then Kadlec's disposition (by joining NFA's brief ECF129) on arguments such as Bylaws 301(a)-(e),  Bylaw 301(c), as well as NFA 2-2(i), and first time arguments that were clearly in Plaintiffs briefs – are then in bad faith and frivolous. The Court cannot adopt incompatible

---

[34] As stated above in Fraud, Section II(b)(ii), Kadlec's role authorizing the disclosures under the ORSA, and contradictory statements in the RMP, to the CFTC will be easily proven in discovery, as it is already known that Kadlec signed the RMP's to the CFTC with material concealments of the outsourcing of risk management to Vision Risk Group, and ¶280-¶282 shows it was done without the CFTC"s knowledge and consent, and without the registrations as an FCM to have discretionary authority on the accounts, or acquire the traders transaction records.

[35] Plaintiffs apologize there was a typo juxtaposition of ¶530 to ¶350 in Issue 9D. The correct reference should be ¶350

standards. Allowing one word – to cover all possible subsections of a claim – and then grant dismissal on Bylaws 301(a)-(e), NFA 2-2(i) which were not only briefed, but Kadlec clearly violated in allowing Boshnack, Felag and Rothman to operate outside their registration capacity as "secret FCM". The hypocrisy of this argument is that Kadlec joins NFA's Section 22 clams, or clearly raised issues such as equitable estoppel, which Plaintiffs briefed in ECF106 at 42, where Plaintiff should have preserved all possible subsets of the claims, but Kadlec joins NFA's brief that the argument was not raised. Simulatnesouly Plaintiffs also should preserve all the relevant paragraphs on Disclosures of Trade Secrets to VIA [36]. Yet Kadlec frivolously states in this pleading that "one word" is sufficient to preserve all issues. Plaintiff stand-by their assertion that the Court relied on argument briefed in Reply and without opportunity to be heard. (See also Bylaws 301(a)-(e) and Kadlec's opening arguments on "disbarred" which were never briefed.) In procedural equity, the Court should not allow Defendants to raise multiple new arguments they waived such as "disbarred" raised in Reply, and then ignore salient and central issues that were preserved and raised by Plaintiffs in all briefs. (e.g. Bylaws 301(a)-(e), 202(i)).

**Improper Acquisition:** Kadlec only expands his defenses for improper acquisition on Pg. 19 referring to the ¶173-¶174 which incorporated by reference the relevant sections of the ADMIS complaint, and the Corporate Disclosures in ECF124.1 (with Kadlec as a Joint Maker of the statements, or the Control Person who directed, controlled or authorized the statements – Exhibit 1). Likewise the conduct of ¶583 specifically discusses **Exhibit 5** of the ADMIS complaint, and which incorporates by reference Exhibit 1-4 containing the corporate disclosures with Kadlec's signatures, that were instrumental in the fraud, misrepresentation and breach of industry trade practices of secrecy of a CTA's trading records (which served as improper acquisition) of the account. (see also NFA 2-4 9061). To the extent the Court requires a deficiency in pleading could be expanded more clearly, showing reliance on Kadlec's signatures as CEO as the author and director of the statements,

---

[36] Kadlec also relied for the first time in his Reply papers arguments related to Privacy Policy. The R&R did not rely upon those arguments. Therefore the argument should be struck.  If the Court is to use those Reply only arguments, Plaintiffs were not able to brief them in SurReply. Allegations disputing the fraudulently induced Privacy Policy and why it does not grant any authorization (and also counts as fraud and misrepresentation to support improper acquisition) were also alleged in the FAC ECF57 ¶508-¶529 and in related case 20-CV-3873 FAC ¶113-¶137. If the Court is to entertain arguments in Reply, for which plaintiffs had no Sur-Reply, the above paragraphs also addressed why the Privacy Policy was unlawful, void under law, unenforceable and also contained material actional omissions as part of the fraud and misrepresentation..

Plaintiffs respectfully requested leave to amend. (ECF124.1). Kadlec signed the G&F Agreements and knew the public disclosures contained material omissions, that would have been material in a trader (CTA) choosing to do business – this constitutes fraud and misrepresentation also under the laws of the CEA, as an NFA Member and Board Member for which Kadlec is also individually bound - thus improper acquisition. (See Count 3)

**Issue 9B - Immunity 1833:** On Pg. 19, Kadlec misunderstands the objection and says it is irrelevant with regard to  immunity DTSA § 1833(a) and R&R  at 27 n32 which states

> The only allegations regarding conduct by Kadlec pertain to his alleged role, as an NFA Board Member, in approving VIA's registration as a CTA. (*See Kumaran v. Vision Financial Markets*, 20-cv-03871, First Am. Compl., ECF No. 55, ¶ 128.) Even if plausible, claims stemming from Kadlec's role as an NFA Board Member are barred by the doctrine of absolute immunity. *See supra*, Discussion Section II.

However the objection is relevant. Plaintiffs objected that the R&R made a plain error to fail to properly apply the Federal Law exemption under § 1833(a) – which does not grant immunity, when a person acts in a unlawful manner. Further Court failed to address that his actions were done not only in violation (unlawfully) of the CEA rules (see Section 11 - FAC) but also in his private capacity who stood to gain significant financial benefit from the commercial transactions. (ECF107 at 42)  The FAC also alleges Kadlec's role in his dual capacity as CEO of ADMIS and Board Member approving the registration of VIA. (See FAC ¶666-¶680). Therefore it was adequately pled in the instant FAC, Kadlec's immunity exemption for his role in the unlawful ongoing disclosure and use by VIA, in unfair competition is directly relevant. The R&R's assumption that Kadlec's role in ongoing disclosure and use, including the registration of Vision Investment Advisors, were undertaken in his capacity as both NFA Board Member and CEO of ADMIS.

Kadlec's opposition ECF130 also is notable vacant and silent on the clear allegation of **unfair competition in Issue** that he facilitated, in disseminating trade secrets from one CTA to a directly competing CTA for them to then use for ongoing use in unfair competition, that Kadlec acquires benefit from. ECF130 also does not dispute the objection that misappropriation for unfair competition occurred also by disclosure to HRHC CTA's referral service, and failure to disclose the material conflicts of interest which Kadlec also was required under the CEA 180(A) to disclose.

**Issue 9E – Frydman:** Kadlec's opposition against the use of *Frydman*, again does not take into account the inapposite nature of facts pled in **this Complain**t (regarding details of Kadlec's role and

scienter and fraud). Given the extensive pleading of Kadlec's Scienter (ECF107 at 8-12) and motivation, opportunity, as well as his recklessness, illegal conduct and conscious misbehavior to plead fraudulent intent, the case does not apply. Once again Issue 9E, Kadlec in ECF130 fails to dispute the allegations of **Disclosure** which satisfied the second prong of liability under DTSA. Kadlec once again has no defense for the well-pled allegations that Kadlec authorized disclosures of Plaintiffs trade secrets to its competitors CTA's who ran directly competing businesses in risk management services as well as options trading – using fraud and misrepresentation, and in breach of his own independent duties to preserve their trust, confidence and obligations to preserve secrecy – especially . (See also 180(A))/Tipper/Tippee) Kadlec also had a statutory duty to disclose to Plaintiffs as CTA's that their proprietary rights were infringed for competitive use). The Court also failed to review the Kadlec's ongoing use (benefits derived) from the ongoing use with VIA, from which Kadlec's directly profits. Kadlec also does not dispute "use".

 **Issue 10 C –New York law application.:** In ECF 130 Kadlec does not dispute the central issue in #10C that the R&R misapplies the law. Since the advent of the DTSA in 2016, New York law, now applies all three facts of misappropriation of (a) acquisition (b) disclosure and (use) and Courts in NY adopt the same standards. The Court errs to not apply all three. (*See Expert Connect vs. Fowler 2019* holding that claims under New York law and DTSA are similar). Therefore the R&R's application of legal precedent is outdated. Kadlec in ECF130 does not dispute these legal assertion. Further since Plaintiffs pled **disclosure**, this claim was also incorrectly analyzed on all three prongs of misappropriation. As stated supra Kadlec in ECF130 finds no rebuttal for the prong of **disclosure. Therefore the NY claim of misappropriation should survive.**

**VIII – State Law Claims**

As a first matter Kadlec does not dispute that the Court should not exert supplemental jurisdiction if the Federal claims are dismissed. This objection survives. The R&R then proceeds in the alternative;

**Issues 6A and 6B – Conversion:** Kadlec notably offers no specific response to Issues 6A and 6B and the objections to conversion, and just parrots the legal conclusion without engaging in the substantive discussion on the merits of why the FAC pled Kadlec engaged in acts of conversion or interference in Plaintiffs property rights. The core error in the R&R was that it did not apply Kadlec's …[interference]..with Plaintiffs' rights, to its property, both money and electronic data. Kadlec's

individual acts plausibly alleged his **interference** with Plaintiffs money and property, includes without limitation, concealment of the G&F Agreements, and other acts, concealing (directing, controlling and authorizing) concealing the monies to be paid to HRF, which were not consistent with the rules and laws of the CEA, and required consents from the customer prior to opening the account, and allowing HRF and its executives to improperly acquire their competitors trade secrets and trading records and electronic data. Plaintiffs money, funds and electronic data were not treated in a manner prescribed by the rules and laws of the CEA and CFTC Rules.

> *See also In re MF Glob. Holdings Ltd. Inv. Litig., 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014),* holding that [CEO] authorized transfer of customer funds outside of that the CEA and the CFTC Regulations, and required to be segregated and not used for [] proprietary purposes. See also *MFGlobal, "*the Court is persuaded that the Complaint sufficient facts to enable it to draw a reasonable inference that [CEO], his individual capacity exercised unauthorized dominion over customer funds. *In re MFGlobal id. (2d Cir. 2015)*

See also Kadlec's authorizations to conceal the G&F, and other arrangements with HRF – as well as withdrawal of funds to pay the G&F – are sufficient to allege Kadlec's individual role – in [interfering] with Plaintiffs rights. A Court may not plausibly dismiss a claim, if there are no set of facts, that could prove Plaintiffs claims. Only if it appears to a certainty that a plaintiff could have proved no set of facts to sustain a claim for relief should the claim have been dismissed. *Id. Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir. 1999) Upon discovery, documents that would show Kadlec's further authorizations, including on the RMP, which were fraudulently concealed from the CFTC, to disclose Plaintiffs trade secrets and electronic records.

Further the Court's ruling was in error as ECF77, Kadlec joined NFA's brief – which **only** argued that "NFA did not exert dominion". As such Kadlec failed to raise any individual arguments related to his own role – and none were briefed in opposition by Plaintiffs. (see Issue 6B). Kadlec in opposition ECF130 does not dispute that the original ECF77 for the count for conversion, failed to distinguish any argument for Kadlec – and offers no  rebuttal on Objections on Issues 6A and 6B – related to conversion.  Lastly, cases cited to for individual liability of a corporate officer for "debts of a company" or for "breach of contract" – see ECF130 at 11, (which cites to ECF 110 at 18) also were not only raised for the first time in Reply so Plaintiff could not respond – but are incorrect applications of the law. Kadlec cites them again in ECF130 . Both uses of corporate officer liability used in Reply (ECF110) for the first time and ECF130 were incorrect applications of the law. If the Court is now to use arguments in Reply Plaintiffs request the ability to respond.

ECF110 at 19 used in Reply brief for the first time states "In New York, corporate officers and shareholders are not liable for corporate debts or breaches of contract unless the corporate veil is pierced." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 197 (E.D.N.Y. 2007)

However this is not a correct application of the law. Plaintiff did not bring "breach of contract" claims or ordinary "Liability of debts" claims. Plaintiffs brought claims of torts and fraud against Kadlec. The underlying torts are (a) fraud (b) misappropriation (c) conversion and (d) unfair competition. Therefore the correct application of the law, that

Issue 6A - "[I]t has long been established, ..., that a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[,]" *LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997).*

Kadlec does not raise any objection to this dispositive issue. The application of law cited to in Reply was incorrect, because it did not apply the individual liability of corporate officers for torts. Since this was raised in Reply, Plaintiffs also object that they were also denied Sur-Reply on the issue, and disagree that Kadlec should not have raised in these issues in the Motion to Dismiss (ECF77), so as to have the last word in a Reply motion on inaccurate legal theories.

Kadlec again in ECF130 repeats his Reply only arguments, (ECF130 at 11, ECF110 at 18) and states
Under New York law, a corporate officer generally cannot be held personally liable for the debts of a corporation unless the corporate officer is personally involved in a fraud or had knowledge of the fraud. *Lodato v. Greyhawk N.A., LLC*, 834 N.Y.S.2d 237 (N.Y. App. Div. 2d Dept. 2007).

But ECF110 at 18 arguments in Reply, fail also, because Plaintiffs have pled multiple acts and omissions of Kadlec in furthering the fraud, including but not limited to his direct fraudulent concealments to Plaintiffs in April 2018, as well as his fraudulent concealment of the G&F Agreements, which he knew under NFA 2-29 had to be disclosed to customers, and consents sought So since the FAC alleges Kadlec both knew of the fraud and personally participated in the fraud, (including omissions and concealments), the Corporate Officer liability attached for the tort of fraud. The same applies for conversion. (See MF Global ID).  Therefore since Kadlec was part of the fraud his individual liability attaches. Kadlec's defenses using the above two Reply only cases fail as a matter of law.

**Issues 7A and 7B - Count 10 – Civil Conspiracy:** Kadlec in ECF130 at 26 simply parrots a legal conclusion from the Order, but fails to rebut the Objections 7A and 7B by meaningfully engaging on the merits. Therefore this opposition should be considered waived. "**Failure to meaningfully engage**

with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)

Kadlec fails to dispute that under New York law, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" See *Litras v Litras*, 254 AD2d 395, 396; *see Alexander Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969; *Gouldsbury v Dan's Supreme Supermarket*, 154 AD2d 509, 510; *Burns Jackson v Lindner*, 88AD2d 50, 72, *affd*59 NY2d 314). Plaintiffs have pled four underlying torts. [1]The tort of fraud, [2] the tort of unfair competition, [3] the tort of misappropriation including trade secrets, and [4] the tort of conversion.

Kadlec also fails to in anyway dispute Plaintiffs  central issue in Issue 7B that the R&R failed to review if any of the arrangements or conduct was illegal or in compliance with the CEA and CFTC Rules. (See *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009)* – holding a party facilitating a contract to partake in unlawful conduct sufficient to plead civil conspiracy). Kadlec's opposition did not even address this dispositive issue in Plaintiffs favor. Therefore Issues 7A and 7B were not meaningfully countered and should withstand.

**Issue 5 - Count 8 – Aiding and Abetting Conversion:** Kadlec in ECF130 at 26, again parrots the legal conclusion from the R&R without meaningfully engaging in Plaintiffs objections at Issue 5. For the same reasons that Aiding and Abetting and Substantial Assistance was pled in Count 4, the same arguments apply for Count 8. The Court should also note that under 7 USC 25(b) Plaintiffs brought individual claims against Kadlec for aiding and abetting conversion and misappropriation (e.g. NFA 2-4 9005 failure to enforce disclosure of fees, NFA 2-3 purloining of funds from Plaintiffs accounts, NFA 2-4 9061 failure to enforce disclosure of CTA trading records) which are express private rights of action for aiding and abetting against Kadlec. (ECF107 at 30-31) The R&R erred to reach any conclusions on Kadlec's Section 22(b) conversion claims for aiding and abetting. As stated supra, Kadlec also did not raise any opposition to ECF123 Issue #2D acknowledging that the R&R failed to apply any analysis CEA 22(b) to Kadlec's individual claims for aiding and abetting. These Objections therefore should survive as they are unopposed.

**Issue 8 - Count 9 –Tortious Interference:** Kadlec at ECF130 at 26 fails to respond on point that ¶574, ¶576 did not adequately meet the standards of business relationship at a pleading stage, and

business relationship Plaintiff had in raising capital as well as prospective customers as a CTA. Kadlec also ignores his role in deflecting business to competing CTA's Vision Investment Advisors after misappropriating Plaintiffs CTA records. Kadlec therefore has tortiously interfered in Plaintiffs CTA business and its potential and existing business relationships.

### IX – Leave To Amend

Judge Aaron's decision to not allow Plaintiffs a first chance to amend claims against Kadlec was also an abuse of discretion since it is clear that both Plaintiffs never had the opportunity to amend the Complaint, with the benefit of the opinion of the Court. See also *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017) *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015). Second, it is clear that substantial portions of the Complaint were related to Fraud and RICO. In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Dismissals made pursuant to Fed. R. Civ. P. 9(b) are "almost always" accompanied by a grant of leave to amend, unless the plaintiff has had a prior opportunity to amend its complaint or the allegations were made after full discovery in a related case. Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986).

For the fraud and RICO claims, the Supplemental Exhibit 3, together with more detail on the joint maker of the statements and control person, would cure any defects on the predicate acts as well as more expansion of ¶280-¶290 and Kadlec's individual role in the RMP. The Court should note that Kadlec offers no defenses in ECF130 to (a) either his role in the RMP and misstatements to the CFTC and (b) to the concealment of the other core frauds – such as the G&F Agreements – noting that the R&R only pointed to the concealment of the ORSA. In addition Plaintiffs have shown how the corroboration from the CFTC and MS. Gonzales that no disclosure were made on the RMP that Kadlec signed on the Governing Body are sufficient to meet the fraud standards. (which ECF130 does not defend). Kadlec also offered no objection to the concealment of the fees, or the materiality and reliance of omissions on Boshnack and Rothman (as competitors') pecuniary interests in Plaintiffs (also CTA's) accounts being core frauds.

For the DTSA claims, leave to amend would also not be futile, as it is expressly clear, that Kadlec offers no defense – for the (a) **unauthorized disclosures** prong of the trifecta of liability. In

both ECF110 (in Reply to Plaintiffs MTD) and also in ECF130. In this cause, instead Kadlec misleads the Court there were only **18 paragraphs**, when the black and white pleadings show there were **89 paragraphs.** The twice now omissions to evade defense of the "disclosures" prong of the DTSA is telling, combined with his authorizations under CFTC 1.11-1.14 to direct the risk services. Therefore Kadlec cannot in good conscience defend, that Plaintiffs had not pled, he authorized the illegal disclosures of CTA's material non-public trading records to their competitors, VIA. Further since his torts continued with VIA, and are ongoing, these claims should not be denied. Leave to amend those ongoing claims and also will quickly be proven in discovery.

For the State Law claims, the Court did not provide an opinion but leave to amend should be granted freely. Leave to amend should also be granted there. And finally for the CEA 22 claims, as stated supra, Kadlec' offered no defense to his individual claims Issue #2D in the NFA Objections, of why Kadlec's individual claims were not analyzed. The private rights of action under 25(b) permit individual claims against NFA Board Members and Committee Members. The R&R made no "in the alternative" ruling to Kadlec's individual claims. As also explained supra, Kadlec also offers no defense for why the April 2018 communications also warranted fraudulent concealment and equitable tolling, as well as the well-pleaded facts, that Kadlec, at his direction and control, delayed producing the G&F Agreement (with his signature on it) until October 25, 2019. These actions would warrant equitable tolling of Kadlec's Section 22 claims. The R&R also offered no analysis (in the alternative) of why Kadlec's claims would not withstand a MTD.

For these above reasons and as otherwise stated Plaintiffs should be granted leave to amend.

### X –Transfer of Kadlec's Claims

Finally Kadlec disputes that Plaintiffs should be permitted to transfer his claims to the 3873 ADMIS action. The Court should note that Kadlec serves in a dual role – both in the capacity of NFA Board Member and also as CEO of ADMIS. Because the statutory regime under CEA 22 is unique and involves a specific body of law, for ease on the Court, the decision was made to keep his claims in this action so that all 7 USC 25(b) claims were analyzed together. At the same time, there are also overlapping

A technical or procedural deficiency should not impair Plaintiffs ability to seek recovery on their claims for Kadlecs' torts to their businesses and livelihoods. Kadlec argues that he does not wish the case to extend another year. But in equity the Court should not that NRCM's account was harmed

in 2017. Plaintiffs waited another two year, for Kadlec to obstruct and delay both in April 2018 and by his own conduct waited close to another year and half (to serve himself at the expense of others) to delay producing the G&F Agreements It is now 2022. Plaintiffs have been suffering inordinate damages, while Kadlec continues to profit from his scheme. Therefore the Court should allow Kadlec's claims to proceed in the best and most suitable case number, that most overlaps the central issues of law. The delays have been at Kadlec's doing – also to try to deny plaintiffs the right to bring CEA 22 claims. Therefore in equity, Kadlec should now not get the benefit of complaining of more time, when for five (5) years Plaintiffs have been harmed and are still trying to collect recovery for these wrongs.

In conclusion the Court is reminded that Plaintiffs in their due diligence spoke to Kadlec in April 2018 to get answers to their material questions on the mishandling of the account. Kadlec as a NFA Board Member had a statutory duty to disclose to Plaintiffs the information he knew, including about the G&F Agreements and ORSA, and what the relationship with HRF was governing their CTA account. Kadlec had a statutory duty also to disclose material facts about a CTA's finances. He didn't because the arrangement were illegal and he knew he wanted to evade his own liability.

If he had been truthful, Plaintiffs would have brought their CEA claims in May 2018 (not May 2020). Therefore Kadlec's own breaches of his statutory duties, fraudulent concealments,  and intentional attempts to skirt liability have caused Plaintiffs an additional two years of harm and damages, which the Court should take not of before allowing any more lenience for Kadlec's ongoing fraud that is ongoing in the market place today – and caused the complete shut-down of NRCM.

Kadlec was not just the mastermind of the scheme, but has shown a wanton disregard for the rights and livelihoods of others and small businesses – and for self-gain and greed, assumed an eminent domain position on their property, moneys, assets, trading records and trade secrets – converting them to become the property of their competitors (known predators Howard Rothman and Robert Boshnack) and knowingly engaged in unfair competition. He has failed to uphold the most basic duties of fair market under the Commodities Exchange Act, while he grows rich from the scheme. The Court should not allow further injustice to continue to the rights of Plaintiffs.

Respectfully submitted,
//BMA//                                            //SSK//
Brian M. August, Esq                               Samantha S. Kumaran
Counsel for NRCM                                   Individual Pro-Se Plaintiff