**IN THE UNITED STATES DISTRICT COURT**
**SOUTHTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Et al | ) Case No: 1:20-CV-03668–GHW-SDA |
| *Plaintiffs,* | ) Judge: Hon Gregory H. Woods |
| | ) Magistrate Judge: Stewart D. Aaron |
| -against- | ) |
| | ) **PLAINTIFFS JOINT REPLY** |
| NATIONAL FUTURES ASSOCIATION, LLC | ) **TO THE REPORT AND** |
| Et al., | ) **RECOMMENDATION** |
| Defendants, | ) **AGAINST DEFENDANT NFA** |
| | ) **WAHLS AND KIELA (ECF123)** |

<u>**PLAINTIFFS JOINT REPLY AND MEMORANDUM OF LAW TO THE OBJECTIONS**</u>
<u>**TO THE REPORT AND RECOMMENDATIONS FOR THE MOTION TO DISMISS**</u>
<u>**AGAINST DEFENDANT NFA, WAHLS AND KIELA (ECF123)**</u>

**FOR CLAIMS BROUGHT AGAINST NFA, WAHLS AND KIELA**

//BMA//                                        //SSK//

Brian M. August                                Samantha Siva Kumaran

AugustLaw NY                                   Pro Se Plaintiff

100 Willoughby Street #9E

Brooklyn, NY 11201

Counsel for NRCM

## TABLE OF CONTENTS

INTRODUCTION AND PRELIMINARY STATEMENT…………………………………Pg.1

I – FRAUD CLAIMS COUNT 3……………………….…………………………....Pg.3

II – AIDING AND ABETTING COUNT 4 and 8………………………………...……Pg.11

III – COUNTS 1 AND 2 …………………………………………………...……..…Pg.12

IV – OTHER STATUTE OF LIMITATIONS ……………………………………………Pg29

V  - DISMISSAL ON THE MERITS COUNTS 1 AND 2………………………..….…..Pg.34

VI – DAMAGES AND NEW ARGUMENTS ON CAUSATION…..……………………Pg.34

VII –BYLAWS 301(a)-(e), NFA 2-2(i) ……………………………...………………..Pg.36

VIII –NFA 2-26 AND NFA 2-29……………………...……………………….……………………Pg. 38

IX –COUNT 13 – ARBITRATION CLAIMS ……………………………………...….Pg.42

X –STATE LAW CLAIMS ………………… …………………………………...….Pg.45

XI –CONCLUSIONS / LEAVE TO AMEND ……………………………………...…Pg.47

.

## TABLE OF AUTHORITIES

*Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir.2007)*

*Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107, at \*1 (S.D.N.Y. July 24, 2018)*

*Behrens v. JPMorgan Chase Bank N.A., No. 16- CV-05508 (VSB), 2019 WL 1437019, at \*6 (S.D.N.Y. Mar. 31, 2019)*

*CFTC v. Fin. Robotics, Inc., No. CIV.A. H-11-2446, 2013 WL 3280038, at \*4 (S.D. Tex. June 27, 2013)*

*Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir.1999)*

*Corley v. Rosewood Care Center, Inc. of Peoria, 142 F.3d 1041, 1050-1051 (CA7 1998)*

*Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)*

*Curran, 456 U.S. at 390–91, 102 S.Ct. at 1845–46), cert. denied, 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993)*

*Davis v. Grusemeyer, 996 F.2d 617, 624 n. 13 (3d Cir. 1993)*

*Dory v. Ryan,999 F.2d 679, 681 (2d Cir. 1993)*

*Dyer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 928 F.2d 238, 240 (7th Cir.1991);*

*Effex vs. NFA*

*Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at \*3 (S.D.N.Y. Mar. 1, 2012)*

*Gillman v. Chase Manhattan Bank, supra, 73 N.Y.2d, at 12, 537 N.Y.S.2d 787, 534 N.E.2d 824)*

*Holmberg v. Armbrecht, 327 U. S. 392, 397 (1946)*

*Issuer 2004 WL 487222, at \*3; Nine West, 80 F. Supp. 2d at 192.*

*Issuer Antitrust Litig., No. 00 Civ. 7804, 2004 WL 487222 (S.D.N.Y. Mar, 12, 2004)*

*Issuer Plaintiff Initial Pub. Offering Antitrust Litig., No. 00 CIV. 7804 (LMM), 2004 WL 487222, at \*4 (S.D.N.Y. Mar. 12, 2004)*

*Keating v. Carey,706 F.2d 377, 382 (2d Cir. 1983)*

*Klehr, 521 U. S., at 192-193*

*Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012)*

*Kolbeck v. LIT America*, 923 F.Supp. 557, 564 (S.D.N.Y.1996),*aff'd* 152 F.3d 918, 1998 WL 406036 (2d Cir.1998)

*Levy and Behrens*

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015)

*Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).

*N. Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1403–04 (N.D. Iowa 1996).

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)

*Nine West Shoes Antitrust Litig.*, 80 F.Supp.2d at 192 (citing *Hendrickson Bros.*, 840 F.2d at 1083 (emphasis added)

*Orthdx Jwsh Coal. of Chstnt Rdge v. Vill. of Chstnt Rdge NY*, No. 19-CV-443 2021 WL 3605041, at *6 (S.D.N.Y. Aug. 13, 2021)

*Pearl v. City of Long Beach*

*PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017)

*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1158 (2d Cir. 1995)

*Pinaud vs. County of Suffolk*

*Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999)

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74, 130 S. Ct. 2772, 2780, 177 L. Ed. 2d 403 (2010)

*Rosenblatt v. City of New York*, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007)

*SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018)

*Urie v. Thompson*, 337 U. S. 163, 170 (1949)

NRCM and Kumaran Joint Reply,  Page 1

**MEMORANDUM OF LAW ARGUMENT**
**INTRODUCTION AND PRELIMINARY STATEMENT**

This case is a *first impression* case about **fraud** under the Commodities Exchange Act ("CEA") brought against the National Futures Association ("NFA") a registered futures association, two compliance officers Nicole Wahls ("Wahls") and Villa Sutkus-Kiela ("Kiela") and its Board Member Thomas R. Kadlec ("Kadlec") [1] and brought under private rights of action under 7 U.S.C. 25(b)[2] The case is brought by registered Commodities Trading Advisors ("CTA's") - NRCM and Kumaran (collectively "Plaintiffs"). In 2009 the Dodd Frank was passed and in 2012 the CFTC codified the definitions of CTA's and CPO's.[3] As of September 30, 2021,there are now 1352 CTA's and 1244 CPOs making up a substantial class of members which the CEA's protections of rights must be enforced.[4]  The fraud alleged in this Complaint impacts not just Plaintiffs as an isolated case , but *thousands* customers and CTA's, and extracts over $10 million dollars of illegal revenue, amassing over $70 million dollars of unlawful gain to Defendants and their conspirators over a now seven year period. (ECF57,FAC e.g ¶10)[5] Plaintiffs cannot represent the rights of the other CTA's and customers, but the extensive, wide-spread nature of this fraud, should be noted as highlighting the seriousness of the case being brought – and a fraud that is continuing in the market place today. This f*irst impression case* is also brought under an implied private right of action for fraud against a registered futures association Count 3, as well as a *first impression* case brought against two compliance officer under 7 USC 25(b)(3) which provides for an action to be brough against compliance officers for the bad failure to enforce the compliance rules – that in turn cause damages to traders[6]. It is also a *first impression* case for aiding and abetting liability under Counts 4 and 8 for aiding and abetting.

The case law in this District under the statute 7 USC 25(b) for private rights, mostly dating back to the 1980's originated from several cases brought against Exchanges – notably for taking emergency actions to regulate the markets. The concept of bad faith evolved since then, and since then the

---

[1] Kadlec also acts in dual capacity as CEO and President of ADM Investor Services – "ADMIS" and directs and controls the day -to – day company affairs, who obtain substantial financial profit from the schemes and frauds herein.

[2] 7 USC 25(b) is also referred to interchangeable as Section 22 of the CEA.

[3] On September 5, **2012** the terms Commodity Trading Advisor ("CTA") and Commodities Pool Operation ("CPO") were added to the Federal lexicon. https://www.marketswiki.com/wiki/Commodity_Trading_Advisor

[4] https://www.nfa.futures.org/registration-membership/membership-and-directories.html

[5] Defendants do not once defend, oppose or dispute the wide-spread nature of the fraud, or the excessive size of the commissions being unlawfully withdrawn, with fees exceeding $70 million.

[6] This case is *first impression* not only because of the causes of action of fraud and aiding and abetting but in that prior cases brought relied on heavily against the NFA, Levy, Behrens and Troyer, wer**e not brought by CTA's or registered members**, which invokes a different set of statutory duties (as discussed herein) and invoked fiduciary duties by NFA

1

NRCM and Kumaran Joint Reply,  Page 2

Supreme Court has ruled that bad faith is a bifurcated standard – if the duty of the regulator is non-discretionary then a standard of negligence is required to plead bad faith. (ECF106 at 6-9, ECF 106 ). In the alternative, where discretionary rules are invoked, Plaintiffs must meet a higher standard of bad faith – where fraud or ulterior motive are sufficient to plead bad faith.

The gravamen of error in the R&R is multi-fold. First it made **no ruling on the merits of arguable the most important claims Count 3, 4 and 8.** NFA and Kadlec all failed to move to dismiss on the Statute of Limitations for **Counts 3, 4 and 8** (ECF74/ECF77) and therefore their defense on the statute of limitations were waived. When a Defendant fails to raise timely an argument in a MTD of SOL, it is considered waived (Orthdx Jwsh Coal. of Chstnt Rdge v. Vill. of Chstnt Rdge NY, No. 19-CV-443 2021 WL 3605041, at *6 (S.D.N.Y. Aug. 13, 2021 (Issue 1A) As pertains to Counts 3 4, and 8, the R&R then offered no basis for any "in the alternative ruling" for these Counts 3, 4  and 8 provided absolutely no grounds for dismissa of why plaintiffs could not survive on the merits of the claims. These are all valid private rights of action brought under the CEA. 7 USC 25(b). Therefore there was absolutely no foundation whatsoever in the R&R that applied to **Counts 3, 4 and 8.**

In response, ECF129, NFA, Wahls and Kiela instead throughout their response, inject numerous false arguments, that pretend (although expressly contradicted in the black and white pleadings) that Plaintiffs did not bring these as Section 22 claims, and chose to waive them. Plaintiffs have filed a concurrent sanctions motion ECF140/ECF141 itemizing so many, over 50 false statements that it warranted documenting. (incorporating by reference filing on motion for sanctions ECF141.1-141.10 #1-#52, and Exhibits 7A-7C).) Of particular note are related to Counts 3, 4 and 8 are 1-#5 (Sanctions ECF141)-  NFA's only defense is to pretend to the Court the items were not brought as 22(b) claims But the black and white pleadings show they were. (see ECF 108 at 1, 38, 42, ECF107at 1, 13, 30-31, and ECF 106 at 49, and FAC 808). These are material issues to outright try to deny Plaintiffs their valid privat rights of action under 7 U.S.C. 25(b). Since NFA waived their SOL in the MTD, and the R&R afforded no ruling whatsoever on the merits, these three counts Counts 3, 4 and 8 should not be dismissed or the R&R followed under any circumstance.

The R&R erred further in its analysis of Counts 1 and 2, as it then did not apply the most critical application of 25(b) for registered futures associations which is distinct from 25(a) which is the application of the law of bad faith. This  failure to analyze bad faith is critical to the other main error in the R&R in applying how to statute of limitations between a cause of action brought under 25(b) versus

25(a) without any application of bad faith, the R&R  did not properly apply the equitable tolling and equitable estoppel under the doctrine of fraudulent concealment. The application of Counts 1 and 2 and the Statute of Limitations is discussed infra in Subsection IV.

But since, there was an express waiver of the Statute of Limitations by all Defendants for the CEA claims Counts, **3, 4 and 8,** this Reply brief, starts at the outset, to explain to the Court, why those claims were properly pled (the R&R offers no reasons on the merits of the claims for dismissal), valid under 7 USC 25(b) and paramount at the guts of this first impression case. And without a recommendation in the R&R on the fraud related claims none of them should be dismissed. ECF113 made no recommendation of dismissal on the merits for Counts 3, 4 and 8.

### I -  FRAUD CLAIMS  COUNT 3 (Issue 4A – 4E)

The fraud claims under Section 22 were clearly the predominant and most important claims brought by Plaintiffs in the FAC.[7] Judge Aaron dismissed the claims by making a plain error that the claim was not permitted under 7 USC 25(b). This is false. His argument is also erroneous because in his own arguments for allowing the Section 22 fraud claims against Kadlec to proceed he even ruled elsewhere in the Order, that Plaintiffs are in fact granted an implied private right of action for fraud under Section 22.The fallacy of this argument is contradicted by the R&R's own citation to case law that grants a private right of action under Section 22 for fraud.

ECF113 Pg. 16 n20 - cites to CFTC v. Fin. Robotics, Inc., No. CIV.A. H-11-2446, 2013 WL 3280038, at *4 (S.D. Tex. June 27, 2013) which states " More recent decisions have applied § 25(c)'s two-year limitations period to private claims asserted under 7 U.S.C. § 6b and accruing after 1983. See, e.g., Dyer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 928 F.2d 238, 240 (7th Cir.1991); Kolbeck v. LIT America, 923 F.Supp. 557, 564 (S.D.N.Y.1996), aff'd 152 F.3d 918, 1998 WL 406036 (2d Cir.1998) (holding that private actions under 7 U.S.C. § 6b are subject to § 25(c)'s two-year limitations period).

NFA offer no meaningful opposition on the law to Plaintiffs Objection 4C – and cannot dispute that the Supreme Court precedent that 7 U.S.C 25 codified the implied private right of action for CTA's to preserve their fraud claims under 6(b). Plaintiffs are entitled by statute to valid fraud claims under

---

[7] As discussed in the Objections, this claim was not brought in the original complaint ECF1, and therefore not contemplated or discussed in the reconsideration briefing. Therefore, there was no ruling or application on a fraud claim in prior orders. Given that NFA's entire MTD centers on the sounding of fraud, the R&R manifestly erred to  arbitrarily deny a private right of action for fraud when it was not even discussed in the original briefing. (See 4C)

Section 22. This was expressly argued Issue 4C, NFA offers no legitimate defense to the well-set precedent that private rights of action for fraud *are preserved* under 7 USC 25.  **(Issue 4C)**

> "Because § 25 was passed at the invitation of the Supreme Court for codification of the right of private actions under the CEA recognized in *Curran, Curran* recognized an implied right of action for the violation of the CEA alleged here, that is, a violation of § 4b of the CEA, 7 U.S.C. § 6b, and the claim alleged here plainly falls within the scope of § 25 as drafted by Congress."  In *Curran,* the Court held that private actions could be implied under five discrete sections of the act: 7 U.S.C. §§ 6a, 6b, 7(d), 7a(8), and 13(b)," citing *Curran,* 456 U.S. at 390–91, 102 S.Ct. at 1845–46), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993)) See also N. Cent. F.S., Inc. v. Brown, 951 F. Supp. 1383, 1403–04 (N.D. Iowa 1996).

With irony, NFA and Kadlec made the main focal point of their original motions to dismiss (ECF74 and ECF77) that Plaintiffs claims "sounded in fraud" and that the fraud claims were subject to the heightened pleading standards under Rule 9(b). Kadlec maintains that defense in ECF130, but NFA has now abandoned the entire theme of ECF74 of sounds in fraud 9(b) in ECF129. That should also be prohibited and collaterally estopped. NFA devoted substantial amounts of the MTD on whether Plaintiffs pled fraud without objection to the existence of the claims (See ECF 74 at 9-11). The importance of the fraud claims were paramount in NFA's original MTD's. (ECF 74 Pg. 9-11, See ECF 108 Pg 1-37).The R&R's failure to apply the merits of the claim was a plain error.

In addition any late-dated argument to suddenly ignore the fraud claim is collaterally estopped to their original arguments that Plaintiffs fraud claims and pleadings of scienter and compliance with Rule 9(b) were first and foremost. It was also expressly clear in the FAC and ECF 108 at 1, that Plaintiffs have brought valid fraud claims as is permitted under a private rights of action under Section 22. (ECF 108 at 1, See also FAC ¶808 stating clearly that Plaintiffs bring their fraud claims also under Section 22). The same also applied to Kadlec's fraud claims under Section 22 which proceeded without objection. (ECF107 at 1) Therefore the R&R was also inconsistent in its application of the laws on this fundamental issue.

Further NFA waived any opposition to these claims in the MTD (ECF74) **and also in ECF110.** Despite being clearly raised and briefed by Plaintiffs NFA failed to engage in a meaningful way on Plaintiffs right to bring its Section 22 – fraud claims in ECF 108 Pg 1-38, NFA raised no objection in ECF110 to Plaintiffs rights to a private right of action under Section 22 for fraud in ECF110. Therefore again, this later dated arguments are also waived as they failed to introduce them in the MTD or in

Reply after plaintiff briefing under Section 22.[8], [9] **Failure to meaningfully engage with the [Plaintiffs']** **arguments amounts to a waiver of their opportunity to respond.** *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)

### (a) NFA's Defenses to the Fraud Claims

Throughout ECF129, even thought Judge Aaron did not reach the merits of the fraud claims in Count 3, or any of the merits on related claims Counts 4, and 8, NFA, exceeds the scope of a FRCP72 motion to repeatedly rehash whether or not they had "Knowledge" of the fraud. (See Sanctions ECF141 #6, #7, #20, #21 – all repeating ad nauseum arguments not contained in the R&R about "Knowledge" which are not permitted in an FRCP 72 motion as they were not in any Objections. If the Court is to entertain the repeated "Knowledge" arguments, Plaintiffs extensively briefed "Knowledge" (ECF at 108, at 8-12, at 33) or "Knew or Should Have Known" (ECF 106 at 13, ECF 108 at 32)  or "Conscious Avoidance" (ECF 108 at 39-42, ECF 107 at 13-14). The R&R erred to not rule on these.

In the alternative, If the Court is now to allow these in this Objections briefing (which requires additional pages), NFA cannot deny it did not *know* of the G&F Agreements and their mandatory requirements to enforce the guarantees and fees to be disclosed to customers, *prior* to opening accounts. NFA cannot deny it did not *know* Vision's extensive disciplinary conduct, or the excessive fees being withdrawn (all of which were material in being disclosed). (Noting ECF57.4 acknowledged the materiality of customers of High Ridge having access to information about Vision's past disciplinary conduct). NFA tries in belated argument now convince the Court it did not *know* of the ORSA. But this is immediately shattered by counselled pleadings (Wiggins) on the rec**ord 20-CV-3871 ECF37 at 12-13, 33 and 37 at 4n8, re**peatedly arguing that the risk services were approved by NFA and well-known to NFA. [10] . The FAC alleges other facts - ¶263 documenting *material terms* that Wahls and Kiela (agents

---

[8] Now, in disingenuous manner and hoping the Court will obscure the very same fraud claims the NFA first argued were paramount to be pled under Rule 9(b), they now pretend that Plaintiffs did not bring fraud claims under Section 22, but raise a false argument that ECF 108 did not expressly state that claims were brought under Section 22. (See ECF 108 at 1) This misquote is another example of fraud on the Court because it is clear Plaintiffs claims were brought under the what was permitted under § 25. (See ECF141.1 Sanctions #1,#2, #3, #4, #5)

[9] Plaintiffs also document and object to NFA's continued ability to add more arguments than were originally pled in the MTD, and this briefing has expanded to cases and more and more arguments, that were never contained in ECF74 and therefore were expressly waived. Since NFA and Kadlec did not object to the CEA fraud claims, their arguments are waived in their original pleading – in which they in fact asserted Plaintiffs were required to plead fraud.

- [10] Vision MTD 20-CV-3871 ECF37 at 12-13 admits "*Crucially, the arrangement between ADMIS and High Ridge* ***was well-known** to the National Futures Association ("NFA")*" In related case also, ADMIS has admitted NFA compliance officers are to be called as witnesses.

of the NFA) signed in 2014  showing that the NFA violated CEA rules, to give Boshnack, Rothman, and Felag discretionary authority[11].  Further plausible facts of knowledge, are judicial Arbitrators' Orders (**ECF1.9, ECF1.10, ECF1.11**) who had sufficient ex-parte communications with NFA, to make a judicial ruling, these audits and their supporting documents and approvals *need to be disclosed to Plaintiffs*. Therefore NFA knew *exactly* what was going on – and despite it public statements that customers were entitled to know of Vision's prior disciplinary conduct before doing business with High Ridge (ECF 57.4)

Given NFA's Knowledge, Plaintiffs brought this case because all the harms to them would not have happened, if NFA and Kadlec had upheld the most fundamental statutory duties of the NFA themselves. (see FAC¶2 ) NFA's own articles of incorporation define its purpose as the adoption, administration and enforcement as to the following persons of requirements regarding fair practice and **designed to prevent fraudulent and manipulative acts and practices,** to promote just and equitable principles of trade and, in general, to protect the public interest. (See NFA Article III https://www.nfa.futures.org/rulebook/index.aspx ) No such conduct was observed in this case.

### (b) First Impression Relevance of Fraud Claims – Count 3

Given NFA's soiree and expansion of this briefing, into the Knowledge of Fraud (ECF129 at 6, 21), Plaintiffs respectfully seek the ability to respond to their cause of action. Count 3 is a *first impression primary* ruling on NFA's statutory duties[12] to prevent that fraud, and also to knowingly allow it to continue. The fraud still continues and is ongoing in the market place today. The FAC alleges that since November 2014, NFA has failed to uphold the disclosures that thousands of customers (and paying CTA's who have commercial livelihoods)  do not know their accounts are being individually

---

- Vision MTD 20-CV-3871 ECF37 at 33 - High Ridge and Felag, **with NFA's knowledge,** performed risk management services for ADMIS;… The agreements incorporate ADMIS's obligations under the relevant law ..was **known to the NFA and subject to NFA audit**.
- Vision MTD 20-CV-3871 ECF37 at 4, n8 - - High Ridge and ADMIS have **undergone multiple independent audits** since the arrangement was consummated; never was a red flag raised by the arrangement.

[11] Plaintiffs object to and have documented other misrepresentations to Court (See Sanction # by NFA counsel to distort the material terms of the ORSA, which include – to repeatedly misquote them as to be "charging illegal fees" and "sharing trade secrets". Illegal fees aside is a compliance violation, but the NFA misquote facts, of the specific illegal terms of the ORSA – namely ¶263 (i) Boshnack and Rothman had discretion to extend margin and credit on customer accounts without their consent – acting outside of the registration capacity as IB's and (ii) HRF had discretion on liquidating accounts and placing trades.

NFA and Kadlec offer no defense to the well-documented illegal conduct included in the ORSA – (LIST RULES)

[12] Plaintiffs have also argued to the Court the first impression ruling that NFA has a fiduciary or quasi fiduciary duty to its registered members and CTA's who have no option but to become members of the NFA, and have to entrust their entire careers and livelihoods to the NFA, to uphold their duties to prevent financial fraud, and to answer questions posed to them related to the financial information on their accounts. (See ECF108 at 13-20)

NRCM and Kumaran Joint Reply,  Page 7

guaranteed by the owners of disbarred Vision, Boshnack and Rothman, that millions of dollars of excessive fees are being withdrawn to pay them (without their knowledge or consent) and worst of all, their entire confidential trading records are being  disclosed to them while the concurrently compete – running their own CTA businesses. Plaintiffs have suffered inordinate damages as a result.

Count 3 respectfully seeks a *first impression* application of the rights under 7 U.S.C. 25(b) to CTA's against NFA and Kadlec, for themselves engaging in fraud and fraudulent omissions, and for failing to uphold the required disclosures and to not deceive the public, in their public announcements and in NFA Basic, the important relationships and material financial terms underlying which brokers were underlying their account were guaranteed by disbarred owners of Vision Financial Markets. Because Plaintiffs as paying registered CTA's and members, (and have no choice but to become paying NFA members) they assert that Defendants had a **fiduciary and statutory duty to disclose** to customers, and all CTA's, start-ups entering the futures markets that if they opened accounts through one of  145 IB's, it was statutory and fiduciary duty of the NFA and Kadlec also to disclose the existence of the G&F Agreements, ORSA and all material financial terms in both their public announcements as well as in NFA Basic, that HRF, Boshnack and Rothman had direct pecuniary interest in their account.

Plaintiffs argue, NFA and Kadlec were *__obligated__* in accordance with their statutory duties, fiduciary duties, and imposed duties of trust and confidence, **and** in accordance with their June 20, 2014 half-truth, incomplete and inaccurate public statements, to include in the NFA Basic entries, that accounts opened by the transferred 145 Vision brokers (both in the entry of Lazzara and ADMIS), these accounts would be **guaranteed by High Ridge Futures, Boshnack and Rothman**.). (ECF 108 1-38). Plaintiffs argue in this *first impression* case, NFA also had duties to update both the June 20, 20214 public statements, and also correct their NFA Basic entries, which they controlled and *__knew were false, misleading and concealed material financial information__* including commissions, and pecuniary interests, HRF, Boshnack and Rothman had in thousands of accounts. This was a material disclosure, that NFA and Kadlec, which are actionable against NFA and Kadlec as fraud, as  they had statutory, fiduciary and duties of trust and confidence to make, in order to also not render their June 20, 2014 misleading, to make sure customers opening accounts at ADMIS and the 145 brokers, **had a right know** about HRF, and Vision their past disciplinary conduct.  Customers (and Plaintiffs) also had a **material right to know** ADMIS and the 145 brokers were relying on these *__guarantees__* fees, and extensive commissions in making their decision to do business.  (Noting it is black-letter law under the CEA to

disclose the fees-see e.g. NFA 2-4 9005, CFTC 33.7(b)(2)). These material omissions wrongfully induced Plaintiffs to do business and **but for** NFA and Kadlec's concealment on BASIC would not have chosen to do business with them. would changed the course of this entire timeline – and not caused the damages to Plaintiffs or other customers.

Plaintiffs allege all the foregoing are actionable frauds in NFA's public statements, and failure to correct those. (ECF 108 at 1-38, listing 7 actionable misrepresentations and 7 actionable omissions). The FAC alleges NFA and Kadlec, instead knowingly and actively participated in the fraud, by intentionally concealing these arrangements, as they *knew* it would cause billions of dollars  of potential exit from the futures markets – if customers learned the (ugly) truth, that Boshnack, Rothman, HRF former AP's of a disrepute disbarred Vision, had personally guaranteed their accounts. (given Vision's **extensive disciplinary conduct and termination** most customers including Plaintiffs would have run). So they intentionally and with scienter left the arrangements "secret" to deceive. (See Scienter ECF108 at 22-32). This is fraud – participated at the highest level by NFA and Kadlec– and particularly damaging to CTA's and setting precedent to the ongoing rights of CTA's . CTA's have no choice, and it is now mandatory, to become a member of the NFA, in order to launch a business as a CPO/CTA. NFA's Basic, NFA's public documents, and the website, are actionable as fraud, as Plaintiffs, **had a right to know about Vision's past disciplinary conduct,** and the pecuniary fees structure, commission and material guarantees on their trading accounts, prior to opening accounts. (Lest alone, the fact that the egregious and material conflicts of interest that NFA permitted, in that HRHC (High Ridge Holding Company) run a directly competing CTA business. Plaintiffs have pled in related case capital raising of over $750,000 in Nefertiti and their hedge funds to launch a business, only to be defrauded and have lost substantial capital and time defending its business.

Plaintiffs respectfully seek the Court find actionable omissions in NFA's own public literature (See ECF 108 1-7) boasting that they promote "trust and confidence" in the market place, and that NFA Basic "tells you everything you need to know about the participants". But this is false. NFA Basic concealed the most important information – that ADMIS or Lazzara accounts are individually guaranteed by the former executives of Vision (who then have discretionary authority on the accounts). The same bad guys that were disbarred. (effectively disbarred). Plaintiffs therefore walked into a trap, with the Ted Bundies of the industry, who scavenged their accounts, purloined profits, and used their account as a scavenger hunt, for money, profits and trade secrets. Plaintiff did not want to

end up in Court. But as they went to enforce their rights, ADMIS then blamed NFA as the liable party. But NFA were responsible for this fraud.

Plaintiffs also seek a *first impression* ruling, that when Plaintiffs (as CTA's and registered paying members) made numerous phone calls to the NFA after September 2017 – March 2018 requesting information about the approvals they made between ADMIS and HRF, and asking about the rules governing the handling of their account, asking for material financial information on the pecuniary interests on the account, and the authorizations NFA made for this conduct, that (as paying registered CTA's) NFA had a **fiduciary  and statutory duty** to disclose that information to Plaintiffs when they called them. (See ECF 108 at 17-22) ECF108 at 17 states :The origins of fiduciary relations is an evolving concept in securities laws, and was intended by congress to mean "a guarantee of straight-shooting in the markets".

> Unless constant extension of the legal conception for a fiduciary relationship- **a guarantee of "straight-shooting"-**supports the constant extension of mutual confidence which is the foundation of a maturing and complicated economic system, easy liquidity of the resources in which wealth is invested is a danger rather than a prop to the stability of that system .... Just in proportion as it becomes more liquid and complicated, an economic system must become more moderate, more honest, and more justifiably self-trusting. 32. H.R. REP. No. 1383, 73d Cong., 2d Sess. 3, *5* (1934).[13]

Count 3 also asserts that NFA's omissions of the G&F Agreements and the ORSA are actionable in NFA Basic, on public disclosures, and NFA's own public website, (including updating the half truths from June 20, 2014) as they constitute knowing concealments of material facts to CTA's, impacting their businesses and livelihoods,  that NFA failed to upholding the statutory anti-fraud provisions of the CEA, and had an obligation to be -straight-shooters. In Count 3, NFA and Kadlec had a duty to disclose the material financial HRF, Boshnack and Rothman had in Plaintiffs  competing CTA accounts, including the roles they approved between ADMIS and HRF. If the arrangements were even legal, NFA would have not needed to conceal them.

---

[13] ECF108 at 20, Congressman Rayburn was clear in describing those individuals who would be fiduciaries under an extended concept of fiduciary relationship,  He quoted President Wilson:  "Society cannot afford to have individuals wield the power of thousands  without personal responsibility. It cannot afford to let its strongest  men be the only men who are inaccessible to the law. Modern democratic` society, in particular, cannot afford to constitute its economic  undertakings upon the monarchial or aristocratic principle and adopt the fiction that the kings and great men thus set up can do no wrong  which will make them personally amenable to the law which restrains  smaller men; that their kingdom, not themselves, must suffer for their  blindness, their follies, and their transgressions of right." 33  33. H.R. REP. No. 1383, 73d Cong., 2d Sess. 3, *5* (1934) (Sam Rayburn quoting President Wilson). Under these principles, and NFA's role and special knowledge and necessary trust and reliance as CTA members, NFA has a fiduciary duty or quasi fiduciary duty to Plaintiff**s**.

And finally accordingly with these concealments between **September 29, 2017** and all the way up until **October 25, 2019** when the G&F Agreements were finally disclosed, Plaintiffs are seek relief and are entitled to the doctrine of fraudulent concealment and equitable tolling (discussed also infra). It was not due to not trying or due diligence on Plaintiffs accord, but the facts show that NFA took affirmative steps to conceal these arrangements and to delay justice. These are not just actionable as fraudulent omissions, but also support the doctrine of fraudulent concealment, that **NFA intended to conceal** so that Plaintiffs could not learn about the existence of their Section 22b) claims until the statute of limitations had run. As argued below, NFA's own admission in ECF129 at 15, suggest they *knew t*hat Plaintiffs could not bring their CEA 22 claims in NFA Arbitration, and thus induced Plaintiffs, by tricking them they would "only" enforce their compliance violation, if they paid more money to the NFA, but in reality, it was with Scienter to force them to forego their rights in District Court, and to evade their own liability under 25(b).

For these reasons also, Plaintiffs will show below that the R&R erred in law, to not apply the appropriate fraudulent concealment and equitable tolling and equitable estoppel. Since no motion to dismiss was made by NFA on the SOL for Count 3, (SOL is waived when not raised in the MTD)[14] and no recommendation on the merits was made on Count 3 by Judge Aaron, this claim truly has no basis for dismissal. Plaintiffs argue the claim is well-pled and should survive a 12(b)(6) motion Plaintiffs should be more than sufficient to move to discovery. The R&R also offered no substance on the merits of the Count 3, which should be telling to the Court, **there was no fault in the pleading.**

### (c) Other Defenses Raised by NFA in ECF129

In addition to the side-show of misrepresentations countered in ECF141, (Plaintiffs do not want to distract from the central issues of law in this brief), the only other defense is NFA's citation to Klein. Klein however is inapposite. First, Klein was an FCM and had no standing to bring claims under 7 USC 25. [15] NFA's only legal support in defense, is to argue for the first time that *Klein* somehow disavows Plaintiffs as CTA's well-established private rights of action for fraud. See *Curran* ID. But this is not

---

[14] [F]ailure to raise the defense in a motion to dismiss, has been held to be a waiver." *Santos v. Dist. Council of N.Y. & Vicinity of Untd Brthd of Carpenters*, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978); *se  S.E.C. v. Amerindo Inv. Advsrs*, 639 F. App'x 752, 754 (2d Cir. 2016)

[15] Klein is also non-binding precedent and not applicable to this case, also for damages, as in that case, the Plaintiff was an FCM. The issue before the Court, was whether an FCM could have standing to bring Section 22 claims The Courts held in this instant that FCM's had no standing Further the FCM's losses included "Credit losses". The use of Klein to compare damages is also inapplicable. (See ECF 108 at X)

NRCM and Kumaran Joint Reply,  Page 11

correct. Second, Klein is irrelevant because the Plaintiffs there was an FCM, (not a CTA), and therefore had no standing. Therefore there was no ruling on whatsoever on the fraud claims. Klein was also never heard by the Supreme Court undermining precedent is Curran. The fallacy of NFA's argument is contradicted by the R&R's own citation to case law that grants a private right of action under Section 22, ECF113 Pg. 16 n20 - cites to CFTC v. Fin. Robotics, Inc., No. CIV.A. H-11-2446, 2013 WL 3280038, at *4 (S.D. Tex. June 27, 2013) which states " More recent decisions have applied § 25(c)'s two-year limitations period to private claims asserted under 7 U.S.C. § 6b and accruing after 1983.

The private right if action granted in Curran applies to all Section 22 claims – and there was no exemption that registered futures associations, that commit fraud, could not be held liable under the statute. Since there were no other opposition, and given the inconsistency the Kadlec's fraud claims under Section 22(b) proceeded, this claims should survive.

### II – AIDING AND ABETTING CLAIMS COUNT 4 AND 8 (Issues #2B, #1A)

Plaintiffs bring *first impression* causes of action under 25(b)(3) for aiding and abetting liability against Defendants NFA, Wahls and Kiela (the two compliance officers) who failed to uphold the laws of the CEA. Here again, it is expressly clear that Defendants waived their statute of limitations defense for Counts 4 and 8. (See ECF74). See ECF123 Issue 1A. [16] It is also expressly clear that Plaintiff pled in Counts 3, 4 and 8 were brought as Section 22 claims. (see ECF 108 at 1, 38, 42, ECF107at 1, 13, 30-31, and ECF 106 at 49, and FAC 808). Despite being on full knowledge of these, in their opposition ECF109 still failed to engage or dispute the Statute of Limitations on these claims. ("Failure to meaningfully engage with the [Plaintiffs'] arguments amounts to a waiver of their opportunity to respond. *See* Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) )  Therefore the Statute of Limitation was expressly waived. [17]

Finally, Judge Aaron made no recommendation on the merits of either of these claims, which are express valid private rights of action under Section 22(b). Since the R&R could not fault any of the

---

[16] "[The defendants] waived their statute of limitations defense by not raising it in their motion to dismiss the amended complaint.") see Rosenblatt v. City of New York, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (Lynch, J.)

[17] Defendants opposition contained numerous fallacious arguments that try to pretend Counts 3, 4 and 8 were not brought under the CEA. The black and white text of the briefs ECF 106 show they were brought as CEA Section 2 aiding and abetting claims. They are not addressed in this motion, as they are frivolous misrepresentations in ECF141.1 Issues #1,#2, #3, #4, #5 – incorporated by reference if the Court is to address them. They are also a distraction from the central issues of law.

pleading of Counts 4 and 8, they should survive. It should also be telling to the Court, the R&R found **no fault in the pleading for the aiding and abetting claims** and they were wrongly dismissed.

### III – COUNTS 1 and 2 – STATUTE OF LIMITATIONS

Judge Aaron dismissed the CEA claims Counts 1 and 2 for the main reason that he thought the claims were untimely under the two year statute under 7 U.S.C. 25 which under 25(C) states "Any such action shall be brought not later than two years after the date the **cause of action** arises." There are two central issues before the Court. When did the 25(b) cause of action arise. And second, Plaintiffs have argued that their claims are all tolled due to the doctrines of fraudulent concealment equitable tolling and equitable estoppel. The R&R first made a plain error to not correctly apply the doctrine of fraudulent concealment because he stated that plaintiffs had knowledge of the "**CEA Violation**" or "**Unlawful Conduct**" of the NFA on September 29, 2017 email (and partial snippet). See R&R at 17.

> "In order for equitable tolling to be available on the basis of fraudulent concealment, a plaintiff must prove that (1) the defendant concealed the existence **of the unlawful conduct,** (2) the plaintiff remained ignorant of the violation until sometime within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence." *Id. Behrens v. JPMorgan Chase Bank N.A.*, No. 16- CV-05508 (VSB), 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 31, 2019)

Issue 1E also states under the CEA, fraudulent concealment and equitable tolling applies:

> A plaintiff asserting fraudulent concealment as a reason to toll the applicable statute of limitations must show (1) that the defendant concealed the existence **of the CEA violation**; (2) that the plaintiff remained unaware of the violation during the limitations period; and (3) that the plaintiff's continuing ignorance as to the claim was not a result of a lack of due diligence. See *Issuer 2004 WL 487222, at *3; Nine West, 80 F. Supp. 2d at 192*.

Judge Aaron then went on to hold that by relying on a partial snippet of an email on September 29, 2017 from IB Lazzara (which stated **all regulators NFA, CME and CFTC** had approved sone non-descript relationship between ADMIS and High Ridge) Plaintiffs must have been aware of that NFA committed fraud. Plaintiffs argued extensively in Issue 1C that this email was not sufficient or reasonable inquiry notice, for a person of reasonable intelligence to run into Court on September, 30, 2017 and bring suit against **all the regulators** for fraud. (See Issue 1C argued expressly why using the incorrect single fact (and also ignoring the other relevant emails such as ECF1.4 dated also September 29, 2017, e.g. ¶613-¶619) showing Plaintiffs direct inquires to the NFA to do due diligence on what these approvals were – supported that NFA in fact took affirmative steps to fraudulently conceal their conduct.  (See ECF123 **Issue 1C**)

**In Opposition ECF129, it is notable that NFA does not dispute the substantive arguments related to the 9/29 Lazzara email in Objection 1C.** Therefore since Defendants all concede ECF123 Issue 1C - that the September 29, 2017 was not sufficient for Plaintiffs to bring a CEA 22(b) claim against NFA, CFTC and CME the next day – or knew of the NFA's unlawful conduct or knew of NFA's CEA Violation – the Objection 1C is unopposed and should stand. "A Defendant effectively concedes Plaintiff's arguments by his failure to respond to them."). Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107, at *1 (S.D.N.Y. July 24, 2018). Therefore Plaintiffs lead with an unopposed argument, that because Plaintiffs had no knowledge of a CEA violation on September 29, 2017, and they conducted due diligence promptly (immediately on the same date, and thereafter) the R&R wrongly denied Plaintiffs the equitable tolling for fraudulent concealment. NFA's failure to respond to the 9/29 email in **ECF123 Issue 1C** is a material and alters the mix of the wrongful dismissal for all CEA claims, because it was on this sole basis that the R&R wrongly dismissed the CEA claims.

### (b) Existence of the Cause of Action between 25(a) and 25(b)

Instead, NFA argues to the Court to apply different benefits to them under different provisions of 25. Given that the use of the isolated September 29, 2017 email is unopposed, the core issue here is when did Plaintiffs have knowledge of a CEA 22 violation. Plaintiffs argued in Issue 1B, that the existence of a 22(a) violation and cause of action is distinct under the statute from a 22(b) violation, and also argued that prior precedent, notably Levy and Behrens were inapposite, in that they were price-fixing, market manipulation claims, which fall under the criteria of 22(a). Notably to bring a claim under 22(a) for price fixing a Plaintiff does not have to meet the heightened pleading standards required for registered futures association under 22(b), which includes the pleading of bad faith. Therefore simply noticing a monetary injury (as NFA point to a financial error in the accounts, does not give rise to a pleading of bad faith). The R&R also erred in that it totally erred to analyze or apply the standards of bad faith required to bring a 22(b) cause of action, rendering any analysis on the tolling incomplete. That said, NFA on ECF129 Pg. 11 then argue that "*there is zero support in 25's text for applying different accrual rules to different subsections*". However 25(c) states "Any such action shall be brought not later than two years after the date the **cause of action** arises." Therefore 25's text is also clear in the accrual – 25 (c) the claims must be brough when the cause of action arises. The question is, is there a difference in cause of action arising under 22(a) and 22(b)? Clearly the plain text of the statute states that there is.

On Pg. 11 NFA misquote the application of 25. They also cannot dispute that 25(b) requires a clearly delineated (that it has its own subsection under the Act) for registered futures associations. also misstate Plaintiff arguments. 25's text is not for "applying different accrual rules to a different subsections. 25's plain text, is applying different <u>cause of action</u> to different subsections and pleading standards to have knowledge of a cause of action under 25 (a) and 25 (b). While this Circuits' precedent (including Second Circuit) have applied this in the price-fixing context to the date of injury, and nearly *all* precedent of tolling and injury analyzed under this statute are under 25(a) - the plain text in the words in the statute of 25 (c) is <u>cause of action</u> (not injury). Congress clearly intended a difference in the cause of action to be pled under 25(b). Therefore in this *first impression* case, Plaintiffs assert that NFA cannot have the best of both worlds. Use a lower-standard of 25(a) to deem knowledge of a <u>cause of action</u>, and then simultaneously cling to Plaintiffs filing had to also meet the higher-standard of bad faith under 25(b). 25 (c) uses the word <u>cause of action</u>, and the word <u>cause of action</u> is clearly delineated between the two rules 25(a) and 25(b). What NFA are seeking the Court do, is acquire the benefits of accrual of or knowledge of "cause of action" under a lower-grade 25 (a) pleading standard, which does not apply, and then simultaneously argue that Plaintiffs also need to plead a higher-grade of bad faith  to bring a <u>cause of action</u> under 25 (b).

Therefore Plaintiffs disagree that with NFA at 11 that there is "zero support" between different subsections. (ECF129 at 11). The plain text of the statute shows different subsections requiring different pleading standards to bring a cause of action under 25(a) and 25(b), and the 25(c) requires the accrual starts, when Plaintiffs knows of the cause of action. There is a clear distinction in the higher grade pleading standard, and Plaintiffs had to know of injury /cause of action due to bad faith. Ignoring the requirements of bad faith, would be a complete override of Congress, and apply inequitable rules between 25 (a) and 25 (b) for the NFA's benefit – to seek the benefit of 25 (a) for accrual and 25 (b) for pleading standards.

Therefore the date of the **cause of action,** which is bad faith – was February 26, 2019. Therefore even without equitable tolling and equitable estoppel, Plaintiffs assert the correct interpretation of 25(c) to delineate between claims brought under 25(b) and 25(a) is that Plaintiffs knowledge of bad faith had to be met, to bring a claim under CEA 22(b) against the NFA and its compliance officers.

### (c) CEA 22 injury

NFA's theory fails in other aspects as well. According to NFA's theory, on September 29, 2017 Plaintiffs knew of an "injury" – but Plaintiffs dispute that it was not certain on that date that the injury rose to the level of a CEA 22 injury as opposed to an ADMIS or Lazzara breach of contract injury – which is not a Section 22 claim.[18], [19] Any accounting error that causes a discrepancy in a commodities futures account, according to NFA, counts as a CEA 22 injury. That is illogical. Simply because Plaintiff knew moneys had been taken from the account, they did not know the when, why, how – or the relationship between ADMIS and High Ridge. What if it was a billing error? There was no certainty of a CEA violation. Plaintiffs did not even know of the G&F Agreements until October 25, 2019, or that there was any risk services arrangements until October 12, 2018 (¶472). They did not know NFA had conducted audits approving it until February 26, 2019 and April 6, 2019.

NFA concedes this point in Injury on ECF129 at 11, citing to *Levy* they state " Rather the question is when [Plaintiff] discovered her CEA injury – that is , a loss **that was the result of a CEA violation**" Id. Therefore Levy also defined the word "injury" to mean "a loss that was the result of a **CEA violation.**" Plaintiffs also dispute that on September 29, 2017 that enough of the pieces to know that their loss was a CEA violation – or as Lazzara had said " a billing error". The other facts do not support Plaintiffs knew the trading loss was due to High Ridge or Boshnack's unlawful risk services. There was no evidence that they were involved in the risk management as those questions were clearly unanswered.

Without more material facts as to what the claim was (and it is not disputed that **on September 29, 2017 Plaintiffs promptly started due diligence** see ECF1 Exhibit 4, ¶613-¶619) NRCM would have no ability to bring a CEA 22 claims against anyone – *not even* ADMIS and Lazzara. By NFA's theory, even if Plaintiffs miraculously had enough psychic powers to discern a Section 22 claim (without the G&F Agreements (ECF31), or knowledge of the ORSA – which was not known until 2019), the only possible CEA 22 claims (as admitted by the NFA) that could have been brought on September 30, 2017 **would have had to been brought against ADMIS and Lazzara** (and not them).

---

[18] Plaintiffs dispute that theory that they had sufficient facts to know of a CEA 22 injury (as opposed to another claim)

[19] NFA's arguments on "injury" – which are borrowed form a price fixing claim – and fall under a specific subset of the "injury" under 7 USC 25(a)(1)(d)(ii) are not a direct parallel to the facts of this case. 7 USC 25(a) also *excludes* claims against registered futures associations. Nonetheless, NFA's argument fails because, what NFA are saying, is if an isolated rogue broker like Lazzara had simply stolen money from Plaintiffs accounts in criminal activity, and that is an "injury", according to NFA, Plaintiffs then had enough to bring claims against the NFA,CFTC and CME the next day – "just in case" they had a CEA 22 claim. This is not correct. They had to know the

This is where NFA's arguments crumble. Given the only claims that possibly existed on September 30, 2017 were against ADMIS[20] and Lazzara – for perhaps breach of contract, NFA's argument fails, as Plaintiffs did not have sufficient information their accounting discrepancies, were a result of a CEA violation. A breach of contract claims against ADMIS does not amount to a CEA violation against the NFA, or necessarily a CEA violation against ADMIS. Neither did they know what role High Ridge was playing – or that they were the recipient of any fees. The emails to Lazzara show a dozen questions – but they clearly do not show sufficient answers to bring a claim. (ECF57.12). So the first error in ECF129 at 11 is that Plaintiff did not necessarily have a CEA22 injury on this date and if they did, it would only have been a contract related claim against ADMIS and/or Lazzara.

NFA then contradicts itself in another fallacious argument on Pg. 13 stating "its downright bizarre" and "because Plaintiffs were CTA's  they **had to bring their claims** (which includes Section 22 claims) under the NFA Arbitration. (See ECF 129 at 13). Therefore by NFA's *own admission*, according to their own interpretation of their code of arbitration,[21] and linking to NFA's code, NFA states ECF129 at 13 "NFA"s rules *require* members to arbitrate disputes with other members". (emphasis added by NFA). [22] This assertion is also repeated by NFA on Pg. 15, where NFA admits again "Arbitration was the appropriate avenue for Plaintiffs claims against NFA members like ADMIS – which is why NFA identified that avenue for Plaintiffs" – noting again the facts in the FAC state that NFA went further, promising Plaintiffs compliance investigations into the extensive unlawful violations on March 25, 2018 that *only if* NRCM paid $9,500 to the NFA, would NFA enforce its compliance laws and investigate compliance laws.[23] (This also is actionable as fraud – See Count 3).

But NFA's admission on ECF113 at15 are clear defeat of their own CEA 22 arguments – they admit on Pg. 15 "But quite obviously, such an arbitration could *never* have allowed Plaintiffs to pursue claims *against NFA* or to pursue the claims that Plaintiffs bring here." (**emphasis in original added by NFA**). This is precisely the point of why equitable tolling and equitable estoppel applies. NFA admits that Plaintiffs had to bring their CEA 22 against ADMIS and Lazzara in NFA Arbitration (arguing because

---

[20] Plaintiff NRCM also had an Arbitration agreement with ADMIS.
[21] NFA also cited to the incorrect code of Arbitrations
[22] Plaintiffs were induced to a Member Arbitration, even though the material events occurred December 12. 2016 – May 22, 2017 before NRCM was even an NFA Member. The correct link to NFA Member Rules is Section 6.
[23] The pay-for-play -to only investigate compliance laws, in exchange for brining Arbitration is also illegal and violates the CEA, as NFA's statutory duties to enforce compliance laws, do not required NRCM and Plaintiffs to "pay NFA" to uphold their statutory duties.

they were CTA's)[24]. And NFA admits it knew all along that "quite obviously" this forum would have evaded liability against the NFA themselves – as they knew Plaintiffs could *never* bring claims against the NFA in their NFA Arbitration. Which is why the Arbitration forum, was used to deny Plaintiffs rights to pursue its claims, and NFA fraudulently induced Plaintiffs into the Arbitration, to prejudice their rights against bring Section 22 claims against them.

According to NFA's own admissions, Plaintiff had to bring their Section 22 claims against ADMIS and Lazzara at the NFA Arbitration. (According to NFA's brief ECF 129 at 13 and 15 – **Arbitration of Section 22** claims by Plaintiffs against ADMIS was compulsory)[25]. Plaintiffs therefore argue in this *first impression* ruling NFA's interpretation of their rules contravenes Federal Statute 7 U.S.C. 25(c) which expressly states jurisdiction and venue of CTA's a private right od action against NFA Member in District Court not NFA Arbitration. See 7 USC 25.(c). which states "*The United States district courts shall have exclusive jurisdiction of actions brought under this section.*" So even if Plaintiffs knew of a CEA injury under 25(b) on this Sep 2017 date (which they did not), NFA are now arguing that their member rules, circumvent the CEA 25(c) and by becoming a member, you are denied your statutory rights under 25(c).  Not only do NFA's statements **violate Congressional statute 7 USC 25(c)** – they admit in their "downright bizarre" statement – their so-called requirements are in fact illegal under 7  U.S.C. 25(c) that Plaintiffs (who weren't even NFA Members during the relevant period of material events) were obligated to bring claims to NFA Arbitration and not permitted to enforce their rights under 7 U.S.C. 25 which under the plain text of the statute requires claims against other NFA Members to be brought in District Court.  This so-called "requirement" is also void under law- as NFA's Code of Arbitration and NFA Member Arbitration rules, therefore lie in express violation of and contradiction of 7 USC 25(c) – and **prohibit CTA's and other NFA members from exerting their statutory rights under Section 22.** This downright bizarre argument also supports Plaintiffs claims of equitably tolling and equitable estoppel because NFA (by their own admissions) have contravened Federal Statute to deny NFA members, and thousands of CTA's, who now have to become NFA Members,  the rights to bring CEA 22 claims in Court, and require CEA 22 claims be brought in NFA Arbitration. (This renders their

---

[24] These facts are also completely opposite to Levy and Behrens who were not CTA's or registered members and where no such membership rules were in conflict with Section 22 claims. Thus the fact pattern cannot be applied.

[25] This argument by NFA at ECF 12 Pg 13 and 15 also violates Congressional intent under 7 USC 25 which makes it expressly clear that Section 22 claims must be brought in District Court. Therefore NFA's arguments contravene Federal law and statute. (See 7 USC 25 (c.)

NRCM and Kumaran Joint Reply,  Page 18

Member Arbitration Rules, illegal, void under law and unconscionable). **This is a fundamental conflict in the Federal Statute 25(c) and NFA Member Rules that forms the heart of this equitable tolling and estoppel that Plaintiffs argue the Member Rules are intended to deny members their statutory rights under 25(b).** NFA are now collaterally estopped from arguing otherwise, that by their own rules, according to them Plaintiffs, had to bring its Section 22 claims even against ADMIS and Lazzara at NFA Arbitration that includes CEA claims. This then does lead to equitable estoppel. Because it is clear, that Plaintiffs could not bring parallel litigation against ADMIS and Lazzara in an NFA Arbitration and District Court. If according to NFA Membership Rules, all CEA claims had to be brought under the NFA's control, the claims were still timely filed on March 6, 2018. [26]

NFA's admission on ECF129 Pg. 15 is telling. It supports that NFA knew full well – to wit, :"But *quite obviously* such an arbitration could *never* have allowed Plaintiffs to pursue claims **against** NFA or to pursue the claims that Plaintiffs bring here" shows that NFA knew their so-called "advice" and fraudulent statements to induce arbitration, were with purpose and knowledge, that Plaintiffs could "never" bring their claims at NFA Arbitration, and were with willful and wanton intent to override 7 USC 25(c.) to deny Plaintiffs the right to bring their claims in District Court. NFA at the time of the fraudulent inducement had in their possession the G&F Agreements and the audits signed approving the oral illegal market participation of the risk services – which they knew they would be liable for.

Arguing inuendo, even by NFA's late-dated ECF129 admission, Plaintiffs now as registered members, had to bring CEA 22 claims at NFA Arbitration (which again Plaintiffs argue contravenes federal statute, 7 USC 25(c) and is therefore void-under-law and public policy and Federal Statute) the Court should hold that Plaintiffs claims were **brought timely on March 6, 2018 (notice of initiation).** Therefore equitable tolling and estoppel should date the filing of the claims to March 6, 2018 (NFA Member Rule 5, states the date of tolling applies from the date the notice of initiation is filed). The FAC states that after further fraudulent inducement by Afzal on or around March 16, 2018, and on May 22, 2018, reliant on Afzal's fraudulent induction, NRCM paid NFA the $9500 dollars, believing they would initiate compliance violations.

NFA's arguments further crumble on Pg. 15 where it then states "NFA arbitration thus *could not been possibly designed to keep Plaintiffs from bringing this sui*t"". But this is false. As NFA is now

---

[26] The Arbitration was initiated on March 6, 2018 by Notice of Intent to Arbitrate which counts as the date from which claims are tolled.

collaterally estopped from arguing, the CEA 22 suit against ADMIS and Lazzara, according to them, because of a conflict in NFA Membership rules, and 7 USC 25 District Court Jurisdiction, NFA provide arguments not supported by Federal Statute, that Plaintiffs had to be brought in NFA Arbitration. Therefore the NFA arbitration was designed to prevent Plaintiffs bring CEA 22 claims in Court – and required (using NFA's own language) to bring their claims against ADMIS and Lazzara in Arbitration. In any event, NFA's argument also fails viz-a-viz the specific 25(b) claims against the registered futures association. As has been established by the facts, (and NFA and Kadlec' provide no opposition that the September 29, 2017  Lazzara was sufficient to give rise to a notice of a 22(b) claim against NFA) – the **only** Section 22 claims against NFA, Wahls, Kiela and Kadlec was identified at the earliest on February 26, 2019 and Against April 6, 2019. Plaintiffs also only obtained the G&F Agreements (after 4 motions to compel and 523 days of delays) on October 25, 2019.

If NFA's final argument on Pg, 15 is held, and Plaintiffs could bring "parallel litigation" against NFA, while pursuing claims against ADMIS and Lazzara in NFA Arbitration, this argument fails on four reasons. *First,* the first date, Plaintiffs could have even brought "parallel litigation' against the NFA (as admitted there was no knowledge of a claims against NFA on September 30, 2017) was February 26, 2019 – since that was the date **ADMIS admitted NFA were liable partie**s, and they admitted to the existence of documents and NFA employees as witnesses. What NFA are really saying is that on April 9, 2019 (which is also the first date Plaintiffs notified NFA, promptly learning on April 6, 2019 that Wahls' audits had signed approval to disseminate CTA's accounts to Boshnack who was running competing CTA businesses), that parallel litigation should have been commenced on April 9, 2019. Therefore the parallel litigation argument still would toll the claims until April 9, 2019. Plaintiffs had no possible "parallel litigation" or knowledge of NFA' s 22(b) CEA violations, audits, or wrongful conduct, until ADMIS admitted it on February 26, 2019. Therefore equitable tolling would still apply between September 29, 2019 (when Plaintiffs started contacting the NFA timely for information until February 26 or April 6 of 2019. Plaintiffs only knew of the existence of any 7 USC 25(b) claims and potential parallel litigation on April 9, 2019  and therefore the claims are equitable tolling under the doctrine of fraudulent concealment until April 9, 2019 (see below).

*Second*, NFA can't possibly be suggesting that Plaintiffs bring parallel litigation both in Court against ADMIS and Lazzara under Section 22 and also in NFA Arbitration. NFA has admitted on Pg. 15 –that Plaintiffs "are **required** to bring all their claims against ADMIS and Lazzara in Arbitration". First

Plaintiffs argue that requirement is contravenes the plain text of 7 USC 25(c) and is unenforceable and/or void under law as it violates rights given under Federal Statute. NFA Member Rules cannot intend to deprive a CTA/CPO from exerting any Section 22 claims – and NFA admission on Pg. 13 and Pg. 15 are that their rules are controlling all its members to deny their fundamentally statutory rights to bring Section 22 claims in accordance with 7 USC 25(c) which **gives jurisdiction to the District Cour**t. NFA's Pg. 15 admission is downright bizarre as it now suggests Plaintiffs should have brought parallel claims against ADMIS and Lazzara both at NFA Arbitration[27] and also under Section 22 in District Court. This would be prohibited and given NFA's admissions they now claim, **an NFA Member cannot exercise its Section 22 rights in District Court because they have to forego those claims** to bring a claims only in NFA Arbitration (While they sneak in an admissions there is no way to hold NFA accountable) This is a violation of public policy and Federal Law.

*Second,* NFA's parallel litigation fails because of NFA Member Arbitration Rule 17 gives NFA discretionary authority to interpret its NFA Rules, which is quite unlike FINRA rules, where FINRA play no role and have no discretion. (*See* FINRA 13413, *See* NFA Rule 17) [28].What NFA is suggesting, is that Plaintiffs should have brought suit against a "Judge" while the Judge is exercising discretion on a parallel set of claims against ADMIS on the same set of facts and occurrences and wrongdoings.  Rule 17 expressly contradict other FINRA practices (*See* 20-CV-3873 pending Arbitration reconsideration before Judge Woods). In ECF129 NFA claims their arbitrations are akin to FINRA. But Plaintiffs disagree. Their rules are distinguishable and materially different and also lie in conflict with the specific grant of rights under Section 22(b). Unlike FINRA Arbitration, NFA has discretion on interpreting its rules and serves in a quasi-judicial role throughout the Arbitration (and with almost no segregation of duties).

---

[27] Plaintiffs also object that NFA cites to the incorrect Code of Arbitration of 2(a)(1) on Pg.15. The correct rules for Members that apply are the NFA Member Rules of Arbitration which are found in Section 6 in this link and apply to MEMBERS https://www.nfa.futures.org/rulebook/rules.aspx?Section=6
However NFA continues to use an inapplicable link rules to Section 5 Code of Arbitration which only applies to CUSTOMERS (2)(a)(1)(i) https://www.nfa.futures.org/rulebook/rules.aspx?RuleID=SECTION%202&Section=5
The NFA Membership Rules are further in conflict with 7 USC 25(c) which requires that Section 22 claims against MEMBERS have to be brought in the jurisdiction of District Court. Therefore NFA's recitation of the rules both cites to the inapplicable code for Members, as well as is in conflict with Federal Statute. (See also  Sanctions #12 to misstate the rules without legal support). Importantly, both the Member Rules and Code of Arbitration are contradicted by Federal Statute of 7 USC 25 (c) which NFA have failed to carve out of their rules which wrongly induced Plaintiffs into NFA Arbitration. All these support equitable tolling and equitable estoppel as the rules contradict the statute.

[28] **SECTION 17. NFA'S AUTHORITY TO INTERPRET THE RULES.** *[Adopted effective June 1, 1999.]* NFA has the authority to interpret the provisions of these Rules.
FINRA 13413. Jurisdiction of Panel and Authority to Interpret the Code: The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties

Not only does the NFA serve in a Judicial capacity – this discretion, also conflicts with Section 22, where CTA/CPO's and other members also have the right to bring claims against NFA. (No such rules exist against FINRA). Therefore NFA Member Rules are unconscionable. Under New York law, an examination of the substance of the agreement is required in order to determine whether the terms unreasonably favor one party (Gillman v. Chase Manhattan Bank, supra, 73 N.Y.2d, at 12, 537 N.Y.S.2d 787, 534 N.E.2d 824). Courts have found that terms that try to bar someone from resorting to the courts and terms that are "effectively a bar" from customers enforcing their rights – and customers being left with no forum or statute in which at all to resolve a dispute – the Court have held these terms unconscionable. **Plaintiffs have argued NFA Member Arbitration Rules are unconscionable both procedurally and substantively in detail in related case 20-CV-3873 ECF38 at 20-70 and ECF37, and incorporate those arguments by reference also as relates to this action.**

It is procedurally unconscionable as becoming an NFA member you have no bargaining power in the Arbitration Rules, or being compelled to Arbitration, and also because the rules violate/ contradict Federal Statute 7 U.S.C. 25 (c) which gives member statutory rights to bring claims in District Court. It is unconscionable, because, even if NFA is liable under 25 (b) their admission Pg.15 is telling , *to wit*, members must still bring their claims in Arbitration, which means foregoing any likelihood of claims being brought against them. Both Rule 17, 7 USC 25 (c) and NFA's admissions that NFA Member Rules require Plaintiffs to forego their Section 22 rights are both unconscionable and violate public policy and Federal law, and also justify equitable estoppel – due to the conflict between the Member Rules and 25 (c).

*Third*, simply because NFA runs (administers) an "Arbitration" it does not preclude them from having to comply with the Federal Arbitration Act. That act, requires full disclosures of conflicts of interest, as well as conflicts of interest to any witnesses. Since NFA Employees, Wahls and Kiela were and are to be called as witnesses, and ADMIS intend to use NFA as defense witnesses, Federal Arbitration Rules required that NFA disclose these conflicts prior to accepting payments and initiating the Arbitration – on which they were already holding material incriminating information that they had authorized the conduct (violations of the G&F Agreements to conceal it from customers, concealment of the fees being paid to Boshnack, and Rothman, and concealment and non-disclosure of the oral risk services – not just to customers, but also engaged in fraud to the CFTC to enable Boshnack et al's illegal continued market participation as an FCM to go undetected. NFA knew they had participated in a fraud

– and violated the Federal Arbitration Act, in not stepping out of the Arbitration and recusing themselves – which they were required to do. It is absurd that NFA can continue in "Judicial" capacity under Rule 17, maintain "ex-parte' communications with a so-called-neutral Arbitration Panel, <u>and be Defendants in this Action at the same time,</u> while a "parallel litigation" continues. Perhaps it is NFA who's interpretation is downright bizarre. This lend to another conflict in Federal Statutes between 9 U.S.C 1 el seq, allowing NFA to run an arbtriation that is neutral, 7 USC 25 (c) that allows claims to brought against them in District Court at the same time, NFA Member Arbitration Rule 17 that allows them to also serve in the judicial capacity as having "discretion", while being Defendants under 25(b) and NFA Member Rule 2(a)(1), which mandates NFA Members bring Section 22 claims in their own arbitration. All these rules are in conflict with the Federal Statutes and seek to contravene Plaintiffs fundamental statutory rights under Federal laws (See 7 U.S.C. 25(c) and 9 U.S.C. 1)

   *Fourth and finally*, NFA's arguments of parallel litigation also crumble, by the precedent set by the Arbitration Panel on November 19, 2019. (ECF1.12). It was that ruling, which set precedent that Section 22 prevails over NFA's Member Rules of Arbitration, and the claims against the NFA had to be brought first (and **not in parallel**) with the NFA Arbitration. The Panel Orders in November 2019 also are precedent, that NFA's conflicting ideas to engage in parallel litigation would have raised material conflicts of interest to the Arbitration, and are not supported by statute or law. (See also 20-CV-3873 argument pending on NFA Arbitration and 20-CV-3871 also disputing NFA Arbitration is valid as Federal Statute supersedes). The question is why are NFA so desperate to have the matter arbitrated within their control. Plaintiffs have also filed multiple documents, that NFA's judicial capacity in the Arbitration, is being designed to thwart discovery and take other actions, to hide information including but not limited to the G&F Agreements which were concealed for 523 das, and were required by Rule 7(a)(2) to be produced to Plaintiffs on October 5, 2018. The Court is also reminded of emails on the record of Kadlec's counsel emailing NFA's counsel on September 25, 2019, that "**it is critical that NFA is made aware of our concerns of Ms. Kumaran receiving the documents she requested**". Why is it critical? What documents are being concealed that NFA under Rule 17 has the unconstitutional power to dictate discovery. *See* Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 74, 130 S. Ct. 2772, 2780, 177 L. Ed. 2d 403 (2010). Starting that unconscionability claims based on the discovery procedures, the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is

NRCM and Kumaran Joint Reply,  Page 23

unenforceable to be unconscionable. Here Plaintiffs were even demanded to pay $12,500 per fee for a witness deposition for an NFA Board Member.

The facts show, NFA intentionally failed to appoint a Panel or to enforce any motions to compel on the October 5, 2018 by over a year, as the G&F Agreements were not produced until October 25, **2019** – to purposefully run the clock on the CEA Statute of limitation, as they admit, they knew, Plaintiffs could not bring their CEA Claims against NFA, in their own Arbitration. Therefore, this argument that Plaintiffs could bring parallel litigation under the NFA rules (Especially NFA member Rule 17) while simultaneously bringing suite against NFA is also denied by Arbitration Panel order which was not issued till November 19, 2019. Since this is a Quasi-Judicial Order, it overrides NFA's argument on ECF 129 Pg. 15 that Plaintiffs had a mistaken belief they could bring parallel suit. The Arbitration Panel Order, makes clear this was not a "mistaken belief" – it was judicially ordered that the Plaintiffs could not bring parallel claims – while simultaneously bringing claims against the NFA. The Court is also reminded of the extraordinary steps, to issue subpoenas against the NFA in the NFA controlled arbitration (filed at ECF1 Exhibit 9 and 10) and NFA's repeated obstructions to comply with Panel requests to address the conflicts including on October 21, 2021 ( NFA intentionally failed to respond to orders from Arbitration, to explain the conflicts of interest).

Therefore NFA's mistaken belief fails in full – and it intends to override the clear and express wording of 25 (c) giving rights to traders (especially those who have paid money to become Members at the NFA) to bring their claims in District Court. By coming an NFA member you should be voiding your CEA 22 rights under Section 22, nor should you be joining a cult at the NFA- where everything is back-door, unsupervised, and all your assets, money and property from your business robbed. Plaintiffs were also fraudulently induced into an NFA Member Arbitration[29], (which was timely filed on March 6, 2018  in accordance with NFA Member Rule 5) – and the date of filing should alternatively related back to the March 6, 2018 date, as the date all claims were filed under Section 22 due to NFA's own so-called requirement (that is illegal) that Section 22 claims be brought in Arbitration.

---

[29] Plaintiffs have also argued they were wrongly and fraudulently induced into a Member Arbitration instead of a Customer Arbitration. 20-CV-3873 ECF63 Judge Aaron has ruled that because material events from December 16, 2016 until May 22, 2017 occurred before NRCM and Kumaran were even members, and the ADMIS account was open, that majority of the substantive events occurred prior to being Member. Plaintiffs have also argued in 20-CV3873 ECF38, ECF43, ECF43.28 (Affidavit), E43.29 that they were induced into the wrong type of Arbitration. The Court's ruling on June 7, 2021 supports that Plaintiffs should never have been "required" to arbitrate, as they were not members during the relevant period. Customer Arbitration is voluntary. Also any mandatory Arbitration cannot deny parties their Federal Statutory Rights under 25(c)

### (d) Equitable Tolling / Fraudulent Concealment

Plaintiffs have also argued in Issue 1 there claims should be tolled under the doctrine of fraudulent concealment. The R&R did not apply the fraudulent concealment doctrine based on the incorrect used of the 9/29 use of the Lazzara email.

As the  R&R states at 17 n.21 citing to Behrens,

> "In order for equitable tolling to be available on the basis of fraudulent concealment, a plaintiff must prove that (1) the defendant **concealed the existence of the unlawful conduct,** (2) the plaintiff remained ignorant of the violation until sometime within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence." *Id.*

NFA's opposition intentionally misquotes the legal standard to switch "injury" from "unlawful conduct" (ECF141.1 #30 Sanctions) and thus fails to apply the application of fraudulent concealment which turns on the words in Prong 1 – which "Defendant concealed the existence of **the unlawful conduct**". Since NFA and Kadlec do not oppose Issue 1C - the use of the September 29 Lazzara email, it is not disputed as an incorrect premise this should be duly noted by the Court – that Judge Aaron incorrectly applied Prong 1 of the fraudulent concealment, as the facts show that NFA, Wahls, Kiela and Kadlec "concealed the unlawful conduct". It was an incorrect conclusion (as now agreed by NFA/Kadlec's opposition to objections) to assert that all the regulators NFA, CFTC and CME had participated in unlawful conduct or fraud. Therefore the fraudulent concealment on equitable tolling was a plain error as Plaintiffs have demonstrated not just due diligence but that Defendants Wahls, Kiela, NFA and Kadlec engaged in active concealment so that Plaintiffs would remain ignorant of their CEA 22 claims until – as the facts in this case show – February 26, 2019. (Exhibits 1 and 2)

The Report made additional errors (unopposed by Defendants in ECF129 and ECF130) in that it incorrectly used the Lazzara Sep 29 email (as a snippet) without consideration of the other emails on September 27 and September 19, 2017 (¶613-¶617, ECF1 Exhibit 4) and thereafter to the NFA, to incorrectly conclude that Plaintiffs had knowledge of the "unlawful conduct" of the NFA.[30]

---

[30]R&R contradicts itself in the recantation of  its own facts of when Plaintiffs had knowledge of NFA's role in the scheme. (See R&R at 15 – it was NFA's failure to act *after the January 2019* audit that alerted them to NFA's knowledge and involvement in the scheme ¶470-472), and also on  Pg. 22  R&R states "Afzal made false statements designed to induce them to initiate an NFA-controlled arbitration so that the NFA could cover-up its "illegal and fraudulent participation" in the alleged scheme. (FAC ¶¶ 698, 701, 705.). The facts in the R&R are explicit that Plaintiffs had no knowledge of the "unlawful conduct" of the NFA, until at least February 26, 2019 and of Wahls' role until April 6, 2019. Likewise other facts related to Kadlec are also well-pled. By the R&R's storyline alone, there are sufficient facts to support that Plaintiffs had no knowledge and/or reason to suspect that NFA, CFTC and CME were parties to a fraudulent scheme – no reasonable person would have thought so – and Defendants NFA and Kadlec's failure to argue to the Sep 29 email also debunks that on

In order to have knowledge of the "unlawful conduct" to bring a claim against NFA, the plain text of 25(b) states **Plaintiffs had to plead bad faith**. Plaintiffs note the R&R did not even reach the issue of bad fait. The Supreme Court in SAS Inst. Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018)  has stated that in ministerial duties "non-discretionary" bad faith is met by the standard of negligence.[31] Nearly all the NFA Compliance laws, the requirement was non-discretionary and the standard was negligence. The question is, on what date did Plaintiff learn or have enough material facts to show NFA were negligent? NFA's opposition does not address this point.

The FAC states that it could not be possible to know NFA was negligent until it learned of both (a) the G&F Agreements - which were concealed until **October 25, 2019;**  (b) Kiela and Wahls audits on **February 26, 2019** and **April 6, 2019** respectively; (c) and/or the existence of the oral risk services agreement ("ORSA") which allowed the sharing of data **October 12, 2018**. The communications with Ms. Frances Gonzales, director at the CFTC o**n May 10, 2018** were also instructive and material, as they were the first confirmation that there was in fact a fraud – and until them Plaintiffs were being misled by Lazzara that "NFA, CFTC and CME had approved everything".  The Court should also take special note of NFA and Kadlec's silence and vacant to discuss the CFTC's lack of knowledge of the scheme, and their express derogation of knowledge that any of this had occurred (¶280-¶292) – supporting a conclusion that NFA acted w**ithout the authorization of the Commission** to approve unlawful terms and arrangements. Nonetheless May 10, 2018 was also a material date that Plaintiffs had fact that there was a fraud by the CFTC, and learned of NFA's involvement in the fraud on February 26, 2019. This Compliance was filed on May 8, 2020. (It was filed electronically through the Pro-Se Office on May 8, 2020, and uploaded on May 11, 2020 Plaintiffs have receipt of filing on May 8, 2020 if needed by the Court.) [32] NFA's opposition that they "should have *done more*" or responses were "unsatisfactory" does not dissolve the very clear facts of dates and times, that NFA engaged in fraudulent concealment and omission. Therefore the facts of affirmative steps, and due diligence, show clearly NFA and Kadlec,

---

[31] See also ECF106 at 6

September 29, 2017 Plaintiffs did not have sufficient material information to bring even a CEA 22 claim on September 30, 2017.

[32] If the Court determines facts supporting knowledge of a potential fraud started after the CFTC Gonzales conversation on May 10, 2018 (¶282) because this was confirmation by the CFTC that there was no such approval. Even if the Court were to use the May 10, 2018 date, Plaintiffs claim was timely filed on May 8, 2020. Since May 10, 2020 was a weekend (Sunday), even if the upload occurred on May 11, 2020 – Plaintiff claims was still filed within the 2 years of the Gonzales CFTC confirmation of a fraud). All the above dates fall within the two year statute of limitations of knowledge of a 25 (b) cause of action, as is the plain text of the statute.

knowingly concealed the conduct, despite persistent and repeated attempts by Plaintiffs to inquire about the truth support Count 3, Plaintiffs respectfully seek an upholding of a cause of action for fraudulent omission -as NFA had a fiduciary and statutory duty to not engage in such concealments to their CTA and were obligated to disclose the information they knew – not withhold it for over 2 years. (Plaintiffs promptly inquired about the G&F on September 29, 2017 and NFA and Kadlec withheld it and concealed it until October 25, 2019 – that is a material obstruction and concealment of affirmative steps of concealment and omission)

NFA's opposition on Pg. 12 also cites to two cases that do not apply, and in any case, support Plaintiffs arguments, First they raise for the first time *Pinaud vs. County of Suffolk.*  First they misquote the application of fraudulent concealment under the CEA – which is to conceal "the existence of the unlawful conduct' – quoting the R&R at 17. To bring 7 USC 25(b), the FAC asserts that NFA actively concealed, and took affirmative steps to conceal their participation in the scheme, and their violations of 7 U.S.C. 25(b) – namely the bad faith failure to enforce the compliance rules.[33] Plaintiffs have attached Exhibits 1 and 2 to their original Opposition, tabling a list of detail affirmative steps and material facts concealed by the NFA which invokes the doctrine of equitable tolling by fraudulent concealment.

First *Pinaud* is not a CEA claim and a close read also supports Plaintiffs. There the Court expressly stated that in order to be entitled to equitable tolling, the clocks starts when Plaintiffs discovered the "**cause of action**" which in this case was February 26, 2019 Further, Plaintiffs have also submitted substantial documents evidencing NFA's participation in the conspiracy – including subpoena's from an Arbitration Panel, and Vision's MTD own admissions that the unlawful conduct was approved by the NFA – including that of the ORSA was well-known to the NFA – and subject to multiple audits – and ADMIS's own confessions that NFA employees are to testify a<u>s defense witnesses on their behalf. </u> And the Exhibits attached to the Objections, show multiple affirmative steps to conceal and perpetuate the fraud by NFA, to conceal their own wrongdoing. Pinaud also supports Plaintiffs -

> This court recognizes an equitable tolling doctrine in the context of § 1983 actions, and when a "*defendant fraudulently conceals the wrong*, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence **should have discovered, the cause of action**." *Keating v. Carey,* 706 F.2d 377, 382 (2d Cir. 1983). To take

---

[33] NFA, Wahls and Kiela also have no defense for the facts that Plaintiffs could not possibly have learned of the audits of complaince officers, that failed to enforce the rules until February and April 2019 – and claims against Compliance officers are separate claims under 7 USC 25(b)(3) which are also equitably tolled

advantage of this doctrine, however, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered. *See, e.g., Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir. 1993) (tolling statute of limitations until time when plaintiff received an affidavit from a witness at his trial detailing the existence of a conspiracy by state officials to present perjurious testimony against plaintiff), *modified on other grounds,* 25 F.3d 81 (2d Cir. 1994). *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157-58 (2d Cir. 1995)

And as supported by *Pinaud*, Plaintiff has provided Exhibits 1 and 2, to show " took tangible steps either alone or through a conspiracy to conceal the nature of their activities toward him. *See Davis v. Grusemeyer,* 996 F.2d 617, 624 n. 13 (3d Cir. 1993)" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1158 (2d Cir. 1995), therefore warranting equitable tolling.

NFA also cites on Pg 12 to *Pearl v. City of Long Beach* – also not a CEA claim. Plianitffs object to this case as completely inapposite, and argue this case is wholly irrelevant to the facts in this CEA fraud case – not just because it is relates to police brutality, sexual harassment and other criminal offenses in a police department – where there was no specific conduct alleged against *each* police officer to plausibly allege a conspiracy. The specific facts of this are totally opposite. Plaintiffs have well-documented facts (including emails as exhibits) showing repeated dialog with the NFA and NFA's affirmative steps to conceal of material facts, as well as overt acts to cover-up the frauds (including e.g., stalling 523 days to produce the G&F Agreements, delaying 275 days to appoint a Panel, promising compliance investigations if an only if Plaintiffs paid them an additional $9,500, and engaging in direct fraudulent omissions in repeated attempts to contact the NFA in September 2017 and October 2018, and March 2018 to learn of the nature of the fraud  ¶658– stating Plaintiffs had no knowledge of the relationship of details of the fraud and direct communications with Kadlec on April 2018 – who breached his own statutory duties to continue to conceal from Plaintiffs – his ongoing torts to register Vision Investment Advisors to operate a directing competing CTA )

*Third, NFA (in footnote) cite to both Levy and Behrens. But these both*  supports Plaintiffs arguments. The Court there applied *a variety of dates* and a range of dates upon which to apply the date upon which Levy had material facts needed to plead a claims (See Behrens ). The Court also applied the latest date of the date Wahldorf committed suicide which would have given Behrens additional material facts to bring her claims (giving a range of dates – not one specific date). Therefore there was no hard coded timeline to the date of her injury but also to the range of dates when she had material facts. The Levy/Behrens cases are inapposite facts because there, for inexplicable reasons,

Behrens waited *4 years* to bring suit That cannot be compared to the facts in this case. The range of dates here would be September 29, 2017 until the later of October 25, 2019 when the G&F Agreements (with Kadlec's signature) were known. The facts show that NFA and Kadlec *knew* about the G&F Agreements since the earliest date of Plaintiffs first phone calls to Funda Agkok – and  persistently continued to conceal its existence. This can only be explained that they knew all hell would break loose (and Plaintiffs would immediately file fraud Section 22 claims) if they found out NFA had approved Boshnack and Rothman, running a competing HRHC CTA referral business, who owned an entity that was disbarred, and had subject to multiple disciplinary actions. NFA and Kadlec knew the case would blow up if Plaintiffs found out about the G&F, and they intentionally ran the clock on the statute of limitations, stalled the arbitration by 523 days in production and 275 days in appointing a Panel, and intended to denegrade  Plaintiffs rights – to protect their own liability.

They knew trouble would start, or the proverbial cat would be out of the bag, once the G&F Agreements were actually produced  – and they delayed and delayed, stalled and stalled – until not one, but four subpoenas had to be issued against the NFA (all at time, burden and cost to Plaintiffs) and the Arbitrators finally understood the NFA were involved and November 19, 2019 when the Arbitrators issues a stay. Material facts of the G&F Agreements were not known until **October 25, 2019.** Existence of the audits was not known until February 26, 2019 and April 6, 2019. Therefore applying Behrens, the any one of those date ranges – including the material facts of the G&F Agreements which fall in 2019 – all render Plaintiffs claims under 7 USC 25(b) timely. [34]

**Facts specific** to NFA, Wahls, Kiela and Kadlec's  were their overt conduct to delay, obstruct and directly conceal their wrongs. Plaintiffs also allege (unlike the facts in Pearl v. City of Long Beach), Plaintiffs set forward a table of direct communications between Plaintiffs and NFA, Kadlec to conduct prompt due diligence to learn of the nature of the fraud, and what approvals NFA and Kadlec had given that were  material facts relevant to their CEA 22(b) claims and instead, the FAC alleges, NFA and Kadlec took affirmative steps to conceal, their unlawful conduct, including concealing documents such as the

---

[34] Here the Report failed to apply any of the dates of the material facts – namely October 12, 2018 when Plaintiffs learned that HRF were providing risk services and accounts being disclosed (¶420), and the most important dates of February 26, 2019 and April 6, 2019 (when ADMIS and Boshnack admitted that NFA were liable and have signed audits authorizing violations of the CEA), and crucial dates of October 25, 2019 (the first date Plaintiffs even leaned of the G&F Agreements ¶263- and its material terms and the first date Plaintiffs learned that the ORSA was in fact "oral") and the date the Panel ordered no parallel litigations was also November  19, 2019.

NRCM and Kumaran Joint Reply,  Page 29

G&F Agreements and audits, and fraudulently induced them into an NFA Arbitration (Where they now admit on Pg 15 they knew they could not bring Section 22 claims against the NFA), and intentionally delayed discovery by 523 days, and also delayed the appointment of the Panel by 275 days, to purposefully fraudulently conceal Plaintiffs learning of their cause of action against NFA and Kadlec. Once Plaintiffs did learn of the cause of action against on February 26, 2019, Plaintiff promptly on March 1, 2019 issued a non-public FOIA Request (ECF1.5) and then on April 9, 2019 notified the NFA, requesting a conference with the Panel to address the conflicts of interest. The FAC alleges NFA, then tool further affirmative steps to deny a conference with the Panel to address the conflicts of interest, and it was only after two subpoenas were issued, and the Arbitrators issued a stay, their ruling was precedent, that the 7USC25(b) claims could not occur in parallel with an NFA Arbitration, and the claims against NFA were brought on May 8, 2020. Given that Plaintiffs only learned of the cause of action against the NFA/Kadlec on February 26, 2019, and the stay was issued on November 19, 2019, the filing of the Complaint was more than timely – and certainly not with delay  - and well within two years of learning of the cause of action. [35] Therefore Counts 1 and 2 were not untimely.

### IV – Other Statute of Limitation Considerations, Extraordinary or Exceptional Circumstances

#### Issue 1F – Individual Claims

NFA, Wahls and Kiela offer no opposition in ECF129 to the merits on why Wahls and Kiela's individual claims under 25(b)(3) should not be tolled differently, and Plaintiffs legally correct argument, that the accrual for those Defendants is applied separately. The facts show Plaintiffs only learned of those compliance officers in 2019 and there was no ability to bring those claims in 2017. Since there is no opposition to this item, the Objection stands unopposed

#### Issue 1G – Self Concealing Audits

On ECF129 Pg. 12  NFA argue that Plaintiffs were not allowed to raise that NFA's audits (and thus the claims that are permitted against Wahls and Kiela under 7 USC 25(b)(3)) were self-concealing. (Issue

---

[35] The Report also points out Plaintiffs brought their claims in May 8 2020, and two years and eight months after the September 29, 2017 – Plaintiffs have also alleged that NFA, purposefully delayed appointment of the Arbitration Panel by 275 days (about nine months) and also purposefully delayed mandatory production of the G&F Agreements by 523 days, which as intended to run the clock on Plaintiffs learning of their cause of action against the NFA. Unlike Levy and Behrens however there was only a six month window, between Plaintiffs first filing an Arbitration Notice of Intent on March 6, 2018, and against no undue delay in filing suit on May 8, 2020 when the Panel ordered that 7 USC 25(b) claims could not continue in parallel with the arbitration. This Judicial Order is binding, and therefore also invokes equitable tolling and equitable estoppel.

NRCM and Kumaran Joint Reply,  Page 30

1G)[36]. However this was raised in response to a f*irst time issue raised by Judge Aaron*, that incorrectly applied the September 29, 2017 Lazzara email to claim Plaintiffs had knowledge of their 25(b)(3) claims against Wahls and Kiela. Since NFA and Kadlec do not dispute and oppose the Sep 29, 2017 Lazzara email was insufficient to impute knowledge of a CEA 22(b) violation, the arguments raised in 1G were in response to unbriefed issued raised by Judge Aaron, that Plaintiffs never had an opportunity to be heard on.  Judge Aaron reached no conclusion on the timeliness of the individual claims against Compliance Officers Wahls and Kiela which were brought unde**r 25(b)(2). Noting that CEA 22 gives a specific private right of action against the compliance officers who in bad faith failure enforce the compliance rules, regs and bylaw.**  It would be impossible to Plaintiffs to even know of the existence of Wahls and Kiela's role. Nonetheless NFA's audits are self-concealing, and Plaintiffs do have a right to invoke their claims under 7 USC 25 (b)(3) which they only learned of on February 26, 2019.

## Issue 1H  - Equitable Estoppel

Plaintiffs also object to a misstatement to the Court that Plaintiffs did not raise equitable estoppel before the Court. It was squarely in black and white argued ECF 106 at 42 with subheading (iii) – Equitable Estoppel. Its ironic that NFA claims that Plaintiffs arguments of Equitable Estoppel was supposedly waived when it was clearly in the briefs, yet at the same time, there was ZERO mention of NFA Bylaw 301(e) and 301(c) in NFA's motion to dismiss at ECF74, yet they are now flooding the Court with late-dated arguments on Bylaws that were waived and trying to secure an unfair dismissal on bylaws, that they chose not to exclude argument on in their outbound MTD. The Court has ruled that "one word" such as "misappropriation" was sufficient to put Plaintiffs on all aspects of subsections including improper acquisition in the case of Defendant Kadlec. In equity, the black and white issue ECF106 at 42 (iii) shows Plaintiff preserve the issue of Equitable Estoppel. Defendants do not counter that the applications of equitable tolling and equitable estoppel are different so this objection stands.

## Issue 1K – Affirmative Steps

On ECF129 pg. 12 NFA incorrectly argue Plaintiffs did not argue fraudulent concealment and the affirmative steps taken to conceal the CEA 22 claim and mislead the Court that this was not included in Plaintiffs original briefs to Judge Aaron. This is untruthful. (ECF 106 at 41-42). Since all the affirmative

---

[36] Plaintiff also object tp Pf.12 NFA incorrectly states Issues 1D, 1E, 1G, 1H, 1I and 1J are overlapping. They are clearly not. Issue 1D is related to **material facts** that were needed for Plaintiffs to bring their 22(b) claims in order to plead the **nature of their claims**, which is supported by Behrens; Issue 1E Is

steps and arguments were overlooked in the R&R – and were instrumental in wrongful dismissal, Plaintiffs summarized the facts of affirmative steps (already in facts in the FAC) that were overlooked in the R&R in Exhibit 1. The paragraphs in the FAC that detailed the affirmative steps are clearly listed in Column 2 as "reference ID" – and since all these facts were pled, there is nothing new or first time before the Court. These facts were before the Court as well as in the related case 20-CV-3873 for Arbitration. Then on Pg 13 they completely misstate wrongly paraphrases the affirmative steps – mis-categorizing them to be NFA could have *done more* or they had *no knowledge* of the ORSA.[37] Plaintiffs disagree. (See ECF141 Sanction #20, #21). Not only did the R&R not reach any conclusion on Knowledge (see ECF 108 at 1, 38, 42, ECF107at 1, 13, 30-31, and ECF 106 at 49, and FAC 808) these are not permitted in a FRCP 72 motion. NFA misstate the Core Frauds to ignore their obligations on concealment of G&F Agreements, and the concealment of unauthorized fees (Which were part of the G&F Agreements and no ORSA). NFA's new arguments are also not permitted in an Objections report. All the affirmative steps and due diligence were carefully pled in the Report. Further the Affirmative steps – were fraudulent omissions and/or actionable misrepresentations which were pled with detailed times, speakers and dates.

Since Judge Aaron made a plain error that the Sep 29 email was not sufficient to alert Plaintiffs of NFA, CFTC and CME's fraud – (which NFA does not oppose) he did not reach any conclusion on the affirmative steps or due diligence and Plaintiffs summarized them in a table (ECF123 - Exhibits 1 and 2 for the ease of the Court that were already in the FAC citing to paragraphs). The tables show not just one but consistent, repeated and multiple overt actions were intended to conceal the G&F Agreements and discovery to stall Plaintiffs from having knowledge of a cause of action under CEA 22  and NFA's bad faith failure to enforce the rules. As NFA admits on Pg. 15, they *knew* it was not possible for Plaintiffs to bring their CEA 22 claims at the NFA Arbitration, and they took affirmative steps to make fraudulent omissions  to conceal the material facts (See Count 3)– for as long as possible – each and every one of these actions were directed directly at Plaintiffs to forego and to delay having knowledge of a **cause of action** to bring their CEA claims against the NFA and Kadlec. in ECF 108

---

[37] Judge Aaron did not rule on the Knowledge arguments. Plaintiffs have already pled, NFA did not just have knowledge they were instrumental in approving its material terms, which are supported by documents signed by Wahls and Kiela, and also supported by admissions by Vision in their MTD that "NFA had full knowledge of the risk services agreement" and had been subject to multiple audits without objection. (See 20-CV-3871, **See also ECF 108 Pg.8-12**)

NRCM and Kumaran Joint Reply,  Page 32

### Issue 1I and 1J – Exceptional Circumstances

NFA cites at 14 to several antitrust cases (Plaintiffs note that this is not an anti-trust case) to try to deny plaintiffs their rights to fraudulent concealment, and assert the use the words exceptional circumstances.. However there are plentiful CEA cases, that apply the doctrine of fraudulent concealment and equitable tolling, without any mention of exception circumstances. The 2nd circuit that apply the doctrines of equitable tolling due to fraudulent concealment (without the need for any such exceptional circumstances). See cases under the standards pled in **Issues 1D and 1E** –*See Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012), In re Issuer Antitrust Litig., No. 00 Civ. 7804, 2004 WL 487222 (S.D.N.Y. Mar, 12, 2004)*; *In re Nine West Shoes Antitrust Litig., 80 F. Supp. 2d 181 (S.D.N.Y. 2000).  New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988)*

> While different circuits have adopted varying standards of proof to show fraudulent concealment, the Second Circuit "has adopted the more lenient standard requiring plaintiffs to prove concealment by showing *either* that the defendants took affirmative steps to prevent plaintiffs' discovery of the conspiracy, or that the conspiracy itself was inherently self-concealing." *In re Nine West Shoes Antitrust Litig.,* 80 F.Supp.2d at 192 (citing *Hendrickson Bros.,* 840 F.2d at 1083 (emphasis added)). <u>In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.,</u> No. 00 CIV. 7804 (LMM), 2004 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004)

None of the foregoing CEA cases, have required any "exceptional circumstances" to invoke the doctrine of fraudulent concealment – and instead simply require Plaintiffs make showing that

> "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed **material facts relating to defendant's wrongdoing;** (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.,* 202 F.3d 530, 543 (2d Cir.1999) (internal citation omitted); *see also Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action") (internal quotation marks and citation omitted) <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141, 157 (2d Cir. 2012)

No such "exceptional circumstances" were needed in  any of the cases above. The plain error was the Report failed to apply any of due diligence investigation or the material facts. NFA's arguments are not the "totality across the board" as the above Second Circuit cases state unequivocally otherwise.

### 1K – Levy and Behrens -  Rotella vs. Wood

NFA also provide no substantive application on the difference of why the facts of Levy and Behrens do not apply to this case/ Plaintiffs there were not CTA's bound by mandatory NFA Arbitration

NRCM and Kumaran Joint Reply,  Page 33

Rules. Second, Plaintiffs did not wait several year like Levy, but conducted prompt due diligence and brought suit within six months of the Arbitration Panel staying the case. And as argued above, to plead bad faith for a 25(b) case versus bringing a more general CEA violation 25(a) requires a heighted pleading standard. Therefore as argued above NFA want to have the best of both worlds. Require bad faith in the pleading – but not require Plaintiffs have the material facts needed to plead bad faith. On Pg.11 - NFA instead cite for the first time to Rotella (a RICO case) to attempt to deny equitable tolling.[38]

But the Supreme Court in Rotella supports the arguments for Plaintiffs stating

> Rotella has presented no case in which Rule 9(b) has effectively barred a claim .. Plaintiff ignores the flexibility provided by Rule **11(b)(3), allowing pleadings based on evidence reasonably anticipated after further investigation or discovery. See, e. g., Corley** v. *Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, **1050-1051 *(CA7* 1998) (relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim). It** is not that we mean to reject Rotella's concern about allowing "blameless ignorance" to defeat a claim, *Urie* v. *Thompson,* 337 U. S. 163, 170 (1949); we simply do not think such a concern should control the decision about the basic limitations rule.

The Supreme Court also ruled

>  In rejecting pattern discovery as a basic rule, we do not unsettle the understanding **that federal statutes of limitations are generally subject to equitable principles of tolling,** see *Holmberg* v. *Armbrecht,* 327 U. S. 392, 397 (1946), and where a pattern remains obscure in the face of a **plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty, complementing Federal Rule of Civil Procedure 11(b)(3).** See *ibid.;* see generally *Klehr, 521* U. S., at 192-193 (noting distinctions between different equitable devices).

As is now undisputed, by not opposing to the objection to the use of September 29 email, Plaintiffs did not have sufficient facts necessary to detail a claims (See also Issue 1A – claiming 11(b)(3) – that it was irresponsible for Plaintiffs to run into Court against all the regulators NFA, CFTC and CME on September 30, 2017  which NFA and Kadlec did not dispute). Therefore as the Court ruled in *Behren,* Plaintiffs have plead a sloth of material facts, required for them to satisfy Rule 11(b)(3), affirmative steps, and due diligence, for which NFA concealed their bad faith failure to enforce the rules, using the Arbitration as part of the scheme to cover-up their inside-base-ball with Co-Defendants.

---

[38] RICO pattern discovery is not relevant to the facts here. However 11(b)(3) and

### V –  DISMISSAL OF COUNTS 1 AND 2 ON THE MERITS

In the alternative, Judge Aaron recommended dismissal of Count 1 and 2 on the merits because he stated that Plaintiffs damages "were too speculative to be plausible". R&R at 17. Plaintiffs not that Judge Aaron found no ruling on the merits of each of the individual rules and bylaws, including NFA 2-3 purloining of fees NFA 2-4 9005 failure to disclose all the fees NFA 2-4 9061 sharing of CTA trading data NFA 2-2 the anti-fraud provisions. Without an analysis on the rules, nor on the standards of bad faith, it would be impossible to properly analyze the other elements of the claims, such as damages, and more importantly the application of discretion or non-discretion on the rules ,which leads to the negligence standard of bad faith. Judge Aaron only ruled that it was a "close call" n the application of the rules. Only if it appears to a certainty that a plaintiff could have proved no set of facts to sustain a claim for relief should the claim have been dismissed. *Id. Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir. 1999). Hence none of the compliance rules causes of action should have been dismissed for Counts 1 and 2.

### VI – DAMAGES AND NEW ARGUMENTS ON CAUSATION ISSUES 2A

Instead NFA turn off on a tangent to again misquote the Order, on what Plaintiffs read as a clear objection to whether Plaintiffs quantified monetary damages. As a first note, Plaintiffs object to the ECF129 as NFA have repeatedly added italics to the word "caused" when no such italics existed and the only quotations in the Order was on the words "too speculative to be plausible". These quotations came after the words damages, so Plaintiffs, reasonably interpreted that to mean damages too speculative to be plausible. Hence in Issue 2A, Plaintiffs objected to the finding that "damages were too speculative" and quantified its damages. This is consistent with NFA's prior comments also about seeking damages for trade secrets and other business costs.  Plaintiffs incorporate by reference (#50-#52) . Defendants also erroneously cite to R&R at 20 which had no such analysis on damages.

> Actual R&R at 22 .. even if Plaintiffs could satisfy the first element, they have not plausibly alleged that they suffered **actual losses** caused by the failure to enforce. *See In re Chicago Bd. Options Exch.*, 435 F. Supp. 3d at 873-74 (suggestion that exchange's nonenforcement of rules caused **damages "too speculative to be plausible"**). (emphasis added by Plaintiff)

Instead NFA have changed the emphasis to the word caused. Plaintiff incorporate by reference ECF141. Sanctions #50-#52, as this is a misinterpretation and misquoting of the Order

Plaintiffs have also carefully explained why this is a red-herring argument, and also to mislead the Court as causation was carefully pled in the Complaint and is obvious on its face.. Clearly if Boshnack Rothman and Felag had not been re-registered (in any capacity) none of this would have occurred. So causation is obvious, because "but for" them being registered and continuing to remain in the business they would never have been able to act in this manner.[39] Second, it was NFA that approved the ORSA (see Vision MTD ECF37) and if they had enforced the compliance laws to ensure there were the required disclosures and consent, Plaintiffs would never have opened the accounts and been able to opt-out. Further they had multiple audits but in each one, the FAC alleges they allowed the conduct to continue. If Wahls, Kiela and NFA had stopped them in 2014 or 2015, which they had a non-discretionary statutory duty to do, then Plaintiffs would not have suffered damages. (see **¶161-¶165, ¶215-¶217,  ¶267-¶271, ¶440- ¶446 ¶452-¶455, ¶621-¶625, ¶651-¶655**). The R&R also stated that registration was at the kingpin of statutory machinery (see R&R at 2) In any event, at the pleading stage, Plaintiffs pled causation throughout the Complaint.

NFA then extrapolates this red-herring to claim Judge Aaron ruled that Wahls action and inaction did not *cause* Plaintiffs losses. Once again there was no such finding in the R&R, as such Plaintiffs have included these and incorporate by reference #50-#52( ECF141.1 #50-#52)

The FAC says the opposite that shows direct causation. That because, and but for Wahls and Kiela's audits which started in 2014, NFA "greenlighted" that ADMIS, and Lazzara <u>did not have to</u> comply with the disclosure laws,  (including but not limited to the black letter laws material disclosures under 2-4 9005 to disclose all fees, 2-3 to not purloin funds, 2-2 not to engage in any type of deception, NFA 2-26 which include enforcement of 33.7, and 1.55 disclosures of all risk management services), NFA directly and but for, allowed other Defendants to continue the fraudulent concealments of their activities and unauthorized withdrawal of fees, deliberately not seeking customers consents

---

[39] If NFA had upheld the registration requirements of the CEA as they were supposed to, and which they had a non-discretionary duty to do, Boshnack, Rothman and Felag would never have been tampering with margin on Plaintiffs, account, or have had access to Plaintiffs trading data, let alone interfered in trading executions, and/or used the improper Margin Allowances to tamper with margin in the account, and caused drawdown losses of $92,922.78.

Second, with regards to the multiple laws of fraud, purloining of funds, disclosures of fees, and other codes of compulsory conduct (See ¶Violations), the FAC is explicitly clear, that if NFA, Wahls, Kiela, and/or Kadlec had upheld or enforced even an iota of the compliance laws (instead of a flagrant disregard for them all – and the purpose of the regulatory scheme), ADMIS and/or Lazzara and/or High Ridge and its AP's would have (and were under the black letter laws of the CEA) obligated to disclose their various fee sharing, and risk services arrangements to Plaintiffs prior to opening the account (and at all times during the account)

Further with discovery, and the showing of the signed documents by Wahls and Kiela, causation will be readily able to prove, especially in light of other Defendants admissions such as ADMIS, that it was NFA that was the liable party and approved the conduct. (See ¶716)

### VII – BYLAWS 301(a)-(e) and 2-2(i) – ISSUES 3A-3E

In ECF123 Issues 3A-3E, Plaintiffs raised valid objections to the dismissal of Bylaws 301(a)-(e) and 2-2(i) related to NFA's failure to enforce the statutory registration requirements and to allow HRF, and its AP's and owners Boshnack, Rothman and Felag to violate (exceed) their registration capacity as IB's, and continue to act illegally and undercover as an FCM, without the registration to do so under secret "oral" arrangements. In short, NFA misquotes the applications of Bylaws 301(a)-(e) to misrepresent that they all have "a single threshold". (see Sanction ECF141.1 #23- #27 incorporated by reference.) Since these arguments were never briefed before Judge Aaron, Plaintiffs object to them being used now in dismissal without full briefing, If the Court is to use them Plaintiffs include by reference #23-#27. Plaintiffs complaint cited violations of **all** NFA Bylaws 301 (a)-(e) (¶792, ¶798, ¶67, ¶102, ¶291, ¶362, ¶674), specifically mentioning NFA Bylaw 301(c) (e.g. ¶296) and also NFA Bylaw 301(e). At no point did Plaintiffs either in their complaint or in their MTD, discuss an allegation that Boshnack and Rothman were a "cause of Vision's expulsion" or raise any allegation that invoked NFA Bylaw 301(a)(ii)(d). NFA only moved to dismiss on Bylaw 301(a)(ii)(d). Courts have held as a matter of fairness, dismissal cannot be made on arguments heard in Reply.

The ongoing expanded briefing of these rules, and also ruling by Judge Aaron on Bylaws that were never briefed in the MTD, or that Plaintiffs had the opportunity to be heard should be denied. As the first instance Plaintiffs argue the entire expanded discussion is prohibited as Plaintiffs never briefed the issue and they were only raised in Reply. (see Issue 4A)[40]

If the Court is allowing all these new arguments (clearly waived in the MTD). First it is completely unsupported by law, that all **Bylaws 301(a)-(e) have only one and the same threshold**. This is misleading to the Courtas the word "barred", "suspended", or "expelled" <u>does not apply to all</u>

---

[40] NFA only moved to dismiss on 301(a)(ii)(d). There were no other Bylaws 301(a)-(e) briefed before Judge Aaron – and since this was a red-herring argument related to "cause of the expulsion" the R&R made a ruling on an unbriefed issue that NFA had waived in its MTD. Now, extrapolating far beyond what was in the original briefs, NFA seeks to sow confusion into the application of the Bylaws, (that weren't briefed and waived), notably on Bylaw 301(c) and Bylaw 301 (e). Since Plaintiffs pled violations of ALL Bylaws NFA Bylaws 301 (a)-(e) (¶792, ¶798, ¶67, ¶102, ¶291, ¶362, ¶674) it is an incorrect and prohibited argument for now NFA to arbitrarily pick and choose which ones, ((after the MTD briefing is completed)) and selectively include and exclude relevant ones

subsections, for instance to 301(c)  or other provisions of 301(a).Plaintiffs have alleged violations of all sub-divisions which were not briefed – (Sanctions#23-#27 Bylaw 301(c)(ii)(iii),(x),(xiv),(xvi))[41] Second, the argument of whether Vision was "barred" or "effectively barred" was also not before the Court and waived in ECF74.

Therefore this is another misleading argument, that NFA knows are not supported by facts, since they have already publicly announced Vision was effectively barred. Therefore it is already admitted by the NFA that Vision was effectively barred, and so the thresholds of barred should apply. Any legal discussions between barred, and the application to Bylaws 301(a) and were not briefed either. If the Court is to use all these, Plaintiffs incorporate ECF141.1 Sanctions#25 discussion on the improper application of Bylaws 301(a) – e.g. Bylaw 301(a)(ii)(c) – "subject to an order.. barring the person from being associated with an FCM" – in this case Person was Vision Financial Markets, LLC, the triggering conditions of 301(a)(ii)(e) apply because Boshnack, Rothman and Felag had associated with (and been the AP's of) Vision. These trigger the heightened scrutiny provision of Bylaw 301(e) – because Vision was barred as an FCM and Felag, Rothman and Boshnack were their key Associated Persons; Further 301(a)(ii)(e) is triggered because it was known to NFA, Kadlec, Boshnack, Rothman and Felag, (or with the exercise of reasonable care should be known to them), that they were registered solely as AP's of an IB and were ineligible and not registered in accordance with the Act and rules of the Commission (under Bylaw 301(a)(i) to continue to act as an FCM. In both these criteria, (see 301(a)(i) is not contingent on the underlying words "barred", suspended or expelled).Because these are waived issues, that are now mispresented in facts, and required further briefing to the Court.

It is clearly not supported in their own rules that Bylaws 301(c) and Bylaw 301(a) have the same requirements. NFA then misstate the supporting rules and laws of CEA, without any colorable legal support in the rules by grouping all the Bylaws 301 **as one and the same**, without distinguishing **the specific criteria of 301(c)** and **those that distinguishable from Bylaw 301(a)**. This is a material

---

[41] NFA Bylaw 301(c). "A person may be deemed disqualified to become or remain a Member or associated with a Member….if it is subject to a settlement agreement to not (A) act as an futures commission merchant .. or affiliated person or employee of any of the foregoing; (301.(c)(iii); or, if such person has made false statements in its registration application and acting outside its registration capacity (301.(c).(x)); or; if their re-registration to act as an futures commission merchant has been refused within five years (see 301.c(.ii)) which are all clearly alleged in the FAC; or such person has associated with any other person and knows, or in the exercise of reasonable care should know, of facts regarding such other person that are set forth as statutory disqualifications in Section 8a(2) of the  Act 301.(C)(xiv) (see also ECF106 at 34 on 7 USC 12(a)(2); or "any Principal (which means Boshnack, Rothman and Felag) could be refused membership 301(c)(xvi).

misrepresentation to the Court, as NFA Bylaw 301(c) has no such motion was made, though all Bylaws including 301(c) were in the FAC. (see ECF141.1 #23-25 – on Bylaws not briefed before Judge Aaron)

NFA then continuing to misquote the pleadings, delete the material words in ECF123 Issue 3E that state that **HRF's application was an FCM was refused.** This led to its being statutorily disqualified **as an FCM.** Once its registration was refused, this triggers Bylaw 301(c). Further a(ii)(e) as its was known that they were acting outside of their registration authority. NFA then introduces brand new facts trying to claim for the first time they had no knowledge of the ORSA. But Judge Aaron never reached any conclusion on fraud or NFA's knowledge. But this again is prohibited argument because it was never included in the MTD (See Sanctions #6, #7, #26-#27). Judge Aaron did not even reach these conclusions, and only what was in the original briefings should be considered. Plaintiffs have moved for sanction on #23-#27 because all these briefings were not supported by law and misstated fact

The NFA next falsely state and flat out mis-represent Plaintiffs never raised 2-2(i). Also incorporated by reference in Sanctions#31. Plaintiffs object as this was also squarely in the briefings - also related to disqualifications of HRF, Boshnack and Rothman and them making false statements on their registrations. (This is a critical violation of the CEA). Instead of arguing on the merits of this critical core issue, NFA then deflect again and commit misrepresent 2-2(i) was waived, even though it is in black and white in the pleadings (ECF108 at 35) . Plaintiffs note the double standard that NFA waived multiple arguments in their MTD, but are now briefing several new arguments in Reply.

Therefore dismissal on all these Bylaws was made without proper application of the rules and without briefing. If the Court is to include the unbriefed issues, they are incorporated ECF141 (#23-#27). These were also Reply only arguments and should not be considered.

### VIII - NFA 2-26 and NFA 2-29 (Issue 2F)

Also a new and unbriefed issue not contained in the MTD, Judge Aaron incorrectly concluded that 2-29 and 2-26 are not required ruled under the CEA. Plaintiffs provided a detailed explanation of why these rules were incorrectly assessed in Supplemental Exhibit ECF123. Plaintiffs remain astounded by NFA's own misinterpretation of its rules. NFA does not argue on point to the valid explanation that Plaintiffs explained why reliance on Saul and Troyer were inapposite. Any ruling that allows NFA not to enforce NFA 2-29 would be clearly erroneous as it is one of the first and foremost rules under 7 USC 21 (p). Since this is a *first impression* issue, and of utmost importance to the preservation of Plaintiffs

rights, Plaintiffs expand this new briefing here (noting NFA also had the arguments in Exhibit so they cannot complain surprise by their inclusion) The Court should note NFA did not dispute on point any of Plaintiffs arguments.

NFA continues to (quite shockingly) as the sole regulator, mis-apply their mandatory statutory duties to enforce NFA 2-26 and NFA 2-29. The application of both this rules is a *first impression* rule, with no precedent in any Court, under the statute 7 USC 25(b). This was raised for the first time by Judge Aaron in R&R footnote at 19 and **was not an issue briefed by any** of the parties. Since the issue was not contained in any of the MTD (ECF 74) and/or Opposition (ECF 106, ECF108) Plaintiffs[ put forward a Supplemental Exhibit (ECF123.1) explaining the error in law -in why those two provisions were not just mandatory, but *non-discretionary rules* required under 7 USC 21 (p)(1)(3)(4) and (7) and other 7 USC 21(b). Plaintiffs have asserted NFA and Kadlec failed to enforce both NFA 2-26 and NFA 2-29 as required provisions under 7 USC 21.

The OIG Report (incorporated by reference to the FAC filed at ECF1.1)  also states that NFA 2-26 and NFA 2-29 are non-discretionary rules, approved and adopted by the CFTC **as required.** Materially NFA 2-29 is a primary rule, contemplated in the express statutory delegations under 7 USC 21(p)(1)(3)(4) and (7) to prevent fraudulent sales and solicitations ¶64, See also ECF1.1 Exh 1, Table1, Page 10, Table 6, Page 18-19 and 21(b)(7)—which generally requires that the association's rules be designed to prevent fraudulent practices (see NFA 2-29), to promote just and equitable principles of trade, and to protect the public interest. It would be non-sensical that NFA 2-29 is not required, when it is expressly laid out that all rules under 7 USC 21 p(1)(3) and (4) are required. Further Judge Aaron made the plain error to not properly apply the other relevant parts of the statute.

NFA's opposition is to seek an illogical ruling that contravenes law that **all the rules after 1985** are not required by 7 U.S.C. 21 to be enforced. Judge Aaron's ruling was also not supported by the statute and the case law. This means that all rules, including those after 1985. To not be so, would also be illogical. That all CEA rules such as those related to BitCoin, Crypt Currency, new trading products, and CTA's are not enforceable. The Court's application failed to include the correct ruling of Troyer

Specifically, the relevant section of Troyer1 states "All of the NFA's rules are subject to the CFTC's approval. See 7 U.S.C. § 21(j); MBH Commodity Advisors, Inc., 250 F.3d at 1056. Under § 21(a), part of the registration process for a futures association is that it must submit its bylaws and rules to the CFTC for "review and approval." 7 U.S.C. § 21(a)(2). Likewise, § 21(j) requires that a registered

NRCM and Kumaran Joint Reply,  Page 40

futures association submit any changes to its rules to the CFTC for approval. 7 U.S.C. § 21(j); MBH Commodity Advisors, Inc., 250 F.3d at 1068 (citations omitted). The CFTC "shall approve such rules if such rules are determined by the Commission to be consistent with the requirements of [§ 21(j)]." 7 U.S.C. § 21(j). In that same vein, the CFTC is authorized to abrogate any rule of a registered futures association if it appears to the CFTC that such abrogation is necessary or appropriate to assure fair dealing by the members of the association. 7 U.S.C. § 21(k)(1). Therefore under 7 USC 21(j) all rules adopted after 1985 had to be approved by the CFTC as consistent with the requirements of 7 USC 21. (See Troyer 1). Furthermore the Court's report errs as it does not include 7 USC 21(c) – which supports that all rules approved by the CFTC have to conform with the requirements, and the CFTC's continuing grant of rights, is conditioned upon the Commissions continued finding that the rules of the futures association (as amended and approved) conform with the requirements. Therefore NFA 2-26 and NFA 2-29 are all non-discretionary rules, approved and adopted by the CFTC as required. Materially NFA 2-29 is a primary rule, contemplated in the express statutory delegations under 7 USC 21(p)(3)(4) to prevent fraudulent sales and solicitations ¶64, See also ECF1.1 Exh 1, Table1, Page 10, Table 6, Page 18-19   and  21(b)(7)—which generally requires that the association's rules be designed to prevent fraudulent practices (see NFA 2-29), to promote just and equitable principles of trade, and to protect the public interest. **NFA's lack of accurate application of its mandatory delegated statutory responsibilities to request the Court to deny enforcement of these rules is "astounding" given its role to protect public interest. In Effex vs. NFA the Court ordered an amicus brief from the CFTC.**

The Court relied upon two inapplicable cases that do not set precedent on 7 USC 21(p)(1)(3)(4)(7) and NFA 2-26/NFA 2-29. As clearly outlined in the Supplemental Exhibit ECF 123.1, the error in application of *Saul*, was that it referred to an inapposite statute of NFA 2-8(i) which fell under a completely inapplicable rule **7 USC 21 (m)**. That specific rule 2-8(i) allowed NFA's *discretion* in supplementing its rules and therefore was not considered mandatory. Judge Aaron made a plain errors as he failed to apply the difference between **7 U.S.C. 21(p)(1)(3)(4)(7)** which are relevant in this case, versus 7 U.S.C. 21 (m) and its subdivisions. This error was material. NFA does not dispute this point and simply refuses to argue on 7 USC 21(p)(1)(3)(4) and(7)'s application to NFA 2-26 and NFA 2-29. This argument was therefore unopposed.

Judge Aaron's application in *Troyer* was also inapposite, as it was related to a first complaint (and not pled in amendment) that interpreted NFA Bylaw 301(a)(ii)(d) to require NFA make a

modification to its rules. (Since this issue was not briefed, Plaintiffs added a Supplemental Exhibits). Troyer raised a different argument than the one in this case  - that NFA *"by failing to adopt the necessary rules and bylaws which §21 mandates that a registered futures association must adopt"* – arguing that NFA needed to adopt *new* rules.  But as was also argued in Troyer 1, all other rules and bylaws, are subject to a continuing grant and approval by the CFTC, (otherwise this nonsensical interpretation would mean everyone is stuck in 1985 and no new developments or addition of rules would be enforced).

 The OIG Report is clear that the Federal Registry adopted multiple revisions of the CEA, CFTC and NFA rules since 1985 including the addition of terms such as CTA's and CPO's in 2012. The eight areas[42] identified by the CFTC in non-discretionary duties under 7 USC 21 included those related to fraudulent sales and solicitations 7 USC  (ECF1.1 Pg.1 and Pg. 10 Item 6 "Sales practices"– required under 7 USC 21 (p)(1),  Item 7 – "Telephonic Supervision" 7 USC 21 p(4) and Item 8 – Other required under 7 USC 21(b)(7) which require rules to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, in general, to protect the public interest and remove impediments to and perfect the mechanism of free and open futures trading (includes disciplinary processes and anti-money laundering programs).

 NFA 2-26 and NFA 2-29[43] which involve all the mandatory disclosures to customers and Plaintiffs (Including inter alia 1.55(i)-(l), CFTC 33.7(b)(2) as well as all the fees are required under the disclosure laws. Failure to enforce this would result in the wild west – a complete lack of requirement of NFA to enforce the sales and solicitations and this is a primary mandatory delegated duty.

 Therefore Plaintiffs application of the laws is correct. (The Court should also note NFA's admissions to citing to its own incorrect Arbitration Rules). This is a critical first impression ruling by the Court to uphold the integrity of the CEA and to protect investors and traders under 7 USC 21(p).

---

[42] DSIO identified eight program areas where NFA has responsibility by statute or delegation: 1) registration of all categories of Commission registrants and the examination of FCMs and SDs; 2) Commodity Pool Operator (CPO)/Commodity Trading Advisor (CTA) special provisions; 3) foreign futures and options special provisions; 4) financial surveillance program; 5) arbitration program; 6) sales practices; 7) telemarketing supervision; and 8) other.

[43] NFA also raises a frivolous argument Pg20 n11 that these are only rules Plaintiffs object to that should have been mandatory. This is false and fraud on the Court and contradicted by the detailed list. These were the only two rules that Judge Aaron referred to in ECF113 when he incorrectly stated were not required under 7 USC 21 and therefore the only two arguments discussed in the objections. (An objection must only refer to something in the Report). A complete list of non-discretionary rules was provided in ECF141. NFA's argument Plaintiffs should have argued comments outside of ECF113 is bad faith and frivolous.

### IX – COUNT 13 - ARBITRATION AND DAMAGES (Issues 5A-5C)

Plaintiffs object again to a string of falsehoods made to the Court that have distracted resolution on the merits. First NFA claim the R&R had an exclusion to the statute of limitations for Count 13. (See Sanctions #3). There was no such exclusion and this was a plain error in the R&R. Clearly Count 13 could not be time barred, as the Arbitration did not start until May 22, 2018 when payment was made (albeit fraudulently induced).  Next NFA, falsify words to interchange "arbitrator" with "administrator" which is to deceive the Court on the central issue of NFA's role as an Administrator. (See ECF141 Sanctions #35). Next, they divert the Court with a set of irrelevant case law related to arbitrators from the 2020 reconsideration motion in *Gill, Funcia and Yada*, that had already been ruled on in Orders 33 and 34. (ECF141, Sanctions #36). None of these issues were briefed in the MTD. They also then fabricate that Judge Aaron made a "damage ruling" on whether Arbitration Fees could be included in damages. No such ruling was made (See EC141 Sanctions #43). Then they knowingly cite to an entire set of incorrect arbitration rules, and admit as such to the Court. (ECF141 Sanctions #37-#42).Further briefing on how each of those new Arbitration rules violated failed to uphold the CEA was not included in the MTD. If the Court is to now include detailed analysis of each of the Arbitration Rules (that NFA admits they miscited the rules in their brief) then Plaintiffs respectfully request the opportunity to be heard, and incorporate by reference ECF141.1 # 37-#42 – which provides detail explanations of how those violations were non-discretionary and required violations under 7 USC 21(b)

If the Court is to entertain these new arguments, misquoting, Plaintiffs include by reference all opposition to the new arguments in Sanction#3, #35,#36, #37-#42 also explained in Exhibits 7A -7C)

In diverting the Court from the central argument, on Issues 5A-5C and Count 13 Plaintiffs argue that because 7 USC 21(b)(10) and Article III are mandatory *required* rules of the NFA, Plaintiffs are entitled to damaged under 7 USC 25(b) for all related and **resulting from** the [covered] transactions. The R&R was incorrect in its application to not review [actual damages] from 7 USC 21(b)(10) which <u>is a required rule</u>. The Arbitration (as NFA admits) was according to them – their only recourse – to recover on the [Covered] transactions. Therefore it is a non-sensical interpretation of the statute, that thousands of NFA members are now supposedly "required" to Arbitrate, that violations of 7 USC 21(b)(10) are not **resulting from** the same covered transactions. In fact the further violations of the Arbitration Rules, On Pg. 23 NFA cites to Klein. The R&R makes no reference to whether Arbitration Fees were included or not included in the definition of actual damages resulting from. Therefore this

argument was not raised. The only argument was whether the [covered transactions] damages were included in the interpretation of 7 USC 21(b)(10) and whether cause preceeded effect. Plaintiffs have argued that an additional **cause** of violations of 21(b)(10) also **resulted from** the covered transactions, and if the R&R theory held, it would nullify the entire intent of the statute which is ensure 21(b)(10) is enforced as any CTA bringing claims for "covered transactions" – would have to bring Section 22 claims [44] at NFA Arbitration. The R&R's conclusion is plain error as it would be render enforcement of the required statute 7 U.S.C. 21(b)(10) null and void.

On Pg. 13 NFA continuing the deception to misquote facts in the FAC and misstate the total damages sought in the FAC. Issues 5C sought damages for ***both*** covered transactions as well as other costs and damages including Arbitration Fees (for failing to enforce the arbitration rules). (see Issue 5C seeking both types of damages. NFA instead misquotes the pleading to ignore the $92,522 of [covered transactions] which the NFA makes no dispute over the existence of.

7 USC 25(b)(2) specifically states

> NFA is liable for **actual damages** sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that **resulted from such transaction** and **were caused by such failure to enforce or enforcement of such bylaw or rule.**

Simply because this is a *first impression* case, where a CTA's damages were compounded and substantially increased by NFA's failure to set up a fair, expeditious and equitable arbitration forum and violated numerous laws, as part of the fraud to conceal Boshnack and his teams ***ongoing*** unlawful market participation. The statute says NFA is liable for all ***actual*** damages – which includes other out of pocket costs, expenses, fees and business costs – that "***resulted from***" the transaction. There is no exemption in 25(b) from losses and damages caused by NFA under 25(b)(2) . NFA seek (in this early stage) to exclude additional costs and losses (that can be proven at trial) for [covered] transactions required which was caused by NFA's failure to enforce statute 7 USC 21(b)(10). What NFA wants, is the Court to rule in setting *first impression* precedent, to make 21(b)(10) exempt from the rights under 25(b). This is not what Congress intended. NFA's bad faith failure to invoke a fair arbitration (one that is alleged as part of a fraudulent scheme, and NFA has now admitted at Pg. 15 and Pg. 13 is required

---

[44] NFA's arguments on Pg. 13/15 that CTA's are ***required*** to bring ***all their*** NFA Member disputes in NFA Arbitration (including Section 22 claims) as stated on Pg. 15 is also void under law and illegal. The plain text 7 USC 25(c) states that those claims have to be brought in District Court and therefore NFA Rules and requirements to have to arbitrate those claims at the NFA is in conflict with Federal Statute and void-under-law. Plaintiffs have also argued they are unconscionable. NFA by imposing rules that are in conflict with 25(c) are also denying traders their rights **that are clearly intended by Congress.**

by CTA's, including required to bring CEA Section 22 at NFA Arbitration – cannot exclude Plaintiffs rights to recover all actual damages incurred by failure to enforce 7 USC 21(b)(10)). This would result in a ruling that NFA has a carte-blanche license to both commit fraud to CTA's (See Count 3) and intentionally violate *all of its arbitration rules*, entrap thousands of CTA's CPO's who are paying members and have no liability as is clearly prescribed in 25(b)(2) regardless if they, in bad faith, or as part of a fraud, failed to uphold any rules. That was not the intent of the 7 USC 25(b) statute. The plain text of 25(c) is all actual damages that **resulted from** the [covered] transactions – which includes the $92,000 of losses. Therefore, given the modernization of the statutes in 2012 to include definitions of CTA's and CPO's, any damages that resulted from, the losses, which now includes all fees and expenses by NFA's failure to abide by the required rules of 7 USC 21(b)(10) cannot be (at this stage) excluded in the award of damages Nonetheless NFA do not dispute that the losses from the [covered] transactions of $92,000 should be included in their failure to enforce 7 USC 21 (b)(10) – See Issue 5C. Therefore this portion of the damages aware from 21(b)(10) is waived and not disputed.

Plaintiff have also argued the R&R's interpretation of the statute was wrong – because it failed to consider the evolution of the CEA, and the CFTC 2012 registration *of thousands of CTA's and CPO*'s who have no option (according to NFA) but to bring claims in NFA Arbitration. This conflicts with 7 USC 25(c) which specifically grants rights to CTA's to bring their claims in District Court. Any actual damages, caused by any rules, bylaws, and regulations should be considered in trial, under 25(b)(2) – as is stated in the plain text of 25(c) to protect injured traders, and modernization of the laws and rules to protect new classes of market participants like CTA's.

NFA's argument also fails in citing to Klein (ECF129 at 23) and harping on incorrect precedent. Where the Plaintiff was an FCM and had **no standing** to bring claims under  Section 22 (25(b). The fact that Klein had **no standing** and was an FCM is dispositive of the Court's reliance on this case, as this cannot be compared to a CTA/CPO who does have standing.

This was already argued (ECF106 at 17-18) Klein does not apply to this case as it was an FCM since it had no standing. This cannot be compared to CTA's and CPO's who do have standing, and incurred substantial damages and losses, by NFA's failure to uphold an Arbitration as prescribed, and without disclosures required under the FAA as required under 7 USC 21(b)(10). Klein is therefore inapplicable as it also did not bring claims under the specific statute 21(b)(10). Furthermore at a minimum NFA's failure to uphold the Arbitration (including inordinate delays) count towards equitable

NRCM and Kumaran Joint Reply,  Page 45

tolling. Plaintiffs also argue any exclusion of **actual damages** is premature – as Plaintiffs "actual losses" which are prescribed in 25(b) are allowed to pled. Generally Plaintiffs are allowed to itemized damages after discovery and with experts. Plaintiffs have broadly pled Section 22 damages (Prayer (a) – and that it its not disputed. Plaintiffs are entitled to damaged under 7 USC 25(b) for all related and resulting from the [covered] transactions.

### X – STATE LAW CLAIMS ISSUES 6A and 6B

### Issue 6A – Supplemental Jurisdiction

On Pg. 26-27, NFA challenges the clear and plain guidance from the 2nd Circuit, that if Federal Court claims have been denied - the Court should not exert supplemental jurisdiction on the claims. NFA's proposition decries both precedent in cases it relies upon heavily Behrens and Levy, where it was the express ruling of the District  Court, that if Federal claims are not preserved, the Court should not exert jurisdiction on the State law claims. Here NFA want to have the best of both worlds. First, they seek to obtain an unfair benefit of denying Plaintiffs a ruling on the merits by inducing Plaintiffs to bring CEA22 claims in NFA Arbitration instead of under 25(c) (Discussed above as a violation of Federal Statute) and also improperly intentionally conceal their own wrongs to deny a equitable tolling of fraudulent concealment and equitable estoppel and therefore without a ruling on the merits and then have the Court (without any analysis on the merits). Then, in the unlikely event the District Court denies Federal jurisdiction they seek to Plaintiffs their fundamental State Law claims deny material ruling of the fraud claims Counts 3 and Aiding and Abetting claims under 4, 8, which were material claims – again without any ruling on the merits, by an abuse of discretion to exercise supplemental jurisdiction on state law claims without exercise of supplemental jurisdiction. The standard practice is to deny jurisdiction on state law claims.

### Issue 6B – No Immunity for Illegal Activity and State Law Claims

Given that the court should not exercise supplemental jurisdiction, in the event the District Court does not proceed with the well pled 7 U.S.C 25(b) claims, the Report should not have reached any ruling on immunity, nor on exercised supplemental jurisdiction (see Issue 6A above). In opposition Pg. 26, NFA continues it flagrantly misquote (on material issues) Judge Aaron's Order which is again a violation of Rule 11(b)(1)(2) and (3). Specifically NFA misquotes the material ruling in R&R which quotes from In RE NYSE which states (Order ECF113 at 25)

> The "central question" regarding SRO immunity "is not whether the SRO is acting (or not acting) 'consistent with' **the laws <u>it is supposed to apply</u>**" *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007)

NFA and Boyle intentionally delete the material part (to mislead the Court on the central issue of law)

and instead misquote Judge Aarons Order to state on ECF 129 at 26

> "The "central question … is not whether the SRO is acting (or not acting) 'consistent with' the laws"; [**DELETED THE WORDS "it is supposed to apply** "]

This misquote was intentional, against a Pro-Se Plaintiffs and violates Rule 11(b)(1)(2)(3) as it was intended to conceal the central issue of law of focus and to deceive the Court that the words immunity **applied only to the laws "it is supposed to apply**". (ECF141, Sanctions # 34) In Re NYSE did not say anything about illegal activities outside of the laws it is supposed to apply, which Plaintiffs have pled – constituting illegal activity of (a) fraud (b) RICO (c) Defend Trade Secrets Act – for dissemination of property to its competitors (d) civil conspiracy (e) conversion and (e.) unfair competition. *Second* NFA misstated Judge Aaron's findings – the Report never conducted any analysis of the quote on which particular activities fell into those categories, and they add new arguments in their opposition (which were never briefed in the MTD

   *Third,* NFA does not dispute Plaintiffs contention in Issue 6C that "the activities of Boshnack and Rothman were <u>necessary part of the operations of the market</u>". Immunity exemptions cited by NFA typically apply for exchanges who were acting in the aegis to enforce emergency actions for the <u>necessary functions of the market</u>. There is nothing about this activity to allow Boshnack and Rothman (serial violators of securities laws) to fund customer accounts, and none of this activity is an "emergency" or "needed" for the regular functioning of the market, as required under the laws and rules of the Commodities Exchange Act. What the real issue is central to this argument is that NFA, wanted to keep an <u>illegal stream of revenue of over $70 million dollars</u> (not disputed), by concealing the G&F Agreements and other agreements, as customers (CTA's) would have gone elsewhere, and brokers would have lost their businesses which in turn procured **billions of dollars of unauthorized futures revenue,** multiple Federal and State Statute were violated – including those of including Grand Larceny, Conversion, Misappropriation, Fraud, 18 U.S.C. 1832 and RICO, and other federal Statutes.

   The victims of the scheme were newcomers, customers and CTA's like Plaintiffs who have lost their businesses, in order to fund this illegal activity. The core allegation is there is no immunity from prohibited and unlawful acts (outside of the laws of the CEA)  to benefit an inside-baseball group of

long term market insiders, and outside of their "needed functioning of the markets" cut secret illegal deals, to convert new CTA's trading advantage to Boshnack and Rothman, extract unauthorized fees from their account, suppress their profits, convert and disseminate their trading strategies so the insiders could get an inside leg up on their competitors, to keep the money flowing (excessive commission and fees – as described in Scienter, see ECF 108 at 6-15)) to secure huge revenues and an unfair market place advantage to a cabal of oligarchs. This favoritism to market insiders is illegal – and in doing so they violated numerous other common laws and statutes. For these acts, NFA and Kadlec have no immunity.  NFA and Kadlec are operating outside of their duties to interfere in the commercial rights, hard work, property and livelihoods of other persons (who weren't even NFA members at the time these events occurred) under federal and state laws. NFA is subject to eminent domain laws where it can seize the rights and properties of small businesses (like Plaintiffs) and convert them to be assets of its baseball insiders – who paid them off $1.5 millions of dollars  – and whom they admit the NFA has allowed them and approved deals to let them perpetrate torts on regular NY businesses.  NFA is not a neutral actor.

### XI – CONCLUSIONS - LEAVE TO AMEND

Plaintiffs respectfully note to the Court, the extraordinary side bar and version in having to correct the false statements and misfiling. Because so much of the opposition paper was a misquoting of the Order, Plaintiffs also seek relief in additional pages from the Court for the extraordinary additional effort to respond to numerous new arguments and out of scope filings. (ECF141. #1-#52). The misquoting was far beyond the normal bounds and authorities of an FRCP 72 motion and Plaintiffs thus incorporate by reference the sanctions #1-#52 for all arguments that were frivolous and intended to distract the Court on arguments so it would not reach the core arguments.

Plaintiffs have not repeated them all in this brief, but include all the misquoting in ECF141 #1-#52  so any arguments not included herein were not replied to as they were made in bad faith or frivolous.

Finally in our Motions to Dismiss,  Plaintiffs have sought a chance to amend any claims that are subject to a pleading deficiency or could be explained more clearly. Judge Aaron's decision to not allow Plaintiffs a first chance to amend claims was also an abuse of discretion since it is clear that both Plaintiffs never had the opportunity to amend the Complaint, **with the benefit of the opinion of the**

NRCM and Kumaran Joint Reply,  Page 48

**Court.** See also  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017)  *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015). In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Second, it is clear that substantial portions of the Complaint were related to Fraud. Dismissals made pursuant to Fed. R. Civ. P. 9(b) are "almost always" accompanied by a grant of leave to amend, unless the plaintiff has had a prior opportunity to amend its complaint or the allegations were made after full discovery in a related case. Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986).

Only if it appears to a certainty that a plaintiff could have proved no set of facts to sustain a claim for relief should the claim have been dismissed. *Id.* Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 534 (2d Cir. 1999) Plaintiffs respectfully reminds the Court there are two subpoenas that are on the docket that the Arbitration panel thought as mandatory and critical to be produced prior these actions proceeding and to determine NFA's approval and documents to show that. Therefore in the interest of justice, Plaintiffs also respectfully seek leave to open discovery on these central issues. Plaintiffs have waited a long four year since September 2017 to have answers to how their entire business was destroyed and turned over to their competitors Rothman and Boshnack, under the supposed NFA's enforcement of compliance rules, and therefore Plaintiffs respectfully seek leave to open discovery.

As the Court can see this case involves almost all first impression cases. This requires additional briefing. A separate motion for leave for excess pages will be filed concurrently as the statutes and laws argued are of significance and had to be responded to thoroughly to preserve our own arguments to the multiple new arguments raised in opposition.

Thank you

//SSK//                                                    //BMA//

Samantha S. Kumaran                      Brian M. August, Esq

Individual Plaintiff                             Counsel for NRCM