**VIA ECF/EMAIL**
Honorable Judge Gregory H. Woods
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007


Re:     *Kumaran et al vs. National Futures Association et al*  20-CV-3668-GHW-SDA

**RE: OPPOSITION TO ECF149**

Dear Hon Judge Woods,


Plaintiff Kumaran writes to object fully to the *excessive* extension sought by counselled NFA Defendants. In letter dated January 25, 2022 Defendants now seek an extraordinary *three* weeks which far exceeds even the *Pro-Se* Rules for responding to a motion. Clearly Defendants are struggling to find a reasonable explanation for their bad faith conduct and need more time to concoct explanations. For the reasons below Plaintiff objects to *any* extensions to NFA as it would result in further procedural inequity. Further, their request to stay the sanctions motion is not supported by case law or directly contradicted by Second Circuit precedent and should also be denied (as also explained below).

Plaintiff also objects, because procedurally this Court has set very firm deadlines for *Pro-Se* Plaintiffs (even denying an emergency stay to protect our rights). NFA on the other hand has used the procedural tight time frames to prejudice *Pro-Se* Plaintiff to limit our ability to properly respond to motions.

As procedural background in inequity in time:
- NFA had a total of **60 days** (without interruptions and other overlapping motions in related cases to file their Motions to Dismiss).
- Plaintiff who is Pro-Se had less than **10 days** to file their Motion to Dismiss, because Judge Aaron issued overlapping orders on June 7, 2021 in related case which had briefings due on June 22, 2021. (20-CV-3873 ECF69-ECF72). Plaintiffs filed for an extension and also to this case and it was denied. We had to file our response timely on June 30, 2021. (ECF93, ECF94, ECF97 – documenting multiple overlapping briefings)
- NFA then sought another extension and they were granted **45 days** to filed their Reply.

The total days without overlapping briefings granted to counselled big law firm and NFA was **105 days.** Plaintiff *Pro-Se* barely had the allowable amount under Local Rule 6.1 of fourteen (14) days, and not consistent with His Honor's Individual Rules of Practice for Pro-Se's which allows four weeks to respond to a motion. Instead it is documented that because of the overlapping cases, NFA counselled Defendants were allocated a procedural advantage of **105 days** in comparison to the **10 days** Plaintiffs had. NFA used this time advantage to then raise multiple new arguments in Reply. The Court should note, that many of the Objections to the R&R centered on arguments raised in

NFA's Reply brief only (ECF110) – that Plaintiffs never had the opportunity to be heard. This was also procedurally inequitable, as the Court ruled on one-sided waived arguments.

### (i) Procedural Equity in Objections Motion

Similar inequity is detected in this Objections briefing. As for the briefing schedule on this Objections Motion, Plaintiff *Pro-Se* requested a two week extension to file Objections on October 18, 2021 bringing the total amount of allocated time to **four weeks.** This is consistent with His Honor's Rules for *Pro-Se* Plaintiffs Rule 5.A. The Court then treated *counselled* NFA Defendants with the same lenience the same allocation of **four weeks** to file their Reply on November 15, 2021. There was no difference in treatment between *Pro-Se* Plaintiff and *counselled* Defendant, despite the vast difference in size, resources, and funding (such as access to associates, paralegals, experience). In addition, as a single small company, Plaintiffs had *two* separate responses due – one for Kadlec and one for NFA. On the other hand, Defendants are represented by two separate law firms, so have the benefit of two separate lawyers working on each motion. This essentially halves our equivalent time to work on each motion. No consideration was allocated for this.

Plaintiffs also had to respond to another motion (dispositive) in related case 20-CV-3871 which was due on December 14, 2021 (ECF114, ECF115, ECF116) and did not turn their attention to this. Accordingly Plaintiffs were allocated **seven (7) days** to complete their Reply by December 21, 2021. Due to Covid, both Plaintiffs were out of the office, in a successive manner. I was out for 2.5 weeks and returned on January 3, 2022. The Court then reset deadlines until January 18, 2022. Plaintiff thus had **two weeks** to file a Reply consistent with *Pro-Se* Rules.

While some work was done while being out, on January 10, 2022 (in less than a week of returning) I notified counsel for NFA Defendants of not just one, but **over 50 misrepresentations** in ECF129 to fabricate findings in the R&R, and conclusions that never existed. (ECF137). Exhibit 1 shows non-colorable bad faith items of several instances of fraud on the Court. While taken very seriously, I carefully documented line by line, each of the infringing statements and why they should be struck. This greatly increased cost, time and burden to me to have to respond to the frivolous filing. It was apparent the filing miscited references, case law, Arbitration rulings, and pleading references, and contained conclusions that did not exist in the R&R. ECF129 was an attempt to distract the Court from the merits of the case, and improperly use an Objections reply, to expand their prior Motion to Dismiss – either rehashing issues not even part of the R&R, but also raising multiple new arguments not even briefed – or worse – impute these new arguments to Judge Aaron hoping the Court would not check the veracity of the statements, because they are *counselled P*laintiffs and I am Pro-Se.

Because the misfiling went as far as to misquote Judge Aaron's order, accordingly Plaintiffs notified NFA's counsel of the misstatements and in compliance with Rule 11.C, gave NFA the opportunity to withdraw or correct the pleading so that we would not have to respond to a frivolous filing. (which would also significantly increase time and burden to me). NFA notified the Court that they had in fact cited to the incorrect Arbitration Rules (which incidentally is substantial given the central issue is on the application of the conflicts of 7 USC 25 (c) granting jurisdiction to this District Court and NFA Member Rules 2(a)(1) and which attempts to circumvent statutory rights granted to traders.) They also admit they had referenced the incorrect pleadings (which also was to prejudice Plaintiff). Instead of withdrawing or correcting the pleading, they belittled that Plaintiff filed a sanctions motion to obtain an "extension". That was not correct. They also attempted to explain to the Court these are mere "different views". Plaintiff responded in detail (ECF139) pointing out

multiple misrepresentations made – together with more factual details on why each of the statements was infringing, non-colorable and in bad faith. (See e.g #6 – misrepresenting that the Judge Aaron had ruled on Knowledge.

> ECF 129 at Pg. 19 Magistrate Judge Aaron found that he did not need to reach this question because Plaintiffs pled no non-conclusory facts showing that more rigorous audits would have *unearthed* High Ridge's alleged fraud or secret oral agreement. Id (R&R at 22)(emphasis added by NFA)

But a black and white reading of the R&R at 22 shows no such colorable finding and it was a fabrication of the Order. This was not an isolated event. Exhibit 1 shows the conduct permeated the entire brief – making it next to impossible to respond to timely, and causing a distraction from the central issues of law. (See Exhibit 1). Because there were 52 items, it had to be brought to the Court's attention and is bad faith. Plaintiffs therefore also respectfully needed the full and fair opportunity to respond. ECF129 was being used to avoid the Court's review on what laws, arbitration rules applied and also to pretend Judge Aaron had ruled on items, when he had not. It is also not permitted in a FRCP 72 briefing for NFA and Boyle to vastly deviate from the narrow objections and issues raised. This was also intentionally prejudicial to a *Pro-Se*, because, I assume, the normal inclination of the Courts is to rely on *counselled* briefs, and not to assume a Pro-Se brief has accurate law and legal support. By committing such mis-conduct, they hoped to secure an unfair dismissal without review of the central issues of law.

NFA have specifically targeted denying Plaintiffs reasonable extensions, to procure procedural advantage. Despite a colossal infringing filings Plaintiffs made the deadline, even if needed, working 24 hours. Nonetheless Pro-Se Plaintiff, with an extraordinary backdrop of several family members unwell, and counsel also out of the office, still completely timely, a filing for the Reply on January 18, 2022.

Given the inequity, and hardship, counselled Defendants should not be afforded a "luxury" of yet another 21 days to concoct explanations, while Plaintiffs clearly have not been granted such lenience and they have committed fraud on the Court. This is also an infringing brief. The Court should require explanations promptly, and if none exist, ECF129 should be struck or appropriate remedial actions taken (such as striking the infringing statements or frivolous defenses).

(ii) NFA's Request to Hold a Sanctions Motion in Abeyance is Not Supported by Case Law

NFA's second request to hold a sanctions motion in abeyance, is also directly contradicted by case law (and NFA/Boyle cite to no case law to support their proposition). The District Court should address **first** and rule on the sanctions motion first, before ruling on the merits, because if the Court was to incorporate the infringing statements, then this would prejudice Plaintiffs further. Defendants should not be permitted to misstate a Magistrate Judge's Court Order, then allow the District Court to rely on inaccurate pleadings. Rule 11 motions must be served at least a full 21 days before the court concludes the case or resolves the offending contention .... *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 n.2 (2d Cir. 2003). This means the Rule 11 motion should be heard first. Since NFA chose to not withdraw the pleading, the Rule 11 motion is ripe for ruling.

     The Court should note that NFA and Mr. Boyle[1] in their letter ECF149, cited to no case law or precedent on why an infringing pleading such as ECF129 should be "held in abeyance", and neither have they provided any good cause. To the contrary, NFA provides no justification, no explanation to the Court and they have not filed any legal argument to defend their misstatements. Since Exhibit 1 is transparent, and can be verified readily by a comparison in what was contained in the filings, it is wholly documented and transparent lack of candor with the Court.

     It is clear that enormous prejudice would happen to Plaintiffs if the Court, with full knowledge of the sanctions motion, would then rule on an infringing pleading. Therefore NFA"s motion is once again contradicted by law and precedent – which means they have not met the legal burden to show good cause, or cite to any case precedent on why the District Court should stay the sanctions motion and rule on an infringing pleading.

     Further inequity would occur as ECF129 (the infringing pleading) attempts to raise new arguments in Reply, new arguments in Objections all of which are uncountered. The Court should not bend the rules to NFA inequitably. Since Plaintiffs have incurred enormous hardship to meet the January 18, 2022 deadline, and without the resources, funding and support (and with the extraordinary backdrop of immediate family members with Covid) – **we still met these deadlines**, Plaintiffs object to <u>any</u> further extensions. In addition, Plaintiff seeks relief from the Court for the time spent on having to attend to the filing at ECF129 which was both bad faith and frivolous.

     Finally Plaintiff reminds the Court that this action and my inquiries to the illegal conduct as a paying member of the NFA started in 2017. Plaintiff has waited a long **four years** to obtain documents material to resolution of this case on the facts of NFA's involvement, including subpoenas that are still issued and present on the docket. (ECF1.10, ECF1.11). ECF129 alone documents a conflict of interest in NFA continuing to try to administer an Arbitration. Under the Court's inherent powers under 28 U.S.C. § 1927. Plaintiff respectfully seeks that the Court on its own order, allow discovery to commence on these material facts, so that Plaintiffs can adequately prove its case, and prove the clear and unequivocal conflict of interest in the NFA continuing any role whatsoever in any Arbitration. The conduct in ECF129 is material to the overall theme of this case, and impacts all three cases.

     Finally, given the extraordinary hardship, tight deadlines for *Pro-Se* Plaintiff to meet the Court ordered deadlines, (and noting in related case 20-CV-3871 a similar prejudice has occurred, for which Plaintiffs will need to also appeal shortly), Plaintiff objects to any extension to NFA. Further another three week extension is well beyond the accepted normal and far greater than even the Pro-Se Rules allow.

     It should be apparent at this juncture, that Defendants are struggling to explain their outrageous and frivolous conduct and need more time to come up with excuses. No such excuses should be allowed on this clearly supported sanctions motion. Defendants are obligated under Local Rule 6.1 to

---

[1] Plaintiff also notes Mr. Schauf has now withdrawn his name from all filings and pleadings after January 10, 2022 and without consent from the Court, the filings now state Mr. Boyle is counsel for all three Defendants NFA, Wahls and Kiela. Mr, Schauf made his appearance as counsel for Wahls and Kiela, and his name was on the infringing brief ECF129 on the front page subject to the sanctions motion. Mr. Schauf now appears to have removed his name from further filings promptly, suggesting he does not condone the filing.

respond within fourteen days. The Court should uphold the same strict time limits to a counselled law firm as they do a *Pro-Se*. This latest request is merely another attempt to have one-sided briefings, using arguments in Reply and deny Plaintiffs the chance for the Court to rule on the merits. The response is due on January 27, 2022 and Defendants should be held to the same feet-to-the-fire deadlines, that Plaintiffs are with relentless pressure to meet next-to-impossible deadlines. Plaintiffs do not object to any additional page limits sought by Defendants.

Because in large part of the infringing filing at ECF129, we are carefully crafting our good cause response for letter motion for excess pages which is due within 14 days, in accordance with Local Rule 6.1. Plaintiff also intends to meet the deadline. Plaintiffs are working on their good cause for exceeding the page limits in their comprehensive response in ECF145. The good cause includes the extraordinary deviations and frivolous conduct in ECF129 that went far beyond a routine objections motion, and attempted to sneak in a second motion to dismiss, for which Plaintiffs had the right to respond to. We believe Exhibit 1 is also supportive of and sufficient to show good cause for outrageous conduct that warrants the excess pages, so that the Court can proceed on ruling on the merits. ECF145 was one of the most important pleadings on the record for the Court to synthesize the importance of this case. Plaintiff respectfully requests the Court rule on this motion on the merits.

In conclusion, Plaintiff reminds the Court what this case is about.

This is a first impression case brought by registered CTA's under 7 USC 25(b) which provides a private right of action against the sole registered futures association.

The 2nd Circuit has pointed out that the private remedy [under 7 USC 25(b)] was designed to reflect "a balance that does not insulate [exchange'] officials from answering serious questions posed by injured traders." (735 F.2d at 677) The Court commented that "[t]o do otherwise would drastically curtail the private right of action deemed essential to the regulatory framework adopted by Congress." *Id* *(See Sam Wong)*.

Since 2012, the CEA is evolving to have thousands of CTA's and CPO's. Becoming a member, should not curtail your rights under 7 USC 25(c). Congress must have realized that traders, who are usually small businesses, sole-props, single parties, family businesses, without the legal resources of Jenner Block would have to enforce their rights against the NFA. That is what 7 U.S.C. 25(b) intends. There is already an inequity in size and resources between Plaintiffs and Defendants. Congress's statute does not intend for the registered futures association to have a free-range of **100 days more time** to file responses and pleadings, commit fraud on the Court, file one-sided pleadings, layer in brand new arguments in Reply briefs, or file new arguments in Objections motions to they can't be responded to. It does not allow them to pretend Plaintiffs raised arguments "*for the first time*" to secure an unfair dismissal. The black and white pleadings show they were not raised for the first time – but ECF129 uses misrepresentation to alter the ruling.

Clearly Pro-Se Plaintiffs is at a procedural disadvantage in time, resources and capital and access to big law firms. Thus we respectfully request that the Court is not swayed by a big law firm over the interests of a *Pro-Se* Plaintiff who have shown all the facts and all the law to prove their case. The Court should not grant any further lenience to counselled law firms who have flouted the rules.

This is a significant case – with multiple *first impression* issues of law. Under 7 U.S.C. 25(b) Plaintiffs have brought valid first impression causes of action for fraud, aiding and abetting and failing to uphold the CEA and NFA rules, by NFA, Kadlec's, Wahls and Kiela's bad faith knowledge and approval serial bad actors, Boshnack, Rothman and Felag, were allowed to (i) exceed their registration capacity to continue to operate undercover as an FCM; (ii) purloin money from traders accounts without consent; (iii) misappropriate trade secrets and trading strategies from their competitors CTA accounts; (iv) manipulate margin in violation of exchange rules by over 500%; (v) reduce their competitors trading profitability by over 18% a year; (vi) illegally have discretionary authority on the risk management controls of their competitors.

This case asks a simply question. How is it possible that a group of disreputable AP's from an FCM Vision that was effectively disbarred in 2014, Boshnack and Rothman, who have an extensive serial track record of disciplinary violations and securities violations, have continued to work undercover and illegally, under secret oral arrangements to continue to perform FCM functions, (without the registration capacity to do so), which were fraudulently concealed from the CFTC and customers while running a competing CTA? (also concealed from Plaintiffs). Their answer and purported excuse – the NFA knew all about it – allowed it to go on to circumvent registration rules as "oral agreements" and intentionally failed to enforce the compliance laws in exchange for billions of dollars of credit lines.

This case also asks the Court to rule that the concealment of the G&F Agreements, and Boshnack and Rothman's individual guarantees on their competitors CTA accounts is an actionable omission as fraud - as Plaintiffs (customers) would never have chosen to do business.

Their tampering with other CTA's account also constitutes deliberate unfair competition, as they also concealed their direct pecuniary interests in HRHC CTA referral business. The unauthorized activities were documented as replete with errors and omissions, gross negligence with large and excessive margin errors also causing excessive losses, and at the same time engaging in direct competition on the exact same options strategies. All the activities sought to circumvent the CEA, and violated mandatory requirements to seek consents from customers and traders or comply with the black letter laws to allow them to opt-out of the arrangements. The activity was illegal. This was also fraud. Allowing NFA to cover this up, and not allow a ruling on the merits – should hurt the Court's conscience.

Plaintiffs have lost exorbitant amounts of money and suffered never-ending damages by the delays and obstructions by NFA. Plaintiffs respectfully seek redress for the outrageous conduct in ECF129, and hold the NFA accountable for this bad faith filing which has also increased cost, time and burden on the Court (as well as Plaintiffs) in having to attend to it.

Plaintiff opposes all extensions on this important motion for sanctions. If NFA have no reasonable explanation for Exhibit 1 within the 14 days, Plaintiff implores the Court to respectfully take remedial action on its own under 28 U.S.C. § 1927, including, striking infringing defenses, and if permitted, monetary damages for the additional time spent. Finally, Plaintiffs respectfully request the Court see through this side-show and inequity in time for NFA to seek *excessive* extensions. Plaintiffs only request the Court to rule on this important case **on the merits**. Something the NFA does not want.

Respectfully submitted,
//SSK//
Samantha Siva Kumaran
Individual *Pro-Se* Plaintiff