IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN<br>et al<br><br>*Plaintiffs,*<br><br>-against-<br><br>National Futures Association et al,<br><br>*Defendants,* | Case No:1:20:CV:03668-GHW-SDA<br>Related Case: 1: 20:CV:03871<br>Related Case: 1: 20:CV:03873<br><br>**OPPOSITION**<br>**TO MOTION TO WITHDRAW** |

Plaintiffs oppose (at this time) any motion to withdraw by attorney Mr. August and dispute his explanation as incomplete and untrue. Plaintiffs NRCM, NAM and NHC have a retainer dated December 21, 2020, and Mr. August <u>concealed from Plaintiffs</u> at the time of his retainer and appearance any medical concerns. Concurrently, Plaintiffs had received a litigation funding offer of several hundred thousand dollars for another matter in or around December 2020, at the time of Mr. August's retainer, and Mr. August not only <u>lied to the client</u>, about any medical impairments, he represented to a litigation funder <u>he was fully able to accept the funding</u> and <u>concealed any serious medical concerns</u>. Any representation to the Court to the contrary is false – as Plaintiff would never have engaged Mr. August if he had been truthful – or disclosed any medical impairments at the time of his retainer. I was (individually) also unaware of any medical history impairing his inability to work.

Contrary to his letter, Mr. August's retainer, expressly required him to maintain representation only until <u>after</u> the motions to dismiss and motion to compel, where he represented and warranted he could provide several hundred hours work on each of the three cases, which he represented in writing he was able to perform. (Instead he has requested clients do his work for him). The parties agreed in advance, that *after* the motion to dismiss and motion to compel, Plaintiffs NRCM, NAM

1

and NHC would retain other counsel to help with discovery. Therefore Mr. August's letter to the Court is again false – as the parties had already mutually agreed in advance, that because of the size of the cases, Mr. August's retainer was only to cover up and to the motion to dismiss and motion to compel. (Plaintiffs will gladly provide in camera proof of this retainer). Mr. August's comments that despite several attempts to be replaced Plaintiffs failed to do so is also patently false.

Mr. August never once requested to be replaced or notified Plaintiffs of any serious medical impairment and in fact to the contrary, as recently as January 2022 and February 2022, again had made the opposite representations and solicited litigation funding for this case 20-CV-3871 and related cases 20-CV-3668, and 20-CV3873. Plaintiff is in receipt of several emails dated January 2022 and February 2022, whereby Mr. August represented to the litigation funder, and thus his clients, he was able to work full time but was well enough to secure a litigation funding budget of $500,000 **for his law firm**. At no time in the last year, and/or in 2022 has Mr. August purportedly instructed me or Nefertiti entities to replace him as his letter dishonestly states, and he represented to the client, any medical treatments were behind him, and he had "several hours" of free time at home in which he could contribute to the case.

The dishonesty of his letter motion, is exemplified by the fact that Mr. August had in fact set up conference calls and Zoom, (which can be provided in camera) with the litigation funder, to accept $500,000 for his law firm on dates as recently as February 18, 2022 (the same date as the conference in this matter) and emailed the funder that he wanted to reschedule the funding call for February 23, 2022. (which is today). At no time, had Mr. August notified clients he was impaired or unable to work.

On or around January 28, 2022 (which is very recently) Mr. August further engaged in Zoom calls and emails with the litigation funder notifying his acceptance of said budgets that he was well enough to work full-time, and never indicated to his clients or the funder any desire to either withdraw or that he was not well enough to work.

Several months <u>after</u> being retained and making an appearance, Mr. August who was fully aware of his conditions and <u>concealed his impairments from the clients,</u> and then after the fact, told Plaintiffs he had a heart stent, represented he worked with affiliate law firms (including a Brooklyn Law School professor) with, *to wit*, dozens of paralegals and associates, who would supply all his drafting and research. He again maintained to Plaintiffs he was well enough to continue .

Plaintiffs inquired several times of Mr. August if he was well enough to engage in foregoing representations, and in writing, Mr. August stated his treatments were minor, would only last 2 months, and would be able to commit <u>several hundred hours</u> and would engage in <u>all</u> research and drafting of the motions to dismiss and motions to compel arbitration for NRCM and any other Nefertiti entities. Mr. August specifically represented to the clients, that he worked with associate law firms who were affiliated with Brooklyn Law School, so that there would be no prejudice to the client. Only months after being retained, Mr. August did then state he was having 6 weeks of treatments, which he said would only take up 2 hours, but then expressly told the client in March 2021 (a year ago) his treatments for his conditions were resolved and he was fully able to continue. He also then expressly told clients, he had the remainder of the days to work on the case.

Reliant on his representations he was associated with other law firm from Brooklyn Law School, and the dozens of legal assistants, Mr. August insisted on being <u>paid ahead</u> of any renumeration due to Ms. Kumaran, and that to save time, Ms. Kumaran should supply his legal work. Mr. August also requested he wanted to procure tens of thousands of dollars regardless of whether he did any work. but had a minimum number of hours to assist.

It was never contemplated in the retainer that Ms. Kumaran would have to supply his legal work and Mr. August continued to show up with no work, but instead demand he get paid first. Mr. August did not at any time request from clients he withdraw from the case.

Instead to the contrary, Mr. August has also authorized and is negotiation (as of today) $500,000 of litigation funding **for his law firm** on this and related cases, and did not notify the client of any inability to complete his retainer or accept litigation funding which requires his services only up to the motion to dismiss and motion to compel. Mr. August has in fact requested he stay on after the motions to dismiss upon receipt of the funding budgets (which is directly opposite to his letter to the Court).

It appears, that Mr. Augusts motion to withdraw is based solely on the fact, because he was caught being woefully unprepared for an oral argument on February 18, 2022 in case 20-CV-3873. Plaintiffs must state clearly, that Mr. August had made <u>no requests to withdraw prior to this conference</u>, and in fact, Mr. August had engaged in completely the opposite behavior, and has conference and Zoom calls to accept for his law firm over $500,000 in litigation funding, with dates of calls scheduled with the funders for February 23, 2022.  Contrary to the letter motion, the retainer was explicit, that Plaintiffs would replace or supplement Mr. August after the motion to compel and motion to dismiss.

Plaintiff resents any untruthful representations to this Court about what Mr. August has told both his clients and the litigation funders on his capabilities to work, and specifically objects to his dishonesty that he requested Plaintiff to replace him and we failed to do so. This is patently false. Mr. August initiated on his own accord, active communications with funders so that he could secure the $500,000 (representing his wellness to work) all of which would be paid to his law firm, with emails documenting this as recently as February 14, 2022 and February 8, 2022 and provided no indication to clients he was medically impaired.

In addition, Plaintiffs also had notified the Court in letter dated January 2022 that they fully intended to bring on additional counsel *after* the motion to dismiss and motion to compel arbitration, and had pointed out to Judge Aaron, that because the cases were somewhat in disjointed procedural posture (one case stayed – and there is a pending Rule 12(b)(1) motion) – potential other law firms had wanted to wait till after the motion to dismiss before joining said cases. This

4

is documented to the Court on January 13, 2022 – again proving that Mr. August's letter is false, as he was also aware that Plaintiff intended to bring on co-counsel to supplement or replace Mr. August *after* the motion to dismiss.

Instead, Mr. August has concurrently in February 2022, continued to represent to the litigation funder, he *is* well enough to work, and Plaintiff would like to submit in camera, said recent emails by Mr. August accepting $500,000 for his law firm for these cases – with no indication to either the funder or Nefertit that he was medically impaired. The most recent emails, up to the conference in person, show Mr. August fully engaged and actively managing the litigation funding to receive the funds, with no indication whatsoever to the client or the funder of any inability to work.

Finally his statement that "his communications" have broken down is also not truthful. Mr. August has made no attempt to notify or reach out or call the client since the Feburary18, 2022 conference during which he embarrassed himself by being woefully unprepared. Plaintiff had told Mr. August that because of the Presidents Day holiday the family was in Washington DC (at Mount Vernon) for the weekend and would be back in the office on Wednesday. Mr. August failed to contact, email or communicate once with the client, any prior notice of his intent to withdraw. There have been no communications to this effect.

Mr. August's blindsight to resign, comes only after he was embarrassed at the oral conference, for doing on work, and asking Plaintiff to supply his legal drafts, and as an attorney bound by ethical duties, he is not permitted to prejudice the clients in anyway. Given that Plaintiffs have evidence of Mr. August concurrent acceptance of $500,00 of litigation funding, where he has represented to both the clients and third party funders, he is more than well enough to work, and had made no prior indication to clients he wanted to terminate his services early, Plaintiff oppose the timing of his withdrawal.

Plaintiffs had stated after the conference they would begin looking for new or additional counsel *after* the current motions are completed. Since Mr. August's retainer (contrary to his

representations to the Court) does in fact contemplate Mr. August to complete services up to *after* the motion to dismiss/motion to compel, and contemplates termination of his services *after* the motions to compel and motions to dismiss, Plaintiff had already advised Mr. August they were seeking to bring on new or additional counsel at that time.

The parties expressly agreed that he would remain counsel of record until after the pending motions to dismiss and motions to compel. It was fully contemplated that Plaintiffs would engage new counsel or additional counsel after the completion of the current pending motions. Mr. August requests are ill-timed, and also conflict with other representations, he has made to outside litigation funders for calls this week (February 23, 2022).

Finally, there is no record of any emails or evidence whatsoever of Mr. August purportedly trying to ask Plaintiffs to replace him. The documents show Mr. August instead was trying to close funding of several hundred thousand dollars with calls scheduled this week. His request to withdraw only came about, after he was caught not actually doing the work he agreed to do, and has been requiring Plaintiff Kumaran to write his share of the work, while concurrently making requests that up to $575,000 off the top of the case gets paid directly and solely to Mr. August (while Ms. Kumaran receives nothing) for doing his work.

For these reasons, and Plaintiff would like to supply to the Court in camera, Mr. August active and concurrent February 2022 emails to the funders for $500,000 representing his wellness to work, and Plaintiffs oppose the timing of this withdrawal. There is very little left to do on the pending motions to dismiss and motions to compel. There are potentially only one or two further filings.

Mr. August provided no notice or and no prior request to clients to withdraw. The signed retainer does in fact contemplate a change in counsel *after* the current motions, and in fact, Mr. August had requested to clients the opposite as what was portrayed to the Court, that he be permitted to stay on, and he could "handle solo" the litigation funding budgets.

6

Given the procedural status of each of the cases, and that we are close to completion of all the motions to dismiss and motions to compel, any attempt to withdraw untimely would significantly prejudice Plaintiffs. Plaintiffs would thus like to submit in camera his retainer, as well as copies of Mr. August recent and active communications to solicit (and approval of $500,000) funding – which gave no indication as recently to February 14, 2022 to the funders or his clients Nefertiti he was medically unable to work.

This email motion to withdraw is for selfish purposes, because he has been caught doing no work in oral conference. The letter is also false. Plaintiff did agree to replace counsel or bring on additional counsel *after* the motions to dismiss, and this was fully contemplated in the retainer, Given that understanding, any withdrawal just weeks before completion of the current motion practice would be significantly prejudicial to Nefertiti in this case. Mr. August is bound by professional and ethical duties, and he made a full representation to clients on his ability to work (including being assisted by a Brooklyn Law School professor) up and until the motions to compel/motions to dismiss – and has acted in an opposite manner to third parties and funders – including to his clients. He is also prejudicing Plaintiffs by constantly requesting his clients supply him all his legal drafting.

As recently as February 14, 2022 Mr. August emailed the funders regarding acceptance of $500,000 **for his law firm,** and made no indication to either myself or the funders he was medically impaired. It would thus be highly prejudicial if (to save himself from being caught doing no work) he could suddenly be allowed to withdraw and prejudice the entities, when it was fully contemplated a smooth transition would occur after the completion of the current and pending motions. Mr. August's requests for the entire legal budget, included going as far as to request he take over representation for Ms. Kumaran individually, and demanded that Ms. Kumaran ghost write all his legal work, while he got paid for it.  Mr. Augusts requests for funding were the opposite of withdrawing, but instead requested remaining on the case all the way to discovery and trial. This is not consistent with the letter sent to the Court.

7

Plaintiff also would also like to submit in camera, some of the other legal retainers in progress, or active so that the Court is fully aware that Plaintiff is not completely unaided.

It would be very difficult (and prejudicial) to bring on new counsel until *after* the motions to dismiss/motions to compel given that the motions are all pending, and therefore Plaintiffs request that Mr. August complete his retainer as per the terms he agreed to for just a few more short weeks and after the pending motions to dismiss/compel, Plaintiffs will in fact (as was previously agreed) engage additional counsel.

Mr. August's ill-timed request is also highly prejudicial, because it also jeopardizes valuable litigation funding that was offered to the Nefertiti entities, and bound by ethical duties, Mr. August should not be representing to funders his ability to work – and concurrently stating the opposite to the Court.

In conclusion, Plaintiffs document that Mr. August never notified Plaintiffs of any medical impairments prior to signing his retainers with the clients and concealed the foregoing from Plaintiffs.  Only months afterwards, Mr. August stated his treatments were behind him, and it would not impact his ability to work, and that he had affiliations with various law firms in Brooklyn that could fill the gap. This is supported by the fact that Mr. August has no record of any communications to Nefertiti requesting to be replaced – and the only emails were related to Mr. August <u>securing large funding for his law firm</u>.

It is only as a result of the recent court conference on February 18, 2022 where Mr. August demonstrated he was relying on Plaintiff to do all his work, <u>while he would get paid for it</u>  - that has caused this motion. Plaintiffs also object to allowing counsel to lie to the Court, and prejudice their clients, to skirt their own duties, and respectfully request the Court review Mr. August active and concurrent emails to the litigation funders requesting sizable monies – prior to allowing any motion to withdraw.

8

Finally Mr. August's letter is untrue. He never addressed or requested being replaced until <u>after</u> the motions to dismiss or motions to compel. Any representation to the Court is patently false. Plaintiffs had in fact agreed to that request, to relieve Mr. August only <u>after</u> the current motions that are pending.

Plaintiffs request the ability to provide proof of said communications <u>in camera</u>. Given that the motions are very close to completion, Plaintiffs oppose the timing of said withdrawal. Plaintiffs respectfully request Mr. August complete his duties under the retainers which are to stay on until the completions of the motions to compel and motions to dismiss – at which point Plaintiff already agreed to find new counsel. Any abrupt termination would significantly prejudice Plaintiffs, and are contradicted by Mr. August's own emails to litigation funders with calls he scheduled <u>for this week,</u> to bring on litigation funding for his firm, representing to not just his client but outside sources he is in fact more than capable of working.

Plaintiffs specifically oppose the timing of the motion, as it was already agreed, that Mr. August would transition out of representation *after* the motions to compel and motions to dismiss and there is little left to do on the motions, and given the motions are almost fully briefed – an ill-timed withdrawal (given his concurrent representations for funding) would prejudice the clients.

Plaintiffs had already notified the Court that they are seeking new counsel *after* the motions to dismiss and motions to compel which are already in the terms of the retainer – and Mr. August only has a couple more weeks left to complete his obligations under his retainers. Given Mr. August has scheduled litigation funding calls <u>for this week</u> (without any issue to his medical conditions) this duplicity to prejudice the clients is vehemently opposed. The retainer signed covers his representation until after the current outstanding motions are completed.

Plaintiffs therefore would also like to submit additional information to the Court in camera related to the statements made and Mr. August concurrent requests for litigation funding (which contradict his motion to withdraw). He should thus not be permitted to prejudice the clients for his own

9

potential malpractice, when we only have a few short weeks left to complete the outstanding motions.

Plaintiff respectfully requests oral telephonic conference prior to any prejudice to the clients.

Respectfully submitted

//SSK//

Samantha S. Kumaran