USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/2/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
SAMANTHA SIVA KUMARAN, et al., :
:
                                      Plaintiffs, :     1:20-cv-3668-GHW
:
                -against- :     MEMORANDUM OPINION &
:     ORDER
NATIONAL FUTURES ASSOCIATION, LLC, et :
al., :
:
                              Defendants. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

     Plaintiffs Samantha Siva Kumaran and Nefertiti Risk Capital Management, LLC brought this action alleging claims under the Commodity Exchange Act (the "CEA"), as well as various other federal and state laws. On September 16, 2021, The Honorable Stewart D. Aaron issued a Report & Recommendation (the "R&R") in response to Defendants' motions to dismiss the complaint. Dkt. No. 113. Judge Aaron recommended that the claims against Defendants be dismissed and that Plaintiffs be denied leave to amend the complaint. Because the Court agrees with the recommendations provided in the R&R with limited exceptions that do not affect the outcome, Defendants' motions to dismiss are GRANTED. Further, the Court denies Plaintiffs leave to amend their claims, except for certain claims against Defendant Tom Kadlec.

**I.    BACKGROUND**

     The Court refers to the R&R for a comprehensive description of the facts and procedural history of the case but will briefly review the procedural history relevant to this motion.

     Plaintiffs filed this action on May 11, 2020. Dkt. No. 1. On January 15, 2021, Plaintiffs filed an amended complaint. Am. Compl., Dkt. No. 57. On March 15, 2021, Defendants National Futures Association (the "NFA"), Nicole Wahls, and Vilia Sutkus-Kiela (collectively, the "NFA

Defendants") filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 73. The same day, Defendant Tom Kadlec also moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 76. Plaintiffs filed their oppositions on July 20, 2021. Dkt. Nos. 106–07. Defendants filed their replies on August 13, 2021. Dkt. Nos. 109–10.

Judge Aaron issued the R&R on September 16, 2021, recommending that the Court grant Defendants' motions to dismiss. Dkt. No. 113. On September 20, 2021, the Court granted Plaintiffs' application for an extension of time to file objections to the R&R and imposed a page limit for Plaintiffs' briefing. Dkt. No. 115. On October 20, 2021, Plaintiffs filed an objection to the R&R for the NFA Defendants' motion to dismiss, and an objection to the R&R for Kadlec's motion to dismiss. Dkt. Nos. 123–24. On October 26, 2021, the Court granted an extension of time for Defendants to file their opposition to Plaintiffs' objections, and for Plaintiffs to file a reply. Dkt. No. 128. On December 31, 2021, the Court granted another extension of time for Plaintiffs to file their reply. Dkt. No. 134. Plaintiffs filed two replies on January 18, 2022 and amended one of the replies on January 19, 2022. Dkt Nos. 142–43, 145. Defendants moved to strike Plaintiffs' reply briefs because the briefs had greatly exceeded the page limit imposed by the Court. The Court granted Defendants' motions to strike, and struck the reply briefs in their entirety. Dkt. No. 152. Accordingly, the Court did not consider Plaintiffs' reply briefs in resolving Plaintiffs' objections to the R&R.

## II. LEGAL STANDARD

### A. Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and

2

recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

Although styled as objections, in many places Plaintiffs simply repackage arguments already presented to Magistrate Judge Aaron. Nonetheless, the Court has reviewed the R&R *de novo*.

### III.   DISCUSSION

#### A.  CEA § 22 Claims

The Court adopts Judge Aaron's recommendation that Plaintiffs' CEA § 22 claims be dismissed. First, Judge Aaron correctly determined that Plaintiffs failed to allege a CEA § 22 claim concerning the NFA arbitration. "CEA § 22 enumerates the only circumstances under which a private litigant may assert a private right of action for violations of the CEA." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 259 (2d Cir. 2006). Section 22(b), which is codified at 7 U.S.C. § 25(b), "deals with claims against [registered entities and registered futures associations]

and their officers directors, governors, committee members and employees." *Id.* CEA § 22(b) provides:

> A registered futures association that fails to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule.

7 U.S.C. § 25(b)(2). In addition, CEA § 22(b) provides:

> Any individual who, in the capacity as an officer, director, governor, committee member, or employee of . . . a registered futures association willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.

*Id.* § 25(b)(3). Finally, "[a] person seeking to enforce liability under this section must establish that the . . . registered futures association, officer, director, governor, committee member, or employee acted in bad faith in failing to take action or in taking such action as was taken, and that such failure or action caused the loss." *Id.* § 25(b)(4). "Subsection 22(b)(5) provides that the private rights of action against the exchanges enumerated in § 22(b) '*shall be the exclusive remedy* . . . available to *any person* who sustains a loss as a result of* a violation of the CEA or an exchange rule by a contract market or one of its officers or employees." *Klein*, 464 F.3d at 259 (quoting 7 U.S.C. § 25(b)(5) (emphasis added)).[1]

---

[1] Plaintiffs argue that Judge Aaron erred by dismissing their claims against the NFA under 7 U.S.C. § 6b, which Plaintiffs argue are permitted under CEA § 22. As explained, CEA § 22(b) provides the exclusive private right of action against a registered futures association. Therefore, Plaintiffs do not have a private right of action against the NFA under § 6b and any such claims are dismissed. Further, as Judge Aaron noted, "Plaintiffs only were given leave to replead claims against the NFA Defendants based on CEA § 22." R&R at 17. Fed. R. Civ. P. 15(a)(2) provides that additional allegations can only be added "with the opposing party's written consent or the court's leave." "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the

4

Plaintiffs allege that the NFA Defendants violated CEA § 22 by failing to enforce the NFA's arbitration rules, including the requirement in 7 U.S.C. § 21(b)(10) to "provide a fair, equitable, and expeditious procedure through arbitration or otherwise for the settlement of customers' claims and grievances against any member or employee thereof." However, as Judge Aaron explained, Plaintiffs fail to plausibly allege that their actual losses under CEA § 22 were caused by the NFA Defendants' failure to enforce arbitration rules. Under the plain text of CEA § 22, the NFA Defendants are only liable for actual damages that resulted from Plaintiffs' qualifying transactions and were caused by a failure to enforce the required rules. 7 U.S.C. § 25(b)(2)–(4). Here, all of Plaintiffs' qualifying transactions occurred prior to the NFA arbitration. "[I]t is an inescapable rule of causality that a cause must precede its effect." *Billhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288, 297 (S.D.N.Y. 2009); *see also Am. Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 765 (2d Cir. 1984) ("An effect never precedes its cause."). Accordingly, because Plaintiffs' losses preceded the arbitration, any failure to enforce the NFA's arbitration rules is not the cause of Plaintiffs' losses. *See Troyer v. Nat'l Futures Ass'n*, No. 1:16-cv-00146, 2019 WL 4695524, at *17 (N.D. Ind. Sept. 26, 2019) (concluding that the plaintiff did not establish causation where the plaintiff's losses preceded the NFA's alleged failure to comply with Bylaw 301), *aff'd*, 981 F.3d 612 (7th Cir. 2020).

Second, Judge Aaron correctly held that the remainder of Plaintiffs' CEA § 22 claims are time-barred.[2] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)

---

plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012). To the extent that Plaintiffs sought to amend their complaint to assert claims under other sections of the CEA without seeking leave of Court, Plaintiffs violated Fed. R. Civ. P. 15(a)(2). Accordingly, any such claims are dismissed.

[2] Because the Court adopts Judge Aaron's recommendation to dismiss Plaintiffs' CEA § 22 claim concerning the NFA arbitration for failure to state a claim, the Court need not consider whether that claim is also time-barred.

5

(quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).[3] Here, the facts supporting the statute of limitations defense are set forth in Plaintiffs' complaint.

A claim pursuant to the CEA must be brought "not later than two years after the date the cause of action arises." 7 U.S.C. § 25(c). "Federal courts . . . generally apply a discovery accrual rule when a statute is silent on the issue . . . ." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Under this rule, it is the "discovery of the injury, not discovery of the other elements of a claim, [that] starts the clock." *Id.* The discovery accrual rule applies to claims under the CEA. *See Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019). "The relevant inquiry . . . is not whether [the plaintiff] had discovered the identity of the defendants or whether she had discovered the manipulation scheme she alleges in her complaint. Rather, the question is when [the plaintiff] discovered her CEA injury . . . ." *Id.* (citing *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations— the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim.")).

"[E]ven in the absence of actual knowledge by the particular plaintiff bringing suit, a CEA claim will accrue, and the statute of limitations will begin to run, when the plaintiff has constructive knowledge of her CEA injury or is put on 'inquiry notice.'" *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, No. 19-cv-6002, 2021 WL 827190, at *6 (S.D.N.Y. Mar. 4, 2021). "Inquiry notice . . . gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." *Koch v. Christie's Int'l PLC*, 699 F.3d 141,

---

[3] Further, "although the statute of limitations is ordinarily 'an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver,' district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (citations omitted) (first quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); and then quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)). Accordingly, although Defendants raised the statute of limitations defense only with respect to Counts 1 and 2 of Plaintiffs' complaint, it was proper for Judge Aaron to conclude that the remainder of Plaintiffs' CEA § 22 claims are time-barred.

151 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005)). "If plaintiffs do not then inquire within the applicable limitations period, they are deemed to have knowledge of their injury at the point at which the duty to inquire arose, and the period of limitations starts to run on that date." *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-cv-5508, 2019 WL 1437019, at *5 (S.D.N.Y. Mar. 31, 2019).

As discussed, Plaintiffs' CEA injury is limited to actual losses resulting from their qualifying transactions. Plaintiffs acknowledge that their account was closed on June 25, 2017 and allege that on or about August 20, 2017 Kumaran "detected that cash balances in the account ending balances did not tie out, and that unauthorized fees and payments had been made." Am. Compl. ¶¶ 605–06. Further, Plaintiffs alleged that in September 2017, they discovered that third parties had been given unauthorized access to their account. *Id.* ¶ 607. These facts establish that Plaintiffs had at least inquiry notice, if not actual notice, of their CEA injury by September 2017 at the latest. Plaintiffs brought this action on May 11, 2020, more than two-years after September 2017. Accordingly, Plaintiffs' CEA § 22 claims are time-barred.

Plaintiffs' claims are not saved by equitable tolling. "In order for equitable tolling to be available on the basis of fraudulent concealment, a plaintiff must prove that (1) the defendant concealed the existence of the unlawful conduct, (2) the plaintiff remained ignorant of the violation until sometime within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence." *Behrens*, 2019 WL 1437019, at *6. "The doctrine of equitable tolling should only be applied in 'rare and exceptional circumstance[s].'" *Id.* (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). "The doctrine of equitable tolling is applied in the court's discretion 'as a matter of fairness' when a plaintiff has been prevented from exercising her rights." *Id.* (quoting *Smith*, 208 F.3d at 17). Here, Plaintiffs became aware of their CEA injury and the alleged violations in September 2017, more than two years before they brought this action. Accordingly, because

7

Plaintiffs knew of their injury and were not prevented from exercising their rights, equitable tolling does not apply.

Plaintiffs' argument that Defendants should be prevented from asserting the statute of limitations under the doctrine of equitable estoppel is not supported. "A defendant may be equitably estopped from asserting the statute of limitations 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.'" *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985)). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Id.* at 1493. "When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea*, 807 F.3d at 501.

Plaintiffs have not plausibly alleged any facts to invoke equitable estoppel. Plaintiffs do not identify a definite misrepresentation of fact made by Defendants that Plaintiffs reasonably relied on and that prevented Plaintiffs from bringing their CEA § 22 claims. In fact, Plaintiffs do not allege that Defendants made any misrepresentations regarding Plaintiffs' ability to bring their CEA § 22 claims in federal court. Instead, Plaintiffs argue that Defendants prevented Plaintiffs from filing their CEA § 22 claims by inducing them to arbitrate their dispute against ADMIS. Pls.' Objections to the R&R for the NFA Defs., Dkt. No. 123, at 14–15. However, Plaintiffs' dispute against ADMIS is distinct from their CEA § 22 claims against the NFA, and there is no reasoned basis to conclude that engaging in the arbitration hindered their ability to bring their separate CEA § 22 claims against the NFA in federal court. Accordingly, Defendants are not precluded from relying on the statute of limitations defense.

For the foregoing reasons, Plaintiffs CEA § 22 claims are dismissed.[4]

### B. Federal Claims Against Kadlec[5]

#### i. DTSA

Plaintiffs fail to adequately plead a claim under the Defend Trade Secrets Act (the "DTSA") against Kadlec. "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *ExpertConnect, L.L.C. v. Fowler*, No. 18-cv-4828, 2019 WL 3004161, at *3 (S.D.N.Y. July 10, 2019) (citing 18 U.S.C. § 1836(b)(1)). The DTSA defines "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5). "Improper means" under the Act includes "theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," but excludes "reverse engineering, independent derivation, or any other lawful means of acquisition." *Id.* § 1839(6). The DTSA, thus, "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-2177, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017); *accord Physician's Surrogacy, Inc. v. German*, No. 17-cv-718, 2017 WL 3622329, at *8 (S.D. Cal. Aug. 23, 2017).

Judge Aaron correctly determined that "Plaintiffs' allegations fail to state a DTSA claim against Kadlec because the FAC contains no facts as to how Kadlec personally improperly acquired, disseminated or used Plaintiffs' trade secrets." R&R at 27. Plaintiffs' complaint relies solely on a

---

[4] Because the Court agrees with Judge Aaron that Plaintiffs' CEA § 22 claims should be dismissed on these grounds, the Court need not address Plaintiffs' objections to the remainder of Judge Aaron's recommendations regarding Plaintiffs' CEA § 22 claims. *See Middlebrooks v. Bradt*, No. 15-cv-1054A, 2018 WL 1428252, at *1 (W.D.N.Y. Mar. 22, 2018) ("Because the Court adopts the Report and Recommendation on this basis, the Court need not address Plaintiff's objections to the remainder of Judge Scott's recommendations."), *aff'd*, 794 F. App'x 72 (2d Cir. 2019).
[5] To the extent that Plaintiffs attempt to assert CEA § 22 claims against Kadlec based on his role as an NFA board member, the Court adopts Judge Aaron's recommendation to dismiss those claims for the same reason as Plaintiffs' CEA § 22 claims against the NFA Defendants.

number of threadbare and conclusory allegations. For instance, Plaintiffs allege that "Kadlec, with his Co-conspirators, for fraudulent and illegal purpose, willfully, wantonly and maliciously intended to and knowingly stole and, without authorization, acquired, disseminated, disclosed, copied, downloaded, uploaded, replicated, transmitted, delivered, communicated, conveyed, referred to, obtained guidance from, Plaintiffs' trade secrets and disseminated trade secrets to its competitors, for use, referral, and tortious conduct, for competing trade activities, in their affiliates, and unlawfully profited from, in unfair competition." Am. Compl. ¶ 864. The amended complaint is devoid of further factual enhancement to support Plaintiffs' allegations that Kadlec misappropriated any trade secrets. Accordingly, Plaintiffs' DTSA is dismissed. *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-cv-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff's conclusory allegations and threadbare recitals of the elements of a claim for misappropriation under the DTSA are insufficient to survive a Rule 12(b)(6) motion to dismiss.").

### ii. RICO

Plaintiffs' claims that Kadlec violated 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") also fail. "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To establish a violation of § 1962(c), . . . a plaintiff must show that a person engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Cruz*, 720 F.3d at 120 (quoting *DeFalco*, 244 F.3d at 305). To establish

10

a pattern of racketeering activity, a plaintiff "must plead at least two predicate acts, and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). Additionally, Plaintiffs must adequately plead each element of a substantive RICO claim for each defendant. *See DeFalco*, 244 F.3d at 306.

"'Racketeering activity' encompasses, among other things, any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B) . . . ." *Bigsby v. Barclays Capital Real. Estate, Inc.*, 298 F. Supp. 3d 708, 716–17 (S.D.N.Y. 2018), *aff'd*, 841 F. App'x 331 (2d Cir. 2021). Here, the alleged racketeering activities are acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and theft of trade secrets (18 U.S.C. § 1832).

Judge Aaron correctly determined that Plaintiffs failed to adequately plead a pattern of racketeering activity. First, Plaintiffs' threadbare and conclusory allegations are insufficient to establish a violation of 18 U.S.C. § 1832.[6] *See, e.g.*, Am. Compl. ¶ 950 ("In furtherance of the Enterprise, the Co-Conspirators intended to and knowingly stole and, without Plaintiff's authorization, used, copied, downloaded, uploaded, photocopied, replicated, transmitted, delivered,

---

[6] 18 U.S.C. § 1832 applies to:

> Whoever, with the intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—
>
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
>
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
>
> (4) attempts to commit any offense described in paragraphs (1) through (3); or
>
> (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy[.]

*Id.* § 1832(a).

11

communicated, or conveyed Plaintiffs trade secrets.  The co-conspirators also received, acquired, or possessed Plaintiffs trade secrets, knowing that they had been stolen, obtained, or converted without Plaintiffs authorization in violation of 18 USC 1831 e[t] seq.").

Plaintiffs also fail to adequately plead mail or wire fraud.  To establish racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, Plaintiffs must show "(1) a scheme to defraud [including scienter], (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)).  Allegations of mail and wire fraud are also subject to the heightened pleading requirements of Rule 9(b).  *See First Cap. Asset. Mgmt.,* 385 F.3d at 178.  Thus, Plaintiffs are required to (1) "adequately specify the statements [they] claim[ ] were false or misleading"; (2) "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent"; (3) "state when and where the statements were made"; and (4) "identify those responsible for the statements."  *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013) (quotation marks omitted).  "In addition, the plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent.'"  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (quoting *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)).  "'[C]ivil RICO has resulted in a flood of what are and should be state court cases that are being reframed and brought in federal court as RICO actions because of the carrot of treble recovery and the availability of a federal forum.'  As a result, courts scrutinize RICO claims, particularly those based solely on predicate acts of wire fraud."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*, No. 11-cv-1134, 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012) (citations omitted).

Plaintiffs allege that ADMIS engaged in the predicate acts of mail and wire fraud by making hundreds of unauthorized withdrawals from Plaintiffs' account.  *See* Am. Compl. ¶ 540; *id.* Ex. 9;

12

Pls.' Opp'n to Kadlec's Mot. to Dismiss, Dkt. No. 107, at 19–20.  Yet, Plaintiffs fail to allege facts that give rise to a strong inference of fraudulent intent.  Plaintiffs' conclusory allegations that the withdrawals were "unauthorized," "undisclosed," and "fraudulently concealed," are insufficient.  As Judge Aaron identified, Plaintiffs' allegations that the fees were unauthorized are insufficient to establish that the withdrawals were fraudulent.  Accordingly, Judge Aaron correctly determined that Plaintiffs' "allegations are insufficient to allege an intent to defraud."  R&R at 31.

Furthermore, because Plaintiffs failed to adequately plead a substantive RICO claim, the Court adopts the R&R's recommendation to dismiss Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d).  *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("[B]ecause Plaintiffs did not adequately allege a substantive violation of RICO . . . the District Court properly dismissed Count Six, which alleged a RICO conspiracy in violation of 18 U.S.C. § 1962(d)."); *see also Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 298 (E.D.N.Y. 2017) ("In the absence of any viable underlying 18 U.S.C. § 1962(c) claim, plaintiff's RICO conspiracy claims . . . pursuant to 18 U.S.C. § 1962(d) must also fail.").

**C.  State Law Claims**

Plaintiffs' state-law claims against the NFA Defendants are barred by the doctrine of absolute immunity.  "The NFA is an SRO that is registered under the Commodity Exchange Act."  *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 888 (7th Cir. 2019).  "[A]n SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities.  This immunity extends both to affirmative acts as well as to an SRO's omissions or failure to act."  *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011) (citations omitted).  "[T]he central question our SRO-immunity cases ask is not whether the SRO is acting (or not acting) 'consistent with' the laws it is supposed to apply but rather whether the plaintiff's allegations concern the exercise of powers within the bounds of the

13

government functions delegated to it." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007). "Thus, the immunity depends only on *whether* specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions." *Id.* Judge Aaron correctly determined that "Plaintiffs' state law claims arise from the NFA Defendants' actions in connection with the discharge of their regulatory responsibilities." R&R at 25. Accordingly, the Court adopts the R&R's recommendation to dismiss Plaintiffs' state-law claims against the NFA Defendants.

The Court also adopts the R&R's recommendation to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Tom Kadlec. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." "[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein*, 464 F.3d at 262. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity . . . ." *Id.* Because the Court has dismissed all of Plaintiffs' federal claims and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims against Tom Kadlec. *See* 28 U.S.C. § 1367(c)(3); *see also Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 285 (S.D.N.Y. 2019) (declining to exercise supplemental jurisdiction over some, but not all, of the plaintiff's remaining state law claims after all the federal claims were dismissed).

### D. Injunctive Relief

Finally, for the reasons stated in the R&R, the Court dismisses Plaintiffs' claims for injunction relief.

## IV. LEAVE TO AMEND

The Court adopts the R&R's recommendation to deny leave to amend Plaintiffs' claims against the NFA Defendants and Plaintiffs' CEA § 22 claim against Tom Kadlec because any amendment would be futile. *See Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006). ("[L]eave to amend a complaint may be denied when amendment would be futile.") However, the Court departs from the R&R's recommendation that the Court deny leave to amend the remainder of Plaintiffs' claims. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply to Plaintiffs' remaining claims against Tom Kadlec. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Accordingly, Plaintiffs are granted leave to replead their DTSA, RICO, and state law claims against Tom Kadlec but are otherwise denied leave to amend the complaint.

Although Plaintiffs are granted limited leave to amend, Plaintiffs are specifically cautioned to comply with Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). The Court has serious concerns over whether Plaintiffs' prolix and rambling amended complaint, which is almost two hundred pages long and contains over a thousand paragraphs, complies with Rule 8. "Failure to comply with Rule 8(a) may result in dismissal of a complaint, even if the pleader is proceeding *pro se*." *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995).

Further, Ms. Kumaran is reminded that Federal Rule of Civil Procedure 11 applies to *pro se* litigants. *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to

15

represented and pro se litigants . . . ."). As Judge Vyskocil observed in a separate case in which Ms. Kumaran was a plaintiff, "Kumaran is a sophisticated repeat-plaintiff who has used her *pro se* status as a sword to abuse the judicial process." *Kumaran v. Northland Energy Trading, LLC*, No. 19-cv-8345, 2022 WL 704704, at *1 (S.D.N.Y. Mar. 9, 2022). Should Plaintiffs file a prolix amended complaint or one that presents false or unsupported facts as true, the Court would expect to seriously consider any application for the imposition of sanctions under Rule 11 made by Defendants after satisfying the safe harbor provision of the rule. *See* Fed. R. Civ. P. 11; *Safir v. U.S. Lines*, Inc., 792 F.2d 19, 24 (2d Cir. 1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.").

## V.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiffs' claims against the NFA Defendants are dismissed with prejudice. Plaintiffs are granted leave to replead their DTSA, RICO, and state law claims against Tom Kadlec but are otherwise denied leave to amend the complaint. Any amended complaint must be filed within fourteen (14) days of the date of this order.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 73 and 76.

SO ORDERED.

Dated:  June 2, 2022  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge