UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

SAMANTHA SIVA KUMARAN, *et al.*,                                     :

:

                     Plaintiffs,          :

:

      -against-                                              :

:

NATIONAL FUTURES ASSOCIATION, *et al.*,                               :

:

             Defendants.           :

:

      *Case Number 1:20-cv-3668*           :

------------------------------------------------------------------:

:

SAMANTHA SIVA KUMARAN, *et al.*,                                     :

:

                     Plaintiffs,          :

:

      -against-                                              :

:

ADM INVESTOR SERVICES, INC.,                                          :

:

             Defendant.           :

:

      *Case Number 1:20-cv-3873*           :

------------------------------------------------------------------:

:

SAMANTHA SIVA KUMARAN,                                               :

:

                      Plaintiff,          :

:

      -against-                                              :

:

THOMAS R. KADLEC,                                                     :

:

             Defendant.           :

:

      *Case Number 1:22-cv-8095*           :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/2023

1:20-cv-3668-GHW

1:20-cv-3873-GHW

1:22-cv-8095-GHW

<u>MEMORANDUM OPINION &
ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

In four cases now spread across two federal district courts, Samantha Kumaran and corporate entities that she controls have pursued—at length—claims against various defendants whom she alleges engaged in a comprehensive scheme to defraud her and others in the commodity futures market.  This order responds to a total of six motions in three of those cases—Case Number 20-cv-3668 (the "3668 case"), Case Number 20-cv-3873 (the "3873 case"), and Case Number 22-cv-8095 (the "8095 case").

In the 3668 case, Ms. Kumaran and Nefertiti Risk Capital Management, LLC ("NRCM") bring a motion for reconsideration, for entry of judgment under Federal Rule 54(b), and for a certificate of appealability under 28 U.S.C. § 1292(b), all related to this Court's prior order granting the motion to dismiss filed by Defendants National Futures Associations ("NFA"), Tom Kadlec, Nicole Wahls, and Vilia Sutkus-Kiela.  In the 3873 case, NRCM brings a motion for reconsideration of this Court's order mandating arbitration of its claims against Defendant ADM Investor Services, Inc. ("ADMIS"), while Nefertiti Asset Management, LLC ("NAM") and Nefertiti Holding Corporation ("NHC," and together with NAM, "Intervenors") bring a motion for reconsideration of the Court's order denying intervention in that case.  And in the 8095 case, Ms. Kumaran brings a motion to remand the case to state court or, in the alternative, to consolidate the case with the 3668 case.

For the reasons explained below, all of the motions in both the 3668 and 3873 cases are DENIED, and the motion to remand in the 8095 case is also DENIED—though the Court GRANTS Ms. Kumaran's alternative request to consolidate the 8095 case with the 3668 case.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 59(e) and Southern District of New York Local Rule 6.3

Under Federal Rule of Civil Procedure 59(e), within 28 days of an entry of judgment, a party may file "[a] motion to alter or amend a judgment."  And Southern District of New York Local Rule 6.3 permits parties to, within 14 days of a court's order, file "a notice of motion for reconsideration or reargument" of that motion.  "The standards set forth in both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical."  *In re New York Comm. Bancorp, Inc., Sec. Litig.*, 244 F.R.D. 156, 159 (E.D.N.Y. 2007).  To justify reconsideration, the moving party must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it).  "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258-59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009).  "The Second Circuit has stated that '[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied.'"  *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (quoting *Shrader*, 70 F.3d at 257) (alterations in original).  Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'"  *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### B.  Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure 60(b) provides that, in specified circumstances, the Court may "relieve a party or its legal representative from a final judgment, order, or proceeding."  "Relief under Rule 60(b) is generally not favored and is properly granted only upon a showing of exceptional circumstances."  *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010).  Additionally, a "'final order' within the meaning of the Rule 'is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *Abdell v. City of New York*, 739 F. Supp. 2d 450, 453 (S.D.N.Y. 2010) (quoting *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) (per curiam)); *see also* 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2852 & n.7 (3d ed. 2022) (collecting cases and noting that, after the 1948 amendments to the Federal Rules of Civil Procedure, only final orders are subject to Rule 60(b)).

### C.  Federal Rule of Civil Procedure 54(b)

In general, there is a "historic federal policy against piecemeal appeals."  *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).  As a result, "in the federal district courts, the entry of a final judgment is generally appropriate 'only after all claims have been adjudicated.'"  *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)).  Rule 54(b) of the Federal Rules of Civil Procedure contains an exception to this principle:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  To permit entry of final judgment on fewer than all claims, three elements must be satisfied:

> (1) [there must be] multiple claims or multiple parties . . . , (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (citation and emphasis omitted).

The "historic federal policy" noted above requires "that the court's power to enter such a final judgment before the entire case is concluded . . . be exercised sparingly." *Harriscom*, 947 F.2d at 629.  Indeed, the Second Circuit has cautioned that "[a] certification under Rule 54(b) should be granted only if there are interests of sound judicial administration and efficiency to be served, or, in the infrequent harsh case," where "there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *Id.* (quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980) (per curiam), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987)).

Further, the Second Circuit has "repeatedly noted that the district court should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated" because "[i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues." *Novick*, 642 F.3d at 311 (citation and internal quotation marks omitted).  "[I]n light of the policy against piecemeal appeals, it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment." *Id.* at 314.

### D.  28 U.S.C. § 1292(b)

Under 28 U.S.C. § 1292(b), district courts may certify certain nonfinal orders to the court of appeals.  But such certification is warranted only if (1) "[the] order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Section 1292(b) certification is thus "a rare exception to the final judgment rule" that "is reserved for those cases where an intermediate appeal may avoid protracted litigation."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996); *see also In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014) ("Interlocutory review [under § 1292(b)] is strictly reserved for exceptional cases and is especially rare in the early stages of litigation.").

Moreover, even if the three criteria are met, the court retains discretion to determine whether leave to appeal is warranted.  *See Gibson v. Kassover,* 343 F.3d 91, 94 (2d Cir. 2003).  Leave to appeal an interlocutory order should be granted "only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment."  *Picard v. Estate of Madoff*, 464 B.R. 578, 582–83 (S.D.N.Y. 2011) (citing *In re Bernard L. Madoff Investment Sec. LLC (In re Madoff),* No. 11-mc-0012, 2011 WL 3897970, at *3 (S.D.N.Y. Aug. 31, 2011) (internal punctuation marks omitted)).  Accordingly, district courts must "exercise great care in" choosing to grant a party leave to file an interlocutory appeal.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)).

### E.  Standard of Review for *Pro Se* Litigants

Motions filed by *pro se* litigants are liberally construed and interpreted "to raise the strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

(emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).  As the motion to remand in the 8095 case and each of the motions under review in the 3668 case were filed by Ms. Kumaran individually, the Court will analyze them under the liberal construction afforded to *pro se* litigants.[1]

## III.   DISCUSSION

### A.   22-cv-8095 Case[2]

#### 1.   Procedural History

Ms. Kumaran initiated the 8095 case against Defendant Tom Kadlec in New York state court on July 1, 2022.  Dkt. No. 1 Ex. 1.  Defendant Kadlec removed the case to this Court on September 22, 2022.  Dkt. No. 1.  On October 24, 2022, Plaintiff filed a motion to remand the case to state court, or—in the alternative—to consolidate the 8095 case with the 3668 case.  Dkt. No. 15 ("Pl's Mot.").  That motion is fully briefed.  *See* Dkt. No. 18 ("Def's Opp."); Dkt. No. 19 ("Reply").

---

[1] That said, there is some question about whether Ms. Kumaran's motions in the 3668 case are entitled to the special solicitude that this Court grants to *pro se* filings.  While Ms. Kumaran filed each motion by herself, represented party NRCM later "joined" the motions and reply briefs through counsel.  Case No. 20-cv-3668, Dkt. No. 245.  The Court suspects that this course of action—initially filing motions *pro se*, and then having the (represented) corporate plaintiff later "join" the motions and briefing—may be another manifestation of Ms. Kumaran's "sophisticated" maneuverings to once again "use[ ] her *pro se* status as a sword to abuse the judicial process."  *Kumaran v. Northland Energy Trading, LLC*, No.19-cv-8345, 2022 WL 704704, at *1 (S.D.N.Y. March 9, 2022) (Vyskocil, J.).  Nonetheless, in an abundance of caution, the Court will review the motions in that case under the deferential standard afforded to *pro se* litigants.
[2] Unless otherwise noted, all docket references in this section of the opinion are to entries in the 22-cv-8095 case.

2.  Motion to Remand

The Court will deny Plaintiff's motion to remand, but will grant her alternative request to consolidate this case with the 3668 case.  Federal district courts have subject matter jurisdiction of cases where "the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different States."  28 U.S.C. § 1332(a).  These requirements are met because (a) Ms. Kumaran is a citizen of New York, (b) Mr. Kadlec is a citizen of Illinois, and (c) Ms. Kumaran seeks damages of well over $75,000.  *See* Dkt. No. 1 ¶¶ 5–7.  So there is no cause to remand the case to state court because this Court lacks subject matter jurisdiction.

Ms. Kumaran does not contest any of these facts, and thus does not contest that jurisdiction is proper here.  Instead, she argues that Kadlec is estopped from removing the case to this Court or that he has waived the ability to do so.  But these arguments are misguided.  Both equitable and judicial estoppel require that a party make a factual representation that is inaccurate or inconsistent with a position in a prior proceeding.  *See Kavowras v. New York Times Co.*, 328 F.3d 50, 56 (2d Cir. 2003) ("[Equitable] estoppel arises if '(i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment.'" (quoting *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 176 (2d Cir. 2000))); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011) ("Typically, judicial estoppel will apply if:  1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010))).  But Kadlec has never argued either to this Court or to Judge Aaron that there is no subject-matter jurisdiction to hear Ms. Kumaran's state-law claims against him—and thus has never taken a position inconsistent with his decision to remove the 8095 case.  It is true that, in his most recent

briefing in the 3668 case, Kadlec defended the Court's decision to decline supplemental jurisdiction over the state-law claims in that case. *See* Case. No. 20-cv-3668, Dkt. No. 242 at 13. Kadlec, however, did not argue that there was no subject-matter jurisdiction over the claims, instead arguing—accurately—that there was no *supplemental* jurisdiction over the claims because there were no properly pleaded federal claims. *Id.* He has thus made no representation in a prior proceeding that contrasts with his decision here to remove the 8095 case, precluding the invocation of either equitable or judicial estoppel.

Nor is Defendant barred by collateral estoppel from removing the claims in the 8095 case to this Court because the issue of whether there is diversity jurisdiction as to those claims has not been litigated until now. *See Seneca Nation v. Hochul*, 58 F.4th 664, 668 (2d Cir. 2023) (noting that for an issue to be subject to collateral estoppel, it must have been "actually litigated and decided in [a] previous proceeding"). And for similar reasons, Kadlec has not waived his right to removal; because this is the first motion to squarely address the issue of diversity jurisdiction, any prior conduct cannot be deemed "the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 111 (2d Cir. 2014).

However, the Court will grant Ms. Kumaran's alternative request to consolidate this case with the 3668 case. Dkt. No. 15 at 4.[3] Federal Rule of Civil Procedure 42(a) allows a district court to consolidate two actions that involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a). The rule vests district courts with "broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The Second Circuit has instructed, however, that in exercising this discretion a court must consider

> whether the specific risks of prejudice and possible confusion [are] overborne by the
> risk of inconsistent adjudications of common factual and legal issues, the burden on

---

[3] Defendant Kadlec "takes no position" on the request. Dkt. No. 18 at 8.

parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* at 1285 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Having considered all of these factors, the Court finds consolidation to be appropriate. While courts considering consolidation motions often have to balance "the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation," here, all of those considerations point toward consolidation. *KGK Jewelry LLC v. ESDNetwork*, No. 11-cv-9236, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (internal quotation omitted). As Ms. Kumaran notes, "[i]nitiating yet another distinct Federal Court litigation is not in the interest of judicial economy." Dkt. No. 15 at 4. And her claims against Kadlec here "are identical" to those against him in the 3668 case. *Id.* at 3. So there is no reason to ask the parties (or the Court) to expend the time, energy, or resources required to manage two identical cases when the issues can be readily decided in one. As a result, and as described in further detail below in Part IV of this opinion, the Court will consolidate this case into the 3668 case, whereupon the 8095 case will be closed.

**B. 20-cv-3668 Case**[4]

1. <u>Procedural History</u>

The Court refers the reader to Magistrate Judge Stewart Aaron's Report and Recommendation for a detailed description of Plaintiffs' complaint in this case. *See* Dkt. No. 113. Plaintiffs' amended complaint, the active complaint for purposes of this motion, was filed on January 14, 2021. Dkt. No. 56 ("FAC"). Defendants filed motions to dismiss to Plaintiffs' complaint on March 15, 2021. *See* Dkt. No. 73 (Defendants NFA, Sutkus-Kiela, and Wahls's

---

[4] Unless otherwise noted, all docket references in this section of the opinion are to entries in the 20-cv-3668 case.

motion to dismiss); Dkt. No. 76 (Defendant Kadlec's motion to dismiss).  After those motions were

fully briefed, Magistrate Judge Aaron issued a Report and Recommendation on September 16, 2021

(the "September 2021 R&R"), recommending that Defendants' motions be granted.  Dkt. No. 113.

Plaintiffs then objected to the R&R.  Dkt. No. 123 (Kumaran's objections); Dkt. No. 124 (NRCM's

objections).  This Court, on June 2, 2022, issued a memorandum opinion and order that largely

agreed with Judge Aaron's R&R; it granted Defendants' motion to dismiss but—unlike Judge

Aaron's recommendation—gave Plaintiffs leave to replead some of their claims against Defendant

Kadlec.  Dkt. No. 185.

     Plaintiffs responded to that order with a flurry of paper.  First, on June 29, 2022, they

appealed the decision to the Second Circuit Court of Appeals.  Dkt. No. 213.[5]  Then, on August 15,

2022, they filed a motion for reconsideration and a motion for entry of judgment.  Dkt. No. 230

(motion for reconsideration); Dkt. No. 231 (motion for entry of judgment under Federal Rule

54(b)).  Finally, on August 22, 2022, Plaintiffs filed a motion for a certificate of appealability under

28 U.S.C. § 1292.  Dkt. No. 234 (motion); Dkt. No. 235 (memorandum of law in support).  This

order resolves the three motions filed by Plaintiffs in this Court—the motion for reconsideration,

motion for entry of judgment, and motion for a certificate of appealability—which are all fully

briefed.

     2.  <u>Motion for Reconsideration</u>

          *i.  Local Rule 6.3 and Federal Rule 59(e), Not Federal Rule 60, Apply to Plaintiffs'*
             *Motion for Reconsideration*

     Plaintiffs bring their motion for reconsideration ostensibly under Local Rule 6.3, Federal

Rule of Civil Procedure 59(e), and Federal Rule of Civil Procedure 60.  Dkt. No. 230 at i.  But only

Local Rule 6.3 and Federal Rule 59(e)—not Federal Rule 60—apply to Plaintiffs' motion.  Federal

---

[5] As discussed in greater detail below, Plaintiffs' appeal to the Second Circuit is currently held in abeyance pending this
Court's resolution of Plaintiffs' Rule 54(b) and § 1292(b) motions.  *See* Dkt. No. 253.

Rule of Civil Procedure 60 applies only to final orders "that end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment.'" *Abdell*, 739 F. Supp. 2d at 453 (quoting *Nelson*, 468 F.3d at 119); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F. 3d 538, 541 (2d. Cir. 1996) ("By its own terms, Rule 60(b) applies only to judgments that are final."); 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2852 & n.7. "A dismissal with leave to amend is a non-final order." *Slayton v. Am. Express Co.*, 460 F.3d 215, 224 (2d Cir. 2006). Here, the underlying order that Plaintiffs seek reconsideration of gave Plaintiffs "leave to replead their DTSA, RICO, and state law claims against Tom Kadlec." Dkt. No. 185 at 15. The Court later set Plaintiffs' deadline to file an amended complaint repleading those claims for "twenty-eight (28) days following the Court's order resolving" any motion for reconsideration. *See* Dkt. No. 196. In other words, Plaintiffs will have the opportunity to replead some claims against Defendant Kadlec twenty-eight days after the publication of this order. So the Court's order at Dkt. No. 185 was non-final, and Federal Rule 60(b) is accordingly inapplicable to Plaintiffs' motion to reconsider.

> ### ii. *Plaintiffs' State-Law Claims Against Kadlec, While Reconsidered, Remain Dismissed*

In Judge Aaron's September 2021 R&R, he recommended that this Court either (a) decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims against Kadlec, or (b) dismiss them for failure to state a claim on which relief could be granted. Dkt. No. 113 at 31–35. Plaintiffs timely objected to those recommendations. *See* Dkt. No. 123 at 29–30, Dkt. No. 124 at 29. The Court adopted Judge Aaron's first recommendation. Dkt. No. 185 at 14. However, in doing so, the Court did not give proper consideration to the fact that there is another basis for exercising jurisdiction over these claims. Specifically, because the parties in this action are diverse and Ms. Kumaran seeks over $75,000 in damages, the Court has jurisdiction over the state-law claims pursuant to the diversity jurisdiction statute. 28 U.S.C. § 1332(a). This is an issue "that the court overlooked," which accordingly justifies reconsideration of the Court's decision to decline

supplemental jurisdiction over Plaintiffs' state-law claims against Kadlec. *Shrader*, 70 F.3d at 257. The Court grants Plaintiffs' motion and concludes that it should not decline supplemental jurisdiction over those claims.

Accordingly, the Court turns to an evaluation of Judge Aaron's alternative recommendation that the state-law claims be dismissed on the merits. Doing so, the Court concludes that none of Plaintiffs' state-law claims against Defendant Kadlec have been properly stated, and that they should be dismissed on that basis.

When a party timely objects to a magistrate's report and recommendation, a district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

Defendant Kadlec originally moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 76. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

In addition, "[c]laims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b)." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). Under Rule 9(b), claims alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires a complaint alleging fraud to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *United States ex rel. Chorches v. Am. Med. Response, Inc.,* 865 F.3d 71, 81 (2d Cir. 2017) (quoting *United States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 25 (2d Cir. 2016)). "Rule 9(b) is "designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Id.* at 86 (quoting *Ladas*, 824 F.3d at 25).

All of Plaintiffs' claims will be dismissed under these standards. To start, Plaintiffs' fraud claim against Kadlec (count three) fails on the merits. In New York, there are five elements of a fraud claim: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Est. of Warhol,* 119 F.3d 91, 98 (2d Cir. 1997). In addition, "[w]here fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006). And fraud claims generally are subject to Federal Rule of Civil Procedure 9(b)'s particularity requirement, under which "the plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir.

2022) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Plaintiffs' fraud claim fails under these rules. Substantially all of the allegations that they argue support the claim are conclusory. And Plaintiffs have failed to link the only non-conclusory fraud allegation against Kadlec himself (a failure to disclose certain information in April 2018) to Plaintiffs' damages given that Plaintiffs' account with ADMIS was closed in June 2017. *See* FAC ¶¶ 656–665. Plaintiffs' briefing here is of no assistance—it points the Court solely to paragraph 611 of the amended complaint, which is an allegation made against multiple defendants that does not mention Kadlec. *See* Dkt. No. 230 at 30. As a result, Plaintiffs have failed to provide any allegations specifically against Kadlec that could plausibly have damaged the Plaintiffs, and therefore the fraud claim against him is dismissed.

Plaintiffs' aiding-and-abetting fraud claim (count four) is similarly flawed. "To state a claim for aiding and abetting fraud in New York, a plaintiff must allege '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'" *Batson v. RIM San Antonio Acquisition, LLC*, No. 15-cv-7576, 2018 WL 1581675, at *11 (S.D.N.Y. Mar. 27, 2018) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)). And like fraud claims, aiding-and-abetting fraud claims must be pleaded with particularity as required by Federal Rule of Civil Procedure 9(b). *See Green Star Energy Sols., LLC v. Edison Props., LLC*, No. 21-cv-2682, 2022 WL 16540835, at *14 (S.D.N.Y. Oct. 28, 2022) ("The particularity requirements of Federal Rule of Civil Procedure 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 383 (S.D.N.Y. 2010))).

Plaintiffs failed to plead facts that show that Kadlec "provided substantial assistance to advance [a] fraud's commission." *Krys*, 749 F.3d at 127. As Judge Aaron noted, this claim appears

to "rely on allegations that Kadlec participated in [an] oral risk services agreement and concealed that agreement, and related information, from ADMIS' customers."  Dkt. No. 113 at 33.  Having examined the complaint and Plaintiffs' briefings in their totality, however, the Court finds that any allegations about Kadlec's actions related to this agreement are wholly nonspecific, and fail to assert-—with the specificity required by Rule 9(b)—the details of how Kadlec assisted any fraud.  *See, e.g.*, FAC ¶ 317 ("Defendants therefore conspired with their Co-Conspirators . . . to keep the oral risk services agreement fraudulently concealed from traders.").  So Plaintiffs have necessarily failed to sufficiently allege that Kadlec provided "substantial assistance" to the commission of a fraud, thereby requiring dismissal of this claim.

Plaintiffs' state-law misappropriation of trade secrets claim (count six) will also be dismissed.  Under New York law, one element of a "misappropriation of a trade secret" claim is that the plaintiff must properly allege that the "defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means."  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 452 (2018) (internal quotation omitted).  But Plaintiffs have not pleaded how Kadlec used any of their trade secrets.  In their briefing, Plaintiffs point to paragraphs 270–290 of the amended complaint as providing support for their misappropriation claim.  Dkt. No. 230 at 34.  But these paragraphs do not allege that Kadlec disseminated any of Plaintiffs' trade secrets.  *See* FAC ¶¶ 270–290.  Having not found such an allegation elsewhere in the complaint, the Court concludes that Plaintiffs have failed to show that Kadlec improperly used any of their trade secrets, and therefore that they have failed to sufficiently plead their misappropriation claim.

The same failure to allege that Kadlec misused (or directed the misuse of) any trade secrets also dooms Plaintiffs' conversion (count seven) and aiding-and-abetting misappropriation and conversion (count eight) claims.  In New York, "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property . . . and (2) defendant's dominion over the property or

interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (internal citations omitted).  And "under New York law, a plaintiff generally states a claim for aiding and abetting upon alleging facts sufficient to support an inference of (1) the existence of a[n underlying tort]; (2) [the] defendant's knowledge of the [underlying tort]; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (internal quotation omitted).

As just explained, Plaintiffs have failed to allege how Kadlec either made use of Plaintiffs' trade secrets himself or assisted others in doing so.  *See* FAC ¶¶ 270–290 (not explaining how Kadlec misused any trade secrets or directed others to do so); *id.* ¶ 317 (providing an assertion that Defendants participated in an oral risk services agreement, but not specifying what actions Kadlec specifically took to support that alleged scheme).  Because of these pleading deficiencies, Plaintiffs have necessarily not shown that Kadlec took "dominion over the property or interference with it, in derogation of [their] rights."  *Id. Colavito*, 8 N.Y.3d at 50 (2006).  Nor have they shown that he "provided substantial assistance to advance [an underlying tort's] commission."  *Bigio*, 675 F.3d at 172.  So Plaintiffs' conversion and aiding-and-abetting misappropriation and conversion claims will be dismissed.

Plaintiffs' claim for interference with economic advantage (count nine) is also insufficiently pleaded.  Under New York law, a Plaintiff suing for tortious interference with prospective economic advantage "must allege that '(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured.'"  *Cojocaru v. City of New York*, No. 19-cv-5428, 2020 WL 5768723, at *6 (S.D.N.Y. Sept. 28, 2020) (quoting *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997)).  Plaintiffs, however, have failed to point to any

specific "business relationship between the plaintiff[s] and a third party" that could underlie this claim. *Id.* As a result, they cannot (and do not) allege that Kadlec knew of that relationship or intentionally interfered with it. And given the failure to allege a specific, interfered-with relationship, Plaintiffs certainly do not show that this (hypothetical) relationship was injured. As a result, this claim fails on multiple grounds.

Finally, given the dismissal of the preceding claims (and the other claims in the amended complaint), Plaintiffs' civil conspiracy claim (count ten) cannot succeed. That is because "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). As Plaintiffs "fail[] to state causes of action for [any] of the torts underlying the alleged conspiracy . . . [they] necessarily fail[] to state an actionable claim for civil conspiracy." *Id.* In sum, while this Court has jurisdiction over Plaintiffs' state-law claims, they will remain dismissed because—based on the Court's *de novo* review—they each fail on the merits.[6]

### iii.   Reconsideration is not Warranted as to Plaintiffs' Other Claims

None of Plaintiffs' other arguments justify reconsideration of this Court's prior order. As discussed, under either Local Rule 6.3 or Federal Rule 59(e), a party moving for reconsideration must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" in order to justify reconsideration. *Shrader*, 70 F.3d at 257. That "standard" is "strict," so "reconsideration will generally be denied." *Mahmud*, 496 F. Supp. 2d at 270 (quoting *Shrader*, 70 F.3d at 257). Here, while Plaintiffs offer a litany of supposed errors or mistakes in the Court's order at Dkt. No. 185, these arguments amount to misunderstandings of the Court's prior order, misapplications of law, or

---

[6] As discussed in more detail in Part IV of this opinion below, and consistent with the Court's prior orders in this case, Plaintiffs will have the opportunity to replead the state-law claims—as well as the DTSA and RICO claims—against Defendant Kadlec. *See* Dkt. No. 185 at 15.

attempts to "relitigate [ ] already decided issue[s]," *Padilla*, 636 F. Supp. 2d at 258–59—none of which warrant reconsideration.

Plaintiffs' lead argument for reconsideration is that the Court erred in finding that their claims under CEA § 22(b) began to accrue when Plaintiffs discovered—by September 2017—that "cash balances in the account ending balances did not tie out," "that unauthorized fees and payments had been made," and that third parties had been given unauthorized access to their account.  FAC ¶¶ 605–607.  Plaintiffs admit that claims under § 22(a) of the CEA would begin to run at that time, but argue that claims under § 22(b) begin to run only upon knowledge of bad faith. *See* Dkt. No. 230 at 1–3.  And Plaintiffs contend that, because they did not know about Defendants' bad faith until a date within two years of the filing of this lawsuit, Court should not have dismissed any of its § 22(b) claims as time-barred.

Both precedent and logic preclude this argument.  Most obviously, the Second Circuit has held that "discovery accrual rule"—the rule that "it is 'discovery of the injury, not the discovery of the other elements of a claim,' that 'starts the clock'" on a statute of limitations—applies "to CEA claims." *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).  *Levy* thus made no distinction between claims brought under § 22(a) and those brought under § 22(b):  for CEA claims generally, the discovery accrual rule applies.  *Id.*  So this Court's determination that the clock on Plaintiffs' claims began to run when they discovered, in September 2017, "enough of the critical facts of injury and causation to protect [themselves] by seeking legal advice" accords with binding Second Circuit precedent.  *Id.* (citing *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).

Undeterred, Plaintiffs protest that this rule creates an injustice as applied to § 22(b) claims. In their view, by starting the clock for § 22(b) claims at the time of injury, a plaintiff "must automatically and immediately [ ] have 'actual knowledge' that [the Defendant] acted in bad faith,

and thus simultaneously bring §22(a) and §22(b) claims." Dkt. No. 230 at 2. Not so. The statute of limitations for CEA claims is two years. 7 U.S.C. § 25(c). The discovery of the injury by a plaintiff merely *starts* that two-year clock; as *Levy* put it, it gives a plaintiff "two years to ascertain the facts necessary to bring her suit." 917 F.3d at 109. For claims under § 22(a), just as for claims under § 22(b), those facts may not be readily apparent when the plaintiff discovers the injury; the plaintiff has to investigate the injury in order to establish the requisite elements of a CEA violation. *See, e.g.*, 7 U.S.C. § 25(a)(1) (noting the different types of transactions that a plaintiff would have to show that a defendant engaged in to demonstrate a violation of this subsection). That § 22(b) has an additional element (bad faith) that the plaintiff must investigate within two years of the injury does not alter *Levy's* fundamental logic: that "the focus" for starting the statute of limitations clock "is on the discovery of the harm itself, not the discovery of the elements that make up a claim." 917 F.3d at 109 (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). In sum, there is no cause to reconsider this Court's determination that Plaintiffs' claims under CEA § 22(b) were time-barred because they were not filed until over two years after the discovery of the relevant injuries.[7]

Plaintiffs' arguments that the Court erred in refusing to equitably toll or estop the statute of limitations on their CEA claims, moreover, rely on the same flawed premise as their arguments concerning the running of the statute of limitations. To justify either equitable tolling or equitable estoppel of the statute of limitations, Plaintiffs must be able to show that they were ignorant of their ability to file suit in federal court because of some misrepresentation made by a defendant. *See Behrens v. JPMorgan Chase Bank N.A.*, No. 16-cv-5508, 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 21,

---

[7] While Plaintiffs again argue that Defendants waived reliance on the statute of limitations as to some claims, *see* Dkt. No. 230 at 18–20, as the Court previously noted, this is a case in which—because "the facts supporting the statute of limitations defense are set forth in the papers plaintiff[s] [themselves] submitted"—"dismiss[al] [of] an action *sua sponte* on limitations grounds" is appropriate. *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

2019) (noting that to justify "equitable tolling on the basis of fraudulent concealment, a plaintiff must prove that . . . the defendant concealed the existence of the unlawful conduct" from the plaintiff such that the plaintiff was "ignorant of the violation" for some time); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (noting that to "invoke equitable estoppel, a plaintiff must show that:  (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment" such that "the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit" (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985)).  But here, Plaintiffs' complaint states not only that they knew of their alleged CEA injury by September 2017, but were "alerted to the fraud" at that time.  FAC ¶ 608.  That representation—that they knew of the fraud that underlies their § 22(b) claims by September 2017—precludes equitable tolling or estoppel.[8]

Plaintiffs' next argument—that "fraud is a valid claim under CEA §22" and that the "Court erred in its denial of fraud"—simply misunderstands this Court's prior order.  Dkt. No. 230 at 22, *see id.* at 22–27 (making this argument at length).  The Court did not hold, as Plaintiffs appear to believe, that a plaintiff cannot bring fraud claims under the CEA, and Plaintiffs are correct that one can bring a CEA claim against individuals or entities who "violate[ ] this chapter"—that is, violate any part of the CEA, including the fraud provision in § 6b.  *See* 7 U.S.C. § 25(a) (noting damages available against "[a]ny person (other than a registered entity or registered futures association) who violates *this chapter*"); *id.* § 25(b) (noting damages available against "any registered entity that

---

[8] The Court also rejects Plaintiffs' argument that the "continuing tort doctrine" should apply to extend the limitations for claims under § 22(b) claims.  This argument has not previously been presented to the Court, and thus can be rejected for that reason alone.  *See In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (noting that a "party seeking reconsideration" may not "advance new facts, issues, or arguments not previously presented to the Court." (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).  Moreover, subjecting CEA claims to this doctrine would eviscerate *Levy* and the Second Circuit's adoption of the discovery accrual rule for such claims.  *See* 917 F.3d at 108.  And Plaintiffs' admission in their complaint that they were "alerted to the fraud" by September 2017 precludes tolling for their claims against Kadlec just as for their claims against the NFA.  *See* Dkt. No. 230 at 30.

. . . violates *this chapter*" in enforcing relevant bylaws, rules, regulations, or resolutions) (emphases added).  But the Court's point in dismissing Plaintiffs' § 6b claims was that there is no *additional* private right of action to bring § 6b claims; instead, they are subject—like all other claims brought by individuals or entities against exchanges—to the CEA's "Private Rights of Action" provision in § 22. *See* Dkt. No. 185 at 4 & n.1; *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 259 (2d Cir. 2006) ("Subsection 22(b)(5) provides that the private rights of action against the exchanges enumerated in § 22(b) '*shall be the exclusive remedy* . . . available to *any person* who sustains a loss as a result of' a violation of the CEA or an exchange rule by a contract market or one of its officers or employees.").  As a result, under the Court's prior order, they were subject to dismissal for the same reason as nearly all[9] of Plaintiffs' CEA claims—they were time-barred for the reasons discussed in that order and earlier in this one.

The remainder of Plaintiffs' arguments are likewise unavailing.  Plaintiffs provide no support for their assertion that they could not simultaneously proceed with arbitration on their § 22(a) claims while bringing suit here on their § 22(b) claims, *see* Dkt. No. 230 at 11–13; on the contrary, arbitration in this case was stayed, upon NRCM's request, so that it could pursue its purported § 22(b) claims against NFA in federal court.  *See* Case No. 1:20-cv-3873, Dkt. No. 102-5, at 2 ¶ 4 (noting that the arbitration panel would entertain a request to stay proceedings "in order to proceed against the NFA in a U.S. District Court" but that "[s]uch request is entirely within the discretion of [NRCM]").  As for the Court's dismissal of Plaintiffs' 7 U.S.C. § 21(b)(10) claims, that decision—contra Plaintiffs' assertions, *see* Dkt. No. 230 at 13—had nothing to do with what event or events might trigger the statute of limitations, but rather relied on the simple proposition that losses occurring *before* arbitration could not have been *caused by* that arbitration, and therefore were

---

[9] The one exception was Plaintiffs' claims under 7 U.S.C. § 21(b)(10), which this Court dismissed as insufficiently pleaded.  Dkt. No. 185 at 5.

subject to dismissal.  Dkt. No. 185 at 5.[10]  Plaintiffs' argument that the Court's conclusions as to

wire and mail fraud were erroneous relies on Plaintiffs' attempt to "incorporate by reference

. . . relevant sections of the complaint against [Defendant]" in the 3873 case, Dkt. No. 230 at 32, but

doing so would be improper.  *See Low v. Robb*, No. 11-cv-2321, 2012 WL 173472, at *9 (S.D.N.Y.

Jan. 20, 2012) ("It is well settled under Second Circuit law that allegations in a complaint 'that are

either based on, or rely on, complaints in other actions that . . . [are] not resolved, are, as a matter of

law, immaterial within the meaning of Fed. R. Civ. P. 12(f).'" (quoting *RSM Production Corp. v.*

*Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009)).  And having re-examined the paragraphs that

Plaintiffs allege support their trade secrets claims under 18 U.S.C. § 1831, the Court fails to perceive

any error in its previous dismissal of those claims.  *See* Dkt. No. 230 at 33–34 (Plaintiffs referencing

FAC ¶¶ 270–290 as the key paragraphs for their trade secrets claims); FAC ¶¶ 270–290 (not

appearing to contain any allegations of disclosure of trade secrets).[11]

Plaintiffs also incorrectly state that the Court dismissed RICO and DTSA claims against

NFA Defendants as "[n]ot [p]ermitted under Section 22 of the CEA," Dkt. No. 230 at 27; the Court

held no such thing because Plaintiffs only brought such claims against Kadlec (not the NFA

Defendants).  *See* FAC at 161 ("Court 5 – Misappropriation of Trade Secrets in Violation of the

Defend Trade Secrets Act ("DTSA") . . . Against Defendant Tom Kadlec"); *id.* at 175 ("Count 11 –

Civil RICO . . . Against Defendant Kadlec"), *id.* at 178 ("Count 12 – Civil RICO . . . Against

Defendant Kadlec").  Nor did the Court 'ignore' claims under § 6b against Kadlec.  Dkt. No. 230 at

---

[10] Nor is there any merit to Plaintiffs' argument that by addressing the 7 U.S.C. § 21(b)(10) claims' failures apart from statute-of-limitations concerns, the Court undermined its limitations-based rationale for dismissing the other CEA claims.  *See* Dkt. No. 230 at 13–14.  Courts routinely dismiss some claims in a complaint as barred by statutes of limitations and others as barred for non-limitations reasons.  *See, e.g., Harnage v. Dzurenda*, No. 3:14-cv-885, 2022 WL 972438, at *7–10 (D. Conn. Mar. 31, 2022) (dismissing claims against some defendants based on the statute of limitations, and others for lack of sufficient pleading).

[11] Plaintiffs' allegation that the "Court refer[ed] solely to ¶864" of the complaint in its prior order is erroneous.  Dkt. No. 230 at 34; *but see* Dkt. No. 185 at 10 (referencing, "*[f]or instance*," paragraph 864 of Plaintiffs' complaint, and noting that there was no "further factual enhancement to support Plaintiffs' allegations that Kadlec misappropriated any trade secrets" (emphasis added)).

28.  All of Plaintiffs' § 6b claims were dismissed because—as discussed above—they were untimely

given the requirements of § 22(c).  *See* Dkt. No. 185 at 4 n.1; *see also id.* at 9 n.5 ("To the extent that

Plaintiffs attempt to assert CEA § 22 claims against Kadlec based on his role as an NFA board

member, the Court adopts Judge Aaron's recommendation to dismiss those claims for the same

reasons as Plaintiffs' CEA § 22 claims against the NFA Defendants.").[12]  And the RICO claim

against Kadlec failed to give rise to a strong inference of fraudulent intent because, in Plaintiffs'

pleadings, it was wholly unclear what actions Kadlec specifically took that were fraudulent.  Dkt. No.

230 at 31–32; *see Lundy v. Catholic Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013) (noting that to allege

mail or wire fraud, a plaintiff must (1) "adequately specify the statements [they] claim[ ] were false or

misleading"; (2) "give particulars as to the respect in which plaintiff[s] contend[ ] the statements

were fraudulent"; (3) "state when and where the statements were made"; and (4) "identify those

responsible for the statements"); FAC ¶ 540 (stating that Kadlec "instigated" certain unauthorized

withdrawals but not providing other details as to how he did so, or other reasons why those

withdrawals were fraudulent), *id.* ¶ 530 (stating that Kadlec "propagate[d] and 'rubber-stamp[ed]'"

the fraud but not otherwise alleging how he did so).  At bottom, none of Plaintiffs' arguments justify

reconsideration of the Court's previous order in this case.

### 3.  Motion for Entry of Judgment Under Federal Rule 54(b)

Entry of judgment under Federal Rule 54(b) is not warranted.[13]  The Court has the power,

under that rule, to enter judgment as to some but not all claims in an action if it determines "that

there is no just reason for delay" in entering final judgment as to those claims.  Fed. R. Civ. P. 54(b).

Here, all of Plaintiffs' claims except for their DTSA, RICO, and state-law claims against Defendant

---

[12] Plaintiffs have asked for clarification as to whether claims under the CEA against Kadlec may be repleaded.  Dkt. No. 230 at 35.  Because they are time-barred, the answer is no.  As the order at Dkt. No. 185 clearly stated, Plaintiffs may replead "their DTSA, RICO, and state law claims against Tom Kadlec but are otherwise denied leave to amend the complaint."  Dkt. No. 185 at 15.

[13] The Court notes that because it does not view Dkt. No. 185 as a final order under 28 U.S.C. § 1291, *see supra* Part III(B)(2)(i), Plaintiffs' Rule 54(b) and Section 1292(b) motions are procedurally proper.  *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 416 (2015) (noting that Rule 54(b) and Section 1292(b) motions are used to appeal nonfinal orders).

Kadlec are final, as they cannot be repleaded.  *See* Dkt. No. 185 at 15.  But the Court declines to exercise its discretion to enter a final judgment as to any of Plaintiffs' claims here because doing so presents a substantial risk—really, a near-certainty—of contravening the "historic federal policy against piecemeal appeals."  *Curtiss-Wright Corp.*, 446 U.S. at 8.

Plaintiffs argue that "[e]ntry of judgment under Rule 54(b)" now "will aid expeditious decision of the case."  Dkt. No. 231 at 5 (quoting *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991)).  They point to the multiple related cases (and arbitration) in this matter to suggest that, by entering partial final judgment now, the Court would undo the "limbo" that the parties have experienced across these and related proceedings for "nearly five years."  *Id.* at 6; *see also id.* at 9 (noting that "backlog and procedural 'traffic jam' of all [the] cases stayed").

But it is Plaintiffs' own litigation choices that have largely created the "limbo" and "backlog" that they argue justifies Rule 54(b) certification.  Plaintiffs' dispute with Defendants here and in the related cases began with arbitration, which was stayed *upon NRCM's request* so that it could proceed with litigation as to some of its claims in the federal courts.  Case No. 20-cv-3873, Dkt. No. 102 Ex. 5 at 2 ¶ 4 ("[T]he [Arbitration] Panel will entertain a request by Claimant to stay these proceedings . . . in order to proceed against the NFA in a U.S. District Court.").  Once that stay was entered, Ms. Kumaran chose to file three separate cases in this court in May 2020.  *See* Case No. 20-cv-3668, Dkt. No. 1; Case No. 20-cv-3871, Dkt. No. 1; Case No. 20-cv-3873, Dkt. No. 1; *see also* Dkt. No. 231 at 15 (Plaintiffs noting the overlapping facts between the 3668 and 3873 cases).[14]  That litigation strategy has resulted, unsurprisingly, in a web of interrelated orders as this Court and Judge Aaron have attempted to address the merits of Plaintiffs' claims in each separate case.  Plaintiffs in this case and the related cases have availed themselves of multiple opportunities within the applicable rules to amend complaints, seek extensions, and request reconsideration of orders, which has further delayed

---

[14] Ms. Kumaran has since filed a fourth related case that is currently referred to Judge Aaron.  *See Kumaran v. Kadlec*, Case No. 22-cv-8095.

final resolution in each case.  *See, e.g.*, Dkt. No. 17, Dkt. No. 69, Dkt. No. 154, Dkt. No. 230 (motions for reconsideration filed just in this case); Dkt. No. 15, Dkt. No. 24, Dkt. No. 36, Dkt. No. 45 (a fraction of the motions for extension of time filed just in this case).  And this case has also been extended, and complicated, by the serial withdrawal of counsel for the corporate plaintiff.  *See, e.g.*, Dkt. No. 158, Dkt. No. 172, Dkt. No. 202.  To the extent that Plaintiffs here are frustrated about the "traffic jam" that this litigation has become, that gridlock has largely been their doing.

Plaintiffs' litigation strategy to this point, moreover, signals that granting the Rule 54(b) motion would neither be in the "interests of sound judicial administration and efficiency" nor alleviate any "danger of hardship or injustice through delay."  *Harriscom Svenska AB*, 947 F.2d at 629.  As just described, it is Plaintiffs' strategy both big (such as choosing to stay arbitration while pursuing four separate civil actions) and small (such as seeking reconsideration and clarification of a multitude of the Court's decisions) that has resulted in the delays associated with this case and the related cases, which precludes any finding that the delay is unjust.  And given Plaintiffs' decisions thus far in this litigation, the Court suspects that Plaintiffs are highly likely to take an opportunity— as is their right—to appeal nonfinal claims outside of the scope of any possible Rule 54(b) order once they are actually final.  As a result, entering final judgment as to some but not all claims now under Rule 54(b) now will likely create "piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case on successive appeals from successive decisions on interrelated issues"—precisely the scenario the Second Circuit has admonished district judges to avoid.  *Novick*, 642 F.3d at 311 (citation and internal quotation marks omitted); *see also, e.g.*, FAC ¶¶ 776–777, 946 (noting the overlapping facts between Plaintiffs' (final) CEA claims and their (nonfinal) Civil RICO claim against Kadlec).  In short, because the most efficient way to proceed is to permit appeal from a fully final decision in this case, and this path creates no unfair hardship or injustice, Plaintiffs' motion for an entry of final judgment under Rule 54(b) is denied.

4.   Motion for Certificate of Appealability Under 28 U.S.C. § 1292(b)

Plaintiffs' motion for a certificate of appealability under 28 U.S.C. § 1292(b) is also denied.

Certification under that rule is warranted only if (1) "[the] order involves a controlling question of

law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate

appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C.

§ 1292(b).  Like Federal Rule 54(b), Section 1292(b) is thus "a rare exception to the final judgment

rule" that "is reserved for those cases where an intermediate appeal may avoid protracted litigation."

*Koehler*, 101 F.3d at 865–66; *see also Gibson,* 343 F.3d at 94 (noting that even where all three of Section

1292's criteria are met, courts retain discretion to determine whether appeal is warranted).

Plaintiffs seek to certify for appeal:  (1) when the statute of limitations begins to run on

claims under CEA § 22(b), (2) whether claims that could be brought under the CEA can be subject

to arbitration, (3) whether claims under 7 U.S.C. § 21(b)(10) include available damages "related to"

Plaintiffs' alleged injuries, and (4) whether a cause of action for fraud may be brought under CEA

§ 22(b).  Dkt. No. 235 at 8–12.  But none of these issues are appropriate for interlocutory appeal

under Section 1292.

First, as discussed above, while *Levy* involved claims under CEA § 22(a), the discovery

accrual rule it announced plainly applies to claims under § 22(b) also.  *See* 917 F.3d at 108 (noting

that the "discovery accrual rule" applies "to CEA claims").  And second, for reasons explained in

more detail below in the portion of this order considering the motions for reconsideration in the

3873 case, there is no authority to suggest that the CEA § 22(c)'s language stating that "district

courts shall have exclusive jurisdiction of actions brought under this section" operates to preclude

arbitration of claims otherwise subject to a valid arbitration agreement.  *See infra* Part III(C)(2); *see*

*also* Case Number 20-cv-3871, Dkt. No. 245, at 9–10 (also discussing and rejecting this argument).

So there is no "substantial ground for difference of opinion" on either of these issues, precluding appeal of them under § 1292.  28 U.S.C. § 1292(b).

It would make little sense, further, to certify Plaintiffs' third proposed issue relating to damages available under 7 U.S.C. § 21(b)(10) for appeal given that the Court's prior order dismissed that claim as implausible and therefore never had cause to consider available damages.  Dkt. No. 185 at 5.  And as discussed at length above, Plaintiffs misunderstand the Court's prior order to preclude fraud claims under CEA § 22(b); because the Court did not hold that such claims cannot be pleaded, there is no grounds for certification of this issue either.  In sum, because none of the issues upon which Plaintiffs seek certification for interlocutory appeal meet § 1292(b)'s lofty standard, Plaintiffs' motion for certification under that statute is denied.[15]

### C.  20-cv-3873 Case[16]

#### 1.  Procedural History

The Court refers the reader to Judge Aaron's order for a detailed description of Plaintiffs' complaint in this case.  See Dkt. No. 63.  On December 1, 2020, Defendant ADMIS brought a motion to compel arbitration of Plaintiffs' claims.  Dkt. No. 21.  On May 10, 2021, meanwhile, NAM and NHC ("Intervenors") filed a motion to intervene.  Dkt. No. 48.  On June 7, 2021, Judge Aaron issued an order resolving both motions.  Dkt. No. 63.  He first granted in part and denied in part Defendant's motion to compel arbitration:  Plaintiff NRCM was required to arbitrate its claims against ADMIS, and Plaintiff Kumaran's claims—while not subject to arbitration—were stayed pending resolution of NRCM's arbitration with ADMIS.  *Id.* at 7–14.  Judge Aaron then denied Intervenors' motion to intervene.  *Id.* at 14–17.

---

[15] The Court notes, moreover, that even if any of Plaintiffs' proposed issues met Section 1292(b)'s criteria—which they do not—the Court would likely exercise its discretion not to certify appeal in this case given the likelihood that such an appeal would raise, rather than lower, the prospect of "protracted litigation."  *Koehler*, 101 F.3d at 866; *see also Gibson*, 343 F.3d at 94 (courts retain discretion to determine whether appeal is warranted even if all of § 1292(b)'s criteria are met); *supra* Part III(B)(4) (explaining why appeal before this case is fully final is likely to slow, rather than accelerate, litigation).
[16] Unless otherwise noted, all docket references in this section of the opinion are to entries in the 20-cv-3873 case.

NRCM and Intervenors filed motions asking this Court to reconsider Judge Aaron's rulings. Dkt. No. 71 (NRCM's motion); Dkt. No. 72 (Intervenors' motion).  Through an oral opinion on February 18, 2022, this Court denied both motions.  Dkt. No. 90 (order); Dkt. No. 97 (transcript). In response, NRCM and Intervenors have filed new motions for reconsideration, which this order resolves.  Dkt. No. 118 (NRCM's motion); Dkt. No. 121 (Intervenors' motion).[17]

### 2.   NRCM's Motion for Reconsideration

Plaintiff NRCM has moved for reconsideration of seven issues addressed in the Court's order affirming Judge Aaron's R&R in this case.  *See* Dkt. No. 97 (transcript of the Court's oral opinion affirming Judge Aaron's R&R).  NRCM has moved for reconsideration under both Local Rule 6.3 and Federal Rule of Civil Procedure 60(b).  Dkt. No. 118 at 2.  But Rule 60 is inapplicable to the Court's order at Dkt. No. 97, because that order—which, as relevant, affirmed Judge Aaron's partial grant of Defendants' motion to compel arbitration—was not a final order to which Rule 60 applies.  *See Dill v. JPMorgan Chase Bank, N.A.*, No. 19-cv-10947, 2021 WL 3406192, at *10 n.10 (S.D.N.Y. Aug. 4, 2021) (noting that "Rule 60(b) only permits a court to relieve a party from a . . . final judgment, order, or proceeding" and declining to apply Rule 60 to a prior order that compelled arbitration and stayed claims pending that arbitration (internal quotation omitted)); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-cv-2147, 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014) (noting that Rule 60(b) is inapplicable to an order granting a motion to compel arbitration).  As a result, the Court will consider NRCM's motion under the standard applicable to motions under Local Rule 6.3.

Under that rule, as described above, a party moving for reconsideration must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.  That "standard" is "strict," so "reconsideration will generally be denied." *Mahmud*, 496 F. Supp. 2d at 270

---

[17] Intervenors also filed a notice of appeal with the Second Circuit of this Court's order affirming Judge Aaron's decision to deny intervention.  *See* Dkt. No. 113.

(quoting *Shrader*, 70 F.3d at 257).  And a "motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue." *Padilla*, 636 F. Supp. 2d at 258–59.

None of Plaintiff's identified issues—(1) that NRCM "has no claims in this action," (2) a mistake of fact about participation on a February 10, 2021 call, (3) "errors in fact in common facts of fraud and related actions," (4) the meaning of language in § 22 of the CEA, (5) the application of 9 U.S.C. § 2 to this case, (6) "fraud in the heart of arbitration," and (7) why the arbitration panel's November 1, 2019 order no longer applies—warrant reconsideration under this standard.

NRCM's first two arguments are that (1) it has no "claims" in this action and (2) that, relatedly, its former counsel Mr. August was not on a February 10, 2021 call where NRCM was added as a Plaintiff.  *See* Dkt. No. 118 at 3–8.  NRCM is correct that Mr. August was not on the February 10 call and that, as a result, Judge Aaron's statement that Mr. August was on this call was in error.  *See* Dkt. No. 60 at 3:13–18 (the transcript of the February 10 call, noting that Mr. August was not present); Dkt. No. 63 at 4 (Judge Aaron's order, stating that Mr. August was on the relevant call).  But that factual error does not change the Court's conclusion, in its review of the full record, that NRCM knowingly entered into and had "claims" in this case.  As a result, it provides no cause to reconsider the Court's order affirming Judge Aaron's decision to stay those claims.  *See Shrader*, 70 F.3d at 257 (reconsideration will be granted only where a party points to an error "that might reasonably be expected to alter the conclusion reached by the court").

NRCM was added as a party to the case upon the unopposed motion of Ms. Kumaran at the February 10 conference.  *See* Dkt. No. 36.  It appears that reason for the motion was that, as Ms. Kumaran stated, there were some claims alleged in the complaint that she may not be able to "as a successor-in-interest preserve" because, while she had submitted a filing attempting to dissolve NRCM as an LLC, there was uncertainty as to whether the dissolution process was complete.  *See*

Dkt. No. 60 at 6:14–7:2 ("I know that the company's been dissolved, *at least we filed for it to be dissolved.* And I don't know if . . . they're backed up [or] actually [finalizing dissolution]."). Through counsel Mr. August, NRCM then appeared in this case and actively litigated the claims it had. *See* Dkt. No. 38 at 2 (counsel for NRCM identifying that "[f]or purposes of this opposition [to Defendant's motion to compel arbitration], Plaintiff NRCM brought two claims Court 12 and Count 13").

Ms. Kumaran has stated several times her hope that because she has *filed* for dissolution of NRCM, she can serve as the successor-in-interest to their claims, regardless of whether NRCM was actually dissolved. *See, e.g.*, Dkt. No. 60 at 6:14–7:2 (noting her belief that because she filed for dissolution, she "genuinely believed that [she was] able as a successor to preserve its claims"). But as the Court explained during the conference at which it issued the order that NRCM now challenges, she has not provided legal or evidentiary support for her belief. Dkt. No. 97 at 54:22–56:7 ("[Ms. Kumaran:] Is there any rule or procedure if I am the successor in interest in some of the claims . . . ? . . . [The Court:] You say that you are successor in interest. That suggests that the corporation no longer exists. Is that correct? . . . Let me just be clear. Does NRCM still exist as a corporation? Ms. Kumaran: It is still listed as active, but the notice of dissolution was submitted. . . . [The Court:] I understand that the entity still exists and, as a result, I'm not going to take any position on some hypothetical question about what might happen if the entity did not exist."). In sum, NRCM—as of the time of the now-challenged order at Dkt. No. 97—had claims in this action, and its assertion that it did not gives no cause to reconsider that order.

The third and sixth issues identified by NRCM in seeking reconsideration both reflect an apparent misunderstanding of a statement in the Court's order. Specifically, NRCM takes issue with the Court's statement that "NRCM's dispute against the NFA is, insofar as [the Court] can perceive, not the subject of this lawsuit." Dkt. No. 97 at 46:10–12. According to NRCM, that statement was an erroneous statement of fact (issue three) and led the Court to overlook the "[f]raud in the heart

of the arbitration" that is at the center of Ms. Kumaran's various cases (issue six). *See* Dkt. No. 118 at 8, 21. But the Court's statement meant nothing more than this: NFA is not a party in this lawsuit. As a result—and as the Court explained—whatever rights NRCM might have in a federal-court case against NFA are not the same rights it has in this case against ADMIS. Dkt. No. 97 at 46:4–12. That frankly obvious proposition was not erroneous and did not signify, as NRCM now argues, that the Court overlooked any relevant common facts between the related cases here. *See* Dkt. No. 118 at 9. Accordingly, neither issues three nor six identified by NRCM is sufficient to cause the Court to reconsider its order.

Issues five and seven can likewise be readily resolved. In issue five, NRCM takes issue with the Court's statement that it "is unaware of any authority to order the parties to arbitrate before a different arbitral body." Dkt. No. 97 at 47:19–20. It argues that, because this is a case of first impression, it should not have to supply such authority and that the Court nonetheless should have exercised its power under 9 U.S.C. § 2 to reform the parties' arbitration agreement to change the arbitral authority. Dkt. No. 118 at 19–21; *see* 9 U.S.C. § 2 (noting that "upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided" elsewhere in the statute, a court may modify or refuse to enforce an arbitration agreement). But without providing more support for its request for the Court to reform the arbitration agreement, NRCM's request represents an attempt "to relitigate an already decided issue" absent additional legal authority, which cannot justify a reconsideration motion. *Padilla*, 636 F. Supp. 2d at 258–59.

Issue seven, meanwhile, disputes the Court's purported reliance on a supposed November 1, 2019 arbitration panel order. But neither this Court's order nor Judge Aaron's underlying order made any references to any order from that date. *See generally* Dkt. No. 63; Dkt. No. 97. If NRCM is referring to a November 13, 2019 order that required claims against then-members NRCM and

ADMIS to remain in the arbitral forum,[18] Dkt. No. 22-1 Ex. C at 14, the argument appears to be that the November 13 order should no longer apply to NRCM because NRCM is no longer an NFA member.  Dkt. No. 118 at 25.[19]  But NRCM provides no supporting caselaw for the proposition that its changed status as a non-NFA member should allow it to, as Judge Aaron explained, initially "pursue arbitration and then later, after it is unhappy with the way arbitration is unfolding, challenge whether it had ever agreed to arbitrate."  Dkt. No. 63 at 9–10.  As a result, even construing NRCM's arguments extraordinarily broadly, the Court cannot grant reconsideration based on this issue either.

Finally, as its fourth issue, NRCM argues that any actions brought under the CEA cannot be arbitrated based on the text of 7 U.S.C. § 25(c):  that "district courts shall have exclusive jurisdiction of actions brought under this section."  This is an argument that plaintiffs in both the 3668 case and 3871 cases raised.  But the Court remains unconvinced that it has merit.  As in the 3871 case, because NRCM has not asserted any claims in this case under the CEA, NRCM's argument here is "profoundly flawed," as it "ignores the text of the statute, which could not be clearer:  it applies to actions 'brought under' the relevant section of the CEA.  It does not speak to actions with similar facts or parties that are not 'brought under' the relevant statute."  Case No. 20-cv-3871, Dkt. No. 245 at 9.

But even if there *were* CEA claims here, Plaintiff's argument would not meet the high bar required to succeed on a motion for reconsideration.  As the Court wrote in the 3871 case:

> [T]he Court notes that there are substantial flaws in [Plaintiff's] argument that CEA § 22(c) prohibits the Court from compelling arbitration over case that has been brought under the CEA.  [Plaintiff does] not cite any authority to support their proposition that CEA § 22(c) renders CEA claims non-arbitrable.  [Plaintiff] merely presume[s] that CEA § 22(c) renders CEA claims non-arbitrable because the statute

---

[18] The Court is genuinely unsure if this is what NRCM means when it refers to the "November 1 order," because it states at one point that the "November 1 2019 Panel Order" was "superseded by the final Orders on November 13, 2019 and again on November 18, 2019."  Dkt. No. 118 at 24.

[19] NRCM also argues that the arbitration order should no longer apply because NRCM no longer exists.  Dkt. No. 118 at 25.  But as explained during the discussion of NRCM's first issue, that does not appear to be accurate—and was certainly not accurate at the time that of the order that NRCM currently seeks reconsideration of.  *See* Dkt. No. 97 at 54:22–56:7.

> grants exclusive jurisdiction to federal courts. But other statutes containing the same language have been held to be arbitrable. For example, the Securities Exchange Act provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). Yet, in *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987), the Supreme Court held that certain claims brought under that act may be subject to arbitration. *Id.* at 238; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. Indeed, in recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U.S.C. §§ 1–7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2)").
>
> "Although all statutory claims may not be appropriate for arbitration, [h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. . . . [And] in *Shearson/American Express*, the Court determined that language that parallels that language was not a sufficient indicia of Congress's intention to preclude a waiver of judicial remedies.

Case No. 20-cv-3871, Dkt. No. 245 at 9–10. Put simply, NRCM has pointed to no "controlling decisions or data that the court overlooked" in its prior order; to the contrary, the relevant decisions on this issue support the Court's view that NRCM's claims here are arbitrable. *Shrader*, 70 F.3d at 257.[20]

### 3. Intervenors' Motion for Reconsideration

While Intervenors' motion for reconsideration identifies a potential error in the reviewing standard used by this Court's prior order, even reviewing Judge Aaron's underlying order *de novo*, this

---

[20] On May 4, 2023, Ms. Kumaran and NRCM ostensibly filed a joint motion for a certificate of appealability, under 28 U.S.C. § 1292(b), on the same issue raised in "issue four" of NRCM's current motion for reconsideration. Dkt. No. 119. The Court denied the § 1292(b) motion—which was "sprawling and largely incoherent"—but also gave Mr. Kostus, then-counsel for NRCM, a chance to replead it. Dkt. No. 159. To date, however, no new § 1292(b) motion has been filed by either Mr. Kostus or by his replacement Mr. Kleinman. In any event, to the extent that NRCM's "issue four" in its motion for reconsideration could operate as a still-live motion for certificate of appealability under § 1292(b), the Court declines to certify any such appeal. As noted, to be certified for appeal under that statute, an order must "involve[ ] a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). But for the reasons explained above, the issue raised by NRCM—whether the language of CEA § 22(c) precludes arbitrability of not only CEA claims, but also non-CEA claims with related facts—is not one as to which there is substantial ground for difference of opinion. So to the extent any live § 1292 motion exists on this issue, the Court denies certification.

Court reaffirms that the decision to deny intervention by NAM and NHC was proper—and therefore declines to grant the relief sought in Intervenors' motion.

The Court again starts with the applicable rules governing the motion.  Intervenors state that their motion is brought under Federal Rule 60(b)(1) and Local Rule 6.3.  Dkt. No. 121 at 1.  As explained in greater detail below, there is some authority within the Second Circuit indicating that a motion denying intervention under Federal Rule 24(a) may be a final order.  As a result, the Court will evaluate Intervenors' motion under both Federal Rule 60 and Local Rule 6.3.  *See Abdell*, 739 F. Supp. 2d at 453 (noting that Rule 60(b) applies only to final orders).

A litigant may seek relief under Rule 60(b)(1) based on "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  The Court understands Intervenors to be seeking this relief for the Court's alleged "mistake[s]" in its prior order.  *See* Dkt. No. 121 at 1–2.  "Relief under Rule 60(b)," however, "is generally not favored and is properly granted only upon a showing of exceptional circumstances."  *Ins. Co. of N. Am.*, 609 F.3d at 131.  It is thus not dissimilar from Local Rule 6.3's high bar, under which—as explained—a party moving for reconsideration must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257; *see also Mahmoud*, 496 F. Supp. 2d at 270 (reconsideration is typically denied because the standard is strict); *Padilla*, 636 F. Supp. 2d at 258–59 (parties may not relitigate already decided issues through a motion for reconsideration).

While Intervenors have identified a potential error in the Court's order with respect to the standard of review used to evaluate Judge Aaron's decision denying intervention, that error ultimately does not change this Court's agreement with Judge Aaron's analysis.  This Court, in reviewing Judge Aaron's order at Dkt. No. 63, treated his decisions as "nondispositive matters" and therefore applied an abuse-of-discretion standard to those decisions, including his decision to deny

intervention.  *See* Dkt. No. 97 at 33–34.  But Intervenors argue that Judge Aaron's decision to deny

intervention was a dispositive order, and that this Court accordingly should have reviewed it *de novo*.

*See* Dkt. No. 121 at 3.

Having reviewed the caselaw on this issue, the Court agrees that Intervenors may be correct.

Motions to intervene are not among those enumerated in 28 U.S.C. § 636(b)(1)(A) as dispositive

when referred to a magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(A).  But that list is "non-exhaustive,"

and other motions may be dispositive depending upon "the practical effect of the challenged action

on the instant litigation."  *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008).  Some courts in

this circuit have held that motions to intervene are non-dispositive, at least where the motion is

brought as one for permissive intervention under Federal Rule 24(b).  *See, e.g.*, *Chen-Oster v. Goldman,

Sachs & Co.*, No. 10-cv-6950, 2016 WL 11645644, at *2–3 (S.D.N.Y. June 6, 2016) (finding that the

"motion to intervene [was] non-dispositive" where the motion was granted and brought under Rule

24(b), and citing other courts that have held that similar motions are non-dispositive).  But "[t]here

is authority within the Second Circuit holding that a motion to intervene is dispositive, at least

insofar as it is brought as of right under Rule 24(a)."  *Glob. Auto, Inc. v. Hitrinov*, No. 13-cv-2479,

2021 WL 1220712, at *4 (E.D.N.Y. Mar. 31, 2021) (quoting *Madison Stock Transfer, Inc. v. Marine

Expl., Inc.*, No. 15-cv-6394, 2017 WL 383351, at *1 n.2 (E.D.N.Y. Jan 27, 2017); *cf. New York Chinese

TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 24–25 (2d Cir. 1993) (holding that, where the

parties to a case consented to a magistrate judge's jurisdiction under 28 U.S.C. § 636(c), and a later

motion for intervention under Rule 24(a) was denied by the magistrate judge, that decision by the

magistrate judge "ha[d] the effect only of a report and recommendation to the district judge, who

upon the filing of objections [was required to] review *de novo* the recommendation").

Here, Intervenors brought their motion to intervene under both Federal Rules 24(a) and

24(b).  *See* Dkt. No. 48 at 15, 23.  In his order, Judge Aaron analyzed the motion under both rules

simultaneously. *See* Dkt. No. 63 at 16–17. As a result, and given the substantial questions presented

by the authority cited above concerning whether motions to intervene under Rule 24(a) are

dispositive, "in the absence of clear guidance from the Second Circuit, and out of an abundance of

caution," the Court will treat Judge Aaron's order denying Intervenors' motion to intervene as

dispositive and subject it to *de novo* review. *Glob. Auto*, 2021 WL 1220712, at \*4.

Even doing so, however, the Court finds that Judge Aaron got it right. "Intervention as of

right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the

motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the

subject of the action; (3) the applicant is so situated that without intervention, disposition of the

action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and

(4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l Inc. v.*

*Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). Rule 24(b), meanwhile, permits

intervention of a party with "a claim or defense that shares with the main action a common question

of law or fact." Fed. R. Civ. P. 24(b). "A motion for permissive intervention, like one of

intervention of right, must be timely." *Mastercard Int'l*, 471 F.3d at 391 (quoting *Catanzano by*

*Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996)); *see also NAACP v. New York*, 413 U.S. 345, 365

(1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the

initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is

untimely, intervention must be denied."). And "factors to consider in determining timeliness

include: '(a) the length of time the applicant knew or should have known of [its] interest before

making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice

to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating

for or against a finding of timeliness.'" *Mastercard Int'l*, 471 F.3d at 390 (quoting *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)).[21]

Reviewing Judge Aaron's decision to deny intervention *de novo*, the Court finds that Intervenors' motion was correctly denied as untimely. As to the first timeliness factor, the Intervenors knew of their interest in this action in September 2020 at the latest and yet did not move to intervene until May 10, 2021. That nearly-eight-month gap between becoming aware of their interests and their motion to intervene weighs against finding timely intervention. *See, e.g., Mastercard Int'l*, 471 F.3d at 390–91 (delay of five months was untimely); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198–99 (2d Cir. 2000) (delay of eight months was untimely).[22]

The second factor—prejudice to the existing parties resulting from delay—also weighs against intervention. Intervenors argue that ADMIS was not prejudiced by their delay in filing for intervention. Dkt. No. 121 at 12–13. The Court disagrees. ADMIS, like all litigants in the federal courts, has "an interest in prompt resolution of suits in which [it has] been named." *William v. City of New York*, No. 16-cv-5208, 2018 WL 11219952, at *2 (S.D.N.Y. July 23, 2018) (quoting *Copeland v. Rosen*, 194 F.R.D. 127, 132 (S.D.N.Y. 2000)); *see* Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). And Intervenors' decision to delay

---

[21] Several courts in this Circuit have stated that "[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, No. 3:12-cv-1096, 2014 WL 125733387, at *4 (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000). But as far as the Court is aware, the Second Circuit has never adopted that rule, and Intervenors' misleading quotes from *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60 (2d Cir. 2016), *vacated and remanded on other grounds by Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), are not to the contrary. *Compare* Dkt. No. 118 at 9 (quoting *Laroe Estates* to say that "a court's 'only concern on timeliness under Rule 24' is 'prejudice[]' resulting from delay"), *with Laroe Estates*, 828 F.3d at 67 (explaining that the defendant in that case had not explained why a delayed filing of a motion to intervene would cause prejudice to it—and that it is only "delay in filing [a] motion to intervene," not "participation in the litigation," that counts as prejudice relevant to timeliness under Rule 24). In any event, as explained in this order, permitting intervention would have prejudiced the existing parties in this case.

[22] While Intervenors point to one case in which a possible gap of twenty-six years between notice and filing for intervention was found to be timely, the decision to permit intervention in that (district-court) case was based both on the case's "highly unusual circumstances" and the fact that, because of the loss of certain records, the intervenors may not have had actual notice of their claims until the time that they filed for intervention. *See Oneida Indian Nation of New York v. New York*, 201 F.R.D. 64, 67–69 (N.D.N.Y. 2001).

intervention until May 2021, after ADMIS's motion to compel arbitration was fully briefed, raised the prospect of significant delays in the case.  Had Intervenors intervened when NRCM did (in February 2021, *see* Dkt. No. 36), they could have participated in the motion to compel arbitration briefing schedule (as NRCM did, *see* Dkt. No. 38), and ADMIS could have responded to any arguments made by Intervenors about arbitration at that time.  But because Intervenors waited to intervene, their late-filed motion raised thorny issues that—had intervention been permitted—would have been very difficult to evaluate.  For one thing, because Intervenors did not accompany their motion with a complaint, it was entirely unclear what claims they asserted against ADMIS; figuring that out would have delayed resolution.  *See* Dkt. No. 63 at 16.  And for another, as Judge Aaron identified, some of Intervenors' claims would likely have been subject to arbitration (while others may not have been).  *Id.* at 16 n.14.  Sorting through that mess of claims would have likely required ADMIS to provide additional, complex briefing on the motion to compel arbitration and could have significantly delayed resolution of the claims in this case; both of those consequences represent meaningful prejudice to ADMIS.  As a result, this factor also weighs against intervention.

The third factor—prejudice to Intervenors if intervention is denied—also weighs against timeliness.  Intervenors could have filed a separate lawsuit against Defendant.  "Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied."  *See In re Holocaust Victim Assets Litig.*, 225 F.3d at 199.  To the extent that any separate lawsuit would now face a statute of limitations bar, that difficulty is the result of Intervenors' delay in filing for intervention (and further delay as they have asked for multiple reconsideration orders of the denial of intervention).  Given that any delay resulted from Intervenors' litigation strategy, this factor too cuts against timeliness.

Finally, the fourth factor—the presence of unusual circumstances militating for or against timeliness—is at best neutral for Intervenors.  They point to the burden of the various related cases,

and the possibility that one or more of the cases could have *res judicata* or collateral estoppel effect on a new case by the Intervenors, as a reason to permit intervention. Dkt. No. 121 at 22–25. But the Court again must note that the reason for this is *Intervenors' own delay* in filing the motion to intervene. Moreover, the Court need not turn a blind eye to the fact that Ms. Kumaran "is a sophisticated repeat-plaintiff who as used her *pro se* status as a sword to abuse the judicial process." *Kumaran v. Northland Energy Trading, LLC*, No.19-cv-8345, 2022 WL 704704, at *1 (S.D.N.Y. March 9, 2022) (Vyskocil, J.). Ms. Kumaran—who controls Intervenors, as well as NRCM—has exhibited a pattern of repeatedly filing motions that have the effect of procedurally delaying her cases and costing her opponents and the court unwarranted time and energy. Intervenors' motion to intervene was of a piece with that practice. In sum, evaluating the motion to intervene under *de novo* review, the Court adheres to its prior view that intervention was properly denied as untimely.[23]

## IV.   NEXT STEPS

This Court's choice to adjudicate all pending motions in the 3668 case, the 3873 case, and the 8095 cases together was deliberate, as it now provides an opportunity to clarify the current state of affairs in Ms. Kumaran's cases with the hope that it will illuminate the path ahead. Because the Court has granted Ms. Kumaran's alternate request to consolidate the 8095 case with the 3668 case, *see supra* Part III(A)(2), the 8095 case will be closed through this order, leaving the 3668 and 3873 cases as the cases before this Court.

Both of those cases have pending appeals in the Second Circuit. In the 3668 case, Plaintiffs

---

[23] Intervenors also submit that they should have been joined to the action under Federal Rules 20 or 21. *See* Dkt. No. 121 at 20–22. Rule 20, which governs permissive joinder of parties, permits joinder between plaintiffs if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 21, meanwhile, permits a Court "[o]n motion or on its own . . . at any time, on just terms, [to] add or drop a party." Fed. R. Civ. P. 21. But "if the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay," parties should not be joined under that rule. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (quoting 7 Wright & Miller, Federal Practice & Procedure § 1652 (3d ed.). And "courts may deny joinder of parties pursuant to Rule 21 upon a showing of *undue delay*, bad faith, *prejudice*, or futility." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 40 (S.D.N.Y. 2016)) (emphases added). The same facts that make Intervenors' motion untimely under Rule 24 therefore also make joinder under either Rule 20 or 21 inappropriate.

have appealed the Court's order granting the motion to dismiss with leave to replead some claims against Defendant Kadlec. *See* Case No. 20-cv-3668, Dkt. No. 208 (notice of appeal); *Kumaran v. Nat'l Futures Ass'n*, No. 22-1388 (2d Cir. 2022). And in the 3873 case, Intervenors have appealed the denial of intervention. *See* Case No. 20-cv-3873, Dkt. No. 113 (notice of appeal); *Kumaran v. ADM Inv. Servs., Inc.*, No. 22-893 (2d Cir. 2022). The Second Circuit has paused proceedings in both cases pending the resolution of relevant motions by this Court. *See Kumaran v. Nat'l Futures Ass'n*, No. 22-1388, Dkt. No. 131 (Nov. 17, 2022) (holding the appeal in abeyance in the 3668 case); *Kumaran v. ADM Inv. Servs., Inc.*, No. 22-893, Dkt. No. 17 (May 6, 2022) (staying the appeal of the 3873 case). This order resolves the motions holding up the appeals in the Second Circuit.

A threshold issue that the Second Circuit will likely consider is whether this Court's order at Dkt. No. 185 of the 3668 case is a final order that may be appealed under 28 U.S.C. § 1291. Plaintiffs filed a notice of appeal of that order. But the Court observes that the order gave Plaintiffs leave to replead some claims against Defendant Kadlec. While the Second Circuit will resolve its own jurisdiction, it may be that the fact that Plaintiffs were granted leave to amend will affect that court's determination regarding whether it was a final, appealable order. *See Slayton*, 460 F.3d at 224 ("A dismissal with leave to amend is a non-final order."). To the extent that Plaintiffs seek immediate review of the Court's order by the court of appeals, the Court expects that Plaintiffs will consider whether they wish to "render such a non-final order 'final' and appealable by disclaiming any intent to amend." *Id.* Should Plaintiffs choose to amend, they have twenty-eight days from the date of this order to do so, *see* Case No. 20-cv-3668, Dkt. No 196. The Court will lift the stay on the docket of the 3668 case to allow Plaintiffs to proceed either with their amended complaint or by informing the Court that they do not plan to amend the complaint.[24]

---

[24] To be clear, while the 8095 case has been consolidated with the 3668 case, Plaintiffs' allegations against Kadlec in their complaint in the 3668 case are the active ones; as the 8095 case will be closed, any allegations made in that case are no

The 3873 case, meanwhile, will remain stayed here based on the Court's decision not to reconsider its order affirming Judge Aaron's decision to (a) send NRCM's claims against ADMIS to arbitration and (b) stay any individual claims of Ms. Kumaran pending that arbitration.  Meanwhile, the Second Circuit can now act on Intervenors motion to appeal the denial of intervention in that case.  The Court further notes that it is up to NRCM, ADMIS, and the arbitral body as to when and how to lift the current stay in arbitration between those parties; upon completion of that arbitration, this Court would lift the stay in the 3873 case and address Ms. Kumaran's individual claims.  The "logjam" with respect to those claims results from what the Court understands to be Plaintiffs' refusal to move forward with the arbitration.

This explanation is provided by the Court not to direct, or encourage, any party to make any particular decision or take any particular action.  Instead, the Court is hopeful that it may clarify where some of the gridlock in these cases has come from, and lay out the available paths towards resolution.

## V.    CONCLUSION

For the foregoing reasons, (a) Plaintiffs' motion for reconsideration in the 3668 case, (b) Plaintiffs' motion for entry of judgment under Rule 54(b) in the 3668 case, (c) Plaintiffs' motion for a certificate of appealability under § 1292(b) in the 3668 case, (d) NRCM's motion for reconsideration in the 3873 case, and (e) Intervenors' motion for reconsideration in the 3873 case are DENIED.  Ms. Kumaran's motion to remand in the 8095 case is also DENIED, but the Court GRANTS the alternative request to consolidate that case with the 3668 case.

The Clerk of Court is directed to (a) enter this order on the docket of Case No. 20-cv-3668, Case No. 20-cv-3873, and Case No. 22-cv-8095, (b) terminate the motions pending at Dkt. Nos. 230, 231, and 234 in Case No. 20-cv-3668, (c) lift the stay on the docket in Case No. 20-cv-3668, (d)

---

longer operative.  To the extent there are any allegations in the 8095 case that Plaintiffs wish to add to the 3668 case, they would need to amend their complaint in the 3668 case to do that.

terminate the motions pending at Dkt. Nos. 118 and 121 in Case No. 20-cv-3873, (e) terminate the

motion pending at Dkt. No. 15 in Case No. 22-cv-8095, and (f) close Case No. 22-cv-8095 without

delay.

        SO ORDERED.

Dated:  April 28, 2023
New York, New York

                                          GREGORY H. WOODS
                                   United States District Judge